EXHIBIT A

**UNITED STATES ex. rel. DARRELL EDWARD STEVENS, et. al., Plaintiffs vs McGINNIS, INC., et. al., Defendants**

**Case No. C-1-93-442**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION**

**1996 U.S. Dist. LEXIS 22112**

**February 16, 1996, Filed**

**SUBSEQUENT HISTORY:** Adopting in Part Order of August 27, 1996, Reported at: 1996 U.S. Dist. LEXIS 22109.

**DISPOSITION:** [*1] Recommended that McGinnis's summary judgment motion as to Count One GRANTED; McGinnis's summary judgment motion as to Count Two DENIED; Ashland's summary judgment motion as to Count Three DENIED; Ashland's summary judgment motion as to Count Three GRANTED; Ashland's summary judgment motion as to Count Four DENIED.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** For DARRELL EDWARD STEVENS, plaintiff: Ann Louise Lugbill, James Burdette Helmer, Jr., Helmer Lugbill Martins & Morgan - 1, Cincinnati, OH.

For DARRELL EDWARD STEVENS, plaintiff: Meredith Lynn Lawrence, Crestview Hills, KY.

For MCGINNIS INC, defendant: William Paul Schroeder, Todd Matthew Powers, Schroeder Maundrell Barbiere & Powers - 1, Cincinnati, OH.

For ASHLAND PETROLEUM INC, defendant: William Robert Ellis, Carl John Schmidt, III, Harold George Korbee, Wood & Lamping - 1, Cincinnati, OH.

For ASHLAND PETROLEUM INC, defendant: John F Billings, Ashland Petroleum Company, Ashland, KY.

**JUDGES:** Lynn V. Hooe, Jr., United States Magistrate Judge.

**OPINIONBY:** Lynn V. Hooe, Jr.

**OPINION:**

### REPORT AND RECOMMENDATION

This case is before the Court on motions for summary judgment by defendants McGinnis, inc. and Ashland, Inc. (Docs. 88, 179, 180), memoranda in opposition [*2] to summary judgment by Relator Darrell Edward Stevens (Docs. 210, 211), the joint list of undisputed and disputed facts (Doc. 219), replies by McGinnis and Ashland (Docs. 223, 225), and the parties' supplemental memoranda

of law on issues raised at the Court's hearing on these motions (Docs. 231, 232, 233).

Relator Stevens brings this action alleging violations of the False Claims Act, 31 U.S.C. § 3279 et. seq. Specifically, Relator alleges that McGinnis had a policy and practice of dumping its bilge slop and other wastes directly into the Ohio River and then wheelwashing the discharge to conceal this illegal dumping. Relator alleges that McGinnis violated § § 3729 (a)(2) and (a)(7) of the False Claims Act (FCA) by: (1) causing Ashland to submit false claims for payment under a government contract that requires compliance with the Clean Water Act (CWA), 33 U.S.C. § 1251 et. seq., when McGinnis knew that it was intentionally violating the CWA; and (2) failing to record or report illegal discharges of bilge slop and other wastes into the Ohio River in its vessel logs and making false statements to the Government concerning such waste disposal to avoid payment of CWA penalties, fines, [*3] and clean-up costs. Relator contends that Michael Carey, a former McGinnis employee, told United States Coast Guard Lt. Hassler that McGinnis disposed of its bilge slop by pumping it into a container on shore which was later vacuumed out. Relator contends that Carey made this statement knowing it to be false and for the purpose of avoiding CWA penalties.

Relator alleges that Ashland knew McGinnis had a policy and practice of illegally dumping wastes into the river and that Ashland hired McGinnis to perform harbor services for its barges despite this knowledge. Relator also alleges that Ashland reconfigured the drip pans on its jet fuel barges in such a way that the pans regularly overflowed, causing oil and other pollutants to be discharged directly into the Ohio River. Relator alleges that Ashland violated the FCA § § 3729 (a)(1), (a)(2) and (a)(7) by: (1) presenting fraudulent claims for payment to the Government when it knew that McGinnis was intentionally violating the CWA; (2) presenting fraudulent claims for payment to the Government when it was violating the CWA; (3) making or using false records or statements to obtain payment of the aforementioned false claims by the Government; [*4] and (4) failing to record pollution incidents in its vessel logs, thereby avoiding the fines, penalties, and clean-up costs associated with CWA violations.

McGinnis contends that summary judgment is proper as to Counts One and Two of Relator's third amended complaint because: (1) this Court has already granted summary judgment as to Count One; (2) McGinnis neither submitted false information nor made any material misrepresentations to the Government for the purpose of avoiding CWA fines, penalties, or clean-up costs; and (3) this Court lacks jurisdiction over Count Two because it is based on publicly disclosed information.

Ashland contends that summary judgment is proper as to Counts Three and Four because: (1) Ashland neither presented a false or fraudulent claim nor used a false record to get a false claim paid by the Government; and (2) Ashland did not make or use a false record or statement to conceal, avoid, or decrease an obligation to pay the Government for CWA violations. Ashland asserts that Relator's § 3729(a)(7) claims are barred by the statute of limitations and that the Court lacks jurisdiction over them because they are based on publicly disclosed information.

[*5] **I. BACKGROUND**

Ashland Inc. (formerly Ashland Oil, Inc.) is a Kentucky corporation that refines and sells petroleum products. (J.L. p. 2). Ashland entered into four contracts with the United States Government for the sale of jet fuel. (J.L. p. 3). Pursuant to the contracts, Ashland agreed to deliver the jet fuel to the Government's fuel dock in Cincinnati, Ohio, for payment on a per gallon basis. (Id.).

McGinnis, Inc. is an Ohio corporation that provides fleeting, towing, and repair services to barge towing customers on the Ohio River. (J.L. p. 2). On June 16, 1986, McGinnis entered into a Master Towboat and Transportation Services Agreement (Master Agreement) with Ashland to provide harbor services. (Id.; Doc. 79, Order, p. 4). These services include taking barges from Ashland's line haul towboats and delivering them to Ashland's Cincinnati, Ohio fleeting area, taking barges from the fleeting area and delivering them to the Government dock, and picking up Ashland barges at the Government dock and delivering them to the Ashland fleeting area. (Id.). Some of the harbor services provided by McGinnis encompassed service to barges carrying jet fuel to the Government dock under Ashland's [*6] government contracts. (J.L. p. 3).

Relator Stevens, who is the *qui tam* plaintiff in this case, was a McGinnis employee from 1984 to December 10, 1992 when his employment was terminated. During the period that Stevens was employed by McGinnis, McGinnis provided harbor services for Ashland barges, including some barges carrying jet fuel for delivery under Ashland's Government contract. (J.L. p. 7).

## II. UNDISPUTED FACTS

### A. Ashland and McGinnis Are Required to Comply With the Clean Water Act

Section 311 of the CWA prohibits "the discharge of oil or other hazardous substances into or upon the navigable waters of the United States. . . in such quantities as may be harmful as determined by the President. . . ." 33 U.S.C. § 1321(b)(3). For purposes of § 311(b), discharges of oil in such quantities that it has been determined may be harmful to the public health or welfare include discharges that: (1) violate applicable water quality standards; or (2) cause a film or sheen upon or discoloration of the surface of the water or the adjoining shoreline. 40 C.F.R. § 110.3. Ashland's jet fuel barges and McGinnis's vessels are regulated by the CWA, which defines a vessel as "every [*7] description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water. . . ." 40 C.F.R. § 110.7.

Ashland's Government contracts contain the following three specific clauses pertaining to pollution and the CWA: clause I 180(F); clause I 186; and certification clause K10.01(F). (J.L. p. 3). Clause I 180(F) requires Ashland to agree to comply with all requirements of the CWA before the contract is awarded, to use "best efforts" to comply with clean water standards at the facility where the contract is being performed, and to insert the clause into any nonexempt subcontract. (J.L. p. 4).

Clause I 186(b) requires Ashland "to take all measures as required by law to prevent oil spills (including, but not limited to, any spilling, leaking, pumping, pouring, emitting, emptying, or dumping into or onto any land or water)." (J.L. pp. 4-5). This clause also provides that in the event of a

spill, Ashland is responsible for containment and clean up thereof and that if it fails or refuses to do so the contractor must reimburse the Government for any expenses incurred by the Government's clean up and disposal efforts. (J.L. p. 5). Ashland [*8] agrees that clause I 180(F) requires it to use "best efforts" to comply with environmental laws. (J.L. p. 14).

Clause K10.01 certifies that no facility will be used in performance of the Government contract if such facility is on the EPA list of violating facilities. The Federal Acquisitions Regulations, 48 C.F.R. § 52.233-2, also contain terms to which Government contractors must agree regarding the CWA. (J.L. p. 4).

### B. Ashland and McGinnis Maintain Vessel Logs

Ashland maintains wheelhouse log books, which are contemporaneous writings kept in the regular course of business. (J.L. p. 12). Ashland's policy and practice is to record pollution incidents in these logs books, which are reported to the National Response Center pursuant to the CWA. (J.L. p. 12). McGinnis likewise maintains vessel logs, which are kept in the regular course of business. (J.L. p. 13). These logs record events such as minor injuries, leaking equipment, requests for supplies and repairs, and Coast Guard boardings. (Id.). McGinnis's vessel logs did not document its transfer and discharge of pollutants into the Ohio River. (Doc. 79, order, p. 7).

### C. Under the Master Agreement and Ashland's Government [*9] Contract, McGinnis Is An Exempt Subcontractor

Under Ashland's contract with the Government, Ashland submitted one hundred and twenty-nine invoices for payment of over ninety-five million dollars. (J.L. p. 10). These invoices did not include charges for McGinnis harbor services provided to Ashland in its delivery of jet fuel to the Government docks. (Doc. 79, order, p. 4). McGinnis billed Ashland and received payment from Ashland for towboat services, including the movement and fleeting of barges carrying jet fuel delivered to the Government's dock in Cincinnati, Ohio. (J.L. p. 9). McGinnis submitted no invoices to the Government and the Government made no payments to McGinnis for services McGinnis provided to Ashland in furtherance of Ashland's Government contract. (J.L. p. 9).

Under the terms of the Ashland's Government contract, the work McGinnis performed was exempt from contract requirements, which might otherwise have required McGinnis to inform Ashland or the Government of its compliance with environmental laws. (Doc. 79, order, p. 6). Under the terms of the Master Agreement, McGinnis was at most an exempt subcontractor of Ashland in the delivery of jet fuel to the Government [*10] docks. (Id. at p. 4). McGinnis submitted no false information to Ashland regarding its compliance with the CWA, and made no claims to the Government or Ashland in violation of 31 U.S.C. § 3729(a)(2). (Id. at p. 18).

### C. Oil Spill Related Evidence

There is no dispute that McGinnis violated the CWA. McGinnis entered a guilty plea to a one-count Information for felony violations of the CWA. The Information alleges that McGinnis knowingly discharged pollutants including bilge slop, sewage, and garbage, into the Ohio River. See *United States v. McGinnis*, No. CR-1-95-112 (S.D. Ohio October 25, 1995) attached to Doc. 227, notice of filing plea agreement.

There is a dispute as to whether Ashland violated the CWA by modifying the

drip pans on its jet fuel barges, which then allegedly overflowed on a regular basis, discharging pollutants into the Ohio River. Ashland jet fuel barges contain drip pans under the transfer pipe fixtures and smaller drip pans under the diesel pump engines. (J.L. p. 6). These drip pans are exposed to the elements. (Id.). The top surface of the pan is two-thirds enclosed and the opening is surrounded by a two inch lip. (Id.). Prior to October 27, 1986, [*11] Ashland reconfigured the drip pan drainage system on its three hundred series jet fuel barges. (Id.). Ashland disconnected and capped the two inch drainage lines from the header pipe drip pans to the cargo boxes. (Id.). Due to these modifications, the header pipe drip pans cannot be automatically drained, but can be drained either manually or mechanically. (Id. at p. 7).

The Coast Guard inspects Ashland's jet fuel barges every two years, issuing a certificate of inspection which Ashland's barges carry on board as required for operation. (J.L. p. 7). Ashland did not receive prior approval from the Coast Guard for these changes. (Id.).

### III. THE COURT HAS JURISDICTION OVER COUNTS TWO AND FOUR

The purpose of the FCA is to encourage private individuals, who are aware of fraud being perpetrated against the Government, to bring such information forward, thereby providing a remedy for fraudulent attempts to cause the Government to pay out sums of money. H.R. Rep. No. 660, 99th Cong., 2d Sess. 22 (1986); 1986 U.S.C.C.A.N. 5266; *United States v. Neifert-White Co.*, 390 U.S. 228, 233, 19 L. Ed. 2d 1061, 88 S. Ct. 959 (1968). While the FCA is designed to encourage "whistleblower" suits, [*12] the statute imposes the following jurisdictional limitations to prevent "parasitic" lawsuits:

> No court shall have jurisdiction over an action . . . based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is the original source of the information.

31 U.S.C. § 3730(e)(4)(A). A plaintiff is an original source if: (1) he has direct and independent knowledge of the information on which his allegation is based; and (2) he has voluntarily provided the information to the Government before filing his action. 31 U.S.C. § 3730(e)(4)(B). A *qui tam* plaintiff need only prove his status as an independent source if he seeks to invoke the exception to the public disclosure provision. *United States ex. rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1419-20 (11th Cir. 1991); *United States ex. rel. Houck v. Folding Carton Admin. Committee*, 881 F.2d 494, 504-05 (7th Cir. 1989).

Pleadings and [*13] testimony filed in a prior case are considered publicly disclosed information where a putative relator attempts to use such materials in a subsequent *qui tam* action. *United States ex. rel. Stinson, Lyons, Gerlin, & Bustamante, P.A. v. Prudential Insurance Co.*, 944 F.2d 1149, 1157-60 (3d Cir. 1991). *See also United States ex. rel. Springfield Terminal Ry., Co. v. Quinn*, 304 U.S. App. D.C. 347, 14 F.3d 645, 651-52 (D.C. Cir. 1994); *United States ex. rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1350 (4th Cir. 1994). Evidence

publicly disclosed for the first time during the discovery phase of a *qui tam* suit is not barred from use in that same suit by § 3730(e)(4)(A). *Wang ex. rel. United States v. FMC Corp.*, 975 F.2d 1412, 1416 (9th Cir. 1992). *See also United States ex. rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1157-58 (2d Cir. 1993). To hold otherwise would either require *qui tam* plaintiffs to waive their right to discovery, or allow defendants in a *qui tam* action to rush to file depositions in the hopes of defeating jurisdiction. *Wang*, 975 F.2d at 1416.

McGinnis contends that the Court lacks jurisdiction [*14] because Relator's reverse false claim action is based on publicly disclosed information. McGinnis argues that Relator Stevens was not the original source of the statement attributed to Carey by Lt. Hassler and that he had no independent knowledge of the statement. Lt. Hassler testified to Carey's allegedly false statement concerning McGinnis's disposal of bilge slop and other wastes at his deposition on January 31, 1995. McGinnis argues that the Court lacks jurisdiction over any claim based upon this alleged conversation because the information contained therein was publicly disclosed when Hassler's deposition was filed.

Ashland contends that the Court lacks jurisdiction over Count Four because its is based on publicly disclosed information for which the Relator was not the original source. Ashland argues that the allegations concerning Ashland's CWA violations due to discharges from the vessel's drip pans were publicly disclosed when the affidavits of Keith Baldridge and Donnie Sargent, former Ashland employees, were filed by Relator on January 5, and January 6, 1995, respectively.

Under § 3730(e)(4)(A), depositions and affidavits taken in a case are not barred from use in that [*15] same case merely because they are taken as part of discovery in the present case and subsequently filed with the Court. *Wang*, 975 F.2d at 1416. Hassler's deposition and the affidavits by Sargent and Baldridge were taken during discovery in Relator's own *qui tam* action; therefore, the evidence obtained does not amount to public disclosure under § 3730(e)(4)(A). Because the filing of these materials does not constitute a public disclosure, the Court need not address whether Relator is an original source pursuant to § 3730(e)(4)(B). For the foregoing reasons, the Court has jurisdiction over Counts Two and Four of Relator's third amended complaint.

### IV. MCGINNIS'S SUMMARY JUDGMENT MOTION SHOULD BE GRANTED IN PART AND DENIED IN PART

McGinnis argues that summary judgment is proper as to Count One of Relator's third amended complaint because this count is identical to Count One of Relator's second amended complaint and the Court granted summary judgment as to this count in its order of October 26, 1994. McGinnis argues that summary judgment is proper as to Count Two because: (1) the vessel logs were properly maintained in accordance with industry practices and relevant regulation [*16] and contained no false information; (2) the logs were neither submitted to nor reviewed by the Coast Guard in order to determine whether McGinnis was in compliance with environmental laws; (3) McGinnis submitted neither false information nor made any material misrepresentations to the Government which were relied upon in determining whether McGinnis violated the CWA; and

(4) the failure to self-report CWA violations does not constitute a false statement within the meaning of the FCA.

Relator contends that summary judgment on Count Two is improper because genuine issues of material fact exist as to whether McGinnis presented false records or statements to the Government in order to avoid paying fines and penalties for CWA violations. Relator asserts that McGinnis's failure to record entries in its vessel logs concerning its dumping of bilge and sewage waste created false records, thereby constituting reverse false claims. Relator contends that Carey's statements to Hassler establish genuine issues of material fact as to whether McGinnis made false statements to the Government. Relator also contends that pursuant to Fed. R. Civ. P. 56(f), summary judgment is improper because when Relator [*17] sought to depose McGinnis's employees and corporate representatives, they asserted the Fifth Amendment privilege against self-incrimination thereby denying discovery.

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex Corp.*, 477 U.S. at 323.

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion. In response to a summary judgment motion properly supported by evidence, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' [*18] differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). "After a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. In so doing, the trial court does not have a duty to search the entire record to establish that there is no material issue of fact. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Frito-Lay, Inc. v. Willoughby*, 274 U.S. App. D.C. 340, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The court should apply the federal directed verdict standard. *Street*, 886 F.2d at 1479. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is [*19] so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 249-50.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).

### A. Under the Law of the Case Doctrine, McGinnis's Summary Judgment Motion Should Be Granted as to Count One

Under the law of the case doctrine, findings made at one point in the litigation become the law of the case for subsequent stages of the same litigation. *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994); *United States v. Bell*, 988 F.2d 247, 250 (1st Cir. 1993). Once an issue is decided, it should be reopened only in limited circumstances. *Moored*, 38 F.3d at 1421. These circumstances include: (1) where substantially different evidence is raised in a subsequent trial; (2) when a controlling [*20] authority issues a subsequent contrary view of the law; or (3) where a clearly erroneous decision would work a manifest injustice. *Petition of United States Steel Corp.*, 479 F.2d 489, 494 (6th Cir. 1973).

It is undisputed that Count One of Relator's third amended complaint is identical to Count One of the second amended complaint. (J.L. p. 14). On October 26, 1994, this Court granted McGinnis's summary judgment motion as to Count One of the second amended complaint. (Doc. 79, Order, p. 19). Relator has failed to demonstrate circumstances requiring the Court to reopen the law of the case. For the foregoing reasons, McGinnis's summary judgment motion should be granted as to Count One.

### B. Genuine Issues of Material Fact Exist as to Whether McGinnis Made or Used a False Record or Statement to Avoid Payment of Penalties, Fines, or Clean-up Costs Owed to the Government for Violations of the Clean Water Act

A reverse false claim is a fraudulent effort to avoid paying the Government something to which it is entitled. (Doc. 79, Order, p. 13). To establish a reverse false claim, plaintiff must demonstrate that: (1) defendants made, used, or caused to be used a statement or record; [*21] (2) the statement or record was false; (3) defendants knew the record or statement was false; and (4) the false statement or record was used to conceal, avoid, or decrease an obligation to the United States, such as an obligation to pay penalties, fines, and clean up costs under the CWA. 31 U.S.C. § 3729 (a)(7); *Wilkins ex. rel. United States v. State of Ohio*, 885 F. Supp. 1055, 1059 (S.D. Ohio 1995). A defendant knows that a statement or record is false if he has actual knowledge of the information and acts in deliberate ignorance of its truth or falsity or acts in reckless disregard of its truth or falsity. 31 U.S.C. § 3729 (b). Mere negligence or innocent mistake is insufficient to satisfy the knowledge requirement, *Hagood*, 929 F.2d at 1421, but proof of specific intent to defraud is not required. 31 U.S.C. § 3729 (b). What constitutes an offense under § 3729 (a)(7) is not the intent to deceive but the presentation of a statement or record that is known to be false or fraudulent. *Wang*, 975 F.2d at 1421; *Hagood*, 929 F.2d at 1421.

In its Order of October 26, 1994, this Court held that McGinnis's vessel logs are arguably false statements to the Government. (Doc. [*22] 79, order, p. 17). Evidence presented indicates that the Coast Guard regularly reviewed the vessel logs. Evidence also indicates that had the logs contained accurate information concerning the pumping of bilge slop and

other wastes, the Coast Guard may have investigated further.

McGinnis's vessel log is clearly a record. If an event or occurrence that would normally be contained in the record is omitted therefrom, the record is a false one. *United States ex. rel Pickens v. Kanawha River Towing*, 916 F. Supp. 702, 708 (S.D. Ohio 1996)(Spiegel, J.). The FCA does not require that the false record be one that defendant is under a legal obligation to maintain. *Id.* at *11. Evidence presented indicates that when asked by Lt. Hassler about disposal of McGinnis's bilge slop, Carey made a false statement. Genuine issues of fact exist as to whether Carey, or any other McGinnis employees, knowingly made such statements to Government officials to avoid CWA fines and penalties. Material issues of fact also exist whether McGinnis's vessel logs constitute false statements. For the foregoing reasons, McGinnis's summary judgment motion should be denied as to Count Two.

### C. Invocation [*23] of the Fifth Amendment Privilege Against Self-Incrimination By McGinnis's Employees and Officers Supports Denial of McGinnis's Summary Judgment Motion

McGinnis does not dispute that its employees and officers asserted their Fifth Amendment privilege against self-incrimination and refused to provide information about McGinnis. (Doc. 223, McGinnis reply in support of summary judgment, p. 20). McGinnis argues that invoking such a privilege does not justify denial of its motion for summary judgment because it has complied with all other discovery requests. McGinnis argues that the company's corporate representatives produced and identified documents and that all discovery has been responded to in accordance with the Federal Rules of Civil Procedure. McGinnis argues that each McGinnis employee asserted his or her Fifth Amendment privilege because there was an on-going criminal investigation of CWA violations. McGinnis argues that the inference, if any, to be drawn from its employees' and officers' invocation of the privilege is an attempt to avoid self-incrimination under the CWA, not the FCA. McGinnis asserts that invocation of the privilege is irrelevant to the issue of whether McGinnis [*24] made material misrepresentations in violation of the FCA.

The Fifth Amendment privilege not only permits a person to refuse to testify against himself in a criminal trial, but also permits him not to answer official questions put to him in any proceeding, civil or criminal, formal or informal. *Allen v. Illinois*, 478 U.S. 364, 368, 92 L. Ed. 2d 296, 106 S. Ct. 2988 (1986). However, the Fifth Amendment does not forbid adverse inferences against a party to a civil action where he refuses to testify in response to probative evidence offered against him. *Baxter v. Palmigiano*, 425 U.S. 308, 318, 47 L. Ed. 2d 810, 96 S. Ct. 1551 (1976). In proper circumstances, silence in the face of accusation is a relevant fact not barred from evidence by the Due Process Clause. *United States ex. rel. Bilokumsky v. Tod*, 263 U.S. 149, 153-54, 68 L. Ed. 221, 44 S. Ct. 54 (1923). Thus, failure to contest an assertion is considered evidence of acquiescence if it would have been natural under the circumstances to object to the assertion in question. *United States v. Hale*, 422 U.S. 171, 176, 45 L. Ed. 2d 99, 95 S. Ct. 2133 (1975).

Because the Fifth Amendment privilege adheres to the individual, [*25] as opposed to the information which may incriminate him, a corporation has no Fifth Amendment privilege. *Braswell v. United States*, 487 U.S. 99, 105, 101 L. Ed. 2d 98, 108 S. Ct. 2284 (1988). "While individuals

answering questions on behalf of a corporation may assert their own individual privilege, such assertions do not clothe the corporation with a privilege." *In re Tower Metal Alloy Company v. Kossoff*, 188 B.R. 954 (Bankr. S.D. Ohio 1995). When interrogatories are served upon a corporation, the corporation is obliged to appoint agents who can, without fear of self-incrimination, furnish such requested information as is available to the corporation. *United States v. Kordel*, 397 U.S. 1, 8, 25 L. Ed. 2d 1, 90 S. Ct. 763 (1970).

When the party opposing a summary judgment motion cannot present by affidavit facts essential to justify that party's opposition, the Court may refuse the application for judgment. Fed. R. Civ. P. 56(f). McGinnis employees and officers may have asserted their individual Fifth Amendment privilege; however, that does not preclude the Court from drawing an inference based upon their invocation of the privilege. On a motion for summary judgment, the [*26] Court must draw all reasonable inferences in favor of the non-movant, including negative inferences resulting from a party's invocation of the Fifth Amendment privilege in a civil proceeding. McGinnis effectively denied Relator discovery as to whether other McGinnis employees knowingly made false statements to Government officials concerning bilge slop disposal to avoid CWA penalties or fines. For the foregoing reasons, McGinnis's summary judgment motion as to Count Two should be denied.

**IV. ASHLAND'S SUMMARY JUDGMENT MOTION SHOULD BE GRANTED IN PART AND DENIED IN PART**

Ashland contends that summary judgment is proper as to Count Three of Relator's third amended complaint because: (1) the invoices submitted to the Government for jet fuel delivered to the Government docks did not contain any false or misleading information; (2) McGinnis is an exempt subcontractor and therefore, Ashland is not responsible for reporting or certifying that McGinnis was in compliance with the CWA; and (3) Ashland did not know that McGinnis was violating the CWA. Ashland contends that summary judgment is proper as to Count Four because: (1) the failure to record discharges in the vessel logs does [*27] not violate Coast Guard regulations; (2) the CWA does not require written documentation of discharges in a vessel log; therefore, the failure to record such information neither violates the CWA nor constitutes an attempt to avoid payment of a fine; (3) Ashland's log books establish that the company records pollution incidents; and (4) when the Coast Guard boarded Ashland vessels, it was never misled by Ashland's failure to record pollution incidents in its vessel logs. Ashland asserts that Count Four is barred by the statute of limitations because the events relating to the alleged faulty design of the drip pans occurred prior to October 27, 1986 and the Coast Guard approved of the design more than three years before this action was commenced.

**A. Ashland Is Not Required to Certify McGinnis's Compliance With the CWA**

Relator contends that Ashland violated the FCA by submitting invoices to the Government for payment under the contract when it knew that McGinnis was intentionally violating the CWA by pumping its bilge slop directly into the Ohio River. Relator asserts that Ashland is liable for McGinnis's violations under the Master Agreement and under the terms of Ashland's Government [*28] contract.

Under the Master Agreement between Ashland and McGinnis, McGinnis was at most an exempt subcontractor in the delivery of jet fuel to the Government docks in Cincinnati, Ohio. (Doc. 79, order, p. 4). By the terms of Ashland's Government contract, work performed by McGinnis was exempt from any contractual requirements which might otherwise have required McGinnis to certify its compliance with the CWA to either Ashland or the Government. ( Id. at 6). It is undisputed that McGinnis made no certification and at no time represented to Ashland that it was in compliance with pollution laws while moving and fleeting Ashland's barges. (*See* Doc. 79, order, p. 6).

Ashland's Government contract does not require it to certify CWA compliance of exempt subcontractors performing services related to the contract. The CWA does not require Ashland to report discharges of bilge slop from vessels owned, operated, and under the control of another company. Relator does not allege that McGinnis intentionally pumped bilge slop from an Ashland jet fuel barge or line haul tow into the Ohio River. Instead, Relator contends that while McGinnis was providing harbor services to Ashland, it was intentionally [*29] violating the CWA by pumping bilge slop from its own vessels into the river. Ashland did not assume control over McGinnis tugs by hiring McGinnis to move Ashland barges. *See* 33 U.S.C. § 1321 et. seq. There is no material issue of fact as to whether Ashland violated FCA §§ 3729(a)(1) or (a)(2) based on McGinnis's alleged CWA violations. For the foregoing reasons, the Court should grant partial summary judgment in favor of Ashland as to Count Three.

**B. Genuine Issues of Material Fact Exist As to Whether Ashland Made False Claims When It Submitted Invoices Under the Government Contract**

The FCA imposes liability on any person who: (1) knowingly presents or causes to be presented, to an officer or employee of the Government or member of an armed force a false or fraudulent claim for payment or approval; or (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved. 31 U.S.C. § § 3729(a)(1) and (a)(2). The FCA reaches beyond demands for money that fraudulently overstate an amount otherwise due and extends to all fraudulent attempts to cause the Government to pay out sums of money. *United States v.* [*30] *Neifert-White Co.*, 390 U.S. 228, 233, 19 L. Ed. 2d 1061, 88 S. Ct. 959 (1968). A false statement constitutes a false claim under the Act if the statement has the practical purpose and effect and imposes the attendant risk of inducing wrongful payment. *United States v. Rivera*, 55 F.3d 703, 709-10 (1st Cir. 1995).

The primary distinction between claims asserted under § 3729 (a)(1) and § 3729 (a)(2) is that (a)(2) requires an affirmative false statement, while no such express false statement is required under (a)(1). *United States ex. rel. Fallon v. Accudyne Corp.*, 921 F. Supp. 611, 1995 U.S. Dist. LEXIS 11931, at *42 (W.D. Wis. June 19, 1995); *Pickens*, Case No. C-1-93-790, *supra* at *8. A contractor who knowingly fails to perform a material requirement of the contract, yet seeks or receives payment as if it had fully performed without disclosing the nonperformance, has presented a false claim under § 3729 (a)(1). *Fallon, supra* 1995 U.S. Dist. LEXIS 11931, at *44; *Wilkens*, 885 F. Supp. at 1062-63. *See also Ab-Tech Construction, Inc. v. United States*, 31 Fed. Cl. 429, 433-34 (Ct. Cl. 1994)(progress payment vouchers submitted to Government for

payment constitute [*31] false claims where vouchers represented implied certification of adherence to program requirements and contractor withheld failure to comply); *Imperial Meat Co. v. United States*, 316 F.2d 435 (10th Cir. 1963)(invoice submitted to Government constituted false claim within meaning of Act where contractor provided inferior grade meat, even though invoice made no representation as to meat's grade other than by reference to contract).

It is undisputed that Ashland submitted invoices to the Government for payment under the contract. The issue whether the jet fuel invoices submitted by Ashland to the Government constitute false claims under § 3729 (a)(1) is a question of fact to be determined based on the totality of the circumstances and is not properly decided on a motion for summary judgment. *Fallon, supra* 1995 U.S. LEXIS 11931, at *22-24. *See United States ex. rel. Windsor v. DynCorp, Inc.*, 895 F. Supp. 844, 850 (E.D. Va. 1995)(false statement must have purpose and effect of causing financial loss to Government to constitute a false claim under FCA and whether false statement has such effect depends on the nature of underlying contract). The questions whether Ashland violated [*32] the CWA by allowing its drip pans to discharge pollutants into the Ohio River and whether compliance with the CWA is a material part of the contract present genuine issues of material fact. The question whether the invoices presented under the contract constitute false statements as a result of such failure to comply also raises a genuine issue of material fact, precluding summary judgment.

Relator argues that the inclusion of the phrase "Government terms" on some of the invoices constitutes an affirmative false statement by implying that the contractor has complied with all government terms. There is no evidence that Ashland's invoices contained an affirmative false statement such as a certification or express statement of compliance. The FCA requires more than an implied statement of compliance to impose liability under § 3729 (a)(2). Absent evidence of such an affirmative false statement, Relator fails to present facts sufficient to support a claim under § 3729 (a)(2). For the foregoing reasons, Ashland's summary judgment motion as to Relator's claims under § 3729 (a)(2) should be granted, and Ashland's motion as to Relator's claims under § 3729 (a)(1) should be denied.

[*33] **C. Genuine Issues of Material Fact Exist as to Whether Ashland Made or Used a False Record to Avoid Payment of Penalties, Fines, or Clean-up Costs Owed to the Government for Violations of the Clean Water Act**

It is undisputed that Ashland maintains vessel logs in which it records spills that are reported to the National Response Center. Material issues of fact remain as to whether Ashland's logs were false records that were reviewed by the Government, thereby constituting reverse false claim under the FCA. Questions of fact exist as to: (1) whether Ashland discharged oil and other wastes into the Ohio River as a result of overflowing drip pans; (2) whether these discharges were events that would normally have been contained in Ashland's vessel logs; and (3) whether Ashland knowingly failed to record spills in its vessel logs in order to avoid paying the Government fines, penalties and other costs associated with the alleged CWA violations. Ashland's summary judgment motion should be denied as to Count Four for the same reasons the Court should deny McGinnis's motion on Relator's § 3729(a)(7) claim. (*See supra* pp. 11-12).

### D. Relator's Claims Based On 31 U.S.C. § 3729(a)(7) [*34] Are Not Barred By The Statute of Limitations

Ashland contends that Relator's claims are barred by the statute of limitations. Ashland asserts that the Coast Guard has known of and approved Ashland's changes to the drip pan configuration on its jet fuel barges. Ashland argues that the Coast Guard had knowledge of these modifications more than three years before Relator filed the present action. Ashland asserts that the drip pans were modified prior to October 27, 1996, the date the revised statute of limitations for the FCA went into effect. Ashland argues that Relator had to bring his claim prior to October 27, 1992, which he failed to do; therefore the claims are barred by the statute.

The FCA's statute of limitations provides as follows:

> A civil action under section 3730 may not be brought: (1) more than 6 years after the date on which the violation of section 3729 is committed, or (2) more than three years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than ten years after the date on which the violation [*35] is committed, whichever occurs last.

31 U.S.C. § 3731(b)(1982)(amended 1986). Relator does not claim that Ashland violated the FCA when it reconfigured the drip pans on its jet fuel barges. Rather, Relator contends that the drip pans on Ashland's jet fuel barges regularly overflowed, discharging oil and other pollutants into the Ohio River, and that Ashland's failure to record such spills in logs inspected by the Coast Guard gives rise to reverse false claims under the FCA. Evidence suggests that the Coast Guard was aware of the drip pan modifications. However, the available evidence does not demonstrate that such awareness constitutes sufficient knowledge of drip pan discharges required for imposition of the three year limitations period. For the foregoing reasons, Relator's § 3729(a)(7) claims against Ashland are not barred by the statute of limitations.

**IT IS THEREFORE RECOMMENDED THAT:**

> 1) McGinnis's summary judgment motion as to Count One be GRANTED;
>
> 2) McGinnis's summary judgment motion as to Count Two be DENIED;
>
> 3) Ashland's summary judgment motion as to Count Three be DENIED as to Relator's claims under 31 U.S.C. § 3729(a)(1) based on alleged [*36] Clean Water Act violations committed by Ashland;
>
> 4) Ashland's summary judgment motion as to Count Three be GRANTED as to all Relator's claims under 31 U.S.C. § 3729(a)(2) as well as any claims under 31 U.S.C. § 3729(a)(1) based on Clean Water Act violations committed by McGinnis.

4) Ashland's summary judgment motion as to Count Four be DENIED.

Date:

Lynn V. Hooe, Jr.

United States Magistrate Judge

**NOTICE**

Attached hereto is the Report and Recommended Decision of the Honorable Lynn V. Hooe, Jr., Recalled United States Magistrate Judge, which was filed on FEB 16 1996. Any party may object to the Magistrate Judge's findings, recommendations and report within ten (10) days after being served with a copy thereof or further appeal is waived. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Such parties shall file with the Clerk of Court, and serve on all parties, the Judge and the Magistrate Judge, a written Motion to Review which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made, along with a memorandum of law setting forth the basis for such objection. (Such parties shall file [*37] with the Clerk a transcript of the specific portions of any evidentiary proceedings to which an objection is made).

In the event a party files a Motion to Review the Magistrate Judge's Findings, Recommendations and Report, all other parties shall respond to said Motion to Review within ten (10) days after being served a copy thereof.