UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF ROGER D. OWENSBY JR., | : : : | |
| Plaintiff, | : : : | Case No. 01-CV-769 |
| v. | : : | Senior Judge S. Arthur Spiegel |
| CITY OF CINCINNATI, ET AL., | : : : | |
| Defendants. | : : : | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
MOTION FOR SEPARATE TRIALS
BY DEFENDANT CITY OF CINCINNATI AND ITS POLICE CHIEF (doc. 57)**

On November 7, 2000, a group of five Cincinnati police officers beat Roger Owensby, Jr., choked him, handcuffed him, beat him after he was handcuffed, maced him, and left him to die in the back seat of a Golf Manor police cruiser.  At the scene, other Cincinnati police officers, Golf Manor police officers and Huntington Meadows security personnel on the scene failed to provide prompt medical attention for Mr. Owensby's injuries.  This lawsuit, brought by Mr. Owensby's father and estate administrator, alleges violations of constitutionally-created civil rights afforded to all United States citizens as well as state tort claims for the wrongful death of his son at the hand of these defendants.  Mr. Owensby is survived by his thirteen-year-old daughter and her mother, his parents and his brother.  Doc. 1, Complaint.

Having selected, hired, trained (or failed to train), supervised (or failed to supervise) and disciplined (or failed to discipline) these Cincinnati police officers who are defendants in this

action, the City of Cincinnati and its Police Chief now seek to distance themselves from these same officers by asking this Court to exercise its discretion and bifurcate this matter into two separate trials. Doc. 57, Motion to Bifurcate. Such a bifurcation would double the time, expense, and resources of this Court, the Plaintiffs, and the individual police officer defendants. It would also prejudice those who can least afford to prosecute two trials—the Plaintiffs as well as the individual officers. As such, the Motion to Bifurcate should be denied.

There is also a sub-text to this Motion. If this case is bifurcated into two trials as the City and its Police Chief envision, the first trial will entail only the individual Cincinnati police officer defendants.[1] Doc. 57, Motion to Bifurcate, p. 4 ("the trial against the individual officers should proceed first."). However, the jury will be asked to assess and award the totality of Plaintiffs' damages against these individual officers who will no doubt assert that they cannot possibly satisfy a truly just and equitable judgment. *Id.* at 6-7 ("bifurcation still allows the jury to evaluate the totality of the injuries suffered by the plaintiff...[plaintiff] may recover only once for the injuries suffered..."). In this fashion, the City and its Police Chief will be able to manipulate the jury into rendering an artificially low judgment. Thereafter, the City and its Police Chief will be free to step from the wings and litigate their policies, practices and customs in a second trial, all the while secure in the knowledge that they are protected from having to satisfy a truly just award of damages. Indeed, the City and the Police Chief argue that evidence of damages should be excluded in the second trial because it was previously determined in the first trial. *Id.* ("...[Plaintiffs] may recover only once for the injuries suffered...").

---

[1] The City and the Chief of Police fail to address how the other defendants—the Village of Golf Manor, its police officers, Huntington Meadows and its security personnel—will be tried. Presumably, under the City's proposal, a third trial will be required.

Thus, bifurcation of this matter into two separate trials is unjust and inequitable. The City and its Police Chief should stand before this Court and its jury with the officers it selected, trained and supervised.

## I.   BIFURCATION OF THIS MATTER INTO TWO SEPARATE TRIALS UNDER CIVIL RULE 42(b) IS COMMITTED TO THE SOUND DISCRETION OF THIS COURT

Under Rule 42(b), Fed. R. Civ. P., this Court has the discretion to order separate trials "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." In deciding whether to exercise this discretion, the Court should balance the savings to the judicial system (if any) against the possible inconvenience, delay, or prejudice to the parties. *Lindsey v. Prive Corp.*, 161 F.3d 886, 892 (5th Cir. 1998); *Quantanilla v. City of Downey*, 84 F.3d 353, 356 (9th Cir. 1996), *cert. denied*, 519 U.S. 1122 (1997).

The provision for separate trials in Rule 42(b) is intended to further the parties' convenience, avoid delay and prejudice, and serve the ends of justice. It is the interests of efficient judicial administration that is to be controlling under the rule, not the wishes of the parties. The piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course. 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 2388 (1995). Separate trials should not be ordered where both would invove extensive proof and substantially all the same facts or witnesses will be presented in both trials. *Id.* Likewise, separate trials are inappropriate if any saving in time and expense is wholly speculative. *Id.*

The Sixth Circuit has provided the following guidance for trial courts in the exercise of Rule 42(b) discretion. Separate trials are appropriate under Rule 42(b) where the issues to be

3

tried are "distinct and separate" and "the evidence pertinent to the two issues is wholly unrelated." *In re Bendectin Litigation*, 857 F.2d 290, 309 (6th Cir. 1988). Here, as demonstrated below, separate trials are not appropriate because the evidence pertinent to the liability of the police officers is inextricably intertwined with the evidence pertinent to the liability of the City and its Police Chief. Where the same facts support both legal issues, bifurcation is not only inappropriate but constitutes reversible abuse of discretion. *Martin v. Heideman*, 106 F.3d 1308, 1312 (6th Cir. 1997); *Fall v. Indiana Univ. Board of Trustees*, 33 F. Supp. 2d 729, 738 (N.D. Ind. 1998).

In moving for separate trials, the burden is on the City and the Police Chief to justify the need for two separate trials. *Fuju Mach. Mfg. Co. Ltd. v. Hover-Davis, Inc.*, 982 F. Supp. 923 (W.D.N.Y. 1997). As demonstrated below, they fail to meet this burden.

## II. *MONEL* DOES NOT ESTABLISH A PRESUMPTION THAT SEPARATE TRIALS BE CONDUCTED

Defendants City and the Police Chief base their motion for separate trials upon the Supreme Court's 1978 decision, *Monell v. Dept. of Social Services of the City of New York*, 436, U.S. 658 (1978), claiming that Plaintiffs must first establish that Mr. Owensby's rights were constitutionally violated by the individual police officer defendants before municipality liability for their policies, customs and practices can be assessed. Doc. 57, Motion to Bifurcate, p. 3. However, *Monell* says nothing about bifurcation and separate trials. There is no per se rule that *Monell* claims against municipalities be tried separately from those against individuals. *Pavlovich v. City of New York*, 1992 U.S. Dist. LEXIS 13070, *8 (S.D.N.Y. Aug. 31, 1992), attached. In fact, nothing in the subsequent *Monell* jurisprudence requires bifurcation in every

case. That decision continues to reside in the sound discretion of the trial judge based on the particular fact of each case. *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 895 (N.D. Ill. 2000).

The City and its Police Chief attempt to bolster their argument for separate trials by citing to a per curiam unpublished Sixth Circuit decision, *Tinch v. City of Dayton*, 1996 U.S. App. LEXIS 5716 (6th Cir. Feb. 20, 1996). Doc. 57, Motion to Bifurcate, Exhibit A. As indicated in the Notice preceding the text of *Tinch*, the Sixth Circuit has made abundantly clear that this unpublished decision is of no precedential value and is confined to the unique facts of that case. Beyond this fact, there are two fatal flaws in defendants' reliance on *Tinch*.

First, the Sixth Circuit merely found that the trial judge did not abuse his discretion in bifurcating the case against the Dayton police officers from that of the City of Dayton given the facts of that case. Doc. 57, Exhibit A, *Tinch*, 1996 U.S. App. LEXIS 5716, *11. This does not mean that bifurcation is appropriate for the particular facts of this case. In fact, as demonstrated below, it is not appropriate here.

Second, the *Tinch* bifurcation promoted judicial economy because the municipality clearly announced its intention to satisfy the judgment against the individual police officer. *Id.* at *14 ("Given the assumption of liability for those damages by the City of Dayton, Plaintiff can achieve nothing beyond a fruitless waste of judicial resources by proceeding against municipal defendants.").

In this case, the City of Cincinnati has no intention of satisfying any judgment obtained against the individual officers. Upon receipt of the Motion to Bifurcate, Plaintiffs' counsel proffered a simple Stipulation to the City asking it to unequivocally commit to satisfying any

judgment against the individual officers. A copy of Plaintiffs' letter and proffered Stipulation is attached as Exhibit A. Despite the City's and the Police Chief's argument in their Motion that "a second trial is almost never necessary since municipalities almost always will consent that it is responsible in the event of an adverse verdict against the officers," the City and its Police Chief ignored Plaintiffs' proffered Stipulation. Doc. 57, Motion to Bifurcate, p. 6. The resulting silence from the City and its Police Chief speaks volumes. The refusal to sign the Stipulation demonstrates that the City has no intention of satisfying any judgment obtained against these individual police officers. Rather, this recalcitrance belies the City's true intention—to delay and complicate this case—all contrary to the goal of judicial economy. The likelihood of two trials as a result of the City's failure to enter into such a stipulation itself is grounds for denying the Motion to Bifurcate. *Marcos v. City of Chicago*, 100 F. Supp. 2d 893, 897 (N.D. Ill. 2000).

The fact remains that this Court's discretionary decision to bifurcate this case into two separate trials is governed by Civil Rule 42(b). And that decision, based on the facts of each case, must weigh the potential prejudice to the parties, potential confusion to the jury, and convenience and economy resulting from separate trials. In *re Beverly Hills Fire Litigation*, 695 F.2d 207, 216 (6th Cir. 1982), *cert. denied*, 461 U.S. 929 (1983).

**III.    TWO SEPARATE TRIALS WOULD RESULT IN POTENTIAL PREJUDICE TO THE PLAINTIFFS, THIS COURT, AND THE INDIVIDUAL POLICE OFFICERS**

The only one who would benefit from bifurcating this case into two separate trials would be the City and its Police Chief. Plaintiffs, this Court, and the Cincinnati police officer defendants would be prejudiced by having to undergo two separate trials.

### A.  Plaintiffs Would Be Prejudiced By Two Separate Trials.

Proving the pending state tort wrongful death claims as well as the § 1983 claims against the City and the Chief of Police would involve documentary and testimonial evidence of the customs, practices, training and supervision of the individual defendant police officers. Thus, a second trial would require the presentation of much of the same evidence necessary in trying the first case against these same individual police officers.

For instance, an officer's training and understanding of policies and customs would be relevant in determining in the first trial whether that officer: (1) had probable cause to arrest Mr. Owensby; (2) used excessive force in arresting Mr. Owensby; (3) properly determined whether Mr. Owensby was injured as a result of the forcible arrest; and, (4) promptly provided the appropriate level of medical care for Mr. Owensby's fatal injuries. This same underlying evidence would have to be presented in a second trial against the City and its Police Chief, necessitating the recalling of the individual officers, lay witnesses, and experts, as well as the duplicate presentation of the same or similar documentary evidence.

Although deposition discovery is still ongoing, testimony of the police officers at the scene dramatically contradict each other, with some officers saying that fellow officers used excessive force and others saying that they used the force permitted by the training they received by the City of Cincinnati and its Police Department. All of this will have to be presented in the first trial to prove the liability of the individual officers and again in the second trial to prove the customs, policies, and defects in training and supervision of these police officers by the City and its Police Chief. The necessity of recalling witnesses from the first trial to testify in the second trial does not meet the Rule 42(b) requirement of furthering convenience or avoiding prejudice.

*Fall v. Indiana Univ. Board of Trustees*, 33 F. Supp. 2d 729, 736 (N.D. Ind. 1998). Separate trials are not appropriate when issues, witnesses and documentary evidence are "inextricably intertwined." *Pavone v. Gibbs*, 1997 U.S. Dist. LEXIS 16530, *3 (E.D.N.Y. Sept. 29, 1997). Thus, these intertwined facts would severely prejudice Plaintiffs in having to try the same case twice, rendering bifurcation improper.

Plaintiff would be also prejudiced by having to undergo two trips through the appellate process. We have already established that the City has no intention of covering any judgment obtained against its individual defendant police officers. Exhibit A, attached. And the City argues that *Monell* should be read as requiring the establishment of § 1983 liability against the individual police officers *before* the municipality can be tried for its § 1983 liability for its customs, policies, training or supervision of those officers. Doc. 57, pp. 4-5.

As a result, bifurcation would mean that Plaintiffs would not be able to try their case against the City and its Police Chief until all appeals of the judgments obtained in the first trial against the defendant police officers had been exhausted. This would require the duplicate expenditure of resources and costs over a number of years as the individual defendants: appeal their judgments to the Sixth Circuit; seek *en banc* review; filed certiorari petitions to the Supreme Court, and perhaps retry their case on remand if any of the appellate courts so direct.

In the interim witnesses would be lost, memories would fade, and the City would continue with its customs, practices, defective training and supervision that gave rise to Mr. Owensby's death.

Thereafter, once all of the appeals resulting from the first trial are exhausted, the second trial could be held against the City and its Police Chief—who would drag the Plaintiffs again

through the same appellate process before a final enforceable judgment could be obtained.

Justice delayed in this fashion would be justice denied.

### B.     This Court Would Be Prejudiced By Two Separate Trials.

This Court's prime directive is to "secure the just, speedy, and inexpensive determination of every action." Rule 1, Fed. R. Civ. P. As demonstrated above, conducting two separate trials is neither speedy nor inexpensive for this Court.

Moreover, delaying the trial against the City and its Police Chief is a serious impediment to this Court's mandate to "secure the just...determination of this action" and "serve the ends of justice" for this community. *Id*; 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 2388 (1995). Other courts have already recognized that justice often requires that the City and its Police Chief stand trial with its officers if society is to learn from this tragedy.

> The ability to promote an individual official's "scrupulous observance" of the Constitution is important. Perhaps even more important to society, however, is the ability to hold a municipality accountable where official policy or custom has resulted in the deprivation of constitutional rights. A judgment against a municipality not only hold that entity responsible for its actions and inactions, but also can encourage the municipality to reform the patterns and practices that led to constitutional violations, as well as alert the municipality and its citizenry to the issue. In short, a finding against officers in their individual capacities does not serve all the purpose of, and is not the equivalent of, a judgment against the municipality.

*Amato v. City of Saratoga Springs*, 170 F.3d 311, 317-18 (2nd Cir. 1999).

> Deterrence of future misconduct is a proper object of our system of tort liability...and § 1983 claims are a form of tort liability....Depending on the size of the verdict and the size of the municipality, as well as other factors, a judgment against a police officer (even one paid for by the municipality) may be less likely to prompt the municipality to act to prevent future violations than a judgment naming the municipality itself as responsible based on its policies and customs.

*Medina v. City of Chicago*, 100 F. Supp. 2d 893, 896 (N.D. Ill. 2000) (citations omitted).

Finally, trying the same set of facts twice is also prejudicial to this Court in creating the unnecessary risk of inconsistent verdicts.

    **C.    The Individual Cincinnati Police Officer Defendants Would Be Prejudiced By Two Separate Trials.**

This Motion is brought solely by the City of Cincinnati and its Police Chief. Twice in their supporting memorandum they incorrectly state that the "individual officers" request that bifurcation be granted. Doc. 57, Motion to Bifurcate, pp. 3, 8. Not so. As belied by its caption and the Motion itself, the only parties asking for two separate trials are the City and its Police Chief. The Motion to bifurcate is signed only by counsel for the City and its Police Chief. Counsel for the individual officers whom the City and its Police Chief seek to distance themselves from—Mr. Hardin and Mr. Clark—are not signatories to this motion with good reason. Two separate trials would be prejudicial to the individual defendant police officers. They, like the Plaintiff, would be forced into trying their case twice. They would have to testify twice, examine and defend their actions twice, and incur the associated costs twice.

    **D.    No Prejudice To The City Or Its Police Chief If There Is A Single Trial.**

Neither the City nor the Police Chief have established that they will be unduly prejudiced in any way by a single trial of all issues with a single presentation of all facts in context. This argument is missing from their Motion to Bifurcate because it does not exist. Any argument that the City would be prejudiced if the jury finds that the police officers acted unconstitutionally is pure speculation and cannot support bifurcation. *Pavone v. Gibbs*, 1997 U.S. Dist. LEXIS 16530, *5 (E.D.N.Y. Sept. 29, 1997), attached.

Here, a single trial of all issues would expedite this litigation as well as efficient judicial

administration. Under facts virtually identical to those in this case, a trial judge, considering a motion for separate trials in an excessive force civil rights case, denied the motion to bifurcate and held, "[t]his Court has sufficient preventative measures at its disposal to eliminate the risk of prejudice to the individual defendants." *Saviour v. City of Kansas City*, 1992 U.S. Dist. LEXIS 8813 (D. Kan. May 15, 1992), attached.

## IV. TWO SEPARATE TRIALS WOULD RESULT IN CONFUSION TO THE JURY

If two separate trials are ordered, the jury in the first trial would certainly question the absence of the City of Cincinnati and its Police Chief as the individual defendant police officers testified that they acted, or failed to act, in accord with City training, supervision, customs and policies. Indeed, on-going discovery has already established that some officers will testify that their co-defendants clearly used excessive force in the arrest of Mr. Owensby while others will testify that they acted in accord with City policies, customs, training and supervision. Moreover, many of these officers will offer conflicting testimony as to their training (or lack of it) in providing prompt medical care to Mr. Owensby as he lay dying in the back seat of the Golf Manor cruiser, while the officers "secured the scene." Some have testified that they understood that policies and practices of the City to require that they "secure the scene" before providing medical care to Mr. Owensby. Others have testified that they understood that medical care for suspects was the responsibility of supervisors.[2]

Finally, as discussed in the introduction, if two trials are ordered, the jury in the first trial will be reluctant to award a just assessment of damages because they would incorrectly believe that the individual police officers alone are defendants in this case and would never be able to

---

[2] Deposition transcripts are not yet available from the court reporter.

11

satisfy a true "make whole" verdict. This jury confusion over whether the City and its Police Chief would be liable for the damages inflicted by its police officers would likely result in an artificially low verdict.

This is not mere speculation. One need only examine the award in the *Tinch* case cited by the City and its Police Chief. There the decedent saw his brother being searched at gun point by two persons in plain clothes. The decedent came to his brother's aid and attacked the two unidentified men with an axe handle. The two persons were Dayton detectives. In the ensuing scuffle, before they identified themselves as police officers, decedent was shot and killed by one of the detectives. Doc. 57, Exhibit A, *Tinch*, 1996 U.S. App. LEXIS 5716, *2-3. The trial court bifurcated the trial of the detectives from that of the City of Dayton. *Id.* at *3. The jury returned a verdict of $111,000 against the detective who shot and killed Mr. Tinch. *Id.* On appeal, the Sixth Circuit reduced that award to $25,000 for other reasons. *Id.* at *17.

V.     **TWO SEPARATE TRIALS WOULD <u>NOT</u> PROMOTE JUDICIAL ECONOMY OR EFFICIENCY**

As explained above, two separate trials would be a waste of judicial resources at the trial as well as the appellate levels. This Court would be forced to adjudicate the same underlying facts twice in determining whether (1) the individual officers violated Mr. Owensby's Fourth and Fourteenth Amendment Constitutional rights on November 7, 2000; and (2) whether the actions of these same officers were the result of policies, customs, supervision, or training by the City of Cincinnati and its Police Department.

Likewise, the Court of Appeals would be forced to consider the underlying facts and the issue of police policies, customs, procedures, training and supervision twice. In the first trial the

Court of Appeals would have to consider this in the context of whether the individual officers violated Mr. Owensby's constitutional rights when they forcibly arrested him and failed to promptly provide medical care for his fatal injuries. In the second trial the Court of Appeals would have to consider this in the context of whether these same City policies, customs, procedures, training and supervision caused the officers from the first trial to violate Mr. Owensby's constitutional rights.

Thus, the legal issues in both trials are inextricably intertwined with the facts of November 7, 2000. Where the same facts support both legal issues, bifurcation is not appropriate and can constitute an abuse of discretion. *Martin v. Heideman*, 106 F.3d 1308, 1312 (6th Cir. 1997); *Fall v. Indiana Univ. Board of Trustees*, 33 F. Supp. 2d 729, 738 (N.D. Ind. 1998). Judicial economy and efficiency demand that this case be tried in one proceeding where the facts are thoroughly presented, in context, with the trier of fact properly assessing liability and damages upon all of the defendants.

## VI. CONCLUSION

The City of Cincinnati and its Police Chief should stand trial with the police officers they selected, trained and supervised. The facts and legal issues involved in the death of Roger Owensby, Jr., on November 7, 2000 are inextricably intertwined between the actions of the Cincinnati police officers, the Police Chief and the City. The interests of justice in this community demand that the City and its Police Chief stand trial with their police officers.

Plaintiffs contend that the City has failed to implement proper police procedures and practices. If Plaintiffs are correct, then all citizens remain at risk until this case is tried and such policies are corrected. The delay envisioned by the City's Motion to Bifurcate is contrary to this

public interest.

Neither the City nor its Police Chief have articulated any prejudice that they would suffer if this case is tried as a single action with all facts and issues presented in context to a single jury. In fact, this Motion is nothing more than an attempt to manipulate this Court and its jury into rendering an artificially low judgment.

As such, separate trial is not appropriate under Civil Rule 42(b) and the Motion to Bifurcate should be denied.

Respectfully submitted,

/s/ James B. Helmer, Jr.
/s/ Paul B. Martins
James B. Helmer, Jr.  (0002878)
Paul B. Martins (0007623)
Frederick M. Morgan, Jr.  (0027687)
HELMER, MARTINS & MORGAN CO., LPA
Fourth & Walnut Centre
Suite 1900
105 East Fourth Street
Cincinnati, Ohio 45202-4008
Telephone:  (513) 421-2400
Facsimile:  (513) 421-7902
Trial Attorney for Plaintiff

Mark T. Tillar (0029898)
240 Clark Road
Cincinnati, Ohio  45202
Trial Attorney for Plaintiff

John J. Helbling (0046727)
3672 Springdale Road
Cincinnati, Ohio 45251
Trial Attorney for Plaintiff

CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing Plaintiffs' Memorandum in Opposition to Motion For Separate Trials By Defendants City of Cincinnati and Its Police Chief (doc. 57) was electronically filed on October 27, 2003. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

    /s/ Paul B. Martins