Get a Document - by Citation - 1992 U.S. Dist. LEXIS 13070    Page 1 of 7

Case 1:01-cv-00769-SAS   Document 61-3   Filed 10/27/2003   Page 1 of 7

Service: **Get by LEXSEE®**
Citation: **1992 U.S. Dist. LEXIS 13070**

*1992 U.S. Dist. LEXIS 13070, \**

ILIYA PAVLOVICH and MILOS PAVLOVICH, AN INFANT, BY HIS FATHER ILIYA PAVLOVICH, Plaintiffs, -against- THE CITY OF NEW YORK, et al., Defendants.

91 Civ. 5030 (PKL)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1992 U.S. Dist. LEXIS 13070

August 31, 1992, Decided
August 31, 1992, Filed

**CORE TERMS:** child abuse, investigatory, discovery, protective order, expunged, qualified immunity, municipality, caseworkers, first amendment, disclosure, municipal, maltreatment, severance motion, right of access, episode, claims asserted, third parties, good cause, dissemination, unrelated, identifying information, compel discovery, prior restraint, persons named, confidentiality, unfounded, severance, constitutional rights, information obtained, affirmative defense

**COUNSEL:** [*1] AKST & AKST, 110 East 59th Street, 29th Floor, New York, New York 10022, Nelson M. Farber, Esq., of counsel, ATTORNEYS FOR PLAINTIFFS.

O. PETER SHERWOOD, CORPORATION COUNSEL FOR THE CITY OF NEW YORK, 100 Church Street, New York, New York 10007, Joseph A. Tranfo, Esq., of counsel, ATTORNEYS FOR DEFENDANTS.

**JUDGES:** Leisure

**OPINIONBY:** PETER K. LEISURE

**OPINION: OPINION AND ORDER**

LEISURE, District Judge,

In this section 1983 action, defendants now move the Court, pursuant to Fed. R. Civ. P. 26 (c) and 42, for separate trials of the claims asserted against the individual and the municipal defendants; for a stay of discovery on the claims asserted against the municipal defendants; and for a protective order prohibiting disclosure to third parties of an investigatory report created by defendants and produced to plaintiffs during the course of discovery. Plaintiffs oppose the motion for a severance, a stay of discovery and a protective order, and cross-move to compel discovery, pursuant to Fed. R. Civ. P. 37.

BACKGROUND

This is an action brought by Iliya Pavlovich ("Pavlovich") and his infant son Milos Pavlovich ("Milos"), pursuant to 42 U.S.C. § 1983 and principles of New York State law, seeking recovery [*2] for violations of constitutional rights allegedly suffered during an investigation by the defendants of allegations of child abuse lodged against Pavlovich. According to plaintiffs, the dispute that underlies this action took root on October 30, 1990, when the State Central Register of the New York State Department of Social Services, Division of

Get a Document - by Citation - 1992 U.S. Dist. LEXIS 13070 Page 2 of 7

Case 1:01-cv-00769-SAS   Document 61-3   Filed 10/27/2003   Page 2 of 7

Family and Children Services ("DSS"), received a report of alleged child abuse concerning Pavlovich, and assigned defendants Janine Jackson ("Jackson") and Esther Roberts ("Roberts") (collectively the "caseworkers") to investigate the allegations.

On the morning of November 1, 1990, Jackson allegedly began her investigation of the child abuse allegations by gaining access to Pavlovich's home in Manhattan, against Pavlovich's wishes, by threatening to place Milos in foster care. Plaintiffs allege that, after entering the apartment, Jackson conducted a thorough, nonconsensual search of the premises, and then forced Pavlovich to respond to questioning, again by threatening a foster care placement. Acting in contravention of Pavlovich's wishes, Jackson allegedly next proceeded to P.S. 41, where Milos was enrolled as a student, and removed [*3] him from his normal school activities. Over the next hours, Milos allegedly was interrogated extensively about the child abuse allegations and about his home life in general; required to remove his shirt at the school and subjected to an examination by Jackson for bruises; removed from school and taken to the emergency room at St. Vincent's Hospital without notification to Pavlovich; examined at St. Vincent's Hospital, including but not limited to a radiological examination conducted without his father's consent; and finally released to his father's custody after Pavlovich was required, under duress, to sign forms providing defendants with access to his home and permitting them to monitor Milos's upbringing.

On November 26, 1990, Pavlovich received a "Notification of Determination of Indicated" from DSS, which informed him, pursuant to New York Social Services Law ("S.S.L.") § 424 (6)-(7), that the child abuse allegations against him had been indicated. Thereafter, by letters dated November 28, 1990 and February 4 and April 5, 1991, Pavlovich requested a copy of the investigatory file from DSS pursuant to S.S.L. § 422(4)(A)(d). However, Pavlovich never received a copy of the investigatory [*4] file. Rather, by letter dated June 18, 1991, from Sanford R. Berman, Director of State Central Register ("June 18 Letter"), Pavlovich was notified that DSS had determined that the investigatory file concerning the child abuse allegations should be expunged, and that "all information identifying [Pavlovich] as a subject of the report from the local child abuse and maltreatment register [would be expunged] pursuant to Social Services Law 422.9." This lawsuit followed.

By Notice of Motion dated November 12, 1991, defendants moved for separate trials of the claims against the caseworkers who investigated the child abuse allegations and the claims asserted against the remaining defendants under Monell v. New York City Department of Social Services, 436 U.S. 658 (1978); for a stay of discovery with respect to the Monell claims; and for a protective order, pursuant to Fed. R. Civ. P. 26(c), to avoid production of the child abuse investigatory file, which had not properly been expunged as provided by the June 18 Letter. Thereafter, by Notice of Motion dated November 14, 1991, plaintiffs cross-moved, pursuant to Fed. R. Civ. P. 37, for an order compelling defendants [*5] to produce, inter alia, the child abuse investigatory records.

Despite its pending motion for a protective order, the City subsequently decided to provide plaintiffs with a redacted copy of the investigatory file, which omitted the name of the source of the child abuse allegations. This disclosure was a result of the litigants' agreement to a Temporary Order of Confidentiality, dated April 17, 1992 ("Confidentiality Order"), which provided that the investigatory file would be kept confidential and only be used for trial purposes, pending resolution by the Court of defendants' motion for a protective order barring publication of the information in the file to third parties and of the issue whether the Confidentiality Order constitutes a prior restraint of expression, in violation of the First Amendment. The Confidentiality Order also provided that plaintiffs would accept production of the investigatory file, as redacted, without prejudice to their right to bring a subsequent motion for disclosure of the source of the child abuse allegations.

DISCUSSION

Get a Document - by Citation - 1992 U.S. Dist. LEXIS 13070 Page 3 of 7

Case 1:01-cv-00769-SAS Document 61-3 Filed 10/27/2003 Page 3 of 7

A. Motion for Separate Trials

Under Fed. R. Civ. P. 42(b), "the court, in furtherance of convenience or to avoid prejudice, [*6] or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim." "A Court may order separate trials in order to (1) avoid prejudice; (2) provide for convenience; or, (3) expedite the proceedings and be economical. Only one of these conditions need be met for the Court to order a separate trial." Ismail v. Cohen, 706 F. Supp. 243, 251 (S.D.N.Y. 1989), aff'd in part, rev'd in part, 899 F.2d 183 (2d Cir. 1990) (citations omitted). "It is clear that the district court has broad discretion to order separate trials to avoid delay or prejudice." Smith v. Lightning Bolt Productions, Inc., 861 F.2d 363, 370 (2d Cir. 1988).

In support of the severance motion, defendants begin by arguing that separate trials would be expeditious and economical, because a verdict in favor of the caseworkers would avoid the need to adjudicate the Monell claims, see, e.g., Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam), and because the claims against the individuals and the municipality involve different standards of proof and types of evidence, see, e.g., Ismail, supra, 706 F. Supp. at 251. [*7] Defendants also argue that joint trial of the claims against the individuals and the municipality will be unduly prejudicial to Jackson and Roberts, because evidence admissible to show pattern or practice for the purposes of Monell will purportedly be irrelevant to the question whether the caseworkers violated plaintiffs' rights. See, e.g., Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 123 (2d Cir. 1991). Finally, defendants cite a series of recent cases in which Monell claims were severed from claims against individual defendants.

Although there is some merit to these arguments, the Court finds that defendants' application for separate trials is premature. In light of the early stage of this litigation, the parties have not yet conducted sufficient discovery for the Court to determine the extent of the overlap between the evidence that will be relevant to the claims against the individuals and the municipality. Indeed, there are instances in which there is a close nexus between the conduct of an official on a given occasion and a municipal practice or policy. See, e.g., Gentile v. County of Suffolk, 926 F.2d 142, 152 (2d Cir. 1991) [*8] ("The critical question . . . is whether there is sufficient evidence in the record of municipal policy, custom or practice, so that a jury could reasonably infer that the individual conduct in this case was causally connected to the policy.").

The Court also finds substantial merit in plaintiffs' contention that defendants are seeking to establish a per se rule that Monell claims always should be tried separately from claims asserted against individual defendants, regardless of the evidence produced during discovery and of the nexus between the causes of action. In fact, the court notes that there are numerous examples of joint trials involving individual and municipal defendants. See, e.g., Gentile, supra, 926 F.2d at 144-46 (affirming jury verdict of liability against individuals and municipality); Berkovich v. Hicks, 922 F.2d 1018, 1021 (2d Cir. 1991) (affirming jury verdict finding no liability against individual and municipal defendants). In the absence of any tangible evidence to demonstrate that a joint trial of the individual and Monell claims would be unduly prejudicial, the court concludes that defendants' claims [*9] of prejudice are speculative, and should be rejected.

Given the early stage of this litigation, the Court also rejects defendants' assertion that separate trials and a stay of discovery with respect to the Monell claims would be efficient and expeditious. It is, of course, possible that discovery will demonstrate that the investigatory techniques employed by the caseworkers during the Pavlovich episode were the isolated activities of individuals, unrelated to any DSS policy. However, discovery also may reveal that Jackson and Roberts acted in a manner that was part and parcel of DSS investigatory policy in response to child abuse allegations. See, e.g., Van Emrik v. Chemung County Department of Social Services, 911 F.2d 863, 867 (2d Cir. 1990) (establishing rule

Get a Document - by Citation - 1992 U.S. Dist. LEXIS 13070 Page 4 of 7

Case 1:01-cv-00769-SAS    Document 61-3    Filed 10/27/2003    Page 4 of 7

prohibiting x-rays of children for investigative purposes without parental consent, and granting qualified immunity for non-consensual x-rays taken before August 1990). Indeed, even if the Court were to decide that severance is proper, it is likely that the factual overlap between the individual and Monell claims would lead the Court to submit these claims to the same jury, seriatim. [*10] Accordingly, defendants' motion for separate trials of the claims against the caseworkers and the municipality is denied without prejudice to their right to bring a subsequent severance motion at the close of discovery; defendants' motion for a stay of discovery with respect to the Monell claims is denied; and plaintiffs' cross-motion to compel discovery with respect to the Monell claims is granted.

Although severance of the individual and Monell claims is not appropriate at this time, the Court takes this opportunity to reject plaintiffs' claim that the possibility of jury confusion on the question of qualified immunity is a proper basis for denial of the severance motion. It is well established that the availability of the affirmative defense of qualified immunity is a question of law that is reserved for decision by the Court. See Warren v. Dwyer, 906 F.2d 70, 76 (2d Cir.), cert. denied, 111 S. Ct. 431 (1990). However, when "a factual determination is a necessary predicate to the resolution of whether qualified immunity is a bar," Cartier v. Lussier, 955 F.2d 841, 844 (2d Cir. 1992), "the jury should decide [*11] these issues on special interrogatories," Warren, supra, 906 F.2d at 76, before the Court decides whether the affirmative defense of qualified immunity is available to the defendants. See Finnegan v. Fountain, 915 F.2d 817, 823-24 (2d Cir. 1990). Based on this analytical framework, it is clear that the jury's role, if any, in determining the applicability of qualified immunity will be limited to resolution of discrete factual issues that may need to be addressed before the Court reaches its conclusion on this issue. Thus, the Court rejects plaintiffs' contention that the issue of qualified immunity is a proper basis for denying the severance motion.

B. Protective Order

The Court next turns to consider defendants' motion for a protective order prohibiting disclosure of the DSS investigatory file concerning the Pavlovich episode to third parties. Fed. R. Civ. P. 26(c) provides that "upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party of person from annoyance, embarrassment, oppression, [*12] or undue burden or expense, including . . . that the discovery may be had only on specified terms and conditions [or] that discovery be conducted with no one present except persons designated by the courts." "'The grant and nature of protection [under Rule 26] is singularly within the discretion of the district court.'" Dove v. Atlantic Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992) (quoting Galella v. Onassis, 487 F.2d 986, 997 (2d Cir. 1973) (citation omitted)). "A plain reading of the language of Rule 26(c) demonstrates that the party seeking a protective order has the burden of showing that good cause exists for issuance of that order. It is equally apparent that the obverse also is true, i.e., if good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection." In re "Agent Orange" Product Liability Litigation, 821 F.2d 139, 145 (2d Cir.), cert. denied, 484 U.S. 953 (1987).

In support of their motion for a protective order, defendants rely primarily on the detailed statutory and regulatory scheme governing [*13] investigation of and notification concerning allegations of child abuse and maltreatment. See S.S.L. § § 411-428. The statutory scheme that controls the reporting process for allegations of child abuse begins with S.S.L. § § 422(2)(a) and 424(1), which establish a statewide central register of child abuse and maltreatment reports that can receive and process reports of child abuse 24 hours a day, seven days a week. Upon receipt of a child abuse complaint, the child protective service, see S.S.L. § 423(1), must initiate an investigation within 24 hours to evaluate the allegations of abuse, and must determine, within ninety days, whether the report was indicated or unfounded. n1 S.S.L. § 424(7). During this ninety day period, access to the

Get a Document - by Citation - 1992 U.S. Dist. LEXIS 13070    Page 5 of 7

Case 1:01-cv-00769-SAS    Document 61-3    Filed 10/27/2003    Page 5 of 7

investigatory file is governed by S.S.L. § 422(4)(A)(d), which provides, in relevant part, that reports of suspected child abuse are available to "any person who is the subject of the report." Under § 422(4)(A),

A person given access to the names or other information identifying the subjects of the report, or other persons named in the report, except the subject of the report or other persons named in the report, shall not divulge or **[*14]** make public such identifying information . . . . Nothing in this section shall be construed to permit any release, disclosure or identification of the names or identifying descriptions of persons who have reported suspected child abuse or maltreatment.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 S.S.L. § 424(7) was amended, effective January 1, 1992, to require a determination whether the child abuse allegations were indicated or unfounded within 60 days of the report. See 1991 N.Y. Laws Ch. 164.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

When an investigation into allegations of child abuse fails to "determine[] that there is some credible evidence of the alleged abuse or maltreatment," S.S.L. § 422(5) requires that "all information identifying the subjects of the report and all other persons named in the report shall be expunged forthwith." In contrast to the sealing of records, expunction requires physical destruction of the relevant information. See Dorothy D. v. New York City Probation Department, 49 N.Y.2d 212, 424 N.Y.S.2d 890, 400 N.E.2d 1342 (1980); **[*15]** K. v. K., 126 Misc.2d 624, 483 N.Y.S.2d 602, 604-05 (Sup. Ct. N.Y. Co. 1984); 18 N.Y.C.R.R. § 432.9 (c)(2). Thus, S.S.L. § 422(5) requires destruction of all identifying information in the investigatory file, rendering it impossible to link the file to a specific case and leaving the data in the file relevant only for the purposes of statistical evaluation of DSS practices and policies. Cf. Monell, supra, 436 U.S. at 694.

The narrow purpose of these provisions is to protect the rights and reputation of an individual who has been faced with insupportable accusations of child abuse. See K., supra, 483 N.Y.S.2d at 604; Ann L. v. X Corp., 133 F.R.D. 433, 438 (W.D.N.Y. 1990) (Fisher, Mag. J.). However, the broad provisions for expunction of all identifying information, and the blanket prohibition on disclosure of the source of the allegations, indicates that the statute reaches more broadly, and constitutes a delicate balancing of the privacy interests of all parties interested in investigations of allegations of child abuse. Thus,

although the court recognizes that an argument **[*16]** could be made that a party, . . . for whose benefit and protection a record is expunged, should be able to waive that protection and use the expunged record . . . such an argument, nevertheless, ignores the effect of expunging a record (i.e. obliteration).

K., supra, 483 N.Y.S.2d at 605; see also Ann L., supra, 133 F.R.D. at 438 ("a federal court should have no hesitancy in concluding that expunged matter is privileged in a diversity action within the meaning of Fed. R. Civ. P. 26(b)(1)"). Based on these considerations, the Court finds that defendants have demonstrated good cause for a Rule 26(c) protective order.

In an attempt to avoid this result, plaintiffs raise two primary arguments: first, that defendants' application for a confidentiality order constitutes a prior restraint of expression in violation of the First Amendment; and second, that they have a statutory right of access to the investigatory file independent of the federal discovery rules. However, both arguments must fail. Paradigmatic examples of prior restraints of expression include attempts by the

government to enjoin publication of newsworthy information **[*17]** in the media, see Nebraska Press Assn. v. Stuart, 427 U.S. 539, 559 (1976) (rejecting injunction against publication of information with respect to murder trial); New York Times Co. v. United States, 403 U.S. 713 (1971) (per curiam) (rejecting injunction prohibiting publication of "Pentagon Papers"); Near v. Minnesota, 283 U.S. 697, 714-21 (1931) (rejecting Minnesota statute suppressing publication of scandalous information); the imposition of permit fees that discriminate against speech based on its content, see Forsyth County, Georgia v. Nationalist Movement, 112 S. Ct. 2395, 2401 (1992) (Georgia ordinance imposing parade permit fee); and licensing and zoning schemes that constitute censorship, see FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 225 (1990) (zoning-licensing scheme targeting adult book stores).

In contrast, the Supreme Court has explicitly held that

[a] litigant has no First Amendment right of access to information made available only for purposes of trying his suit. . . . An order prohibiting dissemination of discovered information is not the kind of classic prior **[*18]** restraint that requires exacting first amendment scrutiny. . . . Such a protective order prevents a party from disseminating only that information obtained through use of the discovery process. Thus, the party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes.

Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33-34 (1984); accord United States v. Caparros, 800 F.2d 23, 25 (2d Cir. 1986). Thus, to determine whether a confidentiality order in favor of a municipality is appropriate in the discovery context, the Court must "consider whether the 'practice in question [furthers] an important or substantial governmental interest unrelated to the suppression of expression' and whether 'the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved.'" Seattle Times, supra, 467 U.S. at 32 (quoting Procunier v. Martinez, 416 U.S. 396, 413 (1974)).

In light of the preceding discussion of the statutory scheme governing **[*19]** access to child abuse investigatory files, the Court concludes that the State of New York has an important interest in providing for a comprehensive administrative structure to encourage and facilitate the efficient reporting and handling of reports of child abuse, and that this interest is unrelated to the suppression of expression. Moreover, a confidentiality order that prohibits dissemination of information from the investigatory file to third parties, while allowing both the use of the file at trial and the publication of information about the Pavlovich episode that is garnered from sources other than the investigatory file, will be narrowly tailored to meet this important State interest. Accordingly, the Court orders that the case record of the defendants' investigation into the allegations of child abuse against Pavlovich shall be disclosed only in connection with and as necessary for the prosecution or defense of this action, and that the investigatory file shall not be used for any purpose other than the preparation and presentation of this case. This order shall have no impact on plaintiffs' right to publish information about the episode that is not derived from the investigatory **[*20]** file.

The Court also rejects Pavlovich's attempt to rely on his statutory right of access to the investigatory file as a basis for avoiding the Confidentiality Order. Although he may have had a right of access to the file under S.S.L. § 422(4)(A)(d) before DSS concluded that the allegations against him were unfounded, Pavlovich alleges that the file was not turned over to him. Thus, the Court is not here confronted with a challenge by plaintiffs to an attempt by DSS to restrict dissemination of information obtained pursuant to § 422(4)(A)(d). Moreover, plaintiffs' complaint does not include a cause of action seeking access to the investigatory file or damages for an allegedly wrongful withholding of the file. See, e.g., In re Danielle "G", 155 A.D.2d 731, 547 N.Y.S.2d 441, 442 (3d Dept. 1989) (finding S.S.L. § 422(4)(A)(d) right of access to investigatory file that was not properly expunged to challenge Family Court

finding that child abuse allegations were indicated).

Thus, because Pavlovich is relying solely on his purported First Amendment right to disseminate information disclosed during the discovery process, and because plaintiffs' alleged [*21] right of access to the investigatory file under section 422(4)(A)(d) is not currently at issue, the Court expresses no view on the question whether an allegation of a failure to produce records under section 422(4)(A)(d), whether in good faith or otherwise, would state an actionable claim for violation of plaintiffs' state or federal statutory or constitutional rights. However, plaintiffs are granted leave to file a first amended complaint to assert a substantive claim for failure to produce the investigatory file pursuant to S.S.L. § 422(4)(A)(d). See Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990) (leave to replead should be freely granted in absence of prejudice or inordinate delay).

CONCLUSION

For the foregoing reasons, defendants' motions for separate trials of the individual and Monell claims, and for a stay of discovery with respect to the claims against the municipality, hereby are denied. Plaintiffs' cross-motion to compel discovery with respect to the Monell claims hereby is granted. Defendants' motion for a protective order prohibiting disclosure of information contained in the investigatory file except as necessary for purposes [*22] of this action hereby is granted. Plaintiffs hereby are granted leave to file a first amended complaint. The parties hereby are ordered to attend a pretrial status conference on October 23, 1992, at 11:30 A.M., in Courtroom 36 of the United States Courthouse, New York, New York.

**SO ORDERED**

Dated: August 31, 1992
New York, New York

Peter K. Leisure
U.S.D.J.

Service: **Get by LEXSEE®**
Citation: **1992 U.S. Dist. LEXIS 13070**
View: Full
Date/Time: Monday, October 27, 2003 - 9:18 AM EST

* Signal Legend:
● - Warning: Negative treatment is indicated
▲ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any Shepard's signal to Shepardize® that case.

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.