Get a Document - by Citation - 1992 U.S. Dist. LEXIS 8813　Page 1 of 15

Case 1:01-cv-00769-SAS　Document 61-5　Filed 10/27/2003　Page 1 of 14

Service: **Get by LEXSEE®**
Citation: **1992 U.S. Dist. LEXIS 8813**

*1992 U.S. Dist. LEXIS 8813, \**

ARISKA SAVIOUR, Plaintiff, v. CITY OF KANSAS CITY, KANSAS, et. al., Defendants.

CIVIL ACTION No. 90-2430-L

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

1992 U.S. Dist. LEXIS 8813

May 15, 1992, Decided
May 15, 1992, Filed

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff bystander brought suit against defendants, city and police officers, claiming they violated his civil rights in violation of 42 U.S.C.S. §§ 1981, 1983 and 1985, as well as state law. The city and police officers filed motions for partial summary judgment and bifurcation of the trial.

**OVERVIEW:** The bystander claimed he was injured when the police officers used excessive force to restrain him when he came upon an incident involving the officers' search of a house for crack. The court granted the motion for partial summary judgment of the city and police officers as to the § 1981 and § 1985 claims against the city, and it denied all other claims. The court denied the motion for bifurcation of the trial. The motion for partial summary judgment contained no discussion regarding the liability of the individual police officers on the bystander's § 1983 claim. Hence, the issue of the liability of the individual officers for a violation of § 1983 was required to proceed to trial. However, the bystander's claim of indifference to supervision and discipline of the officers failed to support claims of racial animus under § 1981 or § 1985. The arguments for bifurcation of the trial were not convincing, and a single trial of all issues would be most conducive to expedition of the litigation and efficient judicial administration.

**OUTCOME:** The court granted, in part, the motion for summary judgment of the city and police officers, but it denied their request for bifurcation of the trial.

**CORE TERMS:** excessive force, summary judgment, municipality, discipline, supplemental, designation, supervision, animus, indifference, unfounded, partial, custom, time period, conspiracy, arrest, motion to strike, municipal, sufficient evidence, police officers, civil rights, state law, thorough, notice of claim, investigated, designate, notice, come forward, demonstrating, conducive, defeat

**LexisNexis (TM) HEADNOTES - Core Concepts - ✦ Hide Concepts**

Civil Procedure > Summary Judgment > Summary Judgment Standard
**HN1**✦A motion for summary judgment gives a judge an initial opportunity to assess the need for a trial without weighing the evidence or determining credibility. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The requirement of a genuine

issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Essentially, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof

HN2± The party who files a motion for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material facts concerning its claims. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. The nonmoving party may not simply rest on its pleadings in the case but has the affirmative duty to come forward with facts to establish that a genuine issue exists necessitating a trial in the case. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. The court must consider the record in the light most favorable to the party opposing the motion. More than a disfavored procedural shortcut, summary judgment is an important procedure designed to secure the just, speedy and inexpensive determination of every action. Fed. R. Civ. P. 1. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage

HN3± Municipalities cannot be sued under 42 U.S.C.S. § 1983 merely because an injury was inflicted by its employees or agents, even if the injury rises to constitutional dimensions. There is no respondeat superior liability for a municipality under § 1983. However, a municipality can be sued directly under § 1983 where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers. Plaintiffs may recover from a municipality under § 1983 only if there is a direct causal link between the allegedly unconstitutional acts they complain of and a policy or custom established by the municipality. In order to establish municipal liability under § 1983, a plaintiff must: (1) identify the challenged policy or custom; (2) attribute it to the municipality; and (3) show a causal connection between the execution of that policy and the injury suffered. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage

HN4± In order for the plaintiff to state a valid 42 U.S.C.S. § 1983 claim against the city based upon a policy of indifference in the supervision and discipline of officers, considerably more proof than a single incident is necessary to establish both the requisite fault on the part of the city and the causal connection between the policy and the constitutional deprivation. The plaintiff must point to facts outside the plaintiff's own case to support his allegation of an unconstitutional municipal policy. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Generally

HN5± 42 U.S.C.S. § 1981 protects against discrimination on the basis of race or alienage in a limited range of civil rights, including the right to make and enforce contracts, to sue, and to give evidence. Although it is not confined to contractual matters, it is most often invoked in that context. Besides the language protecting against discrimination in the right to contract, § 1981 also provides that all persons shall have the same right to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. This is referred to as the equal benefit clause of § 1981. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Generally

HN6⬆ Presumably under the equal benefit clause, courts have found that 42 U.S.C.S. § 1981 claims can be properly applied to an arrest situation if the plaintiff can prove that his or her arrest was motivated by purposeful discrimination. A plaintiff must show that defendants acted with the intent to discriminate because of race or, in other words, defendants were motivated by racial animus. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Generally
HN7⬆ The city has no respondeat superior liability under 42 U.S.C.S. § 1981 for the actions of the individual officers. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Generally
HN8⬆ 42 U.S.C.S. § 1985 contains three subsections, each of which provides a cause of action under certain circumstances. In order to succeed on a § 1985(3) claim, plaintiff must show that: 1. defendants conspired; 2. the purpose of the conspiracy was to deprive plaintiff of equal protection of the law; 3. defendants took some action in furtherance of the conspiracy; and 4. the conspiracy resulted in an injury or deprivation of plaintiff's rights. The equal protection language in § 1985 means that a claim must be brought on class-based discriminatory animus. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Generally
HN9⬆ An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable for his nonfeasance. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Generally
HN10⬆ A conspiracy may be implied from the circumstances. A party does not need to show that an agreement between two or more persons to commit an illegal act was expressed. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Generally
HN11⬆ A municipality cannot be held liable under 42 U.S.C.S. § 1985(3) on a respondeat superior theory. Therefore, in order to have a claim against the city under § 1985(3), a plaintiff must show that the city engaged in a custom or policy that made it a participant in the conspiracy to deprive the plaintiff of equal protection. More Like This Headnote

Criminal Law & Procedure > Criminal Offenses > Crimes Against the Person > Assault & Battery
HN12⬆ Kan. Stat. Ann. § 60-514 requires that any action for assault and battery be brought within one year. More Like This Headnote

Governments > Local Governments > Claims By & Against
HN13⬆ Kan. Stat. Ann. § 12-105b(d) states: Any person having a claim against a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing said action. Once notice of the claim is filed, no action shall be commenced until after the claimant has received notice from the municipality that it has denied the claim or until 120 days has passed following the filing of the claim, whichever occurs first. Any action brought pursuant to the Kansas tort claims act shall be commenced within the time period provided for in the code of civil procedure or it shall be forever barred, except that, if compliance with the provisions of this subsection would otherwise result in the barring of an action, such time period shall be extended by the time period required for compliance with the provisions of this subsection. More Like This Headnote

Governments > Local Governments > Claims By & Against

*HN14* The notice provisions of Kan. Stat. Ann. § 12-105b require plaintiffs to notify a municipality of the name and address of any public officer or employee involved in a tort. The statute provides that once notice of the claim is filed, no action shall be commenced until after the claimant has received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first. Subsequent language in the statute provides that no person may initiate an action against a municipality unless the claim has been denied in whole or in part. More Like This Headnote

Civil Procedure > Trials > Separate Trials

*HN15* The Federal Rules of Civil Procedure give district courts broad discretion in deciding whether to sever issues for trial. Fed. R. Civ. P. 42(b). A district court may order separate trials of claims in furtherance of convenience, to avoid prejudice, or when separate trials would be conducive to expedition of the litigation and judicial economy. More Like This Headnote

**COUNSEL:** [*1] FOR ARISKA (NMI) SAVIOUR, plaintiff, Rosie M. Quinn, Rosie M. Quinn & Associates, 1975 North 5th Street, Kansas City, KS 66101, 913-281-5050.

FOR CITY OF KANSAS CITY KANSAS, a Municipal Corporation, KANSAS CITY, KANSAS POLICE DEPARTMENT, RICHARD (NMI) HARTFIELD, an individual AND JAMES (NMI) PORTERFIELD, an individual, defendants, Maurice J. Ryan, City of Kansas City, Kansas Municipal Office Building, One McDowell Plaza, 701 North Seventh Street, Kansas City, KS 66101, 913-573-5060.

**JUDGES:** LUNGSTRUM

**OPINIONBY:** JOHN W. LUNGSTRUM

**OPINION: MEMORANDUM AND ORDER**

This case involves a complaint for damages filed by plaintiff against defendants City of Kansas City, Kansas (the "City"), police officers Richard Hartzfeld, James Porterfield and Patrick Ohler, individually, and Thomas Dailey, individually and in his capacity as chief of police, for various civil rights violations pursuant to 42 U.S.C. §§ 1981, 1983 and 1985 and pendent state law claims. The following motions are pending before the court: (1) defendants' motion for partial summary judgment (Doc. #107); (2) defendants' motion for bifurcation of trial (Doc. #99); (3) plaintiff's motion to substitute affidavit attached to supplemental response (Doc. [*2] #125); (4) defendants' motion to strike affidavit of D.P. Van Blaricom (Doc. #126); and (5) defendants' motion to strike plaintiff's amended/supplemental designation of experts and motion in limine. n1 After careful consideration of the arguments and authorities presented by all parties in their briefs and at oral argument, and after a careful examination of the procedural record in the case, the court is prepared to rule on these motions.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Defendant Thomas Dailey's motion to dismiss is also pending before the court. Plaintiff has filed his response to the motion. However, the allowed time period for defendant to reply has not yet elapsed. Due to this fact, the court will defer ruling on defendant Dailey's motion until defendant's reply has been received or the allowed time period to reply has expired.

Because the trial date is rapidly approaching and the parties need to know the parameters of the questions for trial, the court has chosen not to hold this opinion until the Dailey motion is fully at issue.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Defendants' [*3] motion for partial summary judgment is granted as to the § 1981 and § 1985 claims against the City and is denied as to all other claims. Defendants' motion for bifurcation of trial is denied. Defendants' motion to strike affidavit and motion to strike plaintiff's amended/supplemental designation of experts and motion in limine are denied. Plaintiff's motion to substitute affidavit attached to supplemental response is granted.

## I. Factual Background

There is great disparity between the plaintiff's and defendants' versions of the facts giving rise to this lawsuit, which is typical in cases involving alleged use of excessive force. The parties agree that the defendant officers were conducting a search of a suspected crack house pursuant to a warrant on November 10, 1989, and that plaintiff happened upon the scene. From that point the two parties' versions of events differ markedly. The officers claim that plaintiff was asked for identification, which caused plaintiff to run from the officers. The officers state that they were pursuing plaintiff when plaintiff fell into a hole, allowing the officers to catch him. The officers claim plaintiff subsequently resisted arrest [*4] and struggled with the officers. Plaintiff, on the other hand, claims he was basically minding his own business and trying not to interfere with the officers' search when he was accosted by the officers and thrown up against a car. Plaintiff says that he then ran from the officers out of fear. Plaintiff states that the officers caught him and proceeded to beat him, while one of the officers yelled racial epithets at him. The officers deny using any racially derogatory language.

## II. Defendants' motion for partial summary judgment

HN1 A motion for summary judgment gives a judge an initial opportunity to assess the need for a trial without weighing the evidence or determining credibility. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). [*5] Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

HN2 The party who files a motion for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material facts concerning its claims. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. Anderson, 477 U.S. at 256. The nonmoving party may not simply rest on its pleadings in the case but has the affirmative duty to come forward with facts to establish that a genuine issue exists necessitating a trial in the case. Id. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Id. The court [*6] must consider the record in the light most favorable to the party opposing the motion. Bee v. Greaves, 744 F.2d 1387, 1396 (10th Cir. 1984), cert. denied, 469 U.S. 1214 (1985). More than a "disfavored procedural shortcut," summary

Get a Document - by Citation - 1992 U.S. Dist. LEXIS 8813 Page 6 of 14

Case 1:01-cv-00769-SAS    Document 61-5    Filed 10/27/2003    Page 6 of 15

judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed. R. Civ. P. 1." *Celotex, 477 U.S. at 327.*

In their motion for partial summary judgment, defendants focus on plaintiff's claims under 42 U.S.C. §§ 1981, 1983 and 1985. Defendants argue that summary judgment should be granted to the City on plaintiff's § 1983 claim and as to all defendants on plaintiff's § 1981 and § 1985 claims.

### A. Plaintiff's § 1983 claims

The motion for partial summary judgment contains no discussion regarding the liability of the individual officers on plaintiff's § 1983 claim. Hence, the issue of the liability of the individual officers for a violation of § 1983 shall proceed to trial.

Plaintiff has also brought a § 1983 claim against the City. *HN3* Municipalities cannot be sued under § 1983 merely because an injury was inflicted by its employees [*7] or agents, even if the injury rises to constitutional dimensions. There is no respondeat superior liability for a municipality under § 1983. *Monell v. Department of Social Services, 436 U.S. 658, 691 (1978).* However, a municipality can be sued directly under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Id. at 690.* Plaintiffs may recover from a municipality under § 1983 only if there is a direct causal link between the allegedly unconstitutional acts they complain of and a policy or custom established by the municipality. In order to establish municipal liability under § 1983, a plaintiff must: (1) identify the challenged policy or custom; (2) attribute it to the municipality; and (3) show a causal connection between the execution of that policy and the injury suffered. *D.T. by M.T. v. Independent School Dist. No. 16 of Pawnee County, Okl., 894 F.2d 1176 (10th Cir. 1990).*

Plaintiff alleges that his injuries were the direct result of a policy or custom by the City [*8] which amounted to deliberate indifference in the supervision and discipline of officers. Plaintiff alleges that the City's policy of indifference in supervision and discipline increased the likelihood that the City's police officers would use excessive force. Plaintiff claims that the City's policy of indifference is demonstrated by the following factors:

1. Failing to discipline or prosecute officers;

2. Refusing to investigate complaints and officially determine such complaints were justified and proper;

3. Inaction and coverup which encouraged officers to believe excessive force was permissible;

4. Failing to identify instances of excessive force; and

5. Failing to supervise or retrain officers who in fact used excessive force.

Plaintiff has not alleged that the City has a policy explicitly authorizing the use of excessive force. Instead, plaintiff claims that the City's policy of indifference in the supervision and discipline of officers proximately caused his injuries. The policy relied on by plaintiff need not be formal or written. *Monell, 436 U.S. at 691.* However, *HN4* in order for plaintiff to state a valid § 1983 claim against the City based [*9] upon a policy of indifference in the supervision and discipline of officers, considerably more proof than a single incident is necessary to establish both the requisite fault on the part of the City, and the causal connection between the policy and the constitutional deprivation. *City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985).* The plaintiff must point to facts outside the plaintiff's own

case to support his allegation of an unconstitutional municipal policy. *Watson v. City of Kansas City, Kansas*, 857 F.2d 690, 695 (10th Cir. 1988). In this case, the City has furnished evidence wherein it specifically denies the existence of a constitutionally inadequate policy regarding its supervision and training of officers. Therefore, the burden is on the plaintiff to establish sufficient evidence to find the existence of a genuine issue of material fact that could allow a jury to find in his favor on the § 1983 claim against the City. The plaintiff may not rest solely upon the pleadings. *Celotex*, 477 U.S. at 324.

To support his allegation that the City had a constitutionally inadequate policy regarding supervision **[*10]** and training of officers, plaintiff first presents evidence of past instances of excessive force complaints which have been brought against City police officers. Plaintiff presents evidence that from January 1, 1984 to December 31, 1989, 237 excessive force complaints were actively investigated by the Office of Internal Affairs. In addition, during this time period 213 additional allegations of excessive force were received and classified as miscellaneous complaints. n2 Of the 237 excessive force complaints that were actively investigated during this period, plaintiff has produced evidence that in 1985 eighty-five percent of the officers involved received no discipline; in 1986 ninety percent received no discipline; in 1987 ninety percent received no discipline; in 1988 ninety-six percent received no discipline; and in 1989 ninety-six percent received no discipline. Plaintiff has further produced evidence that during the years 1988 through 1989, which were the only years plaintiff was able to obtain comprehensive records regarding the outcome of investigations by the City, the Internal Affairs Unit investigated a total of 45 complaints. Of those complaints twenty-seven were deemed **[*11]** unfounded, n3 sixteen were deemed not substantiated and discipline was imposed one time.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Miscellaneous complaints are not investigated and/or are filed by complainants who do not cooperate in the investigation sufficiently to bring it to completion. According to City policy, reports would be classified as miscellaneous for the following reasons: (a) reporting party may be obviously intoxicated at the time of the complaint; (b) reporting party may be providing information only, but is not filing a complaint; (c) case may be terminated at the request of the complainant; (d) case may be terminated because complainant failed to cooperate; (e) report is invalid on its face; and (f) other information may be received that does not either merit, justify or permit a formal or informal investigation.

n3 The City sends letters to complainants which provide four categories for complaints. These categories are: (1) unfounded (acts complained of did not occur or failed to involve police personnel); (2) exonerated (acts occurred but were justified, lawful and proper); (3) not substantiated (investigation failed to discover sufficient evidence to clearly prove or disprove the allegation made in the complaint); and, (4) not involved.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*12]**

Plaintiff has produced further evidence that since 1980, the City has settled 24 excessive force cases and there have been four jury verdicts in favor of plaintiffs. In addition, plaintiff has presented evidence of several instances where specific officers have had multiple excessive force complaints lodged against them. Included is an example of a case where a plaintiff received a favorable jury verdict on a complaint that was determined to be unfounded by the City's investigation. Additionally, plaintiff has produced evidence that officer Hartzfeld has had two prior excessive force complaints filed against him.

Defendants argue that plaintiff's mere recitation of the sheer number of complaints,

Get a Document - by Citation - 1992 U.S. Dist. LEXIS 8813 Page 8 of 15

Case 1:01-cv-00769-SAS Document 61-5 Filed 10/27/2003 Page 8 of 54

regardless of their validity, does nothing to bolster plaintiff's argument that the City had a policy of nonsupervision and nondiscipline of police officers that amounted to a deliberate indifference to the use by those officers of excessive force. Defendants argue that the plaintiff has provided no evidence that the claims cited by him were not fully investigated or that they deserved some form of discipline.

This argument by defendants does have some merit, and it has been relied [*13] on by some courts when dealing with claims of this nature. See Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987). However, defendants' argument that the plaintiff cannot use evidence of complaints that were deemed to be unfounded or unsubstantiated could have the effect of insulating a municipality that was engaged in an unconstitutional policy from liability. For example, if a municipality was engaged in a practice of superficial investigation and disregard of police brutality complaints which resulted in finding justified complaints to be unfounded, and plaintiffs were barred from using those complaints as evidence due to the fact that the complaints had been determined to be unfounded, the very policy resulting in a deliberate indifference to civil rights would insulate the municipality from civil rights liability. In an analogous situation, the Tenth Circuit rejected defendants' argument that statistics reflecting a discrepancy in arrest rates between domestic assaults and nondomestic assaults should be disregarded because the statistics did not take into account whether probable cause to arrest was present. Watson v. City of Kansas City, Kan., 857 F.2d 690, 695 (10th Cir. 1988). [*14] The court found that the determination of whether probable cause existed may be subject to the same allegedly unconstitutional policy that led to the discrepancy in arrest rates between domestic and nondomestic situations. In the present case, the fact that a huge majority of excessive force complaints are determined to be unfounded similarly could be due to the City's unconstitutional policy of indifference to conducting reasonably thorough investigations of excessive force complaints.

Although the plaintiff's statistical evidence is relevant, this court would not find the statistical evidence alone enough to prove the existence of a policy or custom. See McCleskey v. Kemp, 481 U.S. 279 (1987). In the present case, the plaintiff has challenged the City's investigation of excessive force complaints as cursory and indifferent. The plaintiff proffers witnesses who themselves have filed excessive force complaints that they believe to have been wrongfully determined by the City to be unfounded. The question of whether the City does thoroughly investigate complaints is a question of fact for the jury. Drawing all reasonable inferences in favor of the plaintiff, [*15] if the testimony of those witnesses is believed it is possible that a jury could rationally conclude that the City's response to complaints of use of excessive force by City police officers was uninterested and superficial. The permissibility of this inference is not diminished by the fact that many of the complaints have been determined by the City to be unfounded. A jury would be free to reason that the very failure of the City to conduct a reasonably thorough investigation into civilian claims of excessive force indicated that the City simply did not care what a thorough investigation would reveal, and that the City was indeed indifferent to whether excessive force was used. See Fiacco v. City of Rensselaer, N.Y., 783 F.2d 319, 331 (2nd Cir. 1986).

Furthermore, plaintiff's version of events regarding his own situation, if believed, demonstrates an attitude of indifference by the City regarding investigation of excessive force complaints. It is true that failure of a police department to discipline in a specific instance cannot be an adequate basis for municipal liability under Monell. See Santiago v. Fenton, 891 F.2d 373, 382 (1st Cir. 1989). [*16] However, taken with the other evidence plaintiff has proffered, the events regarding the investigation of plaintiff's own complaint constitutes some evidence of custom or policy.

Plaintiff also has offered evidence that the police department engages in a practice of destroying internal affairs records. Plaintiff argues that this practice prevents proper tracking of police misconduct and eliminates the ability of citizens to substantiate their claims of constitutional violations, which tends to condone the use of excessive force. n4 Although the

court believes that the strength of this argument is marginal, See *Bingham v. City of Pittsburgh*, 658 F.Supp. 655 (W.D.Pa. 1987), it does provide at least some evidence in support of plaintiff's allegation. That is particularly so here where the plaintiff does not just rely on an inference to be drawn by the jury from the evidence of the practice but also provides expert testimony to aid the jury in putting the practice in context. n5

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 In support of this theory, plaintiff relies on the expert opinion of D. P. Van Blaricom. The admissibility of Van Blaricom's expert opinion has been a source of dispute between the parties. As discussed later in this opinion, the court has decided that Van Blaricom was timely designated as an expert and his affidavit is considered here. [*17]

n5 In a recent opinion, this court granted summary judgment against a plaintiff who also made the argument that the City's practice of destroying internal affairs records established a basis for a § 1983 claim against the City. *Bosley v. Foster*, 1992 WL 40696 (D.Kan. 1992). However, the present case differs from *Bosley* in several important respects. In *Bosley*, the plaintiff pointed to no facts outside the plaintiff's own case to support his allegation of an unconstitutional municipal policy other than the bare bones allegation that the destruction of records insulated the City against a plaintiff's ability to produce evidence of a custom or policy and one prior incident of alleged excessive force, for which a complaint was never filed, by the same officer alleged to have used excessive force on the plaintiff. In contrast, plaintiff in the present case, in addition to the evidence regarding destruction of records (supported by expert testimony), has presented extensive statistical evidence from which a jury could infer that the City did not conduct reasonably thorough investigations of excessive force complaints and evidence of possible use of excessive force by multiple officers, not just those alleged to have used excessive force against the plaintiff. He has offered facts from which a jury could make the linkage and which the plaintiff in *Bosley* had failed to do.

- - - - - - - - - - - End Footnotes - - - - - - - - - - - - - - [*18]

Defendants make a final argument that plaintiff has failed to show sufficient causation between the plaintiff's injury and the City's alleged policy of nonsupervision and nondiscipline of officers. Defendants point out that no attempt has been made by plaintiff to elicit testimony that any officer believed that the use of excessive force would not be tolerated or disciplined. Although this is true, plaintiff does not need evidence of that sort to prove causation. This court does not believe it would *ever* be likely for a plaintiff to elicit testimony from a police officer to the effect that the officer believed he or she could use excessive force without being disciplined. In fact, it is logical in this case to believe that continued tolerance of repeated misconduct facilitates the possibility of similar unlawful conduct in the future. See *Bielevicz v. Dubinon*, 915 F.2d 845 (3rd Cir. 1990). If plaintiff's version of the facts is believed, it would be reasonable for a jury to infer that the use of excessive force by the officers was related to the City's indifference in supervision and discipline, which led the officers to believe they would not be sanctioned [*19] for misconduct, just as similar officers had not in the past. See *Spell v. McDaniel*, 824 F.2d 1380 (4th Cir. 1987).

When all of the plaintiff's evidence is considered, it is sufficient, if believed, to support a jury finding that the City followed a policy of deliberate indifference regarding supervision and discipline of officers which proximately caused plaintiff's injury. For this reason, the City's summary judgment motion on plaintiff's § 1983 claim is denied.

B. Plaintiff's § 1981 claims

*HN5* Section 1981 protects against discrimination on the basis of race or alienage in a limited range of civil rights including the right to make and enforce contracts, to sue, and to give evidence. Although it is not confined to contractual matters, it is most often invoked in that context. See *Arnold v. Board of Educ. of Escambia County, Ala.*, 880 F.2d 305 (11th Cir. 1989). Besides the language protecting against discrimination in the right to contract, § 1981 also provides that "all persons . . . shall have the same right . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by [*20] white citizens . . ." This has been referred to as the equal benefit clause of § 1981. *Id*.

*HN6* Presumably under the equal benefit clause, courts have found that § 1981 claims can be properly applied to an arrest situation if the plaintiff can prove that his or her arrest was motivated by purposeful discrimination. *Washington v. Simpson*, 806 F.2d 197 (8th Cir. 1986). A plaintiff must show that defendant acted with the intent to discriminate because of race or, in other words, defendants were motivated by racial animus. *McKenzie v. City of Milpitas*, 738 F.Supp. 1293 (N.D.Cal. 1990).

This court finds that plaintiff has come forward with sufficient facts demonstrating racial animus to defeat the summary judgment motion of the officers. The record contains plaintiff's deposition testimony that in the course of his arrest he was called a "poor-ass nigger," "black son-of-a-bitch," "black bastard," and other racial epithets. The court in *Washington* found sufficient evidence of racial animus on similar facts.

Although plaintiff has come forward with sufficient facts demonstrating racial animus to defeat the summary judgment motion of the [*21] officers, he has failed to come forward with any evidence demonstrating racial animus by the City. Plaintiff's facts supporting his allegation of a policy of indifference on the part of the City with regards to supervision and discipline resulting in an increased likelihood of the use of excessive force contain no evidence that such policy was discriminatory or motivated by racial animus. *HN7* The City has no respondeat superior liability under § 1981 for the actions of the individual officers. *Jett v. Dallas Independent School Dist.*, 491 U.S. 701 (1989). Therefore, summary judgment will be granted in favor of the City on plaintiff's § 1981 claim.

C. *Plaintiff's § 1985 claims*

Plaintiff's final civil rights claim is an allegation that the defendants conspired to interfere with plaintiff's civil rights in violation of § 1985. *HN8* Section 1985 contains three subsections, each of which provides a cause of action under certain circumstances. Section 1985(3) is the only subsection which could apply in this case. In order to succeed on a § 1985(3) claim, plaintiff must show that:

1. Defendants conspired;

2. the purpose of the conspiracy was to deprive plaintiff [*22] of equal protection of the law;

3. defendants took some action in furtherance of the conspiracy; and

4. the conspiracy resulted in an injury or deprivation of plaintiff's rights.

*United Bhd. of Carpenters & Joiners of America v. Scott*, 463 U.S. 825, 828-29 (1983).

In *Griffin v. Breckenridge*, 403 U.S. 88 (1971), the Supreme Court held that the equal protection language in § 1985 means that a claim must be brought on "class-based discriminatory animus." *Id.* at 102. Plaintiff's § 1985 claim derives from his theory that the

individual officers conspired to use excessive force and arrest him because he was black. For the same reasons discussed earlier in this opinion regarding plaintiff's § 1981 claim, the court finds that plaintiff has produced sufficient evidence regarding racially based animus to defeat summary judgment on his § 1981 claims against the individual officers. See Lenard v. Argento, 699 F.2d 874 (7th Cir. 1983).

Defendants Porterfield and Ohler argue that since there is no evidence that they personally used excessive force on the plaintiff, they should be granted summary judgment. [*23] However, HN9 an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance. Fundiller v. City of Cooper City, 777 F.2d 1436, 1442 (11th Cir. 1985).

Defendants also point out that plaintiff has not directly alleged any facts that indicate a conspiracy took place and has offered no facts to support a finding of conspiracy. However, HN10 a conspiracy may be implied from the circumstances. A party does not need to show that an agreement between two or more persons to commit an illegal act was expressed. Hunt v. Weatherbee, 626 F.Supp. 1097 (D. Mass. 1986). There is sufficient evidence for a jury to reasonably believe that there was an overt act and circumstantial evidence of an agreement among the officers to deprive plaintiff of his equal rights. Therefore, defendants motion for summary judgment as to the individual officers is denied.

As to defendant City, courts have extended *Monell* to claims arising under § 1985(3), and held that HN11 a municipality cannot be held liable under § 1985(3) on a respondeat superior theory. Owen v. Haas, 601 F.2d 1242 (2d Cir. 1979); [*24] Gant v. Alquippa Borough, 612 F.Supp. 1139, 1142 (W.D.Pa. 1985). Therefore, in order to have a claim against the City under § 1985(3), plaintiff must show that the City engaged in a custom or policy that made it a participant in the conspiracy to deprive plaintiff of equal protection. Plaintiff's theory of indifference to supervision and discipline of officers contains no allegations of racial animus that enable plaintiff to sue the City under § 1985(3). Therefore, summary judgment will be granted in favor of the City on plaintiff's § 1985(3) claim.

*D. Plaintiff's state law claims*

Defendants argue that plaintiff's state law assault and battery claims against the individual officers should be barred due to plaintiff's failure to file his action within the one-year statute of limitations period. The incident giving rise to plaintiff's alleged injuries occurred on November 10, 1989. Plaintiff sent a notice of claim to the City pursuant to K.S.A. § 12-105b on August 7, 1990. Plaintiff's original complaint was filed on December 6, 1990.

HN12 K.S.A. § 60-514 requires that any action for assault and battery be brought within one year. Plaintiff's original complaint [*25] was not filed within the one year time period. Plaintiff states that the reason he did not file his action against the officers within one year was due to his efforts to comply with the notice requirements of K.S.A. § 12-105b. n6 HN13 K.S.A. § 12-105b(d) states:

> Any person having a claim against a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing said action. . . . Once notice of the claim is filed, no action shall be commenced until after the claimant has received notice from the municipality that it has denied the claim or until 120 days has passed following the filing of the claim, whichever occurs first. . . . Any action brought pursuant to the Kansas tort claims act shall be commenced within the time period provided for in the code of civil procedure or it shall be forever

barred, except that, if compliance with the provisions of this subsection would otherwise result in the barring of an action, such time period shall be extended by the time period required for compliance with the provisions of this subsection.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 The court notes that in previous cases the City has sought dismissal of actions *against its employees* when plaintiffs failed to comply with the notice requirements of K.S.A. § 12-105b. See *Settle v. City of Kansas City, Kansas, 771 P.2d 948 (Kan. Ct. App. 1990)* (unpublished disposition).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*26]

Plaintiff argues that the extension period for filing claims provided in the section should apply to his claims against the individual officers. Based upon the language of § 12-105b, this court agrees that the tolling period of the statute applies to the filing of the actions against the officers individually as well as the City. HN14⊤The notice provisions of the statute require plaintiffs to notify a municipality of the name and address of any public officer or employee involved. The statute provides that "Once notice of the claim is filed, *no action* shall be commenced until after the claimant has received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first." Subsequent language in the statute provides that "No person may initiate *an action against a municipality* unless the claim has been denied in whole or in part." The fact that the legislature used language specifying actions against municipalities at one point in the statute, but did not use such language in the sentence discussing the bar on filing actions following a notice of claim to a municipality, leads this [*27] court to conclude that § 12-105b bars the filing of claims against *both* the City *and* the officers following the notice of claim to the City. Therefore, the extension period provided in the statute applies to the claims against the individual officers as well as to the City, and the state law tort claims against the officers were timely filed.

Defendant Ohler makes an additional argument that the action against him was not timely filed because he was not added as a defendant until plaintiff filed his second amended complaint on May 3, 1991. Defendant Ohler argues that the plaintiff's second amended complaint should not relate back, and therefore the action against Ohler was filed outside the statute of limitations.

The court finds that the plaintiff's second amended complaint properly relates back to the original complaint pursuant to Fed. R. Civ. P. 15(c). The claim arose out of the occurrence set forth in the original pleading. Ohler received constructive notice of the institution of the proceeding during the period provided by law due to the fact that plaintiff filed a timely complaint against the two other officers involved in the incident and from the notice of claim [*28] that was sent to the City. Additionally, due to the fact that a timely action was filed against the two other officers involved in the incident, Ohler should have known that the action would have been brought against him but for a mistake in the initial pleading. The court also finds that Ohler is not prejudiced in maintaining his defense on the merits due to his constructive notice of the action.

II. *Defendants' motion to bifurcate*

Get a Document - by Citation - 1992 U.S. Dist. LEXIS 8813

Case 1:01-cv-00769-SAS    Document 61-5    Filed 10/27/2003    Page 13 of 14

Page 13 of 15

*HN15* The Federal Rules of Civil Procedure give district courts broad discretion in deciding whether to sever issues for trial. See Fed. R. Civ. P. 42(b); *Easton v. City of Boulder, Colo., 776 F.2d 1441, 1447 (10th Cir. 1985).* A district court may order separate trials of claims in furtherance of convenience, to avoid prejudice, or when separate trials would be conducive to expedition of the litigation and judicial economy.

Defendants urge this court to bifurcate the trial in this case. Defendants propose an initial trial dealing with the claims of excessive force against the individual officers and a second trial dealing with the municipal liability of the City based on various patterns, practices and policies. Defendants [*29] argue that separate trials would be conducive to expedition of the litigation and to efficient judicial administration. Defendants also argue that separate trials would avoid prejudice to the individual officers that will occur if they are tried simultaneously with the issue of the City's municipal liability.

Plaintiff, on the other hand, urges that a single trial would minimize delay, expense and convenience of all the parties involved. Plaintiff states that separate trials would require duplication of evidence and would not be conducive to expeditious litigation and efficient judicial administration. Plaintiff further argues that the defendants have failed to establish any prejudice to the individual officers by proceeding in one action, that the possibility of prejudice, if any, is not substantial, and that the court has sufficient preventative measures, such as jury instructions, to eliminate prejudice. In fact, plaintiff states that if the trial is separated into two phases, plaintiff will be prejudiced because he will be denied the opportunity to fully and completely establish his claims.

Upon careful consideration and review of the entire record of this case, the court [*30] does not find defendants' arguments for bifurcation of trial convincing. It is the court's belief that a single trial of all issues would be most conducive to expedition of this litigation and efficient judicial administration. The court has sufficient preventative measures at its disposal to eliminate the risk of prejudice to the individual defendants. For these reasons, defendants' motion to bifurcate will be denied.

*III. Other pending matters*

The remaining pending matters before the court deal with plaintiff's designation of D. P. Van Blaricom as an expert witness and plaintiff's use of an affidavit prepared by Van Blaricom in his supplemental response to defendants' motion for partial summary judgment. Defendants argue that plaintiff's amended/supplemental designation of experts, which includes Van Blaricom as an expert, failed to provide the information required by Fed. R. Civ. P. 26(b)(4)(A) and that it was not timely filed. Therefore, defendants argue, Van Blaricom should be precluded from testifying at trial and his affidavit should be stricken from plaintiff's supplemental response to defendants' motion for partial summary judgment.

After a thorough review [*31] of the lengthy and somewhat confusing procedural history of this case, the court is convinced that plaintiff did designate Van Blaricom as an expert in a timely fashion. On April 1, 1992, the magistrate issued an order granting plaintiff until April 15, 1992 to provide defendants with the information required under Fed. R. Civ. P. 26(b)(4)(A) pertaining to expert witnesses to be called at trial. It is clear that this order contemplated that plaintiff would be allowed to designate additional experts not listed on plaintiff's original designation of experts. The order states that "in the event plaintiff does not designate any further experts, no further designations may be made by defendants." On April 15, 1992 plaintiff filed its amended/supplemental designation of experts with the court, which included the designation of Van Blaricom as an expert.

Although the magistrate's April 1, 1992 order granted plaintiff until April 15, 1992 to *provide defendants with the information required under Fed. R. Civ. P. 26(b)(4)(A)*, plaintiff mailed a copy of his amended/supplemental designation of experts to defendants, which defendants

Get a Document - by Citation - 1992 U.S. Dist. LEXIS 8813    Page 14 of 15

Case 1:01-cv-00769-SAS    Document 61-5    Filed 10/27/2003    Page 14 of 14

did not receive until April 20, 1992. While the court [*32] does not agree with defendants that the fact defendants did not receive the amended/supplemental designation until April 20, 1992 is sufficient grounds to bar plaintiff from using Van Blaricom as an expert witness, the court is sympathetic to defendants' argument that the late notice they received made it nearly impossible for them to comply with the court's scheduling order. Therefore, defendants shall be given until May 29, 1992 to take the deposition of Van Blaricom if they so choose. Defendants shall further have until June 5, 1992 to designate any expert they wish to call to rebut the expected testimony of Van Blaricom. Plaintiff shall then be allowed to depose any expert so designated by defendants at any time prior to his or her testimony at trial.

*IV. Conclusion*

**IT IS, THEREFORE, BY THE COURT ORDERED THAT:**

(1) Defendants' motion for partial summary judgment (Doc. #107) is denied in part and granted in part. Summary judgment is granted to defendant City on plaintiff's § 1981 and § 1985 claims. Summary judgment is denied as to the City on plaintiff's § 1983 claim and as to all defendants on plaintiff's pendent state law tort claims. Further, summary judgment [*33] is denied as to the individual officers on plaintiff's § 1981, § 1983 and § 1985 claims;

(2) Defendants' motion to bifurcate (Doc. #99) is denied;

(3) Plaintiff's motion to substitute affidavit attached to supplemental response (Doc. #125) is granted;

(4) Defendants' motion to strike affidavit of D.P. Van Blaricom (Doc. #126) is denied; and

(5) Defendants' motion to strike plaintiff's amended/supplemental designation of experts and motion in limine (Doc. #128) is denied. Defendants shall have until May 29, 1992 to depose plaintiff's expert D. P. Van Blaricom. Defendants shall then have until June 5, 1992 to designate any expert they wish to call to rebut the expected testimony of Van Blaricom. Plaintiff shall be able to depose any expert so designated by defendants at any time prior to his or her testimony at trial.

**IT IS SO ORDERED.**

Dated this 15th day of May, 1992, at Kansas City, Kansas.

John W. Lungstrum

U.S. District Judge

Service: **Get by LEXSEE®**
Citation: **1992 U.S. Dist. LEXIS 8813**
View: Full
Date/Time: Monday, October 27, 2003 - 9:21 AM EST

\* Signal Legend:
● - Warning: Negative treatment is indicated
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
🅐 - Citing Refs. With Analysis Available
ℹ - Citation information available