UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **The Estate of Roger D. Owensby** | : | **Case No. C-1-01-769** |
| **Plaintiff,** | : | **(Judge Spiegel)** |
| -vs- | : | |
| **CITY OF CINCINNATI, et al.,** | : | **MOTION FOR PROTECTIVE ORDER** |
| **Defendant.** | : | |

Now comes Defendant, City of Cincinnati, and moves this Court, pursuant to Federal Rule 26(c), for a Protective Order ruling that the discovery sought in Plaintiff's Third Request for Production of Documents to Defendant City of Cincinnati not be had, or, in the alternative, that the Court limit the scope of the Document Requests.

A Memorandum in support of this motion is attached hereto and made a part hereof.

Respectfully Submitted,

JULIA L. McNEIL (0043535)
City Solicitor


/s/ Geri Hernandez Geiler
GERI HERNANDEZ GEILER  (0042081)
Sr. Assistant City Solicitor
Room 214 City Hall
Cincinnati, Ohio  45202
Ph. (513)352-3338
Fax (513-3521515)
email: geri.Geiler@cincinnati-oh.gov


/s/ Neil F. Freund

NEIL F. FREUND (0012183)
One Dayton Centre
1 South Main St.
Suite 1800
Dayton, Ohio 45402-2017
Ph. (937) 222-2424
Fax (937)222-5369
email: nfreund@ffalaw.com

**MEMORANDUM**

On October 1, 2003 Plaintiff served on the City, Plaintiff's Third Request for Production of Documents to Defendant City of Cincinnati. The requests are attached hereto as Ex. A. Plaintiffs have sought discovery of several matters that are absolutely irrelevant to any of the issues in this case, which occurred over twenty years ago, which are overly broad and vague, and which are not reasonably calculated to lead to the discovery of admissible evidence.

Fed. R.Civ. P. 26(c) permits courts to issue a protective order if justice requires, and to protect individuals from "annoyance, embarrassment, oppression, or undue burden or expense." The rule grants broad discretion to trial judges in fashioning protective orders. *York v. American Medical Systems, Inc.*, 1998 U.S. App. LEXIS 30105 (6th Cir. 1998) (Attached hereto as Ex. B), citing *In Re Eli Lilly & Co.,* 142 F.R.D. 454, 456 (S.D. Ind. 1992). "A motion under Rule 26(c) to limit discovery requires the district court to balance the interests at issue, and to compare the hardship on both parties if the motion is either granted or denied." *Id.* It is proper for the court to consider the nature and magnitude of the hardship imposed on each party by the order. *Id.*

The standard for Fed. R. Civ. P. 26(b)(1) is whether the matter sought to be discovered is relevant to the claims:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . the information sought need not be admissible at the trial if the information appears reasonably calculated to lead to the discovery of admissible evidence.

See Fed. R. Civ. P. 26(b)(1).

While the standard for discovery is generally considered to be broad, it is not without limits. *Hoeffer v. Mack Trucks, Inc.* 981 F.2d 377, 382 (8th Cir. 1992). Discovery of matters not reasonably calculated to lead to the discovery of admissible evidence is not within the scope of Rule 26(b)(1). *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, (6th Cir. 1997). Although that which is relevant to the subject matter involved in the pending action has been construed broadly, discovery has ultimate and necessary boundaries. *United States v. 266 Tonawanda Trail*, 95 F.3d 422 (6th Cir. 1996), citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S. Ct. 385 (1947)).

Courts have noted that there must be some showing of relevance before parties are required to "open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues of the case." *Hoeffer* at 380. Despite the liberality of discovery, courts are reluctant to allow any party to perform a fishing expedition and to explore matters that do not appear relevant to the theory pled. *See Onwuka v. Federal Express Corp.* 178 F.R.D. 508, 516 (Dist. of Minnesota, 1987); *Blum v. Schlegel*, 150 F.R.D. 38, 39 (W.D. N.Y. 1993). This Court

3

has discretion to control the extent of discovery. *Kanoll v. AT&T*, 176 F.3d 359 (6th Cir. 1999). In fact, district courts have "substantial latitude" in the exercise of their oversight. *Marshall v. Bramer*, 828 F.2d 355, 360 (6th Cir. 1985), citing *Seattle Time Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199 (1984).

Even when dealing with requests for allegedly relevant information, the rules recognize that discovery may be limited when the benefits to be obtained are outweighed by the burdens and expenses involved. Fed. R. Civ. P. 26(b)(2) recognizes this Court's inherent power to provide limitations to discovery requests where the Court determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome or less expensive;
>
> (ii) The party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the party's resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. The court may act upon its own initiative after reasonable notice or pursuant to a motion under subdivision (c).

*Id.* Courts recognize that these considerations are to be applied in a commonsense and practical manner. Thus, it is proper to deny discovery of matter that is relevant only to claims or defenses which have been stricken, "or to events that occurred before an applicable limitations period, unless the information sought is otherwise relevant to issues in the case." *Lewis,* supra at 389.

It is clear from the Third Request for Production of Documents that the Plaintiff will attempt to poison the well against the Individual Defendant Police Officers where the only issue against the Officers is whether or not they used excessive force when arresting Roger Owensby. Arguably, the information sought in the Third Request for Production of Documents pertains to "custom and policy" only. This point illustrates the importance of bifurcating the issues in this case. Plaintiff, obviously, will attempt to use the type of information requested herein as evidence that the City had an unconstitutional policy or custom. Such evidence at trial will necessarily become confused with the singular issue concerning the Individual Officers; namely, whether their actions caused any constitutional deprivation to Roger Owensby. The Officers will be unfairly prejudiced by evidence of alleged deficient policies and procedures allegedly implemented by the City. Such evidence only taints the juror's minds and clouds their determination of the singular issue concerning the Individual Officers.

Request for Production of Documents No. 25 calls for all reports, complaints and interviews pertaining to use of force that were reviewed or developed by the U.S. Department of Justice and the City in developing the *Memorandum of Agreement between the United States Department of Justice and the City of Cincinnati, Ohio and the Cincinnati Police Department, April 12, 2002.* The City objects to this request because it calls for documents which are attorney work product and which were part of settlement negotiations. The reports, complaints and interviews conducted were compiled and produced to the United States Department of Justice (DOJ) by the City Solicitor's Office and the City's counsel, Billy Martin, in anticipation of litigation. Further,

the documentation is confidential and privileged as a part of a voluntary settlement agreement entered into between the City and the DOJ. The Federal Court (Judge Susan Dlott) has ongoing jurisdiction over the agreement and the City has an ongoing duty to report to the Court and the Monitor on matters involved in the agreements between the City and the DOJ and between the City and the Collaborative.

Evidencing the confidential nature of the workings of the collaborative and the DOJ investigation is the fact that the proceedings of the various committees are currently covered by a protective order issued by Judge Susan Dlott. (See Ex. B, Protective Order: Re Implementation of Collaborative Agreement). In this case, much of the requested information would require the City to upset the confidential nature of the collaborative agreement and the DOJ investigation and agreement as well as possibly violate the Protective Order issued by Judge Dlott. (See Ex. C). The delicate nature of these agreements and investigation outweighs the hardship, if any, imposed upon Plaintiff of not receiving the documents.

Even if such documentation was not privileged, the request is unreasonable, vague, overly broad and unduly burdensome. The documentation required by the DOJ was extremely voluminous and spanned several years. It would cause undue burden and hardship to the City should it be required to respond to the request. Furthermore, the documents would be more readily obtainable from the DOJ, assuming *arguendo*, that they were not privileged. The DOJ was responsible for the various aspects of the investigation, including document gathering.

Several of Plaintiffs' requests call for documents circa 1980 and earlier. As previously stated, it is proper to deny discovery of matter that is relevant only to events which occurred before an applicable limitations period, unless the information is otherwise relevant to issues in the case. *Lewis,* supra at 389. The applicable limitations period in this case is two years. Accordingly, this Court may properly issue a Protective Order covering any request for documents which are outside the span of the statutory two year limitation period.

Request for Production of Documents No. 26 calls for the 1979 report by the Mayor's Community Relations Panel, also referred to as the "Hawkins Report"; Request No. 27 calls for the 1981 review of policing in Cincinnati published by the United States Commission on Civil Rights; No.'s 28 and 29 call for OMI reports of studies pertaining to policing and all reports of investigations conducted pertaining to citizen complaints against police for excessive use of force, improper stops, and searches and/or seizures upon African-Americans from 1981 through the present; and No. 30 requests the 1983 "Comprehensive Report." The issue in this case for the officers is whether they used excessive force. The issues concerning the City are custom, policy and practices. These various reports, studies and investigations, more than twenty years old, are remote in time to any of these issues and are irrelevant to a single occurrence in the year 2000 and are not reasonably calculated to lead to the discovery of any admissible evidence. The City would be required to dig up documents that existed over twenty years ago, which will require substantial time and resources to produce documentation that is not even tangentially relevant to the claims in this case. Being irrelevant and

outside the span of the statutory two year limitation period, the Court may exercise it's discretion to issue a Protective Order barring the discovery of such documents.

More specifically, and in addition to being outside a reasonable time frame, Request No. 26, for the 1979 "Hawkins Report," states that the report alleges "a problem of misconduct existed in the Cincinnati Police Department." (Request No. 26). The overly broad notion that misconduct existed in the department in 1979 cannot have any bearing on the issues in this case and the report will not lead to any discoverable information.

Requests No.'s 27 and 28 both call for reports which pertain to the overly broad term, "policing. Request No. 27 references a 1981 publication by the United States Commission on Civil Rights reviewing policing in Cincinnati. Besides the time limitation issue, the described document is overly broad and in any case, is more readily obtainable from the Commission on Civil Rights, given the historic nature of the document. Request No. 28 requests reports of studies by OMI pertaining to policing in Cincinnati from 1981 to the present. Being that OMI's job does not include reporting on studies, it is likely that no such documents exist. Even if they did, such age old documents are not obtainable without undue burden and hardship. Each of the above requests is exactly the type of fishing expedition which is prohibited by the civil rules.

Request No. 30, for the 1983 "Comprehensive Report" containing the allegation that "86% of the Cincinnati Police Department's personnel interviewed answered 'Yes' to the question, 'Is there racial prejudice-racism in the Cincinnati Police Division[.]" (sic), is beyond the scope of anything which could lead to discoverable information. The

allegation that 86% of police personnel thought there was prejudice in the division twenty years ago is totally irrelevant to the issues in this case: excessive use of force, and custom and policy of the City. Again, Plaintiffs seek to fish beyond any reasonable boundaries.

Request No. 31 calls for a 1991 report by City administrators regarding the deaths of two African-Americans. This request is vague beyond recognition and further illustrates Plaintiffs' desire to conduct a fishing expedition. Being that the alleged report is over ten years old, the report is outside the scope of any reasonable time frame and is likewise irrelevant to the case at bar.

Request No. 33 calls for the August 1995 report addressing allegations of racism lodged by the Sentinel Police Association against the City. The irrelevance of this discovery request is plain on its face. Whatever claims one group of officers has against its employers cannot lead to discoverable or admissible information in this case alleging excessive use of force against a private citizen. Even if the report was discoverable, the more likely possessor of the report would be the Sentinel Police Association, over which the City has no authority to obtain any such documents. The same also pertains to Request No. 35, for the 1999 Sentinel Police Association's *Final Report for the New Millennium*.

Each of the above requests asks for documentation which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Several of the requests are also overly broad and burdensome. The burden of producing such aged and irrelevant documents outweighs any likely benefit, taking into account the lack of

importance and lack of relevance the documents have in resolving the issues in this case. This Court has authority, pursuant to its own discretion or pursuant to a Motion for Protective Order, to control the extent of discovery and/or to alter the rules of discovery where the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case.

WHEREFORE, Defendant, City of Cincinnati, respectfully requests a Protective Order prohibiting the discovery sought in Plaintiff's Third Request for Production of Documents to Defendant City of Cincinnati.

Respectfully submitted,

**JULIA L. McNEIL** (0043535)
City Solicitor

s: *Geri Hernandez Geiler*
**GERI HERNANDEZ GEILER** (0042081)
Room 214 City Hall
801 Plum Street
Cincinnati, Ohio  45202
Ph. (513) 352-3338
Fax (513) 352-3750
email: geri.Geiler@cincinnati-oh.gov


s: *Neil F. Freund*
**NEIL F. FREUND** (0012183)
One Dayton Centre
1 South Main St.
Suite 1800
Dayton, Ohio  45402-2017
Ph. (937) 222-2424
Fax (937) 2225369
email: nfreund@ffalaw.com
Trial Attorneys for Defendant City of Cincinnati

## CERTIFICATE OF SERVICE
## BY ELECTRONIC FILING

 I hereby certify that on Nov. 6, 2003, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record listed below.

      *s: Geri Hernandez Geiler*
      GERI HERNANDEZ GEILER
      Atty. Reg. No. 0042081
      Sr. Assistant City Solicitor
      Room 214 City Hall
      801 Plum Street
      Cincinnati, Ohio  45202
      Ph.: (513) 352-3338
      Fax: (513) 352-1515
      Email: geri.geiler@cincinnati-oh.gov

**Certificate of Service:**

Attorney for Village of Golf Manor, Chief Stephen Tilley, Officers Robert Heiland and John Doe #7 (Chris Campbell):
Wilson G. Weisenfelder
900 Fourth & Vine Tower
Cincinnati, Ohio  45202

Attorney for Huntington Meadows, LTD:
Dale A. Stalf
1320 PNC Center
201 East Fifth Street
Cincinnati, Ohio  45202

Donald E. Hardin
915 Cincinnati Club Building
30 Garfield Place
Cincinnati, Ohio  45202

Attorney for David Hunter:
Ravert J. Clark
114 East 8th Street
Suite 400
Cincinnati, Ohio  45202

s:\Geiler\Owensby\moprotorder