```
              IN THE UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF OHIO
                        WESTERN DIVISION
```

| | | |
|---|---|---|
| **ESTATE OF ROGER D. OWENSBY,** | * | CASE NO. C-1-01-769 (Judge S. Arthur Spiegel) |
| Plaintiff | | |
| vs. | * | **DEFENDANTS CITY OF CINCINNATI AND POLICE CHIEF THOMAS STREICHER, JR.'S REPLY IN SUPPORT OF CIVIL RULE 42(B) MOTION TO BIFURCATE** |
| **CITY OF CINCINNATI, et al.** | | |
| Defendant | * | |

**MEMORANDUM**

**A.   The "excessive force" constitutional issue should be severed and tried first because U.S. Supreme Court and Sixth Circuit precedent requires a "constitutional injury" as prerequisite of any potential claims against Cincinnati and Police Chief Streicher.**

Under these circumstances, separate trials should be ordered because Plaintiff's collateral claims against the municipal defendants are contingent on the outcome of his "excessive force" constitutional claims against the individual officers. Monell v. Dep't Soc. Serv. of the City of New York, 436 U.S. 658 (1978); City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Tinch v. City of Dayton, No. 94-3436/94-3516, slip op. at 12-13, *cert. denied,* 519 U.S. 862, 136 L.Ed. 2d 110, 117 S.Ct. 168 (1996) (attached as Exhibit A to Def. Mot. to Bifurcate). The Sixth Circuit and this Court have held repeatedly that **"[i]t is axiomatic that in order to establish municipal liability, the plaintiff must first establish**

**an underlying constitutional violation.**" <u>Dahm v. City of Miamisburg,</u> No. C-3-95-207, 1997 U.S. Dist. LEXIS 23766 *44(S.D. Ohio 1997)(citing <u>Tinch,</u> *supra*)(emphasis added)(attached as Exhibit A). This precedent mirrors common law vicarious liability principles, which require a finding that an employee acted negligently and within the scope of employment, before imputing liability to the employer. <u>Byrd v. Faber</u> (1991), 57 Ohio St.3d 56; <u>Caruso v. State</u> (2000), 136 Ohio App.3d 616.

Plaintiff's attempts to distinguish <u>Tinch,</u> as having "no precedential value," should be ignored. (Pl. respon. at 5.) While <u>Tinch</u> might be unpublished, this decision represents the Sixth Circuit's interpretation of the U.S. Supreme Court <u>Monell</u> and <u>Heller</u> decisions. Plaintiff noticeably fails to cite any authority to support his view that <u>Tinch</u>'s unpublished status renders this decision as having "no precedential value." (Pl. respon. at 5.) The Sixth Circuit, in fact, gives great weight to unpublished decisions, like <u>Tinch,</u> when they "establish the law governing the present action and there is no published opinion that would serve as well." <u>Norton v. Parke,</u> 892 F.2d 476, 479 n.7 (6th Cir. 1989)(internal quotations and citation omitted).

Interestingly, Plaintiff disregards the factually and legally on-point Sixth Circuit <u>Tinch</u> decision, solely because it is unpublished, even though he attached three unpublished district court opinions from states outside of the Sixth Circuit for guidance. <u>See</u> <u>e.g.,</u> <u>Pavlovich v. City of New York,</u> U.S. Dist.

2

LEXIS 13070 (S.D.N.Y. 1992)(involving state social service caseworkers' alleged non-consensual search of premises and forced questioning of father in a child abuse investigation); <u>Pavone v. Gibbs,</u> U.S. Dist. LEXIS 16530 (E.D.N.Y. 1997)(involving constitutional claims against city and welfare workers who allegedly removed children from the Plaintiff and returned them to their abusive, drug-addicted mother); <u>Saviour v. City of Kansas City,</u> U.S. Dist. LEXIS 8813 (Kan. D. Ct. (1992)(all attached to Pl. Respon. contra mot. bifurcate). The non-binding New York district court <u>Pavlovich</u> decision is distinguished easily because that court held the defendants' Rule 42(b) motion to bifurcate was premature due to insufficient discovery. This case differs as Plaintiff Owensby refers to sworn testimony of various fact witnesses and parties, which was unavailable in <u>Pavlovich.</u>

Further, the <u>Pavlovich</u> court denied the motion to bifurcate <u>without prejudice,</u> until such sufficient discovery was completed. The <u>Pavlovich</u> further suggested that if the pending discovery established one trial could result in prejudice and/or jury confusion, separate trials would be justified. In short, <u>Pavlovich</u> provides that motions to bifurcate should occur after the "early stage of litigation," when sufficient discovery has been completed. <u>Pavlovich v. City of New York,</u> U.S. Dist. LEXIS 13070 *9(S.D.N.Y. 1992). Since Plaintiff Owensby filed this lawsuit two years ago, and sufficient discovery establishes bifurcation is warranted, <u>Pavlovich</u> has no bearing on the bifurcation issue in this case.

3

The New York district court <u>Pavone</u> decision differs in similar ways. Specifically, the bifurcation issue in <u>Pavone</u> differs because there was no statute requiring the municipality to pay an adverse judgment against the individual defendants if separate trials occurred. As discussed more fully in the following subsection, Ohio Revised Code 2744.07 requires Cincinnati to pay any adverse judgment against the defendant officers. Consequently, in this case, a second trial of the municipal defendants on the police practice/policy/customs issues would be unnecessary under any circumstances because a second trial's result would not serve to increase or decrease a judgment Plaintiff might secure in the first trial. Unlike <u>Pavone,</u> the existence of a statute like R.C. 2744.07, which renders a second trial highly improbable, warrants separate trials.

Also, the Kansas district court <u>Savious</u> decision lacks much-needed facts and legal authority to provide guidance in this case. For example, the <u>Savious</u> decision fails to explain if Kansas had an indemnification statute like Revised Code 2744.07, which would have rendered a second trial meaningless. The existence or absence of an indemnification statute bears directly on whether bifurcation would promote judicial economy. Unlike <u>Pavlovich,</u> the <u>Savious</u> court does not comment on whether bifurcation had been requested in the early stages of litigation, before sufficient discovery could be completed. Without clarity on such issues that bear directly on the bifurcation issue, the non-binding and unpersuasive <u>Savious</u>

decision should be avoided as the specific facts and legal authority of this case warrant bifurcation. Stated differently, Plaintiff misguidedly urges the Court to adopt non-binding, extra-jurisdictional and unpublished decisions in place of the Sixth Circuit's factually and legally on-point Tinch ruling.

Additionally, Plaintiff tortured the Sixth Circuit decision In re Bendectin Litigation, which actually supports bifurcation under these facts. 857 F.2d 290 (6th Cir. 1988). Benedectin differs factually because it involves trifurcation of the causation issue from fraud, wrongful conduct and negligence claims. Id. at 307. The Sixth Circuit emphasized past courts have conducted Rule 42(b) bifurcation analysis under a "case-by-case approach." Id. (citing Southern Ry. Co. v. TVA, 294 F.2d 491, 494 (5th Cir. 1961); In re Innotron Diagnostics, 800 F.2d 1077, 1084 (Fed. Cir.)) Judicial efficiency and fairness to all parties, based on the specific facts of each case, receive paramount consideration. Benedectin, 857 F.2d at 307; see also, Fall v. Indiana Univ. Bd. Trustees, 33 F. Supp. 2d 729, 738 (N.D. Ind. 1998)(stating Seventh Circuit bifurcation analysis focuses on whether separate trials would promote convenience and reduce prejudice based on the specific facts of the underlying gender discrimination and Title VII claims of the plaintiff's sexual harassment lawsuit.)

Applying the Benedectin "case-by-case approach" to these facts, separate trials should be ordered to promote fairness and efficiency to all parties and the Court. While plaintiff raised

5

concerns of a potential second trial, the reality is, a second trial of the municipal defendants on the police practice/policy/customs issues, in Ohio, is highly improbable regardless of the first trial's outcome. See e.g., Tinch, *supra.* As discussed earlier, Plaintiff must prevail against the individual officers, by showing a constitutional injury, as prerequisite for pursuing the official practice/policy claims against the municipal defendants. Monell, Heller, Tinch, *supra*. If the Plaintiff cannot show a constitutional injury against the officers, his claims against the municipal defendants will fail as a matter of law. Dahm, Tinch, *supra.*

Alternatively, if the Plaintiff receives a judgment against the officers in the first trial, almost always, the city will pay the judgment pursuant to Revised Code 2744.07. Additionally, any judgment Plaintiff secures against the officers in the first trial will remain exactly the same regardless of a second trial's outcome against the municipal defendants on official police practice and policy issues. Under this scenario, a second trial would be futile because Plaintiff's recovery would not increase or decrease as a result of a second trial's verdict. In short, Plaintiff's concerns related to a potential second trial are over-exaggerated and unrealistic. In contrast, bifurcation will reduce prejudice to all parties, simplify the number of triable issues, lessen juror confusion, and promote economy/expediency. Based on the specific facts of this lawsuit, bifurcation presents a win-win situation for

the Court and all parties.[1] Fed. R. Civ. P. 42(b); <u>Bendectin</u>, *supra.*

  **B.**  **<u>Plaintiff's proposed stipulation is improper because it violates Revised Code 2744.07's express mandate that the officers bear sole and complete responsibility for punitive or exemplary damages.</u>**

Plaintiff's proposed stipulation, attached as Exhibit A to his response contra motion to bifurcate, should be disregarded for two reasons. First, the proposed stipulation requires Cincinnati to pay punitive and exemplary damages, in violation of Revised Code Section 2744.07. R.C. 2744.07(A)(2). This statute states:

> (A)(2) Except as otherwise provided in this division, **a political subdivision shall indemnify and hold harmless an employee in the amount of any judgment**, <u>**other than a judgment for punitive or exemplary damages**</u>**, that is obtained against the employee in a state or federal court** ... and that is for damages for injury, death, or loss to persons or property caused by an act or omission in connection with a governmental or proprietary function, if at the time of the act or omission the employee was acting in good faith and within the scope of his employment or official responsibilities.

R.C. 2744.07(A)(2)(emphasis added).

In this case, the stipulation's wording is flawed because it improperly attempts to impose duties on Cincinnati specifically prohibited by Section 2744.07(A)(2). Again, this statute requires Cincinnati to indemnify the officers and pay any adverse judgment

---

[1] Defendants Golf Manor and Huntington Meadows should be parties in the first trial. Cincinnati and Police Chief Streicher request bifurcation because U.S. Supreme Court and Sixth Circuit precedent establish Plaintiff must show a Constitutional injury as prerequisite to pursuing official policy/custom claims against the municipal defendants. Moreover, the indemnification duties Revised Code 2744.07 places on Cincinnati further establish judicial economy will be served. Since Golf Manor and Huntington Meadows have not moved for bifurcation, or raised similar arguments, those co-defendants should remain parties with the individual officers in the first trial.

rendered against them, except for "punitive or exemplary damages." In turn, Chapter 2744 indicates the individual officers, and not the City of Cincinnati, would be liable for any punitive or exemplary damages. Plaintiff's stipulation, however, attempts to circumvent this statutory exclusion by imposing a duty to pay any punitive or exemplary damages that might be assessed. In short, Plaintiff should not be permitted to unilaterally impose additional duties on Cincinnati, beyond Chapter 2744's clear and unambiguous text, as a prerequisite for bifurcation.

Unlike Section 2744.07, Plaintiff's stipulation infringes on the defendants' right to appeal a potentially erroneous judgment. In contrast, Plaintiff's half-baked, self-serving and unreasonable stipulation requires Cincinnati to pay the entire amount of any judgment, within thirty days of judgment, even if valid appeals rights exist. Plaintiff's proposed stipulation is a calculated, self-serving attempt to contravene the General Assembly and disrupt the appellate process. In turn, no authority exists that permits Plaintiff to impose such duties, by stipulation, when the underlying circumstances warrant bifurcation. Fed. R. Civ. P. 42(b)(stating claims should be bifurcated to avoid prejudice as well as to promote expedition and judicial economy.)

Second, even if Plaintiff's proposed stipulation contained proper wording, it is wholly unnecessary because it would impose the exact same obligations Revised Code 2744.07(A)(2) and the common law impose on Cincinnati. See Byrd v. Faber (1991), 57 Ohio

8

St.3d 56; Caruso v. State (2000), 136 Ohio App.3d 616.  Because Chapter 2744.07 requires Cincinnati to indemnify the individual officers, a second trial of the municipal defendants, regarding official custom and policy, is almost never necessary.  See e.g., Tinch v. City of Dayton, No. 94-3436/94-3516, 1996 U.S. App. LEXIS 5716 fn. 1(attached as Exhibit A to Defendants' initial motion to bifurcate.)  The practice/custom/policy issues will have no affect whatsoever on any judgment rendered in the first trial for reasons stated earlier.  Consequently, it is especially improbable that a second trial will occur under any scenario. Plaintiff fails to refute these facts.  For these reasons, separate trials should be ordered in this case.

    **C.**    **Bifurcation is necessary because separate trials will reduce obvious prejudice to the officers.**

This case must be tried on the issue of whether the officers used reasonable force, under the attendant facts and circumstances of this case, for reasons discussed earlier.  See Monell, Heller, Tinch, Dahm, *supra*. The collateral custom/policy/practice issues against the municipal defendants will detract from the jury's ability to evaluate the "reasonable v. excessive force" issue.

On the other hand, introduction of collateral evidence against the municipal defendants will cause extreme prejudice to the ability of individual officers to defend themselves in front of a

9

fair and impartial jury.[2] The custom/policy/practice evidence has no probative value on the "excessive force" claim against the individual officers. Plaintiff's Third Request for production of Documents to Cincinnati, however, illustrates how Plaintiff intends to use Cincinnati Police Department custom/policy/practice evidence to prove his "excessive force" claims against the individual officers. (Attached as Exhibit B). These discovery requests seek the City's near ancient documents, before some or all of the individual defendants commenced employment as Cincinnati police officers, related to potential racial strife between the police department and city minority residents.

Instead of focusing on the attendant facts and circumstances of November 7, 2000, to prove his "excessive force" claim, Plaintiff improperly hopes to "poison the well" against the individual officers with alleged misconduct of completely different Cincinnati police officers in past decades. Specifically, Plaintiff hopes to fan the flames of undue prejudice to his advantage by arguing that if Cincinnati police officers, in 1979, were insensitive to certain groups, the individual officers in this case must have used "excessive force" on November 7, 2000. Separate trials should be ordered to deter these types of obvious,

---

[2] Due to an apparent grammatical error in City of Cincinnati and Police Chief Streicher's memorandum in support of their motion to bifurcate, it might have been suggested inadvertently that the individual officer defendants moved for bifurcation along with the municipal defendants. While bifurcation will be beneficial to the officers for reasons discussed above, the municipal defendants alone move the Court for bifurcation. It should be noted the motion to bifurcate's caption and signature blocks establish that the municipal defendants moved for bifurcation independent of any co-defendants.

premeditated attempts to gain an unfair advantage through prejudice and bias.

Similarly, in defending the custom/policy/practice claims, Cincinnati and Police Chief Streicher will endure unfair prejudice by evidence that the officer-employees allegedly acted maliciously. Evidence that the individual officers might have acted maliciously and outside the scope of employment, on November 7, 2000, is wholly irrelevant to the custom/policy/practice claim involving the municipal defendants. If simplicity, economy, reasonableness and fairness are relevant concerns, bifurcation is the answer. Fed. R. Civ. P. 42(b); <u>In re Bendectin Litigation,</u> 857 F.2d 290 (6th Cir. 1988).

### III. **CONCLUSION**

For the foregoing reasons, municipal defendants City of Cincinnati and Chief of Police Thomas Streicher, Jr. respectfully request this Court bifurcate the trial against the municipal defendants, and proceed first with trial of the claims against the remaining co-defendants.

        Respectfully submitted,

        JULIA L. McNEIL (0043535)
        City Solicitor

        <u>S/Neil F. Freund</u>
        Neil F. Freund (0012183)
        Vaseem S. Hadi (#0075617)
        FREUND, FREEZE & ARNOLD

One Dayton Centre
1 South Main Street, Suite 1800
Dayton, OH 45402-2017
(937) 222-2424

Geri Hernandez Geiler (0042081)
Julie F. Bissinger
Assistant City Solicitors
Room 214, City Hall
801 Plum Street
Cincinnati, OH 45202
(513) 352-3338
Trial Attorneys for Defendants

PROOF OF SERVICE

This will certify that a copy of the foregoing was served upon counsel of record by electronic mail this 7th day of November, 2003:

Mark T. Tillar (0029898)
240 Clark Road
Cincinnati, OH 45251
(513) 761-2958
**Attorney for Plaintiff**

John Helbling (0046727)
3672 Springdale Road
Cincinnati, OH 45251
513-923-9740
**Attorney for Plaintiff**

Donald E. Hardin (0022095)
HARDIN, LEFTON, LAZARUS & MARKS, LLC
915 Cincinnati Club Building
30 Garfield Place
Cincinnati, OH 45202
513-721-7300
**Special Counsel for Defendants**
**Robert Blaine Jorg,**
**Patrick Caton,**
**Darren Sellers,**
**Jason Hodge, and**
**Victor Spellen**

Wilson G. Weisenfelder, Jr. (0030179)
RENDIGS, FRY, KIELY & DENNIS, LLP
900 Fourth & Vine Tower
Cincinnati, OH 45202
513-381-9200
**Attorney for Defendants**
**Village of Golf Manor,**
**Chief Stephen Tilley,**
**Officer Robert Heiland, and**
**John Doe #7 nka Chris Campbell**

Dale A. Stalf (0000471)
BUCKLEY KING
1420 PNC Center
201 East Fifth Street
Cincinnati, OH 45202
(513) 412-5400
**Attorney for Huntington**
**Meadows, LTD**

Ravert J. Clark
114 East 8th Street

12

Suite 400  
Cincinnati, OH 45202  
(513) 587-2887  
**Attorney for Defendant**

**Cincinnati Police Officer David Hunter**

      S/Neil F. Freund  
      Neil F. Freund

FREUND, FREEZE & ARNOLD  
A Legal Professional Association