Service: **Get by LEXSEE®**
Citation: **1997 U.S. Dist. LEXIS 23766**



*1997 U.S. Dist. LEXIS 23766, ***

WILLIAM C. DAHM, Plaintiff, vs. CITY OF MIAMISBURG, et al., Defendants.

Case No. C-3-95-207

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

1997 U.S. Dist. LEXIS 23766

March 31, 1997, Decided
March 31, 1997, Filed

**DISPOSITION:** **[*1]** Motion for Summary Judgment filed by the City, Schenck, Bell and Melton (Doc. # 32) SUSTAINED. Judgment entered in their favor and against the Plaintiff, thus dismissing them, with prejudice, from this lawsuit. Swaney's Motion for Summary Judgment (Doc. # 33) SUSTAINED in regard to Counts One and Two, and OVERRULED in regard to Count Three (state-law claim of negligence). Judgment entered in his favor and against the Plaintiff, in regard to Counts One and Two. Plaintiff's Motion for Leave to File Pleadings (Doc. # 44) OVERRULED.

**CORE TERMS:** summary judgment, dog, genuine issue of material fact, raid, Fourth Amendment, shot, seizure, state-law, moving party, search warrant, deposition, Fourteenth Amendments, non-moving, designated, seize, excessive force, municipal, favorably, construe, fired, informant, reckless, pit bull, wanton, constitutional violation, police officer, instrumentality, municipality, supervise, shoot

**COUNSEL:** For WILLIAM C DAHM, plaintiff: Dwight Dean Brannon, Dwight D Brannon & Associates, David Michael Deutsch, David M Deutsch Co., LPA, Dayton, OH.

For MIAMISBURG CITY OF, THOMAS SCHENCK, THOMAS SCHENCK (I), KIRK J BELL, KIRK J BELL (I), L MELTON, L MELTON (I), defendants: Robert Jerome Surdyk, Jenks, Surdyk & Cowdry Co., Dayton, OH.

For THOMAS E SWANEY, III, THOMAS E SWANEY (I), III, defendants: Gary Edward Becker, Dinsmore & Shohl, Hamilton, OH.

**JUDGES:** WALTER HERBERT RICE, CHIEF JUDGE, UNITED STATES DISTRICT COURT.

**OPINIONBY:** WALTER HERBERT RICE

**OPINION:** DECISION AND ENTRY SUSTAINING MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS CITY OF MIAMISBURG, THOMAS SCHENCK, **[*2]** KIRK J. BELL AND RICK MELTON (DOC. # 32); AFOREMENTIONED DEFENDANTS ORDERED DISMISSED FROM THE ABOVE-CAPTIONED CAUSE OF ACTION; DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT THOMAS E. SWANEY, III'S MOTION FOR SUMMARY JUDGMENT (DOC. # 33); DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR LEAVE TO FILE PLEADINGS (DOC. # 44); PLAINTIFF GIVEN LEAVE TO FILE A MEMORANDUM CONTRA, WITHIN TWENTY (20) DAYS OF THE DATE OF THIS DECISION, AS SPECIFIED HEREIN

Get a Document by Citation SA97 U.S. Dist. LEXIS 23766

Case 3:01-cv-00109-SAS7 U.S. Dist. LEXIS 23766 Filed 11/07/2003 Page 2 of 28 Page 2 of 19

This case arises from circumstances surrounding a raid by Miamisburg police upon Plaintiff William C. Dahm's house on June 2, 1993, and the resulting injuries suffered by the Plaintiff after he was hit by a bullet fired by Defendant Thomas E. Swaney, III ("Swaney"), who was attempting to shoot the Plaintiff's dog. In this action, Plaintiff sues Swaney, the City of Miamisburg ("the City"), Police Chief Thomas Schenck ("Schenck"), Detective Kirk J. Bell ("Bell"), and Detective Rick L. Melton n1 ("Melton") upon the following claims: violation of the Plaintiff's right to be free from the use of excessive force, as guaranteed by the Fourth Amendment to the United States Constitution, n2 against Swaney, Bell and Melton **[\*3]** (Count One); a state-law claim of assault and battery, against Swaney (Count One); by improperly responding to a tip from an informant, violation of the Plaintiff's rights as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, against all Defendants (Count Two); a state-law claim of negligence, against Swaney (Count Three); violation of 42 U.S.C. § 1983 by failing adequately to supervise, train or discipline Bell, Melton and Swaney, against Schenck and the City (Count Three); n3 for ratification of unlawful actions, violation of the Fourth and Fourteenth Amendments to the United States Constitution, against the City (Count Four); and for ratification of unlawful actions, violation of the Fourth and Fourteenth Amendments to the United States Constitution, against Schenck (Count Five).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n1 Although this Defendant was identified in Plaintiff's Complaint as "L. Melton," his full name is Rick L. Melton (Deposition on file).

n2 The Court will make three observations in regard to its construction of this Count. First, although Plaintiff has alleged violations of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution by virtue of the use of excessive force, the Court will construe this claim as solely alleging a violation of the Fourth Amendment, since the Supreme Court has held that all excessive force claims against law enforcement officials are properly analyzed under the Fourth Amendment to the United States Constitution. Graham v. Connor, 490 U.S. 386, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989).

Second, although the Plaintiff has further alleged "various violations of Ohio statutory and common law" in this Count, the Court cannot consider these unspecified claims, as they have not been identified by the Plaintiff.

Third, although the Plaintiff has also included allegations against the City and Schenck in this Count concerning their alleged failure to provide training and supervision regarding the lawful use of an officer's service revolver, these and other allegations are reiterated in greater detail against Schenck and the City in Count Three. Accordingly, the Court will include these allegations in its construction of Count Three. **[\*4]**

n3 Although Plaintiff did not identify 42 U.S.C. § 1983 as the basis of this claim, but rather made a vague reference to a cause of action under Ohio law, the Court has not been apprised of the cause of action being referred to and will not attempt to hazard a guess on behalf of the Plaintiff. Instead, the Court will construe this claim as asserting a violation of 42 U.S.C. § 1983, since the allegation of a failure to train or supervise police officers sounds in the language of § 1983.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -


This Court has federal question jurisdiction over the Plaintiff's federal claims, pursuant to 28 U.S.C. § 1331. In addition, the Court has supplemental jurisdiction over Plaintiff's state-law claims, pursuant to 28 U.S.C. § 1367, as these state-law claims are so related to the federal claims that they form part of the same case or controversy under the United States

Get a Document by Citation - 1987 U.S. Dist. LEXIS 23766

Case 1:01-cv-00109-SAS   Document 64-2   Filed 11/07/2003   Page 3 of 28   Page 3 of 19

Constitution.

Currently pending before the Court are Swaney's Motion for Summary Judgment (Doc. # 33) and a Motion for Summary Judgment filed by the **[*5]** City, Schenck, Bell and Melton (Doc. # 32). Both of these Motions are unopposed, even though the Court has granted the Plaintiff's four separate requests for extensions of time in which to file a response (Docs. # # 35, 38, 40, 41). n4 After setting forth the proper standard for ruling upon motions for summary judgment, including unopposed motions such as those at issue herein, and an abbreviated statement of facts, the Court will turn to the merits of the Motions.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 The Plaintiff has requested a fifth extension, to March 1, 1997 (Doc. # 44). This fifth such request will be discussed, infra.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -I. Standard for Summary Judgment Motions

Before focusing on the merits of the motions, the Court will set forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at **[*6]** trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323. See also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial." quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 [6th Cir. 1987]). The burden then shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (quoting Fed.R.Civ. **[*7]** P. 56(e)). Thus, "once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995). Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply

show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). Rather, Rule 56(e) "requires the non-moving party to go beyond the [unverified] pleadings" **[*8]** and present some type of evidentiary material in support of its position. Celotex Corp., 477 U.S. at 324. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "if there are . . .'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. Anderson, 477 U.S. at 255 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A **[*9]** Wright, Miller & Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." Interroyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990). See also, L.S. Heath & Son, Inc. v. AT&T Information Systems, Inc., 9 F.3d 561, 1993 U.S. App. LEXIS 26670 (7th Cir. October 12, 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n. 7 (5th Cir.), cert. denied, 506 U.S. 832, 113 S. Ct. 98, 121 L. Ed. 2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions **[*10]** on file, together with any affidavits submitted, specifically called to its attention by the parties.

A fairly atypical situation is presented where the non-moving party fails to respond to the motion for summary judgment. Although the Court may generally sustain unopposed motions, see Local Rule 7.2(a)(2), it is not empowered to do so where a motion for summary judgment is unopposed. See Sutton v. United States, 1991 U.S. App. LEXIS 224, No. 90-3314, 1991 WL 590, at *2 n.1 (6th Cir. 1991) ("It is the law of this Circuit that Rule 56 requires a court, even where a motion for summary judgment is unopposed, to determine that the moving party has established a right to relief as a matter of law and that no genuine issue of material fact exists before the court can award summary judgment"). Importantly, however, "where the nonmoving party fails to respond to the motion for summary judgment, the trial court is under no obligation to search the entire record to establish that it is bereft of a genuine issue of material fact." In re St. Clair Clinic, Inc., 1996 U.S. App. LEXIS 1416, No. 94-3943, 1996 WL 6531, at *2 (6th Cir. 1996). Instead, both the trial court and the appellate court should rely upon **[*11]** the facts presented and designated by the moving party. Guarino v. Brookfield Township Trustees, 980 F.2d 399, 404 (6th Cir. 1992). The reasons for adopting this approach were well-stated by the Sixth Circuit:

> If accepted and enforced, appellants' argument [to the contrary] would leave nothing to discourage the non-moving party, especially one with a reasonably arguable case, from declining (or "forgetting" or being "too busy") to respond to a motion for summary judgment, secure in the knowledge that the district court would be required to excavate all of the presented record, and find for itself any nuggets of evidence that might demonstrate genuine issues of material fact. Even if the trial court were to grant the motion, this passive party could still

Get a Document - by Citation - 1987 U.S. Dist. LEXIS 23766

Case 1:01-cv-00769-SAS    Document 64-2    Filed 11/07/2003    Page 5 of 28    Page 5 of 19

relax, assured that he could timely file an appeal, flyspeck the factual record and the district court's opinion, and only then, on de novo review, identify for the court of appeals the answers, the exhibits and the other facts he wishes to assert as supporting specific issues...

And then, as to the element of time... To try to review the complete collection of exhibits, or to read each line of every page **[\*12]** of all submitted depositions-- many of which may not even be relevant to the real issues at hand--this represents to courts at both the trial and appellate levels an unrealistic ideal, an unaffordable luxury.

Additionally, it seems to us utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party... Such a role would carry the court far beyond simply reviewing evidence in "the light most favorable to the non-moving party," or giving effect to inferences reasonably arising from the designated evidence.

Guarino, 980 F.2d at 405-06. Even though it is limited to those facts designated by the moving party, however, the Court "must not overlook the possibility of evidentiary misstatements presented by the moving party, and cannot ignore the context within which evidence... was given." Id. at 407. Therefore, "the trial court must indeed intelligently and carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy... for a silent party." Id.

II. Abbreviated Statement of Facts

As explained, the following **[\*13]** statement of facts is necessarily limited by the Plaintiff's failure to respond to the Defendants' Motions for Summary Judgment, and consists of those facts designated by the moving parties in their Motions (Docs. # # 32, 33), as evaluated by the Court for their accuracy and context.

In December, 1992, Bell received information that Plaintiff was trafficking in cocaine and marijuana from his residence at 450 North Fourth Street in Miamisburg, Ohio (Bell Deposition at 10). This information was received from the Plaintiff's neighbors, who wished to remain anonymous due to fear of retaliation (Id. at 11). Subsequently, Bell conducted spot surveillances at Plaintiff's house and observed several known drug abusers frequenting Plaintiff's residence (Id. at 16-18).

On April 13, 1993, Bell received information from a reliable confidential informant that Plaintiff had been supplying cocaine to his brother, John Dahm, and that the informant could make a controlled purchase from Plaintiff (Id. at 21-23). Shortly thereafter, on April 26, 1993, Bell received information from a detective in Franklin, Ohio that an informant had purchased cocaine from Plaintiff at his residence (Id. **[\*14]** at 24). Another informant then made a controlled purchase of cocaine, which was sold by John Dahm after he had obtained it from the Plaintiff (Id. at 26-29).

Subsequently, a non-consensual search warrant was obtained for Plaintiff's residence and John Dahm's residence, with the intent of executing them immediately after conducting a second controlled purchase of cocaine from John Dahm (Id. at 39, 42, 46). According to Bell, the warrant for a non-consensual entry of Plaintiff's residence was requested because of a risk of serious physical harm to law enforcement officers, due to Plaintiff's past criminal history, his ownership of a pitbull, and his perceived non-compliant attitude toward authority (Id. at 39). n5

Get a Document by Citation 1987 U.S. Dist. LEXIS 23766

Case 1:01-cv-00709-SAS   Document 64-2   Filed 11/07/2003   Page 6 of 28   Page 6 of 19

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 Although Sergeant William D. Mitchell testified in his deposition that there were other possible concerns, including a possibility that the house was alarmed and that firearms might be present, he also testified that he was not involved in the process of obtaining the search warrants for the raids at either of the premises (Mitchell Depo. at 10-11). Accordingly, as these concerns do not appear to have directly supported the search warrant, the Court will not consider them in its analysis.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*15]**

On June 2, 1993, two simultaneous raids were executed at the residences of John Dahm and Plaintiff William Dahm (Mitchell Depo. at 8). Sergeant William Mitchell of the Miamisburg Police Department was responsible for planning and executing the raid at Plaintiff's residence, while Sergeant Wilcox of the Kettering Police Department was responsible for conducting the raid at John Dahm's residence (Id. at 9). n6 Prior to the raids, Sergeant Mitchell conducted two formal briefings, the first involving members of the Tactical Entry Team ("TET"), and the second involving all concerned personnel (Id. at 27). During those briefings, Mitchell discussed a diagram of the Plaintiff's residence and directed the personnel as to their positioning during the raid (Id. at 28-29). Swaney was assigned to be the first person through the door (Id. at 29). Following the briefing, Sergeant Mitchell conducted a walk-through of the raid in which the personnel practiced entering the residence (Id. at 50).

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 Due to a lack of sufficient trained personnel to execute two simultaneous high risk search warrants, the Miamisburg police requested assistance from the Kettering police in carrying out these raids (Mitchell Depo. at 9-10).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*16]**

As noted, Swaney was assigned to be the first person entering the Plaintiff's residence. Swaney was aware, prior to the raid, that there was a pit bull dog inside the residence which was said to be vicious (Swaney Affidavit, attached to Doc. # 33, at P4). n7 Approximately one and one-half years earlier, Swaney had been attacked by a pit bull when conducting a drug raid (Swaney Depo. at 16). As described in his Motion, Swaney had been bitten behind the knee; the dog was shot by a fellow officer; the dog approached Swaney again and was shot a second time by Swaney himself; the dog nevertheless bit Swaney through his boot; and a fellow officer then shot the pit bull with a shotgun (Id. at 16-19). Subsequently, however, as Swaney attempted to handcuff a suspect upon the floor, the pit bull crawled toward him and attempted to bite him in the face, whereupon another officer killed the dog with a fourth shot to its head (Id. at 20). As a result of that attack, Swaney required both rabies shots and medical attention due to the wounds inflicted by the dog (Id. at 20-21).

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 Although Defendants have characterized the dog as a vicious pit bull (Doc. # 32 at 8), the Court notes, in the interest of accuracy, Plaintiff's testimony that his dog is part pit bull and part labrador, was approximately six to eight months old at the time of the raid, is not vicious, and had never bitten anyone but the Plaintiff, when he was playing with her (Plaintiff's Depo. at 28, 32-34).

Get a Document - by Citation - 1987 U.S. Dist. LEXIS 23766    Page 7 of 28

Case 1:01-cv-00709-SAS    Document 64-2    Filed 11/07/2003    Page 7 of 28

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*17]**

During the briefing prior to the raid upon Plaintiff's residence, Swaney raised the question as to what he should do, as the lead member of the entry team, in the event that Plaintiff's dog became a problem (Swaney Aff. at P4). Sergeant Mitchell instructed the officers that if they felt that their life was in danger or if there was substantial danger, they should shoot the dog, if that were appropriate (Mitchell Depo. at 49).

Upon executing the search warrant at Plaintiff's residence, Swaney entered first without knocking and with his gun drawn, the safety on and his finger on the trigger guard (Swaney Depo. at 36). As he stepped to the right, the first thing that he saw was the Plaintiff's dog charging at him from approximately six feet away (Id. at 38, 43). Swaney moved his finger to the trigger and fired at the dog, when it was approximately two to three feet away and appeared to him to be elevated (Id. at 43-46). Swaney subsequently attested that he fired at the dog because he believed that he and his fellow officers were under an immediate threat of great bodily harm or death (Swaney Aff. at P7). After the shot, the dog immediately moved to Swaney's right (Swaney Depo. **[*18]** at 47). n8 Although it was unknown by Swaney at the time, the bullet actually missed the dog and struck the Plaintiff (Id. at 59-62; Plaintiff's Depo. at 57-58). Swaney did not see the Plaintiff either prior to or at the time that he fired at the dog (Swaney Aff. at P8).

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n8 It should be noted that, after he was shot, Plaintiff testified that he saw the dog trying to jump out of the window (Id. at 63).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Although the fact was not highlighted by the Defendants, the Court notes, in the interest of accuracy, that there apparently were at least four and possibly seven people in the front living room (into which the front door opened) at the time that the raid was executed. Specifically, there were between two and five children present, all of whom were under the age of five and located in the middle of the room along with the dog. n9 In addition, Plaintiff's girlfriend was lying on the couch and Plaintiff was rubbing her back, positioned in such a way that his back was facing the front door (Plaintiff's **[*19]** Depo. at 57, 59-60).

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n9 Plaintiff's Deposition is somewhat unclear on this point. In his discussion of the events which occurred on the day he was shot, June 2, 1993, Plaintiff testified that he returned to his house and joined his girlfriend (now his wife) and five children (Plaintiff's Depo. at 50, 53). However, he also testified that on that same day, he left the house and picked up two of the children (id. at 56). During the discussion of the shooting, Plaintiff did not specify how many children were present, but only referred to "children" in the plural. Accordingly, the evidence indicates that at least two and possibly five children were present at the time of the shooting.

For the record, the Court notes that at the time of Plaintiff's Deposition in November, 1995, the ages of the children were as follows: Samantha Wittington, age 5; Stephanie Wittington, age 7; Kelly Dahm, age 7; John Dahm, age 5, and Katie Dahm, age 4 (Plaintiff's Depo. at 34). Therefore, on June 2, 1993, none of these children were over the age of five.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*20]**

In regard to the positioning of the other Defendants during the execution of the raids, Melton was stationed at John Dahm's residence prior to the raids, in order to indicate to officers at Plaintiff's residence when the controlled purchase had been completed (Bell Depo. at 47). Melton's assignment was to conduct the search of John Dahm's residence, following the execution of the search warrant by the Kettering Police Department (Melton Depo. at 42). Therefore, he was not involved in the actual raid (Id. at 48). Melton did not assist in obtaining the search warrants and was not involved in the raid on the Plaintiff's residence (Id. at 28).

Bell's assignment was to conduct surveillance near Plaintiff's residence prior to the execution of the search warrant (Bell Depo. at 47-50). After approximately one hour of surveillance at Plaintiff's residence, and approximately one hour after John Dahm had brought money from the informant to Plaintiff's residence in order to purchase the cocaine, the raid was executed (Id. at 47-49). He did not participate in the actual raid (Mitchell Depo. at 29-31).

III. Defendants' Motions for Summary Judgment (Docs. # # 32, 33)

In analyzing **[\*21]** the Plaintiff's claims, the Court will consider the arguments raised in both of the pending motions: Swaney's Motion for Summary Judgment (Doc. # 33) and the Motion for Summary Judgment filed by the City, Schenck, Bell and Melton (Doc. # 32). In so doing, the Court will construe the above-described evidence in the manner most favorably to the Plaintiff, as the party against whom these Motions are directed. Each Count will be considered separately.

A. Count One: Fourth Amendment Violation (Defendants Swaney, Bell, Melton) and Assault and Battery (Defendant Swaney)

In Count One of his Complaint, Plaintiff brings suit against Swaney, Bell and Melton for violating his right to be free from the use of excessive force, as guaranteed by the Fourth Amendment to the United States Constitution. Plaintiff also sues Swaney upon a state-law claim of assault and battery. The Court will consider each of these claims, in this order.

1. Fourth Amendment Claim (Defendants Swaney, Melton and Bell)

The Supreme Court has held that a claim that a law enforcement official used excessive force in the course of "seizing" a person is properly analyzed under the Fourth Amendment's "objective **[\*22]** reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989). In order to state such a claim, Plaintiff must show that the force used was not objectively reasonable, from the perspective of a reasonable police officer on the scene. Id. at 396-97. In determining whether this showing has been made, the Court must consider a number of factors, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. Reasonableness must not be determined "with the 20/20 vision of hindsight," but must allow "for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." Id. at 396-97. Because the test is one of objective reasonableness, the actual intentions or motivations of the defendant, whether good or bad, are irrelevant to the determination of whether a Fourth **[\*23]** Amendment violation occurred. Id. at 397.

In his Motion (Doc. # 33), Swaney argues that he cannot be held liable under the Fourth

Get a Document - by Citation - 1987 U.S. Dist. LEXIS 23766    Page 9 of 28

Case 1:01-cv-00109-SAS    Document 64-2    Filed 11/07/2003    Page 9 of 19

Amendment because he did not shoot the Plaintiff in the course of "seizing" him. Construing the evidence in the manner most favorably to the Plaintiff, as the party against whom the Motion was directed, there is no dispute that Swaney intended to shoot the dog, and only accidentally shot the Plaintiff. The issue, therefore, is whether this act constituted a seizure of the Plaintiff within the meaning of the Fourth Amendment, such that Swaney could be held liable for using excessive force in effectuating the seizure.

A "seizure" occurs within the meaning of the Fourth Amendment when a government actor has "by means of physical force or show of authority... in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19 n.16, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). In a case elaborating upon the Fourth Amendment's seizure requirement, the Supreme Court explained the law as follows:

> Violation of the Fourth Amendment requires an intentional acquisition of physical control... the Fourth Amendment addresses **[\*24]** "misuse of power," not the accidental effects of otherwise lawful government conduct.

> Thus, if a parked and unoccupied police car slips its brake and pins a passerby against a wall, it is likely that a tort has occurred, but not a violation of the Fourth Amendment. And the situation would not change if the passerby happened, by lucky chance, to be a serial murderer for whom there was an outstanding arrest warrant--even if, at the time he was pinned, he was in the process of running away from two pursuing constables. It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement through means intentionally applied.

Brower v. Inyo County, 489 U.S. 593, 596-97, 103 L. Ed. 2d 628, 109 S. Ct. 1378 (1989) (citation omitted) (emphasis in original). Changing this hypothetical slightly, this Court would conclude **[\*25]** that if the police car had been driven by an officer who was intentionally trying to pin a different suspect to the wall, but who missed and accidentally pinned the fleeing felon to the wall, this would still not constitute a violation of the fleeing felon's Fourth Amendment rights, because the police officer would not have intended to seize that individual by pinning him with his car. See id. at 598-99 ("In determining whether the means that terminates the [complainant's] freedom of movement is the very means that the government intended we cannot draw too fine a line... We think it enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result") (emphasis added). In other words, a law enforcement officer may only be held liable under the Fourth Amendment for the use of excessive force if he intentionally used the challenged force for the purpose of seizing the complaining individual. n10

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n10 Thus, since the Supreme Court explicitly held that a "seizure" will only occur where the suspect is apprehended "through means intentionally applied," 489 U.S. at 597, there will be no Fourth Amendment violation where, as here, a suspect is physically apprehended through negligent means. See Clark v. Buchko, 936 F. Supp. 212, 219 (D.N.J. 1996) (describing cases involving accidental shootings in which courts concluded that "the plaintiffs could not maintain Fourth Amendment claims against the officers because the officers lacked intent to

Get a Document - by Citation - 1997 U.S. Dist. LEXIS 23766    Page 10 of 19

Case 1:01-cv-00709-SAS    Document 64-2    Filed 11/07/2003    Page 10 of 28

seize the victims by firing the guns"); cf. Daniels v. Williams, 474 U.S. 327, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986) (holding that there is no § 1983 liability under the Due Process Clause where a state official's negligent act caused an unintended loss of or injury to life, liberty or property).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*26]**

In support of his argument that no seizure occurred, Swaney relies upon a Sixth Circuit case in which, according to that plaintiff's version of the facts, a police officer who had been called to the scene of a domestic dispute accidentally shot Gloria Anthony after shoving the other party to the dispute, Henry Brown, with the butt of his shotgun, causing his shotgun to discharge over his shoulder. Brown v. City of Louisville, 1994 U.S. App. LEXIS 23115, 93-5086, 1994 WL 456795 (6th Cir. 1994), cert. denied, 513 U.S. 1160, 115 S. Ct. 1123, 130 L. Ed. 2d 1086 (1995). The Sixth Circuit held that the police officer did not violate Anthony's Fourth Amendment rights:

> The undisputed facts of this case show that Officer Bryant, however careless he may have been with respect to shoving Brown, did not deliberately take any action toward Anthony... there is absolutely no indication that Bryant was even aware of Anthony's presence directly behind him at the moment he hit Brown with the shotgun... "The problem with plaintiff's claim is that no state conduct was directed at [her], and she cannot establish that defendants had the requisite intent to violate [her] rights. She **[*27]** was merely a bystander who was asserting indirect and unintended injury as a result of police conduct directed toward another. We use the term bystander to mean someone who witnesses police action but who is not himself or herself an object of that action. As such[,] a bystander is unable to assert the kind of deliberate deprivation of his or her rights necessary to state a due process claim under section 1983." Identically, in this case, Anthony was functionally a bystander in the conflict between Bryant and Brown. The tragic and fatal wound she suffered was completely unintended and not the result of any action directed toward her.

Id. at *2-3 (quoting Archuleta v. McShan, 897 F.2d 495, 497 (10th Cir. 1990)). Swaney argues that these facts in Brown are identical to those in the present case, insofar as he did not intend to shoot Plaintiff when he fired the gun at the dog.

Although the cases are certainly very similar, there is one difference which is troubling to this Court, and which centers upon the apparent intended seizure of the Plaintiff by the officers who raided the house. Although it is clear in Brown that Officer Bryant never intended **[*28]** to seize Anthony, there is arguably an issue in this case as to whether Swaney and the other members of his team intended, upon entering the house, to "seize" the Plaintiff, at least temporarily, during the execution of the search warrant. That is, construing the evidence in the manner most favorably to the Plaintiff, as the party against whom this motion for summary judgment is directed, and drawing all reasonable inferences in his favor, the Court believes that a reasonable jury could find that Swaney shot the advancing dog (whom, he believed, posed a threat to his own safety and the safety of his team members), in order to execute the search warrant and to "seize" the Plaintiff.

The obvious question is whether this connection is too attenuated to constitute a violation of the Plaintiff's Fourth Amendment rights. That is, assuming that Swaney did intend to seize the Plaintiff after entering the residence, and shot the dog in order to ensure that he could enter the residence safely--but accidentally shot the Plaintiff, thereby incapacitating him--

Get a Document - by Citation - 1997 U.S. Dist. LEXIS 23766    Page 11 of 19

Case 1:01-cv-00789-SAS    Document 64-2 2376    Filed 11/07/2003    Page 11 of 28

was the Plaintiff thereby "stopped by the very instrumentality set in motion or put in place in order to achieve that result?"

In **[\*29]** this Court's opinion, the answer to this question must be in the negative, since the phrasing of the requirement that the complaining party be "stopped by the very instrumentality set in motion or put in place in order to achieve that result" appears to require that Swaney intended to seize the Plaintiff in a direct manner by the very means employed, here, by firing his gun at the dog. Cf. Andrade v. City of Burlingame, 847 F. Supp. 760, 764-65 (N.D. Cal. 1994) (finding no Fourth Amendment violation occurred where plaintiffs were injured by a dog that escaped from the police officer's cruiser, since even though the dog was a "weapon," the police officer "did not intend to seize plaintiffs... by means of the dog.... [he] never meant to use this particular 'instrumentality' in any way to effect the seizure"), aff'd, 79 F.3d 1153, 1996 WL 111581 (9th Cir. 1996). In this case, even assuming that Swaney had struck and killed the dog, thereby achieving the result intended by the use of force, this action would not have directly seized the Plaintiff; instead, it would have, at best, indirectly assisted in the Plaintiff's seizure by allowing the officers to **[\*30]** enter the residence safely. Therefore, Plaintiff would not have been "stopped by the very instrumentality set in motion or put in place in order to achieve that result."

Accordingly, this Court concludes, as a matter of law, that Swaney did not violate the Plaintiff's Fourth Amendment rights when he shot the Plaintiff. n11 Therefore, in regard to the asserted violation of the Plaintiff's Fourth Amendment rights, Swaney's Motion for Summary Judgment (Doc. # 33) is SUSTAINED.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n11 Therefore, the Court does not, because it need not, reach the issues of whether Defendant Swaney's discharge of his weapon was objectively reasonable within the meaning of the Fourth Amendment, or of whether Defendant Swaney is entitled to qualified immunity. See Tony L. v. Childers, 71 F.3d 1182, 1184 (6th Cir. 1995) ("When considering the question of qualified immunity, the court should first ask whether the plaintiff has asserted a violation of a constitutional right at all... Only after the court makes this determination, does it consider whether this right was clearly established.") (citation omitted).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*31]**

Turning to this claim as it is asserted against Bell and Melton, the Plaintiff has not explained what actions were taken by these Defendants which violated his right to be free from the use of excessive force, and they are not apparent to this Court. Absent any argument by the Plaintiff on this issue, the Court must find that there exists no genuine issue of material fact as to whether either of these Defendants violated the Plaintiff's Fourth Amendment rights. n12 Accordingly, in regard to the asserted violation of the Plaintiff's Fourth Amendment rights in Count One, as it is directed against Bell and Melton, the Motion for Summary Judgment filed by the City, Schenck, Bell and Melton (Doc. # 32) is SUSTAINED.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n12 The Court will not, because it need not, address the Defendants' arguments regarding malicious prosecution (id. at 2426), the Eighth Amendment (id. at 27-28), or the Equal Protection Clause of the Fourteenth Amendment (id. at 29) in regard to this claim. Even if the Court were to construe Plaintiff's Complaint as setting forth these allegations, there is simply no evidence sufficient to create a genuine issue of material fact as to either of these theories, based upon the facts in the designated record, and Plaintiff has made no argument to the

contrary.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*32]**

2. Assault and Battery (Defendant Swaney)

In Count One of his Complaint, Plaintiff further alleges that Swaney assaulted and battered him by filing his revolver and hitting him.

Swaney argues that this claim is barred by the applicable one-year statute of limitations found in O.R.C. § 2305.111, since the shooting occurred on June 2, 1993, and the Plaintiff filed this lawsuit nearly two years later, on March 26, 1995. The Court agrees that this is the applicable statute of limitations, and that it bars this claim. Accordingly, in regard to the state-law claim of assault and battery, Swaney's Motion for Summary Judgment (Doc. # 33) is SUSTAINED.

B. Count Two: Violation of Fourth and Fourteenth Amendments (all Defendants)

In Count Two of his Complaint, Plaintiff alleges that the Defendants' activities "were carried out under the guise of a tip from an informant, through the use of deception, misstatements and falsehoods; such improper procedure in responding to such tips was commonly employed by members of the task force and Miamisburg Police Department." (Doc. # 1 at P23). Based upon this factual allegation, Plaintiff sues all Defendants for violating his right to due **[*33]** process, n13 as guaranteed by the Fourteenth Amendment to the United States Constitution, and for subjecting him to an unreasonable search and seizure, in violation of the Fourth Amendment to the United States Constitution.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n13 Plaintiff has not clarified whether he is alleging a violation of procedural or substantive due process.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

As explained by the Sixth Circuit, "an action under § 1983 does lie against an officer who obtains an invalid search warrant by making, in his affidavit, material false statements either knowingly or in reckless disregard for the truth." Hill v. McIntyre, 884 F.2d 271, 275 (6th Cir. 1989) (citing Franks v. Delaware, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978)). Plaintiff has failed to create a genuine issue of material fact as to whether any of the Defendants are liable under this standard, however, given the absence of any evidence in the designated portions of the record which would support the Plaintiff's contentions. That is, given **[*34]** the absence of a genuine issue of material fact as to whether any or all of the Defendants engaged in the alleged misconduct during the pre-raid investigation, thereby violating the Fourth and/or Fourteenth Amendments to the United States Constitution, Plaintiff cannot recover upon these allegations. n14

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n14 The Court does not, because it need not, reach the Defendants' arguments regarding the effect of res judicata upon a challenge to the search warrant, the sufficiency of the warrant, or whether pre-seizure conduct is reviewable under the Fourth Amendment (Doc. # 32 at 18-22).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Accordingly, in regard to Count Two of Plaintiff's Complaint, the Motion for Summary Judgment filed by the City, Schenck, Bell and Melton (Doc. # 32) is SUSTAINED. In regard to the same Count, Swaney's Motion for Summary Judgment (Doc. # 33) is SUSTAINED.

C. Count Three: Negligence (Swaney) and § 1983 Supervisory Liability (Schenck and the City)

In Count Three of his Complaint, Plaintiff brings suit against Swaney for negligence **[*35]** (Doc. # 1 at P28) and also sues Schenck and the City for violating 42 U.S.C. § 1983 by failing to train, supervise, discipline or control the other Defendants (Bell, Melton and Swaney) in an adequate manner (id. at P30-31). n15 The Court will address each of these claims in turn.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n15 See supra note 3.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

1. Negligence (Swaney)

In his Motion (Doc. # 33), Swaney argues that he is immune from liability for his negligent acts committed within the scope of his employment, pursuant to O.R.C. § 2744.03(A)(6). This section provides as follows:

> (A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
> ...
> (6) ... the employee is immune from liability unless one of the following applies: **[*36]**
>
> (a) His acts or omissions were manifestly outside the scope of his employment or official responsibilities;
>
> (b) His act or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
>
> (c) Liability is expressly imposed upon the employee by a section of the Revised Code.


O.R.C. § 2744.03(A)(6).

As noted earlier, although the Plaintiff has failed to raise any arguments in opposition to the Defendant's assertion of immunity, this Court is nevertheless required to examine the facts,

as designated by the moving party and considered for accuracy and context, and determine whether there exists a genuine issue of material fact as to the Defendant's liability.

In considering Swaney's assertion of immunity, the Court must therefore evaluate this assertion in light of the facts underlying this case. Construing those facts in the light most favorably to the Plaintiff, as the non-moving party, and drawing all reasonable inferences in his favor, the Court finds that there exists no genuine issue of material fact as to whether Swaney's actions were either manifestly outside the scope of his employment, with malicious purpose, or in bad faith. In **[*37]** addition, the Court is unaware of (and has not been alerted to) any provision of the Revised Code which would expressly impose liability upon Swaney for his actions. Therefore, there are no grounds for denying immunity to this Defendant upon any of these bases.

The issue of whether Swaney's actions were "in a wanton and reckless manner" is more difficult. As described earlier in the Court's discussion of the facts, Swaney entered the Plaintiff's residence unannounced, stepping into a room occupied by between four and seven people--including between two and five children under the age of five--and almost immediately shot at (and missed) the Plaintiff's dog, without being aware of the Plaintiff's presence in the room, and without any designated evidence which demonstrates his awareness that other people were in the room. The issue before the Court is whether these facts, when construed in the light most favorably to the Plaintiff, raise a genuine issue of material fact as to whether the Defendant's actions were wanton and reckless.

The Ohio Supreme Court has quoted, with approval, the definition of the term "recklessness" which is found in the Restatement of Torts:

> The actor's **[*38]** conduct is in reckless disregard of the safety of others if he does an act... knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent... the risk must itself be an unreasonable one under the circumstances.

Thompson v. McNeill, 53 Ohio St. 3d 102, 104-05; 559 N.E.2d 705, 708 (1990) (quoting 2 Restatement of the Law 2d, Torts (1965) at 587-88). n16 This definition of "recklessness" has been utilized by Ohio courts when construing the meaning of O.R.C. § 2744.03(A)(6)(b), the same provision which is at issue here. See, e.g., Hackathorn v. Preisse, 104 Ohio App. 3d 768, 771; 663 N.E.2d 384, 386 (Ohio Ct. App. 1995); Brockman v. Bell, 78 Ohio App. 3d 508, 516; 605 N.E.2d 445, 450 (Ohio Ct. App. 1992); Jackson v. Butler County Bd. of County Commissioners, 76 Ohio App. 3d 448, 454; 602 N.E.2d 363, 367 (Ohio Ct. App. 1991). In addition, some courts **[*39]** have defined the term "reckless," as it is used in § 2744.03(A) (6)(b), to mean "a perverse disregard of a known risk... which suggests conduct more egregious than simple carelessness." Jackson, 76 Ohio App. 3d at 454; 602 N.E.2d at 367 (citing Poe v. Hamilton, 56 Ohio App. 3d 137, 138; 565 N.E.2d 887, 889 (Ohio Ct. App. 1990)). The Ohio Supreme Court has also noted this standard, commenting that wanton misconduct is established only where "the evidence establishes a disposition to perversity on the part of the tortfeasor... under such conditions that the actor must be conscious that his conduct will in all probability result in injury." Fabrey v. McDonald Police Dept., 70 Ohio St. 3d 351, 356; 639 N.E.2d 31, 35 (1994).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

Get a Document by Citation 1997 U.S. Dist. LEXIS 23766    Page 15 of 19

Case 1:01-cv-00769-SAS    Document 64-2    Filed 11/07/2003    Page 15 of 28

n16 In that case, the Ohio Supreme Court further noted that the term "reckless" is often used interchangeably with the terms "willful" and "wanton," and stated that its comments "regarding recklessness apply to conduct characterized as willful and wanton as well." Thompson, 53 Ohio St. 3d at 104 n.1; 559 N.E.2d at 708 n.1. Similarly, this Court will use the terms interchangeably.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*40]**

The Court's analysis of this issue is necessarily limited not only by the complete absence of argument as to this standard, but also by the Defendants' failure to designate facts in the record which illuminate whether Swaney did perceive (or should have perceived) any or all of the occupants of Plaintiff's residence before he fired his weapon and accidentally shot the Plaintiff. n17 However, construing the evidence in the manner most favorably to the Plaintiff, and drawing all reasonable inferences in his favor, and with particular emphasis upon the fact that there were between four and seven people present in the room when Swaney fired his weapon, including between two and five young children, the Court finds that there exists a genuine issue of material fact as to whether Swaney's action was "wanton" and "reckless," i.e., whether he knew or had reason to know "of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n17 The Court was cited to testimony in Swaney's Deposition which indicates that he was informed, prior to the raid, that there might be small children present (p.25). However, he did not remember how many children were present at the time of the raid (Id. at 26).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*41]**

Accordingly, in regard to the Plaintiff's state-law claim of negligence in Count Three, Swaney's Motion for Summary Judgment (Doc. # 33) is OVERRULED.

2. Section 1983 Liability (Schenck and the City)

In Count Three of his Complaint, Plaintiff alleges that Schenck, apparently in his capacity as the Police Chief, and the City failed to train, supervise or discipline Defendants Bell, Melton and Swaney in an adequate manner, evidencing a reckless disregard and conscious indifference to the danger of injury to citizens of Miamisburg, including Plaintiff. Although Plaintiff does not identify 42 U.S.C. § 1983 as the basis for his action, these allegations sound in § 1983 and will be treated as such by the Court, in the absence of any further clarification by the Plaintiff.

In Monell v. New York Dept. of Social Servs., 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978), the Supreme Court held that municipalities n18 cannot be held liable under § 1983 on a respondeat superior theory of liability, but rather can be liable thereunder only if they maintain illegal or unconstitutional policies; absent such policies, they may not be sued **[*42]** for the acts of their employees. One approach to establishing municipal liability is to demonstrate the existence of a custom or policy that causes constitutional violations. See Pembaur v. City of Cincinnati, 475 U.S. 469, 481-82 n.10, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986). A municipality will only be liable under § 1983 if its policy or custom was the "moving force" behind the constitutional violation alleged. Polk County v. Dodson, 454 U.S. 312, 326, 70 L. Ed. 2d 509, 102 S. Ct. 445 (1981). Another approach is to allege a deliberate



policy of inadequate training or supervision, which includes situations in which city policymakers are aware that police officers have repeatedly violated constitutional rights, but are "deliberately indifferent" to the need for further training. City of Canton v. Harris, 489 U.S. 378, 390, 103 L. Ed. 2d 412, 109 S. Ct. 1197. Notably, unless a plaintiff shows that the alleged municipal policy is itself unconstitutional, "considerably more proof than [a] single incident will be necessary" to establish municipal liability. Oklahoma City v. Tuttle, 471 U.S. 808, 824, 85 L. Ed. 2d 791, 105 S. Ct. 2427 (1985). **[*43]** In addition, the Sixth Circuit has held that in order to establish municipal liability under § 1983, the plaintiff "must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." Coogan v. City of Wixom, 820 F.2d 170, 176 (6th Cir. 1987). n19

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n18 The Supreme Court has held that state officials acting in their official capacities may not be sued under 42 U.S.C. § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989). Instead, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Id. at 71. Since Plaintiff has sued Defendant City directly, however, there is no need to construe Plaintiff's claim against Defendant Schenck as being asserted against Defendant City. Accordingly, Defendant Schenck will be awarded summary judgment on this claim as it is brought against him in his official capacity. **[*44]**

n19 The Court notes here that this theory of liability is distinct from a theory of "supervisory liability" which depends upon a showing that the defendant "ratified" the unlawful acts. This latter theory is set forth, infra, in the Court's discussion of Counts Four and Five.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

It is axiomatic that in order to establish municipal liability, the plaintiff must first establish an underlying constitutional violation. See **Tinch v. City of Dayton, 1996 U.S. App. LEXIS 5716,** No. 94-3436, 1996 WL 77445, at *3 (6th Cir.) ("a finding that [plaintiff] suffered an actual violation of his constitutional rights at the hands of the defendant officers... [is] a necessary prerequisite to a finding of liability against the municipal defendants"), cert. denied, 519 U.S. 862, 117 S. Ct. 168, 136 L. Ed. 2d 110 (1996). In this case, however, for reasons set forth above, Plaintiff has failed to create a genuine issue of material fact as to whether a constitutional violation occurred. Therefore, neither the City nor Schenck n20 can be held liable under § 1983, under a Monell theory of liability.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n20 The Court does not, because it need not, reach the issue of whether Schenck, in his capacity as police chief, was a "final policymaker" for purposes of Monell liability.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*45]**

For these reasons, in regard to Count Three of Plaintiff's Complaint, as it is directed against Schenck and the City, the Motion for Summary Judgment filed by the City, Schenck, Bell and Melton (Doc. # 32) is SUSTAINED.

Get a Document - by Citation - 1997 U.S. Dist. LEXIS 23766    Page 17 of 19

Case 1:01-cv-00789-SAS   Document 64-2   Filed 11/07/2003   Page 17 of 28   Page 17 of 19

D. Count Four: Ratification of Unconstitutional Conduct (the City)

In this Count, Plaintiff alleges that the City violated the Fourth and Fourteenth Amendments to the United States Constitution by ratifying the unconstitutional conduct of its officers, both in this instance and in past instances involving similar conduct (Doc. # 1 at P 37).

This Court is unaware of the precise theories of liability intended by the Plaintiff in regard to the Fourth and Fourteenth Amendments. Therefore, the Court will construe this claim as being predicated upon an alternate theory of municipal liability under § 1983, as announced and applied by the Sixth Circuit. Specifically, the Sixth Circuit has held that municipalities may be liable under § 1983 where the responsible law enforcement officer (typically the Sheriff or Police Chief) has ratified unconstitutional conduct by completely failing to investigate citizens' complaints of constitutional violations. Marchese v. Lucas, 758 F.2d 181, 187-88 (6th Cir. 1985), **[*46]** cert. denied, 480 U.S. 916 (1987); Walker v. Norris, 917 F.2d 1449, 1457 (6th Cir. 1990); see also O'Banion v. Bowman, 824 F. Supp. 743 (S.D. Ohio 1993). If the Sheriff's failure to investigate rises to the level of a policy or custom, and if there is a sufficiently close relationship with the municipality, then the Sheriff's liability may be imputed to the municipality, which will be held liable. See Marchese, 758 F.2d at 188.

Plaintiff is precluded from recovering upon this theory of liability, however, for two reasons. First, Plaintiff has failed to create a genuine issue of material fact as to the existence of any underlying constitutional violation, and thereby cannot hold the City liable under a theory of ratifying unconstitutional actions by its police officers. Second, Plaintiff has failed to create a genuine issue of material fact as to whether Schenck, in his official capacity as the Police Chief, failed to investigate similar complaints by other citizens, thereby demonstrating an unlawful custom or policy of failing to investigate complaints. Given the absence of a genuine issue of material **[*47]** fact as to these two necessary elements of this § 1983 theory of ratification, Plaintiff cannot recover upon this claim.

For these reasons, in regard to Count Four of Plaintiff's Complaint, as it is directed against the City, the Motion for Summary Judgment filed by the City, Schenck, Bell and Melton (Doc. # 32) is SUSTAINED.

E. Count Five: Ratification of Unconstitutional Conduct (Defendant Schenck)

The Court will construe this claim against Schenck in a manner similar to the allegation in Count Four against the City, that is, as a claim under 42 U.S.C. § 1983 for unlawful ratification. Although Schenck may not be sued in his official capacity under § 1983, see Will v. Michigan Dept. of State Police, 491 U.S. 58, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989), the Court will analyze this claim as it is brought against him in his individual capacity.

The Sixth Circuit has held that a supervisory employee, such as Schenck, "cannot be held liable under § 1983 for the constitutional torts of those he supervises unless it is shown 'that the supervisor encouraged the specific incident of misconduct or in some other way directly participated **[*48]** in it.'' Searcy v. City of Dayton, 38 F.3d 282 (6th Cir. 1994) (citing Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir.), cert. denied 469 U.S. 845, 83 L. Ed. 2d 93, 105 S. Ct. 156 (1984)). In this case, Plaintiff has not only failed to create a genuine issue of material fact as to whether Schenck encouraged or participated in any misconduct, but has also failed to create a genuine issue of material fact as to the existence of any underlying constitutional violation which was allegedly ratified by Schenck. Therefore, he cannot succeed upon this claim.

Accordingly, in regard to Count Five of Plaintiff's Complaint, as it is directed against Schenck, the Motion for Summary Judgment filed by the City, Schenck, Bell and Melton (Doc. # 32) is SUSTAINED.

WHEREFORE, based upon the aforesaid, the Motion for Summary Judgment filed by the City, Schenck, Bell and Melton (Doc. # 32) is SUSTAINED. Judgment will ultimately be entered in their favor and against the Plaintiff, thus dismissing them, with prejudice, from this lawsuit.

Swaney's Motion for Summary Judgment (Doc. # 33) is SUSTAINED in regard to Counts One and Two, and OVERRULED in regard **[*49]** to Count Three (state-law claim of negligence). Judgment will ultimately be entered in his favor and against the Plaintiff, in regard to Counts One and Two.

Plaintiff's Motion for Leave to File Pleadings (Doc. # 44) is OVERRULED. n21

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n21 The Court will OVERRULE the Plaintiff's Motion for Leave to File Pleadings (Doc. # 44), given that it is the fifth such request which has been made. However, given that the Court's decision herein is an interlocutory order, and in the interest of being fair to the Plaintiff, who is not responsible for his Counsel's failure to comply with the Court's deadlines, the Court will allow Plaintiff to file a memorandum contra, within twenty (20) days of the date of this decision, which challenges any aspect of this Court's decision (except for Count Three as it is brought against Swaney), with specific, focused references to the existence of facts which would create a genuine issue of material fact on any claim as to which this Court has held there is no such genuine issue. If such a memorandum is filed, the Defendants should not respond to it as a matter of course; instead, the Court will review said memorandum and then advise the Defendants as to whether a reply memorandum is necessary.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*50]**

Still remaining viable in the above-captioned cause of action is Plaintiff's state-law claim of negligence against Swaney (Count Three). n22

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n22 The Court notes here that if this state-law negligence claim against Swaney is the only claim which remains viable after the procedures specified supra at n.21, have been completed, this federal Court may decline to exercise its supplemental jurisdiction over this claim, and dismiss it without prejudice to being refiled in state court.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -March 31, 1997

WALTER HERBERT RICE, CHIEF JUDGE

UNITED STATES DISTRICT COURT

Service: **Get by LEXSEE®**
Citation: **1997 U.S. Dist. LEXIS 23766**
View: Full
Date/Time: Friday, October 31, 2003 - 10:31 AM EST

Get a Document - by Citation - 1997 U.S. Dist. LEXIS 23766    Page 19 of 19

Case 1:01-cv-00789-SAS    Document 64-2    Filed 11/07/2003    Page 19 of 28

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ESTATE OF                              :    Case No. 01-CV-769
ROGER D. OWENSBY JR., et al.,          :
                                       :    Senior Judge S. Arthur Spiegel
                                       :
        Plaintiff,                     :    Mag. J. Timothy S. Hogan
                                       :
v.                                     :
                                       :
CITY OF CINCINNATI, et al.,            :
                                       :
                                       :
        Defendants.                    :
                                       :

## PLAINTIFF'S THIRD REQUEST
## FOR PRODUCTION OF DOCUMENTS TO DEFENDANT
## CITY OF CINCINNATI

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, the Estate

of Roger D. Owensby ("Plaintiff") submits the following Plaintiff's Third Request for

Production of Documents to Defendant City of Cincinnati ("Defendant").

### DEFINITIONS AND INSTRUCTIONS

A.    The terms "Defendant," "you" or "your" mean Defendant City of

Cincinnati ("Defendant") as well as its agents and other representatives.

B.    The term "document" is used as defined in Fed. R. Civ. P. 34 and

includes "writings" as defined in Fed. R. Evid.1001. The terms "document" or

documents" also include, but are not limited to, the original and all copies (regardless of

origin and whether or not including additional writing thereon or attached thereto) of

electronic mail ("e-mail") messages, memoranda, reports, books, manuals, instructions,

records, notes, letters, notices, confirmations, correspondence, telegrams, receipts,

pamphlets, magazines, newspapers, inventory books, inter-office and intra-office communications, contracts, cables, notations or memoranda of any sort of conversation, telephone calls, meetings or other communications, bulletins, printed matters, computer printouts, teletypes, transcripts, diaries, analyses, returns, summaries, minutes, messages, correspondence, press releases, circulars, reviews, opinions, offers, studies and investigation questionnaires and surveys, worksheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes and amendments of any of the foregoing), graphic or oral records or representations of any kind (including, without limitation, photographs, photomicrographs, charts, graphs, microfiche, microfilm, videotape, recordings and motion pictures, electronic and mechanical records) or representations of any kind (including, without limitation, tapes, cassettes, discs and recordings), and other written, printed, typed or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, phonograph recording, film tape or videotaped.

D.    With respect to any document you produce, each original is to be produced, and each copy is to be produced if it in any way varies from the original by addition or subtraction of marginalia, notations, text, or any other information. Additionally, each and every draft or part of any responsive document is to be produced.

F.    If you withhold any document because of a claim of privilege or an assertion of work product, you must provide a privilege log in accord with Rule 26(b)(5), Fed. R. Civ. P., consisting of a written list of all documents falling within the description contained in the applicable request which are not produced, identifying each

-2-

such document by date, preparer and addressee, identifying each person to whom a copy was furnished, stating the general subject matter of each document, stating the ground upon which each document is considered to be privileged from disclosure, and identifying each paragraph of this request which requests the production of the withheld document.

G.     Documents are to be produced which are in the possession of the Defendant, as well as its attorneys, agents or representatives.

H.     As required by the specific terms of Rule 34, all documents produced pursuant to these requests are to be organized and labeled to correspond with the numbered requests or are to be produced, without alteration, as they are kept in the usual course of business.

I.     If documents responsive to a particular request no longer exist, but are known to have been in existence, state the circumstances under which they were lost or destroyed, describe the documents to the fullest extent possible, state the request(s) to which they are responsive, and identify any persons having knowledge of the content of such documents.

J.     Each of the following requests is a continuing one. If subsequent to complying with this request, Defendant obtains or becomes aware of any additional documents, please serve them upon Plaintiff immediately.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

25.    All reports, complaints and interviews pertaining to Cincinnati Police Department's use of force that were reviewed or developed by the U.S. Department of Justice and the City of Cincinnati in developing the *Memorandum of Agreement between the United States Department of Justice and the City of Cincinnati, Ohio and the Cincinnati Police Department, April 12, 2002.*

RESPONSE:

26.    The 1979 report by the Mayor's Community Relations Panel (sometimes referred to as the Hawkins Report) in which Chair Lawrence Hawkins, V.P. of the University of Cincinnati and member Archbishop Joseph L. Bernadin allegedly reported to City Council that a problem of misconduct existed in the Cincinnati Police Department.

RESPONSE:

-4-

27.     The 1981 review of policing in Cincinnati published by The United States Commission on Civil Rights.

RESPONSE:

28.     All reports of studies conducted by the City of Cincinnati Office of Municipal Investigation (OMI) pertaining to policing in Cincinnati during the period 1981 through the present.

RESPONSE:

29.     All reports of investigations conducted by OMI pertaining to citizen complaints against Cincinnati police relating to alleged excessive use of force or improper stops, searches and/or seizures upon African-Americans during the period 1981 through the present.

RESPONSE:

-5-

30.    The 1983 "Comprehensive Report" prepared by City administrators, including the Honorable Cheryl Grant, allegedly advising the City Manager that 86% of the Cincinnati Police Department's personnel interviewed answered "Yes" to the question, "Is there racial prejudice-racism in the Cincinnati Police Division."

RESPONSE:

31.    The report by City administrators investigating the 1991 Cincinnati police actions that resulted in the deaths of two African-American citizens, which allegedly recommended increased training for officers dealing with minority and special needs populations.

RESPONSE:

-6-

32.    The recommendations by a City panel to the City Manager allegedly calling for increased training and better measures to review police misconduct and track and supervise officers who use excessive force following the 1995 alleged excessive use of force on Pharon Crosby by Cincinnati police.

RESPONSE:

33.    The August 1995 report from the panel headed by former Ohio Governor John J. Gilligan addressing allegations of racism lodged by the Sentinel Police Association against the City of Cincinnati.

RESPONSE:

34. The 1998 agreement between the City of Cincinnati and several community groups drawn largely from the African-American community, mediated by the U.S. Department of Justice, in which the City allegedly agreed to upgrade the following: OMI and the system for holding police accountable, training on cultural awareness and special needs, and the system for tracking officers' performance.

RESPONSE:

35. The 1999 Sentinel Police Association's *Final Report for the New Millennium* presented to the City of Cincinnati.

RESPONSE:

James B. Helmer, Jr. (0002878)
Paul B. Martins (0007623)
Frederick M. Morgan, Jr. (0027687)
Robert M. Rice (0061803)
*Trial Attorneys for Plaintiff*
HELMER, MARTINS & MORGAN CO., L.P.A.
Fourth & Walnut Centre, Suite 1900
105 East Fourth Street
Cincinnati, Ohio 45202
Telephone: (513) 421-2400
Facsimile: (513) 421-7902

-8-

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served, by facsimile and ordinary U.S. mail, postage prepaid, on October 1, 2003, upon the following:

Neil F. Freund
Vaseem S. Hadi
FREUND, FREEZE & ARNOLD
One Dayton Centre
One South Main Street, Suite 1800
Dayton, Ohio 45402-2017
*Trial Counsel for Defendants City of
Cincinnati and Thomas Streicher, Jr.*

Geri H. Geiler
Assistant City Solicitor
Room 214, City Hall
801 Plum Street
Cincinnati, Ohio 45202
*Trial Attorney for Defendants
City of Cincinnati and Thomas
Streicher, Jr.*

Mark T. Tillar
240 Clark Road
Cincinnati, Ohio 45202
*Trial Attorney for Plaintiff*

John J. Helbling
3672 Springdale Road
Cincinnati, Ohio 45251
*Trial Attorney for Plaintiff*

Donald E. Hardin
HARDIN, LEFTON, LAZARUS
    & MARKS, LLC
915 Cincinnati Club Building
30 Garfield Place
Cincinnati, Ohio 45202
*Trial Attorney for Defendants Robert
B. Jorg, Patrick Caton, Darren
Sellers, Jason Hodges, and Victor
Spellen*

Wilson G. Weisenfelder, Jr.
RENDIGS, FRY, KIELY &
    DENNIS, LLP
900 Fourth & Vine Tower
Cincinnati, Ohio 45202
*Trial Attorney for Defendants City of Golf
Manor, Stephen Tilley, Robert Heiland, and
Chris Campbell*

Dale A. Stalf
BUCKLEY, KING & BLUSO
1320 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
*Counsel for Defendants Huntington
Meadows, LTD, and Bryan Menefee*

Ravert J. Clark
114 East Eighth Street
Suite 400
Cincinnati, Ohio 45202
*Trial Attorney for Defendant David Hunter*