UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF ROGER D. OWENSBY JR., | : : : | |
| | : | Case No. 01-CV-769 |
| Plaintiff, | : : | Senior Judge S. Arthur Spiegel |
| v. | : : | |
| CITY OF CINCINNATI, ET AL., | : : : | |
| Defendants. | : : | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
MOTION FOR PROTECTIVE ORDER (Doc. 63)**

Defendant City of Cincinnati has moved this Court for a protective order to avoid producing any of the document requests that comprise Plaintiff's Third Request for Production of Documents.  Doc. 63, Mot. P.O.  The City's motion should be denied because the information sought is relevant, the City has violated Rule 26(c), Fed. R. Civ. P., and S.D. Ohio Civ. R. 37.1 and 37.2 in failing to attempt any extrajudicial resolution, and because all objections have been waived by the City's failure to provide written responses to Plaintiff's document requests.

**I.     INTRODUCTION**

On November 7, 2000, a group of five Cincinnati police officers beat Roger Owensby, Jr., choked him, handcuffed him, beat him after he was handcuffed, maced him, and left him to die in the back seat of a Golf Manor police cruiser.  At the scene, these and other Cincinnati police officers, Golf Manor police officers and Huntington Meadows security personnel on the scene failed to provide medical attention for Mr. Owensby's injuries.  The beatings and

subsequent inattention caused his death. This lawsuit, brought by Mr. Owensby's father and estate administrator, alleges violations of constitutionally-created civil rights afforded to all United States citizens under 42 U.S.C. § 1983 as well as state tort claims for the wrongful death of his son at the hand of these defendants. Mr. Owensby, a 29-year-old African American man, is survived by his thirteen-year-old daughter and her mother, his parents and his brother. Doc. 1, Complaint.

This heavy-handed and excessive force by the Cincinnati police force led to protests and calls for an investigation by the African-American community. On April 7, 2001—five months to the day after Mr. Owensby's death—Cincinnati Police Officer Stephen Roach shot and killed another African American man, Timothy Thomas. *Liesure v. City of Cincinnati*, 267 F. Supp. 2d 848, 850 (S.D. Ohio 2003). This death, coupled with the history of excessive force by Cincinnati police against African-American citizens, led to riots, protests, and a boycott of the City of Cincinnati by the African-American community. *Id.*

## II.   FACTS

On October 1, 2003, Plaintiff served upon the City of Cincinnati his Third Request for Production of Documents seeking the production of 11 categories of documents relating to past reports and studies of the City of Cincinnati's history for use of excessive force by its police force. In summary, the historic documents requested are:

25.   Reports, complaints and interviews relating to the Cincinnati Police Department's use of force in the Memorandum of Agreement between the United States Department of Justice and the City of Cincinnati and its Police Department, dated April 12, 2002.

26.   1979 report by the Mayor's Community Relations Panel ("Hawkins Report") relating to alleged misconduct in the Cincinnati Police Department.

27. 1981 U.S. Commission on Civil Rights review of policing in Cincinnati.

28. Cincinnati Office of Municipal Investigation ("OMI") reports/studies relating to policing in Cincinnati.

29. OMI reports relating to citizen complaints of Cincinnati police excessive force, improper stops, searches and/or seizures upon African-Americans from 1981 through the present.

30. 1983 Cincinnati "Comprehensive Report" allegedly advising the City Manager of racial prejudice in the Cincinnati Police Department.

31. 1991 Report by City Administrators allegedly recommending increased training for officers dealing with minority and special needs populations.

32. Panel report to the City Manager following the 1995 alleged excessive force on Pharon Crosby by Cincinnati police, recommending increased training and supervision of officers who use excessive force.

33. August 1995 report from the panel headed by former Ohio Governor John J. Gilligan addressing allegations of racism lodged by the Sentinel Police Association against the City of Cincinnati.

34. 1998 Agreement between the City of Cincinnati and several community groups, mediated by the Department of Justice, in which the City agreed to upgrade OMI and the system for holding police accountable; training on cultural awareness and special needs; and the system for tracking officers' performance.

35. 1999 Sentinel Police Association's Final Report for the New Millennium presented to the City of Cincinnati.

Doc. 63, Mot. P.O., Exhibit A.

The City's written response was due on October 30, 2003. Plaintiff agreed to an extension of time for the City to respond upon the representation that the City's response and associated requested documents would be produced by November 6, 2003. Instead, without any attempt at extrajudicial resolution, the City filed this Motion for Protective Order. Martins Declaration, attached.

### III. ARGUMENT

**A.   The Historic Documents Sought By Plaintiff's Third Request For Production Of Documents Are Relevant.**

Plaintiff alleges that the City of Cincinnati's failure to properly train and supervise its police officers resulted in the overwhelming use of excessive force by the five individual police officers who physically assaulted Mr. Owensby on November 7, 2003. This defect also extends to the failure to train and supervise these and other officers to provide prompt medical attention for Mr. Owensby, who was clearly in distress, had been maced, beaten, and was unresponsive or unconscious. All of this was the product of customs and policies of the City of Cincinnati which allowed these officers to behave in this unconstitutional manner, resulting in Mr. Owensby's death. Doc. 1, Complaint, ¶¶ 26-40.

The City alleges that the historic documents sought in Plaintiff's Third Request for Production are "absolutely irrelevant to any issues in this case." Doc. 63, Mot. P.O., p. 2. Nevertheless, it then concedes that the requested documents may pertain to its "custom and policy." *Id.* at 5. In fact, the historic information sought in Plaintiff's Third Request for Production chronicles and is directly relevant to (1) the City's knowledge of problems with its police force; (2) its training; (3) its supervision; and, (4) its policy or custom of refusing to meaningfully address these problems.

Plaintiff is entitled to discovery of information that is relevant or "appears reasonably calculated to lead to the discovery of admissible evidence. Rule 26(b)(1), Fed. R. Civ. P.; Doc. 63, Mot. P.O., p. 3.

In a § 1983 civil rights action such as this, the Supreme Court has declared that

municipalities like the City of Cincinnati may be liable for the deprivation of constitutionally protected rights in furtherance of the following public policy:

> The knowledge that a municipality will be liable for all of its injurious conduct, whether committed in good faith or not, should create an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights. Furthermore, the threat that damages might be levied against the city may encourage those in a policymaking position to institute internal rules and programs designed to minimize the likelihood of unintentional infringements on constitutional rights. Such procedures are particularly beneficial in preventing those "systemic" injuries that result not so much from the conduct of any single individual, but from the interactive behavior of several government officials, each of whom may be acting in good faith.

*Owen v. City of Independence*, 445 U.S. 622, 651-52 (1980).

> In addition, the threat of liability against the city ought to increase the attentiveness with which officials at the higher levels of government supervise the conduct of their subordinates. The need to institute system-wide measures in order to increase the vigilance with which otherwise indifferent municipal officials protect citizens' constitutional rights is, of course, particularly acute where the front-line officers are judgment-proof in their individual capacities.

*Id.* at 652 n.36.

For purposes of Plaintiff's § 1983 claims, the City is liable where the violation of constitutionally protected rights is based upon an action that "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by municipal officers, or where the constitutional deprivation is visited pursuant to governmental "custom" even though such a custom has not received formal approval. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690-91 (1978).

"Custom" is defined as "persistent and wide-spread discriminatory practices of state officials....Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id*. at

691, *citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970). A policy or custom need not be made by the city's lawmakers, but can be set by "those whose edicts or acts may fairly be said to represent official policy." *Id.* at 694.

Here, Mr. Owensby paid with his life for the deprivation of his Fourth and Fourteenth Amendment rights on the evening of November 7, 2000. Plaintiff has alleged and is entitled to discovery to determine whether the use of excessive force in his arrest and detention, as well as the failure to provide prompt medical care, was the result of a policy or custom of the City of Cincinnati, i.e., "persistent and wide-spread discriminatory practices of state officials" like the Cincinnati Police Department.[1]

Moreover, this Court has previously ruled that such historic documents are relevant. In the § 1983 case arising out of the shooting death of Timothy Thomas five months after Mr. Owensby, this Court ruled that allegations of a history of racial discrimination in the Cincinnati Police Department were relevant. *Leisure v. City of Cincinnati*, 267 F. Supp. 2d 848, 856 (S.D. Ohio 2003). Specifically, the Court recognized that it was proper for the plaintiff in *Leisure* "to place the shooting of Timothy Thomas into a larger historical perspective of city policy and events." *Id.*

The deaths of Mr. Thomas and Mr. Owensby are connected not only by time. They also

---

[1] Where a widespread practice constitutes a "custom" or usage with the force of law, liability of the City should be imposed whether or not official policymakers had actual knowledge of the practice. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989). The custom or usage in question will be attributed to the government body when the "duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the...governing body that the practices have become customary among its employees. *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987), *cert. denied sub nom., City of Fayetteville v. Spell*, 484 U.S. 1027 (1988).

share the same instrument of death and the deprivation of their constitutional rights—the City of Cincinnati and its police force. Thus, Plaintiff is also entitled to place the death of Mr. Owensby in a historical context. Plaintiff's Third Request for Production of Documents is directed to meeting this goal.

      **1.**    **Plaintiff's Third Request for Production of Documents is relevant in establishing acquiescence and tolerance by the City of Cincinnati to previously documented unconstitutional conduct.**

Acquiescence or tolerance by municipal officials of previous unconstitutional conduct by City employees will also establish § 1983 liability against the City of Cincinnati. *Leach v. Shelby County Sheriff*, 891 F.2d 1241 (6th Cir. 1989). In *Leach* a history of poor treatment of fourteen paraplegic prisoners at the jail resulted in the Sixth Circuit holding the sheriff liable for unconstitutional treatment of the plaintiff paraplegic even though the plaintiff could not prove that the sheriff knew of his own mistreatment. *Leach* concluded that the need for more adequate supervision of the care given to such inmates was so obvious and the likelihood that the inadequacy would result in the violation of constitutional rights was so great, that the county was liable for the plaintiff's damages.

The Fourth Circuit has also found that "occurrence of the specific violation was made reasonably probable by permitted continuation of the custom." *Spell v. McDaniel*, 824 F. 2d 1380, 1391 (4th Cir. 1987). Knowledge attributed to a municipality like the City of Cincinnati may also be "evidenced by recorded reports to or discussions by a municipal governing body." *Id.* at 1387 (emphasis supplied); *See also, Bielevicz v. Dubinion*, 915 F. 2d 845, 851 (3d Cir. 1990) ("it is logical to assume that continued official tolerance of repeated misconduct facilitates similar unlawful actions in the future.").

Here, there exists a twenty-year history of excessive force by the Cincinnati Police Department against African-American citizens. It is documented in the requested reports that comprise Plaintiff's Third Request for Production of Documents. As such, they are relevant and discoverable.

> **2.      Plaintiff's Third Request for Production of Documents is relevant in establishing inadequacy of training by the City of Cincinnati in response to previously documented unconstitutional conduct.**

Inadequacy of training may also serve as a basis of § 1983 liability. *City of Canton v. Harris*, 489 U.S. 378 (1989). In *Harris*, the Supreme Court noted that training on the use of deadly force was one example of an area in which the need for training is "so obvious" that failure to train would amount to deliberate indifference. *Id.* at 390 n.10. The Court also noted that where the police "often violate constitutional rights...the need for further training must [be] plainly obvious to the city policy makers." *Id.*

Again, the historic documents requested in Plaintiff's Third Request for Production are relevant in establishing that the City and its police chief were clearly put on notice of the need for intensified training to address the chronic use of excessive force against African-American citizens and the need for prompt medical care when arrested citizens are injured.

> **3.      Plaintiff's Third Request for Production of Documents is relevant in establishing inadequacy of supervision by the City of Cincinnati in response to previously documented unconstitutional conduct.**

In conjunction with the failure of training discussed above, the failure to supervise and discipline officers for police misconduct is also a sufficient basis for establishing § 1983 liability. *McKenna v. City of Memphis*, 785 F.2d 560 (6th Cir. 1986).

> An obvious need [for more or better supervision] may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of

> the municipality to investigate or to forestall further incidents.

*Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995).

> Whether or not the claims had validity, the very assertion of a number of such claims put the City on notice that there was a possibility that its police officers had used excessive force.

*Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986).

Here, the documents requested are the first step in establishing that there has been a lengthy series of complaints relating to prior police misconduct involving use of excessive force or the failure to provide prompt medical care of injured citizens in custody. These reports would also be relevant in establishing the inadequacy of the resulting response by the City to these complaints. Thus, the historic documents identified in Plaintiff's Third Request for Production are relevant or are reasonably calculated to lead to the discovery of admissible evidence. Rule 26(b)(1), Fed. R. Civ. P.; Doc. 63, Mot. P.O., p. 3.

    **B.**    **The Burden To The City Of Cincinnati In Producing The Requested Historic Documents Is Slight.**

The City argues that the benefit derived from the production of the requested historic reports sought in Plaintiff's Third Request for Production is outweighed by the burden of production. Doc. 63, Mot. P.O., p. 4. The City submits no affidavit detailing any burden. Such arguments lack merit and may not serve as a bases for avoiding production.

The documents sought are historical reports, complaints, and findings of various commissions and agencies provided to the City or generated by the City over the past twenty years. The only burden on the City is locating the identified documents. Plaintiff will bear the cost of inspecting the responsive documents and the cost of copying. Such a burden is routine in

civil litigation and is not so unreasonable as to justify a protective order excusing the City from producing the requested documents. *See, Fann v. Giant Food, Inc.*, 115 F.R.D. 593, 596 (D.D.C. 1987) ("[B]urden alone does not allow a party to avoid complying with a legitimate discovery request. Rather, the discovery must be '*unduly* burdensome or expensive.'") (quoting Rule 26(c), Fed. R. Civ. P.).

The City also argues that production of the documents sought in Document Request 25 (reports, complaints and interviews relating to use of force submitted to the Department of Justice) would be burdensome because "[t]he documentation required by the DOJ was extremely voluminous and spanned several years." Production of such responsive documents, whether it is "voluminous" or "spanned several years," imposes no undue burden on the City since these documents were already gathered and submitted to the Department of Justice. Any claim of undue burden should have been lodged against the DOJ—which the City did not do. Thus, all that is required now is to produce what the City previously gathered and produced once before.

      **C.    The Production Of The Requested Historic Documents Does Not Justify Separate Trials For The City And Its Police Chief From That Of Their Police Officers.**

In a reprise of its prior motion, the City next argues that production of the requested historic documents would justify separate trials for itself and its police chief from that of their individual officers. Doc. 63, Mot. P.O., p. 5. This argument is illogical. The fact that some of the documents sought by the Plaintiff will establish the liability of the City (while other documents will likewise establish the liability of the individual officers) is no basis for separate trials. As previously discussed in Plaintiff's Memorandum In Opposition To The City's Motion For Separate Trials, the facts and legal issues that gave rise to Mr. Owensby's death are

inextricably intertwined between the individual police officers and the City and its police chief. Doc. 61, Plaintiff's Memorandum Contra Motion for Separate Trials. The misconduct of the officers in using excessive force and in failing to provide prompt medical attention to Mr. Owensby is a result of the unconstitutional customs, policies, training and supervision of the City of Cincinnati and its police chief. Said another way, the individual officers were the foreseeable instruments of the City's customs and policies.

> D. **The City's Objections To The Individual Document Requests Are Without Merit.**
>
> 1. **Document Request 25: the work product doctrine and Judge Dlott's Protective Order.**

The City of Cincinnati next raises individual objections to specific document requests. Document Request 25 seeks the production of reports, complaints and interviews pertaining to use of force developed by the U.S. Department of Justice and the City in fashioning the April 12, 2002 Memorandum of Agreement. The City argues that these documents constitute work product which are part of settlement negotiations between the City and the Department of Justice. Doc. 63, Mot. P.O., pp. 5-6. The City is mistaken.

Objective reports, complaints and interviews are not work product and are discoverable. The work product doctrine does not protect from disclosure factual evidence, such as witness statements in the form of complaints or interviews—especially those created years ago which Plaintiff cannot recreate without undue hardship. Rule 26(b)(3), Fed. R. Civ. P.; *Miles v. M/V Mississippi Queen*, 753 F.2d 1349, 1351-53 (5th Cir. 1983); *Sherrell Perfumes, Inc. v. Revlon, Inc.*, 77 F.R.D. 705 (S.D.N.Y. 1977); Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, pp. 584-85 (4th ed. 2001).

Moreover, if these documents were disclosed to the Department of Justice as part of a settlement negotiation, as the City says, then the disclosure was made to an adversary of the City and, thus, any claim of work-product protection is waived. *Salomon Bros. Treasury Litig. v. Steinhardt Partners, L.P.,* 9 F.3d 230, 234-35 (2d Cir. 1993) (Disclosure of work-product production materials to the SEC, with whom the trader stood in an adversarial position, was deemed to constitute a waiver in a subsequent class action litigation with private parties.); *In re Columbia/HCA Healthcare Corp., Billing Practices Litig.*, 192 F.R.D. 575, 580 (M.D. Tenn. 2000) ("The Court finds that Columba/HCA's disclosure of work product to the government was disclosure of work product to an adversary. Such disclosure contradicted the purpose of the protection of the work product doctrine. Accordingly, the Court finds that Columbia/HCA thereby waived any protection these documents had under the work product doctrine."). The Sixth Circuit affirmed the finding of the District Court, stating that "once the [work product] privilege is waived, waiver is complete and final. *In re Columbia/HCA Healthcare Corp., Billing Practices Litig.*, 293 F.3d 289, 307 (6th Cir. 2002).

Even documents provided to an adversary as part of settlement discussions waive any work product doctrine protection. *In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844, 846-47 (8th Cir. 1988); *Gruman Aerospace Corp. v. Titanium Metals Corp.*, 91 F.R.D. 84, 90 (E.D.N.Y. 1981).

Finally, the City argues that the documentation sought by Document Request 25 is protected from disclosure by a Protective Order entered by Judge Dlott. Doc. 63, Mot. P.O., p. 6, Exhibit C. However, Judge Dlott's Protective Order does not affect the historic documents sought by Document Request 25. Instead, it covers "drafts of any monitor reports pursuant to

para. 107 of the Collaborative Agreement and para. 107 of the Memorandum of Agreement and any responses to such drafts or other documents related to said drafts." Doc. 63, Exhibit C. By its expressed terms, the Protective Order does not cover the "reports, complaints and interview" sought by Document Request 25. Therefore, these documents are discoverable.

### 2. Document Reqests 26 - 30: Plaintiff is entitled to documents that predate the two-year statute of limitations period.

The City next argues that the historic reports and studies sought by Document Requests 26 through 30 need not be produced because they "are more than twenty years old, are remote in time to any of these issues and are irrelevant to a single occurrence in the year 2000 and are not reasonably calculated to lead to the discovery of any admissible evidence." Doc. 63, Mot. P.O., pp. 7-8.

As demonstrated in Section A above, this argument is incorrect. The history of the use of excessive force by the Cincinnati police force and the history of failing to provide prompt medical care for injured citizens in custody is indeed relevant in establishing § 1983 liability against the City of Cincinnati and it police chief. All of the requested document are relevant in establishing the City's customs and policies; its tolerance or acquiescence in patterns of use of excessive force; and its failure to train and supervise its police force in light of recurring reports of the same type of problems. To paraphrase this Court's holding in *Leisure*, Plaintiff should be allowed to place Mr. Owensby's death "into a larger historical perspective of city policy and events." *Leisure*, 267 F. Supp. 2d at 856.

### 3. Document Requests 26 - 28, 30: Plaintiff's requests are not overbroad.

The City objects to producing the 1979 Hawkins Report sought by Document Request 26

because it claims that it is overbroad because Plaintiff described it as alleging that "'a problem of misconduct existed in the Cincinnati Police Department.'" Doc. 63, Mot. P.O., p. 8, *quoting* Document Request 26. The document request is not overbroad. It seeks the production of a single document—the 1979 Hawkins Report. The fact that Plaintiff used further descriptive terms in identifying the Hawkins Report does not make the document request overbroad.

Likewise, the use of the term "policing in Cincinnati," used in describing the 1981 U.S. Commission on Civil Rights review (Document Request 27) and Cincinnati OMI reports (Document Request 28), does not render these document requests overbroad. Both document requests identify discrete reports of the Commission on Civil Rights and the Cincinnati OMI.

Finally, the description of the 1983 Comprehensive Report to the City Manager of racial prejudice in the Cincinnati Police Department (Document Request 30) is not overbroad because it describes an alleged specific finding in the Report that 86 percent of police personnel felt that racism existed in the Cincinnati Police Department. The fact remains that the document request seeks the production of a discrete 1983 Report to the Cincinnati City Manager.

Thus, none of the requested reports or studies are overbroad and, as demonstrated in Section A above, all are relevant or appear reasonably calculated to lead to the discovery of admissible evidence. Rule 26(b)(1), Fed. R. Civ. P.

    4. **Document Request 31: Plaintiff's request is not vague.**

Plaintiff's Document Request 31 seeks the production of:

> The report by City administrators investigating the 1991 Cincinnati police actions that resulted in the deaths of two African-American citizens, which allegedly recommended increased training for officers dealing with minority and special needs populations.

The City claims that this document request is "vague beyond recognition." This begs the question of how many reports exist where City administrators investigated the 1991 deaths of two African-American citizens at the hands of the Cincinnati police which recommend increased training for officers dealing with minority and special needs populations? The fact is that this document request specifically identifies a report concerning the deaths of two African-American citizens in 1991 at the hands of the Cincinnati Police. It is not vague. It is relevant. It must be produced.

### E. The City Has Violated Rule 26(c), Fed. R. Civ. P., And S.D. Ohio L.R. 37.1 and 37.2 In Failing To Attempt To Resolve This Matter Extrajudicially.

If the City was truly confused by Plaintiff's document requests, it could have addressed its "irrelevant," "vague" and "overbroad" objections by simply contacting Plaintiff's counsel to explore informal resolution. It did not. Nor did the City ever serve Plaintiff with written responses to these document requests asserting such objections, as required by Rule 34(b), Fed. R. Civ. P. Instead, the City circumvented all of the prerequisites specified by the Federal Rules of Civil Procedure and the Local Civil Rules and pestered this Court for a protective order with no attempt at extrajudicial resolution.

The Federal Rules of Civil Procedure, as well as the Local Civil Rules, clearly specify that filing a motion for protective order is a last resort in resolving discovery disputes. First, the City is required to provide the Plaintiff with a "written response" to the document requests. Rule 34(b), Fed. R. Civ. P. This would have identified and preserved any objections. It would also serve as the basis for informal discussions between the parties designed to narrow differences and possibly reach a compromise solution. If extrajudicial resolution efforts failed, then either

party had the option of seeking an informal telephone conference with the Court. S.D. Ohio Civ. R. 37.1. Finally, if all attempts at informal resolution failed, then the City could file a motion for protective order.

In its haste to avoid producing any of the relevant documents sought by Plaintiff's Third Request for Production the City ignored no less than three requirements of the Federal Rules of Civil Procedure and the Local Civil Rules.

First, the City failed to make any attempt at extrajudicial resolution of its objections before invoking this Court's jurisdiction through its Motion for Protective Order. *See*, Martins Decl., attached. This rush to the Courthouse violates this Court's Local Civil Rule:

> Objections, motions, applications, and requests relating to discovery shall not be filed in this Court, under any provision in Rules 26 and 37, Fed. R. Civ. P., unless counsel have first exhausted among themselves all extrajudicial means for resolving the differences.

S.D. Ohio Civ. R. 37.1

Second, having made no effort to resolve this matter extrajudicially, it follows that the City failed to attach to its Motion any affidavit or other certification detailing its informal attempts at resolution. This defect violates Rule 26(c), Fed. R. Civ. P.—the very authority upon which the City relies in asking for a protective order. Doc. 63, Mot. P.O., pp. 1, 2. Civil Rule 26(c) expressly requires that a motion for protective order be "accompanied by a certification that the movant has in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court action." The City's motion contains no such certification and no such attempt to confer occurred.

This failure also violates the Local Civil Rule which requires an affidavit of extrajudicial

efforts as a prerequisite to filing a motion for protective order.

> To the extent that extrajudicial means of resolution of differences have not disposed of the matter, parties seeking discovery or a protective order may then proceed with the filing of a motion for a protective order or a motion to compel discovery pursuant to Rule 26(c), Fed. R. Civ. P. Such motion shall be accompanied by a supporting memorandum and by an affidavit of counsel setting forth the extrajudicial means which have been attempted to resolve differences.

S.D. Ohio Civ. R. 37.2.

Finally, by failing at the outset to provide the Plaintiff with a "written response [to the document requests] within 30 days after the service of the request," as required by Civil Rule 34(b), the City made informal resolution impossible. Thus, Plaintiff was never put on notice that the City was advancing any objections to the subject document requests. More importantly, the failure of the City to timely serve written responses waives all of the objections that it now tries to assert in its Motion for Protective Order. *See,* Doc. 66, Plaintiff's Motion to Compel, pp. 5-6, citing *Bailey v. Container Corp. of America*, 36 Empl. Prac. Dec. ¶ 35096 (S.D. Ohio 1985); *United States ex rel. Davis v. M/G Transport Services, Inc.*, No. C-1092-1001, p. 5 (S.D. Ohio Mar. 11, 1996), attached to Doc. 66 as Exhibit C.

## IV.     CONCLUSION

Plaintiff's Third Request for Production of Documents seeks historic reports, complaints and studies that chronicle the record of misconduct by the City of Cincinnati's police force. Such information is relevant in establishing the customs and policies of the City that gave rise to deprivation of Mr. Owensby's constitutional rights and his resulting death on November 7, 2000. As such, the documents sought are discoverable.

Further, in its haste to avoid producing this unflattering history, the City has ignored the

prerequisite procedures mandated by the Federal Rules of Civil Procedure and this Court's Local Civil Rules. The City failed to serve written responses to Plaintiff's document requests as required by Civil Rule 34(b). As a consequence, the objections the City voices in its Motion for Protective Order are waived. Further, its failure to engage in any extrajudicial discussions to explore resolution of its objections renders the City's Motion for Protective Order a nullity.

Thus, the City of Cincinnati's Motion for Protective Order should be denied and the City should be ordered to immediately produce the documents identified in Plaintiff's Third Request for Production of Documents.

Respectfully submitted,

/s/ Paul B. Martins
James B. Helmer, Jr. (0002878)
Paul B. Martins (0007623)
Frederick M. Morgan, Jr. (0027687)
HELMER, MARTINS & MORGAN CO., LPA
Fourth & Walnut Centre
Suite 1900
105 East Fourth Street
Cincinnati, Ohio 45202-4008
Telephone: (513) 421-2400
Facsimile: (513) 421-7902
Trial Attorney for Plaintiff

Mark T. Tillar (0029898)
240 Clark Road
Cincinnati, Ohio 45202
Trial Attorney for Plaintiff

John J. Helbling (0046727)
3672 Springdale Road
Cincinnati, Ohio 45251
Trial Attorney for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiffs' Memorandum in Opposition to Motion For Protective Order (doc. 63) was electronically filed on November 28, 2003. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Paul B. Martins