UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ESTATE OF ROGER D. OWENSBY JR., ET AL., | : <br> : <br> : |
| Plaintiff, | : Case No. 01-CV-769 <br> : <br> : Senior Judge S. Arthur Spiegel |
| v. | : <br> : Mag. J. Susan M. Novatny |
| CITY OF CINCINNATI, ET AL., | : <br> : <br> : |
| Defendants. | : <br> : |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
CONCERNING THE DEPOSITION OF CYRIL WECHT, M.D., J.D. (Doc. 68)**

Defendants City of Cincinnati and its Police Chief, Thomas Streicher, Jr. ("Defendants"), have moved this Court for a protective order to prevent Plaintiff from taking the expert deposition of Cyril Wecht, M.D., J.D.  Doc. 68.  Plaintiff postponed the scheduled deposition of this expert, pending resolution of this motion by this Court.  Doc. 69, Notice of Postponement.

Arguments of counsel on this matter were considered by the Court at a December 23, 2003 Status Conference (doc. 76).  As a result, the Court denied Defendants' Motion for Protective Order, allowing Plaintiff to proceed with the expert deposition of Cyril Wecht, M.D., J.D.

The Court's decision is supported by the weight of authority which establishes that Dr. Wecht was not a consulting expert in this litigation for whom the work product doctrine shields his opinions from discovery and use.  Moreover, any claim of work product protection was

waived when the City of Cincinnati intentionally published Dr. Wecht's opinions to the world in a press release as part of an administrative Office of Municipal Investigation report and also produced Dr. Wecht's report to Plaintiff in this litigation.

I.  **DR. WECHT IS NOT A CONSULTING EXPERT IN THIS CASE**

Defendants seek to keep Plaintiff from using the opinions and testimony of Dr. Wecht under Rule 26(b)(4)(B), Fed. R. Civ. P., claiming that he was hired as a consulting expert in anticipation of this litigation. Doc. 68, Mot. For P.O. The facts tell a different story.

Rule 26(b)(4)(B) codifies the work product doctrine as it applies to consulting or non-testifying experts. The purpose of Rule 26(b)(4)(B) is "to prevent an advisor from becoming an involuntary witness" not to "shield a witness from full and fair examination." *Delcastor, Inc. v. Vail Assoc's.*, 108 F.R.D. 405, 407 (D. Colo. 1985).

The work product doctrine, like other assertions of privilege, must be narrowly construed because it hinders the courts in their search for the truth. *United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 684-85 (1st Cir. 1997); *see, In re: Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002), *reh'g, en banc, denied* 2002 U.S. App. LEXIS 20212 (6th Cir. Sept. 9, 2002), *cert. denied sub nom. HCA, Inc. v Tenn. Laborers Health & Welfare Fund*, __ U.S. __, 124 S. Ct. 27, 156 L. Ed. 2d 690 (2003). It is inherently unfair to permit an entity to choose to disclose materials to one outsider while withholding them from another on grounds of privilege. *Id.*

Here, Dr. Wecht provided his opinions concerning Roger Owensby's death at the hands of Cincinnati Police officers in a September 10, 2002 report issued to the City of Cincinnati's Director of its Office of Municipal Investigations ("OMI"), Mark A. Gissiner, now the City's

Senior Human Resources Analyst. Dr. Wecht's report is attached as Exhibit A. Dr. Wecht's report was solicited for use in an OMI investigation into administrative disciplinary action against eight police officers involved in Mr. Owensby's death. As disclosed in the face of the report, Dr. Wecht was not hired as a consulting expert in connection with, or in anticipation of, this litigation. *Id.* at 4-5. Rather, he was hired in the ordinary course of business by the City of Cincinnati OMI concerning the administrative discipline of the police officers involved in Mr. Owensby's death. In fact, Mr. Gissiner stated, at that time, that Dr. Wecht's opinions and report were sought by the City to determine whether Cincinnati police officers involved in the arrest of Mr. Owensby "committed any administrative or procedural violations." Exhibit B, Gregory Korte and Jane Prendergast, *Forensic expert hired to review Owensby case*, The Enquirer, June 29, 2002.

The central question under Rule 26(b)(4)(B) is whether the expert consultation took place in anticipation of litigation. In conducting this analysis the Court must examine "the total factual situation in the particular case." *Canal Barge Co. v. Commonwealth Edison Co.*, 2001 U.S. Dist. LEXIS 105021, *3 (N.D. Ill. July 24, 2001) *quoting Hartford Fire Ins. v. Pure Air on the Lake Ltd.*, 154 F.R.D. 202, 207 (N.D. Ill. 1993).

Not all documents created or produced are protected by work product simply because an internal investigation is co-existent with a present or anticipated lawsuit. *Id.* at *8 *citing Caremark, Inc. v. Affiliated Computer Services, Inc.*, 195 F.R.D. 610, 614-15 (N.D. Ill. 2000). Instead, the work product doctrine applies only if the "<u>primary motivating purpose</u>"behind the creation of the report is to aid in the litigation. *Id.* Documents created in the ordinary course of business or created irrespective of litigation (as we have in this case) are not under the protection of the work product doctrine. *Id.*

Even if Dr. Wecht served in the dual role of consulting expert for purposes of this trial and administrative proceeding expert in the ordinary course of the business for the City, such a dual role eliminates any claim of work product protection, absent Defendants establishing that his primary purpose was to serve as a consulting expert in this litigation. *In re: Painted Aluminum Products Antitrust Lit.*, 1996 U.S. Dist. LEXIS 9911, *5 (E.D. Penn. July 8, 1996); *McNally Tunneling Corp. v. City of Evanston*, 2002 U.S. Dist. LEXIS 379, *7-8 (N.D. Ill. Jan. 11, 2002).

Here, the evidence is just the opposite. The undisputed evidence of record establishes that Dr. Wecht's report was solicited and provided solely in connection with the ordinary investigative business of the City in administratively disciplining the officers involve in Mr. Owensby's death. Doc. 68, Mot. For P.O., at 5.; Exhibit B. As such, Dr. Wecht's report and his opinions provided in connection with that administrative proceeding is not protected by the work product doctrine or Rule 26(b)(4)(B). *United States v. Bell*, 1994 U.S. Dist. LEXIS 17408, *11-13 (N.D. Cal. Nov. 9, 1994).

**II.    WAIVER**

Even if Dr. Wecht's report was considered work product prepared in anticipation of litigation, such protection is waived upon a disclosure which "substantially increases the opportunity for potential adversaries to obtain the information." *Id.* at *16. Here, the City of Cincinnati "substantially increased the opportunity" for the Plaintiff to discover Dr. Wecht's opinions in two ways.

First, the City voluntarily disclosed Dr. Wecht's report and opinions to the media:

Exhibit B: Gregory Korte and Jane Prendergast, *Forensic expert hired to review Owensby case*, The Enquirer, June 29, 2002 ("The city of Cincinnati has hired a national forensic expert—renowned for his research into high-profile deaths—to review what killed Roger

4

Owensby Jr.  A soon-to-be-released report by Dr. Cyril H. Wecht, coroner in Allegheny County, Pa., could help the city's Office of Municipal Investigation resolve competing theories on Mr. Owensby's cause of death after he was arrested in Roselawn in November 2000.  The city wants to know whether Cincinnati police officers involved in the arrest 'committed any administrative or procedural violations,' said OMI Director Mark Gissiner, who has described the Owensby case as the most complicated his office has ever handled.  'Given the difficult circumstances in this case, we wanted a second opinion from a doctor who is well respected nationally,' Mr. Gissiner said.  'It's not unlike someone facing major surgery who wants a second opinion.'")

Exhibit C: Gregory Korte, *Coroner's review verifies Owensby's cause of death*, The Enquirer, Sept. 13, 2002 ("An independent medical examiner has concluded that Cincinnati Police Officer Robert 'Blaine' Jorg killed Roger Owensby Jr. on election night in 2000.  The city's Office of Municipal Investigation hired Dr. Cyril H. Wecht, the coroner of Allegheny County, Pa., to review the case.  The city released his findings Thursday.")

Exhibit D:  Craig Garretson, *Report blames ex-officer for death*, The Kentucky Post, Sept. 13, 2002 (Quoting from Dr. Wecht's report and stating, "The report [of Dr. Wecht] . . . was submitted to the city's Office of Municipal Investigation on Tuesday and released publicly Thursday.");

Exhibit E:  Liz Foreman, *Outside Expert: Police Officer Killed Roger Owensby*, WCPO 9 News, Sept. 12, 2002 ("A nationally known medical expert has given the city of Cincinnati his opinion on how suspect Roger Owensby, Jr., died in police custody nearly two years ago.  Dr. Cyril Wecht, coroner for Allegheny County, Pennsylvania, concluded that Owensby died from 'mechanical asphyxia due to compression of his chest by police Officer Robert Blaine Jorg, who was kneeling on his back.'. . . Wecht was hired by the city of Cincinnati's Office of Municipal Investigation to look into Owensby's death.  The Office of Municipal Investigation, an independent department of the city, investigates complaints.  He delivered his report to the city's Office of Municipal Investigation by fax on September 10, 2002.  On September 11, 2002, Wecht's office confirmed to the city that the faxed copy was his final report.");

Exhibit F:  Craig Garretson, *Internal Reports Fault Officers*, The Cincinnati Post, Oct. 15, 2002 ("Two internal investigations released Monday accuse eight Cincinnati Police officers of doing nothing to help Roger Owensby Jr. as he lay dying after a scuffle with officers, but differ on whether any of the officer used excessive force as they arrested him. . . . The recommendations and accompanying report include a 79-page document form OMI, a 31-page report from the Internal Investigations Section, a 17-page report from an outside medical examiner [Dr. Wecht], and a 9-page report from the Hamilton County Coroner's Office.  The recommendations will be reviewed by the police chief and the city attorneys before [City Manager Valerie] Lemmie rules on what will happen to Caton and Police Officers Brian Brazile, Jason Hodge, David Hunter, Abraham Lawson, Darren Sellers and Victor Spellen. . . . Wecht, in his forensic report to OMI, said the four-

to five-minute delay in attempting to revive Owensby may have contributed to his death.")

Second, the City outright guaranteed Plaintiff's discovery of Dr. Wecht's opinions by affirmatively delivering Dr. Wecht's report to Plaintiff in discovery in this case. Exhibit A.[1]

Any voluntary disclosure inconsistent with the confidential nature of work product waives the privilege. *Atari Corp. v. Sega of America*, 161 F.R.D. 417, 420 (N.D. Cal. 1994). Disclosure of an expert report in response to a discovery request, as exists in this case, is a "voluntary" waiver of the protections afforded by Rule 26(b)(4)(B). *Agron v. Columbia Univ.*, 176 F.R.D. 445, 449 (S.D.N.Y. 1997); *School Dist. Of Kansas City v. AcandS, Inc.*, 1990 U.S. Dist. LEXIS 14508, *8-9 (W.D. Mo. Oct. 25, 1990).

Just last year the Sixth Circuit addressed and rejected the argument that work product can be selectively waived for some purposes while preserved for others.

> These and other reasons "persuade us that the standard for waiving the work-product doctrine should be no more stringent than the standard for waiving the attorney-client privilege"— ***once the privilege is waived, waiver is complete and final.***

*In re: Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 307 (6th Cir. 2002) (emphasis supplied).

In fact, the Sixth Circuit further clarified its waiver-for-one-purpose-is-waiver-for-all-purposes ruling by stating that, "This is especially true as to 'fact' work product, since it may be obtained even absent waiver by a showing of substantial need and hardship." *Id.* at 307 n.30. Fact work product—defined as "written or oral information transmitted to the attorney and

---

[1] There is no claim of inadvertent disclosure by the City. Instead, because Dr. Wecht's report was part of the OMI report that was previously disclosed to the media by the City, its production to Plaintiff was proper and intentional.

recorded as conveyed by the client"—is precisely what we are dealing with in the form of Dr. Wecht's report. *In re: Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d at 294, *quoting In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986). Thus, Defendants voluntary disclosure of Dr. Wecht's report to the media as well as to Plaintiff is a waiver of work product protection for all purposes. *Id.*

### III.  CONCLUSION

The Court's ruling at the 12/23/03 Status Conference that Dr. Wecht's report and opinions are available to Plaintiff and that Plaintiff may depose and utilize Dr. Wecht as an expert is correct. Dr. Wecht is not a consulting expert hired in anticipation of this litigation. Rather, the City's primary purpose in hiring Dr. Wecht was to assist the City's in administratively disciplining its police officers involved in the death of Mr. Owensby.

Moreover, any claim of work product protection for Dr. Wecht as a consulting expert was waived when Dr. Wecht's report was voluntarily released by the City to the public, the media and the Plaintiff. *In re: Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d at 307.

Therefore, consistent with this Court's prior ruling at the Status Conference, Defendant's Motion for Protective Order (Doc. 68) should be denied and Plaintiff should be allowed to take Dr. Wecht's deposition for use in this litigation.

Respectfully submitted,

/s/Paul B. Martins
James B. Helmer, Jr.  (0002878)
Paul B.  Martins (0007623
Frederick M. Morgan, Jr.  (0027687)
HELMER, MARTINS & MORGAN CO., LPA
Fourth & Walnut Centre
Suite 1900
105 East Fourth Street
Cincinnati, Ohio 45202-4008
Telephone:	(513) 421-2400
Facsimile:	(513) 421-7902

Trial Attorney for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiff's Memorandum in Opposition to Defendants' Motion for Protective Order Concerning the Deposition of Cyril Wecht, M.D., J.D. (Doc. 68) was electronically filed on December 30, 2003. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Paul B. Martins