ENQUIRER | POST | WCPO | CIN WEEKLY | Classifieds | Cars | Homes | Jobs | Custome

HOME  NEWS  ENTERTAINMENT  SPORTS  REDS  BENGALS  LOCAL GUIDE  MULTIMEDIA  ARCHIV

THE POST
Kentucky Post
Back Issues
Cincinnati.Com
AP News
News
Business
Features
Opinion
Sports
Search
Contact Us

DAILY FIX
Weather
Traffic
Talk, Cincinnati
Giveaways
Horoscopes
Lottery Numbers
Comics
Crosswords
Stahler

SPORTS
Bengals
Reds
Golf Guide
Hockey

ENTERTAINMENT
Movies
Dining
Menus
Local Events
Video Games

CLASSIFIEDS
Jobs
Cars
Homes
General

LOCAL INFO
Maps / Directions
Send an E-Postcard
Visitor's Guide
Local Links
School Links

HELP
Feedback

# Report blames ex-officer for death

*By Craig Garretson*
*Post staff reporter*

The actions of a former Cincinnati police officer resulted in the death of a College Hill man nearly two years ago, according to a report by an independent medical examiner.

The report into the death of Roger Owensby Jr., who died Nov. 7, 2000, after a brief struggle with several officers outside a Roselawn gas station, was submitted to the city's Office of Municipal Investigation on Tuesday and released publicly Thursday.

Former Cincinnati police officer Robert "Blaine" Jorg is squarely blamed in the 17-page report, which was commissioned by OMI as part of an investigation into Owensby's death to be released Oct. 30. The Cincinnati Police Department also is still investigating the death.

"After completion of my evaluation and analysis of all the materials referred to above, it is my professional opinion, based upon a reasonable degree of medical certainty, that the cause of death of Roger Owensby Jr. was mechanical asphyxia due to compression of his chest by Police Officer Robert Blaine Jorg, who was kneeling on his back," wrote Dr. Cyril Wecht, the report's author.

The coroner of Allegheny County, Pa., Wecht is a forensic pathologist who also has investigated the deaths of President John F. Kennedy, Sen. Robert Kennedy, Elvis Presley and JonBenet Ramsey.

Jorg's attorney, William Gustavson, dismissed the report as "incredible" and said its findings "will be very difficult to support" in a trial.

He said he commissioned his own independent expert to review Owensby's death, which will be filed before Sept. 26, and will contend Owensby died after he was arrested and placed in a police cruiser of a "cardiac event." Wecht reviewed police reports, coroner's tests, testimony from officers and other witnesses, autopsy reports and other materials in the case to make his findings.

**Jorg and Owensby**

The Officer:

• Robert "Blaine" Jorg resigned from the Cincinnati Police Department.
• Jorg is now serving as an officer with the Pierce Township Police Department in Clermont County.

The Victim:

• Roger Owensby Jr. was 29 years old when he died in police hands.
• Owensby's mother, Brenda Owensby, and her husband have filed a wrongful death suit against the city.




Post Feat
Store at th
Subscribe
HGTV
Personal I
Lottery Nu
Contact U
The Ci
The K
W
Spc
Liv
Busi
Ken
Ci

LATEST I
INTERNA
• Suprem Uphold: Money I
• Iraq Est Crimes
• Iranian Accepts
• Six Afgl Killed ir
• White H Bid Poli
• Sheriff: Student
• Memo: Jackso
• Indian 1 Banned

**EXHIBIT D**

http://www.kypost.com/2002/sep/13/owens091302.html          12/10/2003

Subscribe
Search
Survey

- Dow Ris Climbs
- AP: Atl Fire Co

He concluded that Owensby died during or shortly after the arrest, as Jorg's weight on his back made it impossible for him to breathe, leading to hypoxia (diminished oxygen) or anoxia (no oxygen) of the brain, causing unconsciousness and, within seconds or minutes, death.

"It is impossible to say if he was already dead prior to being carried, or if he died shortly after being placed in the car," Wecht wrote. "However, I believe he was already suffering from the deleterious effects of the hypoxia as they moved him to the cruiser."

The report largely agrees with the findings of the Hamilton County Coroner's Office, which ruled the day after Owensby died that he'd died of suffocation — "mechanical asphyxia" — as a result of either a chokehold or by officers "piling on."

Wecht couldn't prove or disprove the use of a chokehold, but wrote that if one was used it likely didn't cause Owensby's death — though it may have been a contributing factor to the hypoxia.

The actions of two other officers — David Hunter, who sprayed chemical irritant sprayed in Owensby's face, and Patrick Caton, who said he struck Owensby five times on the arm and back — as well as a pre-existing heart condition also might have been contributing factors, but Jorg's weight pressed into Owensby's back as two other officers held him down was what killed him, Wecht concluded.

The delay in beginning resuscitative measures — Owensby was left in the car for four to five minutes before attempts were made to revive him, and an ambulance didn't arrive until four to five minutes after that — also may have contributed to his death, Wecht wrote.

Jorg and Caton were acquitted of assault in separate trials. Jorg's jury couldn't reach a verdict on a charge of manslaughter and Hamilton County Prosecutor Mike Allen said he wouldn't retry the case.

The Ownesby family had no comment about Wecht's report.

According to the report, Jorg told the police department's Internal Investigations Section that he put Owensby in a head wrap as he and other officers attempted to arrest him Nov. 7, 2000, after he ran from Jorg during questioning.

Jorg said he put one arm across the top of Owensby's head and his other hand against the base of his jaw, applying pressure until Owensby pulled his left arm out from under his body; Jorg then let go of Owensby's head, grabbed the arm and knelt on Owensby's back, applying pressure to the "super scapula area" — near the shoulder blade.

As Jorg and Caton struggled to control Owensby's arms, Hunter called for backup, and two more police officers — Jason Hodge and Darren Sellers — arrived. With Hodge and Caton holding Owensby's right arm, and Jorg holding the left, Hunter sprayed Owensby with chemical irritant at Caton's order, according to the report.

Caton would later testify he hit Owensby with an open palm five times, twice on the right side of the body, once on the forearm and twice on the upper arm. He said he continued hitting Owensby after he stopped resisting, but

not after Owensby was handcuffed; however, Hunter said Caton did hit Owensby after he was handcuffed.

A point of contention between various witnesses at the scene is whether Owensby walked to a Golf Manor police car under his own power, or if Caton, Hunter and Sellers dragged him to the car. Wecht concluded that, given the effects of hypoxia, Owensby couldn't have walked to the car; he said he was dragged and then put into the car, with Caton going around to the other side of the car and pulling him across the backseat.

A woman who watched the arrest, Aerial St. Clair, said Owensby was picked up and dragged to the police car. Hodge said Owensby appeared to walk "and appeared to shuffle like he was drunk." Caton said Owensby was not only walking, but struggling with officers as they tried to put him into the cruiser, and that's why Caton had to pull him in from the other side. Jorg said he didn't see if Owensby walked to the car or not.

In his statement to the Internal Investigations Section, Jorg said he went over to Owensby a few minutes after he was put into the cruiser to get information and realized he was not breathing. Police began doing CPR and an ambulance was called, arriving four to five minutes later, but Owensby couldn't be revived.

"The entire concept that Roger Owensby Jr. died on the pavement, during the arrest, is absolutely incredible," Gustavson said. "It will be a very, very difficult opinion for him to justify. At least six persons saw Roger Owensby Jr. walk to the car after he was up off the pavement, and numerous people saw him in at least three different positions while in the back of the car. The last time I checked, dead men don't walk, and dead men don't move around in the back of a car."

Gustavson wouldn't say what he meant by the theory of a "cardiac event," but did say what it wasn't.

"Nobody is saying heart attack," he said. "There's an important difference between a heart attack and a cardiac event."

Wecht's report looked at Owensby's heart as a possible cause for his death, but ruled it out as being a contributing factor to death by hypoxia.

"Accordingly, it is my opinion that in the absence of the hypoxic episode caused by mechanical asphyxia, Mr. Owensby would not have died on that day," Wecht wrote.

Although the coroner's report found that Owensby was suffering from atherosclerosis — hardening of the coronary arteries -- Wecht found a 30 to 40 percent blockage of one of the three main arteries leading to Owensby's heart, which wouldn't have been enough to kill him.

"At most it might have been a minor contributing factor to his death by increasing the likelihood of the development of a fatal cardiac arrhythmia (irregular heart beat) in the face of significant hypoxia," Wecht wrote.

He also ruled out heart disease or an enlarged heart as possible causes of Owensby's death.

Publication Date: 09-13-2002

 Email this story to a friend



Search our site by keyword: go!

Search also: **News** | **Jobs** | **Homes** | **Cars** | **Classifieds** | **Obits** | **Coupons** | **Events** | **Dining**
**Movies/DVDs** | **Video Games** | **Hotels** | **Golf** | **Visitor's Guide** | **Maps/Directions** | **Yellow P**

CINCINNATI.COM | ENQUIRER | POST | WCPO | CIN WEEKLY | Classifieds | Cars | Homes | Jobs | Custo

Need help? | Suggestions | News tips | Letters to editors
Web advertising | Place a classified | Subscribe | Circulation

Copyright 2001 The Cincinnati Post, an E.W. Scripps newspaper.
Use of this site signifies agreement to terms of service updated 2/28/98.

