| | | |
|---|---|---|
| 10:53:32 | 1 | A.   No. |
| 10:53:35 | 2 | Q.   Were you looking in the car at the time? |
| 10:53:39 | 3 | A.   I don't believe so. |
| 10:53:40 | 4 | Q.   You hear no response from Mr. Owensby. |
| 10:53:47 | 5 | What's the next thing that happens? |
| 10:53:51 | 6 | A.   The sergeant starts to give some orders to |
| 10:53:54 | 7 | the other officers. |
| 10:53:55 | 8 | Q.   This is after he's opened the door? |
| 10:54:00 | 9 | A.   Correction.  Let me back up. |
| 10:54:01 | 10 | Sergeant gets on his radio, calls for |
| 10:54:03 | 11 | medical, and he starts giving directions to the |
| 10:54:10 | 12 | officers to get Mr. Owensby out of the car. |
| 10:54:14 | 13 | Q.   Does all of this occur after the sergeant |
| 10:54:16 | 14 | has opened the back door, the driver's side back |
| 10:54:20 | 15 | door? |
| 10:54:20 | 16 | A.   Yes. |
| 10:54:22 | 17 | Q.   When the sergeant opened the driver's side |
| 10:54:25 | 18 | back door did he reach in and touch Mr. Owensby? |
| 10:54:31 | 19 | A.   I don't know. |
| 10:54:31 | 20 | Q.   What happens after that? |
| 10:54:38 | 21 | A.   Sergeant Watts is giving directions to the |
| 10:54:42 | 22 | officers to get him out.  I walked over to the other |
| 10:54:48 | 23 | side and stood off to the side with Officer |
| 10:54:51 | 24 | Campbell. |

| | | |
|---|---|---|
| 10:56:20 | 1 | A. Are you asking for my opinion? |
| 10:56:22 | 2 | Q. Well, based on your experience as an EMT |
| 10:56:25 | 3 | and as a medic. |
| 10:56:26 | 4 | A. It could. |
| 10:56:28 | 5 | Q. Were you there when the, I guess, fire |
| 10:56:32 | 6 | rescue, Cincinnati Fire Rescue, arrived? |
| 10:56:36 | 7 | A. I was still there. |
| 10:56:38 | 8 | Q. Did you observe what those people, the |
| 10:56:43 | 9 | fire rescue, did? |
| 10:56:51 | 10 | A. I don't recall. |
| 10:56:54 | 11 | Q. Do you recall hearing anyone from the fire |
| 10:56:57 | 12 | rescue when they arrived telling the officers to |
| 10:57:00 | 13 | remove the handcuffs from Mr. Owensby? |
| 10:57:04 | 14 | A. I don't recall. |
| 10:57:17 | 15 | Q. Did you assist in any way in performing |
| 10:57:20 | 16 | CPR or providing any medical aid for Mr. Owensby |
| 10:57:23 | 17 | once he was taken out of the car? |
| 10:57:26 | 18 | A. No, sir. |
| 10:57:26 | 19 | Q. Did Officer Campbell? |
| 10:57:32 | 20 | A. No, sir, I don't believe so. He went to |
| 10:57:36 | 21 | get a mask, if that's assisting. |
| 10:57:41 | 22 | Q. Explain to me what a mask is. |
| 10:57:43 | 23 | A. A CPR mask, basically just a round |
| 10:57:47 | 24 | plastic, sometimes plastic, mask. The ones we have |

69

| | | |
|---|---|---|
| 12:06:23 | 1 | Q. Do you know whether or not Golf Manor had |
| 12:06:25 | 2 | a policy or guidance for its officers on November 7, |
| 12:06:29 | 3 | 2000 to address the situation where a Golf Manor |
| 12:06:34 | 4 | officer is asked to give permission to place a |
| 12:06:41 | 5 | person who has been arrested by another police |
| 12:06:44 | 6 | department in a Golf Manor cruiser? |
| 12:06:47 | 7 | MR. WEISENFELDER: Objection. |
| 12:06:48 | 8 | Go ahead, you can answer. |
| 12:06:50 | 9 | A. I knew at that time, based on working, |
| 12:06:57 | 10 | training, that we could go over to other departments |
| 12:07:00 | 11 | and assist them with whatever they needed. |
| 12:07:06 | 12 | Q. I don't mean to cut you off. |
| 12:07:07 | 13 | A. That's okay. |
| 12:07:08 | 14 | Q. That was this mutual aid agreement that |
| 12:07:13 | 15 | was signed by the various police departments in the |
| 12:07:17 | 16 | greater Cincinnati area? |
| 12:07:18 | 17 | A. Correct. |
| 12:07:19 | 18 | Q. Other than knowing that you could assist |
| 12:07:26 | 19 | other police departments, do you know whether or not |
| 12:07:29 | 20 | there was any policy or guidance or custom in place |
| 12:07:33 | 21 | at Golf Manor to address what an officer's duties |
| 12:07:40 | 22 | and responsibilities were where another police |
| 12:07:43 | 23 | department asked him to place their prisoner in his |
| 12:07:49 | 24 | car? |

```
12:11:47   1  police force but placed in your cruiser?
12:11:50   2              MR. WEISENFELDER:  Objection.
12:11:51   3              Go ahead.
12:11:52   4      A.   My understanding at that time is I would
12:11:55   5  be responsible for my prisoners, anybody that was in
12:11:59   6  my custody.  If somebody is not my prisoner, not in
12:12:03   7  my custody, then on the assistance call if somebody
12:12:10   8  puts their prisoner in the back of my car, they
12:12:13   9  asked to put them in the back of my car and I'm
12:12:17  10  there for assistance.  It's their prisoner and it's
12:12:19  11  in their custody.  So it's their responsibility.
12:12:29  12      Q.   Did you have any understanding that by
12:12:32  13  accepting the prisoner and placing him in the back
12:12:35  14  seat of the Golf Manor cruiser that the prisoner was
12:12:39  15  now in your custody?
12:12:41  16              MR. WEISENFELDER:  Objection as to the
12:12:44  17         word "accepting."
12:12:45  18              Go ahead and answer.
12:12:46  19      A.   No.
12:12:51  20      Q.   Did you receive any training as to the
12:12:54  21  distinction we've just been talking about, that
12:12:57  22  whether or not a prisoner placed in a Golf Manor car
12:13:01  23  from another jurisdiction, as to who had custody of
12:13:06  24  the prisoner?
```

| | | |
|---|---|---|
| 12:13:11 | 1 | A. From going to other calls and seeing it |
| 12:13:13 | 2 | done before, the prisoner's always the arresting |
| 12:13:17 | 3 | officer's or the agency's jurisdiction where you're |
| 12:13:21 | 4 | at. |
| 12:13:21 | 5 | Q. You had had this arise in the past? |
| 12:13:25 | 6 | A. I have seen it done on other calls. |
| 12:13:30 | 7 | Q. Before November 7, 2000? |
| 12:13:36 | 8 | A. I don't recall exact dates, but, yeah. |
| 12:13:39 | 9 | Q. But before the night of November 7, 2000; |
| 12:13:42 | 10 | is that right? |
| 12:13:42 | 11 | A. Yes. |
| 12:13:53 | 12 | Q. Did you feel that you had any |
| 12:13:54 | 13 | responsibility for the well-being of Mr. Owensby? |
| 12:13:56 | 14 | A. No. |
| 12:13:56 | 15 | MR. WEISENFELDER: Objection. |
| 12:13:58 | 16 | Go ahead. |
| 12:14:06 | 17 | Q. Regardless of who is technically |
| 12:14:08 | 18 | responsible for the well-being of a prisoner, if you |
| 12:14:11 | 19 | know that a prisoner is injured and needs medical |
| 12:14:14 | 20 | attention, is it your understanding that you have a |
| 12:14:17 | 21 | duty to provide medical attention? |
| 12:14:25 | 22 | A. Yes. |
| 12:14:26 | 23 | Q. You knew that this person, Mr. Owensby, |
| 12:14:31 | 24 | had blood around his nose and mouth; is that right? |

| | | |
|---|---|---|
| 12:44:21 | 1 | Police Department however they needed. |
| 12:44:24 | 2 | Q.   You see that it says the same duties as if |
| 12:44:29 | 3 | taking action within the territory of Golf Manor. |
| 12:44:35 | 4 | A.   Yes. |
| 12:44:36 | 5 | Q.   If you were responding in the territory of |
| 12:44:46 | 6 | Golf Manor to the arrest of Mr. Owensby would you |
| 12:44:53 | 7 | have been responsible for his well-being? |
| 12:44:58 | 8 | A.   If he was my prisoner -- |
| 12:45:00 | 9 | MR. WEISENFELDER:  Objection. |
| 12:45:00 | 10 | Go ahead. |
| 12:45:01 | 11 | A.   If he was my prisoner, yes. |
| 12:45:09 | 12 | Q.   If he was not your prisoner, but you were |
| 12:45:14 | 13 | located in Golf Manor and he was placed in your car, |
| 12:45:21 | 14 | would you have been responsible for his well-being? |
| 12:45:25 | 15 | MR. WEISENFELDER:  Objection. |
| 12:45:25 | 16 | Go ahead. |
| 12:45:37 | 17 | A.   No. |
| 12:45:37 | 18 | Q.   Why not? |
| 12:45:41 | 19 | A.   Because he wasn't my prisoner.  Unless the |
| 12:45:45 | 20 | arresting officer specifically asked me, "Can you |
| 12:45:58 | 21 | keep an eye on my prisoner for me?  I've got to go |
| 12:45:58 | 22 | here." |
| 12:45:58 | 23 | Q.   Say this takes place in Golf Manor and the |
| 12:45:59 | 24 | arresting officer is Officer Campbell, and you show |

14:05:56  1  officer is to remain with the cruiser if a
14:05:59  2  handcuffed person is inside.  Do you know what
14:06:02  3  policy that is, which one of the Golf Manor
14:06:08  4  policies?
14:06:08  5       A.   It's 6-07.  I don't know.  I think it's
14:06:18  6  one of them that was passed out.
14:06:20  7       Q.   The prisoner transportation one?
14:06:22  8       A.   Yes.
14:06:26  9       Q.   Is that what you were talking about, the
14:06:28 10  policy about you had to remain at the cruiser if a
14:06:32 11  handcuffed person was inside?
14:06:35 12       A.   Yes.
14:06:35 13       Q.   I think you've indicated that that policy
14:06:38 14  didn't apply in this particular case because this
14:06:41 15  was not your prisoner and you were not going to
14:06:44 16  transport him?
14:06:45 17            MR. MARTINS:  Objection.
14:06:46 18            MR. WEISENFELDER:  Go ahead.
14:06:46 19       A.   Correct.  He was not my prisoner and I was
14:06:49 20  not going to transport him.
14:07:06 21       Q.   Did you see, from the time that you
14:07:08 22  arrived until you left the scene, did you see any
14:07:13 23  Cincinnati police officer strike Mr. Owensby in any
14:07:15 24  way?

```
14:07:16   1      A.   No.
14:07:35   2      Q.   Did you believe that Roger Owensby was
14:07:37   3  unconscious when he was placed in your vehicle?
14:07:40   4           MR. WEISENFELDER:  Objection.
14:07:41   5           Go ahead.
14:07:42   6      A.   No.
14:07:43   7      Q.   Would you have allowed them to place him
14:07:45   8  in your vehicle if you had thought he was
14:07:48   9  unconscious?
14:07:50  10           MR. WEISENFELDER:  Objection.
14:07:51  11           Go ahead.
14:07:51  12      A.   No.
14:07:52  13      Q.   Would you have allowed them to place him
14:07:55  14  in the vehicle if you thought he was seriously
14:07:56  15  injured?
14:07:58  16           MR. WEISENFELDER:  Objection.
14:07:59  17           Go ahead.
14:07:59  18      A.   No.
14:08:00  19      Q.   With respect to the time that you went
14:08:04  20  over to the car to look in, do you recall that
14:08:07  21  testimony, where at some point after he was placed
14:08:12  22  in the car you returned to the car to look in it?
14:08:15  23      A.   Yes, sir.
14:08:15  24      Q.   You said you didn't use your flashlight.
```