# 6-07 PRISONER TRANSPORTATION

I. Purpose:

To provide procedure for officer safety and prisoner security during transportation.

To establish procedure for the transfer and transportation of prisoners to the Hamilton County Jail and other detention facilities.

II. General Prisoner Transport Procedures:

A. All arrested persons present a potential risk to the safety of the arresting/transporting officer, whether or not they are known or not known by the arresting officer, and whether or not they seem to present an obvious or little immediate threat to the officer. Therefore,it is the policy of this department that EVERY prisoner transported in a police vehicle shall be searched and handcuffed by the transporting officer prior to being transported, unless specifically exempted under provisions of this procedure. (Ref: CALEA 71.1.1)

B. To reduce the presence of weapons and contraband, every police vehicle shall be searched by the assigned officer:

1. At the beginning of that officer's shift, and;

2. Prior to and after transporting prisoners.

(Ref: CALEA 71.1.2)

C. At the beginning of each shift, the assigned officer shall examine the police vehicle to insure that it is in good operating condition and equipped with the proper safety items such as flares, first aid kit, spare tire and jack. (Ref: CALEA 71.1.3)

D. Prisoner(s) transported by police officers shall be secured in handcuffs with their hands behind their back. Every prisoner shall be placed in the Police vehicle and secured with seat belts. This provides for safety for the prisoner in the event of an auto accident as well as additional security for the officer. Although no one is exempted from the seat belt restraints, a supervisor may grant permission to exempt handcuffing individuals in special transport situations. In each of these situations the transporting officer must request and receive permission from the supervisor in advance. These exemptions will be limited to the following:

Exh. 77

1. Persons who are crippled or otherwise physically incapacitated and incapable of escape.

2. Elderly or ill persons arrested for minor offenses.

3. Juveniles who pose no apparent threat of violence or escape.

(Ref: CALEA 71.3.1)

E. Additional transporting considerations:

1. When deemed appropriate by a supervisor, prisoners may be restrained with restraining belt and/or leg shackles.

2. All property of the prisoner and identifying Arrest/Booking information shall be transported with same.

3. No person shall be handcuffed to any stationary object or to any part of the transporting vehicle except in an emergency situation where no other alternative exists. If such a situation arises, proper documentation of the incident shall be required.

F. If a prisoner becomes disorderly during transport:

1. Transporting officer should continue to H.C.J.C. if the prisoner does not pose a threat to safe operation of the vehicle. Communications should be notified that there is a disorderly subject in the vehicle, and assistance will be required when the prisoner is removed from the vehicle. The prisoner must be kept in the vehicle until help arrives.

2. If the prisoner poses a threat to safe operation of the vehicle, the officer should pull to the side of the road, notify Communication of his/her location and the problem, exit the vehicle and wait for help to arrive. The prisoner should be kept in the rear passenger compartment of the police vehicle, and the officer should not open the rear doors until another officer arrives on the scene.

3. A single officer should not open the passenger compartment to secure a disorderly prisoner until assistance has arrived.

G. A prisoner shall not be allowed to communicate with others while being transported. (Ref: CALEA 71.1.9)

H. Whenever there is an indication that a prisoner may be a potential hazard to the safety and security of anyone while undergoing transportation, confinement or trial, this fact shall be noted in bold letters on the Bond Information Sheet and the Arrest/Booking form.

1. Specific reasons, i.e. escape risk, suicide, mentally disturbed, shall be detailed.

2. The intake officer at the detention facility and the judge of the court shall be notified so that additional personnel or restraining devices may be used, if so ordered. (Ref: CALEA 71.1.12 & 71.5.3)

I. Prior to being transported to or from a detention facility, the transporting officer shall ensure that a positive identification of the prisoner has been made, and that all required paperwork has been completed and accompanies the prisoner.

1. Identification verification may be accomplished by comparing the prisoner's physical appearance with jail records, comparing fingerprints, comparing signatures, interviewing the prisoner, or any other method which will assure the officer of the correct identity of the prisoner. (Ref: CALEA 71.5.1)

2. The Arrest/Booking form, bond information sheet, commitment papers, medical records and all personal property shall be transported with the prisoner. For interstate transports, a properly executed governor's warrant, extradition warrant, or waiver shall be obtained in advance and transported with the prisoner. (Ref: CALEA 71.5.2)

J. The primary duty of the transporting officer is the safe delivery of the prisoner in his or her care. Diversionary incidents, whether or not instigated by the prisoner or others, may enhance the chances for an escape or potential danger to the safety of the prisoner being transported. Therefore an officer transporting a prisoner shall stop to render assistance only when there is a clear, immediate, and grave risk of physical harm to a third party, and no other police unit is readily available to render the

Case 1:01-cv-00769-SAS  Document 87-3  Filed 02/02/2004  Page 4 of 10

C. Two officers transporting a single prisoner in an unscreened vehicle shall place the prisoner in the rear passenger seat, handcuffed and with seat belt fastened. The second officer will ride in the rear seat directly behind the driver with gun on the opposite side from the prisoner. (Ref: CALEA 71.1.4)

D. In any transport situation with a number of persons to be transported or offering special problems, a prisoner van designed specifically for transportation of prisoners shall be requested from the Hamilton County Sheriff's Patrol. When the County van is used, a Golf Manor Officer shall always respond with the transportation unit. (Ref: CALEA 71.1.4)

IV. Special Transport Situations

A. When a meal is required during the transport of a prisoner (i.e., when transportation is from a long distance away and takes several hours) the eating place will be selected randomly so that predicted patterns of behavior by transporting officers may be avoided. (Ref: CALEA 71.1.6)

B. When a prisoner is transported to a local hospital for any reason, the following shall apply:
1. Extreme caution will be taken to ensure the prisoner is isolated from other patients and is not left unattended, or permitted to escape the immediate control of the transporting officer.

2. The transporting officer will not leave the medical facility until relieved by another officer or instructed to do otherwise by a supervisor. Should the prisoner need to be admitted to the hospital, the transporting officer must notify the on-duty supervisor of the circumstances. The on-duty supervisor shall make a decision on whether or not the prisoner must be guarded.

3. The transporting officer will remove the restraints only when it is deemed necessary and he/she is requested to do so by the medical staff. (Ref: CALEA 71.1.11)

C. When transporting a juvenile prisoner or a prisoner of the opposite sex, the officer will call in a "signal 39" to the dispatcher advising the current mileage and destination. Upon arrival, the officer will go "26" back in service and again announce the exact location and mileage. These items will be logged on the officer's worksheet. (Ref: CALEA 71.2.1)

D. Physically and mentally handicapped prisoners present conditions for their transportation that dictate special care and attention. For example, the type of vehicle used would be a consideration when transporting non-ambulatory prisoners or those requiring wheelchairs, crutches, or prosthetic appliances. The safety of the prisoner and the transporting officer requires care when transporting handicapped prisoners. The degree of physical restraint to handicapped prisoners will be applied within reason, at the discretion of the transporting officer, dependent upon such factors as the seriousness of the handicap, mobility of the prisoner, and circumstances of the arrest. Prisoners in wheelchairs may be transported in the Sheriff's prisoner van. (Ref: CALEA 71.2.2 & 71.2.4)

E. Any prisoner who is sick or injured shall be examined by life squad personnel and offered treatment for their injury or illness prior to being transported to any jail or detention facility.

1. If the prisoner refuses treatment, a copy of the "refusal form" from the hospital or life squad will be presented to the jailer upon admission to the detention facility.

2. If the prisoner was injured incidental to arrest, a supervisor shall respond to the hospital, take photos of the injury, and record statements from the prisoner. A use of force investigation shall be conducted as specified in procedure 6-03.

3. If necessary, the Golf Manor Life Squad may be called to provide an ambulance for transportation to a medical facility. The ambulance will be accompanied by an Golf Manor Police Officer, and the prisoner will remain under guard by the officer.

4. While being transported, a sick or injured prisoner shall be restrained or handcuffed unless the handcuffs would further compound the injuries. A second officer will be called to assist in transporting an unrestrained prisoner. (Ref: CALEA 71.2.5)

5. Unconscious prisoners shall not be transported in a police vehicle, but shall be taken to a hospital or medical facility by ambulance.(Ref:CALEA 71.2.3)

F. Special situations surrounding circumstances such as funerals and visits to hospitals provide extraordinary opportunities to a prisoner for unauthorized personal contact, escape, or infliction of injury on himself or others. Special details of this nature will only be performed by an order of the court. The prisoner will remained handcuffed at all times unless the court order directs otherwise. If the handcuffs are to be removed, it will be done with all necessary precautions taken by the officers and only for the prescribed period of time as stated in the court order. These details will always be performed by two or more officers. Upon approval of a supervisor, leg restraints may be used, if appropriate.(Ref:CALEA 71.2.6)

G. Mentally disturbed prisoners may pose a significant threat to themselves and/or the transporting officers. Therefore mentally disturbed prisoners are to be restrained securely without causing injury.

1. If the prisoner is violent, a prisoner van may be summoned, or two officers may be used to transport.

2. When it appears that a prisoner's violent or bizarre behavior may constitute risk of harm to himself or others, the prisoner may be transported on a stretcher in the life squad, with handcuffs and/or body restraints applied. This method of transportation should only be used after other methods have been eliminated as unfeasible. (Ref: CALEA 71.3.2)

V. Booking prisoners into Hamilton County Jail.

A. An Adult Arrest Entry is required in the RCIC computer in order to have the prisoner(s) put on the Hamilton County Municipal Court docket and to commit the prisoner to the County Jail.

B. The transporting officer(s) shall radio the dispatcher and advise that they are transporting prisoner(s).

C. Upon arrival at the County Jail, the dispatcher should be advised of this information.

D. All adult physical arrests are to be brought to the intake area of the HCJC. The intake entrance is located approximately 1011 Eggleston Avenue, 1/2 block south of Central Parkway. The driveway has a sign marked "Sheriff's Admissions."

E. Pull to the folding gates and communicate with the central controller via the speaker located there; advise if prisoner is disorderly so that intake personnel may assist in removing the prisoner from the vehicle.

F. When folding gates open, pull to second gate; which will open as the first gate closes.

G. When second gate opens, pull into parking space on the left. Remain in the vehicle until the second gate closes. Potential weapons such as PR-24's and flashlights should be left in the police vehicle.

H. Prisoner and arresting officer enter through the door marked "admission".

I. If Arrest/Booking form 527 has been completed:

1. Verify the identity of the prisoner using the RCIC print-out and/or warrant identifiers at the HCJC admissions window.

2. Hand the completed 527 through window, obtain the signature of the booking officer, and one copy of the Arrest/Booking form will be returned to the transporting officer. (Ref: CALEA 71.1.10, items three & four)

3. Officer remains in sallyport; prisoner is sent through the second door.

4. Intake personnel will now take custody of the prisoner, they will conduct a search of the prisoner just prior to placing the prisoner in the cell, and will return handcuffs to the officer. (Ref: CALEA 71.1.10, item two)

5. Complaints are signed & notarized (if necessary); Case Summary and Bond Information Sheet completed.

6. Officer leaves.

J. If Arrest/Booking form 527 is not completed:

1. Officer secures weapon in locked box, removes and retains the key. (Ref: CALEA 71.1.10, item one)

2. Officer and prisoner proceed through second door; prisoner is searched by intake personnel; armband is attached to identify prisoner-in-process.

3. Prisoner is taken to processing room, still handcuffed and under officer's control.

4. Arrest/Booking form 527 is completed; identity of the prisoner is verified using printout and/or warrant identifiers. Arrest/Booking form 527 is signed by the receiving officer and one copy returned to the transporting officer. (Ref: CALEA 71.1.10, items three & four)

5. Prisoner is returned to intake area; guards remove handcuffs prior to placing the prisoner in the cell and return them to officer. (Ref: CALEA 71.1.10, item two)

6. Complaints are signed; case summary and bond information sheet is completed if necessary.

7. Officer removes weapon from locked box and leaves.

K. When entering areas of the detention facilities at the Police Station or the Hamilton County Jail, used for the confinement of prisoners, all Golf Manor Police Department personnel shall:

1. Relinquish to the guard or turnkey on duty their firearms.

2. Deposit firearms with Security Lockers when provided; or,

3. When business within the confinement area is concluded, the firearm will be returned.

L. If any doubt should arise from this procedure, police personnel shall comply with the request of the guard or turnkey and subsequently consult their commanding officer.

VI. Escapes
Following the escape of a prisoner during transport, the transporting officer must take actions which include the following:

A. Persons to be notified:

1. Police Dispatcher (immediately by radio) with a description of the escapee.

2. The immediate and all surrounding police jurisdictions (immediately)

3. Police jurisdictions of the escapee's residence and jurisdictions of known associates

4. Golf Manor police supervisor on-duty (Ref: CALEA 71.1.8, item one)

B. Reports to be prepared:

1. Incident report (escape from custody) and synopsis

2. Detailed report to the Chief specifying the circumstances of the escape

3. Loss of equipment report to the Chief.

4. Any other reports. (Ref: CALEA 71.1.8, item two)

C. Other actions to be taken:

1. A GBDC (teletype message) to all jurisdictions in Hamilton County, with additional messages directed to any agencies with a likelihood of coming into contact with the escapee.

2. Sign additional charges and ensure wants and warrants are entered into the computer

(Ref: CALEA 71.1.8, item three)

END