Case 1:01-cv-00769-SAS   Document 87-15   Filed 02/02/2004   Page 1 of 4

Owensby vs. City of Cincinnati, et al.
December 17, 2003
DANIEL L. SCHULTZ, M.D.

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

- - - - - - - - - - - - - - -
ESTATE OF ROGER D.              :
OWENSBY JR., et al.,            :
                                :
        Plaintiffs,             :
    vs.                         :  Case No. 01-CV-769
                                :  (Judge S. A. Spiegel)
CITY OF CINCINNATI,             :
et al.,                         :
                                :
        Defendants.             :
- - - - - - - - - - - - - - -


VOLUME I


        Deposition of DANIEL L. SCHULTZ, M.D., a

witness herein, called by the plaintiffs for

cross-examination, pursuant to the Federal Rules of

Civil Procedure, taken before me, Wendy Davies

Welsh, a Registered Diplomate Reporter and Notary

Public in and for the State of Ohio, at the Frank P.

Cleveland, M.D. Institute of Forensic Medicine,

Toxicology and Criminalistics, 3159 Eden Avenue,

Cincinnati, Ohio, on Wednesday, December 17, 2003,

at 11:57 a.m.

Case 1:01-cv-00769-SAS   Document 87-15   Filed 02/02/2004   Page 2 of 4

Owensby vs. City of Cincinnati, et al.  
December 17, 2003  
DANIEL L. SCHULTZ, M.D.

Page 2

1  APPEARANCES:

2  On behalf of the Plaintiffs:

3      Paul B. Martins, Esq.
       Helmer, Martins & Morgan Co. LPA
4      Suite 1900, Fourth & Walnut Centre
       105 East Fourth Street
5      Cincinnati, Ohio 45202
       Phone: (513) 421-2400
6
       John J. Helbling, Esq.
7      The Helbling Law Firm, L.L.C.
       3672 Springdale Road
8      Cincinnati, Ohio 45251
       Phone: (513) 923-9740
9
   On behalf of the Defendants City of Golf Manor,
10 Stephen Tilley, Roby Heiland and Chris
   Campbell:
11
       Wilson G. Weisenfelder, Jr., Esq.
12     Rendigs, Fry, Kiely & Dennis
       900 Fourth & Vine Tower
13     One West Fourth Street
       Cincinnati, Ohio 45202-3688
14     Phone: (513) 381-9200

15 On behalf of Defendants City of Cincinnati,
   Darren Sellers, Jason Hodge:
16

17     Geri Hernandez Geiler, Esq.
       Assistant City Solicitor
18     Department of Law
       Room 214, City Hall
19     801 Plum Street
       Cincinnati, Ohio 45202
20     Phone: (513) 352-3346

21     Neil F. Freund, Esq.
       Freund, Freeze & Arnold
22     One Dayton Centre
       1 South Main Street, Suite
23     1800 Dayton, Ohio 45402
       Phone: (937) 222-2424
24

Page 3

1  APPEARANCES (Continued):

2  On behalf of the Defendants Robert B. Jorg,
   Patrick Caton, Jason Hodge, Victor Spellen and
3  Darren Sellers:

4      Donald E. Hardin, Esq.
       Hardin, Lefton, Lazarus & Marks, LLC
5      915 Cincinnati Club Building
       30 Garfield Place
6      Cincinnati, Ohio 45202
       Phone: (513) 721-7300

7

8          - - -

Page 4

1          S T I P U L A T I O N S

2      It is stipulated by and among counsel for the

3  respective parties that the deposition of DANIEL L.

4  SCHULTZ, M.D., a witness herein, called by the

5  plaintiffs for cross-examination, pursuant to the

6  Federal Rules of Civil Procedure, may be taken at

7  this time by the notary; that said deposition may be

8  reduced to writing in stenotype by the notary, whose

9  notes may then be transcribed out of the presence of

10 the witness; and that proof of the official

11 character and qualifications of the notary is

12 expressly waived.

13          - - -

Page 5

1          I N D E X

2  Examination by:           Page

3  Mr. Martins . . . . . . . . .  6

4  Mr. Freund  . . . . . . . .  74, 121

5  Mr. Weisenfelder . . .   105

6          - - -

7          E X H I B I T S

8                            Page

10 Plaintiff's Exhibit 101 . . . . . . . . . . . .   6
   Plaintiff's Exhibit 102 . . . . . . . . . . . .  15
11 Plaintiff's Exhibit 103 . . . . . . . . . . . .  19
   Plaintiff's Exhibit 104 . . . . . . . . . . . .  19
12 Plaintiff's Exhibit 105 . . . . . . . . . . . .  20
   Plaintiff's Exhibit 106 . . . . . . . . . . . .  57
13 Plaintiff's Exhibit 107 . . . . . . . . . . . .  73
   Plaintiff's Exhibit 108 . . . . . . . . . . . .  73
14 Plaintiff's Exhibit 108-A . . . . . . . . . . .  81

Owensby vs. City of Cincinnati, et al.
December 17, 2003
Case 1:01-cv-00769-SAS   Document 87-15   Filed 02/02/2004   Page 3 of 4
DANIEL L. SCHULTZ, M.D.

Page 62

1  Q. 255?
2  A. 255 shows a very faint pattern -- not a
3  pattern, faint abrasion of the chest, below the left
4  breast area. I say "not a pattern" because it
5  doesn't have anything that strikes me as being due
6  to a specific object.
7  Q. 256?
8  A. 256 is viewed from the right side of Mr.
9  Owensby's head. You can see the right cheek with
10 abrasions. You can see the upper lip. Note, the
11 right aspect of the upper lip has been shaved. I
12 shave the mustache away in order to show the
13 abrasion to the right aspect of the upper lip. And
14 then you also see the abrasions of the forehead.
15 Q. 257?
16 A. 257 is viewed from the left side of Mr.
17 Owensby's head, and it shows the abrasions to the
18 forehead.
19 Q. And 258?
20 A. 258 is a view of Mr. Owensby from the
21 front showing the abrasions to the forehead, showing
22 the mustache which has been shaved, showing the
23 abrasions to the right aspect of the upper lip,
24 showing a slight amount of this emesis material in

Page 63

1  the nostrils. And that's about it.
2  Q. With respect to the finding of the deep
3  musculature contusions in the area of the shoulder
4  blades, would those contusions be consistent with a
5  person weighing approximately, with equipment,
6  270 pounds, kneeling on Mr. Owensby's back?
7       MR. HARDIN: Objection.
8       MS. GEILER: Objection.
9  A. It could be, yes.
10 Q. It could be consistent with that?
11 A. Right. It's not inconsistent. It's
12 consistent.
13 Q. If that person had their arms or arm
14 around the head of Mr. Owensby and were pulling the
15 head back while kneeling on the back, would these
16 injuries be consistent with that also?
17      MR. HARDIN: Objection.
18      MR. FREUND: Objection.
19 A. They are consistent.
20 Q. I take it from the analysis of the blood,
21 the blood analysis, you found, with the exception of
22 the traces of marijuana, you found no presence of
23 any other drugs?
24 A. Correct.

Page 64

1  Q. And no traces of alcohol?
2  A. Correct.
3  Q. Since conducting your post-mortem exam,
4  you have testified in two trials, one of officer
5  Jorg and one of Officer Caton. As a result of
6  either reviewing documents in preparation for those
7  trials or since those trials, have you seen anything
8  to alter the opinions that you gave in your report
9  here that we've examined today?
10      MR. FREUND: Objection.
11 A. No.
12 Q. Cause you to change your opinions?
13 A. No.
14 Q. In this kind of death, a mechanical
15 asphyxiation death, does it occur immediately or
16 does it take a period of time to occur?
17 A. It takes minutes.
18 Q. In the case of Mr. Owensby, with a
19 mechanical asphyxia death, then can you say within a
20 reasonable degree of medical certainty in the field
21 of pathology that his death would have taken a
22 number of minutes?
23 A. Yes.
24 Q. Are you able to quantify either the range

Page 65

1  of minutes or how many minutes would have been
2  involved?
3  A. No.
4  Q. Can you describe for us, beginning with
5  the compression that starts this asphyxia through
6  the time of death, what the body would experience?
7  A. Well --
8       MR. FREUND: Object.
9  A. Aside from the struggle, the first thing
10 that happens is the person loses consciousness.
11      MR. MARTINS: Hold on a second.
12      MR. FREUND: He answered the question.
13      That was the point of my objection. The way
14      you asked the question, the patient -- the
15      person could have been unconscious.
16      MR. MARTINS: Okay.
17 Q. Describe the process, from when the
18 compression first starts through death, what happens
19 to the person's body? What processes come into
20 play?
21      MR. FREUND: Objection as to the form of
22      that question.
23 A. Well, all I can say is with this type of
24 death there are, of course, attempts to breathe.

Owensby vs. City of Cincinnati, et al.
December 17, 2003

DANIEL L. SCHULTZ, M.D.

Page 70

1 body?
2    MR. HARDIN: Objection.
3    MR. FREUND: Objection.
4    MR. WEISENFELDER: Objection as to form.
5    MR. FREUND: You've got a unanimous
6 objection on that one.
7    A. That distinction is made based on the
8 autopsy examination, post-mortem examination, and
9 details from the scene. Although, the autopsy
10 examination is very compelling, in that all other
11 reasonable causes of his asphyxia, his death for
12 that matter, have been excluded.
13    So since I don't have an intoxicated
14 individual in the vehicle, I don't have -- I can't
15 get him to that vehicle in a conscious state and
16 then suddenly die in the car. That doesn't make
17 reasonable medical sense. What makes sense, since I
18 know that that isn't going to -- can't happen, is
19 that he died on the ground. That's my opinion.
20    Q. Can you tell me to a reasonable degree of
21 medical certainty whether or not, when they pick him
22 up off the ground, whether he is dead or whether he
23 is unconscious at that point?
24    MR. FREUND: Objection.

Page 71

1    A. He is either deceased or in very agonal
2 phases where there's just a faint rhythm, but he is
3 not moving to his own accord.
4    Q. I understand that.
5    A. Yeah.
6    Q. The distinction I'm trying to make is, was
7 he unconscious or can you say, based on a reasonable
8 degree of medical certainty in the field of
9 pathology, whether or not, when they pick him up,
10 whether he is dead or whether he is unconscious?
11    MR. HARDIN: Objection.
12    MR. FREUND: Objection.
13    A. I can't fully distinguish between that. I
14 can simply say that he's either totally deceased or
15 he is in the agonal, unconscious phases before
16 death. But he isn't just dying after being placed,
17 just sitting in the car and dying. That's my point.
18    Q. I take it from your answer that within a
19 reasonable degree of medical certainty you can say
20 that he was not able to walk to the car on his own
21 power?
22    MR. FREUND: Objection.
23    A. Yes, I can say that.
24    Q. Certainly, within a reasonable degree of

Page 72

1 medical certainty, he would not have been, when they
2 picked him up off the ground, any kind of flight
3 risk?
4    A. No.
5    MR. FREUND: Objection.
6    MR. HARDIN: Objection. Leading.
7    Q. Can you say to a reasonable degree of
8 medical certainty whether or not Mr. Owensby could
9 have offered any physical resistance to the police
10 officers when he was picked up off the ground?
11    MR. HARDIN: Objection.
12    MR. FREUND: Objection.
13    A. My opinion would be that he would not
14 offer physical resistance when he was picked up and
15 transferred to the car.
16    Q. That would be to a reasonable degree of
17 medical certainty in the field of pathology?
18    MR. FREUND: Objection.
19    A. Yes.
20    MR. MARTINS: Let's take a short break.
21    (Recess taken: 1:38 p.m. - 1:46 p.m.)
22 BY MR. MARTINS:
23    Q. Back on the record. Doctor, I ask you to
24 take a look again at Exhibit 12, which is the lab

Page 73

1 report. I just want you to explain, did you examine
2 the shirt sleeve that's the subject of this report?
3    A. No.
4    Q. There's a reference to presence of amylase
5 or amylase (pronouncing). Do you know what that is?
6    A. Spit.
7    Q. Thank you.
8    A. It is an enzyme that's in oral secretions.
9    Q. In saliva?
10    A. Uh-huh. It's what breaks down
11 carbohydrates.
12        (Plaintiff's Exhibit
           107 was marked for
13         identification.)
14    Q. I want to show you now Exhibit 107, just a
15 colored diagram. The vein in blue in the diagram,
16 is that the jugular vein?
17    A. Yes.
18    Q. Is that a fair representation of where on
19 the human body the jugular vein runs on the neck?
20    A. Yes.
21        (Plaintiff's Exhibit
           108 was marked for
22         identification.)
23    Q. I'll show you Exhibit 108. Exhibit 108, I
24 want to direct your attention to page 11.