Estate of Owensby, Jr. vs. City of Cincinnati, et al.
December 22, 2003

THOMAS HENRY STREICHER, JR.

Case 1:01-cv-00769-SAS   Document 87-17   Filed 02/02/2004   Page 1 of 5

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

- - - - - - - - - - - - - - - -

ESTATE OF ROGER D.            :
OWENSBY JR., et al.,          :
                              :
        Plaintiffs,           :
   vs.                        :   Case No. 01-CV-769
                              :   (Judge S. A. Spiegel)
CITY OF CINCINNATI,           :
et al.,                       :
                              :
        Defendants.           :

- - - - - - - - - - - - - - - -

Videotaped deposition of THOMAS HENRY STREICHER JR., a witness herein, called by the plaintiffs for cross-examination, pursuant to the Federal Rules of Civil Procedure, taken before me, Wendy Davies Welsh, a Registered Diplomate Reporter and Notary Public in and for the State of Ohio, at the offices of Helmer, Martins & Morgan Co. LPA, 1900 Fourth & Walnut Centre, 105 East Fourth Street, Cincinnati, Ohio, on Monday, December 22, 2003, at 9:06 a.m.

Estate of Owensby, Jr. vs. City of Cincinnati, et al.
December 22, 2003

THOMAS HENRY STREICHER, JR.

Case 1:01-cv-00769-SAS    Document 87-17    Filed 02/02/2004    Page 2 of 5

Page 2

1  APPEARANCES:

2      On behalf of the Plaintiffs:

3          Frederick M. Morgan Jr., Esq.
           Paul B. Martins, Esq.
4          Don Stiens, Esq.
           Helmer, Martins & Morgan Co. LPA
5          Suite 1900, Fourth & Walnut Centre
           105 East Fourth Street
6          Cincinnati, Ohio 45202
           Phone: (513) 421-2400
7
           John J. Helbling, Esq.
8          The Helbling Law Firm, L.L.C.
           3672 Springdale Road
9          Cincinnati, Ohio 45251
           Phone: (513) 923-9740
10
           Mark T. Tillar, Esq.
11         224 Clark Road
           Cincinnati, Ohio 45215
12
    On behalf of the Defendants City of Golf Manor,
13  Stephen Tilley, Roby Heiland and Chris Campbell:
14
           Wilson G. Weisenfelder Jr., Esq.
15         Rendigs, Fry, Kiely & Dennis
           900 Fourth & Vine Tower
16         One West Fourth Street
           Cincinnati, Ohio 45202-3688
17         Phone: (513) 381-9200

Page 3

1  APPEARANCES (Continued)

2      On behalf of Defendants City of Cincinnati,
       Darren Sellers, Jason Hodge:
3
4          Geri Hernandez Geiler, Esq.
           Assistant City Solicitor
5          Department of Law
           Room 214, City Hall
6          801 Plum Street
           Cincinnati, Ohio 45202
7          Phone: (513) 352-3346

8          Neil F. Freund, Esq.
           Freund, Freeze & Arnold
9          One Dayton Centre
           1 South Main Street, Suite
10         1800 Dayton, Ohio 45402
           Phone: (937) 222-2424
11
    On behalf of the Defendants Robert B. Jorg,
12  Patrick Caton, Jason Hodge, Victor Spellen and
    Darren Sellers:
13
           Donald E. Hardin, Esq.
14         Hardin, Lefton, Lazarus & Marks, LLC
           915 Cincinnati Club Building
15         30 Garfield Place
           Cincinnati, Ohio 45202
16         Phone: (513) 721-7300

17 Also present:

18 Richard W. Grubb, Videograher

19 Lisa Damstrom, Law Clerk
   Helmer, Martins & Morgan Co., L.P.A.
20
   Mr. Roger Owensby
21
   Mr. Shawn Owensby
22                         - - -

Page 4

1              S T I P U L A T I O N S

2      It is stipulated by and among counsel for the

3  respective parties that the deposition of THOMAS

4  HENRY STREICHER JR., a witness herein, called by the

5  plaintiffs for cross-examination, pursuant to the

6  Federal Rules of Civil Procedure, may be taken at

7  this time by the notary; that said deposition may be

8  reduced to writing in stenotype by the notary, whose

9  notes may then be transcribed out of the presence of

10 the witness; and that proof of the official

11 character and qualifications of the notary is

12 expressly waived.

                           - - -

Page 5

1                    I N D E X

2      Examination by:              Page

3      Mr. Morgan . . . . . . . .6, 354

4      Mr. Weisenfelder . . . .334, 356

                           - - -

6                  E X H I B I T S

7                                          Page
   Plaintiff Exhibit 117 .................. 156
8  Plaintiff Exhibit 118 .................. 169
   Plaintiff Exhibit 119 .................. 176
9  Plaintiff Exhibit 120 .................. 176
   Plaintiff Exhibit 121 .................. 187
10 Plaintiff Exhibit 122 .................. 226
   Plaintiff Exhibit 123 .................. 252
11 Plaintiff Exhibit 124 .................. 256
   Plaintiff Exhibit 125 .................. 258
12 Plaintiff Exhibit 126 .................. 262
   Plaintiff Exhibit 127 .................. 264
13 Plaintiff Exhibit 128 .................. 268
   Plaintiff Exhibit 129 .................. 279
14 Plaintiff Exhibit 130 .................. 291
   Plaintiff Exhibit 131 .................. 309

                           - - -

Case 1:01-cv-00769-SAS    Document 87-17    Filed 02/02/2004    Page 3 of 5

Estate of Ownesby, Jr. vs. City of Cincinnati, et al.
December 22, 2003
THOMAS HENRY STREICHER, JR.

Page 346

1 relinquished to the Cincinnati -- first Cincinnati
2 officer on the scene, is that --
3      MR. HARDIN: Objection.
4      MR. MORGAN: Object to the form.
5      A. I'm -- I'm not with you.
6      Q. Okay.
7      A. You're losing me here.
8      Q. Well, okay. Well, let's back up.
9      MR. FREUND: Isn't -- isn't that a -- a
10 legal question?
11      MR. WEISENFELDER: Well, it's a policy.
12 And whether or not they followed the policy
13 involves --
14      MR. FREUND: I'll let you ask it, but I
15 think it's a --
16      MR. WEISENFELDER: Well, it may be.
17      MR. HARDIN: It's legal --
18      MR. WEISENFELDER: Well --
19      MR. HARDIN: -- and I'll be objecting.
20      MR. MORGAN: How come you're so much nicer
21 to him than you were to me?
22      MR. FREUND: Because --
23      MS. GEILER: Don't answer that, Neil.
24      MR. FREUND: Because I want to be.

Page 347

1      MR. HARDIN: I'll -- I'll object to the
2 reference that this is a policy.
3      MR. FREUND: Yeah. I -- I just think that
4 you're asking him a -- a legal question.
5      MR. WEISENFELDER: Well, if he's --
6      MR. FREUND: And -- and not a factual
7 question.
8      MR. WEISENFELDER: That's fine. Okay.
9      MR. FREUND: So that's the basis for my --
10      MR. WEISENFELDER: All right. Well, let
11 me --
12      MR. FREUND: -- objection.
13      MR. WEISENFELDER: Let me go back and
14 make --
15      MR. FREUND: And I -- and -- and that's
16 the last time I'm going to be nice to you also.
17      MR. WEISENFELDER: Okay. That's fair
18 enough.
19      MR. FREUND: All right.
20      MR. WEISENFELDER: All right.
21 BY MR. WEISENFELDER
22      Q. Chief Streicher, what was marked as
23 Exhibit 78, the Mutual Aid Agreement For Law
24 Enforcement, that was an agreement that was in

Page 348

1 effect as of November 7th, 2000?
2      A. I don't see this dated anyplace, but I
3 guess we can assume that it was.
4      Q. Well, I don't want anybody to assume
5 anything.
6      A. Okay.
7      Q. There's a date on the transmittal page to
8 you from Sergeant Jeffrey Butler dated October 30th
9 of 2000.
10      A. Okay.
11      Q. Okay. And that transmittal memo lists the
12 participating agencies within Hamilton County,
13 correct?
14      A. Correct.
15      MR. MORGAN: Object to the form.
16      Q. Okay. And Cincinnati is -- well, is
17 Cincinnati part of that agreement?
18      A. Yes.
19      Q. Okay. As is Golf Manor?
20      A. Yes.
21      Q. Okay. Well, let's go back to page 2 then.
22      A. Okay.
23      Q. All right. "Control of any arrested
24 person, evidence and the crime scene shall be

Page 349

1 relinquished to the first available officer from the
2 jurisdiction within which the crime took place."
3 What's your understanding of that sentence?
4      A. That if an officer --
5      MR. MORGAN: Asked and answered.
6      THE WITNESS: I'm sorry.
7      MR. FREUND: Go ahead.
8      A. If an officer is on duty and has probable
9 cause to believe that a criminal offense occurred
10 outside of their own jurisdiction but in the
11 jurisdiction of one of these cooperating agencies,
12 that officer can make an arrest --
13      Q. And --
14      A. -- for that situation and do whatever's
15 necessary according -- according to the law.
16      Q. And what --
17      A. And then when a --
18      Q. Wait --
19      A. -- respondent --
20      Q. I'm --
21      A. -- if -- if -- if the -- if the -- when an
22 officer from the jurisdiction where that offense
23 occurred arrived there, that that person should
24 relinquish custody and control of that person to the

Case 1:01-cv-00769-SAS   Document 87-17   Filed 02/02/2004   Page 4 of 5

Estate of Ownesby, Jr. vs. City of Cincinnati, et al.
December 22, 2003
THOMAS HENRY STREICHER, JR.

Page 350

1  officer in the jurisdiction where it occurred.
2      Q. Whose own -- whose jurisdiction where the
3  offense occurred, correct?
4      A. Right. Exactly.
5      Q. Okay. Let's turn to page 7.
6      A. Okay.
7      Q. Paragraph VI C. Do you want to take a
8  minute to read it?
9      A. C? Sure.
10     Q. Pardon me. No. I'm sorry, VI D.
11     A. What is it?
12     Q. VI D on the bottom of page 7.
13     A. Oh, okay. D, okay.
14     Q. Okay. Have you had an opportunity to read
15 that?
16     A. Yes, sir.
17     Q. For the record, VI D of the -- what was
18 marked as Exhibit 78 states, "Whenever the law
19 enforcement employees of one cooperating Agency are
20 providing police services upon request to another
21 cooperating Agency they will be under the lawful
22 direction and authority of the commanding law
23 enforcement officer of the Agency to which they are
24 rendering assistance."

Page 351

1      Chief, would you agree with me that in
2  this instance, the Owensby matter, that when the
3  Golf Manor officers responded to the Cincinnati
4  jurisdiction they were under the control or
5  direction of the Cincinnati officers?
6      MR. HARDIN: Objection.
7      MR. MORGAN: Foundation, conclusion of
8  law, speculation.
9      A. Umm --
10     Q. Based upon this agreement.
11     MR. MORGAN: Same objections.
12     A. I guess I have to ask you in what matters?
13 I mean, I don't understand what you mean by --
14     Q. Well, I -- I -- I didn't write the
15 agreement. I'm asking based upon what you know of
16 the incident involving Mr. Owensby, knowing how the
17 Golf off-- Golf Manor officers responded to the
18 scene as well as what's contained in paragraph VI D,
19 whether, in your opinion, the Golf Manor -- Golf
20 Manor officers were under the control or direction
21 of Cincinnati?
22     MR. HARDIN: Objection.
23     MR. MORGAN: Same objections.
24     A. No.

Page 352

1      Q. And why not?
2      A. Because I don't know that any supervisor
3  from -- or any commanding officer from Cincinnati
4  gave them any direction.
5      Q. But it does-- it doesn't say they have to,
6  does it?
7      MR. HARDIN: Object.
8      Q. Doesn't it say they shall be?
9      MR. HARDIN: Objection. Argumentative.
10     MR. MORGAN: Join.
11     A. "They will be under the lawful direction
12 and authority." I don't know that any direction was
13 given to them.
14     Q. Okay. So you're not aware of any
15 Cincinnati officer, in fact, directing them or
16 asking them to do anything as it relates to Mr.
17 Owensby?
18     A. I don't recall anything at all --
19     Q. Okay.
20     A. -- about -- along that.
21     Q. Are you aware of anyone from Cincinnati --
22 when I say Cincinnati, I mean the Cincinnati Police
23 Department.
24     A. Okay.

Page 353

1      Q. Asking either of the Golf Manor officers
2  to do something that was not done?
3      MR. MORGAN: Foundation.
4      A. I don't recall that --
5      Q. Okay.
6      A. -- no, sir.
7      Q. You're not aware of anything?
8      A. I -- I --
9      Q. Correct?
10     A. -- simply don't recall.
11     Q. Okay. Are you aware of any of the
12 Cincinnati officers requesting either Golf Manor
13 officer to summon or request the fire department or
14 any other type of medical assistance for Mr.
15 Owensby?
16     MR. MORGAN: Foundation.
17     A. I don't recall that.
18     Q. Okay. Chief Streicher, would you agree
19 that the officers who participated in subduing
20 the -- or the physical arrest of Mr. Owensby or the
21 Macing of Mr. Owensby or placing Mr. Owensby in the
22 back of a Golf Manor police cruiser were in a better
23 position than the Golf Manor officers to assess Mr.
24 Owensby's physical condition or need for medical

Case 1:01-cv-00769-SAS   Document 87-17   Filed 02/02/2004   Page 5 of 5

Estate of Ownesby, Jr. vs. City of Cincinnati, et al.
December 22, 2003

THOMAS HENRY STREICHER, JR.

Page 354

1 care?
2    MR. FREUND: Objection.
3    MR. HARDIN: Objection.
4    MR. MORGAN: Foundation, speculation.
5    A. I don't know that that's accurate.
6    Q. Okay.
7    A. I -- I -- wouldn't -- certainly wouldn't
8 agree that that's accurate.
9    Q. The fact of the matter is, as you sit here
10 today, you're not certain or don't have specific
11 facts as to what either of the Golf Manor officers
12 saw or ability to see as it related to Mr. Owensby's
13 condition; is that true?
14   A. That's correct.
15      MR. MORGAN: Leading.
16   Q. Okay.
17      MR. WEISENFELDER: I have nothing further.
18      MR. FREUND: Are you -- are you going to
19   have any further questions?
20      MR. MORGAN: I may have one. I need to
21   parse this just a second. Yeah, I think one.
22      FURTHER CROSS-EXAMINATION
23 BY MR. MORGAN:
24   Q. Chief, when -- talking about paragraph D

Page 355

1 on page 7 of the compact, when you said -- it's my
2 understanding that the reason you discounted
3 reliance on this paragraph was because you weren't
4 aware of there having been a request from the City
5 to Golf Manor to come and provide assistance; is
6 that right?
7    A. Well, there was an all-- no, there's a --
8 there's a --
9       MR. HARDIN: There's going to be an
10   objection on misstatement, but go ahead.
11   A. There's a request. It's an all--
12 all-county broadcast goes out --
13   Q. Okay.
14   A. -- for assistance for officers. That goes
15 out. I read this as -- as if officers arrived there
16 and they have to take action, say to arrest
17 somebody, they could be acting with authority of
18 our -- of our jurisdiction.
19      The direction -- it -- it also provides
20 our officers, our commanders with the ability, Golf
21 Manor responds, Addyston responds, whoever, "Take a
22 traffic post, I want you to do this, this and this,"
23 while they're there under the conditions.
24      It's a very broad, very broad statement

Page 356

1 that -- that tries to allow some flexibility because
2 of the large number of incidents that can occur
3 where we cross jurisdictional lines.
4    Q. Do me a favor, Chief. Read aloud the last
5 two lines of paragraph D which are actually on the
6 next page. That sentence.
7    A. "Officers shall be subject to the code of
8 ethics, policies, and rules and regulations of their
9 employing Agency at all times."
10      MR. MORGAN: I have nothing further.
11   Thank you, Chief.
12      THE WITNESS: Okay.
13      MR. WEISENFELDER: Chief, I have one more.
14      THE WITNESS: Okay.
15      FURTHER CROSS-EXAMINATION
16 BY MR. WEISENFELDER:
17   Q. Do you know who drafted the --
18      MR. WEISENFELDER: Well, I -- you know, I
19   misspoke. I have more than one question. And
20   Neil's going to get upset, aren't you, Neil?
21      MR. FREUND: No. No. I don't -- I don't
22   easily get upset.
23      MR. WEISENFELDER: Good.
24 BY MR. WEISENFELDER:

Page 357

1    Q. Chief, do you know who drafted this
2 document?
3       MR. MORGAN: Asked and answered.
4    A. No.
5    Q. Okay.
6    A. I don't know who specifically wrote that.
7    Q. Did you have any role in drafting this --
8 this document?
9    A. No.
10   Q. Okay. Prior to today though, you had seen
11 it and you were familiar with it?
12   A. Oh, yes, sir.
13   Q. Okay. And you've had an opportunity to
14 read, I think, probably at least three times
15 paragraph VI D; is that right?
16   A. Yes.
17   Q. Okay. Would you agree that the reason for
18 that paragraph is that when you have a number -- or
19 potentially a number of other jurisdictions
20 responding to another jurisdiction, that someone has
21 to be in control? They all can't be in control?
22 Someone has to assume control and responsibility for
23 the officers that are responding to -- to direct
24 whatever needs to be done, whether it be traffic,