1

```
10:12:56    1
10:12:56    2           UNITED STATES DISTRICT COURT
10:12:56    3           SOUTHERN DISTRICT OF OHIO
10:12:56    4                WESTERN DIVISION
10:12:56    5    - - - - - - - - - - - - - - - -
10:12:56         ESTATE OF ROGER D.            :
10:12:56    6    OWENSBY JR., et al.,          :
10:12:56                                       :
10:12:56    7           Plaintiffs,            :
10:12:56            vs.                        :   Case No. 01-CV-769
10:12:56    8                                  :   (Judge S. A. Spiegel)
10:12:56         CITY OF CINCINNATI,           :
10:12:56    9    et al.,                       :
10:12:56                                       :
10:12:56   10           Defendants.            :
10:12:56         - - - - - - - - - - - - - - - -
10:12:56   11
10:12:56
10:12:56   12           Deposition of CHRISTOPHER CAMPBELL,
10:12:56   13    defendant herein, called by the plaintiffs for
10:12:56   14    cross-examination, pursuant to the Federal Rules of
10:12:56   15    Civil Procedure, taken before me, Wendy Davies
10:12:56   16    Welsh, a Registered Diplomate Reporter and Notary
10:12:56   17    Public in and for the State of Ohio, at the offices
10:12:56   18    of Helmer, Martins & Morgan Co. LPA, 1900 Fourth &
10:12:56   19    Walnut Centre, 105 East Fourth Street, Cincinnati,
10:12:56   20    Ohio, on Wednesday, December 3, 2003, at 2:31 p.m.
10:12:56   21
10:12:56   22
           23
           24
```

COPY

14:45:57  1    A.    Yes.

14:45:58  2    Q.    Please continue.

14:45:59  3    A.    I responded to the parking lot.  As I was

14:46:10  4  getting out I remember hearing a dispatcher tell us

14:46:16  5  to code 4, which means that the situation was over.

14:46:20  6  That was as I was exiting my vehicle.  And it was at

14:46:25  7  that time I saw Cincinnati officers moving a suspect

14:46:29  8  towards Officer Heiland's car.  And I advised -- I

14:46:34  9  hadn't had a chance to advise that I was in the lot

14:46:36 10  yet.  And I advised I was clear on her information,

14:46:39 11  but would be remaining there, because Cincinnati was

14:46:42 12  putting their prisoner in one of our cars.

14:46:45 13    Q.    When you say you advised her, who is the

14:46:48 14  "her" you're referring to?

14:46:50 15    A.    The Hamilton County dispatcher.

14:46:54 16    Q.    What happened next?

14:46:57 17    A.    I can't recall the details.  We basically

14:47:06 18  were waiting there for a Cincinnati officer to get

14:47:11 19  their prisoner out of our car.

14:47:12 20    Q.    Did you see the Cincinnati police officers

14:47:16 21  physically put Mr. Owensby in Officer Heiland's car?

14:47:22 22    A.    No, I didn't.

14:47:24 23    Q.    Your attention was directed somewhere

14:47:26 24  else?

15:14:30  1        Q.    No, you had no understanding or no, you

15:14:35  2   owed no duty?

15:14:37  3        A.    No, I had no understanding.

15:14:40  4        Q.    Do you recall whether or not you ever

15:14:43  5   received any guidance from any superiors at Golf

15:14:47  6   Manor as to what your obligations were if another

15:14:51  7   police department placed a prisoner in your car?

15:14:56  8        A.    I can't remember specifically.

15:15:00  9        Q.    Do you recall any informal discussions

15:15:02  10  with your superiors as to what your duties or

15:15:05  11  responsibilities would be if they placed a prisoner,

15:15:12  12  if another police department placed a prisoner in

15:15:14  13  your car?

15:15:14  14       A.    Not specifically.

15:15:17  15       Q.    Let me ask you this:  Do you have an

15:15:21  16  understanding of what your responsibilities would be

15:15:25  17  if an injured prisoner that was arrested by another

15:15:31  18  police department was placed in your car, what your

15:15:35  19  responsibilities would be to that injured prisoner?

15:15:39  20       A.    Inside of their jurisdiction?

15:15:41  21       Q.    Yes, sir.

15:15:42  22       A.    My understanding is that that's their

15:15:46  23  prisoner.

15:15:49  24       Q.    If you saw that an injured prisoner was

43

| | | |
|---|---|---|
| 15:28:19 | 1 | Q.    If Officer Brazile had said what I just |
| 15:28:22 | 2 | read to you from his deposition, based on your |
| 15:28:27 | 3 | training and your experience with Golf Manor, would |
| 15:28:32 | 4 | you feel that you had a duty to check on the |
| 15:28:34 | 5 | condition of Mr. Owensby? |
| 15:28:36 | 6 | MR. HARDIN:   Objection. |
| 15:28:37 | 7 | MR. WEISENFELDER:   Objection. |
| 15:28:39 | 8 | A.    I would ask the city to check their |
| 15:28:41 | 9 | prisoner. |
| 15:28:42 | 10 | Q.    In the time that you and Officer Heiland |
| 15:28:46 | 11 | were standing outside the car did either you or |
| 15:28:51 | 12 | Officer Heiland ever ask the city to check on the |
| 15:28:54 | 13 | prisoner? |
| 15:28:55 | 14 | A.    No. |
| 15:29:15 | 15 | Q.    Take a look at Exhibit 78, please. |
| 15:29:51 | 16 | Exhibit 78 is a mutual aid agreement between |
| 15:29:57 | 17 | Cincinnati and various municipalities in the greater |
| 15:30:05 | 18 | Cincinnati area.  Have you had occasion to look at |
| 15:30:08 | 19 | that mutual aid agreement before today? |
| 15:30:12 | 20 | A.    No. |
| 15:30:13 | 21 | Q.    Have you ever received any instruction |
| 15:30:14 | 22 | from Golf Manor concerning the mutual aid agreement? |
| 15:30:20 | 23 | A.    I can't remember specific instruction. |
| 15:30:23 | 24 | Q.    Do you recall receiving any memos or any |