## 12.545   USE OF FORCE

**Reference:**

Graham vs. Conner, 490 US 386, 396 (1989)
Tennessee vs. Garner, 471 US 1 (1985)
Manual of Rules and Regulations – 1.22, 1.23, 1.24,
                                     1.25, 2.12,
                                     2.26A&B, 4.05

Procedure 12.140 – Canine Operations
Procedure 12.546 – Taser Electronic Device
Procedure 12.550 – Discharging of Firearms by Police
                   Personnel
Procedure 12.554 – Investigatory Stops and Field
                   Interview Report (FIR)
Procedure 12.600 – Prisoners:  Securing, Handling,
                   and Transporting
Procedure 12.905 – Fingerprinting and Photographing
                   of Juveniles
Standards Manual – Chapter 1.2.4, 1.3.1, 1.3.2,
                   1.3.4, 1.3.5, 1.3.6, 1.3.7,
                   1.3.9, 46.1.5, 52.1.1, 71.3.2

**Definitions:**

Force:  The following situations require a Form 18
(Supervisor's Preliminary Use of Force
Investigation) report: any strike, blow, kick, bite,
stab, shot, or slap with any object, including but
not limited to any body part, flashlight, PR-24,
firearm, knife, clipboard, etc.

Restraining Force:  That force used to prevent
movement and achieve full physical control of the
subject.  Specifically, it is the use of one's body
weight and physical strength to restrict mobility
with full body control as the goal.  Holding a
subject to the ground while applying handcuffs is an
example of restraining force.  Injuries resulting
from restraining force are not a use of force and
are reported as an Injury to Prisoner (Form 18I)
only.

Deadly Force: Force likely to cause or capable of
producing death.

12.545

**Policy:**

When officers have a right to make an arrest, they may use whatever force is reasonably necessary to apprehend the offender or effect the arrest, and no more. They must avoid using unnecessary violence. Their privilege to use force is not limited to that amount of force necessary to protect themselves, but extends to that amount reasonably necessary to enable them to perform their duty.

If the offender resists, the officer may use such force as required under the circumstances to overcome the resistance, even to the extent of taking life, if that is necessary. They may not use deadly force merely to prevent escape in misdemeanor cases. The use of deadly force to prevent escape of felony suspects is constitutionally unreasonable except where the escape presents an immediate risk of death or serious physical harm to the officer or another. Where the suspect poses no immediate threat of death or serious physical harm to others, the harm resulting from failing to apprehend the suspect does not justify the use of deadly force to do so. If officers use unnecessary and excessive force, or act wantonly and maliciously, they may be guilty of assault, even of culpable homicide if they kill the person they are trying to arrest.

The courts could consider a choke hold or other similar type hold as deadly force. Choke holds should only be used with this in mind. The use of any type choke hold to prevent the swallowing of evidence is prohibited.

When possible, personnel will use chemical irritant as the primary response to aggressive citizen behavior.

Rev. 11/00, Replaces 10/00

Whenever employees use deadly force, force, restraining force with injury, chemical irritant, taser, beanbag shotgun, or have knowledge of a use of force, they will immediately notify a supervisor. The supervisor will respond to the scene and investigate the use of force.  The supervisor will submit a report of the incident to the Police Chief before the end of his tour of duty. The supervisor investigating the use of force must be of equal or higher rank than the employee using the force.

Following any use of force resulting in a citizen's injury, officers will ensure appropriate first aid is rendered immediately once the incident scene is stabilized.

***Procedure:***

A.   Reporting a Use of Force:

    1.   The investigating supervisor will immediately notify the district/section/unit OIC (officer in charge), if on duty, or the Night Chief, if on duty.  This does not include chemical irritant incidents unless the chemical irritant is part of the physical injury.

        a.   If none of the above are on duty, ensure the next command officer is notified when he comes on duty.

        b.   Contact the IIS (Internal Investigation Section) Commander and the officer's district/section/unit commander if more than the necessary amount of force appears to have been used, or the injuries are inconsistent with the reported force.

    2.   The supervisor will conduct a preliminary fact finding interview of any witnesses and officers at the scene, and search for evidentiary materials.  The supervisor will then conduct a thorough investigation and evaluate the propriety of the action taken.

a.  Other than a simple use of chemical
    irritant, a supervisor will ensure
    neutral officers transport the prisoner
    to a detention facility or hospital, if
    applicable.

    1)  Officers may remove a prisoner to a
        safe location to prevent an
        escalation of the incident.

b.  Detail supervisors will be responsible
    for the investigation of a use of force
    involving officers under their
    supervision.

c.  A supervisor in the district where the
    force occurred will investigate and
    report incidents when the officer is off
    duty.

    1)  If a use of force occurs outside the
        city limits, a supervisor from the
        closest district will investigate
        the incident.

d.  If an officer is involved in a use of
    force outside a 50 mile radius of the
    city, the officer will immediately
    contact a PCS (Police Communications
    Section) supervisor and notify him of
    the use of force.  The officer will
    leave a phone number where he can be
    contacted.

    1)  PCS will contact the involved
        officer's assigned
        district/section/unit commander and
        notify him of the incident.

    2)  The district/section/unit commander
        will call the officer to determine
        the correct course of action.

12.545

3.  After the preliminary fact finding interview, tape record all further interviews with the arrested, civilian witnesses, and police officer witnesses in incidents involving canine bites or the physical use of force.  Attach the interview tapes to the original report.

   a.  The tape recorded interview will contain the following information:

      1)  Date, time, and location of interview.

      2)  Interviewer's name and title.

      3)  Reason for the interview, e.g., "I am investigating the arrest of John Doe, which took place at 1012 Ludlow Avenue."

      4)  Identity of the person interviewed.

      5)  Explanation of what happened with specific reference to how the injury occurred.  Do not ask leading or suggestive questions.

   b.  If more information is needed, ask the appropriate questions.

   c.  Upon completion, conclude the taped interview by identifying yourself, the person interviewed, and state the time; e.g., "This is Sgt. Saunders concluding this interview with Mr. John Doe.  The time is 2000 hours."

4.  The investigating supervisor will interview and examine the subject of the use of force. Be sure the arrested is fully aware of the supervisor's rank and purpose of the interview.

12.545

a.  The investigating supervisor will take
    Polaroid photographs of the subject.
    Take specific photos of any injury, or
    claimed injury, to the subject.

    1)  The investigating supervisor will
        record his name, badge number, date,
        time, and name of the subject on the
        photographs.  Attach the photographs
        to the original report.

b.  Anytime the subject of a use of force
    goes to a hospital, a supervisor will
    respond and:

    1)  Ask permission of the medical staff
        to view the arrested to note the
        total extent of the injuries.

    2)  Interview the arrested. Tape record
        the interview.

    3)  Interview the treating physician.
        Tape record the interview if the
        physician permits it.  Include the
        diagnosis in the report.

        a)  If the treating physician cannot
            release a diagnosis of the
            subject's injuries due to
            doctor-patient confidentiality,
            the supervisor will note it in
            the report.

    4)  If possible, obtain a hospital and
        division release for medical records
        from the arrested.  Attach the
        release to the original
        investigative report.

    5)  Note on the Form 18 if the subject
        refuses treatment at the hospital.

    c.   If the arrested is seriously injured or admitted to a hospital, immediately notify the IIS Commander, the district/section/unit commander of the involved officer, the CIS (Criminal Investigation Section) Commander, and the Night Chief/Duty Officer if on duty. The district/section/unit commander will coordinate the investigation in the absence of an IIS investigator.

        1)   The Homicide Unit and IIS will conduct an investigation with the assistance of the affected district/section/unit when the injury is a result of the use of force.

            a)   The CIS and IIS Commanders will forward all findings and reports to the Police Chief's Office through command channels.

            b)   When IIS or the Homicide Unit is conducting the use of force investigation, the investigating unit will complete a Form 18.

5.   The investigating supervisor will complete a Form 18.

    a.   Ensure all blocks are completed.

    b.   Include concise statements addressing corroboration or contradiction for each witness.



    c.   Type a brief summary of the Use of Force incident. The summary that includes the following information:

        1)   Decision to arrest.

        2)   How the subject resisted arrest.

        3)   Subject's assaultive behavior.

        4)   Officer's actions to counter resistance/assault.

6. The investigating supervisor will ensure the completion of and sign the Form 527 (Arrest and Investigation Report) and Form 527A (Case and Bond Information Sheet) listing the prisoner's physical condition. The Form 527 will accompany the prisoner to Central Intake at the Hamilton County Justice Center.

7. The investigating supervisor will immediately fax the Form 18 to the following locations:

   a. Police Chief's Office.

      1) The Police Chief's Office will make copies for the:

         a) Affected bureau commander.

         b) IIS Commander.

   b. Patrol Bureau.

   c. Inspections Section.

8. The original report and one copy will be forwarded to the involved officer's assigned district/section/unit commander. The district/section/unit commander will review the original report and complete a use of force supplement. Within seven days, the district/section/unit commander will forward, in a sealed envelope, the taped statements, photos, and original report to the Police Chief's Office through the affected bureau commander.

   a. Inspections Section will file the photographs and tapes with its copy of the Form 18.

9. If an additional investigation is required, note it on the supplement.

10. The investigating supervisor will make a blotter entry describing the incident and action taken.

B. **Reporting an Injury to Prisoner:**

1. Form 18I will be used when either of the following criteria is met:

   a. Restraining force is the only force used and the arrested is injured.

   b. Any injury to the arrested, not the result of the use of force, while under or just prior to police control, and as a result of police activity.

2. Restraining force without any injury to the arrested does not require a Form 18I.

3. The narrative section of the Form 18I will be brief and concise.

4. The investigating supervisor will fax the Form 18I to the following locations:

   a. Police Chief's Office.

   b. Patrol Bureau.

   c. Inspections Section.

5. Forward the original Form 18I along with the photographs to the district/section/unit commander for review.

C. **Use of Chemical Irritant:**

1. Chemical irritant offers a nonlethal alternative for controlling, subduing, or apprehending a suspect(s).

2. If necessary, an officer may use the division issued chemical irritant as a crowd control device in self-defense situations, or to disperse a disorderly crowd.

3. If it is necessary to use chemical irritant on a disorderly prisoner after handcuffing and placing him in the rear seat of the police vehicle, officers will not open the rear doors of the police vehicle to spray the prisoner. Instead officers will spray the prisoner through the protective screen.

a. If the vehicle is equipped with a plexiglass partition, officers can either slide the partition to an open position and spray the prisoner through the opening, or through the rear door window nearest the prisoner's face.

4. When spraying chemical irritant, if possible spray five to ten feet from an individual. The target should be an individual's eyes, nose, and mouth.

a. Chemical irritant will leave an invisible ultraviolet, light-sensitive dye on an individual, which can aid in identification.

5. Expose individuals sprayed with chemical irritant to fresh air. Give them an opportunity to rinse their face with plenty of clear, cool water. Individuals should not rub or hold their faces, or use any oils, creams, or ointments.

6. Supervisors will complete a Form 18CI (Use of Chemical Irritant) when reporting the use of chemical irritant.

a. Fax copies to:

1) Patrol Bureau.

2) Inspections Section.

b. Forward the original report to the involved officer's assigned district/section/unit commander. After review, the district/section/unit commander will forward the original report to Inspections Section through the affected bureau commander.

c. Keep a copy for the unit files.

7. The investigating supervisor will make a blotter entry describing the incident and action taken.

8. If an officer uses force in addition to chemical irritant, a separate Form 18CI is not required. Route the appropriate report as outlined in Section A.7.

D. Documentation Needed for Each Form:

1. Form 18 (Supervisor's Preliminary Use of Force Investigation):

   a. Taped statement.

   b. Photos.

   c. Medical release (if treated).

   d. Summary of doctor's diagnosis (if treated).

2. Form 18TBF (Use of Taser /Beanbag Shotgun / 40 mm Foam Round):

   a. Taped statement with use of beanbag shotgun and/or the 40 mm foam round.

   b. No taped statement with use of taser.

   c. Photos.

   d. Medical release (if treated).

   e. Summary of doctor's diagnosis (if treated).

3. Form 18C (Use of Canine):

   a. Taped statement.

   b. Photos.

   c. Medical release (if treated).

      d.   Summary of doctor's diagnosis (if treated).

4.   Form 18I (Injury to Prisoner):

      a.   Photos only.

      b.   No taped statement.

5.   Form 18CI (Use of Chemical Irritant):

      a.   No narrative.

      b.   No photos.

      c.   No taped statement.

E.  Priority of Forms:

1.   If more than one act by an individual occurs (e.g., use of force and a macing), only one report is needed.

2.   Listed below is the order in which a report is made, with "a." being the highest priority:

      a.   Use of Force.

           1)   Include canine information, if applicable.

      b.   Taser/Beanbag Shotgun/40mm Foam Round.

           1)   Include canine information, if applicable.

      c.   Canine.

      d.   Injury to Prisoner.

      e.   Chemical Irritant.

## 12.600  PRISONERS: SECURING, HANDLING, AND TRANSPORTING

*References:*

```
Procedure 12.545 - Use of Force
Procedure 12.555 - Arrest/Citation:  Processing of
                   Adult Misdemeanor and Felony
                   Offenders
Procedure 12.610 - Prisoners:  Guarding Hospitalized
Procedure 12.900 - Processing Juvenile Offenders
Procedure 18.120 - Standards for Releasing
                   Information to the News Media
Ohio Revised Code  2933.32 - Body Cavity and Strip
                   Searches; Conducting Unauthorized
                   Search; Failure to Prepare Proper
                   Report
Standards Manual   1.2.4, 41.3.4, 44.2.2, 46.1.4,
                   71.1.1, 71.1.2, 71.1.3, 71.1.4,
                   71.1.5, 71.1.6, 71.1.7, 71.2.1,
                   71.3.1, 71.3.2, 71.3.3, 71.5.1,
                   82.3.6, 82.3.7
```

*Definitions:*

Body Cavity Search - an inspection of the anal or vaginal cavity of a person that is conducted visually, manually, by means of any instrument, apparatus, or object, or in any manner while the person is detained or arrested for the alleged commission of a criminal or traffic offense.

Strip Search - an inspection of the genitalia, buttocks, breasts, or undergarments of a person that is preceded by the removal or rearrangement of some or all of the person's clothing that directly covers the person's genitalia, buttocks, breasts, or undergarments and that is conducted visually, manually, by means of any instrument, apparatus, or object, or in any manner while the person is detained or arrested for the alleged commission of a criminal or traffic offense.

#17

*Policy:*

Arresting officers will immediately transport to University Hospital any prisoner 13 years of age or older who is suspected of ingesting evidence or contraband.  Those under the age of 13 will be transported to Children's Hospital.  In all such cases a supervisor will be notified.

Arresting officers must maintain control of prisoners until relieved by a supervisor, Hamilton County Sheriff, or other law enforcement agency. Immediately notify a supervisor when prisoners have visible or claimed injuries, or when any Hamilton County detention facility refuses admission.

Arresting officers are responsible for minor and adult dependents of physically arrested persons. Physically or mentally impaired adults are examples of adult dependents.  Arrested persons can advise with whom they want their dependents placed.  Record the location of minor or adult dependents in the district or unit blotter.

Call the Hamilton County Department of Human Services when unable to place dependents with responsible adults.

- For minors, call 241-KIDS.

- For dependents 18 and over, call 421-LIFE.

General principles of tort law impose a duty of care on the transporting officer to protect the prisoner from injury.  Officers transporting prisoners will not become involved in any other activity unless there is a clear and grave risk to a third party and the risk to the prisoner is minimal.  Officers should always be aware of intentional diversions that may be used to free a prisoner.

12.600

***Procedure:***

A.  Handcuffing:

   1.  When possible, handcuff all prisoners with their hands behind their back.  Apply handcuffs between the hand and protruding wrist bone with the prisoner's palms facing out.  Have the keyholes facing up.

     a.  Apply handcuffs directly over the skin.  Never apply them over clothing or jewelry.  They should be reasonably snug and double locked.

   2.  When necessary, handcuff physically handicapped, injured, or pregnant prisoners in front.

     a.  Two officers will transport a prisoner handcuffed in front of the body.

   3.  When handcuffing two prisoners together, use the right wrist to right wrist or left wrist to left wrist method.

     a.  Do not handcuff male prisoners to female prisoners or adults to juveniles except in emergency arrest situations.

   4.  Remove handcuffed persons from public view as soon as possible.

   5.  For officer safety, it may be necessary to temporarily handcuff citable prisoners or persons under investigation.

   6.  On a case by case basis, officers are permitted to temporarily remove handcuffs for various reasons:

     a.  Seriously injured and requiring medical treatment.

     b.  Interviewing and processing (prints/DUI)

       1)  Prisoner will be thoroughly searched prior to removal of handcuffs.

12.600

      2)  Two officers will remain with
           prisoner(s) not handcuffed.

7.  When transferring a prisoner from one set of
    handcuffs to another, keep the original
    handcuffs on until placing the next set of
    handcuffs on the prisoner next to the first
    set with the handcuff keyholes accessible.

B.  Prisoner Searches:

1.  Thoroughly search all handcuffed prisoners
    from the rear.

    a.  If possible, have prisoners empty their
        pockets and turn them inside out to avoid
        contacting IV needles or other sharp
        objects.

2.  Transporting officer(s) will conduct an
    additional search of prisoners.

3.  Whenever possible, use female officers to
    search female prisoners and male officers to
    search male prisoners.

    a.  If necessary, handcuff opposite sex
        prisoners and watch them until an officer
        of the same sex arrives to complete a
        detailed search.

    b.  When opposite sex searches must occur,
        limit the search to finding weapons.

        1)  Use the blade edge of the hand.

        2)  Retrieve weapons immediately from any
           body area when there is immediate
           danger.

4.  Strip searches and body cavity searches:

    a.  Perform a strip or body cavity search
        only when there is probable cause to
        believe the prisoner is concealing
        evidence, contraband, or weapons.

12.600

b.  A supervisor must approve and sign a
    Search Authorization (Form 602) before:

    1)  A police officer conducts a strip
        search.

    2)  A search warrant for a body cavity
        search is sought.

c.  Only officers of the same sex will
    conduct strip searches.

d.  Only one officer will conduct a strip
    search.

    1)  Have an officer just outside the view
        of the search in case the searching
        officer needs help.

    2)  The officer conducting the search
        will not, under any circumstances,
        insert their finger or any other
        instrument into a prisoner's orifice
        during the strip search.

    3)  If, while conducting a strip search,
        the officer visually observes what is
        believed to be contraband partially
        protruding from the prisoner's
        orifice (vagina or anal cavity), the
        officer will request that the
        prisoner remove the object.

    4)  If the prisoner refuses to remove the
        object, the officer will not attempt
        to remove it.  A body cavity search
        warrant will be required to recover
        the contraband.

    5)  The officer who observed the
        contraband in a prisoner's orifice
        should immediately end the strip
        search and follow the guidelines for
        a body cavity search.  See Section
        B.4.f. of this procedure.

Rev. 5/00, Replaces 4/99                          5

12.600

e.  After transporting prisoners to the
    Hamilton County Justice Center (HCJC),
    officers will advise the Hamilton County
    Sheriff's Deputies when they believe a
    prisoner is concealing contraband in an
    orifice or other areas of the genitalia.

    1)  Hamilton County Sheriff's Deputies
        maintain a list of offenses for which
        they routinely conduct strip
        searches.

    2)  Division personnel must have an
        approved Form 602 prior to requesting
        Sheriff Deputies to conduct a strip
        search.

f.  After getting a search warrant for a body
    cavity search, respond to University
    Hospital to conduct the actual search.

    1)  University Hospital's policy is to
        perform a body cavity search or
        stomach pumping only for medical
        reasons with the patient's consent.
        The hospital will give the recovered
        evidence to the police if the patient
        abandons it.

    2)  A doctor, registered nurse, or
        practical nurse licensed by the State
        of Ohio must perform the body cavity
        search.  No one is permitted to
        witness the search.

    3)  If the prisoner refuses to allow the
        body cavity search, and for that
        reason the medical professional
        refuses to retrieve the contraband,
        the officer will:

        a)  Notify a supervisor.

        b)  Consider charging the prisoner
            with Tampering With Evidence (ORC
            2921.12(A)(1)) and/or Obstructing
            Official Business (ORC
            2921.31(A)).

12.600

    c) List the medical professional on the Arrest and Investigation Form (Form 527) as a witness to the presence of the contraband if they saw it.

    d) Transport to the appropriate detention facility and advise the processing personnel as to the circumstances surrounding the prisoner.

  4) If the prisoner consents and the medical professional refuses to conduct the body cavity search, notify the Duty Officer or Night Chief for further instructions.

g. Officers transporting prisoners to Juvenile Detention will not attempt to conduct a strip search within that facility.

  1) After transporting prisoners to Juvenile Detention, officers will advise the detention facility employee when they suspect a prisoner is concealing contraband in an orifice or other areas of the genitalia.

  2) The detention facility employee will notify the Supervisor on Duty (SOD), who will respond and make the final decision as to whether to conduct a strip search of the prisoner.

    a) The officer must be able to adequately articulate to the SOD probable cause to justify a strip search.

  3) If the SOD refuses to authorize a requested strip search, the requesting officer will advise an on duty district/section/unit supervisor, who will evaluate the circumstances and complete a Form 17 Incident Report if it is believed the refusal was unwarranted.

        a) The SOD is required to complete an Incident Report to the Juvenile Detention facility superintendent whenever they refuse to conduct a requested strip search.

h. After strip or body cavity searches, the officer who conducted the strip search or authorized the body cavity search must give the person searched a completed copy of the Form 602.

i. Immediately forward the original Form 602 to the Police Chief.

    1) Inspections Unit files the original.

    2) The originating unit files a copy.

5. Persons in custody suspected of swallowing or attempting to swallow evidence or contraband

a. Chemical irritant is the primary response to prevent persons from swallowing evidence or contraband.

    1) The use of choke holds to prevent swallowing of evidence or contraband is strictly prohibited.

b. Immediately transport any subject 13 years of age and older suspected of swallowing evidence or contraband to University Hospital.

    1) University Hospital's policy is to perform a body cavity search or stomach pumping only for medical reasons with the patient's consent. The hospital will give the recovered evidence to the police if the patient abandons it.

        a) If unable to gain consent, a supervisor will determine the proper course of action.

12.600

  c. Immediately transport any persons arrested under 13 of age suspected of swallowing evidence or contraband to Children's Hospital.

    1) Children's Hospital policy is to perform stomach pumping only for medical reasons with or without parental consent.  The hospital will give the recovered evidence to the police if the patient abandons it.

C. Holding/Interviewing Prisoners in Police Facilities:

  1. Do not use police facilities as jails or holding cells.

    a. Use interviewing rooms for processing and interviewing persons or prisoners on official police business.

      1) Never leave prisoners alone.

  2. The district/section or unit officer in charge (OIC) and desk personnel will remain informed about prisoners in their station. They will:

    a. Provide pertinent information when answering phone calls about prisoners in custody, or previously in custody.

      1) Refer to Procedure 18.120, Release of Information and Public Records for guidelines in releasing prisoner information to the public.

      2) When callers need more information, refer them to HCJC Intake or Juvenile Detention.

D. Transporting Prisoners:

  1. All prisoners subject to physical arrest will be transported to the appropriate facility.

Rev. 5/00, Replaces 4/99

9

12.600

    a. Use the transport command (TR) on the MDT and enter the location to where the prisoner is being transported in brackets [ ] not parentheses ( ), and enter the start mileage when beginning transportation. Upon arrival, use the transport complete command (TRC), and enter the ending mileage.

       Example:  TR [HCJC], start mileage 12345
               TRC, end mileage 12348

    b. Receive permission from a supervisor before transporting prisoners to any hospital, or other non-police facility.

    c. Arresting officers involved in a use of force, other than a simple use of chemical irritant, will not transport prisoners who are subjects of the force.

       1) Officers may remove a prisoner to a safe location to prevent an escalation of the incident. Neutral officers will respond and transport the prisoner.

2. When arresting officers cannot transport their own prisoners, they must provide transporting officers the completed paperwork or at least the minimum following information:

    a. Name, badge number, and unit of the arresting officer

    b. Specific charge(s) placed against the prisoner

3. When possible, two officers will transport prisoners incapacitated from intoxication or injury to prevent falls or additional injury.

4. Two officers will transport prisoners on stretchers. The second officer will ride in the rear to monitor the prisoner and to give or summon medical aid if necessary.

12.600

  a. Whenever possible, officers will place the prisoner on their back to avoid positional asphyxiation and/or cocaine psychosis.

5. Never leave prisoners unattended inside vehicles.

6. Search seating areas of transporting vehicles before and after each prisoner transportation.

7. Use marked police vehicles equipped with screens when available.

  a. In vehicles with security screens, transport single prisoners on the right side of the rear seat.

  b. Use the seat belt or lap belt whenever possible.

  c. Engage the rear door and window locking system on vehicles having this option.

  d. Secure sliding partition in vehicles equipped with plexiglas rather than metal mesh dividers.

8. One officer may transport two prisoners provided the vehicle is equipped with a security screen and both prisoners are secured in the rear seat with seat belts.

  a. No more than two prisoners will be transported in any one division vehicle, with the exception of the Personnel Transport Van stored at District One.

9. Do not transport more than one prisoner in a vehicle without a security screen.

  a. When transporting in vehicles without screens, use two officers.  The second officer sits in the rear seat behind the driver with the prisoner to their right.

10. Personnel Transport Van:

    a. Districts/sections/units can borrow the Personnel Transport Van parked in the 14th Street lot behind District One.

        1) Request the keys from a District One shift supervisor.

        2) Make a blotter entry at District One showing the:

            a) Operating officer and unit of assignment.

            b) Date, time, and expected return.

            c) Reason for using the vehicle.

    b. Notify the HCJC when expecting physical arrests numbering 20 or more.

11. Hamilton County Sheriff's Patrol Wagon:

    a. Request the Hamilton County Sheriff's Patrol Wagon in advance when expecting numerous physical arrests at planned events.

        1) Call the HCJC Intake supervisor to request the wagon.

E. Handling or Transferring Prisoners of Other Local Police Agencies:

1. When arresting an individual on a warrant issued by another local police agency, the officer will:

    a. If the warrant was issued by a Hamilton County jurisdiction, except Mayor's Court, and citable, complete a Notice to Appear (Form 314) and cite according to Procedure 12.555, Arrest/Citation: Processing of Adult Misdemeanor and Felony Offenders.

    b. If the warrant is for Mayor's Court, immediately arrange to transfer the prisoner into that agency's custody.

12.600

    c.  If the warrant is not citable, transport
to the HCJC Intake.

    d.  When an officer makes an original
physical arrest and the individual has an
outstanding warrant, list the information
on a Form 527 and contact the appropriate
jurisdiction to send a holder to Intake.

    e.  When arresting an individual on a warrant
issued by an adjoining county,
immediately arrange to transfer the
prisoner into that agency's custody.

       1)  Contact the agency by phone to
confirm the time and place of
transfer.  If possible, arrange to
meet in the field.

       2)  When bringing prisoners into a
Cincinnati police facility to wait
for the other agency, remain with the
prisoner until the other agency takes
custody or until relieved by a
supervisor.

F.  Prisoner Injuries:

   1.  Officers will document prisoner injuries
occurring before police control on a Form
527.
   2.  Per Procedure 12.545, Use of Force, a
supervisor will complete an Injury to
Prisoner (Form 18I) when a prisoner is
injured, not the result of force, while under
or just prior to police control.

G.  Hospitalized Prisoners:

   1.  If not citable, complete a Form 527.  Include
in the "Facts" section:

    a.  The hospital's name.

    b.  A brief description of the injury,
illness, or mental condition.

12.600

    c. A complete description of the prisoner's clothing, and anything else helping to identify or locate the subject in case of escape.

2. When a prisoner is hospitalized at University Hospital:

    a. Notify the University Hospital Security.

        1) Complete holder forms when requested by hospital security.

        2) Write the phone number of Police Communications Section (PCS) on hospital holder forms and the yellow copy of Form 527.

        3) Ask hospital security to notify PCS before discharging the prisoner.

    b. Staple the yellow copy of Form 527 to the top copy of the holder form and request hospital security keep them with the prisoner for the next transporting officer. Hospital holder forms stay at the hospital.

    c. Refer to Procedure 12.610, Prisoners: Guarding Hospitalized, for guidelines in guarding prisoners at University Hospital.

3. When a prisoner is hospitalized at any other hospital:

    a. Notify hospital security.

    b. Request hospital security keep the yellow copy of Form 527 with the prisoner for the next transporting officer.

    c. Write the phone number of PCS on the yellow copy of Form 527.

    d. Ask hospital security to notify PCS before discharging the prisoner.

12.600

4.  Processing Form 527:

    a.  Immediately deliver the Form 527 and complaints/warrants to the Records Section, 824 Broadway, 4th floor.

        1)  Records Section will immediately enter the arrest information into the computer, placing the case on the next available court docket.

           a)  Officers will wait at the Records Section and hand deliver the completed forms to the Hamilton County Clerk's Office.

    b.  For juvenile prisoners, immediately deliver the Form 527 and complaints/warrants to the Juvenile Court Clerk's Office, 2020 Auburn Avenue.

5.  Prisoners released from hospitals.

    a.  PCS will dispatch a uniformed unit from the district where the hospital is located.

        1)  If the prisoner was treated at the emergency room only, PCS will dispatch a uniformed unit from the arresting officer's district/section.

    b.  Transporting officers will:

        1)  Contact hospital security to get the yellow copy of the original Form 527.

        2)  Query the prisoner through RCIC/NCIC.

        3)  Contact the Hamilton County Clerk's Office to check for any new charges filed on the prisoner.

        4)  Contact the Warrant/Identification Unit to determine if the court issued a capias on the prisoner.

           a)  If a capias was issued for the original charge, complete a new Form 527.

12.600

b) Attach the yellow copy of the old Form 527 to the new Form 527.

5) Unless the prisoner has a capias, the only paperwork needed for transportation is the yellow copy of the original Form 527.

6) Handcuff, search, and transport hospitalized prisoners the same as original arrests.

H. Prisoner Escapes:

1. Immediately notify PCS.

2. PCS will make an all county broadcast (ACB) and include the following information:

a. A complete description of the prisoner

b. Method and direction of travel if known

c. Offense the subject was in custody for

d. Prisoner's home address or other possible destination

e. Any other pertinent information

3. Notify a supervisor.

4. The investigating supervisor will notify the involved district/section/unit OIC.  Notify the Night Chief during the night season.

5. The OIC of the involved district/section/unit will submit a Form 17 to the Police Chief detailing the circumstances of all prisoner escapes and attempts.

6. File appropriate charges against the escapee.

I. Transporting Sick, Injured, or Disabled Prisoners.

1. Sick or Injured Prisoners.

12.600

a.  If a prisoner becomes sick or injured
    subsequent to arrest, officers will
    immediately seek medical attention.

b.  Prisoners will remain handcuffed if
    possible.

c.  If possible, transport the prisoner to
    University Hospital.

    1)  Notify a supervisor

d.  If the illness or injury requires EMT or
    paramedics summon the Fire Division to
    render aid and transport the prisoner to
    the hospital.

    1)  Notify a supervisor and another unit
        if transporting unit is one-person

    2)  One officer will remain with the
        prisoner while the other responds to
        the hospital in non-emergency status.

2.  Transporting Physically and Mentally Disabled
    Prisoners.

    a.  Officer will transport physically and
        mentally disabled prisoners using a
        vehicle appropriate for providing the
        necessary care for the prisoner.

    b.  If a patrol vehicle is not appropriate
        consider using the following:

        1) Scout Car.

        2) Prisoner Van.

# MANUAL OF RULES AND REGULATIONS

## AND

## DISCIPLINARY PROCESS

## FOR THE

## CINCINNATI POLICE DIVISION

THIS BOOK IS
THE PROPERTY OF THE
CINCINNATI POLICE DIVISION

*Thomas H. Streicher Jr.*

Thomas H. Streicher, Jr.
Police Chief

C001714

EX. 15

### Cincinnati Police Division Discipline Philosophy

The public trust is formed when the community entrusts the police department to provide service and protection, law and order. The authority to deprive persons of their liberty, serve search and arrest warrants, and investigate persons' activities can be abused. The public trusts its police department to operate within the law. All public employees have an affirmative duty to serve the public well.

### The Purpose of Discipline

A police agency must employ an open, effective and efficient philosophy of discipline. Three factors form the first of two triads that managers must balance to maintain an effective disciplinary system: public trust, the police agency, and the police employee. All employees must be informed, trained, and oriented in the system in order to be accountable to the agency. Positive reinforcement should be employed to the greatest extent possible. The individual who wills to do the right thing, in the right way, receives the greatest reward. Self discipline generates the positive benefits associated with being a member of a professional group: pride, esprit de corps, and high morale.

The vast majority of employees abide by law, policy, procedure, and rule. Most employees will follow the rules when given a clear set of expectations. The nature of police work, in essence, is the application of discretionary judgments, based on community benefit, accumulated expertise, and the values that guide the police profession, to solve a variety of problems. Police work, therefore, is not conducive to the formation of a comprehensive list of permissible and prohibited acts. Managers and supervisors must recognize that training, education, conduct, rewards, and punishments are interrelated, not separate elements.

The public trust is impacted, however slightly, each time a manager adjudicates a complaint investigation or finds that an employee's conduct did not conform to law, policy, procedure, or rule. When an allegation of misconduct is sustained by the Police Division, the corrective or disciplinary action imposed serves three purposes:

- To modify the employee's conduct
- To set expectations for other employees
- To assure the public that the Division strives to maintain the public trust by holding employees accountable

In many cases, the supervisor can convert a negative occurrence into a positive action by using the circumstance attendant to the situation as a training vehicle or exercise. By comparing what the individual did that was less than acceptable with what should have been done, the supervisor is achieving several goals:

- The supervisor fulfills the responsibility to detect errors by subordinates.
- The supervisor brings the conduct to the attention of the subordinate and reinforces the subordinate's awareness that the supervisor cares about how the subordinate performs.

C001715

- The supervisor compares proper and improper methods and techniques and imparts to the subordinate the right way to perform.

It is better to prevent unprofessional conduct than to deal with it after the fact. Managers and supervisors must ensure that values and expectations are reinforced and discussed on a daily basis. Moreover, managers must ensure that their subordinate supervisors are reiterating the organization's philosophy, values, and expectations. Conducting periodic discussions regarding the disciplinary process can be valuable in helping to alleviate employees' anxiety.

## Fairness and Consistency

Fairness and consistency, combined with clear expectations, form the second triad of an effective discipline system. Employees will understand discipline when it is imposed fairly and consistently. However, employees may incorrectly equate fairness and consistency as synonyms; they are not.

*Consistency* within a discipline system means holding every employee equally accountable for unacceptable behavior. Unacceptable behavior for one is unacceptable for all, regardless of rank, status, or tenure.

*Fairness* within a discipline system means understanding the myriad of circumstances that contributed to the misconduct. Thus, disciplinary penalties for various infractions are expressed as ranges so that mitigating factors can be given appropriate consideration.

## Discipline Philosophy

The effectiveness of the discipline system is dependent on the manager's ability to balance the triad of *expectation, fairness, and consistency,* with the triad of *public trust, police agency, and police employee.* An important objective of any discipline system is to make the corrective or disciplinary action fit the conduct. This requires review of five factors: motivation, damage, knowledge, intent, and history, during the penalty assessment phase of the discipline system. Speed and certainty of punishment are critical features for negative consequences to have any beneficial effect as deterrence. Managers must ensure that the discipline process proceeds in a timely manner. Proper case management from investigation to adjudication is important.

The administration of discipline must be accompanied by frequent discussion of values and principles to help employees understand who they are and what they represent.

C001716