UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THE ESTATE OF ROGER OWENSBY JR., et al., | : | Case No: C-1-01-769 |
| Plaintiff | : | Judge Spiegel |
| vs. | : | |
| CITY OF CINCINNATI, et al., | : | |
| Defendants. | : | |

**RESPONSE OF DEFENDANT DAVID HUNTER IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS CITY OF CINCINNATI, ITS CHIEF OF POLICE AND ITS INDIVIDUAL OFFICERS FOR THEIR FAILURE TO PROVIDE CRITICAL MEDICAL CARE**

Now comes the Defendant, individually, by and through counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and hereby request this Court overrule the Plaintiff's Motion For Partial Summary Judgment on the issue of his alleged failure to provide medical care to the decedent Roger Owensby on November 7, 2000. The grounds for this request are set forth in the accompanying memorandum.

RAVERT J. CLARK
Reg No.# 042027
114 E. 8th Street
Suite 400
Cincinnati, OH 45202
513-587-2887
Fax 513-621-2525
for the Defendant David Hunter, Individually

## MEMORANDUM

Facts

On September 27, 2000, Defendant Hunter, along with several other Cincinnati Police Officers were conducting an undercover drug investigation the area of 2092 Seymour Road. During this investigation, Officer Hunter came in literal contact with the man now known as Roger Owensby Jr. Hunter depo. 54-55. Officer Hunter and Mr. Owensby came in contact as a result of the man's interference with the efforts of the officers conducting the undercover drug investigation. Id. Officer Hunter attempted to arrest the man, who pushed Officer Hunter and fled. Id. 56-57, 78. Officer Hunter had direct eye contact with the man during this contact. Id. 86.

On November 7, 2000, Officer Hunter responded to the area of 2092 Seymour Road, in response to request of Officers Hasse and Sellers for a ticket book. Plaintiff Exhibit 112, Cincinnati Police MDT Logging Activity Detail. When Officer Hunter arrived, Officers Jorg, Caton, Sellers, and Hasse were present. After arriving with the ticket book, Officer Hunter saw a man walking up Seymour Avenue he believed to be the same man who had fled from him weeks earlier. Hunter depo. 124. The man crossed the street and entered 2098 Seymour Avenue, a Sunoco Convenience store. Jorg depo. 89-90.

In order to confirm the identity of the man who had entered the Sunoco, Officers Jorg, Caton and Hunter crossed the street and stood outside of the store in a position which allowed them to see the man inside the store. Hunter depo. 131-132. It was from this position Officer Hunter positively identified Mr. Owensby as the man who had fled from him weeks before. Id. 86-87. After Officer Hunter identified Mr. Owensby, Officer Jorg, the senior officer on the scene,

and therefore officer in charge, stepped forward to stop Mr. Owensby as he walked out of the store. Jorg depo. 87, Hunter depo. 126.

As Mr. Owensby walked out of the store, Officers Jorg and Caton stopped and began to question him while Officer Hunter stood off to the side and somewhat behind Jorg and Caton. Jorg depo. 98-99. During this initial period of questioning, Mr. Owensby was polite and cooperative. Jorg depo. 100. After denying he had ever struck a police officer, Officer Hunter stepped forward so Mr. Owensby could see him and asked the last time "you ran from the police?" Hunter depo. 150. After seeing Officer Hunter, Mr. Owensby attempted to flee by running between Officer Jorg and Caton. Jorg depo. 103. Mr. Owensby was taken to the ground by Officers Jorg and Caton. Id. 102-106.

After he went to the ground, Mr. Owensby was laying face down with his hands under him, refusing to be hand cuffed. Jorg Depo. 102-107. During the struggle to place handcuffs on Mr. Owensby, he was maced by Officer Hunter, while other officers utilized pain compliance in an effort to get Mr. Owensby's hands free in order to be hand cuffed. Hunter depo. 171. Following the use of mace by Officer Hunter, officer were able to secure one arm, with the second arm being secured shortly thereafter. Hunter depo. 171-172. Eventually the officers were able to get Mr. Owensby handcuffed. Sellers depo. 49. After being cuffed, Mr. Owensby was lifted up by Officers Jorg and Caton and taken to a City of Golf Manor police cruiser and placed in the back seat. Hunter depo. 175-177.

A supervisor, Sergeant Watts, arrived on the scene in response to a request for a supervisor, and discovered Mr. Owensby was not moving. Caton depo. 18. Officers Caton and Hasse administered CPR and the fire department was called. Caton depo. 140-41. While Officers

Jorg and Caton took Mr. Owensby to the Golf Manor Police Cruiser, Officer Hunter set about gathering his equipment which had come off during the struggle. Hunter depo.173-175. The Cincinnati Fire Department was unable to resuscitate Mr. Owensby, who was pronounced dead at University Hospital. Plaintiff Exhibit E.

Plaintiffs commenced this action pursuant to 42 U.S.C. §1983 alleging, in addition to claims not presented in this motion, the failure of the City of Cincinnati and its police officers to provide adequate medical care to Mr. Owensby following his arrest. It is on this claim Plaintiff seeks summary judgment. Officer Hunter provides this Memorandum in Opposition to Plaintiffs motion in his individual capacity. An answer in Officer Hunters capacity as a Cincinnati Police Officer is to be filed by counsel for the City.

Standard of Review

"Summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable juror could return a verdict for the non-moving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). "Summary judgment should be denied when the evidence presents a sufficient disagreement to require submission to a jury." Anderson, 477 U.S. at 251-52. The moving party bears the burden of showing the absence of any genuine issue of material fact; all evidence must be viewed in a light most favorable to the opposing party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

In order to prevail on a claim pursuant to §1983 against Officer Hunter individually, Plaintiff must establish (1) a constitutional violation occurred, and (2) the violation was the result of Officer Hunters deliberate indifference to known or obvious consequences. Albright v. Oliver, 510 U.S. 266 (1994); Graham v. Connor, 490 U.S. 386 (1989).

Plaintiff has cited no authority to distinguish between the individual liability and the liability of Officer Hunter in his capacity as a Cincinnati Police Officer. In light of the record and arguments presented, as there is no liability in his capacity as a police officer, there cannot be liability in his individual capacity.

Plaintiff urges this Court to review the case under the Fourth Amendment "objective reasonableness" test rather than the appropriate Fourteenth Amendment "deliberate indifference" standard. Doc. 88. The cases cited by Plaintiff in support of this argument are factually different and present hybrid issues combining reasonable seizure and medical care questions. Thus Plaintiffs reliance on Spurlock v. Satterfield, 167 F.3d 995 n.19 (1999) is misplaced.

Spurlock was a malicious prosecution case with allegations of fabricated evidence resulting in the wrongful conviction of the accused. This fact pattern, which presents a "seizure" based upon fabricated evidence, by definition requires an unreasonable seizure. In the Spurlock context, the unreasonable seizure created by the "malicious prosecution" is best analyzed under the "objective reasonableness" standard. The facts of Spurlock however, are the not the facts presented in the instant case.

Plaintiff ask this Court to extend this Fourth Amendment analysis to the current case which has no Fourth Amendment implications. As Plaintiffs motion is presented, the basis of the motion has nothing to do with the "seizure" of Mr. Owensby, but rather his medical treatment or lack there of, following his seizure. Consequently the Court should proceed with the analysis under the Fourteenth Amendments' "deliberate indifference" standard.

Applicable Law and Analysis

The general right of prisoners to receive medical care was recognized in Estelle v.

Gamble, 429 U.S. 97, 104 (1976). In establishing a constitutional right to medical care for pretrial detainees pursuant to the Due Process clause of the Fourteenth Amendment, the United States Supreme Court set an extremely high burden of proof which Plaintiff cannot overcome. Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979); City of Revere v. Mass Gen. Hosp., 463 U.S. 239, 244 (1983).

The Sixth Circuit analysis of the issues presented in the instant motion is made under the Fourteenth Amendment, not the Fourth Amendment as argued by the Plaintiff. "Where the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness anyone who is incarcerated...has the **due process right** to adequate medical care."(Emphasis added.) Fitzke v. Shappell, 468 F.2d 1072, 1076 (6th Cir. 1972). The right to medical care is only violated by "deliberate indifference to **serious medical needs** of prisoners." (Emphasis added.) Estelle v. Gamble, 429 U.S. at 104. The medical need at issue, when viewed objectively, must be "sufficiently serious". Farmer v. Brennan, 511 U.S. 825, 834 (1994).

The Farmer court provides the frame work within which the instant motion must be analyzed. In an effort to provide guidance in evaluating such claims, Farmer teaches the reviewing court must determine the government must first know of the risk and then disregard it. Farmer, 511 U.S. at 838. Just a short time after Farmer, the United States Supreme Court, stated, "[d]eliberate indifference is a **stringent standard** requiring proof a municipal actor disregarded a known or obvious consequence of his actions." (Emphasis added). Board of County Comm. of Bryan County v. Brown, 117 S.Ct. 1382, 1391 (1997). This subjective test establishes a very high level of proof Plaintiff must meet in order to prevail. The record, however, does not support such a finding as to Officer Hunter individually.

6

Although replete with characterizations, opinion, and conclusions, Plaintiff's Motion fails to establish Officer Hunter had acknowledge of the need for *serious* medical care on behalf of Mr. Owensby. While the record contains reference to "bleeding" and the presence of "blood", the only visible signs of trauma are all consistent with minor abrasions to Mr. Owensby's face and forearm. <u>Schultz depo</u>. 148. The abrasion received during Mr. Owensbys' resisting arrest are not injuries requiring immediate medical attention. <u>Id</u>. Moreover, the use of mace, in and of itself is not a situation typically requiring serious medical treatment and intervention, as Cincinnati Police Division policy required a person being maced to be provided with fresh air and water. <u>Hunter depo</u>. 177.

Plaintiff has failed to establish Officer Hunter knew Mr. Owensby was seriously injured and in need of medical care and then disregarded the need. Although Plaintiff expends significant effort highlighting the approximate 6 minute delay before any medical attention was provided, this reliance is misplaced, as the delay was reasonable in light of the information available to Officer Hunter regarding Mr. Owensby's medical condition. "An officers failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot be condemned as the infliction of a constitutional violation." <u>Farmer</u>, 511 U.S. at 838.

<u>Officer Hunter Was Acting Pursuant to His Understanding of City of Cincinnati Police Division Policy and Procedure</u>.

Officer Hunter is not liable in his individual capacity because he was acting pursuant to his understanding of Police Division policy and procedure.

> Since the Supreme Court's decision in <u>Monnell v. Department of Social Services</u>, 436 U.S. 658, 56 LED 2d 611, 98 S.Ct. 2018 (1978), municipalities can be held liable under section 1983 for employees' actions taken pursuant to municipal policy. After <u>Monnell</u> the interests of a municipality and its employee as defendants in a section 1983 action are in conflict. (Citations omitted). A

> municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be pursuant to municipal policy. The employee, by contrast, may partially or completely avoid liability by showing he was acting within the scope of his official duties. If he can show that his actions were pursuant to an official policy, he can at least shift part of his liability to the municipality. If he is successful in asserting a good faith immunity defense, the municipality may be wholly liable because it cannot assert the good faith immunity of its employees as a defense to a section 1983 action. <u>Owen v. City of Independence</u>, 445 U.S. 622, 100 S.Ct. 1398 (1980).

There is a material question of fact as to whose responsibility it was to provide medical care for Mr. Owensby once he was placed in the Golf Manor cruiser, as this belief relates to the deliberate indifference standard. Plaintiff acknowledges this confusion in its Motion seeking Partial Summary Judgment Against the Golf Manor Defendants. Doc. 87, p. 25.

There is a demonstrated lack of understanding regarding the responsibilities imposed under the Mutual Aid agreement. The Golf Manor officers clearly believed since Mr. Owensby was arrested by Cincinnati Police, Cincinnati Police were responsible for Mr. Owensby's medical care. <u>Heiland depo</u>. 93-97, <u>Campbell depo</u>. 39. While Cincinnati officers believed the responsibility for medical care was the responsibility of the officer whose car the suspect was placed in. <u>Brazille depo</u>. 59, <u>Hunter depo</u>. 190. Officer Hunter testified he believed once Mr. Owensby was placed in the Golf Manor police car, the Golf Manor officers became responsible for any medical attention Mr. Owensby may need. <u>Hunter depo</u>. 189.

These confused beliefs result not from deliberate indifference, but clearly from the officers improper training. Whether this failure to properly train officers is "deliberate indifference" by the municipality involved is a question beyond the scope of this memorandum. In the absence of the required showing of deliberate indifference to Mr. Owensbys' medical condition by Officer Hunter, who then disregarded his condition, Plaintiff is not entitled to judgment against Mr.

Hunter individually. Officer Hunter was not deliberately indifferent, but rather operating under the mistaken belief Golf Manor was responsible for Mr. Owensbys care and any medical attention. Plaintiff has failed to establish his entitlement as a matter of law against Officer Hunter in his individual capacity.

There also exist a question of fact regarding the proper interpretation and application and the Cincinnati Police Division's Use of Force policy in effect at the time. Plaintiff Exhibit 60, Cincinnati Police Procedure 12.545. In short, at what point, following the use of force does medical attention to the recipient of the force become necessary? The answer purportedly provided by Policy 12.545, reflects the inadequate training received by the Cincinnati Officers.

> Following the use if force resulting in a citizens injury, officers will ensure appropriate first aid is rendered immediately once the incident scene is *stabilized*.

Plaintiff Exhibit 60, p.9. (Emphasis added).

There is a question of material fact as to the definition of a "stabilized" scene, which, by the terms of the policy, activates the officers responsibility to provide medical care. While Officers Hunter and Hasse believed the scene was stabilized, Officers Jorg (the officer in charge), Caton, and Spellen did not believe the scene was stabilized during the time Mr. Owensby was unattended in the Golf Manor Cruiser. Hasse depo. 23, Hunter depo. 198, Spellen depo. 80, Jorg depo. 216, 223, Caton depo. 179, 233-234. The fundamental breakdown in training on "scene stabilization" is demonstrated by the testimony of Police Chief Streicher.

Chief Streicher is unable and his inability to reconcile the confusion created between scene stabilization and providing medical care. Streicher depo. 128-142. Additional confusion is provided by the testimony of Officer Jorg who was under the belief Officer Hunter was not permitted to provide medical care to Mr. Owensby as a result of being one of the officers involved

in the use of force incident. <u>Jorg depo</u>. 205. Officer Hunter, functioning in a situation when has not been adequately trained to discharge is obligations as a police officer, acted under policies of the Cincinnati Police Division, as he understood and interpreted them, **not** with deliberate indifference to the medical needs of Mr. Owensby.

<u>Conclusion</u>

When all inferences and evidence are construed in favor of Officer Hunter, the Plaintiff has not satisfied his burden of persuasion by the quantum of proof required by <u>Farmer</u>, and therefore is not entitled to judgment. The record fails to establish Officer Hunter knew of the severity of Mr. Owensbys' medical condition and then disregarded this condition. Moreover, at all times Officer Hunter acted in conformity with his understanding of then existing policies and procedures put in place by the City of Cincinnati Police Division. For these reasons, Defendant David Hunter, in his individual capacity, request this Court to over rule Plaintiffs' Motion for Partial Summary Judgement on the issue of failing to provide adequate medical care.

               Respectfully submitted,

               /s/ <u>Ravert J. Clark</u>
               Ravert J. Clark (0042027)
               Attorney for Defendant
               David Hunter, Individually
               114 E. 8th Street
               Suite 400
               Cincinnati, OH  45202
               (513)587-2887
               Fax 513-621-2525
               Email: notguilty14@aol.com

## CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing *RESPONSE OF DEFENDANT DAVID HUNTER IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS CITY OF CINCINNATI, ITS CHIEF OF POLICE AND ITS INDIVIDUAL OFFICERS FOR THEIR FAILURE TO PROVIDE CRITICAL MEDICAL CARE*, was electronically filed on March 3, 2004. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system

/s/ Ravert J. Clark