2000 U.S. Dist. LEXIS 19563, *

LEXSEE 2000 U.S. DIST. LEXIS 19563

**TRI-COUNTY PAVING, INC., Plaintiff, v. ASHE COUNTY and ASHE COUNTY BOARD OF COMMISSIONERS, Defendants.**

5:99CV105-V

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA, STATESVILLE DIVISION

*2000 U.S. Dist. LEXIS 19563*

**October 5, 2000, Decided**

**DISPOSITION:** [*1] "Defendants' Motion for Protective Order" (document # 32) and "...Motion to Have 'Exhibit A' to Defendants' Brief in Support ... Filed Under Seal" (document # 39) DENIED.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** For TRI-COUNTY PAVING, INC., plaintiff: Stephen R. Berlin, Donald M. Nielsen, Kilpatrick Stockton LLP, Winston-Salem, NC USA.

For ASHE COUNTY, ASHE COUNTY BOARD OF COMMISSIONERS, defendants: James R. Morgan, Jr., Womble, Carlyle, Sandridge & Rice, Winston-Salem, NC USA.

For ASHE COUNTY, ASHE COUNTY BOARD OF COMMISSIONERS, defendants: John T. Kilby, Kilby, Hodges & Hurley, Jefferson, NC USA.

**JUDGES:** CARL HORN, III, Chief U.S. Magistrate Judge.

**OPINIONBY:** CARL HORN, III

**OPINION:**

### MEMORANDUM AND ORDER

THIS MATTER is before the Court on "Defendants' Motion For Protective Order" (document # 32) and "Defendants' Brief in Support..." (document # 33), both filed August 18, 2000. "Plaintiff's Opposition ..." (document # 37) was filed September 21, 2000. On October 3, 2000, the Defendants filed their "...Reply..." (document # 40) and a "...Motion to Have 'Exhibit A' to Defendants' Brief in Support ... Filed Under Seal" (document # 39).

This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 [*2] (b)(1)(B), and these motions are now ripe for disposition.

Having carefully reviewed the record, arguments of counsel, and applicable authority, the Court will deny Defendants' motions.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Tri-County Paving, Inc. ("Tri-County") alleges that on October 19, 1998, Defendants Ashe County ("the County") and Ashe County Board of Commissioners' ("the Commissioners") improperly refused to issue a building permit to the Plaintiff for construction of an asphalt plant, and improperly enacted a one-year, county-wide moratorium on the construction of asphalt plants. Plaintiff filed this action pursuant to 42 U.S.C. § 1983 on July 13, 1999, alleging violations of its constitutional rights.

Prior to the expiration of the moratorium, in October 1999, the Defendants sought advice from Attorney Roddey Ligon of Womble, Carlyle, Sandridge & Rice, P.L.L.C., Winston-Salem, North Carolina, as to the language and proper procedure prior to enacting a permanent ban on asphalt plants. On October 27, 1999, Mr. Ligon submitted a two-page legal memorandum ("memorandum") on these subjects to Mr. James R. Morgan, Jr., also of Womble, [*3] Carlyle, Sandridge & Rice, P.L.L.C. It is the alleged confidentiality of this legal memorandum -- specifically, whether the Defendants have waived any attorney work product

privilege to which they might otherwise be entitled -- which is the subject of both of the instant motions.

On November 1, 1999, at a public meeting attended by the Plaintiff's principal shareholders and officers, and others, the Commissioners conducted a "First Reading of Polluting Industries Development Ordinance." Prior to the meeting, a copy of Mr. Ligon's legal memorandum was given to each Commissioner and other county staff. During the meeting, the memorandum was publicly discussed, culminating with a motion to "include all suggestions as made by Mr. Ligon" in the proposed ordinance, which was subsequently enacted. In a front page article appearing in the November 4, 1999 edition of the local newspaper, The Mountain Times, County Attorney John Kilby was quoted as saying, "These are not major changes ... I would certainly hold Mr. Ligon's comments in high regard."

The Plaintiff alleges that the day after the public meeting, on November 2, 1999, two of its officers, Mr. Leonard Jordan and Mr. Lucian Jordan, [*4] went to the Ashe County offices during regular business hours; that they requested copies of various documents from the preceding Commissioners' meeting; and that a County employee readily gave them a copy of Mr. Ligon's legal memorandum. The Plaintiff alleges that the memorandum did not appear to be kept in any confidential place or manner, was provided without caution or qualification, and was not marked with any designation indicating that it was confidential or "attorney work product."

The Defendants deny that the legal memorandum was properly given to the Plaintiff's agents, arguing that the memorandum was either given knowingly and wrongfully, or accidentally, by a County employee. However, the Defendants have failed to identify any precautions taken to prevent disclosure of the legal memorandum or otherwise to treat it as confidential attorney work product.

Furthermore, on July 6, 2000, the Plaintiff produced the legal memorandum in response to the Defendants' discovery. Even then, only after the Plaintiff asked the Defendants to admit or deny the authenticity of the document they produced did the Defendants file the instant Motion For Protective Order on August 18, 2000. [*5]

Indeed, even in its prosecution of the instant motion, the Defendants have failed to treat the legal memorandum with the confidentiality to which they argue it is entitled. Rather, Defendants attached an unredacted copy of the legal memorandum to their "Brief in Support..." (document # 33), which was not filed under seal or in any other way designed to protect it from disclosure -- resulting, as Plaintiff notes, in the legal memorandum being docketed and published on the Western District of North Carolina's website for all the world to see.

## II. DISCUSSION

### A. Standard of Review

Rule 26(c) of the Rules of Civil Procedure provides:

> Protective Orders. Upon motion by a party ... and for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... (1) that the disclosure or discovery not be had; ... (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters; ... or (7) that a trade secret or other confidential research, development, or commercial information not be revealed [*6] or be revealed only in a designated way...

Normally, "an order [granting or denying a Rule 26(c) motion for a protective order] is committed to the discretion of the trial court and will not be disturbed on appeal unless the court has abused its discretion ... [and upon] ... a clear showing ... [of] substantial prejudice." *M & M Medical Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 163 (4th Cir. 1992). Accord *In re Wilson*, 149 F.3d 249, 252 (4th Cir. 1998); and *Ardrey v. United Parcel Serv.*, 798 F.2d 679, 682 (4th Cir. 1986). See also *Herbert v. Lando*, 441 U.S. 153, 177, 60 L. Ed. 2d 115, 99 S. Ct. 1635 (1979) ("judges should not hesitate to exercise appropriate control over the discovery process" and "the rules of discovery are to be accorded broad and liberal construction"), citing *Hickman v. Taylor*, 329 U.S. 495, 507, 91 L. Ed. 451, 67 S. Ct. 385 (1947).

However, regarding cases such as this, where work product doctrine is raised, the Fourth Circuit "review[s] the district court's decision that certain documents are subject to privilege de novo, since it [*7] involves a mixed question of law and fact." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir.), cert. denied, 528 U.S. 891, 120 S. Ct. 215, 145 L. Ed. 2d 181 (1999). Accord *In re Grand Jury Proceedings*, 33 F.3d 342, 353 (4th Cir. 1994).

### B. The Work Product Privilege

The work-product privilege is intended to prevent a

Case 1:01-cv-00769-SAS   Document 108-2   Filed 03/11/2004   Page 3 of 5

Page 3
2000 U.S. Dist. LEXIS 19563, *

litigant from taking a free ride on the research and thinking of his opponent's lawyer and to avoid the resulting deterrent to a lawyer's committing his thoughts to paper. See, e.g., *United States v. Nobles, 422 U.S. 225, 236-39, 45 L. Ed. 2d 141, 95 S. Ct. 2160 (1975);* and *Taylor, 329 U.S. at 510-11.*

As the Fourth Circuit described the work product doctrine most recently:

> Under the work product rule, codified in *Fed. R. Civ. P. 26(b)(3)*, an attorney is not required to divulge, by discovery or otherwise, facts developed by his efforts in preparation of the case or opinions he has formed about any phase of the litigation ... Fact work product is discoverable only upon a showing of both a substantial need and an inability to secure the substantial equivalent of the [*8] materials by alternate means without undue hardship. Opinion work product is even more carefully protected, since it represents the thoughts and impressions of the attorney. ... an attorney's thoughts are inviolate, ... and courts should proceed cautiously when requested to adopt a rule that would have an inhibitive effect on an attorney's freedom to express and record his mental impressions and opinions without fear of having these impressions and opinions used against the client. As a result, opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.

*Chaudhry, 174 F.3d at 403* (internal citations omitted) (emphasis added). Accord *Grand Jury, 33 F.3d at 348;* and *In re Doe, 662 F.2d 1073, 1077-80 (4th Cir. 1981).*

In this case, the subject legal memorandum was clearly prepared in anticipation of on-going litigation. The memorandum also clearly includes Mr. Ligon's "opinions formed about" the ongoing dispute with the Plaintiff. Therefore, absent an exception, the memorandum is attorney work product protected from compelled disclosure. Accord *Chaudhry, 174 F.3d at 403.* [*9]

The Supreme Court has also made it clear, however, that privileges derived from the work-product doctrine are not absolute and may be waived. *Nobles, 422 U.S. at 239.* Among the factors to be considered in determining whether a party has waived its work product privilege n1 through disclosure to the opposing party are the following:

1. The reasonableness of the precautions taken to prevent disclosure in view of the extent of document production;

2. The number of disclosures;

3. The extent of the disclosure;

4. Any delay and measures taken to rectify the disclosures; and

5. Whether the overriding interests of justice would or would not be served by relieving a party of its error.

*Parkway Gallery v. Kittinger/Pennsylvania House Group, Inc., 116 F.R.D. 46, 50 (M.D.N.C. 1987),* affirmed, *878 F.2d 801 (4th Cir. 1989).* Accord *In Re Grand Jury Investigation, 142 F.R.D. 276, 279 (M.D.N.C. 1992); Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 104 F.R.D. 103, 105 (S.D.N.Y. 1985);* and *In re Subpoenas Duces Tecum, 238 U.S. App. D.C. 221, 738 F.2d 1367 (D.C.Cir. 1984).* [*10]

> n1 Although the Defendants have not raised attorney client privilege, in the context of inadvertent disclosure to an adversary in litigation, the analysis of waiver is the same for both attorney client privilege and work product privilege. See *IBM v. United States, 37 Fed. Cl. 599, 601 (1997).*

Consideration of these factors in this case can lead to only one conclusion: the Defendants have waived any work product privilege to which the legal memorandum might otherwise be entitled. Defendants point to no precautions taken to prevent disclosure of the memorandum (inadvertent or otherwise), nor to any policy or procedure that was in place to prevent such disclosure. Indeed, the Defendants and their agents made public comments about their reliance on the memorandum which were further publicized in reasonably foreseeable news coverage and, the next day, a County employee apparently gave the document to Plaintiff's principals pursuant to a simple "over the counter" request.

Applying the second factor [*11] (the number of inadvertent disclosures), whatever the precise number of disclosure incidents, it is undeniable that hundreds and

perhaps even thousands of individuals have read comments on the legal memorandum in the media and/or read the legal memorandum itself. Thus, irrespective of the precise "number" of disclosure incidents, that the scope and breadth of public disclosure has been substantial is undeniable.

In summary, the contents of the subject legal memorandum have already been widely disclosed at a public hearing and in media coverage of the hearing -- in spite of the fact that the Commissioners could have discussed their attorney's advice and confidential work product in a closed session. See, e.g., *News and Observer Publishing Co. v. Interim Board of Education, 29 N.C. App. 37, 47, 223 S.E.2d 580, 587 (1976)* (governmental body may hold closed meeting to receive advice from its attorney). Instead, the Defendants elected to air their reliance on Mr. Ligon's advice publicly as evidenced, inter alia, by the County Attorney's quote in the newspaper. Nor were precautions taken thereafter to protect the confidentiality of the legal memorandum which [*12] was first produced without condition or qualification to the Plaintiff's principals by a County employee and filed in this Court in a manner resulting in its secondary publication on the world wide web.

In short, although the legal memorandum in question was certainly attorney work product when first prepared and tendered, the Defendants' use of that memorandum -- and the corresponding absence of indicia of confidentiality -- constitutes waiver of any protection or privilege to which it would have otherwise been entitled. For the same reasons, Defendants' belated motion to seal the legal memorandum, initially appended to their public brief as an unsealed exhibit, must also be denied.

### III. ORDER

**NOW THEREFORE, IT IS ORDERED:**

1. "Defendants' Motion for Protective Order" (document # 32) and "...Motion to Have 'Exhibit A' to Defendants' Brief in Support ... Filed Under Seal" (document # 39) are **DENIED**.

2. The parties shall bear their own costs.

3. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties; and to the Honorable Richard L. Voorhees.

**SO ORDERED**, this 5th day of October, 2000.

**CARL HORN, III**

**Chief U.S. [*13]  Magistrate Judge**