# Pre-Disciplinary Hearing





## Police Officer Victor Spellen
Internal Investigations Section
Case # 00248

Hearing Officer:
Captain Andrew G. Raabe
Hearing Coordinator:
Sergeant Maris Herold, Sergeant Anthony Carter, Internal Investigations Section

Exh. 27
FOP COPY

# POLICE OFFICER VICTOR SPELLEN
## TABLE OF CONTENTS

TAB A    CHARGE SHEET

TAB B    FORM 17/Request for Pre-Disciplinary Hearing

TAB C    IIS INVESTIGATION

TAB D    PERFORMANCE EVALUATIONS

TAB E    ESL ENTRIES AND DISCIPLINARY HISTORY


**ATTACHMENT (OMI INVESTIGATION)**



City of Cincinnati
Police Department

Colonel Thomas H. Streicher, Jr.                                    11-07-02

SIR:            The following charge(s) are preferred

AGAINST:        Police Officer Victor Spellen
ASSIGNED TO:    Telephone Crime Reporting Unit

CHARGE(S):      Neglect of Duty and Dishonesty

SPECIFICATION(S): Violation of Rules 2.12 and 5.01 of the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Division.

**SPECIFICATION I:**

Members of the Homicide Unit interviewed Officer Spellen (P862) on two separate occasions. During the interviews Officer Spellen demonstrated a "neck hold" that Officer Jorg demonstrated to Sergeant Watts. When Officer Spellen was summoned to testify to what he observed at 2098 Seymour Avenue on November 7, 2000, he demonstrated a different hold. Officer Spellen admitted he intentionally altered this hold in court to favor Officer Jorg.

Officer Spellen's actions are in violation of Rule 5.01 of the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Division.

Rule 5.01    No member shall knowingly state, enter, or cause to be entered on any official document, any inaccurate, false, incomplete, misleading, or improper information.

**Specification II (OMI)**

The allegation that on November 7, 2000, Officer Spellen observed a medical injury to Mr. Owensby and rendered no appropriate first aid immediately once the incident scene is stabilized is sustained. Officer Spellen's action violated CPD Procedure Manual Section 12.545, Use of Force, and the Manual of Rules and Regulations and Disciplinary Process, Section Two, 2.12.

Rule 2.12    Members are responsible for insuring the safety and welfare of persons and their personal property when transporting or having custody of persons who are sick, injured, arrested, or incapacitated in any way.

Form 36
IIS Case #00248

City of Cincinnati
Police Department

Colonel Thomas H. Streicher, Jr.                                                11-01-02

SIR:            The following charge(s) are preferred

AGAINST:        Police Officer Victor Spellen
ASSIGNED TO:    Telephone Crime Reporting Unit

CHARGE(S):      Failure of Neglect of Duty and Dishonesty

SPECIFICATION(S): Violation of Rules 2.12 and 5.01 of the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Division.

## SPECIFICATION I:

Members of the Homicide Unit interviewed Officer Spellen (P862) on two separate occasions. During the interviews Officer Spellen demonstrated a "neck hold" that Officer Jorg demonstrated to Sergeant Watts. When Officer Spellen was summoned to testify to what he observed at 2098 Seymour Avenue on November 7, 2000 he demonstrated a different hold. Officer Spellen admitted he intentionally altered this hold in court to favor Officer Jorg.

Officer Spellen's actions are in violation of Rule 5.01 of the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Division.

Rule 5.01    No member shall knowingly state, enter, or cause to be entered on any official document, any inaccurate, false, incomplete, misleading, or improper information.

## Specification II (OMI)

The allegation that on November 7, 2002, Officer Spellen observed a medical injury to Mr. Owensby and rendered no appropriate first aid immediately once the incident scene is stabilized is sustained. Officer Spellen's action violated CPD Procedure Manual Section 12.545, Use of Force, and the Manual of Rules and Regulations and Disciplinary Process, Section Two, 2.12.

Rule 2.12    Members are responsible for insuring the safety and welfare of persons and their personal property when transporting or having custody of persons who are sick, injured, arrested, or incapacitated in any way.

Form 36
IIS Case #00248

Procedure 12.545

>Following any use of force resulting in a citizen's injury, officers will ensure appropriate first aid is rendered immediately once the incident scene is stabilized.

A Pre-Disciplinary Hearing will be convened before Captain Andrew G. Raabe, Department Hearing Officer, on November 8, 2002, at 1000 hours at the Internal Investigations Section Conference Room, 801B West Eighth Street, Suite 502.

You should notify any witnesses to appear in your behalf. You are entitled to be represented by legal counsel, or in lieu thereof, you are encouraged to select a member of the Department to accompany you and represent you as outlined in Rule 9.14 of the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Department.

_____
Internal Investigations Section Commander

*****************************************************************

Sergeant Maris Herold served the forgoing notice of charge(s) on Police Officer Victor Spellen on November 1, 2002.

_____      _____
Serving Officer Signature           Employee Signature

Witnessed by:

_____      _____
Witness Signature                  Printed Name and Rank

SIR: The above charge(s) are prejudicial to the good order and discipline of the police service and are respectfully referred to you for disposition. A copy hereof has been delivered to the accused.

_____
Police Chief

Form 36
rev 3/94

Form 36
IIS Case #00248

# City of Cincinnati



Interdepartmental
Correspondence Sheet

Date  12/10/02

To        Colonel Thomas H. Streicher, Jr., Police Chief

From      Captain Andrew G. Raabe, District Three Commander

Copies to

Subject   **Pre-Disciplinary Hearing – Police Officer Victor Spellen**

---

On Tuesday November 19, 2002, at 1330 hours, Captain Andrew G. Raabe conducted a pre-disciplinary hearing on the charges of Dishonesty and Neglect of Duty placed by the Internal Investigations Section and Office of Municipal Investigations against Police Officer Victor Spellen of Telephone Crime Reporting Unit. Officer Spellen is charged with violations of sections 5.01, and 2.12 of the manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Department.

## REPRESENTATION:

Mr. Donald Hardin and Specialist Scotty Johnson of Fraternal Order of Police Lodge #69, and Sentinel Police Association represented Officer Spellen at the hearing. Also present were Sergeants Maris Herold and Anthony Carter of Internal Investigations Unit, and Mr. John Plahovinsk from the Office of Municipal Investigations.

## SPECIFICATION I:

Members of the Homicide Unit interviewed Officer Spellen (P862) on two separate occasions. During the interviews Officer Spellen demonstrated a "neck hold" that he saw Officer Jorg demonstrate to Sergeant Watts. When Officer Spellen was summoned to testify, in Officer Jorg's criminal trial, to what he observed at 2098 Seymour Avenue on November 7, 2000, he demonstrated a different hold. Officer Spellen admitted he intentionally altered this demonstrated hold in court to favor Officer Jorg.

Officer Spellen's actions are in violation of section 5.01 of the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Division.

5.01    No member shall knowingly state, enter, or cause to be entered on any official document, any inaccurate, false, incomplete, misleading, or improper information.

## Specification II

On November 7, 2000, Officer Spellen observed an injury to Mr. Owensby and rendered no appropriate first aid immediately once the incident scene was stabilized. Officer Spellen's action violated Procedure 12.545 Use of Force and section 2.12 of the Manual of Rules and Regulations and Disciplinary Process.

2.12   Members are responsible for insuring the safety and welfare of persons and their personal property when transporting or having custody of persons who are sick, injured, arrested, or incapacitated in any way.

Procedure 12.545 Use of Force

Following any use of force resulting in a citizen's injury, officers will ensure appropriate first aid is rendered immediately once the incident scene is stabilized.

### The following is a summary of information presented in support of Specification I:

- The transcript of Officer Spellen's IIS interview was submitted as evidence. Officer Spellen admitted, during his last interview with IIS, that he lied during his court testimony by altering his demonstration of the neck hold he had seen Officer Jorg demonstrate to Sergeant Watts on the night of the incident. IIS interviews confirm that Officer Spellen admitted to lying for the purpose of making the hold look less threatening.

### The following is a summary of information submitted as rebuttal by Mr. Hardin in reference to Specification I:

- Mr. Hardin presented that Officer Spellen did admit to IIS during his interview that he lied in court when he demonstrated a different hold than what he had previously testified to during his CIS interview and during his Grand Jury testimony. Mr. Hardin also does not dispute the fact that Officer Spellen admitted to demonstrating the hold he saw Officer Jorg demonstrate differently so that it would appear less threatening. However, Mr. Hardin stated that this occurred because sometime between the time that Officer Spellen testified to the Grand Jury, and the time he testified at the trail, he knew that his statement about the neck hold was incorrect. The officer had begun to doubt what he saw and heard on that night. Unfortunately, rather then advising the prosecutor or just coming out and saying that in court, Officer Spellen instead demonstrated a different hold that he felt more closely resembled what he thought he had observed.

- Mr. Harden offered that in actuality Officer Spellen did not know if he was demonstrating something different or not because he was really unsure of what he observed that night. Mr. Hardin added that Officer Spellen should have just admitted that from the beginning, but he did not. Mr. Hardin also offered that Officer Spellen answered IIS' questions truthfully and that he fully admitted what he had done. However, Mr. Hardin feels that this was more a

2

case of a young officer who was confused and unsure of what occurred or what he observed than a case of willful lying or cover-up.

### The following mitigation was offered by Specialist Johnson in reference to Specification I:

- Specialist Johnson stated that he wished it to be taken into account, the atmosphere within the Police Department two years ago when this occurred. There were fund raisers to try to help these officers out and the District Commander threatened to put up tally sheets to track which officers gave money to support the defense of the officers involved in this incident. Specialist Johnson felt this caused a lot of stress on a young officer such as Officer Spellen to do whatever he could to help out. Specialist Johnson felt that any contradictory testimony in this case was contributed to by the atmosphere created within the Police Department and, while Officer Spellen may have been caught up in this, he did not intentionally attempt to be dishonest.

### Conclusion Specification I:

Information presented during the hearing and courtroom transcripts and statements submitted as part of the overall investigation, support Specification I.

### Finding Specification I:

There is a finding of sustained for Specification I.

### The following is a summary of information presented in support of Specification II:

- Officer Spellen can be heard, on the videotape from the MVR in Officer Spellen's police car for November 7, 2000, telling Officer Brazile (after they looked into the window of the Golf Manor police car), "It looks like he is hurting a little bit." Officer Brazile replied, "A lot of bit." This indicates Officer Spellen knew Mr. Owensby was injured.

- Officer Spellen's told CIS that he heard Officer Jorg tell Sergeant Watts that Officer Jorg got the blood on his sleeve from the suspect when they tackled him to the ground. Officer Spellen told CIS that when he looked into the Golf Manor police car, he saw Mr. Owensby slumped over in the seat, not saying anything and not moving.

- After Officers Spellen and Brazil looked into the Golf Manor police car and made their comments, they both went back to their cars and left the scene. These actions by the officers indicate the scene was stable and there was opportunity to call for or render medical aid to Mr. Owensby prior to the supervisors making the discovery.

3

- Officer Spellen's told IIS the reason he went back to his car and left the scene was so he could be available for radio runs. This is evidence that the scene was stable enough for officers to have the opportunity to check on Mr. Owensby and Officer Spellen's priority should have been Mr. Owensby.

### The following is a summary of information presented as rebuttal by Mr. Hardin to Specification II:

- Mr. Hardin stated that Officer Spellen never was shown to have transported or taken custody of Mr. Owensby during this entire incident. Mr. Hardin offered that the investigation does not show that Officer Spellen actually saw any injuries to Mr. Owensby, rather that it was another officer who called his attention to the status of Mr. Owensby.

- Mr. Hardin added that Officer Spellen thought that the officers who had custody of Mr. Owensby would check on his condition and render first aid and that he was not under the impression that each individual officer on the scene had to go up and check on him.

- Mr. Hardin stated that at the time that Officer Spellen was on the scene, he did not feel the scene was stabilized and did not know or feel that Mr. Owensby was injured, but only possibly suffering from the effects of mace.

- Mr. Hardin pointed out that according to Sergeant Browner's IIS interview, when she first arrived on the scene, she went towards the Golf Manor car and shined her light in the car and did not notice any injuries. Mr. Hardin noted that this is roughly around the same time period the Officers Spellen and Brazile are shown on the MVR camera to move off to the left of the camera to look into the Golf Manor car. Mr. Hardin feels there is doubt as to the time sequence of when exactly Mr. Owensby was discovered injured.

### The following is a summary of information presented as mitigation by Specialist Johnson in reference to Specification II:

- Specialist Johnson offered that Officer Spellen was very concerned when he arrived on the scene that night because he saw the blood on Officer Jorg's sleeve and was worried because this officer had been his Field Training Officer. Specialist Johnson felt this was a very stressful situation for Officer Spellen when he first arrived.

### Conclusion Specification II:

Section 2.12 of the Cincinnati Police Departments Manual of Rules and Regulations is specific in its requirements that *Members are responsible for insuring the safety and welfare of persons and their personal property when transporting or having custody of persons who are sick, injured, arrested or incapacitated in any way.* The investigation supports the information that

4

Officer Spellen was aware of Mr. Owensby's injuries and did not ensure appropriate first aid was rendered as is required by Procedure 12.545. However, Officer Spellen's was not present at the start of Mr. Owensby's arrest, did not in any way participate in the initial struggle and custody of Mr. Owensby, and at no time took custody of Mr. Owensby. The officer was shown to have arrived at the scene after Mr. Owensby was already arrested and placed in the Golf Manner car. The investigation does not support the critical elements of <u>transportation or custody</u> of the prisoner at the time this occurred, as is required by section 2.12.

**Finding Specification II:**

Unfounded

**Additional Information and Finding:**

At the beginning of the hearing IIS stated that a Specification citing violation of section 1.01C, to wit, Procedure 12. 545 <u>Use of Force</u>, was mistakenly not included on Officer Spellen's charge sheet when he was served. While information presented by both IIS and OMI in reference to Specification II do not support a violation of section 2.12, that same information does support a violation of section 1.01C.

On November 7, 2000, Officer Spellen (P398) was aware Mr. Owensby was injured. Officer Spellen failed to tend to or seek medical aid for Mr. Owensby's injuries.

Officer Spellen's actions are in violation of section 1.01 (C) of the Manual of Rules and Regulations for the Cincinnati Police Division, which states:

1.01 Members shall not commit any acts or omit any act, which constitute a violation of any of the rules, regulations, procedures, directives, or orders of the Division.

C. Members shall not negligently fail to carry out any rule, regulation, procedure, directive, or order of the Division, which leads to physical injury to another or financial loss to the Division, to wit:

> Procedure 12.545 <u>Use of Force</u>
>
> Policy (in part);

Following any use of force resulting in the citizen's injury, officers will ensure appropriate first aid is rendered immediately once the incident scene is stabilized.

**Finding**

5

Based on the supporting information presented during the hearing, I recommend the Police Chief consider an additional Specification with a ⟨Sustained⟩ finding for a violation of section 1.01C of the Manual of Rules and Regulations for the Cincinnati Police Division.

### Additional Mitigation:

Lieutenant Edward Harris, Sergeant Edward Deters, and Sergeant Daniel Proffit appeared at the hearing as character witnesses for Officer Spellen. All of the above had supervised Officer Spellen at one point or another while at District Four.

- Sergeant Deters stated that when he was the Administrative Sergeant at District Four that he found Officer Spellen to be a very courteous, sensitive and willing to help other people and officers. Sergeant Deters added that he could not imagine Officer Spellen consciously misleading or persuading someone with the purpose to undermine justice or the Police Department. Sergeant Deters further added that he felt that Officer Spellen would be the first officer to help someone or go to their aid if he truly believed they were injured.

- Sergeant Proffit stated Officer Spellen has always been a dependable and reliable beat officer on his shift and that he has never had any occasion to doubt the officer's truthfulness.

- Lieutenant Edward Harris stated that Officer Spellen was, in his opinion, an upstanding officer who had many compliments from fellow officers and citizens. Lieutenant Harris added that he had never had any occasion to doubt the truthfulness of Officer Spellen.

### Employee Disciplinary Profile:

None

### Recommendation:

In accordance with provisions outlined in Rule 13.01 of the Police Department's Manual of Rules and Regulations and Disciplinary Process, in place at the time of the violation, I recommend Dismissal of the dishonesty charge.

6

# City of Cincinnati



Interdepartment
Correspondence Sheet

February 25, 2003

**To:** Col. Thomas H. Streicher, Jr., Police Chief

**From:** Valerie A. Lemmie, City Manager

**Subject:** Police Officer Victor Spellen

---

I am in receipt of the hearing officers pre-disciplinary hearing summary regarding Victor Spellen. Officer Spellen had a hearing on charges of Dishonesty and Neglect of Duty. The hearing officer sustained charges that Officer Spellen violated sections 5.01 and 2.12 of the Manual of Rules and Regulations and Disciplinary Procedures for the Cincinnati Police Department.

Based upon the facts and circumstances articulated in the report, as well as the provisions of the disciplinary matrix in place at the time, I am adopting this report and concurring with your recommendation, as well as that of the Human Resources Director and City Solicitor, of dismissal. Please expeditiously take any and all steps necessary to implement the recommended discipline.

Form 32-S ⌐DYX (Rev 1/85)

# City Of Cincinnati
## Notice of Disciplinary Action, Layoff or Displacement

Social Sec. No.: [ ][ ][ ][ ][ ][ ][ ][ ][ ]    Name _____

Address _____

City, State, Zip _____

Job Title/Classification _____    Dept./Div. _____

This is your Notice of: _____ Disciplinary Action
(Check One)

_____ Layoff

_____ Displacement to position of _____

Effective Date of Disciplinary Action, Layoff, or Displacement [ ][ ][ ][ ][ ]

### Complete For All Disciplinary Actions

**Reason Codes**
(Enter up to 3 codes)

1 [ ][ ]   2 [ ][ ]   3 [ ][ ]

**Penalty Codes**
(Enter up to 2 codes)

1 [ ][ ]   2 [ ][ ]

**Hours Penalized**
(Enter if applicable)

[ ][ ][ ][ ][ ]

01—Failed Probation
02—Incompetency
03—Inefficiency
04—Dishonesty
05—Insubordination
06—Neglect of Duty
07—Failure of Good Behavior
08—Substance Abuse
09—Excessive Absenteeism
10—Violation of C.S. Rules/ C.S. Law/Code of Ethics
11—Other

01—Suspension
02—Loss of Vacation Time
03—Loss of Off-Day Time
04—Loss of Holiday Time
05—Demotion*
06—Reduction in Pay*
07—Dismissal*
09—Other

*Personnel Action Form (Form 14) required

Complete For All Layoffs and Displacements
**Reason Codes**
(Enter 1 Code)

41—Lack of Work*
42—Lack of Funds*
43—Job Abolishment*
49—Other

*Personnel Action Form (Form 14) required

**Specifications:** Attach a sheet giving full details of the charges so that the employee may be placed fairly upon his/her defense. Include disciplinary action(s) assessed, including dates and nature of offense(s), except written reprimands older than three (3) years. If demotion/displacement in lieu of layoff, include new title. If Job Abolishment, include one of the following reasons: 1. Reasons of Economy 2. Lack of Work, or 3. Reorganization for the efficient operation of the employing unit.

_____
(Appointing Authority)

This Notice Served Upon:

_____
By Registered Mail/Certified Mail/ Personal. Strike out those not applicable)

This _____ Day _____

19 _____ At _____ O'Clock _____ M.

_____
(Signature of Individual Service This Notice)

**To The Employee:**
You have 10 calendar days from the date this notice is filed with the Civil Service Commission in which to appeal this action to the Civil Service Commission. Dismissals, demotions, layoffs, displacements, reductions in pay, suspensions of more than 3 days (uniform police personnel may appeal suspension of any duration) and first half probationary failures are appealable.

(Appeals must contain the person's name, address and phone number and be sent or brought to Room 215, City Hall.)

| Approved As To Form By Law Dept.: | Dept./Div. Head Initials: |

| Approved As To Equity By Personnel Dept.: | |

1 White—Employee  2 Canary—Civil Service  3 Pink—Department  4 Goldenrod—Division

Form 32
Page 2

Form 32 Attachment
Pre-Disciplinary Hearing
November 19, 2002
Police Officer Victor Spellen
Charge: Dishonesty

**SPECIFICATION I:**

Members of the Homicide Unit interviewed Officer Spellen (P862) on two separate occasions. During the interviews Officer Spellen demonstrated a "neck hold" that Officer Jorg demonstrated to Sergeant Watts. When Officer Spellen was summoned to testify to what he observed at 2098 Seymour Avenue on November 7, 2000, he demonstrated a different hold. Officer Spellen admitted he intentionally altered this hold in court to favor Officer Jorg.

Officer Spellen's actions are in violation of Rule 5.01 of the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Division.

Rule 5.01   No member shall knowingly state, enter, or cause to be entered on any official document, any inaccurate, false, incomplete, misleading, or improper information.

## Specification II

The allegation that on November 7, 2000, Officer Spellen observed a medical injury to Mr. Owensby and rendered no appropriate first aid immediately once the incident scene is stabilized is sustained. Officer Spellen's actions violated Rule 1.01 (C) of the manual of Rules and Regulations for the Cincinnati Police Division, which states:

Rule 1.01   Members shall not commit any acts or omit any act, which constitute any of the rules, regulations, procedures, directives, or orders of the Division.

C. Members shall not negligently fail to carry out any rule, regulation, procedure, directive, or order of the Division, which leads to physical injury to another or financial loss to the Division. To wit:

Procedure 12.545

Following any use of force resulting in a citizen's injury, officers will ensure appropriate first aid is rendered immediately once the incident scene is stabilized.

**Employee Profile Information:**

None

Form 32
IIS Case #00248

# EVALUATION SUPPLEMENT LOG

Employee Name: Spellen, Victor
Badge #: P862
Year: 2002

| DATE OF ENTRY | ACTIVITY SUMMARY INCLUDING DATE OF OCCURRENCE | SUPERVISORY ACTION TAKEN | DATE NOTIFIED | EMPLOYEE BADGE & INITIAL | INITIATING SUPERVISOR BADGE # & INITIALS | REVIEWING SUPERVISOR BADGE # & INITIALS | FURTHER DISPOSITION |
|---|---|---|---|---|---|---|---|
| 2/5/02 | On 2/5/02 you observed an entered vehicle on Burnett Ave. You coordinated uniform unit response which resulted in the apprehension of the driver and recovery of the auto without any incident. | commended | 2/5/02 | VS P862 | DLP S462 | | |
| 3/13/02 | Participated in CHRC community meeting which resulted in positive community relations. | Commended | | VS 8862 | JD / S196 | | |
| 03/16/02 | On 03/16/02 Ms. Pricilla Hertzer entered D4 and personally wanted Officer Spellen Commended for his Caring, Professionalism, and Overall Effort for Police Services rendered. | Commended | 03/16/02 | X P862 VS | S462/DLP | S462/DLP | |

Form 448S

EVALUATION SUPPLEMENT LOG

EMPLOYEE NAME: Snellen Victor    BADGE #: P862    QUARTER: ____    YEAR: 2002

| # | DATE OF ENTRY | ACTIVITY SUMMARY INCLUDING DATE OF OCCURRENCE | SUPERVISORY ACTION TAKEN | DATE NOTIFIED | EMPLOYEE BADGE # & INITIALS | INITIATING SUPERVISOR BADGE # & INITIALS | REVIEWING SUPERVISOR BADGE # & INITIALS | FURTHER DISPOSITION |
|---|---|---|---|---|---|---|---|---|
| 1. | 6/26/02 | After discussion with the Police Chief, your salary step-up, which was to take effect on 7/8/02, is disapproved. | Advised | 6/27/02 | VS P862 | KSJ/C3 | KSJ/C3 | |
| 2. | | | | | | | | |
| 3. | | | | | | | | |
| 4. | | | | | | | | |
| 5. | | | | | | | | |
| 6. | | | | | | | | |
| 7. | | | | | | | | |
| 8. | | | | | | | | |
| 9. | | | | | | | | |
| 10. | | | | | | | | |
| 11. | | | | | | | | |

_____    _____
SUPERVISOR'S SIGNATURE         DATE

_____    _____
EMPLOYEE'S SIGNATURE           DATE

## Pre-Disciplinary Hearing

This hearing has convened at the IIS Office located at 801 West Eighth Street, Cincinnati, Ohio 45203, __1347__ hours on November 19, 2002, to inquire into incidents which occurred on November 7, 2000, and involves **Police Officer Victor Spellen** who is charged with violations of the Rules and Regulations or Procedures of the Cincinnati Police Department and/or the Rules of the Civil Service Commission.

This hearing will be conducted before **Captain Andrew G. Raabe**, Pre-Disciplinary Hearing Officer.

**Sergeant Maris Herold**, will be the hearing coordinator.

**Sergeant Anthony Carter**, will be the hearing recorder.

Officer __Spellen__ is represented by __Don Hardin, Attorney__

OR

Officer _____ is not represented, but has been notified of his right to be represented.

Also present at this hearing:

Mr. John Plahvinsak, OMI Investigtor

Scott Johnson - FOP Rep / Sentinel Rep

This hearing has concluded at __1554__ hours.

HEARING AUTHORITY

TO BE READ AT DISCIPLINARY HEARINGS

This hearing is convened under authority of the City of Cincinnati Personnel Rule 5.2.

The prime objective of this hearing is to afford administrative justice. This is an administrative tribunal and is governed by principles of administrative law, which dictates that the primary objective of the hearing is the furtherance of the public interest, rather than the neutral arbitration of differences, which is the purpose of a court of law. Legal technicalities will not be permitted to defeat the achievement of this objective.

Any questions will be resolved by the Hearing Officer.

The Hearing Officer will be permitted to question any witnesses and to call or recall any witnesses as he may see fit. After all witnesses have been heard, exhibits examined and any mitigation offered, the hearing will be closed and the Hearing Officer will deliberate and come to a decision.

The Hearing Officer may make one of the following findings:

1. The complaint is invalid.

2. Evidence sustains the allegations.

If the decision of the Hearing Officer is that the evidence sustains the charge, the recommended penalty, exclusive to the Hearing Officer and pending final approval, will not be disclosed to the employee who is being disciplined until the completion of the review process and final approval of the City Manager.

I have read and understand this document.

_____
Signature

_____11-19-02_____
Date