

# City of Cincinnati — Division of Police
## Performance Report

Social Security Number: 1 8 3 6 0

Performance Date: 1 2 1 2 0 0

Type: **P**  (A—Annual, P—Probationary, S—Special)

### PERSONAL INFORMATION

1. Officer's Name: Last, First, MI — **SPELLEN, Victor**
2. Badge No. — **PO-862**
3. Overall Score — **12**
4. Points
5. Unit — **District 4**
6. Employee No.
7. Inclusive Dates of Rated Period — **12/12/99 – 12/12/00**
8. Officer's Rank — **Police Officer**
9. Name and Rank of Reviewer — **Kathleen Howard, Lieutenant, L-9, (13983)**

LEAVE THIS SPACE BLANK

10. Name and Rank of Rater No. 1 — **Sgt. Pete Watts, S618  13931**
11. Name and Rank of Rater No. 2 — **Julie A. Shearer, Sergeant, S-555, (13934)**

### PART I

| RATER NO. 1 RECORDS SCORES IN THIS SECTION | | | | RATER NO. 2 RECORDS SCORES IN THIS SECTION | | | |
|---|---|---|---|---|---|---|---|
| Item | Scores | Item No. | Scores | Item | Scores | Item No. | Scores |
| 1. Quality of Work | 10 | 11a | 11 | 1. Quality of Work | 11 | 11A | 11 |
| 2. Judgment | 11 | 12a | 10 | 2. Judgment | 12 | 12A | 12 |
| 3. Attendance & Punctuality | 12 | 13a | 12 | 3. Attendance & Punctuality | 12 | 13A | 12 |
| 4. Completion of Assignment | 10 | 14a | 11 | 4. Completion of Assignment | 12 | 14A | 12 |
| 5. Grooming and Dress | 12 | 15a | 12 | 5. Grooming and Dress | 12 | 15A | 12 |
| 6. Maintaining Equipment | 11 | 16a | 11 | 6. Maintaining Equipment | 12 | 16A | 11 |
| 7. Physical Conditioning | 12 | 17a | 11 | 7. Physical Conditioning | 12 | 17A | 11 |
| 8. Attitude towards Division policy | 12 | 18a | 11 | 8. Attitude towards Division policy | 11 | 18A | 11 |
| 9. Meeting & Dealing with the Public | 13 | OVERALL SCORE OF RATER NO. 1 | 12 | 9. Meeting & Dealing with the Public | 11 | OVERALL SCORE OF RATER NO. 2 | 12 |
| 10. Developing & Assisting other Officers | 10 | | | 10. Developing & Assisting other Officers | 12 | | |

### 12. PART II

NOTE: Comments in Part II should be prefaced by one of the following symbols to establish whose comments they are: R-1 for Rater No. 1, RE for Reviewer and O for Officer.

**12a. TRAINING RECOMMENDATIONS**

Report writing class

**12b. CAREER RECOMMENDATIONS**

Remain in Patrol

**12c. GENERAL REMARKS**

Victor is developing into a fine beat officer. I've observed him in different situations and he makes good decisions and his confidence is growing.

(illegible PSI entries)

(Attach additional pages if necessary)

### 12. PART II

NOTE: Comments in Part II should be prefaced by one of the following symbols to establish whose comments they are: R-2 for Rater No. 2, RE for Reviewer and O for Officer.

**12a. TRAINING RECOMMENDATIONS**

Any Training the Police Division Offers

**12b. CAREER RECOMMENDATIONS**

Remain in uniform Patrol.

**12c. GENERAL REMARKS**

Victor is a hard working young officer. He displays eagerness in learning and is progressing daily as a good beat officer.

(Attach additional pages if necessary)

### 13. Certifications

13a. Rater No 1 My scores above indicate my best judgment
Signature _____  Date _____

13b. Rater No 2 My scores above indicate my best judgment
Signature _____  Date 12/10/00

Rater #1 Name or Int (Please Print)
Rater #2 Name or Int (Please Print)

13c. Reviewer I have reviewed the above report
Signature _____  Date 12/10/00

13d. Officer I have received a copy of this report
Signature _____  Date 12-10-00

FTX-4 Form 448 Rev 1/83

POLICE PERSONNEL COPY

# City of Cincinnati — Division of Police
## Performance Report

**Social Security Number:** 1 8 3 6 0

**Performance Date:** 1 2 3 1 0 1

**Type:** A (A—Annual, P—Probationary, S—Special)

### PERSONAL INFORMATION

1. **Officer's Name:** Last, First, MI — Spellen, Victor
2. **Badge No.:** P862
3. **Overall Score:** 14
4. **Points:**
5. **Unit:** District Four
6. **Employee No.:** 18360
7. **Inclusive Dates of Rated Period:** 1/1/01 to 12/31/01
8. **Officer's Rank:**
9. **Name and Rank of Reviewer:** Dave Bailey, Police Lieutenant #13977
10. **Name and Rank of Rater No. 1:** Daniel Broffitt, Police Sergeant #13404
11. **Name and Rank of Rater No. 2:** Mark Fowler, Police Sergeant #13573

### PART I

| Rater No. 1 — Item | Score | Item No. | Score | Rater No. 2 — Item | Score | Item No. | Score |
|---|---|---|---|---|---|---|---|
| 1. Quality of Work | 14 | 11a | 14 | 1. Quality of Work | 14 | 11a | 14 |
| 2. Judgment | 14 | 12a | 14 | 2. Judgment | 14 | 12a | 14 |
| 3. Attendance & Punctuality | 12 | 13a | 12 | 3. Attendance & Punctuality | 13 | 13a | 13 |
| 4. Completion of Assignment | 14 | 14a | 14 | 4. Completion of Assignment | 14 | 14a | 13 |
| 5. Grooming and Dress | 16 | 15a | 14 | 5. Grooming and Dress | 15 | 15a | 14 |
| 6. Maintaining Equipment | 13 | 16a | 14 | 6. Maintaining Equipment | 13 | 16a | 14 |
| 7. Physical Conditioning | 16 | 17a | 13 | 7. Physical Conditioning | 16 | 17a | 13 |
| 8. Attitude towards Division policy | 13 | 18 | 14 | 8. Attitude towards Division policy | 14 | 18a | 14 |
| 9. Meeting & Dealing with the Public | 16 | | | 9. Meeting & Dealing with the Public | 15 | | |
| 10. Developing & Assisting other Officers | 13 | Overall Score of Rater No. 1 | 14 | 10. Developing & Assisting other Officers | 14 | Overall Score of Rater No. 2 | 14 |

### 12. PART II

NOTE: Comments in Part II should be prefaced by one of the following symbols to establish whose comments they are: R-1 for Rater No. 1, RE for Reviewer and O for Officer.

**12a. TRAINING RECOMMENDATIONS (Rater 1):** Any requested training.

**12a. TRAINING RECOMMENDATIONS (Rater 2):** Any available training

**12b. CAREER RECOMMENDATIONS (Rater 1):** Remain in Uniform Patrol.

**12b. CAREER RECOMMENDATIONS (Rater 2):** Remain in uniform patrol

**12c. GENERAL REMARKS (Rater 1):** Officer Spellen has developed into a good Beat Officer. He patrols his beat with pride. He requires little supervision.

**12c. GENERAL REMARKS (Rater 2):** Officer Spellen has proven to be accountable reliable officer. Officer Spellen decision making ability ranks him among the top on the relief.

### 13. Certifications

**13a. Rater No. 1** — My scores above indicate my best judgment. Signature: [signed] Date: 12/31/01

**13b. Rater No. 2** — My scores above indicate my best judgment. Signature: [signed] Date: 12/31/01

Rater #1 Name or Int: D L P   Rater #2 Name or Int: M C F

**13c. Reviewer** — I have reviewed the above report. Signature: [signed] Date: 12/31/01

**13d. Officer** — I have received a copy of this report. Signature: [signed] Date: 1-_-02

CFTX-4 Form 448 Rev 1/83 — POLICE PERSONNEL COPY



# EVALUATION SUPPLEMENT LOG

EMPLOYEE NAME: Snellen, Victor  BADGE #: P862  QUARTER: ___  YEAR: 2002

| | DATE OF ENTRY | ACTIVITY SUMMARY INCLUDING DATE OF OCCURRENCE | SUPERVISORY ACTION TAKEN | DATE NOTIFIED | EMPLOYEE BADGE # & INITIALS | INITIATING SUPERVISOR BADGE # & INITIALS | REVIEWING SUPERVISOR BADGE # & INITIALS | FURTHER DISPOSITION |
|---|---|---|---|---|---|---|---|---|
| 1. | 6/26/02 | After discussion with the Police Chief, your salary step-up, which was to take effect on 7/8/02, is disapproved. | Advised | 6/27/02 | VS P862 | KSJ/C3 | KSJ/C3 | |
| 2. | | | | | | | | |
| 3. | | | | | | | | |
| 4. | | | | | | | | |
| 5. | | | | | | | | |
| 6. | | | | | | | | |
| 7. | | | | | | | | |
| 8. | | | | | | | | |
| 9. | | | | | | | | |
| 10. | | | | | | | | |
| 11. | | | | | | | | |

_____ DATE    _____ DATE
SUPERVISOR'S SIGNATURE              EMPLOYEE'S SIGNATURE

QryProfileReport

11/4/02

| Badge | Name | Case N | Date Rec | Location | Date | Complainant: L | First: | Pri | Comp | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|
| P862 | SPELLEN, VICTOR N | 02095 | 5/10/02 | 4150 READING RD | 2/1/00 | ROBINSON | JEROME | 4 | OMI | 8/12/02 |

Page 1

QryProfileReport

11/4/02

| Allegation(s): | Penalty | Type of Closure |
|---|---|---|
| COMPL CLAIMS OFFICERS USED EXCESSIVE FORCE WHEN THEY REMOVED HIM FROM POLICE VEHICLE. (OM) | None | NOT SUSTAINED |

11/4/02

QryProfileReport

Page 3

| Code | Comments | RulesVio |
|---|---|---|
| 4 | No indication of shoulder injury on day of | |

Case 1:01-cv-00769-SAS    Document 108-17    Filed 03/11/2004    Page 9 of 12

14

| | |
|---|---|
| **Officer Spellen:** | *That's what I. That's what I sa-. I. And if I believe that's what I overheard Jorg stated. I don't know.* |
| **Second Internal Investigator:** | *What did you say? Then when you got on the stand, that's not what you said.* |
| **Officer Spellen:** | *No. Because I said I don't know if the words that I'm using are exactly the words that Officer Jorg used at the time. But a supervisor asked Jorg where did the blood come from. Right. And Jorg made a movement like this stating he had Owensby in - and, and I couldn't remember the exact words that he used. But it was a neck hold, neck wrap, something to that effect.* |
| **Internal Investigator:** | *Victor, you don't see the difference between doing this and doing that. Are you uh. Come on Victor. Are you saying you can't, you don't know the difference between the two? What good is this gonna do to somebody? What is that. And did, did Jorg honestly did he go, "I had him like this"? Because I was in court. I know what you said in court. I mean, all we're asking for is a legitimate reason why the difference. This is, this is something. I don't know what it is. I don't know what it could do to anybody. And then this, is something different. He's telling you he was there in one part of it and I'm telling you there I was in court. I just wanna know what the difference is. That's all the man is asking you. And it's not fair of you to expect us to just go, "Well, okay, I guess there's not much difference." Cause there's a monumental difference. It's all the difference in the world.* |
| **Second Internal Investigator:** | *Let me ask you this. You said, "What's the difference?" And you go like this. Is this not supposed to be some type hold, some type of restraint move? If I put anybody's head here, what am I restraining. What am I restraining? Absolutely nothing. I've got a foot and a half from my chest to my hand and unless this is the person in the world with the biggest head, that is not going to work. I'm not restraining anything. I have movement side to side. I have not restrained anything. That's why I say is, this is a* |

|  |  |
|---|---|
|  | much more passive maneuver when you standing in the courtroom or you sit in a courtroom and you say this what he showed me he did, versus when you sat there the night that this thing occurred and you were asked what did he display. And you display that this is a hold. If I put somebody's neck, nose, mouth, head, whatever it is right here and I bring it into my body, now that's a hold. |
| Officer Spellen: | Right. But I got, I got. |
| Second Internal Investigator: | In those eight months, what was M---, what was Officer Jorg facing? What was he looking at? |
| Officer Spellen: | Losing his job. |
| Second Internal Investigator: | Possibly going to jail? |
| Officer Spellen: | Possibly jail time. Yes. |
| Second Internal Investigator: | For what, manslaughter? |
| Officer Spellen: | Yes. |
| Second Internal Investigator: | What happened that night Victor? |
| Officer Spellen: | Well, uh, I mean, maybe I did lie, change my hand motion and made it not as threatening, as this would have been. But |
| Second Internal Investigator: | Either you did it or you didn't do it. Either you did it intentionally or you did it accidentally. But you can't tell me maybe you did. It's a fact it was done. That's a fact. It's not a maybe. Now was it intentional or was it accidental? But it ain't maybe. |
| Officer Spellen: | It was intentional. |
| Second Internal Investigator: | Why? Go ahead. Why? |
| Officer Spellen: | Cause I didn't... Because it didn't look as threatening as the other movement. |
| Second Internal Investigator: | Here's the thing I want you to understand. All right? And I want you to hear me clearly. Don't give me an answer cause I think I want to hear an |

|  |  |
|---|---|
|  | *answer. Don't give me answer simply because you think it's gonna make me happy. Don't give me an answer cause you think I'll run back to the Chief and say, "Hey, look what I did." I want the truth. And not only am I asking you to give me the truth or am telling you to give me the truth, I'm ordering you to give me the truth. I want the truth. Did you change it intentionally?* |
| **Officer Spellen:** | *Yes.* |
| **Internal Investigator:** | *Now why?* |
| **Officer Spellen:** | *Because I figured it wouldn't look as damaging to Jorg just the slight hand movement from this to this.* |
| **Second Internal Investigator:** | *Why would you do it? Other than the fact that it made it look less damaging, why would you do it?* |
| **Officer Spellen:** | *That's the only reason.* |
| **Second Internal Investigator:** | *Anybody ask you to do it?* |
| **Officer Spellen:** | *No.* |

### Police Officer Brian Brazile, Badge P398, District Four

*Note: (Officer Brazile's summary is derived from his Homicide Unit interview and his Internal Investigations Section interview.)*

On November 7, 2000, Officer Brazile responded to 2098 Seymour Avenue reference to an assistance broadcast. Officer Brazile was at 73rd Street and Fairpark Avenue, Carthage, when the broadcast was made. As Officer Brazile entered the parking lot of 2098 Seymour Avenue the assistance run was cancelled. However, he continued on the run. Upon entering the lot Officer Brazile checked on the welfare of the involved officers.

Officer Brazile spoke to Officer Jorg and inquired about the blood on his shirtsleeve. Officer Jorg advised the blood was Mr. Owensby's. Officer Brazile determined no other officer was injured. Officer Brazile responded to the Golf Manor car to view Mr. Owensby. Officer Brazile shined his flashlight on Mr. Owensby and advised the Golf Manor officers, "This looks fucked up. Can he breathe? Don't look like he can breathe?"[24] Officer Brazile then turned and walked away from the Golf Manor police car without providing or requesting medical assistance.

---

[24] Quote from Homicide Unit interview, November 8, 2000.

17

Officer Brazile heard Officers Jorg and Hunter explain to Sergeants Watts and Browner the circumstances surrounding Mr. Owensby's arrest. Sergeant Watts responded to the Golf Manor car and ordered officers to remove Mr. Owensby. Officers initiated CPR efforts. Officer Brazile was directed to secure a witness.

### Police Officer Alexander Hasse, Badge P827, District Four

*Note: (Officer Hasse's summary is derived from his Hamilton County Common Pleas Court room testimony and IIS interview.)*

Officer Hasse and his partner, Officer Sellers, were in the parking lot of Sam's Drive-Thru, located at 2092 Seymour Avenue on a directed patrol. Officers Hasse and Sellers cited Mr. Williams for a minor misdemeanor drug violation. Officers Hasse and Sellers handcuffed Mr. Williams and placed him in the rear of the patrol car.

The officers did not have an NTA and requested another District Four officer drop one off at their location. Officers Caton, Jorg, and Hunter responded to 2092 Seymour Avenue with an NTA. The officers were standing outside the patrol cars conversing when Officer Hunter saw a suspect who fled from him on a prior drug investigation. Officers Jorg, Caton, and Hunter followed the suspect to identify him.

Officers Hasse and Sellers remained with Mr. Williams. Shortly after the officers left, Officer Hasse heard an ""Officer needs assistance"" broadcast. Officer Hasse believed that one of the aforementioned officers made the assistance broadcast, so he told Officer Sellers to respond on foot to 2098 Seymour Avenue. Officer Hasse did not see any portion of the struggle between the officers and Mr. Owensby.

After the incident was over, Officer Caton responded back to 2092 Seymour Avenue to get his patrol car. Officer Hasse asked, "What happened?" Officer Caton replied, "We had to beat the shit out of him."

Officer Hasse then drove his patrol car to the 2098 Seymour Avenue. He exited his car and walked over to the Golf Manor patrol car to look at Mr. Owensby. Sergeant Watts told him to get Mr. Owensby out of car. Mr. Owensby was on his stomach with his head facing the trunk of the car. Officer Hasse did not notice any blood in the car, but Mr. Owensby had blood on his face. Officer Hasse and Caton performed CPR until the Cincinnati Fire Division relieved them and transported Mr. Owensby to the hospital. Mr. Owensby did not appear to be breathing after he was removed from the Golf Manor patrol car.

### Sergeant William Watts, Badge S125, District Four

On November 7, 2000, at 1949 hours, PCS dispatched Sergeant Watts to 2098 Seymour Avenue for a macing report. While conducting his investigation Sergeant Watts stated no officer reported a use of force to him, nor did any officer report that Mr. Owensby was