Based on the IIS investigation, IIS recommends this portion of the investigation be closed **SUSTAINED.**

3. **Officers Hunter and Sellers observed Officer Caton punch Mr. Owensby several times in the back after Mr. Owensby was handcuffed.[43] Mr. Owensby was not resisting or combative. Officer Caton used unnecessary force when arresting Mr. Owensby.**

Officer Caton's actions are in violation of Rule 1.23 of the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Division, which states:

Rule 1.23 Members shall not use more force in any situation than is reasonably necessary under the circumstances. Members shall use force in accordance with law and Division procedure. To wit;

Procedure 12.545 Use of Force:

Policy (In part);

When officers have the right to make an arrest, they use whatever force is reasonably necessary to apprehend the offender or effect the arrest, and no more. They must avoid using unnecessary violence.

Based on the IIS investigation, IIS recommends this portion of the investigation be closed as **SUSTAINED.**

4. **Officers Jorg, Hunter, and Sellers told IIS investigators that they observed the use of force[44] by Officer Caton during the arrest of Mr. Owensby. Officer Caton did not immediately report his use of force to a supervisor. Officers Jorg, Hunter, and Sellers did not immediately report Officer Caton's use of force to a supervisor.**

Officers Caton, Jorg, Hunter, and Sellers actions are in violation of Rule 1.01 (D) of the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Division, which states:

Rule 1.01 Members shall not commit any acts or omit any act which constitute a violation of any of the rules, regulations, procedures, directives, or orders of the Division.

D. Members shall not intentionally fail to carry out any rule, regulation, procedure, directive, or order of the Division, which leads to physical injury to another or financial loss to the Division. To wit;

Procedure 12.545 Use of Force:

---

[43] Officer Sellers' and Officer Hunter's statements remained consistent throughout their trial testimonies and IIS interviews.
[44] Specifically, Officer Caton struck Mr. Owensby several times with his hand.

Policy (In part);

> Whenever employees use deadly force, force, chemical irritant, or confronts active resistance that results in an injury to a citizen, or have knowledge of any of the above, they will immediately notify a supervisor.

Based on the IIS investigation, IIS recommends this portion of the investigation be closed **SUSTAINED.**

5. **Officer Lawson stated Officer Hunter and Officer Jorg struck Mr. Owensby in the head.**

Officer Hunter denied striking Mr. Owensby. Officer Jorg resigned before IIS could conduct a follow-up interview. There are no other credible witnesses that verified this allegation. IIS was unable to corroborate Officer Lawson's allegation.

Based on the IIS investigation, IIS recommends this portion of the investigation be closed **NOT SUSTAINED.**

6. **Officer Spellen gave false testimony during Officer Jorg's criminal trial.**

Members of the Homicide Unit interviewed Officer Spellen on two separate occasions. During the interviews Officer Spellen demonstrated a "neck hold" that Officer Jorg demonstrated to Sergeant Watts. When Officer Spellen was summoned to testify to what he observed at 2098 Seymour Avenue on November 7, 2000, he demonstrated a different hold.

Officer Spellen verbalized and demonstrated a less aggressive hold in court than the hold he demonstrated to Homicide Unit investigators. Officer Spellen state he did this "Because I figured it wouldn't look as damaging to Jorg, just the slight hand movement from this to this."[45] Officer Spellen admitted he intentionally altered this hold in court to favor Officer Jorg.

Officer Spellen's actions are in violation of Rule 5.01 of the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Division, which states:

> Rule 5.01 No member shall knowingly state, enter, or caused to be entered on any official document any inaccurate, false, incomplete, misleading, or improper information.

Based on the IIS investigation, IIS recommends this portion of the investigation be closed **SUSTAINED.**

---

[45] Statement provided during the IIS interview on March 13, 2002.

**7. Officers Jorg, Caton, Hunter, Sellers and Hodge used excessive force during the arrest of Mr. Owensby resulting in his death.**

Mr. Roger Owensby was wanted for questioning by District Four police. When police officers approached Mr. Owensby, he fled, was caught, and resisted handcuffing. In order to conclude that arresting officers used excessive force it would be necessary to determine that the officers used more force than reasonably necessary to effect the arrest. The officers' authority to use force is not limited to that amount of force necessary to protect themselves, but extends to that amount reasonably necessary to enable them to effect the arrest of a resistant subject.[46]   The U. S. Supreme Court has stated, "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation."[47]  The arresting officers' predominant actions, with two exceptions,  were actions to restrain Mr. Owensby, an adult male 5'7" tall, weighing 185 pounds.  The actions necessary to restrain and handcuff a resisting person of this size would be considerable.  The two exceptions to restraining actions by officers are an allegation of a chokehold administered by Officer Jorg and descriptions of hand strikes administered by Officer Caton.

One witness, Ms. Aerial St. Clair, described a chokehold ("left forearm across Mr. Owensby's throat") being administered to Mr. Owensby for a brief period during the struggle.  Dr. Wecht alludes to Ms. St. Clair's statement in his written report, stating, in part, "Also, Ms. St. Clair described a police officer (i.e., Officer Jorg) choking Mr. Owensby, but for only 10 seconds.  This would not have caused his death."[48]  Dr. Wecht also concludes "...there is nothing in the autopsy that can support or rule out the application of a chokehold."[49]  Officers' statements rebut Ms. St. Clair's allegation of a chokehold.

Officer Caton stated that he administered two palm strikes to Mr. Owensby's right side in order to force Mr. Owensby to release his right arm for handcuffing.  This action by Officer Caton is corroborated by Officers Jorg and Hunter, who described strikes with the hand by Officer Caton while Mr. Ownesby was struggling and prior to handcuffing.  The use of empty hand strikes, by a police officer, to the body of a subject who is resisting handcuffing, in order to gain compliance, would be reasonable and would conform to Department policy and training.

Officers Hunter and Sellers observed Officer Caton punch Mr. Owensby several times, with empty hand, in the back, after Mr. Owensby was handcuffed.  This force, as described by Officers Hunter and Sellers, was unnecessary force and this report recommends a finding of unnecessary use of force by Officer Caton.

Dr. Daniel L. Schultz determined Mr. Owensby's death did not result from a blow, strike, kick, or punch.  The medical reviews by Dr. Schultz and Dr. Wecht both conclude Mr.

---

[46] Cincinnati Police Department Procedure 12.545 Use of Force.
[47] Graham v. Connor, 490 U.S. 386 (1989)
[48] Wecht, Cyril H., Re:  Roger Owensby, Jr., Deceased, September 10, 2002, page 16.
[49] Wecht, Cyril H., Re:  Roger Owensby, Jr., Deceased, September 10, 2002, page 15.

Owensby's death was caused by mechanical asphyxiation. Dr. Schultz cites several examples of mechanical asphyxiation, including "traumatic asphyxia, positional asphyxia, and riot crush or 'human pile' deaths." Dr. Schultz does not specify which action caused the death through mechanical asphyxia. Dr. Wecht attributes the mechanical asphyxiation to a specific act by Officer Jorg: Officer Jorg kneeling on Mr. Owensby.[50] The medical experts' findings regarding the cause of death do not constitute a finding on whether the police use of force was reasonable or excessive.

The act of kneeling on a prone person to gain compliance and facilitate handcuffing is not necessarily unreasonable. Police tactical experts teach control techniques which include kneeling on prone subjects in order to accomplish handcuffing.[51] The U.S. Supreme Court has stated, "the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application...the question is whether the totality of the circumstances justifies a particular sort of ...seizure."[52] The arresting officers described their use of force as restraining force to control and handcuff a resisting suspect and the officers described actions which are generally consistent with Department training and procedure.

This incident was a tragic, unintentional death, which resulted from a combination of factors, and the evidence is insufficient to render a conclusion regarding the propriety of the police use of force.

IIS recommends this portion of the investigation be closed **NOT SUSTAINED**.


MH/AGC

---

[50] Wecht, page 16.
[51] Remsberg, Charles. The Tactical Edge. Calibre Press: Northbrook, Illinois, 1986, page 497. Remsberg, Charles. Tactics for Criminal Patrol. Calibre Press: Northbrook, Illinois, 1995, page 307.
[52] Graham v. Connor, 490 U.S. 386 (1989).





Interdepartment
Correspondence

# City of Cincinnati

Date: October 14, 2002

*Proceed w/ charges listed on report* (handwritten)

To:        Col. Thomas H. Streicher, Jr., Police Chief

From:      Valerie A. Lemmie, City Manager

Subject:   **Roger Owensby, Jr. – Disciplinary Hearing Recommendations**

I am in receipt of your report, as well as, the report of OMI regarding the death-in-custody of Roger Owensby, Jr., which occurred in November of 2000. Having reviewed each report in its entirety, I recommend a hearing be held for the following individuals on each of the so designated charges.

**Robert Blaine Jorg** (Resigned) – [12.545, 12.600, 1.01(A), 1.01(C), 1.01(D), 1.01(E), 1.23, 2.12, 2.13]

**Patrick Caton, Badge P655, District Four** – [12.545, 12.600, 1.01(C), 1.01(D), 1.01(E), 1.23, 2.12, 2.13]

**David Hunter, Badge P522, District Four** – [12.545, 1.01(C), 1.01(D), 2.12, 2.13]

**Jason Hodge, Badge P162, District Four** – [12.545, 1.01(C), 2.12, 2.13]

**Darren Sellers, Badge P672, District Four** – [12.545, 1.01(C), 1.01(D), 2.12, 2.13]

**Victor Spellen, Badge P862, District Four** – [12.545, 1.01(C), 2.12, 2.13, 5.01]

**Brian Brazile, Badge P398, District Four** – [12.545, 1.01(C), 2.12, 2.13]

**Abraham Lawson, Badge P241, District Four** – [12.545, 1.01(C), 1.01(D), 2.12, 2.13]

Obviously, the investigation regarding this matter has been ongoing for quite some time. I stress the need for expediency and impartiality in this final phase of the process. Please proceed to designate the appropriate hearing officer and promptly schedule a hearing for each of the above referenced individuals.

(handwritten notes in right margin and bottom: "LT BRIE For action JRU 29 Oct", "SGT Herold FNA MWD 19 Oct", "10/29 To IIS Proceed As Directed by THE Chief DSB")



# INTERNAL INVESTIGATIONS SECTION
## CASE NUMBER: <u>00248</u>  DATE: 9/24/02

### INVESTIGATORS: <u>Sergeant Maris Herold</u>

APPROVED: _L R Gregoire_

**Stephen R. Gregoire, Captain**
**Commander, Internal Investigations Section**

1

## CINCINNATI POLICE DEPARTMENT
## INTERNAL INVESTIGATIONS SECTION
## CASE #00248

## INTRODUCTION:

On November 7, 2000, at approximately 1945 hours, Mr. Roger D. Owensby, Jr.,[1] black male, 29 years of age, 6570 Montevista Avenue, Cincinnati, Ohio 45237 died while in the custody of District Four police officers. The incident occurred in the parking lot of Sam's Telecom store located at 2098 Seymour Avenue. The officers involved in the struggle and arrest of Mr. Owensby were:

| | | |
|---|---|---|
| Police Officer Patrick E. Caton | Badge P655 | District Four |
| Police Officer David W. Hunter | Badge P522 | District Four |
| Police Officer Jason L. Hodge | Badge P162 | District Four |
| Police Officer Robert B. Jorg | Badge P285 | District Four |
| Police Officer Darren Sellers | Badge P672 | District Four |

The Internal Investigations Section (IIS) has completed an administrative review of the in-custody-death of Mr. Owensby.

## Interview Summaries:

### Police Officer Robert Blaine Jorg, Badge P285, District Four[2]

*Note: (Officer Jorg did not give a statement to the Homicide Unit. Officer Jorg did not testify in his or Officer Caton's criminal trial. Officer Jorg's IIS interview was conducted on March 11, 2002.)*

On November 7, 2000, Officer Jorg and his partner, Officer Caton, responded to 2092 Seymour Avenue to drop off a Notice to Appear (NTA) citation for Officers Hasse and Sellers. Officer Hasse and Sellers needed the NTA for a minor misdemeanor citation. In the meantime, Officer Hunter also arrived at 2092 Seymour Avenue to drop off an NTA for Officers Hasse and Sellers. Officer Hunter informed Officer Jorg that the subject crossing Seymour Avenue looked like the same man that ran from him on September 27, 2000.Officer Jorg asked Officer Hunter if he was sure that the man crossing Seymour Avenue was, in fact, the man that ran from him on September 27, 2000. Officer Jorg stated Officer Hunter told him, "I'm pretty sure that's him." Based on that information, Officers Jorg, Caton and Hunter followed Mr. Owensby to Sam's Telecom Store. Officer Hunter peered through the west side window of the Sam's Telecom Store to get a better look at Mr. Owensby. Officer Caton asked Officer Hunter, "Is that the guy?" and Officer Hunter said, "I don't remember the facial hair, but that's him."

---

[1] Mr. Roger D. Owensby, Jr., will be identified as Mr. Owensby for the remainder of this report.
[2] Officer Blaine Jorg resigned from the Cincinnati Police Department on March 20, 2002.

Officers Jorg and Caton moved to the front entrance of the store while Officer Hunter remained a few feet west of the front doors.[3]  Officer Jorg and Caton approached Mr. Owensby as he was exiting the store.  Officer Jorg advised Mr. Owensby to place the drink he purchased on the ground and Mr. Owensby complied.  Officer Jorg does not remember what specific questions he asked Mr. Owensby but remembered Officer Caton asking him if he had run from the police.  Mr. Owensby replied, "I never ran from the police."  Officer Jorg was aware of a previous radio broadcast wherein the suspect, identified as "LA", was alleged to be in possession of a gun.  Officer Jorg patted Mr. Owensby down for weapons but found none.

Officer Hunter then approached Mr. Owensby and said, "When was the last time you ran from the cops?"  At that point, Officer Hunter said, "Cuff him" or "That's the guy."  Officer Jorg then grabbed Mr. Owensby's hand to handcuff him, but he broke free, shoving Officer Hunter as he fled.

Mr. Owensby tripped over an unknown object and Officer Jorg stated he was able to, "hit him from behind and wrapped him up."[4]  Officer Jorg fell to the ground on his back and Mr. Owensby landed on top of him.  Officer Jorg was able to roll him over face down and on his stomach.[5]  At that time, Officer Caton made the ""Officer needs assistance"" broadcast.  Officer Caton was on Mr. Owensby's upper thigh and buttock area, while Officer Hunter was either kneeling or standing at Mr. Owensby's head.

Shortly after they were on the ground, Officer Jorg noticed that Officers Hodge and Sellers arrived on the scene.  Officer Hodge positioned himself on the right shoulder area of Mr. Owensby while Officer Sellers was behind Officer Caton.  Officer Jorg tried to get Mr. Owensby's left arm out from underneath him, but Mr. Owensby was able to roll onto Officer Jorg's arm, hyper-extending his elbow.  Officer Jorg then disengaged enabling Mr. Owensby to place his arm back underneath his chest.  Officer Jorg was now in a prone position on the left side of Mr. Owensby's head and shoulder area.

Officer Jorg wrapped his left arm around Mr. Owensby's forehead and his right arm around his head.  He then applied a Mandibular Angle pressure point[6] with his right thumb to the base of Mr. Owensby's right ear.  Officer Jorg gave verbal commands to Mr. Owensby to "Give me your hands" and "Stop resisting."  Officer Caton then screamed, "Someone mace this guy," and Officer Jorg observed Officer Hunter mace Mr. Owensby in the face.

Officer Jorg applied the Mandibular Angle pressure point three times before Mr. Owensby complied.  Officer Jorg released Mr. Owensby's head and then grabbed his left hand.  While kneeling, Officer Jorg was able to use his legs to hold Mr. Owensby's left arm.  He then pulled Mr. Owensby's left arm behind his back and simultaneously knelt down on his left shoulder.

---

[3] This portion of the incident is captured on videocassette from a camera located at Sam's Telecom.
[4] Officer Jorg demonstrated both of his arms around Mr. Owensby's chest.
[5] Mr. Owensby was prone with his head facing Seymour Avenue.
[6] A pressure point located at the base of the ear and the rear of the jawbone.