Officer Hodge had obtained Officer Hunter's PR24 baton and attempted, but failed, to pry Mr. Owensby's right arm from underneath him. Officer Jorg then grabbed the PR24 from Officer Hodge and successfully pried Mr. Owensby's right arm out from underneath him. Officer Caton was then able to secure Mr. Owensby's wrists. Officer Sellers reached down and grabbed Officer Caton's handcuffs from his handcuff case and gave them to Officer Caton.

Officer Caton handcuffed Mr. Owensby's right wrist, but Mr. Owensby continued to pull his arm down. Officer Caton delivered one palm strike to Mr. Owensby's forearm and two palm strikes to the small of his back. The strikes were effective, allowing Officers Caton and Jorg to handcuff him.

Officers Jorg, Caton and Sellers stood up and then reached down and picked Mr. Owensby up off the ground. Officer Jorg received permission from Officer Heiland[7] to put Mr. Owensby in the Golf Manor car. Officer Heiland's car was the closest car to the location of Mr. Owensby's arrest. Officer Jorg stated Mr. Owensby growled and said, "Mother Fucker" during the struggle.

Mr. Owensby tucked his legs up underneath him and an unknown officer said, "Put your legs down." Mr. Owensby complied. Officer Jorg noticed he did not have his PR24 baton and handcuffs. Officer Hunter approached Officer Jorg from an unknown location and took over Officer Jorg's position. Officer Jorg released Mr. Owensby and walked back towards Sam's Telecom store. Officer Jorg did not see if Mr. Owensby walked or was carried to the Golf Manor car. By the time Officer Jorg retrieved his PR24 baton and handcuffs, Mr. Owensby was in the Golf Manor patrol car. Sergeant Watts and Sergeant Browner arrived on the scene, subsequent to Mr. Owensby being put in the car.

*(The following is an excerpt of the conversation between Sergeant Watts, Sergeant Browner, Officer Hunter, and Officer Jorg immediately following the incident.)*[8]

*Sergeant Browner:*..... *"What's he wanted for?"*

*Officer Jorg:*        *"He's wanted for trafficking resisting and assault on a police officer from a prior. But we didn't know his name at the time. Now we got him ID, he's wanted again for assault on a police officer to resisting. We uh, well we're over there doing investigation waiting for these guys. So we walk over here by the outside the store to make sure that it was him, that we could ID him. It was him and he came around to the...I stop him. And told him you know just need to talk to you. So we ask him few questions. Doesn't have his ID. Give us a name, where'd he live an told to, what are you doing here? Visiting his girlfriend. Where does she live? Do you remember the numbers of the address? Will you take us there? Yeah take you there. No big deal. Dave fires in a few questions. Did you ever run from the police?. Last time he ran from the police. Never, never, no.*

---

[7] Officer Robert Heiland is a City of Golf Manor Police Officer.
[8] The conversation was taken from the audio portion of Officer Victor Spellen's, Badge P862, District Four, Mobile Video Recorder (MVR) tape.

> *Officer Hunter:*  ...Then that's when I said oh, so when was last time you ran from the police. That's when we...
>
> *Sergeant Watts:*  Did anybody strike him or spray? Just spray him.
>
> *Officer Jorg:*  I don't know who sprayed him. I had his head wrapped almost the entire time.
>
> *Sergeant Watts:*  You said you had his head wrapped around.
>
> *Officer Jorg:*  Umh, I had my hand across his forehead, trying to hold him down to the ground. I also had one of his arms as a restraint move. I didn't throw anything. And then uh, he dropped his head. As I was turned to hold him down, he brought his head up I had to push it back down and he hit his head on the ground. Sarge, I'm gonna, well I'm...

Officer Jorg then walked away and Officer Hodge approached him and said, "Is that your blood or his?" Officer Jorg didn't know if the blood on his shirtsleeve was his or Mr. Owensby's, so he allowed Officer Hodge to cut his left shirtsleeve off.[9] As soon as Officer Jorg removed his shirtsleeve, he realized he was not injured. He assumed the blood was from Mr. Owensby's forehead. Officer Jorg did not believe Mr. Owensby was his prisoner, and therefore, did not check on his medical condition.

Sergeant Watts and Officer Jorg walked over to the Golf Manor patrol car to speak with Mr. Owensby, but he was unresponsive. Officers Caton and Hasse pulled him from the car and began cardiopulmonary resuscitation (CPR).

Officer Jorg stated that the only officers who struggled with Mr. Owensby were himself and Officers Caton and Hodge.

IIS asked Officer Jorg if he reported the use of force to a supervisor on November 7, 2000, and he stated, "No. Did I officially report the use of force? No I did not." Officer Jorg did not believe reporting the use of force was a necessity at the time.

### Police Officer Patrick Caton, Badge P655, District Four

*Note: (The following summary was derived from Officer Caton's IIS interview and Hamilton County Municipal Court trial testimony.)*

Officers Caton, Jorg and Hunter confronted Mr. Owensby in the doorway of 2098 Seymour Avenue to determine Mr. Owensby's identity. Officer Hunter confirmed that Mr. Owensby was, in fact, the man who ran from him on September 27, 2000. Officer Jorg, therefore, attempted to handcuff Mr. Owensby but he pushed Officer Hunter as he fled on foot. Officer Jorg ran stride for stride with Mr. Owensby and was able to "tackle" him within

---

[9] Officer Hodge cut the shirtsleeve off using Officer Jorg's personal utility knife. Officer Hodge placed the cut off sleeve in the trunk of Officer Jorg's police car.

seconds of him fleeing. Officer Caton grabbed Mr. Owensby's legs and they all three fell to the ground. At that point, Officer Caton made an "Officer needs assistance" broadcast.

Officer Caton "crawled" up Mr. Owensby's legs and lay on his right upper thigh/buttocks area. Officer Caton attempted to grab and secure his right arm, but Mr. Owensby put both hands underneath his chest and kicked his legs. Officer Caton then ordered Mr. Owensby to, "Give me your hands." Officer Caton again attempted to secure Mr. Owensby's right arm, but he was too strong. Officer Caton delivered two palm strikes to the base of Mr. Owensby's right rib cage area. Officer Caton continued to demand, "Give me your hands." After the strikes were delivered, Officer Caton was able to dislodge his right hand.

Mr. Owensby continued to struggle, making it difficult for Officer Caton to get his right arm behind his back. Officer Caton then yelled, "Mace him." Officer Caton assumed Officer Hunter sprayed the chemical irritant because Officer Hunter was positioned near Mr. Owensby's head. Officer Caton also smelled the mace. Officer Caton then said, "I need a cuff." Officer Sellers reached into Officer Caton's handcuff case and gave them to him. In one fluid movement, Officer Caton was able to take the handcuffs from Officer Sellers and cuff Mr. Owensby's right hand.

Mr. Owensby continued to struggle and pulled his right arm away from Officer Caton. Officer Caton delivered three palm strikes to Mr. Owensby's right forearm. Each time Officer Caton delivered a strike, he ordered Mr. Owensby to stop resisting. Officer Hodge used a PR24 to pry Mr. Owensby's right arm out from underneath him. Officer Caton was then able to handcuff Mr. Owensby.

Officers Hodge, Jorg and Caton stood up. Officer Caton then reached down and attempted to pull Mr. Owensby up by the waist, but was unsuccessful. Officer Sellers then grabbed Mr. Owensby around the waist with both hands and lifted him off the ground. Officer Jorg took him under his left arm and Officer Caton took him under his right arm. Officer Caton asked a Golf Manor Police Officer, Robert Heiland, if he could place Mr. Owensby in the Golf Manor patrol car. Officer Heiland said, "Yes."

Officer Heiland opened the rear passenger side of the car door and Officer Sellers attempted to place Mr. Owensby in the car. Officer Caton noticed that Officer Jorg was no longer by the Golf Manor cruiser. Officer Caton walked around the cruiser to the driver's side rear door. He reached in the car and grabbed Mr. Owensby's shirt in an attempt to pull him into the car. Officer Caton's hands slipped off his shirt "so I ducked back under, actually putting my head into the cruiser. I reached across the interior of the cruiser, grabbed him by his clothes, and started pulling him across the interior of the cruiser."[10] Both car doors were then closed. Officer Caton did not remember Mr. Owensby saying anything during the struggle.

Officer Caton walked over to 2092 Seymour Avenue to retrieve his car. Officer Hasse was standing next to his car and asked him several times, "What happened?" The questions annoyed Officer Caton because Officer Hasse did not respond on the "Officer needs

---

[10] This quote was taken from Officer Caton's court transcripts from his criminal trial.

assistance" broadcast. Officer Caton became frustrated and finally answered, "We kicked his ass."

Officer Caton entered his patrol car and drove it back to 2098 Seymour Avenue.[11] He exited his patrol car and noticed Officer Jorg had blood on his shirtsleeve. He then attempted to find some antiseptic but could not locate any. At that point, Officer Caton noticed Sergeant Watts was on the scene. He walked over to him with the intention of reporting the use of force. Sergeant Watts asked for Mr. Owensby's identifying information. Officer Caton could not remember his full name so they walked over to the Golf Manor car to speak with Mr. Owensby.

Officer Caton stated, "Sergeant Watts determined quickly that he wasn't breathing at that point. There was a great deal of blood around his face, so it was necessary for us to glove up before we moved him from the car."[12] Officers Caton and Hasse removed Mr. Owensby from the rear seat and performed CPR until the Cincinnati Fire Division arrived.[13]

### Police Officer David Hunter, Badge P522, District Four

*Note: (Officer Hunter's summary is derived from of his Internal Investigations Section interview and his Hamilton County Court of Common Pleas and Municipal Court trial testimonies.)*

On November 7, 2000, at approximately 1933 hours, Officers Hasse and Sellers made a Mobile Data Terminal (MDT) request for an NTA. Officer Hunter responded to 2092 Seymour Avenue after receiving the MDT request.

When Officer Hunter arrived at 2092 Seymour Avenue, Officers Jorg and Caton were on scene and had provided an NTA to Officers Hasse and Sellers. Officer Hunter was engaged in conversation with Officer Jorg when he observed an individual crossing eastbound on Seymour Avenue, from 2081 Seymour Avenue to 2098 Seymour Avenue. Officer Hunter recognized the subject as an individual who ran from him and Officer Jorg during a drug investigation on September 27, 2000.

Officer Hunter observed the subject walk to 2098 Seymour Avenue, Sam's Telecom. Officers Hunter, Caton and Jorg approached the west side window in order to provide Officer Hunter an opportunity to make a positive identification on the subject.

Officers Jorg and Caton assumed the role of contact officers as they approached Mr. Owensby. Officer Jorg stopped Mr. Owensby in the doorway of 2098 Seymour Avenue. Officer Hunter approached and questioned Mr. Owensby. Officer Hunter identified Mr. Owensby as the individual who ran from him on September 27, 2000. During his questioning, Mr. Owensby broke from the officers and ran into the parking lot. Officers Hunter, Jorg and Caton subdued Mr. Owensby on the ground in the parking lot.

---

[11] This portion of the incident was captured on Officer Spellen's MVR tape.
[12] This quote was taken from the court transcripts of Officer Caton's testimony during his criminal trial.
[13] Mr. Owensby remained handcuffed until the Cincinnati Fire Division arrived on the scene.

7

Mr. Owensby tucked his arms under his body after he fell to the ground. Officer Jorg immediately positioned himself in the area of Mr. Owensby's head and shoulders, attempting to control Mr. Owensby's head. Officer Jorg was in a prone position and perpendicular to the left side of Mr. Owensby's head. Officer Jorg's left forearm was across Mr. Owensby's forehead. After Mr. Owensby was arrested Officer Jorg released his hold.

Officer Hunter was on Mr. Owensby's right side attempting to gain control of his right wrist. Officer Hunter repositioned himself within a couple of feet of Mr. Owensby's head. Officer Jorg maintained his forehead hold and pulled Mr. Owensby's head up to allow Officer Hunter a full facial view to spray the chemical irritant. When Officer Hunter could see Mr. Owensby's face he applied a burst of chemical irritant to Mr. Owensby's facial area. Mr. Owensby grimaced and closed his eyes during the application of the chemical irritant. Officer Hunter observed blood on Mr. Owensby's forehead. Mr. Owensby did not say anything during the remainder of the arrest after the chemical irritant was used.

Officer Hunter returned to the right side of Mr. Owensby's torso and continued attempting to gain control of his right wrist. An unknown officer approached Officer Hunter's position and assisted him in handcuffing Mr. Owensby's right wrist. Officer Caton was on the left side of Mr. Owensby's torso attempting to gain control of his left wrist. Officer Caton punched Mr. Owensby several times in his lower back while telling him to, "Give me your wrist."[14] Officer Hodge took Officer Hunter's PR24 from its holder and used it as a pry tool to gain control of Mr. Owensby's left arm. Officer Hodge assisted Officer Caton with handcuffing Mr. Owensby's left wrist. After Mr. Owensby was handcuffed Officer Caton straddled his buttocks and punched him four to five times in the back. While Officer Caton was punching Mr. Owensby, he was shouting for him to "Stop resisting." At the time Officer Caton was punching Mr. Owensby, he was not combative or resisting.

Officer Caton received permission from Officer Heiland, Golf Manor Police Department, to put Mr. Owensby in the back of his patrol car. Officers Caton and Jorg lifted Mr. Owensby off the ground. Mr. Owensby's feet were in light contact with the ground, "like a drag", as the officers carried him to the car.

Mr. Owensby was silent and motionless as Officer Caton and possibly Officer Jorg carried him to the car. They placed him in the rear right side of the Golf Manor car. After Mr. Owensby was placed in the car, Officer Caton made several swinging motions in Mr. Owensby's direction. The top of Mr. Owensby's head was pressed against the left side door, forcing his chin into his chest. Mr. Owensby's position did not look right to Officer Hunter.

---

[14] This quote was taken from Officer Hunter's IIS interview.

8

### Police Officer Darren Sellers, Badge P672, District Four

*Note: (Officer Sellers' summary is derived from his Internal Investigations Section interview, Homicide Unit interview, and his Hamilton County Court of Common Pleas and Municipal Court trial testimonies.)*

On November 7, 2000, at approximately 1905 hours, Officers Sellers and Hasse were at 2092 Seymour Avenue on a directed patrol. Officers Sellers and Hasse observed an individual they believed to be trespassing at 2092 Seymour Avenue, Sam's Drive-Thru. The subject was identified as Mr. Steven Williams, black male, of 3559 Newton Avenue, Cincinnati, Ohio 45247.

Officer Sellers approached Mr. Williams to conduct a field interrogation. As Officer Sellers approached, Mr. Williams reached into his inside left breast pocket of his coat. Officer Sellers ordered Mr. Williams to remove his hand from his coat. During a consensual conversation, Mr. Williams admitted to Officer Sellers he was attempting to hide the marijuana in his coat when the officers approached. Mr. Williams permitted Officer Sellers to enter his coat and remove the marijuana. Officer Sellers handcuffed Mr. Williams and put him in the rear seat of their car.

Officer Sellers requested another beat car respond to their location with an NTA.[15] Mr. Williams advised the officers he wanted to provide drug information in lieu of being arrested. Officers Jorg and Caton arrived on scene with the citations. After learning Mr. Williams wanted to provide information, Officer Caton telephoned District Four and spoke with Officer Lawson. Officer Lawson and his partner, Officer Hodge, responded to the area of 2092 Seymour Avenue to interview Mr. Williams.

Officer Sellers responded to Sam's Telecom after the ""Officer needs assistance"" broadcast was made. When Officer Sellers arrived at the scene he observed Officer Jorg, Caton, and Hunter on the ground "scuffling" with an individual.

Officer Jorg was positioned in the vicinity of Mr. Owensby's head. Officer Caton was positioned in the area of Mr. Owensby's right hip, struggling to control his right wrist. Officer Hunter was positioned on Mr. Owensby's left side attempting to gain control of his left arm. Officer Sellers approached Mr. Owensby from the left side and stepped over his legs, taking a position in the rear of Officer Caton. While Officer Sellers was assisting Officer Caton, Officer Hunter took a kneeling position approximately one to two feet above and to the right of Mr. Owensby's head.

Officer Caton had Mr. Owensby's right wrist and was trying to get it cuffed. Officer Sellers took Officer Caton's handcuffs from their case, which was in the rear of his gunbelt. Officer Sellers reached over Officer Caton's right shoulder and handcuffed Mr. Owensby's right wrist. Officer Caton maintained control of Mr. Owensby's right wrist.

---

[15] The request was made using an MDT to District Four officers.

Officer Sellers repositioned himself on Mr. Owensby's left side and attempted to pull Mr. Owensby's left arm from under his body. With the assistance of Officer Hodge, Officer Sellers was able to remove Mr. Owensby's left arm and complete the handcuffing. Officer Sellers had no further physical contact with Mr. Owensby after his handcuffing.

After Mr. Owensby was handcuffed, Officer Caton straddled Mr. Owensby's back. Officer Caton proceeded to strike Mr. Owensby several times in the back. Officer Caton was commanding Mr. Owensby to, "Stop resisting, stop resisting." Mr. Owensby was handcuffed, lying on the ground and not resisting at the time Officer Caton struck him.

After Mr. Owensby was secured, Officer Caton grabbed Mr. Owensby under his right arm and Officer Jorg grabbed him under his left arm. The officers lifted Mr. Owensby off the ground. Mr. Owensby was not walking on his own. Officer Jorg received permission from Officer Heiland to place Mr. Owensby in his car.

Officers Jorg and Caton carried Mr. Owensby to the Golf Manor car. Officer Sellers followed the officers to the car. Mr. Owensby was put in the car from the passenger's side rear door. Officers Jorg and Caton lowered Mr. Owensby headfirst onto the rear seat and pushed him into the car. Mr. Owensby offered no physical resistance while being taken to the car. Mr. Owensby did not speak as he was placed in the car. Officer Sellers did not observe any injuries on Mr. Owensby. Officer Sellers had no more physical or visual contact with Mr. Owensby after he was put in the car.

Officer Sellers was not aware of the blood on his shirt until after Mr. Owensby was in the police car and Officer Sellers had returned to his own car. Officer Sellers checked himself for injuries and determined that no police officers were injured. Officer Sellers assumed the blood was from Mr. Owensby. Officer Sellers assumed Mr. Owensby scratched his hand or arm on the ground during the handcuffing. Officer Sellers was not aware Officer Jorg or Officer Caton had blood on their clothing.

### Police Officer Jason Hodge, Badge P162, District Four

*Note: (Officer Hodge's summary is derived from his Homicide Unit interview, IIS interview, Hamilton County Common Pleas Court and Hamilton County Municipal Court testimony.)*

On November 7, 2000, Officer Hodge and his partner, Officer Lawson were working plainclothes in District Four. They received a telephone call from either Officer Caton or Jorg to meet them at 2092 Seymour Avenue to interview Mr. Williams in regard to drug trafficking in the area. As he and his partner approached 2092 Seymour Avenue, they saw a large crowd and decided to meet the officers at Roselawn Park, approximately 500 yards away.

Officers Hodge and Lawson waited in Roselawn Park approximately five to ten minutes before they heard Officer Caton broadcast an "Officer needs assistance". They immediately responded and arrived approximately 30 seconds later. Officer Lawson pulled into the parking lot of Sam's Drive-Thru and stopped the car. Officer Hodge exited his car and

10

observed officers at 2098 Seymour Avenue wrestling with Mr. Owensby. Officer Hodge ran to 2098 Seymour Avenue to assist. As he was running, he noticed Officer Hunter backing away from Mr. Owensby's head area.

Officer Hodge grabbed Officer Hunter's PR24 and knelt down in front of Officer Caton. Officer Hodge noticed that one of Mr. Owensby's hands had a handcuff on it, but he did not remember which hand. He then pried Mr. Owensby's right arm out from underneath him using the PR24 as leverage. Officer Jorg then grabbed the PR24 from him and pried Mr. Owensby's left arm out from underneath him.[16] As a result, Officer Hodge was able to handcuff Mr. Owensby. Officer Hodge did not see any officer apply chemical irritant to Mr. Owensby nor did he smell it. Officer Hodge did not hear Mr. Owensby say anything during or after the struggle.

Officers Caton and Jorg picked Mr. Owensby up off the ground. Officer Hodge described Mr. Owensby's transport to the police car as follows: "Well, I guess when they picked him up, it looked like he was gonna have to be carried to the car. And somebody said, 'Put your feet down.' And then he put his feet down and it appeared to me like somebody that was intoxicated, uh, kinda shuffling their feet ..."[17]

Officer Hodge walked back to the scene of the struggle. When he looked back at the Golf Manor car Officer Caton and a tall, white Cincinnati police officer were putting Mr. Owensby into the car.

Officer Hodge focused his attention on Officer Jorg's bloody shirtsleeve. Officer Hodge was concerned that Officer Jorg might be a victim of a blood exposure. He inspected Officer Jorg's left arm and did not observe any injuries. He then took Officer Jorg's utility knife and cut Officer Jorg's shirtsleeve off. Officer Hodge placed the shirtsleeve in the trunk of Officer Jorg's patrol car.

Officer Hodge saw blood on Mr. Owenby's face when he approached him to assist Officers Caton, Jorg and Hunter. Officer Hodge knew from the time he arrived on the scene that Mr. Owensby was injured and did not seek medical attention for him. Officer Hodge informed Sergeant Browner of his involvement in the struggle. Mr. Owensby was not Officer Hodge's prisoner, therefore, he did not believe he was responsible for him.

**Police Officer Abraham Lawson, Badge P241, District Four**

*Note: (Officer Lawson's summary is derived from his Homicide Unit interview, Internal Investigations Section interview, Hamilton County Court of Common Pleas and Municipal Court trial testimonies.)*

On November 7, 2000, Officer Lawson was assigned to the District Four Mini-Tact Unit. He was partnered with Officer Hodge, operating as Units 4566 and 4564, respectively.

---

[16] Officer Hodge stated in his IIS interview on March 14, 2002, he could not comment on Officer Jorg's actions because he was focused on controlling Mr. Owensby's right arm.
[17] This quote was taken from Officer Hodge's IIS interview on March 14, 2002.

Officer Caton called Officer Lawson at District Four. Officer Caton requested Officer Lawson and Hodge respond to 2092 Seymour Avenue to interview a subject, Mr. Steven Williams, who wanted to provide information regarding drug activity.

Officers Lawson and Hodge responded to the area of 2092 Seymour Avenue to interview Mr. Williams. However, due to their covert assignment, they requested Officer Caton bring their suspect to Roselawn Park. Officer Caton advised they were watching a subject and would meet as soon as they were finished.

Officers Lawson and Hodge were waiting in Roselawn Park when they heard the ""Officer needs assistance"" broadcast. The officers responded to 2092 Seymour to assist. Upon arrival, Officer Hasse redirected them to 2098 Seymour. Officer Hodge responded on foot and Officer Lawson drove their car to 2098 Seymour Avenue.

When Officer Lawson arrived at 2098 Seymour Avenue he observed Officers Jorg, Caton, Hunter, Sellers and Hodge on the ground behind a gray car struggling with an individual, later identified as Mr. Owensby. The officers were attempting to handcuff the subject. Officer Jorg was positioned on the left side of the subject's head. Officer Caton was positioned on Mr. Owensby's left side at his waist. Officer Caton had Mr. Owensby's left arm handcuffed. Officers Hunter and Sellers were positioned on the subject's right side, attempting to secure his right arm. Officer Hodge used a PR24 as a pry tool to assist getting the subject handcuffed. Officer Lawson's attention was split between the struggle and monitoring the crowd to provide visual cover for the struggling officers.

Prior to Mr. Owensby being handcuffed, Officer Lawson observed Officers Jorg and Hunter strike Mr. Owensby in the head area.[18] No one struck Mr. Owensby after he was handcuffed. Mr. Owensby's eyes appeared swollen and he had blood on his face.[19] Officer Lawson saw blood on Officer Jorg's shirt.

Officer Lawson did not hear Mr. Owensby say anything once he arrived on the scene of the struggle. Officer Lawson did not see any movement from Mr. Owensby after he was handcuffed. Officer Caton and an unknown officer assisted Mr. Owensby to the Golf Manor car. Mr. Owensby was "kind of limp...not walking on his own."[20] Mr. Owensby "fell into the car". Another officer pushed his legs in behind him.

---

[18] Officer Lawson is the only officer to report observing Officers Jorg and Hunter strike Mr. Owensby in the head.

[19] In his IIS interview on May 1, 2002, Officer Lawson stated he only recalls seeing Mr. Owensby from a side view.

[20] In his IIS interview on May 1, 2002, Officer Lawson stated he did not see Mr. Owensby's feet. However, he believes Mr. Owensby was "walking, staggering like he was intoxicated."

12

### Police Officer Victor Spellen, Badge P862, District Four

*Note: (Officer Spellen's summary is derived from his Homicide Unit interview, Internal Investigations Section interview and his Hamilton County Court of Common Pleas trial testimony.)*

On November 7, 2000, at approximately 1948 Hours, Officer Spellen responded to 2098 Seymour Avenue for an ""Officer needs assistance"" dispatch. Officer Spellen was in the area of Paddock Road and Seymour Avenue with Officer Brian Brazile, Badge P398, Unit 4265, when the assistance request was broadcast.

Officer Spellen drove around the rear of 2098 Seymour Avenue and entered the parking lot from the northeast side. Officer Spellen's MVR was activated when he began his response and remained activated the entire time he was at 2098 Seymour Avenue. As Officer Spellen entered the parking lot of 2098 Seymour Avenue, PCS advised all responding units to disregard the request for assistance.[21]

Officer Spellen remained on the scene to check on the well-being of the involved officers, specifically, Officer Jorg. Officer Jorg was Officer Spellen's Primary Field Training Officer. When Officer Spellen observed Officer Jorg he appeared to be upset. Officer Spellen made an inquiry into the circumstances leading up to the arrest and the location of Mr. Owensby. Officer Spellen learned Mr. Owensby was in the rear of a Golf Manor patrol car.

Officer Spellen observed Mr. Owensby through the rear right-side window of the Golf Manor patrol car. Mr. Owensby was in a seated position, slumped to his left side with his chin to his chest and his head turned to the right. Officer Spellen observed Mr. Owensby was not moving or talking.

Officer Spellen was present when Sergeants Watts and Browner were engaged in a conversation with Officers Hunter and Jorg regarding the incident. Officer Spellen observed Officer Jorg demonstrate the hold used on Mr. Owensby. Officer Jorg demonstrated this hold to Sergeant Watts. Officer Spellen heard Officer Jorg say he got the bloodstain on his left shirtsleeve while this hold was being applied. Officer Spellen concluded the blood belonged to Mr. Owensby. Officer Spellen did not engage Sergeants Watts or Browner in conversation. Officer Spellen left the scene during Officer Jorg's conversation with the supervisors.

*Note: (On October 25, 2001, Officer Spellen testified in Hamilton County Common Pleas Court Case #B0009502, State of Ohio vs. Robert B. Jorg. During his testimony Officer Spellen recounted the events of November 7, 2000. Officer Spellen demonstrated the "neck hold" Officer Jorg demonstrated for Sergeant Watts. Officer Spellen's court demonstration differed from the demonstration he provided Homicide Unit investigators.[22]*

---

[21] This information was taken directly from Officer Spellen's MVR.
[22] This information is documented in Officer Spellen's trial transcript and Homicide Unit interview transcript.

> *On March 13, 2002, investigators of the Internal Investigations Section interviewed Officer Spellen. During the interview, Officer Spellen was directed to explain why his court testimony differed from his statement to Homicide Unit investigators. Officer Spellen told IIS investigators that he changed his description of Officer Jorg's arm position for his court testimony. Officer Spellen told a "lie" to the court because he did not want the hold to appear as threatening to the court and the hold would not look as damaging to Officer Jorg.*[23]
>
> *The following is an excerpt from the Officer Spellen's statement to investigators of the Internal Investigations Section concerning the discrepancy between his trial testimony and his statement to the Homicide Unit.)*

| | |
|---|---|
| **Second Internal Investigator:** | *...What happened in those months to make us go from this is what he did when he was out there, to, this is what he did when I got on the stand testifying.* |
| **Officer Spellen:** | *Nothing Happened.* |
| **Second Internal Investigator:** | *Then what changed? Why did the hold change?* |
| **Officer Spellen:** | *I don't see the drastic difference from my statement saying that Officer Jorg said that he had Owensby in some type of a head hold or head wrap or neck hold.* |
| **Second Internal Investigator:** | *Yeah. Let, let me tell you what the difference is.* |
| **Officer Spellen:** | *Whether, whether the hold. Whether I made my arm this,* |
| **Internal Investigator:** | *Victor, Do you not see this?* |
| **Officer Spellen:** | *or whether I made my arm like this.* |
| **Internal Investigator:** | *Do you not see this difference here, this or this? You do not see the difference there?* |
| **Officer Spellen:** | *Why did you put your arm ----?* |
| **Internal Investigator:** | *What is this? What does this do? What is that?* |
| **Second Internal Investigator:** | *Your statement was, "He had him in some type of neck restraint." That's what you said.* |

---

[23] These statements can be located in Officer Spellen's IIS interview transcript pages 51-57, from March 13, 2002.