# City of Cincinnati



Interdepartmental Correspondence Sheet

Date 12/10/02

| | |
|---|---|
| To | Colonel Thomas H. Streicher, Jr., Police Chief |
| From | Captain Andrew G. Raabe, District Three Commander |
| Copies to | |
| Subject | **Pre-Disciplinary Hearing Summary – Police Officer Patrick Caton** |

COPY

On Monday November 18, 2002 at 1030 hours, Captain Andrew G. Raabe conducted a pre-disciplinary hearing on the charges of Failure of Good Behavior and Neglect of Duty placed by the Internal Investigations Section and Office of Municipal Investigations against Police Officer Patrick Caton of Impound Unit. He was charged with violations of Rules 1.01A, 1.01C, 1.01D, 1.01E, 1.23 and 2.12 of the manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Department.

### REPRESENTAION:

Mr. Don Hardin Lodge #69 FOP attorney represented Officer Caton at the hearing. Also present were Sergeants Maris Herold and Anthony Carter of Internal Investigations Section, and Mr. John Plahovinsk from the Office of Municipal Investigations.

### SPECIFICATION I:

On November 7, 2000, Officer Caton (P655) was aware of the use of chemical irritant. Officer Caton carried Mr. Owensby to the patrol car and failed to provide him with fresh air and/or water.

Officer Caton's actions are in violation of section 1.01 (A) of the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Division, which states:

1.01    Members shall not commit any acts or omit any act, which constitute a violation of any of the Rules, regulations, procedures, directives, or orders of the Division.

A.    Members shall not negligently fail to carry out any section, regulation, procedure, directive, or order of the Division, which may lead to risk of physical injury to another or financial loss to the Division, to wit:

**Exhibit 35**

Procedure 12.545 <u>Use of Force:</u>

A. Use of chemical irritant (in part);
5.  Expose individuals sprayed with chemical irritant to fresh air. Give them an opportunity to rinse their face with plenty of clear, cool water.

**Specification II:**

On November 7, 2000, Officer Caton was aware Mr. Owensby was injured. Officer Caton failed to tend to or seek medical aid for Mr. Owensby's injuries.

Officer Caton's actions are in violation of section 1.01 (C) of the Manual of Rules and Regulations for the Cincinnati Police Division, which states:

1.01  Members shall not commit any acts or omit any act, which constitute a violation of any of the Rules, regulations, procedures, directives, or orders of the Division.

B.  Members shall not negligently fail to carry out any section, regulation, procedure, directive, or order of the Division, which leads to physical injury to another or financial loss to the Division, to wit:

Procedure 12.545 <u>Use of Force</u>

Policy (in part);

Following any use of force resulting in the citizen's injury, officers will ensure appropriate first aid is rendered immediately once the incident scene is stabilized.

**Specification III**

On November 7, 2000, Officer Caton transported Mr. Owensby to the patrol car. Officer Caton left Mr. Owensby, unattended, in the patrol car.

Officer Caton's actions are in violation of section 1.01 (E) of the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Division, which states:

1.01  Members shall not commit any acts or omit any act, which constitute a violation of any of the Rules, regulations, procedures, directives, or orders of the Division.

E.  Members shall not intentionally fail to carry out any section, regulation, procedure, directive, or order of the Division, which leads to serious injury to another, to wit;

Procedure 12.600 (in part)

A. Transporting Prisoners

5. Never leave prisoners unattended inside cars.

### Specification IV

On November 7, 2000, Officer Caton punched Mr. Owensby in the back after Mr. Owensby was handcuffed. Mr. Owensby was not resisting or combative. Officer Caton used unnecessary force when arresting Mr. Owensby.

Officer Caton's actions are in violation of section 1.23 of the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Division, which states: -

1.23 Members shall not use more force in any situation than is reasonably necessary under the circumstances. Members shall use force in accordance with law and Division procedure. To wit:

Procedure 12.545 Use of Force:

  Policy (in part);

When officers have the right to make an arrest, they use whatever force is reasonably necessary to apprehend the offender or effect the arrest, and no more. They must avoid using unnecessary violence.

### Specification V

On November 7, 2000, Officer Caton failed to immediately report his use of force to a supervisor.

Officer Caton's actions are in violation of section 1.01 (D) of the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Division, which states:

1.01 Members shall not commit any acts or omit any act, which constitute a violation of any of the Rules, regulations, procedures, directives, or orders of the Division.

C. Members shall not intentionally fail to carry out any section, regulation, procedure, directive, or order of the Division, which leads to physical injury to another or financial loss to the Division, to wit:

12.545 Use of Force:

Policy (in part);

Whenever employees use deadly force, force, chemical irritant, or confronts active resistance that results in injury to a citizen, or have knowledge of any of the above, they will immediately notify a supervisor.

**Specification VI**

On November 7, 2000, Officer Caton observed an injury to Mr. Owensby and rendered no appropriate first aid once the incident scene was stabilized. Officer Caton's action violated Procedure 12.545 Use of Force, and the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Division, section 2.12.

> 2.12 Members are responsible for insuring the safety and welfare of persons and their personal property when transporting or having custody of persons who are sick, injured, arrested, or incapacitated in any way.

Procedure 12.545 Use of Force

Following any use of force resulting in a citizen's injury, officers will ensure appropriate first aid is rendered immediately once the incident scene is stabilized

**The following is a summary of the information presented in support of Specification I:**

- IIS interviews confirm that Officer Caton was aware that Mr. Owensby had been maced, and that Officer Caton transported Mr. Owensby to the car, did not roll down the windows, nor provide water for his face. Procedure 12.545 is specific on these requirements. Officer Caton was the last officer to shut the door on Mr. Owensby, knowing his condition, and knowing that he was confined in a car without fresh air or water. Officer Caton did not check nor insure that any other officer checked on the prisoner. Officer Caton did not take any steps to immediately provide air, water, or aid.

**The following is a summary of information presented as rebuttal by Mr. Hardin regarding Specification I:**

- Mr. Hardin stated Mr. Owensby was on the ground for two or more minutes prior to being transported to the Golf Manor car, therefore Officer Caton believed Mr. Owensby was exposed to fresh air.

- Mr. Hardin stated that according to Officer Caton's training, he was under the impression that it is better to let the mace air dry rather than use water and that the Police Department does not make water available for officers to accomplish that purpose. Mr. Hardin felt that if this is a requirement then the Police Department should provide a means to provide water rather than have officers go search for it. Mr. Hardin added that no other officers provided this to Mr. Owensby, yet they are not charged.

4

**Conclusion: Specification I:**

Information presented at the hearing and IIS and courtroom transcripts and statements submitted as part of the overall investigation support Specification I.

**Finding Specification I:**

There is a finding of **sustained** for Specification I.

**The following is a summary of information presented in support of Specification II:**

- Officer Caton admitted in his IIS interview that he had to drag Mr. Owensby through the back seat of the car. Officer Caton said that when he left Mr. Owensby in the car, his left knee was pulled up underneath him and his shoulders and head were laying on the seat facing toward the front of the cruiser.

- Officer Caton, in his IIS interview, described seeing Mr. Owensby in the back of the car in such a position that a reasonable officer would have to believe Mr. Owensby might be in distress or in need of medial aid. However, Officer Caton shut the door and walked away.

- During Officer Caton's IIS interview he stated that after he shut the door of the Golf Manor car, he did not roll down the windows and did not check or verify Mr. Owensby's condition until after Sergeant Watts discovered Mr. Owensby was injured. Officer Caton stated he and other officers could feel the effects of the mace.

- During Officer Caton's IIS interview he stated he saw blood on Officer Jorg's shirt and that he knew it was not Officer Jorg's or another officer's blood, so it must have been the suspect's, yet he still did not check on Mr. Owensby or call for medial aid.

- The MVR videotape shows that no officers were in danger and that conditions at the scene were stabilized.

**The following is a summary of information presented as rebuttal by Mr. Hardin regarding Specification II:**

- Mr. Hardin stated that Officer Caton did not know Mr. Owensby was injured until Sergeant Watts checked on his condition at the car. In his IIS interview, Officer Caton reported he did not see any blood or know of any injury until Mr. Owensby was brought out of the car and Officer Caton helped perform CPR.

- Mr. Hardin stated that Section 12.545 stated that first aid should be rendered immediately once the scene is stabilized. Mr. Hardin asserted that Officer

Spellen's MVR video shows that officers are still picking up equipment, talking to one another and that general confusion still existed after Mr. Owensby was placed in the car and the scene was not stabilized.

- Mr. Hardin stated that Officer Caton's testimony describes resistive behavior on the part of Mr. Owensby when he was attempting to transport and place him in the car. Mr. Hardin added that there is no proof that Officer Caton observed any injury on Mr. Owensby and that with the resistive behavior there is no reason to assume that Officer Caton would have known that Mr. Owensby was injured.

### Conclusion: Specification II:

Information presented during the hearing and IIS and courtroom transcripts and statements submitted as part of the overall investigation support Specification II.

### Finding: Specification II:

There is a finding of **sustained** for Specification II.

### The following is a summary of information presented in support of Specification III:

- The IIS investigation determined that Officer Caton carried or transported Mr. Owensby to the Golf Manor car and that he was the officer who dragged the prisoner across the back seat of the car. Officer Caton was the last person to close the car door and have contact with Mr. Owensby after he was originally placed in the car.

- Officer Caton, after being the last person at the car, should have checked on Mr. Owensby's condition in the car or personally made sure that another officer checked on his condition rather than just assume that two Golf Manor officers would do this. Not only did Officer Caton leave the area of the car, he left the entire lot.

- Officer Caton felt secure enough to leave the scene to get his car. This added validity to the fact that the officer must have believed the scene was stabilized otherwise he would not have left his fellow officers with crowd or disorder problems.

- All of the officers on the scene that night shared the responsibility for insuring the prisoner was properly attended.

### The following is a summary of information presented as rebuttal by Mr. Hardin regarding Specification III:

- Mr. Hardin stated that Mr. Owensby was placed in the Golf Manor car because it was the closest car around. He added that there were two Golf Manor officers in

close proximity to the car. Mr. Hardin further stated that under these circumstances, Officer Caton did not feel Mr. Owensby was left unattended. Mr. Hardin felt there was an assumption by Officer Caton that the police officers whose car the prisoner was placed in would watch over the prisoner. Mr. Hardin also pointed out that the MVR video records that five other officers were all still in the area when Officer Caton left to get his vehicle.

- Mr. Hardin stated that there is a question as to just whose prisoner Mr. Owensby was. Officer Hunter was the officer who had the most contact with Mr. Owensby previously and initiated the contact on this night. According to Mr. Hardin, Officer Caton was just assisting Officer Hunter and Officer Hunter should have stayed with the prisoner as the primary arresting officer until things were secured.

- Mr. Hardin pointed out that according to Sergeant Browner's CIS interview, she stated when she first arrived on the scene on this night, she walked directly towards the area of the Golf Manor car where Sergeant Watts was standing having a conversation with officers. Mr. Hardin added that with all these other officers at the scene, including the Golf Manor officer whose car the prisoner was in, that there is no way that this should all be pinned on Officer Caton.

### Conclusion Specification III:

Information presented during the hearing and IIS and courtroom transcripts and statements submitted as part of the overall investigation support Specification III.

### Finding Specification III :

There is a finding of **sustained** for Specification III.

### The following is a summary of information presented in support of Specification IV:

- Officers Hunter and Sellers told IIS that officer Caton punched Mr. Owensby in the back after Mr. Owensby was handcuffed and no longer resisting.

### The following is a summary of information presented as rebuttal by Mr. Hardin in reference to Specification IV:

- Mr. Hardin stated that Officer Caton did not punch Mr. Owensby in the back after he was handcuffed. Mr. Hardin added that although Officers Hunter and Sellers testified at his trial that this occurred, a jury listened to that testimony and came back with a not guilty verdict for assault. Mr. Hardin believed this showed these officers had no credibility and that this administrative charge was meant to try to nullify the jury verdict for Officer Caton

- Mr. Hardin stated that both Officer Jorg and Officer Hunter where heard to be specifically asked by Sergeant Watts on the video if they observed any hits, punches or strikes and that both stated they had not. Mr. Hardin felt that Officer

7

Hunter had the opportunity to report any strikes observed at that time and he did not do it because this never happened. Mr. Harding pointed out there were other witnesses around on that night that also did not see this occur.

- Mr. Hardin stated that there is testimony that Officer Hunter was seen striking Mr. Owensby in the head with his hand by one police officer on the scene. There is also testimony by Officer Sellers that Officer Hunter was observed macing Mr. Owensby after he was handcuffed, yet there are no charges against Officer Hunter. Mr. Hardin felt it is confusing that Officer Hunter is being given the benefit of the doubt while Officer Caton is not.

- Mr. Hardin added that there were so much confusion and conflicting witness statements in regarding when Officer Caton was punching Mr. Owensby that the officer should be given the benefit of the doubt on this charge.

### Conclusion Specification IV:

Information presented during the hearing and IIS and courtroom transcripts and statements submitted as part of the overall investigation support Specification IV.

### Finding Specification IV:

There is a finding of **sustained** for Specification IV.

### The following is a summary information presented in support of Specification V:

- Officer Jorg told IIS that Officer Caton made the statement that he forgot to report the use of force that night to Sergeant Watts.

- Officer Caton did not report his strikes punches immediately or at any other time to a supervisor, although he had the opportunity to do so.

### The following is a summary of information present as rebuttal by Mr. Hardin in reference to Specification V:

- Mr. Hardin stated that Officer Caton is the first and only officer on the scene that night to immediately notify a supervisor to respond to the scene for a macing. Mr. Hardin added that if Officer Caton had wanted to hide anything he would not have done this.

- Mr. Hardin stated that Officer Caton attempted to give a summary of what occurred to Sergeant Watts but this was interrupted when Watts walked away to try to find out the identity of the prisoner. Later, when Officer Caton was placed with Sergeant Shearer, he wanted to say what occurred but was told not to make any further statements until taken to CIS. Mr. Hardin felt that Officer Caton did not have the opportunity to report the use of force at the scene.

8

- Mr. Hardin stated that Officer Caton did immediately report this to a supervisor. While he only reported the use of mace on the radio it is the supervisor who responds to the scene, takes the information and determines what type of report is to be made.

**Conclusion Specification V:**

Information presented during the hearing and IIS and courtroom transcripts and statements submitted as part of the overall investigation support Specification V.

**Finding Specification V:**

There is a finding of **sustained** for Specification V.

**The following is a summary of information presented in support Specification VI:**

- Officer Caton, in his IIS interview, described seeing Mr. Owensby in the back of the car in such a position that a reasonable officer would have to believe Mr. Owensby might be in distress or in need of medial aid. However, Officer Caton shut the door and walked away.

- During Officer Caton's IIS interview he stated he saw blood on Officer Jorg's shirt and that he knew it was not Officer Jorg's or another officer's blood, so it must have been the suspect's, yet he still did not check on Mr. Owensby or call for medial aid.

- The MVR videotape shows that no officers were in danger and that conditions at the scene were stabilized.

**The following is a summary of the mitigation by Mr. Hardin in reference to Specification VI:**

- Mr. Hardin again stated that the requirement under 12.545 is to provide medical aid after the scene is stabilized. Mr. Hardin added that the Police Department has never given a definition to officers of what exactly stabilized means in their training and that the video clearly shows the scene is not stabilized. Mr. Hardin maintained that Officer Caton did not know that Mr. Owensby was injured and once it was discovered that he was injured that the officer assisted with CPR.

- Mr. Hardin added it is apparent that no one felt or believed that Mr. Owensby was injured on this night expect possibly Officer Brazile or Sergeant Watts. Mr. Hardin again added that other officers were in the vicinity of the Golf Manor car when Officer Caton left the area.

## Conclusion Specification VI:

Information presented during the hearing and IIS and courtroom transcripts and statements submitted as part of the overall investigation support Specification VI.

## Finding Specification VI:

There is a finding of sustained for Specification VI.

## The following is a summary of information offered in mitigation by Mr. Hardin:

Mr. Hardin stated that Officer Caton was one of two officers who attempted CPR on Mr. Owensby once it was discovered that he was in need of medical aid. Mr. Hardin added that Officer Caton felt terrible about the tragedy of Mr. Owensby's death. However, Officer Caton did not kill Mr. Owensby nor was he immediately aware that Mr. Owensby was injured or Officer Caton would have called for first aid at that time. Mr. Harding stated that all the inconsistencies in this case and confusion with the statements from supervisors, officers, and civilian witnesses, that to be fair Officer Caton needed to be given the benefit of the doubt on some of these charges.

## Employee Disciplinary Profile:

| Date | Discipline | Section | |
|---|---|---|---|
| 6/22/00 | Written Reprimand | 1.02b | Failure of Good behavior<br>Unauthorized Firearm while Intoxicated. |
| 6/22/00 | 24 Hour Suspension | 1.04 | Failure of Good Behavior<br>Driving under the Influence |
| 11/23/99 | Written Reprimand | 1.02 | Neglect of Duty<br>Failure to make Report. |

## Recommendation:

10 days (80 hours) suspension.

# City of Cincinnati



Interdepartment
Correspondence Sheet

February 25, 2003

**To:** Col. Thomas H. Streicher, Jr., Police Chief

**From:** Valerie A. Lemmie, City Manager

**Subject:** Police Officer Patrick Caton



I am in receipt of the hearing officer's pre-disciplinary hearing summary regarding Patrick Caton. Officer Caton had a hearing on the charges of Failure of Good Behavior and Neglect of Duty. The hearing officer sustained charges that Officer Caton violated sections 1.01A, 1.01C, 1.01D, 1.01E, 1.23 and 2.12 of the Manual of Rules and Regulations and Disciplinary Procedures for the Cincinnati Police Department.

These specifications include a finding that Officer Caton used more force than was reasonably necessary under the circumstances, and a finding that he failed to carry out a procedure of the Department which led to serious injury to another, by leaving a prisoner unattended inside a police vehicle.

The hearing officer made a recommendation of a ten (10) day suspension. However, after receipt of the recommendation received by you, the Director of Human Resources and the City Solicitor to the contrary, I find that a ten (10) day suspension is not appropriate under these circumstances. Based upon the severity of all of the sustained charges, as well as the cumulative effect of the six (6) sustained charges and Officer Caton's prior disciplinary history, I am disapproving the hearing officer's recommendation in this case and concurring with your recommendation and that of the Human Resources Director and City Solicitor.

In accordance with provisions outlined in Rule 13.01 of the Police Department's Manual of Rules and Regulations and Disciplinary Process, in place at the time of the violation, I order **Dismissal** on both the Failure of Good Behavior and the Neglect of Duty charges. Please expeditiously take any and all steps necessary to implement the above referenced discipline.

17S-8  FVU



Form 32-S BDYX (Rev. 1/85)

# City Of Cincinnati
## Notice of Disciplinary Action, Layoff or Displacement

Employee ID.
Social Sec. No.: ▢▢▢▢▢▢▢▢▢

Name: Patrick B. Caton

Address: 3425 Spring Grove Avenue

City, State, Zip: Cincinnati, Ohio 45225

Job Title/Classification: Police Officer

Dept./Div.: Police Department

This is your Notice of: __XX__ Disciplinary Action
(Check One)

_____ Layoff

_____ Displacement to position of _____

Effective Date of Disciplinary Action, Layoff, or Displacement: ▢▢▢▢

**Complete For All Disciplinary Actions**

**Reason Codes** (Enter up to 3 codes)
1: `0 6`   2: `0 7`   3: ▢▢

**Penalty Codes** (Enter up to 2 codes)
1: `0 7`   2: ▢▢

**Hours Penalized** (Enter if applicable)
▢▢▢▢

01—Failed Probation
02—Incompetency
03—Inefficiency
04—Dishonesty
05—Insubordination
06—Neglect of Duty
07—Failure of Good Behavior
08—Substance Abuse
09—Excessive Absenteeism
10—Violation of C.S. Rules/ C.S. Law/Code of Ethics
11—Other

01—Suspension
02—Loss of Vacation Time
03—Loss of Off-Day Time
04—Loss of Holiday Time
05—Demotion*
06—Reduction in Pay*
07—Dismissal*
09—Other

*Personnel Action Form (Form 14) required

**Complete For All Layoffs and Displacements**
**Reason Codes** (Enter 1 Code)

41—Lack of Work*
42—Lack of Funds*
43—Job Abolishment*
49—Other

*Personnel Action Form (Form 14) required

**Specifications:** Attach a sheet giving full details of the charges so that the employee may be placed fairly upon his/her defense. Include disciplinary action(s) assessed, including dates and nature of offense(s), except written reprimands older than three (3) years. If demotion/displacement in lieu of layoff, include new title. If Job Abolishment, include one of the following reasons: 1. Reasons of Economy 2. Lack of Work, or 3. Reorganization for the efficient operation of the employing unit.

_____
(Appointing Authority)

This Notice Served Upon: _____

By Registered Mail/Certified Mail/ Personally (Strike out those not applicable)

This _____ Day _____
19__ At _____ O'Clock _____ M.

_____
(Signature of Individual Service This Notice)

**To The Employee:**
You have 10 calendar days from the date this notice is filed with the Civil Service Commission in which to appeal this action to the Civil Service Commission. Dismissals, demotions, layoffs, displacements, reductions in pay, suspensions of more than 3 days (uniform police personnel may appeal suspension of any duration) and first half probationary failures are appealable.

(Appeals must contain the person's name, address and phone number and be sent or brought to Room 215, City Hall.)

Approved As To Form By Law Dept.: _____

Dept./Div. Head Initials: _____

Approved As To Equity By Personnel Dept.: _____

1 White—Employee  2 Canary—Civil Service  3 Pink—Department  4 Goldenrod—Division

Page 2
Form 32

Form 32 Attachment
Pre-Disciplinary Hearing
November 18, 2002
Police Officer Patrick Caton

Charges: Failure of Good Behavior and Neglect of Duty

**SPECIFICATION I:**

On November 7, 2000, Officer Caton (P655) was aware of the use of chemical irritant. Officer Caton carried Mr. Owensby to the patrol car and failed to provide him with fresh air and/or water.

Officer Caton's actions are in violation of Rule 1.01 (A) of the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Division, which states:

Rule 1.01   Members shall not commit any acts or omit any act, which constitute of any of the rules, regulations, procedures, directives, or orders of the Division.

    A. Members shall not negligently fail to carry out any rule, regulation, procedure, directive, or order of the Division, which may lead to risk of physical injury to another or financial loss to the Division. To wit:

Procedure 12.545 Use of Force:

    B. Use of chemical irritant (in part);

        5. Expose individuals sprayed with chemical irritant to fresh air. Give them an opportunity to rinse their face with plenty of clear, cool water.

**Specification II**

On November 7, 2000, Officer Caton was aware Mr. Owensby was injured. Officer Caton failed to tend to or seek medical aid for Mr. Owensby's injuries.

Officer Caton's actions are in violation of Rule 1.01 (C) of the Manual of Rules and Regulations for the Cincinnati Police Division, which states:

Rule 1.01   Members shall not commit any acts or omit any act, which constitute of any of the rules, regulations, procedures, directives, or orders of the Division.

    C. Members shall not negligently fail to carry out any rule, regulation, procedure, directive, or order of the Division, which leads to physical injury to another or financial loss to the Division. To wit:

Form 32
IIS Case #00248

Procedure 12.545 <u>Use of Force</u>

Policy (in part);

> Following any use of force resulting in the citizen's injury, officers will ensure appropriate first aid is rendered immediately once the incident scene is stabilized.

## Specification III

On November 7, 2000, Officer Caton transported Mr. Owensby to the patrol car. Officer Caton left Mr. Owensby, unattended, in the patrol car.

Officer Caton's actions are in violation of Rule 1.01 (E) of the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Division, which states:

Rule 1.01  Members shall not commit any acts or omit any act, which constitute of any of the rules, regulations, procedures, directives, or orders of the Division.

> E. Members shall not intentionally to carry out any rule, regulation, procedure, directive, or order of the Division, which leads to serious injury to another. To wit;

Procedure 12.600 (in part)

C. Transporting Prisoners

5. Never leave prisoners unattended inside cars.

## Specification IV

On November 7, 2000, Officer Caton punched Mr. Owensby in the back after Mr. Owensby was handcuffed. Mr. Owensby was not resisting or combative. Officer Caton used unnecessary force when arresting Mr. Owensby.

Officer Caton's actions are in violation of Rule 1.23 of the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Division, which states:

Rule 1.23  Members shall not use more force in any situation than is reasonably necessary under the circumstances. Members shall use force in accordance with law and Division procedure. To wit:

Procedure 12.545 <u>Use of Force</u>:

Page 4
Form 32

Policy (in part);

> When officers have the right to make an arrest, they use whatever force is reasonably necessary to apprehend to offender or effect the arrest, and no more. They must avoid using unnecessary violence.

## Specification V

On November 7, 2000, Officer Caton failed to immediately report his use of force to a supervisor.

Officer Caton's actions are in violation of Rule1.01 (D) of the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Division, which states:

Rule 1.01   Members shall not commit any acts or omit any act, which constitute of any of the rules, regulations, procedures, directives, or orders of the Division.

> D. Members shall not intentionally fail to carry out any rule, regulation, procedure, directive, or order of the Division, which leads to physical injury to another or financial loss to the Division. To wit:

12.545 <u>Use of Force:</u>

Policy (in part);

> Whenever employees use deadly force, force, chemical irritant, or confronts active resistance that results in injury to a citizen, or have knowledge of any of the above, they will immediately notify a supervisor.

## Specification VI

The allegation that on November 7, 2000, Officer Caton observed a medical injury to Mr. Owensby and rendered no appropriate first aid immediately once the incident scene is stabilized is sustained. Officer Caton's action violated CPD Procedure Manual Section 12.545, Use of Force, and the Manual of Rules and Regulations and Disciplinary Process, Section Two, 2.12.

Rule 2.12   Members are responsible for insuring the safety and welfare of persons and their personal property when transporting or having custody of persons who are sick, injured, arrested, or incapacitated in any way.

Procedure 12.545

Form 32
IIS Case #00248

Page 5
Form 32

Following any use of force resulting in a citizen's injury, officers will ensure appropriate first aid is rendered immediately once the incident scene is stabilized.

**Employee Profile Information:**

| Date | Discipline | Section | Failure of Good Behavior |
|---|---|---|---|
| 6/22/00 | Written Reprimand | 1.02b | Unauthorized Firearms while Intoxicated |
| 6/22/00 | 24 Hour Suspension | 1.04 | Failure of Good Behavior D.U.I. |
| 11/23/99 | Written Reprimand | 1.02 | Neglect of Duty Failure to make report |

Form 32
IIS Case #00248