Case 1:01-cv-00769-SAS    Document 108-32    Filed 03/11/2004    Page 1 of 5

Estate of Roger Owensby vs. City of Cinti.                    PATRICK E. CATON
October 17, 2003

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

- - - - - - - - - - - - - - -
ESTATE OF ROGER D.            :
OWENSBY JR., et al.,          :
                              :
        Plaintiffs,           :
   vs.                        :   Case No. 01-CV-769
                              :   (Judge S. A. Spiegel)
CITY OF CINCINNATI,           :
et al.,                       :
                              :
        Defendants.           :
- - - - - - - - - - - - - - -


        Videotaped deposition of PATRICK EDMUND

CATON, a defendant herein, called by the plaintiffs

for cross-examination, pursuant to the Federal Rules

of Civil Procedure, taken before me, Wendy Davies

Welsh, a Registered Diplomate Reporter and Notary

Public in and for the State of Ohio, at the offices

of Helmer, Martins & Morgan Co. LPA, 1900 Fourth &

Walnut Centre, 105 East Fourth Street, Cincinnati,

Ohio, on Friday, October 17, 2003, at   a.m.

Estate of Roger Owensby vs. City of Cinti.
October 17, 2003

PATRICK E. CATON

**Page 2**

```
 1  APPEARANCES:

 2     On behalf of the Plaintiffs:

 3        Paul B. Martins, Esq.
          Don Stiens, Esq.
 4        Frederick M. Morgan, Jr. Esq.
          Helmer, Martins & Morgan Co. LPA
 5        Suite 1900, Fourth & Walnut Centre
          105 East Fourth Street
 6        Cincinnati, Ohio  45202
          Phone:  (513) 421-2400
 7
          John J. Helbling, Esq.
 8        The Helbling Law Firm, L.L.C.
          3672 Springdale Road
 9        Cincinnati, Ohio 45251
          Phone:  (513) 923-9740
10
    On behalf of the Defendants City of Golf Manor,
11  Stephen Tilley, Roby Heiland and Chris
    Campbell:
12
          Lynne Marie Longtin, Esq.
13        Rendigs, Fry, Kiely & Dennis
          900 Fourth & Vine Tower
14        One West Fourth Street
          Cincinnati, Ohio 45202-3688
15        Phone:  (513) 381-9200

16  On behalf of Defendants City of Cincinnati,
    Darren Sellers, Jason Hodge:
17
          Geri Hernandez Geiler, Esq.
18        Assistant City Solicitor
              and
19        Julie F. Bissinger, Esq.
          Chief Counsel
20        Department of Law
          Room 214, City Hall
21        801 Plum Street
          Cincinnati, Ohio 45202
22        Phone:  (513) 352-3346
```

**Page 3**

```
 1  APPEARANCES (Continued):

 2     On behalf of the Defendants Robert B. Jorg,
       Patrick Caton, Jason Hodge, Victor Spellen and
 3     Darren Sellers:

 4        Donald E. Hardin, Esq.
          Hardin, Lefton, Lazarus & Marks, LLC
 5        915 Cincinnati Club Building
          30 West Garfield Place
 6        Cincinnati, Ohio 45202
          Phone:  (513) 721-7300
 7
    Also present:
 8
    Richard W. Grubb, Videograher

 9  Lisa Damstrom, Law Clerk
10  Helmer, Martins & Morgan Co., L.P.A.

11  Wendy M. Weller, Paralegal
    Buckley, King & Bluso
12
    Mr. Roger Owensby
13
    Mrs. Brenda Owensby
14
    Mr. Shawn Owensby
15
    Victor N. Spellen
```

**Page 4**

```
 1              S T I P U L A T I O N S

 2     It is stipulated by and among counsel for the

 3  respective parties that the deposition of PATRICK

 4  EDMUND CATON, a defendant herein, called by the

 5  plaintiffs for cross-examination, pursuant to the

 6  Federal Rules of Civil Procedure, may be taken at

 7  this time by the notary; that said deposition may be

 8  reduced to writing in stenotype by the notary, whose

 9  notes may then be transcribed out of the presence of

10  the witness; and that proof of the official

11  character and qualifications of the notary is

12  expressly waived.
```

**Page 5**

```
 1                    I N D E X

 2     Examination by:              Page

 3     Mr. Martins . . . . . . . . .  6

 4     Ms. Longtin . . . . . . . .  232

 5     Mr. Martins . . . . . . . .  238


 8              E X H I B I T S

 9                                          Page
    Deposition Exhibit 28 . . . . . . . . . .  22
10  Deposition Exhibit 29 . . . . . . . . . .  30
    Deposition Exhibit 30 . . . . . . . . . .  43
11  Deposition Exhibit 31 . . . . . . . . . .  65
    Deposition Exhibit 32 . . . . . . . . . . 115
12  Deposition Exhibit 33 . . . . . . . . . . 186
    Deposition Exhibit 34 . . . . . . . . . . 191
13  Deposition Exhibit 35 . . . . . . . . . . 194
    Deposition Exhibit 36 . . . . . . . . . . 207
```

Case 1:01-cv-00769-SAS    Document 108-32    Filed 03/11/2004    Page 3 of 5

Estate of Roger Owensby vs. City of Cinti.
October 17, 2003
PATRICK E. CATON

Page 18

1    He said, "Yeah."
2    We gloved up, and Sergeant Watts said,
3  "Get him out of the car." And Officer Hasse and I
4  removed him from the car.
5    Q. Is that the first time you realized that
6  Roger Owensby was injured?
7    A. That's correct.
8    Q. Well, you knew before you placed him in
9  the car that he had been Maced, right?
10   A. That's correct.
11   Q. And isn't it true that the standard for
12 care of someone who has been Maced is to provide
13 them with water and fresh air?
14   A. That is correct.
15   Q. And that was not provided?
16   A. I wouldn't consider that an injury.
17   Q. What do you consider someone having been
18 Maced?
19   A. An irri-- it's an irritation. It's a
20 device used to irritate and cause pain. It doesn't
21 cause injury.
22   Q. Okay. Well, in any event, you knew that
23 he had been Maced, you knew that the standards were
24 to provide water and fresh air, and you knew that

Page 19

1  water and fresh air were not provided, correct?
2    A. Well, it -- they're supposed to be
3  provided after the scene is stabilized. And the
4  scene, in my opinion, was never stabilized.
5    Q. At the time you placed Roger Owensby in
6  the back seat of the Golf Manor cruiser with the
7  windows up, he had not been provided with water or
8  fresh air, correct?
9    A. I thought there was plenty of fresh air
10 inside the cruiser.
11   Q. Had you provided him with water?
12   A. No, I had not.
13   Q. And when you placed him or walked him
14 toward the cruiser, you knew that he had several
15 lacerations on his face?
16   A. No, I did not.
17   Q. How far away were you from Mr. Owensby's
18 face as you escorted him to the cruiser?
19   A. I would put us at shoulder distance -- we
20 were shoulder to shoulder essentially, as I walked
21 him towards the cruiser.
22   Q. And while you were doing this, as I
23 understand your prior testimony, you were commanding
24 him to put his feet down, right?

Page 20

1    A. That's correct.
2    Q. And when you were doing that, were you
3  looking at him?
4    A. At his feet.
5    Q. Not at his face?
6    A. No.
7    Q. When you put him into the cruiser, as I
8  understand it, Officer Sellers put him in the
9  cruiser from the rear passenger door and you went
10 around to the driver passenger door and crawled in,
11 grabbed him by the shoulders and pulled him toward
12 you; is that right?
13   A. Well, that's a much shortened version of
14 it, but that's essentially correct.
15   Q. And when you pulled Mr. Owensby into the
16 cruiser toward you, weren't you face to face with
17 him?
18   A. No, I wouldn't say face to face. My head
19 was ducked and it was very dark inside the cruiser.
20 Mr. Owensby was a little more than a shadow to me at
21 that point.
22   Q. The cruiser was parked next to a gas
23 island?
24   A. That's correct.

Page 21

1    Q. And the gas island is illuminated by six
2  halogen lamps, correct?
3    A. That is correct.
4    Q. And the cruiser itself had its lights on?
5    A. I don't know if the lights were on or off.
6  They weren't -- the interior lights were not on.
7    Q. There was no dome light on; is that what
8  you're saying?
9    A. That's correct.
10   Q. But there were lights from the -- from the
11 top of the car that were on?
12   A. I don't recall if there were lights on or
13 off on top of the cruiser.
14        MR. MARTINS: Let me have the tape.
15   Q. I'm going to show you -- I'm going to show
16 you, sir, what has previously been marked as
17 Exhibit 20. This is the video of -- from Officer
18 Spellen's car.
19        (Videotaped played.)
20   Q. I'm pausing it here. You can see the gas
21 island with the halogen lamps at the top, correct?
22   A. That's correct, about 20 feet away.
23   Q. Well, we're not up to the car yet.
24   A. No.

**Estate of Roger Owensby vs. City of Cinti.**
**October 17, 2003**

PATRICK E. CATON

Page 110

1 towards the middle of his back and I wasn't moving.
2 It simply wasn't moving. And, because I didn't
3 already smell it, I figured Mace wasn't employed at
4 this point. And I screamed, "Mace this guy," and
5 nothing happened. And I screamed again, "Somebody
6 Mace this guy," and nothing happened.
7    And I looked up and I saw David Hunter on
8 one knee near the head of Roger Owensby, and the
9 best way I can describe it is he had like a deer
10 caught in the headlights look on his face and he's
11 looking at Roger Owensby's face.
12    Officer Jorg at this point is laying at an
13 angle across Owen-- I guess it would be Owensby's
14 left shoulder.
15    Q. Where's Officer Jorg's head?
16    A. Up near Owensby's head.
17    Q. Okay.
18    A. And I looked at Officer Hunter and I
19 bellowed at the top of my lungs, "Mace this mother
20 fucker." The intent was to shock him into action.
21    Q. Okay.
22    A. At which point he snapped, went to his
23 Mace canister and started to pull it out. And I --
24 my -- I dropped my attention back to the handcuff.

Page 111

1 And I started working it behind his back as best as
2 I could.
3    I know the Mace was employed at that
4 point.
5    Q. Because you could smell it?
6    A. I could smell it. I can only assume Dave
7 Hunter Maced him. I delivered three strikes --
8 well, at -- at this point Officer Jorg is becoming
9 successful with getting the left hand out from
10 behind Owensby, which I -- I believe he was digging
11 for it.
12    Q. When you looked up toward Officer Hunter,
13 did you notice whether or not Officer Jorg had his
14 arm around Mr. Owensby's head?
15    A. At that point I don't know.
16    Q. You just don't know one way or the other?
17    A. All I --
18    Q. He --
19    A. All I could see was -- I don't know one
20 way or another. All I could see is Owens-- Officer
21 Jorg's back at that point.
22    Q. So you couldn't even see Mr. Owensby's
23 head?
24    A. I -- I really don't recall.

Page 112

1    Q. Continue.
2    A. Officer Jorg starts bringing his left arm
3 back. At this point I screamed, "Stop resisting,
4 stop resisting, stop resisting," and -- and
5 delivered three more blows to the forearm.
6    His arm is starting to bend a little bit,
7 but it's not getting into a position where I can get
8 his right hand close enough to his left hand to
9 handcuff it, and I deliver three more blows along
10 the forearm, around the ar-- elbow, above the elbow
11 area. It's now coming back closer to his back and
12 his arm starts to bend a little bit more.
13    And we're still in a struggle. I can see
14 now Owensby's left hand coming back to me. I can
15 see the right hand's getting there, but it's still a
16 matter of -- it's a battle for inches now to try and
17 get his left hand into his -- into the left cuff.
18    At some point out of the corner of my eye
19 I see a PR-24 introduced to the right arm. The
20 right arm suddenly levers to the left. The left arm
21 goes into the cuff. We close the cuffs.
22    Q. As to the PR-24, how was it used?
23    A. As -- as a lever tool. As a tool to lever
24 his arm back.

Page 113

1    Q. Was it placed under the arm?
2    A. I -- I would guess it was. I wasn't
3 looking at the PR-24. All I know is I saw the
4 glimpse of the PR-24 and all of a sudden his right
5 arm came across his body.
6    Q. Do you know who was using the PR-24?
7    A. I can only assume Officer Hodge was. And
8 I've been yelled at, don't assume anything in the
9 IIS interview, but when I -- when we all stood up,
10 Officer Hodge was holding a PR-24, so...
11    Q. Have you received training on the use of a
12 PR-24 to get a suspect's arm behind his back?
13    A. Yes.
14    Q. And how do you -- according to your
15 training, how do you use the PR-24?
16    A. In -- in this case? In this --
17    Q. In this kind of scenario.
18    A. In this kind of scenario I -- I would
19 place -- I would place the PR-24 at an angle
20 underneath his arm and just kind of lever it.
21 That's what I would do in that -- in that case.
22    (Discussion off the stenographic record.)
23    Q. I don't have a PR-24, but I do have a
24 little bat. Can you show me how you would use -- if

Page 110 - Page 113

```
                                                         244
17:00:39   1         MR. HARDIN:  Caton.
17:00:39   2         VIDEOGRAPHER:  Sorry.  Mr. Caton, you have
17:00:39   3    a right to review this videotape deposition
17:00:39   4    prior to its being shown to a court or jury.
17:00:39   5    Will you waive that right?
17:00:39   6         THE WITNESS:  No.
17:00:40   7         VIDEOGRAPHER:  We're off the record.  The
17:00:42   8    time showing is 5:04 p.m.
17:00:42   9         MR. MARTINS:  I take it you also want
17:00:49  10    signature on the deposition?
17:00:51  11         MR. HARDIN:  Yes.  Yes.
17:00:52  12
17:00:52
17:00:52  13                         _____
17:00:52                                  P.E. Caton
17:00:52  14                         PATRICK EDMUND CATON
17:00:52
17:00:52  15                              - - -
17:00:52
17:00:52  16
17:00:52
17:00:52  17            (Deposition concluded.)
17:00:52
          18                              - - -
          19
          20
          21
          22
          23
          24
```