UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF ROGER D. OWENSBY JR., et al., | : : : : | |
| | : | Case No. 01-CV-769 |
| Plaintiff, | : : | Senior Judge S. Arthur Spiegel |
| v. | : : | |
| CITY OF CINCINNATI, et al., | : : : | |
| Defendants. | : | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS' LIMINAL MOTION
TO PRECLUDE THE TESTIMONY OF CYRIL WECHT, M.D., J.D. (Doc. 96)**

---

Defendants City of Cincinnati and Thomas Streicher, Jr. have filed a motion *in limine* to prevent Plaintiffs from calling Dr. Cyril Wecht as a witness in this case. Doc. 96. Presumably recognizing that this request is bound to fail, the City also asks that Dr. Wecht not be permitted to testify that the City hired him to conduct a review of the Hamilton County Coroner's findings regarding the cause of Mr. Owensby's death. *Id.*

The City's motion should be denied in all respects.

**I.   FACTS**

In May 2002, as part of its investigation into the homicide of Roger Owensby, the Acting Director of the City of Cincinnati's Office of Municipal Investigations hired a noted forensic pathologist, Dr. Cyril Wecht, to review transcripts, police reports, witness statements, and the report of the Hamilton County Coroner—all publicly-available information—to independently assess whether Mr. Owensby's death was, as found by the Coroner, homicide by mechanical

asphyxiation. At the time Dr. Wecht was hired, the City broadcast its intention to do so to the general public—including, by definition, the Owensby family and the attorneys who then represented them—by way of a press release. Local media outlets dutifully reported the story. For example, in a June 29, 2002 article headlined *Forensic expert hired to review Owensby case* (Exhibit A), the Enquirer reported:

> The city of Cincinnati has hired a national forensic expert—renowned for his research into high-profile deaths—to review what killed Roger Owensby Jr. A soon-to-be-released report by Dr. Cyril H. Wecht, coroner in Allegheny County, Pa., could help the city's Office of Municipal Investigation resolve competing theories on Mr. Owensby's cause of death after he was arrested in Roselawn in November 2000. The city wants to know whether Cincinnati police officers involved in the arrest 'committed any administrative or procedural violations,' said OMI Director Mark Gissiner, who has described the Owensby case as the most complicated his office has ever handled. 'Given the difficult circumstances in this case, we wanted a second opinion from a doctor who is well respected nationally,' Mr. Gissiner said. 'It's not unlike someone facing major surgery who wants a second opinion.'

Dr. Wecht evaluated the transcripts and other documents provided him by Mr. Gissiner throughout the Summer of 2002, and telecopied a lengthy report to the City on September 10, 2002. In that report, he joined the Hamilton County Coroner in concluding that the death was in fact a homicide, and was in fact the result of mechanical asphyxia resulting from the actions of the defendant police officers. He went well beyond the Coroner, however, in evaluating how the actions of each of the defendants caused or contributed to Mr. Owensby's homicide. For example, he correlated certain unusual injuries to Mr. Owensby's back as having been caused by defendant Jorg's kneeling on the shoulders. He also identified, as contributing factors to the homicide, the application of chemical irritant to Mr. Owensby's face by Officer Hunter, the beating by Officer Caton to Mr. Owensby's back, and the delay of time before what he referred to as "appropriate and critical resuscitative measures." Exhibit 108, Wecht Report at 16-17.

The City responded to Dr. Wecht's report in several ways. First, it broadcast it to the community at large, calling a press conference and distributing copies. The response was, as the City obviously intended, wide news coverage of Dr. Wecht's report. Exhibit B is a copy of an article printed in the Enquirer on September 13, 2002, headlined *Coroner's review verifies Owensby's cause of death.* The reporter wrote: "An independent medical examiner has concluded that Cincinnati Police Officer Robert 'Blaine' Jorg killed Roger Owensby Jr. on election night in 2000. The city's Office of Municipal Investigation hired Dr. Cyril H. Wecht, the coroner of Allegheny County, Pa., to review the case. The city released his findings Thursday." The Kentucky Post, under headline "*Report blames ex-officer for death*" (Exhibit C) reported on Sept. 13, 2002, that "The report [of Dr. Wecht] . . . was submitted to the city's Office of Municipal Investigation on Tuesday and released publicly Thursday." WCPO Channel 9 News reported on September 12 (Exhibit D) that

> [a] nationally known medical expert has given the city of Cincinnati his opinion on how suspect Roger Owensby, Jr., died in police custody nearly two years ago. Dr. Cyril Wecht, coroner for Allegheny County, Pennsylvania, concluded that Owensby died from 'mechanical asphyxia due to compression of his chest by police Officer Robert Blaine Jorg, who was kneeling on his back.'. . . Wecht was hired by the city of Cincinnati's Office of Municipal Investigation to look into Owensby's death. The Office of Municipal Investigation, an independent department of the city, investigates complaints. He delivered his report to the city's Office of Municipal Investigation by fax on September 10, 2002. On September 11, 2002, Wecht's office confirmed to the city that the faxed copy was his final report.

The City's next move was to put Dr. Wecht's report on one of its publicly-available Internet websites, where it has resided for the past two years and is still available today.[2] The report is easily found on the website: One need only type "Wecht" or "Owensby" into the search

---

[2] http://city-egov.rcc.org/BASIS/fyi/public/fyi_docs/DDD/280.pdf.

device the City provides on its website.[3]

The City then used Dr. Wecht's conclusions to support its finding that the defendant police officers engaged in misconduct leading to Mr. Owensby's death. On October 2, 2002, the Office of Municipal Investigations released a 79-page report of its own investigation, and attached Dr. Wecht's report as an exhibit—one upon which the OMI report relies for its conclusions. That report (together with yet another copy of Dr. Wecht's report) is also available on the World Wide Web.[4] In its report, OMI expressly "concurs with the conclusion of Cyril Wecht, M.D., J.D." regarding Mr. Owensby's death being the result of "mechanical asphyxia due to compression of his chest by Robert Blaine Jorg, who was kneeling on his back." Exhibit 121, Excerpt of OMI Report at 68. This report, of course, was heavily publicized. For example, the Cincinnati Post reported on October 15, 2002 (Exhibit E) that:

> Two internal investigations released Monday accuse eight Cincinnati Police officers of doing nothing to help Roger Owensby Jr. as he lay dying after a scuffle with officers, but differ on whether any of the officer used excessive force as they arrested him. . . . The recommendations and accompanying report include a 79-page document form OMI, a 31-page report from the Internal Investigations Section, a 17-page report from an outside medical examiner [Dr. Wecht], and a 9-page report from the Hamilton County Coroner's Office. The recommendations will be reviewed by the police chief and the city attorneys before [City Manager Valerie] Lemmie rules on what will happen to Caton and Police Officers Brian Brazile, Jason Hodge, David Hunter, Abraham Lawson, Darren Sellers and Victor Spellen. . . . Wecht, in his forensic report to OMI, said the four- to five-minute delay in attempting to revive Owensby may have contributed to his death.

The City's next use of Dr. Wecht's opinions and report was in the initiation of disciplinary charges against the officers who killed Mr. Owensby. The City provided the

---

[3] http://city-egov.rcc.org/council/.

[4] http://city-egov.rcc.org/BASIS/fyi/public/fyi_docs/DDD/328.pdf. Dr. Wecht's entire report is attached to the Adobe Portable Document File ("PDF"), and begins at page 170 of the OMI report.

officers, who were previously adverse parties in these proceedings, with copies of the report. Those charges were based in part on the OMI report, and defendants Caton and Jorg were charged with denying Mr. Owensby medical care and thereby causing him serious injury. The OMI expressly adopted the opinions of Dr. Wecht (Exhibit 121, p. 68), and the City proceeded to administrative hearing on the basis of those charges against defendant Caton, and defendant Jorg resigned rather than stand up to face the disciplinary process.[5]

The City's penultimate use of Dr. Wecht's report was to provide it to the experts it hopes to use in switching sides to a theory that Mr. Owensby died as the result of an unavoidable and immediate heart attack. While plaintiffs will demonstrate in a forthcoming liminal motion that the City's side-switch, too clever by half, is barred by judicial estoppel and Ohio law governing coroner's findings, the salient point in this context is that both of the City's proffered experts, Dr. Charles Wetli and Dr. Thomas Neuman, were provided copies of Dr. Wecht's report by the City's counsel for purposes of forming their opinions in this case. While it is certainly true that they could have merely downloaded the report from the Internet, they did not need to do so: Counsel for the City provided it to them.

The City's next and final use of Dr. Wecht's report was to produce it to the undersigned counsel for the Owensby family in response to discovery requests in this case. Based on the extensive—indeed, worldwide—publicity the City generated for Dr. Wecht's report regarding the Owensby homicide, plaintiffs noticed his deposition. The City moved for a protective order

---

[5] We have elsewhere demonstrated that, by virtue of its successful assertion in quasi-judicial proceedings of Dr. Wecht's conclusion that Mr. Owensby was killed by mechanical asphyxiation, the City is judicially estopped from denying that fact. Doc. 108, Reply Memorandum in Support of Motion for Summary Judgment, at 13-21.

(Doc. 79), which the Court promptly denied. Doc. 80. In the course of his February 25, 2004 deposition, Dr. Wecht reaffirmed the findings in his report. Wecht Depo., pp. 29:6 - 77:17. He also testified that had proper medical attention been paid Mr. Owensby, he would be alive today. *Id.* at 59:21 - 61:14.

The day before that deposition was taken, the City filed the motion at bar. It first seeks to preclude Dr. Wecht from testifying at all. Failing that, it seeks to cant the record by precluding mention of the fact that Dr. Wecht was hired by the City.

II.   ARGUMENT

   A.   **Rule 26 does not apply, because it pertains to discovery. Dr. Wecht's Report was long-ago discovered: the City waived the work-product protection normally afforded the opinions of a consulting expert by broadcasting Dr. Wecht's retention and findings to the press and, through the Internet, the whole world.**

The City first moves for an Order precluding plaintiff from calling Dr. Wecht as a witness. The City's motion rests on Rule 26(b)(4)(B) which allows a party to obtain discovery of the

> facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

The City asserts that Dr. Wecht was its "consulting expert," and that, therefore, plaintiff is not entitled to discover his opinions. Doc. 96 at 3-5.

The City's reliance on Rule 26(b)(4)(B) is wholly misplaced, as that Rule pertains exclusively to when a party may *discover* the opinions of a consulting expert. "[O]nce a

physician's report has been reduced to writing and served on the adversary, it ceases to be for the exclusive use of defendant. At that point both sides have access to this probative evidence and there is no basis for withholding it from the trier of fact."[6]  The court continued:

> Plaintiff voluntarily provided Defendant with a copy of the Deutsch Report and disclosed Deutsch's opinions in response to Defendant's interrogatories. Thus, Plaintiff, by submitting the Deutsch Report to Defendant in discovery, voluntarily waived the only relief that Rule 26(b)(4)(B) provides— the non-disclosure of expert discovery for a non-testifying expert.[7]

Thus, the unpublished Sixth Circuit case on which the City relies, *Zvolensky v. Ametek, Inc.,* 1998 U.S. App. LEXIS 5074 (1998), is inconsequential. It notes that "[g]enerally, non-testifying experts are *protected from discovery* so as to allow a party to feel free to hire and consult with such experts without risking exposing certain information to the opposing party." *Id*. at 3 (emphasis supplied).[8]  Here, discovery occurred long ago, when the City voluntarily and repeatedy disseminated Dr. Wecht's report to the seven corners.[9]

---

[6] *Batyah Levi Agron v. Trustees of Columbia University in the City of New York*, 176 F.R.D. 445, 449 (S.D.N.Y. 1997), *quoting Gilly v. New York*, 69 N.Y.2d 509, 508 N.E.2d 901 (N.Y. 1987).

[7]*Id*.

[8] The factual situation in *Zvolenski* involves stipulations between the parties, the failure to take depositions, and the like, and even apart from the fact that the opinion is unpublished, its passing mention of Rule 26(b)(4)(B) has no precedential value.

[9] The City recognizes that Rule 26(b)(4)(B) is but a "specialized application of the work product doctrine." Doc. 96 at 4, *quoting Dayton-Phoenix Group, Inc. v. General Motors Corp.*, 2000 U.S. Dist. LEXIS 8261 (S.D. Ohio 2000) (Rice, J.). As such, the protections afforded ostensibly-consulting witnesses under the Rule are waivable, as voluntary disclosure inconsistent with the confidential nature of work product waives that protection. *Atari Corp. v. Sega of America*, 161 F.R.D. 417, 420 (N.D. Cal. 1994). Here, all plaintiff had to do to *discover* Dr. Wecht's opinions was read the newspaper, watch the television news, browse the Internet, or review the City's wholly-advertent discovery responses. Disclosure of an expert report in response to a discovery request—much less its publication in several newspapers, and its posting on the World Wide Web—is a voluntary waiver of the protections afforded by Rule 26(b)(4)(B).

Moreover, the Sixth Circuit has roundly rejected the argument that work product can be selectively waived for some purposes while preserved for others:

> These and other reasons "persuade us that the standard for waiving the work-product doctrine should be no more stringent than the standard for waiving the attorney-client privilege"— ***once the privilege is waived, waiver is complete and final.***

*In re: Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 307 (6th Cir. 2002) (emphasis supplied). Assuming Dr. Wecht's report was work product as the City claims, then the City's disclosure to the plaintiff in this case as well as to the officers when they were adverse parties to the City in the disciplinary proceedings completely and finally waived such privilege.

### B.  Because Rule 26(b)(4)(B) does not apply, the question whether plaintiff has demonstrated a compelling need for Dr. Wecht's testimony is moot.

The City has, both in its moving papers and in repeated oral presentations to the Court, asserted that Dr. Wecht can be called as a witness at trial only if plaintiffs satisfy the compelling-need standard of Rule 26(b)(4)(B). The City reasons that because there are several hundred forensic pathologists in the United States, plaintiffs cannot meet this standard.

The driving concern of Rule 26(b)(4)(B) is, as the passage quoted from the Sixth Circuit implies, fairness. Parties are as a matter of policy encouraged to consult— *quietly, privately*—with experts to determine if their positions are meritorious. In such situations, the expert is in some sense a part of the lawyer's investigating team. However, when the parties

---

*Agron v. Columbia Univ.*, 176 F.R.D. 445, 449 (S.D.N.Y. 1997); *School Dist. Of Kansas City v. AcandS, Inc.*, 1990 U.S. Dist. LEXIS 14508, *8-9 (W.D. Mo. Oct. 25, 1990).

broadcast the expert's retention and opinions to the world, those policy considerations have no shred of vitality; the party who makes that choice is using the expert not as a shield against an unsustainable litigating position, but as a sword with which to vanquish an opponent—precisely as the City did here, when it used Dr. Wecht's findings in its disciplinary proceedings against the officers. *A fortiori*, where Rule 26(b)(4)(b) is inapplicable because the party which initially hired the expert willingly turned the information over to the other side, "the 'exceptional circumstances' standard of that rule does not govern" the issue. *Agron,* 176 F.R.D. at 449-50.

Here, had the City acted in a manner remotely consistent with treating Dr. Wecht as a consulting expert—by, for example, not issuing a press release and broadcasting his opinion to the entire world, adopting it as its own in the OMI report, and producing it to multiple opposing parties in discovery—then it might have something of a point. But it did not. Whether the number of available pathologists is one or a thousand, the only questions for the Court are evidentiary: Given that Dr. Wecht's opinions *were* discovered as a result of the City's myriad waivers of the protections of the work-product doctrine, *are those opinions admissible.* We turn now to that question.

    C.    **Dr. Wecht's Testimony is Clearly Admissible**

"Relevant testimony is generally admissible." Rule 402, Fed. R. Evid. Evidence is "relevant" when it tends to make a fact in dispute more or less likely. Rule 401, Fed. R. Evid. The testimony of an expert witness is admissible when it would "assist the trier of fact to understand the evidence or to determine a fact in issue." Rule 701, Fed. R. Evid.

Here, Dr. Wecht's credentials as an expert are beyond reproach. He has been a coroner for decades, and has opined as to the cause of death in thousands of cases. His testimony is

patently relevant, because it drives to the core issue in this lawsuit: Whether Mr. Owensby died as the result of homicide at the hands and knees of the defendant officers. Indeed, the City tacitly concedes as much: The only feint it makes in the direction of inadmissibility is the risk of "unfair prejudice" if the Jury learns that the City hired Dr. Wecht, and then switched sides. This point, which is addressed below, has nothing to do with the baseline admissibility of Dr. Wecht's testimony.

The City also contends that Dr. Wecht's testimony is cumulative: Redundant, says the City, of the testimony of Hamilton County Deputy Coroner Daniel Schultz. This claim is wholly unsupportable. The coroner will testify as to his physical findings, and as to the cause and manner of Mr. Owensby's death. Dr. Wecht goes well beyond these findings. He will testify as to the roles of the various defendants in the homicide, and the physical processes which occurred as the life was squeezed out of Mr. Owensby. He will testify to the contributing role to the homicide by mechanical asphyxia of the mace sprayed in Mr. Owensby's face, and the physical beating administered and he will testify regarding the contribution to the homicide of the position of Mr. Owensby in the back of the Golf Manor police car where he died. This evidence is in no way cumulative of the coroner or any other witness, and is patently admissible.

### D. Under the circumstances of this case, the fact that the City of Cincinnati first hired Dr. Wecht is admissible.

Courts have struggled with the question whether, when a party calls an expert who initially was retained by her adversary, the jury should learn of the initial retention. *E.g.*, *Peterson v. Willie*, 81 F.3d 1033, 1037-38 (11th Cir. 1996) (harmless error for court to allow counsel to inquire whether attorney for adversary initially hired expert); *Agron*, 176 F.R.D. at

452 (parties precluded from asking who first hired witness).[10] The relevant inquiry is garden-variety application of the more-prejudicial-than-probative rubric of Rule 403, Fed. R. Evid.

The situation in this case, however, is unprecedented, and the Rule 403 analysis is different. First, all defendants, including the City, are precluded by operation of Ohio law from contending that Mr. Owensby's death was other than homicide by mechanical asphyxiation at the hands of the defendant officers.[11] Moreover, the City is judicially estopped from denying that Dr. Wecht is correct, because it relied on his findings in prior litigation—its disciplinary proceedings against the individual defendants—and prevailed in that position. The City's side-switching has created for itself the problem. There may be little need to discuss whether the City hired Dr. Wecht so long as the City does not attempt to violate Ohio law by contesting the cause and manner of death or attack Dr. Wecht's credibility. But if the City persists in its efforts to flout

---

[10] The City relies extensively upon Judge Rice's unpublished opinion in *Dayton-Phoenix Group, Inc., 2000* U.S. Dist. LEXIS 8261. However, that case has no relevance at all here, because the defendant who decided not to call the expert as a trial witness had neither produced his report to the other side nor broadcast it to the media and put it on the Internet. Judge Rice's opinion certainly stands for the unexceptional proposition that Rule 403, Fed. R. Evid., has a role to play in deciding whether the jury learns that the City hired Dr. Wecht and successfully used his opinion to fire the defendant officers.

[11] Under Ohio Rev. Code Ann. § 313.19 (Page's 2003), the Hamilton County Coroner's finding is binding where, as here, it has not been set aside by the Hamilton County Court of Common Pleas:

> The cause of death and the manner and mode in which the death occurred, as delivered by the coroner and incorporated in the coroner's verdict and in the death certificate filed with the division of vital statistics, shall be the legally accepted manner and mode in which such death occurred, and the legally accepted cause of death, unless the court of common pleas of the county in which the death occurred, after a hearing, directs the coroner to change his decision as to such cause and manner and mode of death.

In this case, then, the finding of homicide by mechanical asphyxia is binding on the parties.

Ohio law by advancing its heart-attack theory, then it would be enormously unfair to plaintiff *not* to allow questions demonstrating that the City fully embraced Dr. Wecht until it turned its attention to the Owensby family's lawsuit.  Presently, the City challenges Dr. Wecht's creditability by challenging his findings – findings which the City previously solicited, embraced, publicized, and relied upon in disciplining the police officer defendants.  Such side-switching nullifies the City's current Rule 403 cry of "unfair prejudice."

The cases are fully consistent with this approach.  The only appellate court to consider the issue, the 11th Circuit, noted that while it may generally be appropriate to preclude questioning on the initial retention, "there may be situations where this fact should be disclosed to a jury." *Peterson*, 81 F.3d at 1039.  The example cited by the *Peterson* court is where "the party who had originally retained the witness seeks to attack the expert's qualifications," *id*., but the same basic fairness concern applies where, as here, a party seeks to "play fast and loose with the courts" (*Teledyne Industries, Inc. v. NLRB*, 911 F.2d 1214, 1217-18 (6th Cir. 1990)) by "'deliberately changing positions according to the exigencies of the moment[.]'" *State of New Hampshire v. State of Maine*, 532 U.S. 742, 749-50 (2001), *quoting United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993).  If the City persists on its current folly or if it attacks Dr. Wecht's qualifications, then there is no unfairness whatsoever in the Jury learning that the City initially embraced Dr. Wecht's opinions.

### III.     CONCLUSION

The City provided the Plaintiff with Dr. Wecht's report and this Court has already found that Plaintiff is entitled to depose Dr. Wecht.  Doc. 80.  To the extent the City now seeks to inject principles relating to the long-resolved issue of the *discoverability* of Dr. Wecht's report into

discussion of the *admissibility* of that report and his opinions, its papers are properly ignored as mere *non sequitur*. The same is true of the City's cry that there are more forensic pathologists than one: The point is meaningless given the City's myriad waivers of work product protection. Moreover, Dr. Wecht's testimony clearly is admissible: It is highly relevant, and it is not cumulative. The only colorable issue, then, is whether the Jury learns that Dr. Wecht was hired by the City. That question becomes relevant only if any defense lawyer or witness asserts, in violation of Ohio law, that Mr. Owensby's death was not as Dr. Wecht opines; but if they do, then the City's hiring of Dr. Wecht becomes highly probative to demonstrate the City's side-switch. Such result is by no means unfairly prejudicial, as it merely counters attempts to pervert the process by glib manipulation of the truth.

The City's motion should be denied, and the Court should take up the question of whether the City's hiring of Dr. Wecht comes into evidence as trial develops.

Respectfully submitted,

/s/Frederick M. Morgan, Jr.
James B. Helmer, Jr.  (0002878)
Paul B. Martins (0007623
Frederick M. Morgan, Jr.  (0027687)
HELMER, MARTINS & MORGAN CO., LPA
Fourth & Walnut Centre
Suite 1900
105 East Fourth Street
Cincinnati, Ohio 45202-4008
Telephone:     (513) 421-2400
Facsimile:     (513) 421-7902

Trial Attorney for Plaintiff

CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing Plaintiff's Memorandum in Opposition to Defendants' Liminal Motion to Preclude the Testimony of Cyril Wecht, M.D., J.D. (Doc. 96) was electronically filed on March 19, 2004. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                   /s/ Frederick M. Morgan, Jr.