LEXSEE 1990 U.S. DIST. LEXIS 14508

THE SCHOOL DISTRICT OF KANSAS CITY, MISSOURI, Plaintiff, v. ACandS, INC., et al., Defendants

No. 87-0903-CV-W-6

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI, WESTERN DIVISION

*1990 U.S. Dist. LEXIS 14508*

October 25, 1990, Decided
October 25, 1990, Filed

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**JUDGES:** [*1]

Howard F. Sachs, Chief United States District Judge.

**OPINIONBY:**

SACHS

**OPINION:**

MEMORANDUM AND ORDER

On August 10, 1990, defendant United States Gypsum Company served upon plaintiff a notice to take the deposition of the custodian of records of Roth Asbestos Consultants, Inc. Plaintiff claims that discovery pertaining to Roth Asbestos is barred due to Rule 26(b)(3) and *Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure* and requests this court to guash the deposition notice and to bar any further discovery with respect to Roth Asbestos. Defendant contests plaintiff's motion, claiming that records promulgated by Roth Asbestos are not protected by the work product doctrine, that there exist exceptional circumstances which justify discovery of facts and opinions generated by Roth Asbestos, and that plaintiff has waived any privilege with respect to the documents at issue.

1. The Work Product Doctrine

Rule 26(b)(3) allows for the discovery of "documents and tangible things . . . prepared in anticipation of litigation" upon a showing of undue hardship and substantial justification. This rule, however, is subject to the limitations of Rule 26(b)(4)(B), which provides that the facts and opinions held [*2] by an expert who was hired in anticipation of trial but who is not expected to testify may only be discovered upon a showing of "exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." Defendant claims that Roth Asbestos was not hired in anticipation of litigation, but rather that it was hired to assure the District's compliance with the Asbestos Hazard Emergency Response Act (AHERA) and to serve as an architectural abatement consultant. Therefore, defendant believes it is entitled to discovery of facts and opinions held by Roth Asbestos as to the condition of its product in the schools.

In *Grindell v. American Motors Corp., 108 F.R.D. 94 (W.D. N.Y. 1985).* the court held that it was possible for an expert to serve more than one function in a case. Termed "dual purpose retention," the expert is hired both in anticipation of litigation and in some other capacity. n1 The fact that an expert serves two purposes does not prevent the expert's testimony from being protected by the work product privilege. The facts in the case at hand demonstrate that Roth Asbestos performed two roles for [*3] the District -- as an architectural consultant for abatement projects for two of the 25 schools involved in

this litigation and as an expert retained for litigation purposes. In a letter to counsel for the District, the president of Roth Asbestos wrote, "It is apparent by recent actions that your firm will not continue to use Roth Asbestos Consultants, Incorporated for the asbestos lawsuit." Exhibit A to Suggestions of Defendant in Opposition to Plaintiff's Motion for Protective Order (emphasis added). Furthermore, plaintiff suggests, and defendant does not contest, that Roth Asbestos was hired before AHERA became effective and that Hall-Kimbrell, not Roth, was hired to do inspections for AHERA purposes. Therefore, Roth Asbestos served two purposes: as architectural consultant and as an expert retained for litigation purposes. In the latter function, facts and opinions held by Roth Asbestos and surveys and other documents generated by Roth Asbestos fall under the protections of the work product privilege.

n1 In Grindell, an automobile manufacturer was held to have retained its expert, an engineer, both in anticipation of trial and to evaluate certain models of cars for product improvement. *108 F.R.D. at 95.*

[*4]

2. The Exceptional circumstances Requirement

Under *Rule 26(c) of the Federal Rules of Civil Procedure*, a party seeking a protective order must show good cause and the necessity for the order's issuance. Whether or not a court will issue such an order depends in part on the hardship it will cause to the nonmoving party. *Dynamics Corp. v. Selb Manufacturing Co., 481 F.2d 1204 (8th Cir. 1973)*, cert. denied, *414 U.S. 1162*. Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure provides that facts and opinions held by an expert who is retained in anticipation of trial but who is not expected to be called to testify at trial may only be discovered upon a showing of exceptional circumstances. n2 As such, the party seeking discovery has a heavy burden -- it must establish that it is impracticable to obtain facts on the same subject by other means. See *Hoover v. United States Department of the Interior, 611 F.2d 1132, 1142 n. 13 (5th Cir. 1980); Ager v. Stormont Hospital and Training School for Nurses, 622 F.2d 496, 503 (10th Cir. 1980)*.

n2 Although Roth Asbestos was hired in anticipation of litigation, it was not designated by plaintiff as an expert expected to be called at trial in plaintiff's scheduling order.

[*5]

Defendant claims that exceptional circumstances exist justifying discovery of Roth Asbestos in that Roth had an opportunity to examine defendant's product while it was still present in the schools involved in this litigation. Plaintiff removed the asbestos-containing material prior to completing product identification. Defendant did not have an opportunity to examine the product while it was present in the schools. Because the necessity for removal of defendant's product is an issue in this case, defendant argues that it should be able to examine Roth as to the condition of its product while the product was in place. As support for its argument, defendant cites the following cases: *Delcaster, Inc. v. Vail Associates, 108 F.R.D. 405 (D. Colo. 1985)* (discovery of expert allowed where expert had examined property the day after it was damaged by a mud slide); *MacDonald Sprague Roofing Co., Inc. v. USM Weather-Shield Systems Co., 35 Fed. R. Serv.2d 1121 (D. Mass 1983)* (discovery of expert allowed where expert had examined defective roof prior to its removal); *Dixon v. Cappellini, 88 F.R.D. 1 (N.D. Pa. 1980)* (court ordered production of expert's medical records where expert [*6] had examined plaintiff immediately following her "deprogramming").

This court finds that defendant has not shown exceptional circumstances which justify directing the deposition of Roth Asbestos. The rule provides that the party seeking discovery must show that it is impracticable to obtain information on the same subject elsewhere. Defendant admits that plaintiff employed two experts in addition to Roth, both of which had an opportunity to examine defendant's product in place in the schools. The cases cited by defendant address expert discovery where an expert was the only one to have seen certain conditions at a specific time. These cases do not serve as precedent where there is more than one expert with the same information. Moreover, defendant has been afforded information from other witnesses, all of whom had an opportunity to see the asbestos-containing material while it was in place. For example, defendant has deposed Steve Hicks, the Asbestos Coordinator for the District; defendant has deposed Walter Houston, the District's engineer; defendant has been supplied with architectural consultants' reports, abatement contracts, and school board minutes and correspondence, all which [*7] detail the presence of asbestos-containing products and the basis on which decisions to remove the products were made. Defendant does not indicate what is unique about Roth Asbestos' knowledge of its product such that it differs from the information that has already been supplied. Therefore, defendant has not established that it is impracticable to obtain the information from other

sources.

### 3. Waiver

Defendant's final argument that it is entitled to take the deposition of Roth Asbestos is that plaintiff has waived its work product privilege with respect to surveys promulgated by Roth. In a letter dated November 22, 1989, counsel for co-defendant Eagle-Picher Industries, Inc. requested that plaintiff produce for examination "Roth Asbestos' records and documents regarding its inspections of and sampling of KCMSD's buildings generally and specifically, products alleged to be manufactured by Eagle-Picher." Plaintiff specifically responded to this request in a letter dated December 6, 1989, stating, "These documents are available for your review and copying in our offices . . . on December 14, 1989. . . ." Counsel for Eagle-Picher appeared at the offices of plaintiff's counsel and was [*8] allowed to examine the surveys produced by Roth Asbestos. Defense counsel tabbed the documents for copying; however, when he returned to the offices the next day, the documents had been removed from his purview. Plaintiff has since refused to produce the documents.

The Eighth Circuit has held that a party's disclosure of documents to an adversary waives the claim of privilege to those documents. *In re Chrysler Motors Corp. Overnight Evaluation Program Litigation, 860 F.2d 844, 846 (8th Cir. 1988)*. Plaintiff, however, claims that the incident described above did not waive its privilege as to the Roth Asbestos documents since the documents were produced due to "excusable inadvertence." *Niagra Mohawk Power Corp. v. Stone and Webster Engineering Corp., 125 F.R.D. 578 (S.D. N.Y. 1985)*. It is true that a simple mistake which is immediately recognized and rectified has been held not to constitute a waiver of privilege, especially where production of documents occurs in the context of large scale discovery. See *Lois Sportswear, U.S.A. Inc. v. Levi Strauss & Company, 104 F.R.D. 103, 105 (S.D. N.Y. 1985)* (distinguishing intentional waiver from simple mistake). However, plaintiff's [*9] production of the Roth Asbestos documents in this case appears to have been intentional, not merely a mistake. First, plaintiff agreed in writing to produce these documents for inspection and copying. n3 Second, plaintiff produced the documents and let counsel for Eagle-Picher examine them for a full day before removing them from view. Third, the production occurred not in the context of large scale discovery but rather in the context of one defendant's examining documents that had been requested in its interrogatories, requests for production of documents, and requests for admission. Only a limited number of documents were produced on this occasion. The court also notes further that plaintiff refused to sign a non-waiver agreement before inspecting co-defendant National Gypsum's documents, taking the position that once documents have been shown to an adversary, any claim of privilege as to those documents is lost. Plaintiff cannot now benefit from a position to which it refused to adhere; namely, that one can produce documents and then later claim they are privileged. Therefore, this court finds that plaintiff has waived its privilege with respect to the Roth'Asbestos surveys. Accordingly, [*10] it is hereby

ORDERED that plaintiff's motion for a protective order is DENIED. Plaintiff is further

ORDERED to comply with the subpoena notice of August 10, 1990, which requires the appearance of the custodian of records for Roth Asbestos Consultants, Inc. for deposition.

---

n3 Plaintiff contests that it consented to production of the Roth documents in writing because it also stated in its letter that production was subject to privilege. However, this was a general invocation of privilege. Plaintiff specifically consented to produce the records and documents regarding Roth's inspections and sampling of the school buildings. If plaintiff were allowed to claim that all of the documents it agreed to produce are subject to privilege, its specific, written consent to supply these documents would be rendered meaningless.