# City of Cincinnati



Interdepartment Correspondence

Date: October 2, 2002

| | |
|---|---|
| To | Valerie A. Lemmie, City Manager |
| From | Mark A. Gissiner, Acting Municipal Investigation Manager |
| Copies | |
| Subject | **OMI Case Number 00333 (Revised)** |

## CONFIDENTIAL

OMI's report on this matter is submitted for your review. We will not release this report until you have authorized us to do so.

Authorization for Release: _____
Valerie A. Lemmie, City Manager

MAG/sw

Attachments

CPO 000008

Exh. 121

# City of Cincinnati



OFFICE OF MUNICIPAL INVESTIGATION

REPORT

| | |
|---|---|
| CASE NUMBER: | 00333 |
| COMPLAINANT: | Police Communications |
| ALLEGATIONS: | Death in Custody |
| RESPONDENTS: | Officer Robert Blaine Jorg<br>Officer Patrick Caton<br>Officer David Hunter<br>Officer Jason Hodge<br>Officer Darren Sellers<br>Officer Victor Spellen<br>Officer Brian Brazile |
| DATE OF COMPLAINT: | November 7, 2000 |
| DATE OF REPORT: | October 2, 2002 |
| OMI INVESTIGATOR: | John Plahovinsak |

APPROVED BY: _____
Mark A. Gissiner
Acting Municipal Investigation Manager

CPO 000009

## I. NATURE OF INVESTIGATION

On November 7, 2000, the Office of Municipal Investigation (OMI) was notified by the Cincinnati Police Department (CPD) Communications Section of a death in custody that occurred at 2092 Seymour Avenue. The victim was identified as Roger Owensby, Jr.

## II. ITEMIZATION OF EVIDENCE

1. Summary of the Internal Investigation Section (IIS) Interview with Officer Robert Blaine Jorg, Respondent

2. Summary of the OMI Interview with Officer Patrick Caton, Respondent

3. Summary of the OMI Interview with Officer David Hunter, Witness

4. Summary of the OMI Interview with Officer Darren Sellers, Witness

5. Summaries of the Criminal Investigation Section (CIS) and IIS Interview with Officer Jason Hodge, Witness

6. Summary of the CIS Interview with Sergeant William Watts, Witness

7. Summary of the CIS Interview with Officer Robert Heiland, Witness

8. Summary of the CIS Interview with Officer Chris Campbell, Witness

9. Summary of the CIS Interview with Officer Victor Spellen, Witness

10. Summary of the CIS Interview with Aerial St. Clair, Witness

11. Summary of the CIS Interview with George Weaver, Witness

12. Computer Aided Dispatch (CAD) Report

13. CAD Medical Report

14. Sketch Map of 2098 Seymour Avenue

15. OMI Analysis of Sam's Telecom Security Tape of November 7, 2000

16. Postmortem Examination of the Body of Roger Owensby, Jr. by the Hamilton County, Ohio, Coroner's Office

17. Review by Cyril Wecht, M.D., J.D.; Expert in Anatomic, Clinical and Forensic Pathology, and Legal Medicine, Pittsburgh, Pennsylvania

CPO 0000010

1

## V. FINDINGS

After review of the issues in this case, OMI determined that a preponderance of the evidence shows that the death of Roger Owensby, Jr. was accidental and the primary cause of death was mechanical asphyxia with contributing factors as indicated below.

OMI concurs with the conclusion of Cyril Wecht, M.D., J.D., that:

> "...Based upon a reasonable degree of medical certainty, that the cause of death of Roger Owensby, Jr. was mechanical asphyxia due to compression of his chest by Police Officer Robert Blaine Jorg, who was kneeling on his back. The history given by Officer Jorg, the hemorrhage/contusions in the 'deep musculature overlying the spines of the scapulae,' the numerous petechiae, and the presence of pulmonary congestion and edema all support the diagnosis of mechanical asphyxia....

> "...It is important and relevant, however, to point to the existence of other events that quite likely from a medical perspective could have been contributing factors in the development of the pathophysiological processes that culminated in Mr. Owensby's death. These would include the use of mace by Officer Hunter; the pressure that was applied to Mr. Owensby's back by Officer Caton; the additional transient hypoxia produced by Officer Jorg's "bar hold" around Mr. Owensby's neck; and the lapse of time prior to the commencement of appropriate and critical resuscitative measures. (Approximately 4 to 5 minutes elapsed before EMS arrived and undertook appropriate resuscitative measures.)

1. The allegation that on November 7, 2000, Officer David Hunter unlawfully detained Mr. Roger Owensby is not sustained. Officer Hunter's actions were not in violation of the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Department, Section 1.21 which states:

> Members shall not knowingly or with malice make any arrest, search, or seizure which is not in accordance with law and Department procedure.

A preponderance of evidence supports that Officer Hunter had reasonable suspicion to stop and detain Mr. Owensby for his actions on September 27, 2000 when he resisted arrest. Officer Hunter also had sufficient knowledge that Mr. Owensby, also known as "L. A.," had trafficked in drugs, may be considered dangerous and may be armed. **Disposition: Not Sustained.**

2. The allegation that on November 7, 2000, Officer Patrick Caton unlawfully detained Mr. Roger Owensby is not sustained. Officer Caton's actions were not in violation of the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Department, Section 1.21.

A preponderance of evidence supports that Officer Caton had reasonable suspicion to stop and detain to assist Officers Hunter and Jorg in the arrest of Mr. Owensby. **Disposition: Not Sustained.**

CPO 0000077

3. The allegation that on November 7, 2000, Officer Robert Jorg unlawfully detained and searched Mr. Roger Owensby is not sustained. Officer Jorg's actions were not in violation of the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Department, Section 1.21.

A preponderance of evidence supports that Officer Jorg had reasonable suspicion to stop, detain and search Mr. Owensby to assist in the arrest of Mr. Owensby. The search of Mr. Owensby for weapons appeared to be voluntary with no force involved. **Disposition: Not Sustained.**

4. The allegation that on November 7, 2000, Officer Jason Hodge used excessive force in subduing and arresting Mr. Roger Owensby is not sustained. Officer Hodge's actions were not in violation of the CPD Procedure Manual Section 12.545, Use of Force; or the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Department, Section 1.23 which states:

> Members shall not use more force in any situation than is reasonably necessary under the circumstances. Members shall use force in accordance with law and Department procedure.

A preponderance of evidence supports that Officer Hodge acted in a reasonable manner in ensuing that Mr. Owensby was handcuffed. Officer Hodge was responding to an officer needs assistance call and did not have knowledge of the overall circumstances of the struggle. With Officer Hodge's assistance, Mr. Owensby was handcuffed by the police officers. **Disposition: Not Sustained.**

5. The allegation that on November 7, 2000, Officer Darren Sellers used excessive force in subduing and arresting Mr. Roger Owensby is not sustained. Officer Sellers' actions were not in violation of the CPD Procedure Manual Section 12.545, Use of Force; or the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Department, Section 1.23.

A preponderance of evidence supports that Officer Sellers acted in a reasonable manner in ensuing that Mr. Owensby was handcuffed. Officer Sellers was responding to an officer needs assistance call and did not have knowledge of the overall circumstances of the struggle. With Officer Sellers' assistance, Mr. Owensby was handcuffed by the police officers. **Disposition: Not Sustained.**

6. The allegation that on November 7, 2000, Officer David Hunter used excessive force in subduing and arresting Mr. Roger Owensby is not sustained. Officer Hunter's actions were not in violation of the CPD Procedure Manual Section 12.545, Use of Force or the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Department, Section 1.23. According to Section 12.545, chemical irritant offers a nonlethal alternative for controlling, subduing or apprehending a suspect. When possible, personnel will use chemical irritant as the primary response to aggressive citizen behavior.

A preponderance of evidence supports that Officer Hunter acted in a reasonable manner in ensuing that Mr. Owensby was handcuffed. Officer Hunter was a victim of Mr. Owensby's

resisting arrest on September 27, 2000 and also on November 7, 2000. Officer Hunter had a responsibility to ensure that Mr. Owensby was arrested and to assist in the handcuffing process. **Disposition: Not Sustained.**

7. The allegation that on November 7, 2000, Officer Patrick Caton used excessive force in subduing and arresting Mr. Roger Owensby is not sustained. Officer Caton's actions were not in violation of the CPD Procedure Manual Section 12.545, Use of Force. According to Section 12.545, when officers have a right to make an arrest, they may use whatever force is reasonably necessary to apprehend the offender or effect the arrest, and no more. Their privilege to use force is not limited to that amount of force necessary to protect themselves, but extends to that amount reasonably necessary to enable them to perform their duty.

A preponderance of evidence supports that Officer Caton acted in a reasonable manner in ensuing that Mr. Owensby was handcuffed. Officer Caton had a responsibility to ensure that Mr. Owensby was arrested and to assist in the handcuffing process. **Disposition: Not Sustained.**

8. The allegation that on November 7, 2000, Officer Robert Jorg used excessive force in subduing and arresting Mr. Roger Owensby is not sustained. Officer Jorg's actions were not in violation of the CPD Procedure Manual Section 12.545, Use of Force. According to Section 12.545, when officers have a right to make an arrest, they may use whatever force is reasonably necessary to apprehend the offender or effect the arrest, and no more. Their privilege to use force is not limited to that amount of force necessary to protect themselves, but extends to that amount reasonably necessary to enable them to perform their duty.

This Section indicates the courts could consider a chokehold or other similar type of hold as deadly force. Chokeholds should only be used with this in mind. There is insufficient evidence provided that corroborated that Officer Jorg utilized a chokehold to subdue Mr. Owensby.

A preponderance of evidence supports that Officer Jorg acted in a reasonable manner in ensuing that Mr. Owensby was handcuffed. Officer Jorg had a responsibility to ensure that Mr. Owensby was arrested and to assist in the handcuffing process. **Disposition: Not Sustained.**

9. The allegation that on November 7, 2000, Officer Robert Jorg incorrectly applied the Mandibular Angle Pressure Point Technique to Mr. Roger Owensby during the arrest is sustained. Officer Jorg's actions were in violation of the Manual of Rules and Regulations and Disciplinary Process, Section One, 1.01 (A), which states: Members shall not negligently fail to carry out any rule, regulation, procedure, directive, or order of the division, which may lead to risk of physical injury to another or financial loss to the Division.

A preponderance of the evidence indicated that Officer Jorg applied this technique utilizing one arm to stabilize the forehead of Mr. Owensby. The OPOTC approved course of instruction on this technique indicated that the head stabilization hand secures the subject's chin, prior to pressure being exerted. Officer Jorg disregarded this guidance contained in the Subject Control Techniques course of instruction. **Disposition: Sustained.**

10. The allegation that on November 7, 2000, Officer Patrick Caton physically abused Mr. Owensby during his arrest by striking him in the back after he was handcuffed is sustained. Officer Caton's action's violated CPD Procedure Manual Section 12.545, Use of Force, which states:

> They must avoid unnecessary violence and force is only to be utilized to effect the arrest and no more.

Officer Caton also violated the Manual of Rules and Regulations and Disciplinary Process, Section Two, 2.12, which states:

> Members are responsible for insuring the safety and welfare of persons and their personal property when transporting or having custody of persons who are sick, injured, arrested, or incapacitated in any way.

A preponderance of evidence indicated that Officer Caton did physically abuse Mr. Owensby after he was handcuffed by striking him in the back. Testimony provided by two police officers who have no vested interest or motives in the allegation indicate that the physical abuse occurred. **Disposition: Sustained.**

11. The allegation that on November 7, 2000, Officer Jason Hodge observed a medical injury to Mr. Owensby and rendered no appropriate first aid immediately once the incident scene is stabilized is sustained. Officer Hodge's action violated CPD Procedure Manual Section 12.545, Use of Force, which states:

> Following any use of force resulting in a citizen's injury, officers will ensure appropriate first aid is rendered immediately once the incident scene is stabilized.

Officer Hodge's action also violated the Manual of Rules and Regulations and Disciplinary Process, Section Two, 2.12, which states:

> Members are responsible for insuring the safety and welfare of persons and their personal property when transporting or having custody of persons who are sick, injured, arrested, or incapacitated in any way.

A preponderance of evidence indicated that Officer Hodge observed Mr. Owensby with blood on his mouth or nose after he was lifted to an upright position. Officer Hodge also observed a blood or body fluid stain on Officer Jorg's sleeve and after ascertaining that it was not Officer Jorg's blood or body fluid, did not check on the medical status or report the injury of Mr. Owensby. **Disposition: Sustained.**

12. The allegation that on November 7, 2000, Officer David Hunter observed a medical injury to Mr. Owensby and rendered no appropriate first aid immediately once the incident scene is stabilized is sustained. Officer Hunter's action violated CPD Procedure Manual Section 12.545, Use of Force, and the Manual of Rules and Regulations and Disciplinary Process, Section Two, 2.12.

CPO 0000080

A preponderance of evidence indicated that Officer Hunter applied chemical irritant to Mr. Owensby and later observed him being transported to the Golf Manor police vehicle with a sagging head and no visible body movement. Officer Hunter took no action to provide the appropriate first aid to Mr. Owensby. **Disposition: Sustained.**

13. The allegation that on November 7, 2000, Officer Victor Spellen observed a medical injury to Mr. Owensby and rendered no appropriate first aid immediately once the incident scene is stabilized is sustained. Officer Spellen's action violated CPD Procedure Manual Section 12.545, Use of Force, and the Manual of Rules and Regulations and Disciplinary Process, Section Two, 2.12, which states: Members are responsible for insuring the safety and welfare of persons and their personal property when transporting or having custody of persons who are sick, injured, arrested, or incapacitated in any way.

A preponderance of evidence indicated that Officer Spellen visibly observed the medical condition of Mr. Owensby when he was in the Golf Manor police vehicle and took no action to render first aid. Officer Spellen's comment on the MVR tape indicated that Mr. Owensby was injured and he was aware of the injury, but he took no action. **Disposition: Sustained.**

14. The allegation that on November 7, 2000, Officer Brian Brazile observed a medical injury to Mr. Owensby and rendered no appropriate first aid immediately once the incident scene is stabilized is sustained. Officer Brazile's action violated CPD Procedure Manual Section 12.545, Use of Force, and the Manual of Rules and Regulations and Disciplinary Process, Section Two, 2.12, which states: Members are responsible for insuring the safety and welfare of persons and their personal property when transporting or having custody of persons who are sick, injured, arrested, or incapacitated in any way.

A preponderance of evidence indicated that Officer Brazile visibly observed the medical condition of Mr. Owensby when he was in the Golf Manor police vehicle and took no action to render first aid. Officer Brazile's comment on the MVR tape indicated that he was cognizant of the injury to Mr. Owensby, but took no action. **Disposition: Sustained.**

15. The allegation that on November 7, 2000, Officer Patrick Caton observed a medical injury to Mr. Owensby and rendered no appropriate first aid immediately once the incident scene is stabilized is sustained. Officer Caton's action violated CPD Procedure Manual Section 12.545, Use of Force, and the Manual of Rules and Regulations and Disciplinary Process, Section Two, 2.12.

A preponderance of evidence indicated that Officer Caton was cognizant that Mr. Owensby was sprayed with a chemical irritant and struck several times with pain compliance strikes. Officer Caton acknowledged to Officer Hasse that either "We kicked his ass" or "We beat the shit out of him" referring to Mr. Owensby. Officer Caton acknowledged that he left Mr. Owensby laying on the backseat of the Golf Manor police vehicle without opening the window or checking his medical condition. **Disposition: Sustained.**

CPO 0000081

16. The allegation that on November 7, 2000, Officer Robert Jorg observed a medical injury to Mr. Owensby and rendered no appropriate first aid immediately once the incident scene is stabilized is sustained. Officer Jorg's action violated CPD Procedure Manual Section 12.545, and the Manual of Rules and Regulations and Disciplinary Process, Section Two, 2.12.

A preponderance of evidence indicated that Officer Jorg was cognizant that Mr. Owensby had sustained a medical injury during the struggle with the police officers. After Officer Jorg noticed his entire left sleeve was covered with a blood or body fluid stain and after determining that he was not injured, took no direct action to ascertain if Mr. Owensby was physically injured or if he needed first aid. **Disposition: Sustained.**

17. The allegation that on November 7, 2000, Officer Darren Sellers observed a medical injury to Mr. Owensby and rendered no appropriate first aid immediately once the incident scene is stabilized is sustained. Officer Sellers' action violated CPD Procedure Manual Section 12.545, and the Manual of Rules and Regulations and Disciplinary Process, Section Two, 2.12.

A preponderance of evidence indicated that Officer Sellers was cognizant that Mr. Owensby had sustained injuries and was "dragged" to the Golf Manor police vehicle. Officer Sellers took no action to render medical assistance to Mr. Owensby or to check on his medical condition following the struggle. **Disposition: Sustained.**

18. The allegation that on November 7, 2000, Officer Robert Jorg failed to report a use of force encounter to his supervisor immediately upon is arrival is sustained. Officer Jorg's action violated CPD Procedure Manual Section 12.545, Use of Force, which states: "Whenever employees use deadly force, force, restraining force with injury, chemical irritant, taser, beanbag shotgun, or have knowledge of a use of force, they will immediately notify a supervisor."

Officer Jorg acknowledged that he never informed Sergeant Watts of the use of force and he erred in this matter. "Did I officially report the use of force. No I did not," said Officer Jorg. **Disposition: Sustained.**

19. The allegation that on November 7, 2000, Officer David Hunter failed to report a use of force encounter to his supervisor immediately upon is arrival is sustained. Officer Hunter's action violated CPD Procedure Manual Section 12.545, Use of Force.

Officer Hunter acknowledged that although he reported the spraying with the chemical irritant to Sergeant Watts, he did not report the physical strikes administered by Officer Caton. **Disposition: Sustained.**

20. The allegation that on November 7, 2000, Officer Darren Sellers failed to report a use of force encounter to his supervisor immediately upon is arrival is sustained. Officer Sellers' action violated CPD Procedure Manual Section 12.545, Use of Force.

Sergeant Watts reported none of the officers directly involved in the arrest of Mr. Owensby reported the use of force when he arrived on the scene. **Disposition: Sustained.**

CPO 0000082

21. The allegation that on November 7, 2000, Officer Jason Hodge failed to report a use of force encounter to his supervisor immediately upon is arrival is sustained. Officer Hodge's action violated CPD Procedure Manual Section 12.545, Use of Force.

Sergeant Watts reported none of the officers directly involved in the arrest of Mr. Owensby reported the use of force when he arrived on the scene. **Disposition: Sustained.**

22. The allegation that on November 7, 2000, Officer Patrick Caton failed to report a use of force encounter to his supervisor immediately upon is arrival is sustained. Officer Caton's action violated CPD Procedure Manual Section 12.545, Use of Force.

Officer Caton acknowledged that he delivered a minimum of five strikes to the back of Mr. Owensby during the arrest. Sergeant Watts reported none of the officers directly involved in the arrest of Mr. Owensby reported the use of force when he arrived on the scene. **Disposition: Sustained.**

## VI. PREVIOUS OMI CONTACT WITH OFFICERS

1. Officer Robert Jorg was a Cincinnati police officer January of 1996 to 2002. OMI received four cases involving four allegations filed against Officer Jorg. These allegations include:

- two allegations of use of excessive force
- one allegation of shots fired
- one allegation of improper procedure

The cases, allegations and dispositions on Officer Jorg are summarized below:

| Case    | Allegation              | Disposition         |
|---------|-------------------------|---------------------|
| #00033  | Use of Excessive Force  | Under Investigation.|
| #00132  | Use of Excessive Force  | Not Sustained.      |
| #98280  | Improper Procedure      | Not Sustained.      |
| #98276A | Shots Fired             | Exonerated.         |

2. Officer Patrick Caton has been a Cincinnati police officer since January of 1997. OMI has received 13 cases involving 15 allegations filed against Officer Caton. These allegations include:

- four allegations of use of excessive force
- three allegations of improper procedure
- two allegations of discourteous treatment
- two allegations of slow/lack of service
- one allegation of unlawful arrest
- one allegation of illegal search
- one allegation of improper application of procedure
- one allegation of excessive show of force

CPO 0000083

74