UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ESTATE OF ROGER OWENSBY,        :
    JR.,                        :    NO. 1:01-CV-00769
                                :
        Plaintiff,              :
                                :    **ORDER**
                                :
    v.                          :
                                :
                                :
CITY OF CINCINNATI, <u>et</u> <u>al</u>.,  :
                                :
        Defendants.

On November 6, 2001, Roger Owensby, Jr.'s Estate (the "Estate") filed a Complaint against the City of Cincinnati ("Cincinnati" or the "City"), the City of Golf Manor, and Huntington Meadows, as well as numerous police and security officers these Defendants either employed or currently employ (doc. 1). The Complaint raises federal civil rights violations and associated state law claims arising from the death of Roger Owensby, Jr. ("Owensby"), allegedly occurring as a result of unconstitutional and tortious treatment at the hands of the named police and security officers (doc. 1). On August 12, 2003, the City of Cincinnati moved for summary judgment on three categories or aspects of the Estate's claims (doc. 49). The Estate responded on September 4, 2003 (doc. 52), and Cincinnati replied on September 11, 2003 (doc. 53), rendering the matter fully briefed and ripe for decision. For the following reasons, the City's motion will be

granted in part and denied in part.

## I.   APPLICABLE LEGAL STANDARD

The narrow question that this Court must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. See id. at 321; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Guarino, 980 F.2d at 405.

As the Supreme Court stated in Celotex, the non-moving party must "designate" specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405. Although the burden might not require the non-moving party to

"designate" facts by citing page numbers, "'the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.'" Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). Furthermore, the fact that the non-moving party fails to respond does not lessen the burden on the moving party or the court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

## II. RELEVANT FACTUAL BACKGROUND

In general, summary judgment motions filed pursuant to Fed. R. Civ. P. 56 involve substantial evidentiary submissions and fact-intensive analyses. To be sure, the parties dispute a number of facts surrounding the instant case. However, the issues raised in the instant motion and the basis for this Court's disposition thereof makes a detailed review of the facts of this case unnecessary. A survey of the general facts forming the basis of the instant suit, as drawn from the Complaint's allegations and the

-3-

instant motion and subsequent briefing, may be fairly summarized as follows.

On November 7, 2000, Cincinnati Police Officers Patrick Caton ("Caton"), David Hunter ("Hunter"), and Robert Jorg ("Jorg") observed Owensby as he left a Sunoco gas station convenience store. Apparently, the officers believed Owensby to be a man who had evaded police in the same area some weeks earlier. After frisking and questioning him, the officers began to effect his arrest. Owensby attempted to flee, and the officers wrestled him to the ground in response. In the ensuing struggle, during which time additional law enforcement officers named in the suit arrived on the scene, the officers struck and maced Owensby; the Estate alleges that Caton continued to strike Owensby even after he had stopped resisting and been handcuffed.

When the struggle ended, officers transferred Owensby, now motionless, to the back of a nearby Golf Manor police car. The Estate alleges that several minutes elapsed while Owensby lay in the back of the car without receiving any sort of first aid or medical care. It was not until Cincinnati Police Sergeant William ("Pete") Watts arrived on the scene, found Owensby unresponsive, and called for medical assistance that officers began to attend to Owensby's injuries and physical condition. Cincinnati police officers attempted to revive Owensby using CPR; however, they were unsuccessful. He was taken to the University of Cincinnati

Hospital where he was pronounced dead at 8:47 p.m.  The Estate
alleges that Owensby's death certificate lists "mechanical
asphyxia" as the official cause of his death (doc. 52).

## III. LAW AND DISCUSSION

As noted, Cincinnati advances three general grounds for
summary judgment with respect to specific claims advanced by the
Estate and/or the damages sought as a remedy therefor.  In the
first two, Cincinnati avers that it and the individual officers
enjoy statutory immunity from some or all of the state law claims
advanced in the instant suit; accordingly, these contentions are
appropriately addressed together.  Finally, the City of Cincinnati
also contends that the Defendants are entitled to summary judgment
on the Estate's demand for punitive damages on its wrongful death
claim, averring that punitive damages are simply available under
Ohio's wrongful death statute.

### A. Ohio's Statutory Immunity Provisions

The City invokes two sections of the Ohio Revised Code in
support of its contention that it enjoys immunity from the Estate's
state law tort claims.  Both clearly purport, on their face, to
vest both the City and the individual police officer Defendants
with some degree of immunity from the Estate's claims.  The first,
Ohio Rev. Code § 2744.02, vests political subdivisions, such as the
City of Cincinnati, with broad statutory immunity from suit.  It
provides, in relevant part:

> (A)(1) For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

Ohio Rev. Code § 2744.02(A)(1). The second statutory provision, Ohio Rev. Code § 2744.03, extends a comparable immunity to employees of political subdivisions, such as the individual police officer Defendants, regarding certain claims of negligence arising from acts performed while on duty. It provides that

> (A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
>
> ...
>
> (6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
>
> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or]

-6-

(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

Ohio Rev. Code. § 2744.03(A).[1]

Reading these sections together, the City contends that it is absolutely immune from all of the Estate's "pendant and ancillary state tort claims" and that the individual officers are immune from the Estate's negligence claims (doc. 49). At best, the City contends, the individual officers may only be held liable for actions falling within the "malicious," "bad faith," or "wanton or reckless" behavior exception of Ohio Rev. Code § 2744.03(A)(6)(b). In response, the Estate contends that both of these cited provisions violate Article I, Section 5 and Article I, Section 16 of the Ohio Constitution, which guarantee all Ohio citizens the right to a trial by jury and the right to seek redress for their injuries in Ohio courts, respectively.

---

[1] Both of these provisions are subject to specific limitations and exceptions. For example, the broad absolute immunity granted the municipality is subject to specific enumerated exceptions articulated in Ohio Rev. Code § 2744.02(B). At this time, however, no argument advancing one or more of these exceptions is before the Court.

-7-

This Court has had occasion to consider this argument before. In Kammeyer v. City of Sharonville, et al., Case No. 1:01-CV-00649, the defendants made a virtually identical claim of immunity via a motion to dismiss, and the plaintiffs challenged the constitutionality of the statute on precisely the same grounds the Estate now advances. Surveying applicable Ohio caselaw, particularly the Supreme Court's most recent pronouncement on the issue of immunity in Butler v. Jordan, 92 Ohio St. 3d 354 (2001), this Court concluded that "the invocation of sovereign immunity by the City and the individual Defendants violates the Plaintiffs' rights to trial by jury and to remedy under the Ohio Constitution." Kammeyer, No. 1:01-CV-00649 (S.D. Ohio Dec. 17, 2003)(Spiegel, S. J.). As the City's instant arguments were considered and rejected in the Kammeyer case and because no subsequent Ohio Supreme Court caselaw provides any additional illumination of the contours of the Ohio statutory provisions and constitutional interpretation, this Court sees no reason to revisit this issue. Accordingly, the City's motion for summary judgment on the doctrine of statutory immunity will be denied.

B. Availability of Punitive Damages for Wrongful Death

The City also contends that the text of Ohio's wrongful death statute, Ohio Rev. Code § 2125.02, clearly excludes punitive damages from the realm of recovery for this violation and that controlling Ohio precedent has so held. Accordingly, the City

-8-

demands judgment in its favor barring any award of punitive damages arising from the Estate's wrongful death claim.

Upon review, the Court finds this assertion correct. In Ohio, no cause of action for wrongful death exists at common law; its contours are governed entirely by statute. See, e.g., Shover v. Cordis Corp., 61 Ohio St. 3d 213 (1991), overruled on other grounds, Collins v. Sotka, 81 Ohio St. 3d 506 (1998); Rubeck v. Huffman, 54 Ohio St.2d 20 (1978); Collins v. Yanity, 14 Ohio St. 2d 202 (1968). Section 2125.01 of the Ohio Revised Code creates the cause of action. It provides, in relevant part:

> When the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued, or the administrator or executor of the estate of such person, as such administrator or executor, shall be liable to an action for damages, notwithstanding the death of the person injured and although the death was caused under circumstances which make it aggravated murder, murder, or manslaughter. When the action is against such administrator or executor, the damages recovered shall be a valid claim against the estate of such deceased person....

Ohio Rev. Code § 2125.01. The following section, Ohio Rev. Code 2125.02, establishes the procedural and substantive framework of the claim, including statutes of repose, the ownership of the claim, and the damages recoverable for such claims. It provides, again in relevant part:

-9-

(A)(2) The jury, or the court if the action is not tried to a jury, may award damages authorized by division (B) of this section...and may award the reasonable funeral and burial expenses incurred as a result of the wrongful death....

...

(B) Compensatory damages may be awarded in an action for wrongful death and may include damages for the following:
    (1) Loss of support from the reasonably expected earning capacity of the decedent;
    (2) Loss of services of the decedent;
    (3) Loss of the society of the decedent, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel,instruction, training, and education, suffered by the surviving spouse, minor children, parents, or next of kin;
    (4) Loss of prospective inheritance to the decedent's heirs at law at the time of the decedent's death;
    (5) The mental anguish incurred by the surviving spouse, minor children, parents, or next of kin.

Ohio Rev. Code § 2125.02.

Nowhere does the statute authorize or otherwise sanction punitive damage awards to plaintiffs who succeed on such a claim. As a result, the Ohio Supreme Court has held that punitive damages are simply unavailable under Ohio's wrongful death statute:

The language of R.C. 2125.02 is clear. Damages in wrongful-death actions are limited to those for the pecuniary injury resulting from such death. That is, they are limited to damages for loss of money, or something by which money or something of money value may be

-10-

> acquired and which have been cut off by the premature death of the person from whom they would have proceeded. Since punitive damages are assessed over and above that amount adequate to compensate an injured party they are, by definition, not available in a wrongful-death action.

Rubeck v. Huffman, 54 Ohio St.2d 20, 22-23 (Ohio 1978) (internal citations and quotations omitted); see also Wightman v. Consolidated Rail Corp., 86 Ohio St. 3d 431, 448 (1999)(Stratton, J., concurring in part and dissenting in part).  Indeed, this Court has so found on previous occasions, and there is no intervening caselaw that would lead the Court to depart from this conclusion.    See Bruck v. Eli Lily and Co., 523 F.Supp. 480, 484 (S.D. Ohio 1981)(Spiegel, J.)(holding that "punitive damages are not recoverable as a matter of law under Ohio's Wrongful Death Act").

     In reaching this conclusion, however, the Court finds it appropriate to draw an important distinction.  In its response, Plaintiff contends that the legislative history, statutory construction, and judicial interpretation of the Ohio statute all indicate that punitive damages are awardable on wrongful death claims so long as the decedent suffered injury to person or property as part of the event leading to death (doc. 52).  As noted above, the Court does not agree.  Ohio Supreme Court precedent, however, has clearly upheld the award of punitive damages in cases involving wrongful death claims; these damages, however, are awarded not for the wrongful death claims but for other claims for "personal injury

or property loss caused by intentional, reckless, wanton, wilful and gross acts or by malice inferred from conduct and surrounding circumstances." Rubeck, 54 Ohio St. 2d at 23, quoting in part Columbus Finance v. Howard, 42 Ohio St. 2d 178, 184 (1975)(internal quotation marks omitted); see also Wightman, 86 Ohio St. 3d at 438, 448; Gollihue v. Consolidated Rail Corp., 120 Ohio App. 3d 378 (Union Cty. 1997). Indeed, the Gollihue case cited by the Estate in its response makes precisely this distinction:

> R.C. 2125.02 identifies the types of damages recoverable in a wrongful death action. Under this statute, punitive damages are excluded unless there is evidence that the decedent suffered property loss or personal injury before he died....
>
> In the present case, [however] plaintiff Ada Garrett [also] asserted a claim on behalf of the estate for the destruction of Bernard Garrett's clothing and eyeglasses. This property damage totaled $100. Conrail argues that this amount of property damage is insufficient to support an award of punitive damages....
>
> Regardless of the value of the property lost, the jury was entitled to consider whether punitive damages against Conrail were appropriate.

Gollihue, 120 Ohio App.3d at 406. Accordingly, if the Estate has pled and can establish one such claim to the satisfaction of a jury, it may still be entitled to receive punitive damages as part of the corresponding award. The Court expresses no opinion as to the merits of any such claim. On the question currently before this Court on Defendants' motion, however – whether the Estate can

recover punitive damages on the wrongful death claim alone – the Court finds the City's position well taken.[2]

**IV. CONCLUSION**

       For the foregoing reasons, Defendant City of Cincinnati's Motion for Summary Judgment on Pendant and Ancillary State Tort Claims (doc. 49) is GRANTED IN PART and DENIED IN PART, to wit: Cincinnati's motion for summary judgment as to state law tort claims against it and the individual police officer defendants based on statutory immunity is DENIED, and Cincinnati's motion for summary judgment as to all punitive damages arising from the Plaintiff's state law wrongful death claim is GRANTED.

       SO ORDERED.

Dated: March 25, 2004       /s/ S. Arthur Spiegel
                            S. Arthur Spiegel
                            United States Senior District Judge

---

[2] In its reply, Cincinnati insists that the "attachments, exhibits, reports and statements" that the Estate submitted in support of its response should be disregarded by the Court because they do not constitute admissible evidence and, as such, are not properly considered in a motion for summary judgment pursuant to Fed. R. Civ. P. 56 (doc. 53). As a result, the Defendant urges this Court to "disregard...the entire factual section [of] Plaintiffs' [sic] response" (<u>Id</u>.). Given that the Court did not need to rely upon any of the contested factual assertions in resolving the instant motion, the Court need not reach this issue.