IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ESTATE OF ROGER D. OWENSBY,      *    CASE NO. C-1-01-769

    Plaintiff                        (Judge S. Arthur Spiegel)

vs._____                      *    **DEFENDANTS CITY OF CINCINNATI**
    _____    **AND POLICE CHIEF THOMAS**
CITY OF CINCINNATI, et al.            **STREICHER, JR.'S OMNIBUS**
_____      **MOTION TO STRIKE PLAINTIFF'S**
    Defendants._____  *    **MARCH 11, 2004 REPLY IN**
_____      **SUPPORT OF SUMMARY JUDGMENT;**
_____      **ALTERNATIVE MOTION FOR LEAVE**
_____      **TO FILE SUPPLEMENTAL RESPONSE**
_____ *    **OPPOSING  SUMMARY  JUDGMENT;**
_____      **MOTION TO STRIKE PLAINTIFFS'**
_____      **MATERIALS THAT MAY NOT BE**
_____      **CONSIDERED ON SUMMARY JUDGMENT**
_____ *    **ANALYSIS**
_____

    Now come the Defendants, City of Cincinnati and Police Chief Thomas Streicher, Jr., by and through counsel, and hereby move the Court as follows:

    1) Plaintiffs' March 11, 2004 reply in support of partial summary judgment should be stricken from the record because it asserts completely new arguments outside the scope of plaintiffs' initial motion and the defendants' response memorandums, denying the defendants an opportunity to respond to such arguments, including:

        a) Ohio Revised Code 313.19 requires that the Coroner's "mechanical asphyxiation" cause of death opinion must be accepted without challenge and prohibits the defendants from presenting medical expert evidence of an alternate cause of death in rebuttal;

        b) "Judicial estoppel" prohibits the defendants from asserting the decedent, in reality, died from sudden cardiac arrest directly related to decedent's acts of fleeing and violently resisting arrest, to test the credibility of the Coroner's opinion; and

        c) Defense expert Tom Neuman, M.D.'s affidavit should be stricken without conducting a <u>Daubert</u> Hearing because the plaintiffs, in their apparent judicial authority, question whether Dr. Neuman possesses sufficient qualifications and credentials.

2) Alternatively, Cincinnati and Police Chief Streicher request Leave of Court to file a supplemental response opposing summary judgment, which addresses these new arguments. The following Memorandum contains these defendants' supplemental response.

3) The Cleveland Clinic Heart Center, American Heart Association and other medical documents Plaintiffs cite and rely upon in their reply memorandum, to rebut Dr. Neuman's qualifications and expert opinion that decedent died from sudden cardiac arrest, should be stricken because this evidence does not fall within the category of appropriate evidence that may be considered on summary judgment analysis pursuant to Fed. R. Civ. P. 56.

These motions and requests are more fully supported by the accompanying Memorandum.

Respectfully submitted,

J. Rita McNeil (0043535)
City Solicitor

S/Neil F. Freund
Neil F. Freund (0012183)
Trial Attorneys
Vaseem S. Hadi (0075617)
FREUND, FREEZE & ARNOLD
One Dayton Centre
1 South Main Street, Suite 1800
Dayton, OH 45402-2017
(937) 222-2424(937) 222-5369 (fax)
nfreund@ffalaw.com
vhadi@ffalaw.com

S/Geri Hernandex Geiler
Geri Hernandez Geiler (0042081)
Sr. Assistant City Solicitor
Julie F. Bissinger (0012055)
Chief Counsel
City Solicitor's Office
Room 214, City Hall
801 Plum Street
Cincinnati, OH 45202
(513) 352-3338(513) 352-1515(fax)
geri.geiler@cincinnati-oh.gov
julie.bissinger@cincinnati-oh.gov

ii

## TABLE OF CONTENTS AND SUMMARY

I.    Plaintiff's March 11, 2004 reply should be stricken because it improperly raises new arguments beyond the scope of the initial motion for summary judgment and defendants' responses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

II.   Alternatively, the Court should grant leave for the Defendants to file a supplemental response opposing summary judgment to fully address plaintiffs' new arguments and evidence . . . 4

      A.    "Judicial estoppel" is inapplicable because Plaintiffs knew a genuine issue existed regarded cause of death and that the defendants were conducting such discovery before moving for summary judgment. . . . . . . . . . . . . .4

            Teledyne Indus. vv. NLRB, 911 F.2d 1214, 1218 (6th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . .4

            Fed. R. Evid. 801(d)(1)(A). . . . . . . . . . . . . . .5

            Fed. R. Evid. 613 . . . . . . . . . . . . . . . . . .5

            Konstantinidis v. Chen, 200 U.S. D.C. 69, 626 F.2d 933, 939 (D.C. Cir. 1980). . . . . . . . . . . . . . . . .5

            Johnson Serv. Co. v. TransAmerica Ins. Co., 485 F.2d 164, 175 (5th Cir. 1973). . . . . . . . . . . . . . . . . .5

            Browning v. Levy, 283 F.3d 761, 775 (6th Cir. 2002). . 5

            Fidelity & Deposit Co. v. Hudson United Bank, 653 F.2d 766, 778-79 (3d Cir. 1981) . . . . . . . . . . . . . . .6

            Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 599 (6th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . .11

            City of Kingsport v. Steel and Roof Structure, Inc., 500 F.2d 617 (6th Cir. 1974). . . . . . . . . . . . . . . .11

      B.    While Revised Code 313.19 is inapplicable to plaintiffs' Section 1983 claim, under this statute, the defendants may introduce medical evidence to rebut the coroner's opinions._. . . . . . . . . . . . . . . . . . . . . . .12

            Boyd v. Baeppler, 215 F.3d 594 (6th Cir. 2000). . . . 12

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

R.C. 313.19; <u>Vargo v. Travelers Ins. Co.</u> (1987), 34 Ohio St.3d 27, 516 N.E.2d 226 . . . . . . . . . . . . . . 13

<u>Evans v. National Life & Acc. Ins. Co.</u> (1986), 22 Ohio St.3d 87, 91, 488 N.E.2d 1247. . . . . . . . . . . 14

C.  Plaintiffs' *Daubert* argument regarding defense expert Dr. Neuman is misplaced because it focuses only on professional titles and improperly glosses over Dr. Neuman's extensive medical background and experience . . . . . . . . . . 16

Fed. R. Evid. 702; <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.,</u> 509 U.S. 579 (1993) . . . . . . . . . . . . . 15

<u>Wellman v. Norfolk & Western Railway Co.,</u> 98 F.Supp.2d 919, 923 (S.D. Ohio 2000). . . . . . . . . . . . . . . . . 15

<u>Miller v. Bike Athletic Co.</u> (1998) 80 Ohio St.3d 607. . . 16

<u>Alexander v. Mt. Carmel Med. Ctr.</u> (1978), 56 Ohio St.2d 155, 160 . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>McKinney v. Schlatter</u> (1997), 118 Ohio App.3d 32<u>8</u>. . . . .16

<u>Bruni v. Tatsumi</u> (1976), 46 Ohio St.2d 127, 131, fn. 3 . .16

<u>McKinney v. Schlatter</u> (1997), 118 Ohio App.3d 328, *cert. denied,* (1997), 79 Ohio St.3d 1421, 680 N.E.2d 158. . . . 17

<u>Kumho Tire Co. v. Carmichael</u> (1999), 526 U.S. 137, 152, 119 S. Ct. 1167, 1176 . . . . . . . . . . . . . . . . . . . . 18

III. The Court should strike all medical authority, references and exhibits Plaintiffs submitted to challenge Dr. Neuman's opinions, which fall outside of Fed. R. Civ. P. 56 . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . 23

PROOF OF SERVICE . . . . . . . . . . . . . . . . . . . . 24

iv

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

<u>**MEMORANDUM**</u>

**I.** **<u>Plaintiffs' March 11, 2004 reply should be stricken because it improperly raises new arguments beyond the scope of the initial motion for summary judgment and defendants' responses.</u>**

On summary judgment analysis, the moving party must present all arguments in his initial motion and memorandum, affording the non-moving party an opportunity to respond to all arguments. Under the Local Court Rules, the moving party may file a brief reply to the non-moving party's response. It is axiomatic the brief reply be limited only to arguments and evidence developed in the earlier summary judgment memorandums. "Evidence used to support a reply memorandum shall be limited to that needed to rebut the positions argued in memoranda in opposition." Local. Ct. R. 7.2(e).

In this case, plaintiffs filed a motion for partial summary judgment only on the issue of the defendants' alleged failure to provide timely medical attention. In this motion, the plaintiffs presented evidence that the decedent might have died from mechanical asphyxiation. In their response, Cincinnati and Chief Streicher argued genuine issues of fact exist regarding cause of death. Specifically, the defendants presented expert medical testimony challenging plaintiffs' cause of death theory as well as proximate cause. In the reply, the plaintiffs argue for the very first time: 1) the Coroner's cause of death opinion must be accepted without question under Ohio Revised Code 313.19; 2) the judicial estoppel doctrine precludes defendants from testing the accuracy and credibility of the Coroner's opinion; and 3)that

1

defense expert Dr. Neuman's opinion should be disregarded without conducting a <u>Daubert</u> hearing to assess his credentials and qualifications.

These new arguments warrant striking Plaintiff's reply because they should have been raised in the initial motion for partial summary judgment. As will be discussed more fully in this memorandum, the plaintiffs had actual and/or constructive notice that a genuine issue existed on cause of death and that the defendants would present medical experts rebutting the Coroner's theory. Further, the plaintiffs submitted, cited and relied upon brand new medical evidence in their reply, such as Cleveland Clinic Heart Center, American Heart Association and other medical documents, in direct violation of Local Rule 7.2(e)'s express mandate that their reply memorandum must only be for rebuttal; new legal arguments and evidence cannot be submitted in the reply.

Interestingly, the plaintiffs have raised the exact same argument, on their behalf, in the past which defendants assert now - reply memorandums must be limited to the scope of initial motions and subsequent responses. For example, on December 22, 2003, the plaintiffs filed a "motion to strike new arguments ... alternative motion for leave to file surreply," after the defendants filed a reply in support of their motion for continuance of trial date and extended discovery deadline. At the time, plaintiffs claimed that alleged new arguments "were never raised in the underlying motion and thus, Plaintiff should be afforded the chance to respond."

(Dec. 22, 2003 mem. at 2, Doc #77) Further, Plaintiffs stated, "it was improper for Defendants to raise a new argument in a reply memorandum which deprives the Plaintiff of the fair opportunity to respond."

In an accompanying letter to defendants' counsel, the plaintiffs, by and through counsel, vehemently supported their motion for leave to file a surreply as follows:

> *This argument was never raised in your initial Motion for Continuance of Trial and Extending Discovery Deadline (Doc. 65). It is improper to raise new arguments in a Reply Memorandum and thereby preclude Plaintiff from their Response.* Therefore, please immediately withdraw this portion of your Reply Memorandum.

(Paul Martins Ltr. dated Dec. 16, 2003)(emphasis added).

Pursuant to Plaintiffs' logic, it was wholly improper for them to raise completely new legal arguments and submit new evidence in their reply supporting summary judgment. Moreover, Plaintiffs committed this improper action even though they fully knew and viewed such conduct as inappropriate and, thus, robbed the defendants of adequate opportunity to respond accordingly. Under these circumstances, the Plaintiffs' reply should be stricken from the record. Alternatively, as Plaintiffs have asserted in the past, Cincinnati and Police Chief Streicher should be permitted to file a supplemental response opposing summary judgment, to address Plaintiffs' new arguments and evidence appropriately.

3

II. **Alternatively, the Court should grant Leave for the Defendants to file a supplemental response opposing summary judgment to fully address Plaintiffs' new arguments and evidence.**

In the event the Court accepts the new arguments supporting summary judgment, which the Plaintiffs raised for the first time in their reply, the Defendants should be permitted to file a supplemental response. In their supplemental response, the Defendants assert: A) "Judicial estoppel" does not preclude the defendants from rebutting, challenging and testing the Coroner's cause of death opinion; B) Ohio Revised Code 313.19 permits defendants to rebut the Coroner's presumed cause of death opinion; and C) Dr. Neuman is fully qualified to render expert opinions in this case and he would survive a <u>Daubert</u> challenge. Further, the new, unsworn and unauthenticated medical evidence Plaintiffs cite and rely upon to challenge Dr. Neuman's opinions, must be stricken under Federal Civil Rule 56. These issues will be addressed in this order below.

A. **"Judicial estoppel" is inapplicable because Plaintiffs knew a genuine issue existed regarded cause of death and that the defendants were conducting such discovery before moving for summary judgment.**

Plaintiffs present a tortured interpretation of the judicial estoppel doctrine, which contradicts Sixth Circuit precedent and impedes the search for the truth - the fundamental cornerstone of the litigation process. <u>Teledyne Indus. vv. NLRB,</u> 911 F.2d 1214, 1218 (6th Cir. 1990). "Judicial estoppel is applied with caution to avoid impinging on the truth-seeking function of the court

4

because the doctrine precludes a contradictory position without examining the truth of either statement." <u>Id.</u>  The federal courts favor impeachment during cross-examination, as opposed to deciding factual issues by judicial estoppel, as the appropriate method to deter parties from contradicting prior statements.  <u>Id.</u> (citing Fed. R. Evid. 801(d)(1)(A); Fed. R. Evid. 613).

"Judicial estoppel does not bar a party from contradicting itself," but only from contradicting "<u>a court's determination</u> that was based on that party's position." <u>Teledyne,</u> *supra* (emphasis added).  Many courts have refused to apply judicial estoppel if the party's prior, different position resulted from mistake, inadvertence, or fraud.  <u>Teledyne,</u> *supra* (citing <u>Konstantinidis v. Chen,</u> 200 U.S. D.C. 69, 626 F.2d 933, 939 (D.C. Cir. 1980); <u>Johnson Serv. Co. v. TransAmerica Ins. Co.,</u> 485 F.2d 164, 175 (5th Cir. 1973).  "The reasoning is that if the prior position was false, <u>the danger to the integrity of the courts is reversed, because a strict rule would force the court to continue to adopt a false position.</u>" <u>Teledyne,</u> *supra* (emphasis added). Judicial estoppel applies only in narrow circumstances when:

> 1) a party is asserting a position that is contrary to one that <u>the party has asserted under oath</u> in a prior proceeding; and
>
> 2) where the <u>prior court</u> adopted the contrary position as a preliminary matter or final disposition.

<u>Teledyne,</u> *supra;* <u>Browning v. Levy,</u> 283 F.3d 761, 775 (6th Cir.

5

2002)(emphasis added); *accord* <u>Fidelity & Deposit Co. v. Hudson United Bank,</u> 653 F.2d 766, 778-79 (3d Cir. 1981)(holding a party's answer to an interrogatory in a different lawsuit did not estop the same party from taking a different position in the current lawsuit.)

In the case at bar, plaintiffs' desperate attempts to invoke judicial estoppel, as a method to hide the true cause of decedent's death, lacks merit for several reasons.  First, the plaintiffs had full knowledge that the defendants believed a genuine issue existed regarding cause of death and were conducting discovery for years on this issue.  In their reply supporting motion for partial summary judgment, plaintiffs point out numerous times that in mid-2002, Cincinnati hired Cyril Wecht, M.D. for the express purpose of challenging the Hamilton County Coroner's cause of death opinion. (Reply at ii, 13-14, Doc #108).   Inexplicably, plaintiffs contradict this assertion by arguing Cincinnati allegedly adopted the County Coroner's cause of death opinion in separate internal administrative investigations of its police officers. If Cincinnati had previously accepted and adopted the Coroner's cause of death opinion, it is utterly illogical that the City would have continued to squander time and resources searching for medical experts to challenge this opinion over the past two years.

Next, it is undisputed the plaintiffs knew or should have known the identities and expected opinions of the defendants experts, who opined the decedent died from sudden cardiac arrest,

6

before plaintiffs moved for summary judgment on the medical attention issue. On December 17, 2004, six weeks before plaintiffs filed their motion for partial summary judgment, plaintiffs' counsel Paul B. Martins attended the deposition of Hamilton County Deputy Coroner Daniel L. Schultz. (Affidavit of Neil F. Freund ¶2, attached as Exhibit A). (Dr. Schultz deposition, Vol. I & II, filed with this court 2/12/2004, Doc.#91). Mr. Freund cross-examined Dr. Schultz extensively regarding decedent's cause of death at that time. (Freund Aff. ¶2; Dr. Schultz depo. at 83-94, 98-99). Specifically, Mr. Freund questioned Dr. Schultz at length whether decedent could have experienced sudden cardiac death and whether decedent's physical condition before death was symptomatic of a heart attack. (Freund Aff. ¶2.)

Dr. Schultz conceded sudden cardiac death can result from "extreme physical exertion." (Dr. Schultz depo. at 92-93.) Further, the decedent would have experienced elevated blood pressure when he provoked a violent struggle with police. (Id. ¶98-99.) Decedent's physical conditions, such as his hypoxic episode, nausea and vomiting, and conjunctival peterchiae, could be related to a heart attack. (Id. at 83.) Plaintiffs' counsel Mr. Martin stated several objections to defense counsel's extensive "cause of death" questioning. Dr. Schultz' deposition occurred three weeks before the Court's deadline for the defendants to disclose medical experts.

7

On December 31, 2003, the Court issued an Order requiring that the defendants disclose their experts by January 7, 2004. On January 7, 2004, the defendants timely identified Charles V. Wetli, M.D., a forensic pathologist, and Thomas Neuman, M.D., an emergency medicine physician, as experts. (Exhibit A-1). Based on these medical experts' respective subspecialties, as well as the fact plaintiffs knew the defendants had believed a genuine issue existed regarding cause of death, the plaintiffs knew or should have known the defendants would challenge the Hamilton County Coroner's cause of death opinion. It should be noted that Dr. Wetli's opinions were public record in May, 2003. (Freund Aff. ¶6; Dr. Wetli Sept. 13, 2002 Aff. attached as Exhibit A-6). Still, the plaintiffs moved for partial summary judgment, on February 2, 2004, without addressing the cause of death issue. Plaintiffs' willful and conscious decision to ignore the ongoing, hotly contested cause of death issue, is fatal to their judicial estoppel claims.

Moreover, the defendants followed-up disclosure of their expert identities, by providing plaintiffs' counsel with these experts' written reports and opinions. (Dr. Wetli written report and curriculum vitae attached as Exhibit A-3, A-4; (Dr. Neuman curriculum vitae attached as Exhibit A-5; Dr. Neuman written report attached as exhibit to Defendants' Response Contra Mot. Partial Summ. Judg. Doc #99) Concurring with Dr. Neuman, forensic pathologist Dr. Wetli opined to a reasonable degree of medical certainty that decedent died from a sudden cardiac episode and not

mechanical asphyxiation. (Exhibit A-3). Interestingly, the defendants only relied upon Dr. Neuman's opinions in their response contra motion for partial summary judgment. Curiously, however, in a completely separate memorandum plaintiffs filed recently, they acknowledge that Cincinnati identified both Dr. Wetli and Dr. Neuman as experts for the express purpose of establishing the decedent, in fact, died from "an unavoidable and immediate heart attack." (Pl. March 19, 2004 Memo Opp. Mot. Limine to Exclude Dr. Wecht Testimony at 5, Doc #111). The fact plaintiffs knew Dr. Wetli served as a defense expert to rebut the coroner's cause of death opinion, despite the fact defendants never relied upon Dr. Wetli's opinions in their response contra motion for summary judgment, proves the plaintiffs knew all along that a genuine issue existed regarding cause of death and that the defendants were actively conducting discovery to challenge the County Coroner's opinion. Under these circumstances, the plaintiffs assert this judicial estoppel argument dishonestly by claiming they never knew an issue regarding cause of death existed until recently.

Most importantly, plaintiffs' judicial estoppel argument is flawed because it fails to meet the doctrine's legal standard. Browning, Teledyne, *supra.* As discussed earlier, the Sixth Circuit's "judicial estoppel" standard requires a showing that Cincinnati and Chief Streicher asserted under oath, in a prior court proceeding, that the decedent in fact died from mechanical asphyxiation. Browning, Teledyne, *supra.* Such action is impossible

9

because such opinion testimony involves a medical expert conclusion, upon which these defendants lack the requisite qualifications to render. While it is possible the defendants might have acknowledged the Hamilton County Coroner's current opinion is that the decedent died from mechanical asphyxiation, acknowledgment of this opinion does not equate to the defendants testifying under oath as purported medical experts, themselves, to support plaintiffs' judicial estoppel view. Stated differently, inadvertent acknowledgment of the County Coroner's opinion is insufficient to support judicial estoppel on the cause of death issue. Teledyne, *supra* (stating courts avoid applying judicial estoppel when the party's prior position resulted from mistake, inadvertence or fraud).

Also, judicial estoppel is inapplicable because the party who allegedly changed their position, must have asserted the earlier position in a judicial matter, proceeding or disposition. Browning, Teledyne, *supra*. In contrast, plaintiffs have argued Cincinnati might have acknowledged the County Coroner's opinion in internal administrative and investigation proceedings. There is no authority in the Sixth Circuit or Southern District of Ohio to suggest a city's internal administrative and investigation procedures should be viewed as judicial matters, proceedings or dispositions to invoke collateral estoppel in this type of controversy.

10

The Sixth Circuit has emphasized that the hallmark of the judicial estoppel doctrine is to protect the integrity of the courts; not the integrity of the parties. Here, the plaintiffs have failed to identify any court proceeding, matter or final disposition in this case where these defendants conceded under oath the decedent's cause of death, in fact, was mechanical asphyxiation. In reality, the plaintiffs' judicial estoppel view places the integrity of the parties and not the integrity of the courts into issue.

Finally, plaintiffs have not explained why impeachment on cross-examination of defense experts should be foreclosed, as the federal courts' favored method of deterring contradictory statements, over judicial estoppel. <u>Teledyne,</u> *supra* (citing Fed. R. Evid. 801(d)(1)(A); Fed. R. Evid. 613). By plaintiffs' own admission, the "core issue" in this lawsuit is "[w]hether Mr. Owensby died as the result of homicide at the hands and knees of the defendant officers." (Pl. Mar. 19, 2004 memo opp. Mot. Limine to exclude Dr. Wecht testimony at 10, Doc #111). In acknowledging decedent's cause of death as this controversy's "core issue," plaintiffs have urged the Court to introduce all "relevant evidence," which will "make a fact in dispute more or less likely," and "assist the trier of fact to understand the evidence or to determine a fact in issue." (Pl. Mar. 19, 2004 Memo Opp. Mot. Limine to Exclude Dr. Wecht Testimony at 9, Doc #111) (citing Fed. R. Evid. 401, 402, 701).

11

In reality, plaintiffs are the parties who have made an about-face and are playing "fast and loose" with the Court, by previously acknowledging the core issue as cause of death and urging the Court to admit all relevant evidence. But now, plaintiffs cry for judicial estoppel on the cause of death issue as a way to exclude relevant medical evidence, even though this evidence undoubtedly will assist the jury in weighing this critical issue. Even worse, plaintiffs support their tortured, perverted judicial estoppel view with mere allegations of contradictory statements made during municipal proceedings, which the Sixth Circuit considers insufficient grounds to apply judicial estoppel. _Teledyne, supra_ (citing _Edwards v. Aetna Life Ins. Co.,_ 690 F.2d 595, 599 (6th Cir. 1982); _City of Kingsport v. Steel and Roof Structure, Inc.,_ 500 F.2d 617 (6th Cir. 1974). As judicial estoppel must be applied "with caution to avoid impinging on the truth-seeking function of the court," plaintiffs' judicial estoppel claim lacks merit because the truth behind decedent's cause of death must be established at trial through medical evidence. _Teledyne, supra._

**B.   While Revised Code 313.19 is inapplicable to plaintiffs' Section 1983 claim, under this statute, the defendants may introduce medical evidence to rebut the coroner's opinions.**

First, Ohio Revised Code 313.19 is a state statute that has no bearing on Plaintiffs' Section 1983 failure to provide medical attention claims in Federal District Court. In contrast, R.C. 313.19 is binding only on state courts. An exhaustive search of

12

federal and state court cases failed to yield any case either in federal district court, or that involved Section 1983 claims, where Ohio Revised Code 313.19 precluded any party from submitting medical expert evidence to rebut the Coroner's findings.  In fact, both the Sixth Circuit and Southern District of Ohio Courts have consistently allowed introduction of rebuttal medical and/or forensic experts, to rebut or build upon coroners' findings, in Section 1983 cases.  See e.g., Boyd v. Baeppler, 215 F.3d 594 (6th Cir. 2000)(allowing plaintiffs asserting Section 1983 claim against Cleveland and individual police officers to introduce medical expert testimony to rebut the coroner's opinions that the decedent's bullet entrance wounds were consistent with the defendant police officers' testimony that the officers shot the decedent because he was armed and behaved in an aggressive, threatening manner); Carpenter v. Cincinnati, 2003 U.S. Dist. LEXIS 7105 ** 9-10(S.D. Ohio 2003)(allowing plaintiffs to introduce a forensic firearms expert to testify on how and where bullets entered the decedent's body even though the Coroner's report rendered opinions on the bullet paths and cause of death, in a Section 1983 lawsuit against Cincinnati and individual police officers.)(attached as Exhibit B).  Neither Boyd nor Carpenter referenced or considered R.C. 313.19 in any way although both cases involved Ohio events.

If the Owensby plaintiffs' view that Ohio Revised Code 313.19 renders the Hamilton County Coroner's opinions binding and not

13

subject to challenge, it follows the Boyd and Carpenter courts would have relied upon and cited to this statute, to exclude additional medical and forensic evidence. The fact the Sixth Circuit, in Boyd, and Southern District of Ohio, in Carpenter, permitted the introduction of additional medical evidence beyond the coroners' opinions, without mentioning Revised Code 313.19, establishes this state statute is inapplicable to this case as well.

Second, even if R.C. 313.19 applied, this statute merely creates a rebuttable presumption that the coroner's opinions are accurate. R.C. 313.19; Vargo v. Travelers Ins. Co. (1987), 34 Ohio St.3d 27, 516 N.E.2d 226, syllabus paragraph one. In turn, Ohio courts have held parties still may introduce medical evidence to rebut the coroner's conclusions to the jury. This is true even if the party introducing rebuttal medical evidence did not make formal application to have the common pleas court direct the coroner to change his decision. See e.g., Johnston v. Univ. Mednet (Aug. 11, 1994, unreported,) 1994 Ohio App. LEXIS 3495 (8th App. D., Cuyahoga Cty.)(attached as Exhibit C).

In Johnston v. Univ. Mednet, the court upheld a jury instruction which stated:

> The coroner's factual determinations concerning the manner, mode and cause of death, as expressed in the coroner's report and the death certificate, merely create a non-binding rebuttal presumption concerning such facts in the absence of competent, credible evidence to the contrary.

14

Johnston, *12 (emphasis in original).  The Johnston coroner opined the decedent had died from cardiac arrest.  Id. at *8.  Both the plaintiff and the defendants presented medical evidence that either rebutted or elaborated on the coroner's opinions.  Id. at *9-10.

After the presentation of such evidence, the Johnston court gave the "rebuttable presumption" jury instruction quoted earlier. On appeal, the plaintiff challenged the propriety of this instruction.   The instruction was upheld because "[t]he Ohio Supreme Court has recognized ... that a trial court has discretion to instruct the jury it may 'infer,' rather than 'presume,' the correctness of the coroner's findings when a party has sufficiently rebutted the presumption of correctness.  Id. at *11-12 (quoting Evans v. National Life & Acc. Ins. Co. (1986), 22 Ohio St.3d 87, 91, 488 N.E.2d 1247. It should be noted that none of the Johnston parties made formal application to have the trial court direct the coroner to change his opinions at any time.

Assuming arguendo that Revised Code 313.19 applied to the case at bar, Ohio case law has held the coroner's opinions at most may create a rebuttable presumption of accuracy.  Alternatively, jurors may infer, as opposed to presume, the coroner's opinions are accurate.  Most importantly, a party may rebut the presumption of correctness even if the court has not directed the coroner to change his opinions.  The holdings of these precedents completely contradicts the Owensby plaintiffs' claim that the Hamilton County Coroner's opinions must be accepted as correct in this case and

15

that R.C. 313.19 precludes the defendants from rebutting these findings through competent medical evidence. Stated differently, plaintiffs' R.C. 313.19 view is misplaced as the defendants may introduce evidence of an alternate cause of death regardless of whether the jury views the coroner's opinions as a rebuttable presumption or a mere inference of correctness. Johnston, Evans, *supra.*

**C.     Plaintiffs' *Daubert* argument regarding defense expert Dr. Neuman is misplaced because it focuses only on professional titles and improperly glosses over Dr. Neuman's extensive medical background and experience.**

Defense expert, emergency room physician Dr. Tom Neuman, possesses ample qualifications and skills to render medical opinions in this case. Fed. R. Evid. 702; Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). First, the trial court must determine the proffered testimony is reliable. Wellman v. Norfolk & Western Railway Co., 98 F.Supp.2d 919, 923 (S.D. Ohio 2000). Second, the proffered opinions must be relevant to the facts at issue. Id. at 924. The Supreme Court in Daubert set forth four non-exclusive factors including:

1) whether the theory or technique has been tested;

2) whether the theory or technique has been subjected to peer review and publication;

3) the known potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and

4) whether the theory or method has been generally accepted by the scientific community

16

Id. at 923 (citing Daubert, *supra*).    The Daubert test is "flexible," as the four Daubert factors do not constitute a "definitive checklist or test" but must be tailored to each case. Wellman, 98 F.Supp.2d at 923 (quoting Daubert, *supra*).

"The gatekeeper role, however, is not intended to supplant the adversary system or the role of the jury: 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Wellman, 98 F.Supp. at 924 (quoting Daubert, *supra*).    It is axiomatic the trial judge screen information to enable the jury to make factual determinations. Wellman, 98 F.Supp. at 924.

In 1998, Ohio embraced the Daubert approach regarding the admissibility of expert testimony under Ohio Rule of Evidence 702. Miller v. Bike Athletic Co. (1998) 80 Ohio St.3d 607. It is undisputed Ohio Evidence Rule 702 is identical to its federal counterpart.    Thus, Ohio case law involving the admission of medical experts under the flexible Daubert approach, provides guidance.

With regard to medical experts, the Ohio Supreme Court has held "it is the scope of the witnesses' knowledge and not the artificial classification by title that should govern the threshold question of his qualification." Alexander v. Mt. Carmel Medical Center (1978), 56 Ohio St.2d 155, 160; see, also, McKinney v. Schlatter (1997), 118 Ohio App.3d 328. The goal of expert testimony

17

is to provide an explanation of what a medical professional of ordinary skill, care and diligence in the same medical specialty would do in similar circumstances. Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, 131, fn. 3.

"The witness need not practice in the same specialty as that of the defendant-physician." Alexander v. Mt. Carmel Medical Center (1978), 56 Ohio St.2d 155, 158. Rather, it is the scope of the witnesses' knowledge and not the artificial classification by title that should be considered. Id. "The mere fact that a physician is of a different medical specialty than the defendant physician, does not prevent his or her testimony as an expert . . . but an expert witness must have sufficient knowledge, skill, experience, training and education in the subject matter of his or her testimony to satisfy Evid. R.702. Dunsky v. Taulbee, 2003 Ohio 5988, 2003 Ohio App. LEXIS 5321 **6 (12th D. Ct. App., Butler Cty.)(attached as Exhibit D)(emphasis added).

Finally, Ohio has recognized an "overlap" rule to specify that medical experts' professional titles and categorizations are not dispositive of Rule 702 admissibility. Dunsky, Alexander, supra. The overlap rule permits a medical expert to testify on a different specialization when an expert's field of medicine overlaps with another field and where "more than one type of specialist may perform the treatment." Alexander v. Mt. Carmel Med. Ctr. (1978), 56 Ohio St.2d 155, 158. The overlap rule cautions trial courts to avoid the temptation to reach decisions on expert testimony

FREUND, FREEZE & ARNOLD
A Legal Professional Association

admissibility, based solely on differences in professional titles or classifications. <u>McKinney v. Schlatter</u> (1997), 118 Ohio App.3d 328, *cert. denied,* (1997), 79 Ohio St.3d 1421, 680 N.E.2d 158 (citing <u>Alexander</u>, *supra*). Still, the admissibility of expert testimony subject to the overlap rule falls within the gatekeeping function's ultimate objective, which is the same for all expert testimony, as follows:

> [The purpose of the gatekeeper role] is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

<u>Kumho Tire Co. v. Carmichael</u> (1999), 526 U.S. 137, 152, 119 S. Ct. 1167, 1176.

In the case at bar, Plaintiffs' challenges to Dr. Neuman's opinions lack merit because they focus solely on professional titles and categorizations, instead of the extent of Dr. Neuman's medical background, education, training and experience. Initially, Plaintiffs object to Dr. Neuman's opinions because he "is not an epidemiologist" nor "is Dr. Neuman a cardiologist." (Pl. Reply Supporting Mot. Part. Summ. Judg. at 24.) This view completely thwarts authority cited above, that under <u>Daubert</u>, professional titles and categorizations of proposed medical experts is not dispositive of the admissibility issue. Next, the plaintiffs offer their own medical opinions to attack the merit, credibility and weight of Dr. Neuman's opinions, even though they have never established the requisite medical background and qualifications to

19

render expert opinions under Evidence Rule 702.  Incredibly, the plaintiffs suggest the Court should accept their skewed, subjective and unprofessional medical opinions without question, while simultaneously excluding emergency room physician Dr. Neuman's opinions based on lack of expertise.

In contrast, Dr. Neuman's affidavit sets forth his background, education and training that enables him to render expert opinions in this case.  As an emergency room physician, Dr. Neuman has treated many patients with cardiac conditions.  He is familiar with diagnosing the type of sudden cardiac condition that caused decedent's death. Since the flexible, <u>Daubert</u> approach requires tailoring such analysis to each case's particular facts, the "overlap" rule and other principles discussed above establish that Dr. Neuman, indeed, possesses the requisite qualifications to rebut the coroner's and Dr. Wecht's cause of death opinions.

It should be noted the plaintiffs never explain why any potential deficiencies of Dr. Neuman's qualifications cannot be remedied through cross-examination during a <u>Daubert</u> hearing. Again, the Court's gatekeeper role is not intended to supplant the adversary system or the role of the jury. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." <u>Wellman,</u> *supra.* Consequently, there is no reason why plaintiffs cannot address their concerns of Dr. Neuman's qualifications

20

through impeachment and cross-examination exercises; the courts' preferred method. <u>Teledyne,</u> *supra;* Fed. R. Evid. 801(d)(1)(A); Fed. R. Evid. 613. There is no authority to support disqualifying Dr. Neuman in a pre-trial dispositive motion in these circumstances, without conducting a <u>Daubert</u> hearing, especially when the plaintiffs knew a genuine issue existed on cause of death and the defendants disclosed Dr. Neuman as an expert within the Court's deadlines. As such, Dr. Neuman's opinions should be admitted because they will assist the jury in resolving the "core issue" in this controversy.

**III.** **<u>The Court should strike all medical authority, references and exhibits Plaintiffs submitted to challenge Dr. Neuman's opinions, which fall outside of Fed. R. Civ. P. 56.</u>**

In their reply, the Plaintiffs submitted a wide array of medical authority that falls out the scope of proper materials that may be considered on summary judgment analysis. Federal Civil Rule 56 states only specifically identified materials may be considered on summary judgment analysis as follows:

> The judgment sought shall be rendered forthwith if the <u>pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,</u> if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(C)(emphasis added).

In contrast, plaintiffs cite, reference and/or attach the following extrinsic materials to rebut Dr. Neuman's sworn affidavit opinions, in violation of this standard including:

FREUND, FREEZE & ARNOLD
A Legal Professional Association

a)  Cleveland Heart Clinic "Sudden Cardiac Death" doc;

b)  American Heart Association "Chain of Survival" doc;

c)  American Heart Association "Sudden Deaths from Cardiac Arrest" statistical fact sheet;

d)  Cincinnati Fire/Rescue Media Releases, December, 1997;

e)  Exhibit H website link

f) Additional information re Chain of Survival website link;

g) Exhibit I website link

j) Exhibit J American Heart Association "Statement on Chain of Survival"/"A Statement for Health Professionals from the Advanced Cardiac Life Support Subcommittee and the Emergency Cardiac Care Committee, American Heart Association" doc;

k) Exhibit K resume of Exhibit J author Dr. Richard Cummins;

l) website link to Exhibit J author Dr. Joseph Ornato biography

m) website link to Exhibit J author Dr. Paul Pepe biography;

n) Advanced Cardiac Life Support Committee "CPR" link and "Controlled Studies of Survival (Discharged Alive) From Out-of-Hospital Cardiac Arrest: Bystander Cardiopulmonary Resuscitation Compared with Late Cardiopulmonary Resuscitation" table; and

o) Exhibit L Journal of the American College of Cardiology 825, "31st Bethesda Conference, Emergency Cardiac Care (1999)" article

(Pl. Reply supporting mot. Summ. Judg. at 25-28).

All of this evidence must be disregarded because it falls outside the realm of specifically identified evidence contained in Federal Civil Rule 56.  None of this evidence is authenticated with any supporting affidavit.  Moreover, this evidence is not certified or self-authenticating. As such, this evidence cannot be considered

22

on summary judgment analysis and cannot be used to rebut Dr. Neuman's sworn affidavit opinions.

## CONCLUSION

For the foregoing reasons, Defendants City of Cincinnati and Police Chief Thomas J. Streicher, Jr. respectfully request:

1) Plaintiffs' reply in support of motion for partial summary judgment on their 42 U.S.C. § 1983 failure to provide medical attention claim, be stricken because it improperly contains new arguments and evidence outside the scope of the plaintiffs' initial motion and the defendants' responses;

2) Alternatively, Cincinnati and Chief Streicher request Leave of Court to file a supplemental response opposing summary judgment, which will properly allow these defendants to respond to the plaintiffs' new arguments and evidence; and

3) the Court should strike all medical evidence, references, citations and exhibits the plaintiffs set forth in their reply memorandum supporting motion for partial summary judgment, which fall outside the scope of appropriate evidence that may be considered under Federal Rule of Civil Procedure 56(C).

Respectfully submitted,

J. Rita McNeil (#0043535)
City Solicitor


S/Neil F. Freund
Neil F. Freund (0012183)
Trial Attorney
Vaseem S. Hadi (0075617)
FREUND, FREEZE & ARNOLD
One Dayton Centre
1 South Main Street, Suite 1800
Dayton, OH 45402-2017
(937) 222-2424
(937) 222-5369 (fax)
nfreund@ffalaw.com
vhadi@ffalaw.com

23

<u>S/Geri Hernandez Geiler</u>
Geri Hernandez Geiler (0042081)
Sr. Assistant City Solicitor
Julie F. Bissinger (0012055)
Chief Counsel
City Solicitor's Office
Room 214, City Hall
801 Plum Street
Cincinnati, OH 45202
(513) 352-3338
(513) 352-1515 (fax)
geri.geiler@cincinnati-oh.gov
julie.bissinger@cincinnati-oh.gov

**PROOF OF SERVICE**

This will certify that on March 30, 2004, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mark T. Tillar (0029898)
240 Clark Road
Cincinnati, OH 45202
(513) 761-2958
Attorney for Plaintiff

John Helbling (0046727)
3672 Springdale Road
Cincinnati, OH 45251
513-923-9740
Attorney for Plaintiff

Paul B. Martins
HELMER, MARTINS & MORGAN CO.
Fourth & Walnut Centre, Suite 1800
105 East 4th Street Cincinnati, Ohio 45202-4008
(513) 421-7902
Attorney for Plaintiff

Donald E. Hardin (0022095)
HARDIN, LEFTON, LAZARUS &
MARKS, LLC
915 Cincinnati Club Building
30 Garfield Place
Cincinnati, OH 45202
513-721-7300
Special Counsel for Defendants
Robert Blaine Jorg, Patrick Caton,

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

Darren Sellers, Jason Hodge, and
Victor Spellen

Wilson G. Weisenfelder, Jr.  (0030179)
RENDIGS, FRY, KIELY & DENNIS, LLP
900 Fourth & Vine Tower
Cincinnati, OH 45202
513-381-9200
Attorney for Defendants
Village of Golf Manor,
Chief Stephen Tilley,
Officer Robert Heiland, and
John Doe #7 nka Chris Campbell

Ravert J. Clark
114 East 8th Street
Suite 400
Cincinnati, OH 45202
(513) 587-2887
Attorney for Defendant
Cincinnati Police Officer
David Hunter


                                        **s/ Neil F. Freund**
                                        Neil F. Freund

25

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**