# Charles V. Wetli, M.D.

Chief Medical Examiner
Suffolk County, New York

Clinical Professor of Path.
SUNY at Stony Brook, N.Y.

March 8, 2004

Mr. Neil F. Freund
c/o Freund, Freeze and Arnold
One Dayton Centre
1 South Main Street
Suite 1800
Dayton, Ohio 45402-2017

RE: Owensby v. City of Cincinnati, et al

Dear Mr. Freund:

Regarding the death of Roger D. Owensby, the following materials have been reviewed:

- Death certificate
- Toxicology report
- Hospital emergency department records
- EMS records
- Autopsy report and photographs
- Histologic sections
- Photographs of police officer and shirt; witness demonstration
- Property report
- Statements of Police Officer Robert Heiland, Security Guard Brian Menefee, Ariel St. Clair (11-08 and 12-00), George Weaver
- Report of Cyril Wecht (10 September 2002)
- Trial testimony (excerpts) of Police Officer Hunter, Dr. Schultz, Dr. Parrott
- Deposition transcripts of Dr. Schultz, EMT Coburn
- Grand jury testimony of Dr. Parrott

Very briefly, Mr. Owensby was involved in an intense struggle with several police officers during an attempted arrest. During the struggle, it was alleged that he was struck by fists, choked, sprayed with pepper extract, and that his chest was compressed. After being handcuffed, he was placed in the back of a police car. There are conflicting statements as to whether he walked to the police car or not. Shortly after being placed in the police car he was found to be without vital signs, and resuscitative efforts were to no avail.

The postmortem examination revealed only some abrasions and deep contusions to the scapular area bilaterally. Petechiae of the eyes were described as being present in the

right and scattered in the left, and associated with "scleral hemorrhage and conjunctival hemorrhage." In later deposition testimony the petechiae were described as "florid." No neck injury was identified, and there were no rib fractures. The 395 gram heart (predicted weight for height is 321 grams) had hypertrophy of both left and right ventricular walls (1.8 and 0.4 cm. thickness respectively). Toxicological analysis was negative except for cannabinoids. A hemoglobin electrophoresis was not done, and postmortem chemistry studies were not done. Death was attributed to "mechanical asphyxia" from compression of the neck and/or chest.

It should be noted that the photographs do not depict scattered petechiae nor "florid" petechiae of the eyes. At best there may be two petechiae of the sclera of the right eye. Also, it should be noted that if the deep contusions of the back were from a knee grinding into and compressing the back, one would expect to see rather obvious abrasions from the friction of the clothing. Deep contusions such as depicted here more likely result from a forceful impact which does not result in abrasions and does not necessarily cause externally evident bruising (this is sometimes seen at impact points on the legs of pedestrians struck by automobiles).

My opinion, to a degree of reasonable medical certainty, as to the cause of death of Roger Owensby remains the same as stated in my affidavit dated 13 September 2002 (nos. 4 & 5):

4. Roger Owensby, Jr., did not die from any type of asphyxia, including a mechanical asphyxia, or a choke hold. Roger Owensby, Jr., died a sudden cardiac death – i.e. an arrhythmia, which follows a period of intense exertion, from the effects of epinephrine (adrenaline) and nor-epinephrine. Further, it has been shown that many such individuals also experience profound metabolic acidosis, which may also lead to a sudden cessation of cardiac function.

5. The following are the basis for my opinion that Roger Owensby, Jr., died from Sudden Cardiac Death:

- The death occurred suddenly;
- There is a chest wall injury, but no evidence that there was chest compression with no ability to breath for 3-5 minutes, which would be necessary to cause an asphyxia;
- There is absolutely no evidence of neck injury;
- It is inconceivable that a forearm bar hold as demonstrated in the photographs of St. Clair and/or Weaver would not leave any injury in the neck of a non-sedated, struggling man with the habitus of Mr. Owensby;
- Sudden loss of vital signs after an intense period of physical exertion is typical for a cardiac arrhythmia;
- Additionally, the petechiae, which are pinpoint hemorrhages in the white portion of the eye, are not adequately depicted in the autopsy reports, casting doubt on their actual existence:

- However, if you assume that there were petechiae in the right eye, but not depicted in the photograph of the left eye, as testified to by Dr. Schultz, it would be evidence of localized injury to the right eye like you would receive from an irritant or dirt, not from an asphyxia. If Mr. Owensby had been asphyxiated, there would have been bilateral petechiae, or equal petechiae in both eyes, which would have been easily observed and photographed;
- The bruises to Mr. Owensby's back are consistent with blows from a fist, not from compression with knees as testified to by Dr. Schultz; and
- Witnesses indicated Mr. Owensby walked from the arrest scene to the police car, and then had a sudden loss of vital signs while alone in the police car, which means that Roger Owensby, Jr., could not have died during his arrest, but died from a sudden cardiac event in the police car.

It should also be noted that there was reportedly some vomitus at the arrest scene and at least some witnesses indicated Mr. Owensby was actually dragged to the police car and appeared unconscious. Terminal vomiting is often seen with sudden cardiac death, particularly when there is abundant gastric content (Mr. Owensby had 300 ml material in his stomach at autopsy). Hence, it is also possible he could have had his cardiac arrhythmia at the arrest scene (i.e. before being placed in the police car). However, what is important is that there is no physical or historical evidence to support a death from mechanical asphyxia. The sudden loss of vital signs during the terminal event of his life is typical for and characteristic of sudden cardiac death, particularly in the presence of an enlarged heart.

These opinions are held to a degree of reasonable medical certainty.

Yours truly,

*[signature]*

Charles V. Wetli, M.D.
Chief Medical Examiner

CVW/pam