*1994 Ohio App. LEXIS 3495, ***

DOROTHY J. JOHNSTON, ADMINISTRATRIX, etc., Plaintiff-Appellant v. UNIVERSITY MEDNET, ET AL., Defendants-Appellees

NO. 65623

COURT OF APPEALS OF OHIO, EIGHTH APPELLATE DISTRICT, CUYAHOGA COUNTY

1994 Ohio App. LEXIS 3495

August 11, 1994, Announced

**NOTICE: [*1]** THE LEXIS PAGINATION OF THIS DOCUMENT IS SUBJECT TO CHANGE PENDING RELEASE OF THE FINAL PUBLISHED VERSION.

**PRIOR HISTORY:** CHARACTER OF PROCEEDING: Civil appeal from Common Pleas Court. Case No. CV-210968

**DISPOSITION:** JUDGMENT: AFFIRMED.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff administratrix of decedent's estate filed a wrongful death medical malpractice action against defendants, hospital, medical association, and three physicians. A common pleas court (Ohio) entered a directed verdict in favor of the hospital and the medical association, and judgment in favor of the physicians after a jury trial. The administratrix appealed from that judgment and the denial of her post-judgment motion for a new trial.

**OVERVIEW:** The administratrix claimed that decedent's death was the result of the physicians' failure to detect and treat decedent's obstructed upper respiratory system causing an inadequate oxygen supply and her cardiac arrest. The physicians argued that the cardiac arrest resulted from decedent's two heart conditions. The court found that 1) the jury instruction about the coroner's findings concerning the cause, mode and manner of decedent's death were rebuttably presumed to be correct; 2) the administratrix waived newly minted claims of error concerning the trial court's instructions by failing to specifically raise them prior to submission of the case to the jury; 3) even if the administratrix' general objection to a witness' qualifications as an expert had been sufficient, she failed to show error or prejudice because a non-expert was allowed to testify concerning discernable physical characteristics when such testimony was based on observed facts; and 4) the administratrix failed to object to any of the comments during closing argument now complained of and the record did not demonstrate such persistent gross abuse of privilege to require the trial court to intervene sua sponte.

**OUTCOME:** The court affirmed the judgment in favor of the physicians. The court found further that the administratrix had a fair jury trial and was not entitled to new trial.

**CORE TERMS:** sub judice, decedent, cross-examination, doctor, assignment of error, failed to demonstrate, coroner, new trial, spasm, defense counsel, cause of death, assignments of error, claim of error, exemplify, ischemia, contraction, coronary, necrosis, abused, airway, band, waived, court of appeals, medical opinion, cardiac arrest, pathologist, statutory presumption, medical malpractice, certification, cardiac

**LexisNexis (TM) HEADNOTES - Core Concepts -** Hide Concepts

Civil Procedure > Appeals > Records on Appeal

HN1 Ohio R. App. P. 9(E) provides that an appellate court cannot resolve factual disputes about the trial court's record in the course of an appeal. The appellate court can authorize correction or supplementation of the trial court's record when the accuracy of the proposed changes is undisputed. Ohio R. App. P. 9(E). When the appellate court must resolve factual disputes about the trial court's record, mandamus is the sole appropriate remedy. More Like This Headnote

Civil Procedure > Jury Trials > Jury Instructions
Civil Procedure > Appeals > Reviewability > Preservation for Review

HN2 Ohio R. Civ. P. 51(A) governs objections to jury instructions and provides in part that on appeal, a party may not assign as error the giving or failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury. More Like This Headnote

Evidence > Procedural Considerations > Inferences & Presumptions
Healthcare Law > Treatment > Human Remains

HN3 The coroner's factual determinations concerning the manner, mode and cause of death, as expressed in the coroner's report and the death certificate, create a nonbinding rebuttable presumption concerning such facts in the absence of competent, credible evidence to the contrary. Ohio Rev. Code Ann. § 313.19. More Like This Headnote

Evidence > Procedural Considerations > Inferences & Presumptions
Healthcare Law > Treatment > Human Remains

HN4 See Ohio Rev. Code Ann. § 313.19.

Civil Procedure > Jury Trials > Jury Instructions
Healthcare Law > Treatment > Human Remains

HN5 An instruction on the statutory presumption of a decedent's cause of death, as expressed in the coroner's report and the death certificate, is warranted, despite the fact the parties present medical opinion evidence concerning the cause of death, when the sole objection raised at trial does not relate to the rebuttal of the statutory presumption. More Like This Headnote

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion
Evidence > Procedural Considerations > Rulings on Evidence

HN6 A reviewing court will not reverse the trial court's determination to admit evidence absent an abuse of discretion materially affecting substantial rights of the aggrieved party. Ohio R. Evid. 103(A). To demonstrate an abuse of discretion concerning an evidentiary ruling requires establishing the trial court committed more than an error of law or judgment and was unreasonable, arbitrary or unconscionable. More Like This Headnote

Evidence > Procedural Considerations > Rulings on Evidence

HN7 A party cannot claim error concerning the admission of evidence which the party invited or induced. More Like This Headnote

Evidence > Witnesses > Examination & Presentation of Evidence

HN8 Ohio R. Evid. 611(B) grants the trial court substantial discretion concerning the scope of cross-examination of witnesses particularly when the witness is a party to

the litigation. More Like This Headnote

Civil Procedure > Trials > Motions In Limine
Civil Procedure > Appeals > Reviewability > Preservation for Review
HN9 The ruling on a pretrial motion in limine does not preserve a claim of error absent an objection, proffer or ruling on the record when the issue actually arises in the context developed at trial. Where a plaintiff fails to properly preserve this issue by renewing her objection at trial, any claim of error in the trial court's tentative preliminary ruling is deemed to be waived. More Like This Headnote

Evidence > Procedural Considerations > Rulings on Evidence
HN10 When reviewing claims of error from the exclusion of evidence, the issue of whether testimony or evidence is relevant or irrelevant, confusing or misleading, is best decided by the trial judge, who is in a significantly better position to analyze the impact of the evidence on the jury. More Like This Headnote

Civil Procedure > Trials > Closing Arguments
HN11 Parties are afforded great latitude concerning statements made during closing arguments. A party must generally raise a timely objection to preserve a claim of error. More Like This Headnote

**COUNSEL:** For Plaintiff-Appellant: MICHAEL F. BECKER, JEANNE M. TOSTI, Michael F. Becker Co., L.P.A., Becker-Haynes Building, 134 Middle Avenue, Elyria, Ohio 44035.

For Defendants-Appellees: JOHN V. JACKSON, II, JOSEPH A. FARCHIONE, DOUGLAS G. LEAK, Jacobson, Maynard, Tuschman & Kalur, 1001 Lakeside Avenue, #1600, Cleveland, Ohio 44114-1192.

**JUDGES:** KRUPANSKY, SPELLACY, WEAVER

**OPINIONBY:** BLANCHE KRUPANSKY

**OPINION:** JOURNAL ENTRY AND OPINION

KRUPANSKY, J.:

Plaintiff-appellant Dorothy J. Johnston, Administratrix of the Estate of Judy Johnston, appeals from judgments of the trial court on a jury verdict for defendants-appellees James Radack, M.D., Conrad Foley, M.D., and Luann Labian, M.D., and denying her post-judgment motion for a new trial in this wrongful death medical malpractice action.

The record demonstrates plaintiff filed the complaint for wrongful death and medical malpractice *sub judice* in the trial court May 15, 1991, against the following five defendants, [*2] *viz.:* (1) University Mednet d.b.a. Euclid Clinic a.k.a. Euclid Mednet ("University Mednet"); (2) F.A. Greicius, M.D. & Associates, Inc. ("Greicius & Associates"); (3) Dr. Conrad B. Foley, M.D.; (4) Dr. Luann K. Labian, M.D.; and (5) Dr. James H. Radack, M.D. Plaintiff's complaint arises from the medical care and treatment of Judy Johnston for mononucleosis provided by defendants over the course of a five day period from December 26, 1990 until her death from cardiac arrest on December 30, 1990. Doctors Foley and Labian were employed by University Mednet and Dr. Radack was employed by Greicius & Associates.

None of the parties dispute that decedent died as a result of cardiac arrest following unsuccessful efforts to resuscitate her by paramedics and emergency room physicians. Plaintiff's theory of the case was that defendants failed to detect and treat decedent's

obstructed upper respiratory system which resulted in an inadequate oxygen supply and her cardiac arrest. Defendants filed answers denying the substantive allegations of plaintiff's complaint and argued decedent's cardiac arrest did not result from inadequate oxygen supply, but rather from two heart conditions, *viz.,* **[*3]** lymphocytic myocarditis and myocardial ischemia.

The case proceeded to a ten day jury trial against all five defendants commencing March 22, 1993. Plaintiff presented testimony from twenty-five witnesses to support her theory of the case. Defendants thereafter presented testimony from nine witnesses. The trial court orally granted the motions of the two organizations, *viz.,* University Mednet and Greicius & Associates, for directed verdicts at the close of the case. The trial court submitted the case against the three remaining physicians, *viz.,* doctors Foley, Labian and Radack, to the jury following closing arguments and instructions. The jury returned verdicts in favor of doctors Foley, Labian and Radack after deliberations. The trial court entered judgment on the jury verdicts for the three physicians in orders journalized April 6, 1993.

Plaintiff thereafter filed a written motion for a new trial against the three individual doctors Foley, Labian and Radack on April 16, 1993. The three individual physicians filed a brief in opposition to plaintiff's motion for new trial April 22, 1993. The trial court denied plaintiff's motion for a new trial in an order journalized May **[*4]** 3, 1993. Plaintiff thereafter filed a notice of appeal May 27, 1993 from the trial court's judgment on the jury verdict for doctors Foley, Labian and Radack and subsequent denial of her post-judgment motion for new trial.

This court of appeals dismissed plaintiff's appeal May 4, 1994 for lack of a final appealable order pursuant to Civ. R. 54(B) since the trial court did not dispose of the pending claims against University Mednet and Greicius & Associates by journal entry. The trial court subsequently dismissed with prejudice plaintiff's claims against University Mednet and Greicius & Associates and certified "no just reason for delay" in an order journalized May 9, 1994. This court of appeals thereafter granted plaintiff's motion to reinstate the appeal *sub judice* in an order journalized May 13, 1994.

Plaintiff subsequently filed an App. R. 9(E) motion to supplement the record in the court of appeals June 15, 1994 which must be addressed prior to considering the merits of the appeal *sub judice.* Plaintiff's motion argues the verbatim transcript of proceedings transmitted to the court of appeals during the course of the appeal omitted several trial court rulings and side bar **[*5]** or in chambers conferences. Plaintiff's motion attached as exhibits uncertified copies of the following documents, *viz.:* (1) an App. R. 9(E) motion filed by plaintiff March 24, 1994 in the trial court to supplement the trial transcript based on statements made in affidavits by plaintiffs three trial counsel, (2) an April 22, 1994 order of the trial court denying plaintiff's motion to supplement the trial transcript based on these affidavits, (3) a June 10, 1994 motion by plaintiff to transmit a supplemental record of all proceedings in the trial court since the original transmittal of the record to the court of appeals, and (4) a June 10, 1994 order of the trial court granting plaintiff's motion and ordering the clerk of courts to transmit a supplemental record of all subsequent proceedings in the trial court.

Doctors Radack, Foley and Labian filed a brief in opposition to plaintiff's App. R. 9(E) motion to supplement the record with supporting affidavit of counsel in the court of appeals June 22, 1994. The evidentiary materials submitted by plaintiff in support and by defendants in opposition to the App. R. 9(E) motion to supplement the record contain factual disputes which this **[*6]** court of appeals cannot resolve on appeal. As a result, we are compelled to deny plaintiff's App. R. 9(E) motion to supplement the record in the case *sub judice.*

The original papers, exhibits, docket and journal entries of the trial court together with the verbatim transcript of trial were transmitted by the clerk of courts from the trial court to the court of appeals September 27, 1993. The court reporters in the trial court certified that the verbatim transcript provided a true, correct and complete record of the proceedings during

trial. (Tr. 1766). No supplemental record of any kind has been filed by the clerk of courts in the case *sub judice.*

This court of appeals has previously recognized the following in the context of factual disputes concerning an App. R. 9(E) motion to supplement the record on appeal:

> HN1
> 
> An appellate court cannot resolve factual disputes about the trial court's record in the course of an appeal. The appellate court can authorize correction or supplementation of the trial court's record when the accuracy of the proposed changes is undisputed. App. R. 9(E). When the appellate court must resolve factual disputes about the trial court's record, **[*7]** mandamus is the sole appropriate remedy.

*Associated Estates* Corp. *v. Fellows* (1983), 11 Ohio App.3d 112, 114, 463 N.E.2d 417 (citations omitted). Since plaintiff's proposed supplementation of the trial proceedings with her version of unrecorded sidebar and in chambers conferences is disputed by defendants, this court of appeals cannot grant the motion and is bound by the record transmitted to this court of appeals; therefore, this court of appeals shall address plaintiff's ten assignments of error on the materials certified by the clerk of courts.

I.

Plaintiff's first assignment of error challenges the trial court's instruction to the jury on the statutory presumption concerning the coroner's verdict as follows:

> I. THE TRIAL COURT ERRED IN GIVING A JURY INSTRUCTION ADVISING THAT THE CORONER'S REPORT CREATED A NONBINDING REBUTTABLE PRESUMPTION AS TO THE CAUSE AND MANNER OF DEATH SINCE COMPETENT, CREDIBLE EVIDENCE TO THE CONTRARY ON CAUSE OF DEATH WAS PRESENTED BY PLAINTIFF-APPELLANT AND THE DEFENDANT-APPELLEES PRESENTED THEIR OWN EVIDENCE AS TO CAUSE OF DEATH.

Plaintiff's first assignment of error lacks merit.

Plaintiff contends the trial court erred **[*8]** by instructing the jury that the coroner's findings concerning the cause, mode and manner of decedent's death were rebuttably presumed to be correct. Plaintiff argues she presented medical opinion testimony to contradict the coroner's incomplete findings and defendants presented direct medical testimony concerning the cause of death so no presumption was warranted. However, based on our review of the record, plaintiff has failed to exemplify any error in the case *sub judice.*

The record demonstrates plaintiff's specific objection prior to delivery of this instruction at trial was that the coroner's report did not identify the cause of decedent's cardiac arrest and that the jury would be confused concerning the effect of the statutory presumption on the testimony of pathologist Dr. Davies who performed the autopsy which elaborated on his written report. (Tr. 1657-1658). Plaintiff specifically declined to make any other objections to this instruction prior to submission of the case to the jury. (Tr. 1762-1763).

HN2 Civ. R. 51(A) governs objections to jury instructions and provides in pertinent part as follows:

> On appeal, a party may not assign as error the giving or **[*9]** failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury. (Emphasis added).

It is well established that objections to instructions are waived when not specifically raised at trial in accordance with Civ. R. 51(A). *Schade v. Carnegie Body* Co. (1982), 70 Ohio St.2d 207, 211, 436 N.E.2d 1001.

Plaintiff's brief on appeal does not brief or argue her sole claim of error concerning this instruction raised in the trial court prior to submission of the case to the jury. Instead, plaintiff's brief completely abandons this claim and seeks to raise two new objections made for the first time in her post-judgment motion for new trial. Plaintiff now contends she presented sufficient medical opinion testimony to rebut the statutory presumption and defendants presented direct medical testimony concerning the cause of death so no instruction concerning the presumption was warranted. However, plaintiff waived these newly minted claims of error concerning the trial court's instruction **[*10]** by failing to specifically raise them in accordance with Civ. R. 51(A) prior to submission of the case to the jury.

Moreover, even if plaintiff had not belatedly raised these issues, her arguments lack merit. The Ohio Supreme Court has recognized the propriety of instructing the jury concerning the presumptive validity of the coroner's findings as follows:

> *HN3*
>
> The coroner's factual determinations concerning the manner, mode and cause of death, as expressed in the coroner's report and the death certificate, create a nonbinding rebuttable presumption concerning such facts in the absence of competent, credible evidence to the contrary. (R.C. 313.19, construed.)

*Vargo v. Travelers Ins. Co.* (1987), 34 Ohio St.3d 27, 516 N.E.2d 226, syllabus paragraph one. As noted by the *Vargo* Court, this presumption is based on the following statute: *HN4*

> **313.19 Coroner's verdict the legally accepted cause of death**
>
> The cause of death and the manner and mode in which the death occurred, as delivered by the coroner and incorporated in the coroner's verdict and in the death certificate filed with the division of vital statistics, shall be the legally accepted manner and mode **[*11]** in which such death occurred, and the legally accepted cause of death, unless the court of common pleas of the county in which the death occurred, after a hearing, directs the coroner to change his decision as to such cause and manner and mode of death.

> The *Vargo* Court specifically recognized that *HN5* an instruction on this statutory presumption was warranted, despite the fact the parties presented medical opinion evidence concerning

the cause of death, when the sole objection raised at trial did not relate to the rebuttal of the statutory presumption as in the case *sub judice.*

Finally, even if this court of appeals overlooks plaintiff's failure to timely raise this issue or indicate to the trial court the medical evidence presented by the parties to support her claims, plaintiff has failed to exemplify reversible error in the case *sub judice.* The Ohio Supreme Court has recognized in this context that a trial court has discretion to instruct the jury that it may "infer," rather than "presume," the correctness of the coroner's findings when a party has sufficiently rebutted the presumption of correctness. *Evans v. National Life & Acc. Ins. Co.* (1986), 22 Ohio St.3d **[*12]** 87, 91, 488 N.E.2d 1247.

The record demonstrates the trial court instructed the jury as follows in the case *sub judice:*

> The coroner's factual determinations concerning the manner, mode and cause of death, as expressed in the coroner's report and the death certificate, merely create a non-binding rebuttal [sic] presumption concerning such facts in the absence of competent, credible evidence to the contrary. (Emphasis added.)

(Tr. 1750-1751). Although the trial court did not use the term "infer" in the case *sub judice,* the trial court instructed the jury the coroner's findings "merely created a nonbinding rebuttal [sic] presumption." The trial court inserted the term "merely" into the instruction approved by the Supreme Court in Vargo and sufficiently weakened the instruction.

Under the circumstances, any inference of prejudice from the trial court's instruction in the case *sub judice* is speculative. As a result, plaintiff has failed to demonstrate reversal is warranted or that the trial court abused its discretion by denying plaintiff's motion for new trial on these grounds.

Accordingly, plaintiff's first assignment of error is overruled.

II. **[*13]**

Plaintiff's second, third and sixth assignments of error challenge the trial court's admission of evidence during trial as follows:

> II. THE TRIAL COURT ERRED IN ALLOWING MEDICAL OPINION TESTIMONY BY A WITNESS THAT WAS NOT A PHYSICIAN AND WHO WAS THEREFORE UNQUALIFIED TO RENDER SUCH OPINION.
>
> III. THE TRIAL COURT ERRED IN REFUSING TO STRIKE THE TESTIMONY OF DEFENSE MEDICAL EXPERT, DR. NORMAN RATLIFF, AFTER SAID WITNESS ADMITTED THAT THE FOUNDATION OF HIS TESTIMONY WAS PREMISED ON A SPECULATIVE OPINION AS TO THE CAUSE OF INJURY TO DECEDENT'S HEART TISSUE.
>
> VI. THE TRIAL COURT ERRED IN ALLOWING DEFENDANT-APPELLEES TO INTRODUCE A LETTER OF CONDOLENCE TO DECEDENT'S FAMILY SINCE SAID LETTER WAS WITHOUT EVIDENTIARY VALUE OR RELEVANCY AND SERVED ONLY TO GENERATE SYMPATHY FOR DEFENDANT-APPELLEE, DR. LUANN LABIAN.

Plaintiff's second, third and sixth assignments of error lack merit.

Plaintiff contends the trial court improperly admitted the following evidence during trial, *viz.:* (1) medical opinion testimony from City of Wickliffe emergency medical technician/paramedic Joseph Cooper; (2) speculative medical opinion testimony from defense expert cardiovascular pathologist **[*14]** Dr. Norman Ratliff, M.D.; and (3) a letter sent by defendant Dr. Labian to decedent's family following decedent's death.

It should be noted at the outset that [HN6] a reviewing court will not reverse the trial court's determination to admit evidence absent an abuse of discretion materially affecting substantial rights of the aggrieved party. Evid. R. 103(A); *Peters v. Ohio State Lottery Comm.* (1992), 63 Ohio St.3d 296, 299, 587 N.E.2d 290; *Pasela v. Brown Derby, Inc.* (1991), 71 Ohio App.3d 636, 646-647, 594 N.E.2d 1142. To demonstrate an abuse of discretion concerning an evidentiary ruling requires establishing the trial court committed more than an error of law or judgment and was unreasonable, arbitrary or unconscionable. *Lainhart v. Southern Ohio Fabricators, Inc.* (1991), 61 Ohio App.3d 432, 435, 572 N.E.2d 846. Based on our review of the record *sub judice,* plaintiff has failed to exemplify any error.

Plaintiff's second assignment of error complains the trial court improperly admitted statements by emergency medical technician Cooper concerning his "diagnostic evaluation" of decedent's airway during an emergency endotracheal intubation in which he placed a tube in decedent's **[*15]** throat. The comments challenged on appeal relate to Cooper's observation of "no obstructions whatsoever" in decedent's throat, (Tr. 1056, 1083), he saw "nothing remarkable", (Tr. 1084), and observed decedent's airway "just as a physician would." (Tr. 1091).

The trial court denied plaintiff's request to conduct a *voir dire* concerning Cooper's qualifications since Cooper's testimony would be limited to factual observations as a lay witness and did not involve medical opinions which require qualification as an expert witness. (Tr. 1023-1026). The record demonstrates plaintiff subsequently failed to make any objection to the challenged statements or motion to strike the testimony during trial as required by Evid. R. 103(A)(1) in the case *sub judice.* The first objection made by plaintiff to any of the specific statements was in her post-judgment motion for new trial.

The record demonstrates that not only did plaintiff fail to object, but affirmatively elicited each of the challenged statements from Cooper during cross-examination at trial. The only challenged statement elicited by defense counsel on direct examination of Cooper was Cooper's factual statement that he observed no **[*16]** obstruction whatsoever in decedent's throat. (Tr. 1056). Counsel for plaintiff subsequently elicited the identical testimony. (Tr. 1083). As a result, even if plaintiff had raised any objection to this statement, such objection was waived by eliciting the same testimony on cross-examination by plaintiff's counsel. *State v. Miller* (1988), 56 Ohio App.3d 130, 132-133, 565 N.E.2d 840. It is axiomatic that [HN7] a party cannot claim error concerning the admission of evidence which the party invited or induced. *Center Ridge Ganley, Inc. v. Stinn* (1987), 31 Ohio St.3d 310, 313, 511 N.E.2d 106; *Nott v. Homan* (1992), 84 Ohio App.3d 372, 375, 616 N.E.2d 1152.

We note that even if plaintiff's general objection to Cooper's qualifications as an expert witness were sufficient to preserve these claims, plaintiff has failed to demonstrate error or prejudice. It is well established that a non-expert may testify concerning discernable physical characteristics when such testimony is based on observed facts as in the case *sub judice.* See *Bronaugh v. Harding Hospital, Inc.* (1967), 12 Ohio App.2d 110, 114, 231 N.E.2d 487. Moreover, plaintiff has failed to demonstrate any prejudice resulting **[*17]** from the admission of Cooper's testimony concerning the condition of decedent's airway since such testimony was cumulative to that of Dr. Davies who testified he found no obstruction during the subsequent autopsy. Plaintiff strenuously argued all of these limitations regarding

Cooper's testimony to the jury and has failed to exemplify her claim of reversible error concerning the admission of his testimony.

Plaintiff's third assignment of error on appeal concerning the admission of opinion testimony by defense expert cardiovascular pathologist Dr. Ratliff likewise lacks merit. Plaintiff contends Dr. Ratliff's testimony concerning the cause of decedent's cardiac arrest should have been excluded by the trial court as speculative. Dr. Ratliff microscopically analyzed numerous heart tissue samples from decedent and observed the condition of "contraction band necrosis" which he determined to have been caused by ischemia, or a lack of blood flow, resulting from a muscle spasm.

The record demonstrates Dr. Ratliff called as a defense witness testified at the outset of direct examination as follows:

> Q. [Defense counsel, Mr. Jackson]: Doctor, I am going to during the course of our **[*18]** discussion here, ask you a number of opinion questions.
>
>> And so that I don't have to keep repeating the phrase, to a reasonable degree of scientific certainty, would you agree with me that any opinion you state will be held to a reasonable degree of scientific or medical certainty?
>
> A. Yes, I agree.
>
>> And if it is not, if it varies from that to any extent, I will so stated [sic] that.
>
> Q. Okay. Thank you very much.
>
>> Do you have an opinion, doctor, as to what caused the death of Judy Johnston on December 30, 1990?
>
> A. Yes, I do.
>
> Q. Would you tell these folks what your opinion is?
>
> A. I believe that Judy Johnston died of a fatal cardiac arrhythmia, which was secondary to a combination of lymphocytic myocarditis and myocardial ischemia.

(Tr. 1163). During cross-examination the following exchange occurred:

> Q. [Plaintiff's Counsel, Mr. Becker]: Now, you feel that this contraction band necrosis that you see in one of these 39 slides was due to ischemia?
>
> A. That is correct.

Q. Okay.

And you went further than that and said not only is it due to ischemia, but it's due to coronary artery spasm?

A. **[*19]** That's correct.

Q. Now, doctor, that opinion that coronary artery spasm led to ischemia, led to this contraction band necrosis is nothing more than speculation on your part; is it?

A. I think it is an educated speculation and it is educated in the sense that we never can actually see spasm after it happens. You can only see spasm when it happens. It's just like saying I bunched my fist, now I have opened it. Now it is open, you can can't [sic] see it any more.

It is the same kind of reasoning that we come to when a patient collapses on the street, is found to have severe coronary artery and appear to have a sudden death without finding anything else, you assume that died of arrhythmia. You can't see the arrhythmia there.

Now, this is a confluent area of contraction band necrosis. These are not scattered necrotic myocytes throughout the heart, as one would expect to see if it were a catecholamine overload as one would expect to see if it were an electron injury.

This is a single confluent area, which is like a little infarc, which means a single vessel to that area has ceased to profuse it. There is no other apparent cause for this. No intrinsic coronary **[*20]** disease. There is no obstruction to the vessel. No little emboli here, and we see this in similar circumstances here in other cases.

The only thing that's really left here is coronary spasm, and we know coronary spasm is a real entity. It really does happen. It is a known cause of myocardial infarction in the absence of demonstrable coronary artery disease.

Q. Thank you, doctor.

But you told me previously that opinion is speculation on your part. Didn't you tell me previously?

A. That is because I cannot see the spasm.

Q. So the answer is, yes?

A. Yes.

Q. That is speculation.

MR. BECKER: Your Honor, can we approach?

THE COURT: You may. The jury be at ease.

-

(Thereupon, a discussion was held in chambers off the record.)

-

THE COURT: Please remain seated.

You may continue.

(Tr. 1204-1206). Finally, Dr. Ratliff concluded his testimony on redirect as follows:

> Q. Now, in terms of the contraction band necrosis in this case, based upon your experience, your knowledge, your review of the materials here, is it your opinion that the contraction band necrosis was caused by ischemia?
>
> A. Yes, it is.
>
> Q. **[*21]** Is it your opinion, doctor, based upon all of your experience and knowledge and what you have reviewed here that that ischemia was caused by a coronary spasm?
>
>> MR. BECKER: Objection.
>>
>> THE COURT: Overruled.
>>
>> THE WITNESS: Yes, it is.

(Tr. 1233).

As noted above, plaintiff waived the claim of error asserted on appeal by failing to raise this objection with specificity on the record in the trial court in accordance with Evid. R. 103(A)(1). The record likewise contains no ruling by the trial court, motion to strike or for an instruction for the jury to disregard the challenged testimony.

We note that even if plaintiff timely raised this claim of error, this court of appeals has rejected the contention on the merits under similar circumstances in *Keller v. Guyton* (Feb. 4, 1993), Cuyahoga App. No. 61363, unreported. The record demonstrates Dr. Ratliff ruled out other potential causes for the "contraction band necrosis" observed in decedent's heart tissue and specifically stated it was not likely caused by the defibrillation efforts to resuscitate her. Under the circumstances, plaintiff has failed to demonstrate the trial court improperly admitted speculative **[*22]** medical opinion testimony in the case *sub judice.*

The doctor's answer was given based on reasonable medical certainty - the doctor stating the spasm could not be observed after the spasm had happened, similar to when a clenched fist is opened one cannot tell the fist was previously clenched. If the doctor's answer is read carefully it is based on deductive reasoning. The *Guyton* Court recognized the propriety of

admitting expert opinion testimony under these circumstances as follows:

> This kind of conflict in the testimony should have been resolved by the jury. An artful cross-examination can often cause a witness to make statements that on the surface appear to be in conflict with previous direct testimony.

*Id.* at p. 11. As a result, plaintiff has failed to exemplify any error concerning the admission of the challenged testimony of Dr. Ratliffe in the case *sub judice.*

Plaintiff's sixth assignment of error concerning the "admission" of a condolence letter sent by defendant Dr. Labian to decedent's family lacks merit. Contrary to plaintiff's argument, the record demonstrates the letter (defendant's proposed Exhibit No. 1) was in fact never introduced into **[*23]** evidence at trial. (Tr. 1012-1016). Rather, the document was used during defense counsel Jackson's cross-examination of decedent's mother, plaintiff Dorothy Johnston. (Tr. 996-998).

The record does not disclose the basis for plaintiff's general objection to the use of this exhibit or contain the trial court's ruling. However, <sup>HN8</sup>Evid. R. 611(B) grants the trial court substantial discretion concerning the scope of cross-examination of witnesses particularly when the witness is a party to the litigation as in the case *sub judice.* Under the circumstances, plaintiff has failed to demonstrate the trial court abused its discretion concerning the scope of cross-examination in the case *sub judice.*

As a result, plaintiff has failed to demonstrate the trial court improperly admitted any evidence or abused its discretion by denying plaintiff's motion for new trial on these grounds.

Accordingly, plaintiff's second, third and sixth assignments of error are overruled.

III.

Plaintiff's fourth, fifth and seventh assignments of error challenge the trial court's limitation on her cross-examination of certain witnesses as follows:

> IV. THE TRIAL COURT ERRED BY IMPROPERLY LIMITING CROSS-EXAMINATION **[*24]** INQUIRY INTO PRIOR INCONSISTENT OUT-OF-COURT STATEMENTS OF JOSEPH COOPER REGARDING HIS PREVIOUS EXPERIENCE IN INSPECTING AN AIRWAY OF A CHILD WITH MONONUCLEOSIS AND DR. SIDNEY DAVIES REGARDING HIS AUTOPSY EXAMINATION OF DECEDENT'S AIRWAY.
>
> V. THE TRIAL COURT ERRED BY REFUSING TO ALLOW EVIDENCE THAT DEFENDANT-APPELLEE, DR. LUANN LABIAN, HAD TWICE FAILED TO PASS BOARD CERTIFICATION EXAMINATIONS IN THE SPECIALTY OF PEDIATRICS.
>
> VII. THE TRIAL COURT ERRED IN LIMITING THE CROSS-EXAMINATION OF DEFENSE EXPERT, DR. ROBERT KATZ, AS TO HIS POTENTIAL BIAS IN FAVOR OF THE INSURANCE COMPANY PROVIDING DEFENSE AT TRIAL.

Plaintiff's fourth, fifth, and seventh assignments of error lack merit.

Plaintiff contends the trial court improperly limited her cross-examination of four witnesses during the course of the trial. However, based on our review of the record, plaintiff has failed to exemplify any error.

Plaintiff's fourth assignment of error argues the trial court improperly restricted her cross-examination of emergency medical technician Joseph Cooper and pathologist Dr. Sidney Davies, M.D., based on prior inconsistent statements allegedly made to plaintiff's counsel. However, the **[*25]** record demonstrates in each instance plaintiff failed to lay a proper foundation concerning the alleged prior inconsistent out-of-court statement, obtain a ruling on the record or proffer the allegedly excluded prior inconsistent statement to demonstrate reversible error. *See State v. King* (Nov. 18, 1993), Cuyahoga App. No. 62595, unreported at 4-7; *State v. Theuring* (1988), 46 Ohio App.3d 152, 155, 546 N.E.2d 436.

During cross-examination of paramedic Cooper, the following colloquy occurred:

> Q. [Plaintiff's Counsel, Mr. Loucas]: Now, before Judy you told me that you never inspected a child's airway with infectious mono; right?
>
> A. I said that there are times where you inspect a child's airway, but you don't know whether they are actually diagnosed as having mono or not. I said I couldn't reasonably answer that question. I had never inspected anybody that had been actually diagnosed prior to my inspection.
>
> Q. These are my notes and I would you ever seen--
>
> [DEFENSE COUNSEL] MR. JACKSON: Objection, unless Mr. Loucas is going to make himself a witness and testify. I object to this.
>
> [PLAINTIFF'S COUNSEL] MR. LOUCAS: Just going to ask a question, your Honor, **[*26]** whether he agreed or disagreed.
>
> MR. JACKSON: I would like to see his notes before he does that and he will subject himself to cross-examination.
>
> THE COURT: Fair enough. That's fair.
>
> Let him see the notes.
>
> MR. LOUCAS: May we approach, your Honor?
>
> THE COURT: You may.
>
> -
>
> (Thereupon, a sidebar discussion was held off the record.)
>
> -
>
> BY MR. LOUCAS [PLAINTIFF'S COUNSEL]:
>
> Q. Joe, would you agree or disagree with me that before Judy Johnston you had never examined the airway of a child with infectious mono or an adolescent.
>
> A. I didn't hear the last statement.
>
> Q. Sure.

> Would you agree with me or disagree that before you came to the aid of Judy Johnston, you never looked into the throat of a child or an adolescent with infectious mono?
>
> A. I can't say, no, and I can't say, yes, to that. That can't be documented one way or the other. I may have.
>
> Q. But you don't remember as you are sitting here having done that before?
>
> A. I don't recall.

(Tr. 1091-1093).

During cross-examination of pathologist Dr. Davies, a similar colloquy occurred as follows:

> Q. [Plaintiff's Counsel, Mr. Becker]: Now, doctor, [*27] did you say that you examined the supraglottic region; did you just say that on direct exam?
>
> A. I saw it. Yes, I could see it when you take out the larynx.
>
> Q. Dr. Davies, didn't you tell me directly that when you took the larynx out, there is a dark hole in there and you didn't examine the supraglottic region? Did you tell me that?
>
> [DEFENSE COUNSEL] MR. FARCHIONE: Objection, Your Honor.
>
> THE COURT: Overruled. He may answer, if he remembers.
>
> THE WITNESS: You can see it, I don't know whether you say examine it. I didn't take it out.
>
> THE COURT: They are referring to your deposition.
>
> [PLAINTIFF'S COUNSEL] MR. BECKER: I didn't qualify.
>
> [DEFENSE COUNSEL] MR. FARCHIONE: Your Honor, may we approach the bench?
>
> (Thereupon, a sidebar discussion had off the record.)
>
> THE COURT: You may continue.
>
> BY MR. BECKER [PLAINTIFF'S COUNSEL]:
>
> Q. Did you ever say to anyone, Dr. Davies, to anyone that you took the larynx out and there was a big hole there and it was dark and you couldn't see the upper supraglottic region? Did you ever say that to anyone, yes, or, no, please?
>
> A. I can't remember saying that.
>
> Q. Could you have said that, doctor?

A. I could **[*28]** have said that, yes.

Q. Doctor, so the Ladies and Gentlemen of the Jury understand this important point.

A. Yes.

Q. Part of the pharynx was never examined by you; is that fair?

A. Yes.

Q. And that's because when Judy got to you her mouth had closed?

A. Correct.

Q. Rigor mortis had set in?

A. Correct.

Q. You didn't want to disturb the fact by marking the body.

A. Correct.


(Tr. 1117-1119).

In each situation, plaintiff has failed to demonstrate the trial court erred or abused its discretion concerning the scope of cross-examination. The record contains absolutely no ruling by the trial court or proffer of the alleged prior inconsistent statements into the record by plaintiff's counsel to exemplify the claims of error.

Finally, plaintiff's remaining arguments concerning surprise changes in the trial testimony of Dr. Davies compared to his deposition testimony were likewise waived since the record demonstrates this claim was not raised until her motion for new trial. We note that even if plaintiff had timely raised this argument, the record indicates the contention lacks merit since plaintiff could have deposed Dr. Davies more **[*29]** fully concerning additional details supporting his opinion testimony but failed to do so. See *Savage v. Correlated Health Services Ltd.* (1992), 64 Ohio St.3d 42, 46-47, 591 N.E.2d 1216. As a result, plaintiff has failed to exemplify any error concerning the scope of cross-examination of paramedic Cooper or Dr. Davies.

Plaintiff's fifth assignment of error concerning the trial court's limitation on cross-examination of defendant Dr. Labian likewise lacks merit. The record demonstrates Dr. Labian filed a written pretrial motion *in limine* March 22, 1993 to foreclose cross-examination on the issue of her board certification. The record indicates the trial court made a preliminary ruling to allow questioning concerning Dr. Labian's lack of board certification and to prohibit questioning concerning her two unsuccessful board certification exam results. (Tr. 703-715). The trial court specifically declined to make any definitive final ruling on this issue until the matter was fully developed at trial. (Tr. 712, 714).

During trial, plaintiff's counsel elicited testimony from Dr. Labian concerning the fact she was not board certified as a pediatrician. (Tr. 900-901). However, the record **[*30]** contains absolutely no inquiry concerning her unsuccessful board certification examination results.

It is well established that **HN9** the ruling on a pretrial motion *in limine* does not preserve a claim of error absent an objection, proffer or ruling on the record when the issue actually arises in the context developed at trial. *State v. Grubb* (1986), 28 Ohio St.3d 199, 503 N.E.2d 142, syllabus paragraph two; *Estate of Deborah Jackson v. Pollack* (Oct. 7, 1993), Cuyahoga App. No. 63769 at 4-5. Accordingly, since plaintiff failed to properly preserve this issue by renewing her objection at trial, any claim of error in the trial court's tentative preliminary ruling is deemed to be waived.

Finally, even if plaintiff had properly preserved this issue, plaintiff has failed to demonstrate error or resulting prejudice. The Ohio Supreme Court has recognized that **HN10** when reviewing claims of error from the exclusion of evidence, "the issue of whether testimony or evidence is relevant or irrelevant, confusing or misleading, is best decided by the trial judge, who is in a significantly better position to analyze the impact of the evidence on the jury." *Renfro v. Black* (1990), 52 Ohio St.3d [*31] 27, 31, 556 N.E.2d 150. Under the circumstances, plaintiff has failed to demonstrate the trial court improperly found Dr. Labian's failure to pass her board certification for pediatrics was irrelevant to her competency or credibility as a witness in the case *sub judice.*

Plaintiff's seventh assignment of error concerning the limitation on cross-examination of defense expert otolaryngologist Dr. Katz for bias due to his business dealings with defendants' medical malpractice liability insurer likewise lacks merit. Although plaintiff's counsel conducted an extensive *voir dire* of Dr. Katz outside the hearing of the jury, the record demonstrates plaintiff's counsel did not subsequently obtain a final ruling concerning the presentation of this evidence or offer the evidence during the testimony of Dr. Katz during trial. The record demonstrates plaintiff's counsel was permitted to conduct extensive cross-examination to impeach the opinion of Dr. Katz that decedent did not suffer from an obstructed airway, including the fact (1) Dr. Katz mostly testified for defendant medical providers, (2) the medical group of which he was a member was defended in a prior malpractice action by defendants' [*32] counsel, and (3) would likely be represented by defendants' counsel in any subsequent civil actions against his group. (Tr. 1434-1435). Under the circumstances, plaintiff has failed to demonstrate the trial court abused its discretion concerning the scope of Dr. Katz' relationship with defendants' medical malpractice insurer. *Estate of Jackson v. Pollack, supra.*

Accordingly, plaintiff's fourth, fifth and seventh assignments of error are overruled.

IV.

Plaintiff's eighth assignment of error challenges the trial court's exclusion of an alleged admission by defendants' agent as follows:

> VIII. THE TRIAL COURT ERRED BY REFUSING TO ALLOW INTO EVIDENCE AN ADMISSION BY DEFENDANT-APPELLEE UNIVERSITY MEDNET'S AGENT THAT HOSPITALIZATION OF A PATIENT WOULD PREVENT A REPEAT OF EVENTS SIMILAR TO THOSE WHICH LEAD TO JUDY JOHNSTON'S DEATH.

Plaintiff's eighth assignment of error lacks merit.

Plaintiff contends the trial court improperly excluded testimony from decedent's friend Joanne Sandy in connection with her treatment and hospitalization for mononucleosis approximately one and one-half years following decedent's death. Plaintiff argues Sandy was referred to an ear, nose [*33] and throat specialist, admitted into the hospital and that Dr. Overman, an employee of University Mednet, stated "We are not going to let happen to you what

happened to [decedent]." Plaintiff contends this constitutes an "admission" concerning the applicable standard of care and defendants' deviation from this standard in connection with the treatment of decedent.

The record demonstrates defendants filed a pretrial motion *in limine* March 22, 1993 to preclude testimony from Sandy concerning her treatment for mononucleosis following decedent's death. According to plaintiff's brief on appeal, the trial court granted defendants' motion although no such ruling is in the record *sub judice.* The record demonstrates Sandy did not testify concerning this matter during trial. (Tr. 243-253). Plaintiff's subsequently proffered Sandy's medical records and the alleged statement made by Dr. Overman into the record. (Tr. 839-842).

Based on our review of the record, plaintiff has failed to demonstrate the trial court improperly excluded the proffered evidence. As noted above, the record contains absolutely no ruling by the trial court to support plaintiff's claim of error. *Estate of Jackson* **[*34]** v. *Pollack, supra.* Moreover, even if plaintiff did not waive this claim of error, plaintiff has cited no authority that Evid. R. 801(D) admissions by a party opponent apply in this context in medical malpractice cases.

Assume *arguendo* the proffered evidence constituted an "admission" by a party opponent under Evid. R. 801(D), plaintiff has failed to demonstrate this evidence was admissible against the three individual physicians involved in the appeal *sub judice.* Although such an admission may have been admissible into evidence against University Mednet as Dr. Overman's employer, plaintiff has produced no authority that an admission by one employee is admissible into evidence against co-employees such as defendants in the case *sub judice.* Under the circumstances, defendants would have been entitled to an instruction limiting the use of this evidence against University Mednet only which is not a party to this appeal. See *Mastran v. Urichich* (1988), 37 Ohio St.3d 44, 47, 523 N.E.2d 509.

Finally, it should be noted that exclusion of evidence concerning the medical treatment of Sandy one and one-half years following decedent's death would have been warranted under Evid **[*35]** R. 403 since any limited probative value of such evidence was substantially outweighed by its tendency to confuse the issues, mislead the jury and unduly delay the proceedings. As a result, plaintiff has failed to demonstrate the trial court erred or abused its discretion by denying her motion for a new trial on these grounds.

Accordingly, plaintiff's eighth assignment of error is overruled.

V.

Plaintiff's ninth assignment of error follows:

> IX. THE TRIAL COURT ERRED BY ALLOWING DEFENSE COUNSEL TO ENGAGE IN MISCONDUCT THROUGHOUT TRIAL AND TO MAKE IMPROPER ARGUMENTS DURING CLOSING ARGUMENT WHICH WERE PREJUDICIAL TO PLAINTIFF-APPELLANT.

Plaintiff's ninth assignment of error lacks merit.

Plaintiff contends the trial court improperly permitted defense counsel for doctors Foley and Labian to question Dr. Davies on redirect examination and to make improper comments on the evidence and conduct of her counsel during closing arguments. None of these claims involve counsel for Dr. Radack.

A review of the record demonstrates the only objection raised by counsel for plaintiff to any of the six alleged instances of "misconduct" at trial occurred during redirect examination of **[*36]** pathologist Dr. Davies. Following cross-examination by plaintiff's counsel, the following colloquy occurred on redirect examination:

> Q. [Defense Counsel, Mr. Jackson]: Doctor, this isn't the first time that Mr. Becker or Mr. Loucas or someone from their office has attempted to get you to change your opinion that this was a cardiac death; is it?
>
> [Plaintiff's Counsel] MR. BECKER: Objection.
>
> MR. LOUCAS: Objection. That is a very inappropriate question.
>
> MR. JACKSON: No, it is not, Judge.
>
> MR. BECKER: Very inappropriate.
>
> MR. LOUCAS: May we approach?
>
> THE COURT: You may.
>
> -
>
> (Thereupon, a sidebar discussion was held off the record.)
>
> -
>
> BY MR. JACKSON:
>
> Q. Doctor, Mr. Becker and Mr. Loucas or someone from their office has in the past attempted to get you to accept the theory that this was a respiratory problem and a cardiac arrhythmia resulting from hypoxia and respiratory problem; haven't they?
>
> A. Yes. This is what they -- yes.
>
> Q. They have been talking to you about that over these last couple of years; haven't they?
>
> A. Yes.
>
> Q. You have never accepted that as a theory in this case or as an opinion to a reasonable **[*37]** degree of medical certainty; have you?
>
> A. My opinion given the history of this sudden collapse, one minute she was sitting on the sofa, the next minute she collapsed, that to me bespeaks a cardiac, a cardiac episode. A circulatory collapse.

(Tr. 1142-1143). The record contains no ruling by the trial court on plaintiff's objection or a subsequent motion by plaintiff's counsel to strike the challenged response. Based on our review of the record *sub judice,* plaintiff has failed to demonstrate this questioning was improper under the circumstances of the case.

Plaintiff has likewise failed to demonstrate reversible error concerning the five remaining comments made during closing arguments. The Ohio Supreme Court has recognized in this context that [HN11] parties are afforded great latitude concerning statements made during closing arguments. *Pang v. Minch* (1990), 53 Ohio St.3d 186, 194, 559 N.E.2d 1313. A party must generally raise a timely objection to preserve a claim of error. *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 39-40, 543 N.E.2d 464 (quoting *Snyder v. Stanford* (1968), 15 Ohio St.2d 31, 238 N.E.2d 563, syllabus paragraph one). The record **[*38]** demonstrates plaintiff made no objection to any of the comments during closing argument now under scrutiny and the record demonstrates no persistent gross abuse of privilege to require the trial court to intervene *sua sponte. Id*.

Contrary to plaintiffs argument, the remarks of defense counsel Jackson were adequately supported by the evidence or inferences drawn therefrom and plaintiff has failed to demonstrate passion or prejudice tainted the jury verdict. *Mahan v. Bethesda Hosp., Inc.* (1992), 84 Ohio App.3d 520, 527-528, 617 N.E.2d 714; *Jones v. Olcese* (1991), 75 Ohio App.3d 34, 39-41, 598 N.E.2d 853. We note that two of the challenged comments were invited by arguments made by counsel for plaintiff during his own closing argument. Under the circumstances, particularly given plaintiff's failure to raise any contemporaneous objection, plaintiff has failed to demonstrate the alleged exuberance of defense counsel in this prolonged and strenuously litigated case warrants reversal when viewed in the context of the entire case. *Mikula v. Balogh* (1965), 9 Ohio App.2d 250, 224 N.E.2d 148.

As a result, plaintiff has failed to demonstrate the trial court erred or abused **[*39]** its discretion by denying her motion for a new trial on these grounds.

Accordingly, plaintiff's ninth assignment of error is overruled.

VI.

Plaintiff's tenth assignment of error follows:

> X. THE CUMULATIVE EFFECT OF THE VARIOUS ERRORS COMMITTED BY THE TRIAL COURT RESULTED IN UNDUE PREJUDICE TO PLAINTIFF-APPELLANT AND DEPRIVED PLAINTIFF-APPELLANT OF A FAIR TRIAL.

Plaintiff's tenth assignment of error lacks merit.

Plaintiff's tenth assignment of error rehashes her first through fifth and seventh assignments of error and argues the cumulative effect of these six errors warrants a new trial in the case *sub judice.* However, as noted above, each of these individual assignments of error lacks merit. Cumulating these alleged errors does not alter our conclusion. *Galayda v. Lake Hospital System, Inc.* (Sep. 30, 1993), Cuyahoga App. No. 63151, unreported. The record demonstrates plaintiff received a fair jury trial and is not entitled to a new trial based on cumulative error.

Accordingly, plaintiff's tenth assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee(s) recover of appellant(s) costs herein taxed.

The Court finds there were reasonable **[*40]** grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SPELLACY, P.J., and

WEAVER, J., CONCUR.

BLANCHE KRUPANSKY, JUDGE

N.B. This entry is made pursuant to the third sentence of Rule 22(D), Ohio Rules of Appellate Procedure. This is an announcement of decision (see Rule 26). Ten (10) days from the date hereof this document will be stamped to indicate journalization, at which time it will become the judgment and order of the court and time period for review will begin to run.

Service: **Get by LEXSEE®**
Citation: **1994 Ohio App. LEXIS 3495**
View: Full
Date/Time: Monday, March 29, 2004 - 8:19 PM EST

* Signal Legend:
- Warning: Negative treatment is indicated
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.