*2003 Ohio 5988, \*; 2003 Ohio App. LEXIS 5321, \*\**

LOIS P. TAULBEE, Individually and as Administratrix of the Estate of Alan Scott Taulbee, Plaintiff-Appellant, vs. MARTIN K. DUNSKY, D.O., et al., Defendants-Appellees.

CASE NO. CA2003-03-059

COURT OF APPEALS OF OHIO, TWELFTH APPELLATE DISTRICT, BUTLER COUNTY

2003 Ohio 5988; 2003 Ohio App. LEXIS 5321

November 10, 2003, Decided

**PRIOR HISTORY:** [\*\*1] CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS. Case No. CV2001-01-0175.

**DISPOSITION:** Affirmed.

### CASE SUMMARY

**PROCEDURAL POSTURE:** The Butler County Court of Common Pleas (Ohio) limited the testimony of appellant administratrix's expert, in her medical malpractice action against appellee doctors, and granted a directed verdict in the doctors' favor. The administratrix appealed.

**OVERVIEW:** The administratrix contended that the trial court erred in holding that her expert was not competent to give opinion testimony regarding the issue of whether the doctors deviated from the standard of care in their evaluation and treatment of the decedent. The appeals court disagreed. The trial court made it clear that it was not excluding the contested testimony because of the expert's specialty, but because he had not provided sufficient evidence to show that he was familiar with the standard of care applied to emergency room physicians and family care practitioners. The administratrix also alleged that the testimony was admissible because fields of medicine overlapped. While physicians from several fields might be able to diagnose an aortic dissection, and while the expert was highly qualified to diagnose and treat aortic dissections, his involvement as a cardiothoracic surgeon came at a much later point in the clinical picture than the situation where a person initially consulted a physician for problems.

**OUTCOME:** The judgment was affirmed.

**CORE TERMS:** standard of care, dissection, aortic, emergency room, training, specialty, expert testimony, expert witness, medicine, surgeon, doctor, emergency room physician, directed verdict, skill, pain, qualified to testify, medical malpractice, family physician, chest, trier of fact, admissibility, cardiothoracic, excluding, diagnose, abuse of discretion, sufficient evidence, defendant-physician, practitioner, diagnosing, emergency

### LexisNexis (TM) HEADNOTES - Core Concepts - Hide Concepts

Evidence > Witnesses > Expert Testimony
*HN1* See Ohio R. Evid. 702.

Evidence > Witnesses > Expert Testimony
Torts > Malpractice Liability > Healthcare Providers
*HN2* In the context of a medical malpractice action, an expert witness must demonstrate

that he is familiar with the standard of care applicable to the defendant-physician's school or specialty, sufficient to enable him to give an expert opinion as to the conformity of the defendant's conduct to those particular standards and not to the standards of the witness's school and, or, specialty if it differs from that of the defendant. The witness need not practice in the same specialty as that of the defendant-physician. Rather, it is the scope of the witness's knowledge and not the artificial classification by title that should govern the threshold question of his qualifications. The mere fact that a physician is of a different medical specialty than the defendant physician does not prevent his or her testimony as an expert, but an expert witness must have sufficient knowledge, skill, experience, training and education in the subject matter of his or her testimony to satisfy Rule 702.  More Like This Headnote

Evidence > Witnesses > Expert Testimony
Torts > Malpractice Liability > Healthcare Providers
HN3 ⬇ An expert witness need only aid the trier of fact in the search for the truth and need not be the best witness on the subject. Although the witness need not have performed the exact procedure at issue to qualify the witness as an expert, simply working with doctors in the defendant-physician's specialty ordinarily is not, standing alone, sufficient to qualify the witness as an expert. Instead, the witness also must demonstrate some degree of knowledge, skill, experience, training, or education in the field the witness seeks to evaluate.  More Like This Headnote

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion
Evidence > Witnesses > Expert Testimony
HN4 ⬇ A trial court's ruling on a witness's qualification or competency to testify as an expert will ordinarily not be reversed on appeal unless there is a clear showing that the court abused its discretion. An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable.  More Like This Headnote

Evidence > Witnesses > Expert Testimony
HN5 ⬇ The admissibility of expert testimony must be made on a case-by-case basis, reviewing the medical expert's knowledge, skill, experience, training and education, not on comparison of his title with that of the defendant doctor.  More Like This Headnote

Evidence > Witnesses > Expert Testimony
Torts > Malpractice Liability > Healthcare Providers
HN6 ⬇ Where fields of medicine overlap and a given procedure may be preformed by more than one type of specialist, a witness may be qualified as an expert in a medical malpractice action even though his practice is not in the same specialty as the defendant.  More Like This Headnote

Evidence > Witnesses > Expert Testimony
Torts > Malpractice Liability > Healthcare Providers
Evidence > Procedural Considerations > Burdens of Proof
HN7 ⬇ A medical malpractice plaintiff must produce expert testimony that the defendant deviated from the applicable standard of care.  More Like This Headnote

**COUNSEL:** Jeffrey L. Maloon, L.L.C., Jeffrey L. Maloon, Columbus, OH, and Michael T. Gmoser Co., L.P.A., Michael T. Gmoser, Hamilton, OH, for plaintiff-appellant, Lois P. Taulbee.

Freund Freeze & Arnold, Susan Blasik-Miller, Vaseem S. Hadi, Dayton, OH, for defendant-appellee, Martin K. Dunsky, D.O.

Jack C. McGowan, Hamilton, OH, for defendant-appellee, Kirk E. Smith, D.O.

**JUDGES:** YOUNG, P.J. BROGAN, J., concurring separately. WALSH, J., dissents.

**OPINIONBY:** YOUNG

**OPINION:**

(Accelerated Calendar)

**YOUNG, P.J.**

[*P1] Plaintiff-appellant, Lois P. Taulbee, appeals a decision of the Butler County Court of Common Pleas limiting the testimony of her expert witness in a medical malpractice case and granting a directed verdict in favor of defendants-appellees, Martin Dunsky and Kirk Smith.

[*P2] On May 13, 2000, appellant took her husband, Alan Taulbee, to Middletown Regional Hospital because he was complaining of severe chest pain. He was evaluated by a nurse, then was seen by emergency room physician Martin Dunsky. Dr. Dunsky diagnosed chest wall pain, gave Taulbee pain medication, and advised him to see [**2] his family physician in a few days if the condition did not improve.

[*P3] When his condition failed to improve by May 16, Taublee consulted his family physician, Dr. Kirk Smith. Smith diagnosed gastroesophageal reflux disease and gave Taulbee Prevacid to take. Taulbee contacted Dr. Smith's office the following morning to advise them that the Prevacid was not working. Dr. Smith told Taulbee he needed to give the medicine time to work, and decided to schedule a test to evaluate what he thought might be a heart murmur.

[*P4] Taulbee died suddenly at home on May 18. An autopsy revealed that the cause of death was a ruptured aortic dissection, which is caused by the tearing of an inside lining of the artery. Appellant filed a medical malpractice action against both Dr. Dunsky and Dr. Smith alleging failure to diagnose the aortic dissection.

[*P5] A trial began on January 27, 2003. On the third day of trial, appellant presented the testimony of Dr. Alan Markowitz as a medical expert. Dr. Markowitz testified regarding his credentials and experience in diagnosing and treating aortic dissections. However, when Dr. Markowitz was questioned regarding his opinion on the standard of care, counsel for both Dr. [**3] Smith and Dr. Dunsky objected on the basis that Dr. Markowitz, a cardiothoracic surgeon, was not qualified to testify regarding the standard of care of an emergency room physician and a family practitioner.

[*P6] After discussing the objection with counsel, the trial court held a hearing outside the presence of the jury to determine whether Dr. Markowitz was qualified to testify regarding the standard of care applicable to the two physicians. After considering the testimony presented, the trial court found that Dr. Markowitz was not qualified to testify regarding the standard of care to be applied to an emergency care physician or a family practitioner in making a diagnosis of an aortic dissection. Appellant then rested its case. Drs. Smith and Dunsky moved for a directed verdict. The trial court granted a directed verdict in favor of Smith and Dunsky on the grounds that appellant had failed to establish that either of the physicians deviated from the required standard of care.

[*P7] Appellant now appeals the trial court's decisions that Dr. Markowitz was not qualified to testify to the applicable standards of care and to grant a directed verdict. Appellant raises the following single assignment [**4] of error for our review:

[*P8] "THE TRIAL COURT ERRED BY RULING AS A MATTER OF LAW THAT PLAINTIFF-APPELLANT'S EXPERT WITNESS, ALAN MARKOWITZ, M.D., WAS NOT COMPETENT TO GIVE OPINION TESTIMONY REGARDING THE ISSUE OF WHETHER DEFENDANTSIC-APPELLEES DEVIATED FROM THE STANDARD OF CARE IN THEIR EVALUATION AND TREATMENT OF ALAN S. TAULBEE."

[*P9] Dr. Markowitz, a board certified cardiothoracic surgeon, testified regarding his credentials and his experience. His practice concentrates on adult cardiac surgery. He stated that he is also consulted by physicians to evaluate patients who are suspected of aortic dissection. He discussed precisely what an aortic dissection is, the cause and the treatment. He further discussed the probability that Taulbee would have survived if the dissection had been diagnosed earlier. Appellees did not object to Dr. Markowitz's testimony as an expert until he was questioned regarding his knowledge of the standard of care as applicable to emergency room physicians and family physicians.

[*P10] Evid.R. 702 permits the use of expert testimony and provides as follows:

HN1 [*P11] "A witness may testify as an expert if all of the following apply:

[*P12] "(A) The witness' testimony either relates to [**5] matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

[*P13] "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

[*P14] "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information."

HN2 [*P15] In the context of a medical malpractice action, the witness must demonstrate that he is familiar with the standard of care applicable to the defendant-physician's school or specialty, "sufficient to enable him to give an expert opinion as to the conformity of the defendant's conduct to those particular standards and not to the standards of the witness' school and, or, specialty if it differs from that of the defendant." Alexander v. Mt. Carmel Med. Ctr. (1978), 56 Ohio St.2d 155, 160, 383 N.E.2d 564. The witness need not practice in the same specialty as that of the defendant-physician. Id. at 158. Rather, "it is the scope of the witness' knowledge and not the artificial classification by title that should govern the threshold question of his qualifications." Id. at 160. [**6] "The mere fact that a physician is of a different medical specialty than the defendant physician, does not prevent his or her testimony as an expert *** but an expert witness must have sufficient knowledge, skill, experience, training and education in the subject matter of his or her testimony to satisfy Evid.R. 702." Ratliff v. Morehead (May 19, 1998), Scioto App. No. 97CA2505, 1998 Ohio App. LEXIS 2271.

HN3 [*P16] An expert witness need only aid the trier of fact in the search for the truth and need not be the best witness on the subject. See, Ishler v. Miller (1978), 56 Ohio St.2d 447, 453, 384 N.E.2d 296 (stating that "the test of admissibility is whether a particular witness offered as an expert will aid the trier of fact in the search of the truth, not whether the expert witness is the best witness on the subject").

[*P17] Although the witness need not have performed the exact procedure at issue to qualify the witness as an expert, simply working with doctors in the defendant-physician's specialty ordinarily is not, standing alone, sufficient to qualify the witness as an expert. McKinney v. Schlatter (1997), 118 Ohio App.3d 328, 692 N.E.2d 1045. Instead, the witness

also must demonstrate **[\*\*7]** some degree of knowledge, skill, experience, training, or education in the field the witness seeks to evaluate. Id.

HN4 **[\*P18]** A trial court's ruling on a witness's qualification or competency to testify as an expert will ordinarily not be reversed on appeal unless there is a clear showing that the court abused its discretion. Alexander, 56 Ohio St.2d at 155. An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. See State ex rel. Lee v. Montgomery, 88 Ohio St.3d 233, 235, 724 N.E.2d 1148, 2000 Ohio 316.

**[\*P19]** The trial court was unconvinced that Dr. Markowitz was familiar with the standard of care expected of appellees, an emergency room doctor and a family physician. The trial court based its decision in part on this court's decision in McKinney v. Schlatter (1997), 118 Ohio App.3d 328, 692 N.E.2d 1045.

**[\*P20]** In McKinney, this court affirmed the trial court's decision excluding the testimony of a cardiovascular thoracic surgeon called to testify as to the standard of care expected of an emergency room physician. This court found that the trial court did not abuse its discretion when it **[\*\*8]** concluded that the evidence in the record did not indicate that the surgeon had any specialized knowledge, skill, experience, training or education in emergency medicine.

**[\*P21]** Appellant argues that the trial court erroneously interpreted McKinney's holding as requiring that an expert witness be in the same specialty as the defendant. We note that the McKinney decision does not stand for the proposition that a cardiovascular surgeon will never be competent to provide expert testimony as to the standard of care of an emergency room or family physician. Rather, HN5 the admissibility of expert testimony must be made on a case-by-case basis, reviewing the medical expert's knowledge, skill, experience, training and education, not on comparison of his title with that of the defendant doctor. A review of the record reveals that the trial court repeatedly stated the correct standard and applied the correct standard. The trial court made it clear that it was not excluding Dr. Markowitz's testimony because of his specialty, but because he had not provided sufficient evidence to show that he was familiar with the standard of care applied to emergency room physicians and family care practitioners. **[\*\*9]**

**[\*P22]** The record shows that Dr. Markowitz worked in an emergency room during his residency in the 1970s. However, since 1978 he has worked exclusively as a surgeon. He testified that he works with emergency room doctors on a weekly, if not daily, basis assisting them with diagnoses. However, his involvement in diagnosis comes at a point where aortic dissection is already strongly suspected as a diagnosis. He stated that it has been over 20 years since he worked as the type of doctor to whom a patient seeking treatment presents his complaints and symptoms. Thus, he does not have recent experience interfacing with patients who come into the emergency room or doctor's office with general complaints of chest pain. He also admitted that emergency medicine encompasses more than just cardiothoracic surgery and chest disease, and that the training is far different. He stated that he has never performed the duties of a family physician.

**[\*P23]** Appellant also argues that the testimony is admissible because the fields of medicine overlap. HN6 "Where fields of medicine overlap and a given procedure may be preformed by more than one type of specialist, a witness may be qualified as an expert in a medical malpractice **[\*\*10]** action even though his practice is not in the same specialty as the defendant." King v. LaKamp (1988), 50 Ohio App.3d 84, 553 N.E.2d 701.

**[\*P24]** While physicians from several fields may be able to diagnose an aortic dissection, the trial court found that Dr. Markowitz was not qualified to testify regarding the standard of care applicable to an emergency room physician or a family doctor when presented with

initial complaints of chest pain. The trial court noted that Dr. Markowitz was highly qualified to diagnose and treat aortic dissections. However, his involvement as a cardiothoracic surgeon comes at a much later point in the clinical picture than the situation where a person initially consults a physician for problems.

**[*P25]** Given all the evidence above, we cannot say that it was an abuse of discretion for the trial court to find Dr. Markowitz did not have sufficient knowledge, skill, experience, training and education in the fields of emergency medicine or family medicine to be able to testify regarding the standard of care in diagnosing an aortic dissection. While there was evidence that lends support to appellant's position, there was also sufficient evidence from which **[**11]** the trial court could determine that he was not qualified. Thus, we find that the trial court's decision was not unreasonable, arbitrary or unconscionable. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 5 Ohio B. 481, 450 N.E.2d 1140. HN7 A medical malpractice plaintiff must produce expert testimony that the defendant deviated from the applicable standard of care. Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, 131-32, 346 N.E.2d 673. Because appellant failed to produce this testimony, the trial court did not err in granting a directed verdict. See Civ.R. 50(A)(4).

**[*P26]** Judgment affirmed.

BROGAN, J., concurs separately.

**CONCURBY:** BROGAN

**CONCUR: BROGAN, J., concurring separately.**

**[*P27]** I concur in Judge Young's majority opinion as I cannot conclude that the trial court "abused its discretion" in precluding Dr. Markowitz's testimony. I share, however, Judge Walsh's concerns about the timing of the defense challenge to the physician's expertise. In the interest of justice, courts should provide by local rule that such challenges must initially be made pre-trial after discovery is completed. An adverse ruling would thus permit the plaintiff to dismiss his case under Civ.R. **[**12]** 41 or seek a continuance to obtain another expert.

**DISSENTBY:** WALSH

**DISSENT:** WALSH, J., dissents.

**WALSH, J., dissenting.**

**[*P28]** I respectfully dissent from the majority opinion. While I do not take issue with the majority's recitation of the law surrounding the admission of medical expert testimony, the application of that law by the majority and the trial court produces a result contrary to justice.

**[*P29]** First, I am not persuaded that this court's McKinney decision supports the result reached by the majority in the present matter. In McKinney, the physician whose testimony was excluded had no training or experience in emergency room care. In the present matter, Dr. Markowitz was trained as an emergency room physician and works with emergency room physicians diagnosing chest pains on a weekly, if not daily, basis. It is my opinion that this is sufficient evidence that Dr. Markowitz possesses the specialized training and experience necessary to testify as to the standard of care required of an emergency room physician.

**[*P30]** As quoted by the majority, "the test of admissibility is whether a particular witness offered as an expert will aid the trier of fact in the search of the truth, not whether **[**13]** the expert witness is the best witness on the subject." Miller, 56 Ohio St.2d 447, 453, 384

N.E.2d 296. The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he does possess will aid the trier of fact. See id. Consequently, any doubts that the trial court held as to Dr. Markowitz's ability to accurately testify regarding the appropriate standard of care relates to the weight his testimony is due, not to its admissibility. See Franks v. Lopez (1997), 121 Ohio App.3d 523, 700 N.E.2d 385.

[*P31] I am equally troubled by the tactics permitted to be employed in this case. Waiting until mid-trial to challenge the expert's knowledge of the appropriate standard of care left appellant with no recourse once the testimony was excluded. Without this expert testimony, appellant failed to sustain her burden as a matter of law, resulting in a directed verdict in favor of appellees. Although not procedurally required, a challenge to such expert testimony is better suited to a pretrial motion. Raising the issue pretrial would provide an opportunity to the parties to locate a different expert witness if required. [**14] This would result in a fair and just opportunity to present the respective parties' cases to the court or jury.

[*P32] While the trial court had discretion to rule on the evidentiary question, I feel that it failed to appropriately consider the consequence of its ruling. In an instance such as this, where there is evidence tending to support both permitting and excluding the expert testimony, and the exclusion of the testimony bars the plaintiff from proceeding further, I would conclude that the trial court's decision excluding the testimony is both arbitrary and unreasonable. I would thus reverse the decision of the trial court as an abuse of discretion.

Brogan, J., of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.

Service: **Get by LEXSEE®**
Citation: **2003 Ohio App. LEXIS 5321**
View: Full
Date/Time: Monday, March 29, 2004 - 8:20 PM EST

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.