```
              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF OHIO
                    WESTERN DIVISION
```

| | | |
|---|---|---|
| **THE ESTATE OF**<br>**ROGER D. OWENSBY** | : | CASE NO. C-1-01-769 |
| | | (Judge Spiegel) |
| Plaintiff | | |
| -vs- | : | <u>DEFENDANTS' REPLY TO</u> |
| | | <u>PLAINTIFF'S MEMORANDUM IN</u> |
| **CITY OF CINCINNATI, et al.**, | | <u>OPPOSITION TO DEFENDANTS'</u> |
| | | <u>LIMINAL MOTION TO PRECLUDE</u> |
| | | <u>THE TESTIMONY OF</u> |
| Defendants. | : | <u>CYRIL WECHT, M.D., J.D.</u> |

_____

<u>MEMORANDUM</u>

**A.   <u>The City's dissemination of the Wecht Report was not voluntary as required by law to amount to a waiver of work product in a civil case against the City Defendants.</u>**

Plaintiff bases its opposition to the Defendants' motion to prohibit Wecht from testifying on its claim that the City *voluntarily* disseminated his report to the public. This argument fails in light of the both the legal and practical demands made on the City during the time in question. In addition to the requirements set forth by the Administrative Code, pursuant to the Public Records law of the state of Ohio, both OMI and the City Manager were required to release the report and the investigative files to the public upon request. O.R.C. 149.43(B)(1). Plaintiff cites no case law or other authority for the proposition that where a public entity is required to disseminate a report to the public pursuant to a public records demand, that the public entity has

thereby waived its right to the confidentiality afforded by Fed. Rule Civ. Pro. 26(b)(4)(B). The production of a document **forced by the public records law** does not amount to the voluntary waiver of the work product doctrine.

In addition to the public records law requiring that the City produce the report of Dr. Wecht, the exigency of the circumstances demanded it. During this City's historically difficult time, riots had broken out, the news media and radio talk shows fueled the fire and City administrators were left to try to sort out the whole mess while attempting to bring peace and civility back to the city. Meanwhile, the community demanded complete transparency of all City actions, including the investigation being conducted by OMI. Plaintiff's own newspaper articles, attached to its Memorandum in Opposition, prove the exigency of the circumstances during this time period. Given the very real demands for all public records at the time, it is simply disingenuous for anyone to claim that the City was not required, either by law or by circumstances, to release Dr. Wecht's findings. The City's respect for public demands, and for the law, should not, however, be viewed as a waiver of its right to defend itself in a civil lawsuit of this kind where the lives and livelihoods of its police officers are in jeopardy.

Plaintiff's assertion that the City provided the document to

Plaintiff during discovery is misleading. This document was produced as fulfilling Plaintiff's request for OMI's records, which were already made public by the public records law. Plaintiff does not assert that it was only through the discovery process that it became familiar with Dr. Wecht's report. Fulfilling its duties pursuant to the rules of discovery to produce a record already disseminated pursuant to the public records law and by public demand, does not constitute a voluntary waiver. Again, Plaintiff cites no authority for any such proposition.

In fact, Plaintiff cites only to cases where the production of the consulting expert's opinion was **voluntary**. Even in the case cited by Plaintiff in arguing that voluntary production meant waiver of the work product, *Agron v. Trustees of Columbia University in the City of New York,* 176 F.R.D. 445 (S.D.N.Y. 1997), the district court stated that Rule 26(b)(4)(B) is intended to allow litigants to consult experts in order to evaluate a claim without fear that every consultation with an expert may yield grist for the adversary's mill. *Id.,* citing *Rubel v. Eli Lilly and Co.,* 160 F.R.D. 458, 560 (S.D.N.Y. 1995). Since the plaintiff had not raised any objection to discovery of its expert, however, the court in *Agron* decided that the policy behind Rule 26(b)(4)(B) did not apply. *Agron,* supra at 450, citing *Rubel.* As illustrated herein, the City's dissemination was anything but voluntary, regardless of

3

how public the document became.  If, as Plaintiff would argue, allowing the leeching onto of a consulting expert turns on whether the opposing party *voluntarily* disseminated his report, the City here, cannot be said to have *voluntarily* disseminated the Wecht report and therefore, Plaintiff should not be allowed to leech onto the expert or his report.

Plaintiff cites *In re: Columbia/HCA Healthcare Corp. Billing Practices Litigation,* 293 F.3d 289, 307 (6th Cir. 2002) as authority for its argument that once waived for one purpose, the work product is waived for all purposes.  The Sixth Circuit, however, was careful to point out that "other than the fact that the initial waiver must be to an **adversary**, there is no compelling reason for distinguishing the waiver of work product from the waiver of attorney-client privilege."  *Id.* at 306, citing *United States v. MIT*, 129 F.3d at 687 (1st Cir. 1997); *In re Steinhardt Partners, L.P.,* 9 F.3d 234; *Westinghouse Elec. Corp. v. The Republic of the Philippines*, 951 F.2d at 1428-31; *In Re Subpoena Duces Tecum*, 738 F.2d 1367, 1372 (D.C. Cir. 1984).  (Emphasis added).  Plainly put, the Sixth Circuit rule is that in order to waive the work product privilege the initial waiver must be to an adversary.  *Id.* Plaintiff ignores that pertinent exception in arguing that the initial dissemination to the media waived the City's work product privilege.  The fact that the initial disclosure of Wecht's report

4

was to the media, rather than an adversary, demonstrates that Defendants have not waived the work produce privilege and that Plaintiff may not use Wecht as an expert witness at trial.

> B. **Plaintiff narrowly misconstrues Civil Rule 26(b)(4)(B) as this rule applies to both the trial and discovery phases of litigation.**

Plaintiff is incorrect in stating that Rule 26(b)(4)(B) pertains only to the discovery phase of litigation. The Sixth Circuit has extended Rule 26(b)(4)(B) to the trial phase of litigation, stating:

> Generally, non-testifying **experts** are protected from discovery so as to allow a party to feel free to hire and consult with such **experts** without risking exposing certain information to the **opposing** party. *See* Fed R. Civ. P. 26(b)(4)(B). **Likewise, the same reasoning would apply to prevent the opposing** party from **calling** as a witness at trial that same **expert**. *See, e.g., Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir. 1984) (district court acted within its discretion when it prohibited defendants from **calling expert** witness when plaintiffs might have been prejudiced by **expert's** testimony because they had formerly hired **expert** and shared important information with him).

*Zvolensky v. Ametek, Inc.* 1998 U.S. App. LEXIS 5074 (6th Cir. 1998), citing Fed. R. Civ. P. 26(b)(4)(B) (attached to Defendants' Motion in *Limine*, Doc. #96)(emphasis added). Rule 26(b)(4)(B) was meant to prevent even the discovery of such witnesses. It is axiomatic that it would also prevent the witness from being called as a witness at trial by opposing counsel. Id.

Moreover, the Court's ruling allowing Plaintiff to conduct the

5

discovery deposition of Wecht does not comport with Rule 26(b)(4)(B), which requires that the discovery be had only "upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."  In *The School District of Kansas City, Missouri v. ACandS, Inc.,* 1990 U.S. Dist. LEXIS 14508 (W.D. Miss. 1990) (attached to Plaintiff's Memo in Opp.), cited by Plaintiff in its argument that production to the adversary is a waiver of the work product, the court was first careful to point out that the party seeking to use his opponent's expert must show that it is impracticable to obtain information on the same subject elsewhere, "as such, the party seeking discovery has a heavy burden – it must establish that it is impracticable to obtain facts on the same subject by other means.  *Id.* at **4-5., citing *Hoover v. US. Dept. of the Interior,* 611 F.2d 1132, 1142, n.13 (5th Cir. 1980); *Ager v. Stormont Hosp. & Training School for Nurses*, 622 F.2d 496, 503 (10th Cir. 1980).

In this case, the Court's Order states, "First, the Court denied City of Cincinnati's and Police Chief Thomas Streicher, Jr.'s Motion for Protective Order (doc. 68) and ordered that Dr. Cyril Wecht, M.D., J.D.'s deposition be conducted as soon as possible." (Order dated 12/31/03, p.2).  The Order does not specify any exceptional circumstance which would allow Plaintiff to leech

onto Wecht as an expert for trial. Therefore, Plaintiff has not established that it is impracticable to obtain the information from other sources.

Plaintiff unprofessionally accuses Defendants of "side-switching" and attempting to "pervert the process by glib manipulation of the truth" (Plaintiff's Memo. in Opp. pp. 12,13) when in fact, it was Plaintiff who violated Rule 26(b)(4)(B) by directly contacting Dr. Wecht initially. See, e.g., *Durflinger v. Artiles,* 727 F.2d 888, 891 (10th Cir. 1984) (precluding defendant from calling at trial plaintiff's withdrawn expert where plaintiff never permitted expert discovery and defendant obtained expert report by directly contacting expert, in violation of Rule 26(b)(4)(B)). In this case, Plaintiff's counsel knew such contact was inappropriate, even requesting permission of the City's counsel to name Dr. Wecht as a witness, in the first place. Plaintiff's counsel's argument that Dr. Wecht was free game is defeated by counsel's very own admission in requesting permission to name him as a witness.

    D.    **Under Civil Rule 403, unfair prejudice will result if Dr. Wecht testifies at trial**.

Plaintiff's Memorandum in Opposition illustrates precisely why the City's motion to prevent Plaintiff from calling Dr. Wecht as an expert witness in this case is necessary to prevent unfair prejudice. Plaintiff discounts out of hand, the City's reliance on

7

*Dayton-Phoenix Group, Inc. v. General Motors Corp.,* 2000 U.S. Dist. LEXIS 8261 (S.D. Ohio), arguing that it is distinguishable because the expert's report therein had not been disseminated. On the contrary, the case describes exactly what prejudice would result given the plans Plaintiff has outlined for Wecht's testimony at trial. Plaintiff admits that, if allowed, it will use the fact that the City had hired Wecht to accuse the City of "side-switching." Such is the very danger which the court in *Dayton-Phoenix Group, Inc.* warned of. "In addition, there is a significant risk of unfair prejudice to the Defendant in any trial testimony of [the expert], to wit: the danger that the jury might learn that it initially retained him." *Id.* at 9-10, citing *Peterson v. Willie*, 81 F.3d 1033 (11th Cir. 1996). "The potential for such unfair prejudice could be the basis for refusing to allow Plaintiff to present trial testimony from [the expert]." *Id.* at 10.

Plaintiff fully intends to exploit the City's efforts to maintain transparency during the civil unrest ensuing decedent's death, repeating over and over that the City "broadcast the expert's retention and opinions to the world…" (Memo in Opp., p. 9). Had the City refused the public Wecht's report, surely it would have been Plaintiff's camp yelling "conspiracy!" and "cover up!," and demanding to be "fully informed of what their government

8

is up to" the loudest.  Plaintiff should not be allowed such unfair advantage as to use the report and opinion the public and the law demanded against the City later, in a civil trial.  To do so would be to put the City in a "damned if you do, damned if you don't" situation which would undoubtedly chill future internal investigations all around the nation.

Plaintiff argues that Wecht's testimony is not cumulative of the county coroner's expected testimony.  Plaintiff's explanation of how Wecht's testimony will do so is based solely upon facts which Wecht obtained from the City through the OMI investigation.  This very situation is but one of the unfair prejudice examples provided in the caselaw:  several courts have held that disqualification of a consulting expert is appropriate where the expert switches sides **after receiving confidential or other important information from the earlier retention**.  See, e.g., *Zvolensky*, supra at 7, citing *Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir. 1984) (court properly prohibited defendants from calling expert witness when plaintiff might have been prejudiced by expert's testimony because they had formally hired expert and shared important information with him); *Dayton-Phoenix Group, Inc.*, supra at 9-10 (plaintiff could not discover the facts and opinions which the expert learned after being retained by the defendant and the plaintiff was prohibited from even engaging in discovery of

9

facts and opinions which were developed by the expert through his employment with the defendant); see also, *Koch Refining Co. v. Jennifer L. Boudreaux M/V*, 85 F.3d 1178, 1181 (5th Cir. 1996); *Wang Lab, Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1248 (E.D. Va. 1991). Likewise, in this case, Plaintiff should not be allowed to call Wecht because he was the City's consultative expert and the City shared important information with him which Wecht used in forming his opinion and which Plaintiff now admittedly intends to use against the City at the trial of this matter.

Although the Southern District of New York, in the case cited by Plaintiff, *Agron,* supra, ultimately decided to allow the consultative expert to testify for the opposing party, it did so with full acknowledgement of the dangers of unfair prejudice it would certainly cause. *Agron* stated, "[n]umerous courts have acknowledged the potentially substantial prejudice stemming from testimony that reveals an expert's prior consultation with the opposing party." *Id*. at 451, citing *Peterson,* supra at, 81 F.3d 1033, 1037-38 (11th Cir. 1996); *House v. Combined Ins. Co. of America*, 168 F.R.D. 248; *Rubel*, supra 460 (characterizing prejudice from disclosure of prior retention to jury as "explosive") (citing 8 C. Wright, A. Miller & R. Marcus, Federal Practice and Procedure: Civil § 2032, at 447 (1994)); *Healy v. Counts*, 100 F.R.D. 493, 496 (D. Colo. 1984). *Agron* further acknowledged that if the fact of

the prior retention is revealed, jurors may assume that Plaintiff's counsel tried to suppress or hide evidence which it considered unfavorable. *Id.*, citing *Peterson*, 81 F.3d at 1037; *Granger*, 656 P.2d 1238 at 1242-43; *Rubel*, 160 F.R.D. at 460.

Moreover, the *Agron* court acknowledged the lack of effectiveness which limiting instructions have with juries. *Id.* at 451. Unwisely ignoring the danger of unfair prejudice to the original hiring party, that court allowed the expert to testify, but with a limiting instruction to counsel that neither side would discuss the fact that the expert had originally been retained by the plaintiff. "If, as Defendant argues, it is the substance of [the expert's] opinion which is important and not the fact of his prior retention, then Defendant should have no problem adhering to this restriction." *Id.*, citing *House*, supra at 248. Plaintiff herein, however, unreasonably demands as its right, to not only leech onto Wecht as its own expert, but to exploit the fact that the City had previously hired him and moreover, to prohibit the City from daring to disagree with him now. See Memo in Opp., pp. 10-12.

Plaintiff looks to foreign jurisdictions to support its unreasonable demands to use Dr. Wecht and to exploit the City's hiring of him at trial. The Southern District of Ohio, in *Dayton-Phoenix Group, Inc.,* and the Sixth Circuit, in *Zvolensky*, concluded

11

unfair prejudice, indeed, would result if the jury heard such an expert's opinions and learned the expert might have changed his position. In both cases, the consultative expert was not allowed to testify against the original hiring party. *Dayton-Phoenix Group, Inc.* ruled that the plaintiff could not discover the facts and opinions which the expert learned after being retained by the defendant. The plaintiff was prohibited from even engaging in discovery of those facts and opinions which were developed by the expert through his employment with the defendant. Furthermore, the Court warned that even that information may not be admissible at trial if unfair prejudice (Rule 403) might result from the jury learning that the expert had previously been hired by the defendant. *Id.* at 9-10. Even more persuasive, the Sixth Circuit, in *Zvolensky* prohibited the plaintiff from calling the plaintiff's consultative expert at trial altogether.

Finally, Plaintiff's attempts to rely on Ohio Revised Code 313.19 is flawed as this statute provides the county coroner's opinions at best, create only a rebuttable, presumption of correctness. The Ohio Supreme Court stated in *Vargo v. Travelers Ins. Co.,* 34 Ohio St. 3d 27, 516 N.E.2d 226 (1987), that *R.C. 313.19* did not compel the fact-finder to accept, the coroner's opinions. *Vargo* at paragraph two of the syllabus. Rather, the Supreme Court held: "the coroner's factual determinations

concerning the manner, mode and cause of death, as expressed in the coroner's report and the death certificate, create a non-binding rebuttable presumption concerning such facts in the absence of competent, credible evidence to the contrary." Given such instruction, any motion in limine by Plaintiff to prohibit Defendants from "contending that Mr. Owensby's death was other than homicide by mechanical asphyxiation at the hands of the defendant officers" (Memo. in Opp., p. 11) would be nothing less than spurious. Much to Plaintiff's consternation, Dr.'s Neuman and Wetli provide competent, credible evidence that the decedent died of sudden cardiac death and not as the county coroner guessed, mechanical asphyxiation.

## CONCLUSION

Defendants City of Cincinnati and Police Chief Streicher, respectfully request that the Court issue an Order prohibiting Plaintiff from calling Cyril Wecht, M.D., J.D., as a witness in this case and/or from introducing evidence or testimony related to Dr. Wecht's previous retention by these defendants.

    Respectfully submitted,

    J. Rita McNeil(0043535)
    City Solicitor

    S/Neil F. Freund
    Neil F. Freund (0012183)
    Trial Attorney
    Vaseem S. Hadi (0075617)
    FREUND, FREEZE & ARNOLD

```
                              One Dayton Centre
                              1 South Main Street, Suite 1800
                              Dayton, OH 45402-2017
                              (937)222-2424
                              (937)222-5369 (fax)
                              nfreund@ffalaw.com
                              vhadi@ffalaw.com


                              S/Geri Hernandez Geiler
                              Geri Hernandez Geiler (0042081)
                              Sr. Assistant City Solicitor
                              Julie F. Bissinger (0012055)
                              Chief Counsel
                              City Solicitor's Office
                              Room 214, City Hall
                              801 Plum Street
                              Cincinnati, OH 45202
                              (513) 352-3338
                              (513) 352-515(fax)
                              geri.geiler@cincinnati-oh.gov
                              julie.bissinger@cincinnati-oh.gov
                              Trial Attorneys for Defendant City
                              Of Cincinnati and
                              Chief Thomas Streicher, Jr.
```

**PROOF OF SERVICE**

I hereby certify that on this 31st day of March, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record listed below.

John J. Helbling
3672 Springdale Road
Cincinnati, Ohio  45251

Mark T. Tillar
240 Clark Road
Cincinnati, Ohio  45215

Paul B. Martins
Fourth & Walnut Centre
Suite 1900
105 East Fourth St.
Cincinnati, Ohio  45202

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

Wilson G. Weisenfelder
900 Fourth & Vine Tower
Cincinnati, Ohio  45202
Dale A. Stalf
1320 PNC Center
201 East Fifth Street
Cincinnati, Ohio  45202

Donald E. Hardin
915 Cincinnati Club Building
30 Garfield Place
Cincinnati, Ohio  45202

Ravert J. Clark
114 East 8th Street
Suite 400
Cincinnati, Ohio  45202

                                      S/Neil F. Freund
                                      Neil F. Freund

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**