LEXSEE 163 F SUPP 2D 919

**JEANETTE BRUNSON, etc., Plaintiff, vs. CITY OF DAYTON, et al., Defendants.**

Case No. C-3-00-293

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION**

*163 F. Supp. 2d 919; 2001 U.S. Dist. LEXIS 14603*

**August 21, 2001, Decided**

**DISPOSITION:** [**1] MOTION OF MATHIAS H. HECK, JR., TO QUASH SUBPOENA (DOC. # 12) SUSTAINED IN PART AND OVERRULED WITHOUT PREJUDICE TO RENEWAL, IN PART; DEFENDANTS' MOTION FOR SEPARATE TRIALS (DOC. # 13) SUSTAINED; DEFENDANTS' PARTIAL MOTION TO DISMISS (DOC. # 14) SUSTAINED; DEFENDANTS' MOTION TO BIFURCATE OR TO STAY DISCOVERY (DOC. # 15) OVERRULED; PLAINTIFF'S MOTION TO COMPEL DISCOVERY (DOC. # 18) OVERRULED, WITHOUT PREJUDICE TO RENEWAL.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** For JEANETTE M BRUNSON, plaintiff: Richard Alan Boucher, Boucher & Boucher, Aaron G Durden, Dayton, OH.

For DAYTON CITY OF, VALARIE A LEMMIE, RONALD LOWE, SR, JOHN J COMPSTON, ROGER KIELBASO, MICHAEL LALLY, JARATH DURHAM-JEFFERSON, HARVEY GASE, ANTHONY QUINN, MARK SPIERS, BRUCE BURT, TOM PETTERSON, VICKI STRINGER, DARRYL NMI SMITH, SCOTT KINGREY, defendants: Neil Frank Freund, Leonard J Bazelak, FREUND, FREEZE & ARNOLD, Dayton, OH.

For Mathias H Heck, Jr.: Gregory P. Dunsky, Esq., Montgomery County Prosecutor's Office.

**JUDGES:** WALTER HERBERT RICE, CHIEF JUDGE, UNITED STATES DISTRICT COURT.

**OPINIONBY:** WALTER HERBERT RICE

**OPINION:** [*920]

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING, WITHOUT PREJUDICE TO RENEWAL, IN PART MOTION OF MATHIAS H. HECK, JR., TO QUASH SUBPOENA [**2] (DOC. # 12); DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR SEPARATE TRIALS (DOC. # 13); DECISION AND ENTRY SUSTAINING DEFENDANTS' PARTIAL MOTION TO DISMISS (DOC. # 14); DECISION AND ENTRY OVERRULING DEFENDANTS' MOTION TO BIFURCATE OR TO STAY DISCOVERY (DOC. # 15); DECISION AND ENTRY OVERRULING, WITHOUT PREJUDICE TO RENEWAL, PLAINTIFF'S MOTION TO COMPEL DISCOVERY (DOC. # 18); PLAINTIFF GIVEN LEAVE TO FILE AN AMENDED COMPLAINT; CONFERENCE CALL SET

This litigation arises out of the fatal shooting of Todd Lamont Brunson ("Brunson"). [*921] The Plaintiff, Brunson's mother and the Administrator of his estate, alleges that Defendant Roger Kielbaso ("Kielbaso") caused Brunson's death by shooting him nine times on September 12, 1999. According to Plaintiff, Kielbaso was then acting in the scope of his employment as a police officer employed by Defendant City of Dayton ("Dayton"). The Plaintiff brings this action against Dayton, Kielbaso and thirteen other individuals. In her Complaint, n1 Plaintiff has set forth claims under Ohio's wrongful death statute, *Ohio Revised Code § 2125.01*, et seq.; *Ohio Revised Code § 2921.45*; *42 U.S.C. § 1983*, alleging that the Defendants [**3] deprived Brunson of his rights under the Fourth and Fourteenth Amendments to the United States Constitution; and *42 U.S.C. § 1985*(3), alleging that the

Case 1:01-cv-00769-SAS    Document 121-2    Filed 04/05/2004    Page 2 of 8

Page 2

163 F. Supp. 2d 919, *; 2001 U.S. Dist. LEXIS 14603, **

Defendants conspired to deprive Brunson of his constitutional rights. n2 A number of motions are currently pending in this litigation, which the Court rules upon herein.

> n1 The Plaintiff initiated this litigation in Montgomery County Common Pleas Court, from whence the Defendants have timely removed it. A copy of Plaintiff's Complaint is attached to Plaintiff's Notice of Removal (Doc. # 1).n2 As is discussed below, it appears in P 43 of her Complaint that Plaintiff is attempting to assert claims arising out of the deprivation of the rights of individuals other than Brunson. Plaintiff will be required to file an amended complaint, if indeed that was her intention.

I. Motion of Mathias H. Heck, Jr., to Quash Subpoena (Doc. # 12) and Plaintiff's Motion to Compel Discovery (Doc. # 18)

The Montgomery County Grand Jury [**4] conducted an investigation into the shooting of Brunson, which did not result in the return of an indictment. Plaintiff has served a subpoena for a deposition and the production of documents upon the Montgomery County Prosecutor, Mathias H. Heck Jr. ("Heck"). The Plaintiff has indicated that she is not interested in deposing Heck; rather, the purpose of her subpoena was to require that Heck produce certain grand jury materials, to wit: 1) transcripts all testimony before the Grand Jury which investigated the shooting of Brunson; 2) all documents and tangible exhibits introduced to that Grand Jury; and 3) the testimony to a different Grand Jury by Brunson's cousin, Derek Washington, which was given the night before Brunson was shot. Heck has filed a Motion to Quash the Subpoena (Doc. # 12), and Plaintiff has filed a motion, seeking an order from the Court directing Heck to comply with the subpoena. See Doc. # 18.

In *Socialist Workers Party v. Grubisic*, 619 F.2d 641 (7th Cir. 1980), the Seventh Circuit addressed an analogous attempt by the plaintiffs to discover state grand jury materials. Therein, the plaintiffs alleged that a right-wing, paramilitary organization, [**5] the League of Justice, acting in concert with members of the Chicago Police Department and a military intelligence unit of the United States Army, had deprived them of their constitutional rights. During discovery, the plaintiffs caused a subpoena to be served on Bernard Carey ("Carey"), State's Attorney for Cook County, seeking the production of transcripts of testimony before Cook County Grand Jury 655, which had investigated the matters underlying the plaintiffs' claims and had indicted members of the League of Justice. The District Court denied Carey's request that the subpoena be quashed, after which he appealed to the Seventh Circuit. As an initial matter, the Seventh Circuit held that the question of whether testimony before a state grand jury was privileged in a federal civil rights action was to be determined in accordance with federal law and that, under that law, state grand jury [*922] materials would be given the same protection from disclosure as is afforded to federal grand jury materials. *Id. at 643-44*. The Seventh Circuit also held that principles of comity required that the state court which had supervised Grand Jury 655 be given the first opportunity to [**6] determine whether the materials in question should be released, writing:

> It is well-settled that disclosure of federal grand jury materials to private parties under *Rule 6(e) [of the Federal Rules of Criminal Procedure]* requires a showing that they are needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that the request is structured to cover only the material needed. E. g., Douglas Oil [v *Petrol Stops Northwest, 441 U.S. 211, 222, 60 L. Ed. 2d 156, 99 S. Ct. 1667 (1979)]*. The application of this standard accommodates both the continuing need for secrecy of grand jury materials and the need of the party whose cause may be prejudiced without them. Often, however, the court where the current proceedings are pending is not the same court that supervised the work of the grand jury. In the federal system, Rule 6(e) generally requires that requests for grand jury disclosure first be submitted to the court that supervised the grand jury's activities. *Id., 441 U.S. at 226; State of Illinois v. Sarbaugh, 552 F.2d 768, 772-73 (7th Cir.1977)*, [**7] cert. denied, *434 U.S. 889*. The supervisory court has first-hand knowledge of the need for secrecy in those particular proceedings. Moreover, when state grand jury proceedings are subject to disclosure, comity dictates that the federal courts defer action on any disclosure requests until the party seeking disclosure shows that the state supervisory court has considered his request and has ruled on the continuing need for secrecy. Otherwise the potential threat of disclosure orders in subsequent federal civil litigation would seriously weaken the

Case 1:01-cv-00769-SAS   Document 121-2   Filed 04/05/2004   Page 3 of 8

Page 3

163 F. Supp. 2d 919, *; 2001 U.S. Dist. LEXIS 14603, **

state court's control over the secrecy of this essential component of its criminal justice system.

*619 F.2d at 644* (footnote omitted). The Seventh Circuit stressed that the state court had not been given "a veto over disclosure;" rather, the requirement that the plaintiffs initially attempt to secure the state grand jury materials from the state supervisory court "is designed merely to forestall unnecessary intrusion by the federal courts in state grand jury proceedings." Id. See also, *Stump v. Gates, 777 F. Supp. 796, 801 (D.Colo. 1991)* (in ordering the production of state grand jury materials in [**8] a federal civil rights action, District Court noted that comity was not a concern, since the state court judge supervising the state grand jury had indicated that she would willingly produce the grand jury materials upon an order from the federal District Court).

This Court considers the result reached by the Seventh Circuit in Socialist Workers Party and the rationale employed therein to be persuasive. Principles of comity demand that the judge of the Montgomery County Common Pleas Court, who supervised the Grand Jury which investigated the shooting of Brunson, be afforded the first opportunity to decide whether the testimony and exhibits presented before it can be released. Cf. *Gottfried v. Medical Planning Services Inc., 142 F.3d 326, 330 (6th Cir. 1998).* n3 In *Horizon of Hope Ministry* [*923] *v. Clark County, Ohio, 115 F.R.D. 1 (S.D.Ohio 1986),* this Court ordered a state prosecuting attorney to produce transcripts of the testimony of two witnesses before a state grand jury, without addressing principles of comity or requiring the plaintiff initially to seek those materials from the court which supervised the state grand jury. n4 However, there is [**9] no indication that the parties opposing disclosure argued that comity required the plaintiff initially seek the materials from the state court. n5 Therefore, in Horizon of Hope, this Court did not reject the proposition that principles of comity require a District Court to afford the state court supervising a state grand jury the opportunity of initially deciding whether to release grand jury materials.

n3 In Gottfried, the plaintiff was impeded in her efforts to picket the home, office and clinic of a medical practitioner by an injunction which had been entered by a state court 12 years earlier. Rather than risk being held in contempt, the plaintiff brought suit in federal court under *42 U.S.C. § 1983,* alleging that the injunction violated her rights under the First Amendment. The Sixth Circuit concluded that principles of comity dictated that plaintiff be required to attempt to obtain relief from state court, before seeking to enjoin the injunction in federal court.n4 In *Urseth v. City of Dayton, 110 F.R.D. 245 (S.D.Ohio 1986),* this Court denied the plaintiff's request that the Court order a state prosecuting attorney to produce state grand jury materials, without considering whether principles of comity dictated that the plaintiff initially attempt to obtain those materials from the state court which was supervising the state grand jury. There is no indication that the defendants or the state prosecutor, all of whom had objected to plaintiff's attempts to discover the grand jury materials, had ever mentioned comity or the requirement that the plaintiff initially attempt to secure relief from the state court. [**10]

n5 Therein, this Court did note that, in accordance with *Fed. R. Crim. P. 6(e),* the n usual practice would be to permit the state court which had impaneled the grand jury to determine the remaining need for secrecy. *115 F.R.D. at 3 n. 1.* Given the meeting the Court had conducted with counsel and its in camera review of documents, the Court indicated that it was able to evaluate secrecy concerns. Id. Herein, this Court has not conducted such a meeting or reviewed any materials in camera, making it difficult for the Court to assess the continued need for secrecy of the state court Grand Jury materials.

Since the Plaintiff has not sought the grand jury materials in question from the state court, this Court sustains Heck's Motion to Quash (Doc. # 12), to the extent that he seeks an order from the Court quashing the subpoena Plaintiff caused to be served upon him. The Court, however, overrules that motion, without prejudice to renewal, to the extent that, with it, Heck requests a ruling from the Court that the Plaintiff is not entitled to discover the grand jury materials. [**11] The Court has not resolved that question. In addition, the Court overrules, without prejudice to renewal, Plaintiff's Motion to Compel Discovery (Doc. # 18). In the event that the Plaintiff is unsuccessful in her endeavors to obtain those materials from the state court, she may renew her motion with this court. n6

n6 If that motion is to be renewed, the Court would caution Plaintiff to pay particular attention to the standard that the Court will apply when deciding whether to order the disclosure of the grand jury materials. In *Horizon of Hope and Urseth v. City of Dayton, 110 F.R.D. 245*

Case 1:01-cv-00769-SAS   Document 121-2   Filed 04/05/2004   Page 4 of 8

Page 4

163 F. Supp. 2d 919, *; 2001 U.S. Dist. LEXIS 14603, **

*(S.D.Ohio 1986)*, this Court applied the particularized need standard established by the Supreme Court in *Douglas Oil v. Petrol Stops Northwest, 441 U.S. 211, 222, 60 L. Ed. 2d 156, 99 S. Ct. 1667 (1979)*. Under that standard, the party seeking disclosure must show that the materials are needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that the request is structured to cover only the material needed. Herein, with the exception of the Grand Jury testimony of Ki Ibaso, the Plaintiff attempts to show a particularized need for the grand jury materials, by arguing that transcripts of testimony before the Grand Jury will permit her to impeach the testimony of witnesses in this litigation and to refresh their memories. Simply stated, if that were sufficient to establish particularized need, it is conceivable that any party in any civil action, state or federal, could obtain the transcripts of individuals who testified before a state Grand Jury and who may testify during the trial of the civil action.

[**12]
[*924]
II. Defendants' Motion for Separate Trials (Doc. # 13)

With this motion, the Defendants request that this Court order separate trials of the Plaintiff's claims against the individual Defendants and her "policy or practice" claim, asserted against Dayton pursuant to *Monell v. New York City Department of Social Services, 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978)*, with the trial against the individual Defendants proceeding first. The Defendants argue that bifurcation will further convenience and economy, as well as avoiding prejudice which could occur if all claims and issues were to be resolved in a single trial. The Plaintiff has opposed that motion. See Doc. # 26.

Bifurcation is governed by *Rule 42(b) of the Federal Rules of Civil Procedure*, which provides:

> (b) Separate Trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving [**13] inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

In *Martin v. Heideman, 106 F.3d 1308 (6th Cir. 1997)*, the Sixth Circuit reiterated that "bifurcation orders are reviewed for abuse of discretion, with the court required to consider the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy." *Id. at 1311*. See also, *In re Beverly Hills Fire Litigation, 695 F.2d 207 (6th Cir. 1982)*, cert. denied, *461 U.S. 929 (1983)*.

The Court concludes that separate trials of Plaintiff's claims against the individual Defendants and her claim under Monell against Dayton are necessary in order to avoid prejudice. If a single trial were held on all of the claims in this case, evidence offered against Dayton regarding incidents of alleged misconduct by police officers, unrelated to the incident in question in this case but relevant to the question of municipal liability for a policy or practice, would be highly prejudicial to the individual Defendants. The questions regarding [**14] the liability of these individual Defendants must be decided by the jury only on the facts of the particular encounter on which this case is based. That is to say, these individual Defendants cannot be made to bear the burden of answering for all of the alleged misdeeds of every past and current Dayton police officer, when defending against the allegations of the Plaintiff as to the incidents that occurred in this case. A jury must be allowed to consider the evidence regarding this incident, with its focus on that evidence unimpaired by a torrent of information concerning the conduct of police officers in other unrelated situations at other times. n7

---

n7 The Plaintiff argues that she may seek to establish her Monell claim against Dayton with circumstantial proof that Dayton customarily "failed to make any meaningful investigation into charges that police officers had used excessive force or violated civil rights in the past." Doc. # 26 at 3. See also, Id. at 7-8. Accordingly, the need for separate trials in this litigation, in order to avoid the potential prejudice discussed in the text above, is real rather than being speculative.

[**15]

The Court rejects also Plaintiff's argument that it should overrule the Defendants' [*925] request for bifurcation, because such an order would be neither convenient nor economical. According to Plaintiff, such an order would necessitate two trials in this matter. Although it is possible that two trials will be necessary to

Case 1:01-cv-00769-SAS   Document 121-2   Filed 04/05/2004   Page 5 of 8

Page 5
163 F. Supp. 2d 919, *; 2001 U.S. Dist. LEXIS 14603, **

resolve this litigation, for the reasons set forth below, that possibility is so remote that it does not serve as the basis for denying the instant request for bifurcation. Moreover, any inconvenience or lack of economy which would flow from the necessity of conducting two trials would pale in comparison to the prejudice which would befall the individual Defendants, if Plaintiff's claims against them were to be resolved in same trial. Plaintiff's Monell claim against Dayton. The first trial will most probably moot the need for a second trial. A finding by the jury in the first trial, during which the Plaintiff's claims against the individual Defendants will be resolved, that those Defendants had not violated Brunson's constitutional rights, would resolve Plaintiff's claims against Dayton. When the jury finds that an officer did not deprive the plaintiff [**16] of her constitutional rights, Monell liability cannot be imposed upon his governmental employer. n8 See e.g., *Scott v. Clay County*, 205 F.3d 867, 879 (6th Cir.) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 89 L. Ed. 2d 806, 106 S. Ct. 1571 (1986)), cert. denied, 531 U.S. 874 (2000). On the other hand, if the first trial were to result in a verdict in favor of the Plaintiff, and Dayton agreed to pay the amount of that verdict, i.e., to indemnify the individual officers for the amount of the jury's verdicts, there would be no need for a second trial to resolve the Plaintiff's Monell claim against Dayton, since she is only entitled to a single recovery for her damages, which would have been accomplished as a result of the jury's verdict in the first trial and the City's agreement to indemnify. If Dayton were to refuse to indemnify the individual Defendants for the amount of the verdict and the Plaintiff could not secure satisfaction of that verdict from payment by the individual officers, then a second trial would be necessary. n9

n8 Under Ohio's statute providing tort immunity to political subdivisions, liability can be imposed on a municipal employer, such as Dayton, for the torts committed by its employees, only in limited circumstances, none of which is implicated in this litigation. See *Ohio Rev. Code § 2744.02(B)*. Therefore, since it is unlikely that the Plaintiff's state law claims against Dayton will survive a motion for summary judgment, the Court focuses upon Plaintiff's federal law claims when discussing bifurcation. If, however, the Plaintiff's state law claims against Dayton were to survive a motion for summary judgment, those claims would be resolved during the first trial, since their resolution would not necessitate the introduction of the same type of potentially prejudicial evidence as the Plaintiff's Monell claim. [**17]

n9 Plaintiff cannot recover punitive damages from Dayton on her federal law claims. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 69 L. Ed. 2d 616, 101 S. Ct. 2748 (1981). Therefore, there would be no need for a second trial, if Dayton were to refuse to indemnify the individual Defendants for an award of punitive damages at the first trial.

It is, however, possible that the first trial will not eliminate the need for a second trial. A second trial would be required to resolve Plaintiff's Monell claim against Dayton, if the jury were to find that, although the individual Defendants violated Brunson's constitutional rights, they were protected from liability by qualified immunity. See *Owen v. City of Independence*, 445 U.S. 622, 63 L. Ed. 2d 673, 100 S. Ct. 1398 (1980) (holding that the defense of qualified immunity is not available to municipal governments); *Harrill v. Blount County, Tenn.*, 55 F.3d 1123, 1124 (6th Cir. 1995) (same). However, in this Court's experience, the possibility that the [*926] jury will find both that the individual [**18] Defendants violated Brunson's rights and that qualified immunity prevents liability from being imposed upon them is quite remote.

Based upon the foregoing, the Court sustains the Defendants' Motion for Separate Trials (Doc. # 13). The Plaintiff's claims against the individual Defendants will be resolved in the first trial, with her claim against Dayton under Monell being resolved in a second trial, if necessary.

III. Defendants' Partial Motion to Dismiss (Doc. # 14)

With this motion, Defendants request that the Court dismiss Plaintiff's claims under *42 U.S.C. § 1985(3)*, her official capacity claims and her claims under *Ohio Revised Code § 2921.45*, pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure*. In addition, Defendants Michael Lally ("Lally"), Major Jarath Durham-Jefferson ("Durham-Jefferson"), Harvey Gase ("Gase"), Sergeant Anthony Quinn ("Quinn"), Sergeant Mark Spiers ("Spiers"), Lieutenant Bruce Burt ("Burt"), Sergeant Tom Petterson ("Petterson"), Vicki Stringer ("Stringer"), Darryl Smith ("Smith") and Scott Kingrey ("Kingrey") request that the Court dismiss all claims Plaintiff has asserted against them. The Plaintiff has [**19] not filed a memorandum in opposition to this motion. As a means of analysis, the Court will initially set forth the standards which are applicable to all motions filed pursuant to Rule 12(b)(6), following which it will address the four branches of the Defendants' Partial Motion to Dismiss (Doc. # 14), in the above order.

Case 1:01-cv-00769-SAS   Document 121-2   Filed 04/05/2004   Page 6 of 8

Page 6

163 F. Supp. 2d 919, *; 2001 U.S. Dist. LEXIS 14603, **

In *In re DeLorean Motor Co., 991 F.2d 1236 (6th Cir. 1993)*, the Sixth Circuit restated the standards which govern motions to dismiss for failure to state a claim upon which relief can be granted, under Rule 12(b)(6):

> We review dismissal of a complaint pursuant to *Federal Rule of Civil Procedure 12(b)(6)* on a de novo basis. *Sinay v. Lamson & Sessions Co., 948 F.2d 1037, 1039-40 (6th Cir. 1991)*. This Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Meador v. Cabinet for Human Resources, 902 F.2d 474, 475 (6th Cir.), cert. denied, 498 U.S. 867, 112 L. Ed. 2d 145, 111 S. Ct. 182 (1990)*. A complaint [**20] need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Lawler v. Marshall, 898 F.2d 1196, 1199 (6th Cir. 1990)* (quoting *Conley v. Gibson, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957))*. A judge may not grant a *Fed. R. Civ. P. 12(b)(6)* motion to dismiss based on a disbelief of a complaint's factual allegations. Id. While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)*. "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" Id. (quoting *Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984), cert. denied, 470 U.S. 1054, 84 L. Ed. 2d 821, 105 S. Ct. 1758 (1985)* (quoting *In re Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. 1981))*.

*991 F.2d at 1239-40*. See also, *Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)*; [**21] *Mertik v. Blalock, 983 F.2d 1353, 1356 (6th Cir. 1993)*. Moreover, although a District Court is required to accept the truth of the plaintiff's factual allegations, it is not required to [*927] accept as true either legal conclusions or unwarranted factual inferences. *Gregory v. Shelby County, Tennessee, 220 F.3d 433, 446 (6th Cir. 2000)*.

First, one of the essential elements of a claim under § 1985(3) is that two or more persons conspired. See e.g., *Griffin v. Breckenridge, 403 U.S. 88, 102, 29 L. Ed. 2d 338, 91 S. Ct. 1790 (1971)*. The Defendants argue that the Plaintiff cannot establish that element, since in accordance with the intra-corporate conspiracy doctrine, they cannot have conspired among themselves. This Court agrees. The Sixth Circuit has recognized that the intra-corporate conspiracy doctrine, under which employees of a corporation or governmental entity generally cannot be deemed to have conspired among themselves or with their corporate or governmental employer, prevents liability from being imposed under § 1985(3). See *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist., 926 F.2d 505, 509 (6th Cir. 1991)*. [**22] However, the Sixth Circuit has also recognized an exception to that doctrine, under which liability can be imposed upon employees acting outside the scope of their employment relationship. *Johnson v. Hills & Dales General Hosp., 40 F.3d 837, 841 (6th Cir. 1994)*. Herein, the Plaintiff has not alleged that any of the Defendants acted outside of the scope of his or her employment relationship. On the contrary, the natural implication of the allegations in Plaintiff's Complaint is that the individual Defendants were acting with the scope of their employment with Dayton.f See Plaintiff's Complaint at PP 28, 31-33 and 35. Accordingly, the Court concludes that the Plaintiff has failed to state a claim upon which relief can be granted, under § 1985(3), and sustains the branch of the Defendants' Partial Motion to Dismiss (Doc. # 14), as it relates to Plaintiff's claim under that statute. n10

---

n10 In their Supplemental Memorandum in Support of [Partial] Motion to Dismiss (Doc. # 20), the Defendants argue that the Court should dismiss the portion of the Plaintiff's § 1985(3) claim which is predicated upon actions which occurred after Brunson had been killed. According to the Defendants, conspiracies to coverup the truth about police killings are not actionable, since a deceased person does not possess constitutional rights which can be infringed. Given that the court has concluded that the entirety of Plaintiff's § 1985(3) claim must be dismissed pursuant to the intra-corporate conspiracy doctrine, it is not necessary to address Defendants' alternative request that the Court dismiss a portion of that claim.

[**23]

Second, in her Complaint, the Plaintiff has explicitly alleged that she is suing Kielbaso, Ronald Lowe, Sr.

163 F. Supp. 2d 919, *; 2001 U.S. Dist. LEXIS 14603, **

("Lowe), Valerie Lemmie ("Lemmie"), Petterson, Burt, Smith and John Compston ("Compston") both individually and in their official capacities. See Plaintiff's Complaint at PP 31-33. Defendants point out that the Plaintiff has not specified whether she is suing the other individual Defendants, Lally, Durham-Jefferson, Gase, Quinn, Spiers, Stringer and Kingrey, in their official or individual capacities or both. Defendants seek dismissal of the Plaintiff's official capacity claims against the individual Defendants. This Court agrees. It is well-settled that a claim against an officer or employee of a governmental entity, in his or her official capacity, is a claim against the governmental entity itself. See e.g., *Kentucky v. Graham, 473 U.S. 159, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985)*. Thus, the Plaintiff's claims against the individual Defendants in their official capacities merely restate her claims against Dayton. Since that municipality is a Defendant in this litigation, the Court sustains the Defendants' Partial Motion to Dismiss (Doc. # 14), to [**24] the extent that, with that motion, the Defendants [*928] seek dismissal of the official capacity claims against the individual Defendants. Accord, *H.J. v. Hamilton County, Ohio, 707 F. Supp. 314, 318-19 (S.D.Ohio 1989)* (dismissing official capacity claims against county commissioners, because county was a defendant).

Third, the Plaintiff appears to be attempting to impose liability pursuant to a criminal statute, *Ohio Revised Code § 2921.45*. n11 See Plaintiff's Complaint at P 29. The Defendants argue that the Court should dismiss this claim, because civil actions cannot be predicated upon an alleged violation of a criminal statute. This Court agrees. Courts in Ohio have held that a plaintiff cannot assert a claim, predicated upon an alleged violation of a criminal statute, because "criminal violations are brought not in the name of an individual party but rather by, and on behalf of, the state of Ohio or its political subdivisions." *Biomedical Innovations, Inc. v. McLaughlin, 103 Ohio App. 3d 122, 126, 658 N.E.2d 1084, 1086 (1995)*. See also, *Culberson v. Doan, 125 F. Supp. 2d 252, 279-80 (S.D. Ohio 2001)* (applying the principles of [**25] Ohio law set forth in Biomedical Innovations to dismiss plaintiffs' claim of obstruction of justice predicated upon alleged violations of *Ohio Revised Code § § 2923.31* and 2923.32). Accordingly, the Court sustains the Defendants' Partial Motion to Dismiss (Doc. # 14), to the extent that, with that motion, the Defendants seek dismissal of Plaintiff's claim predicated upon an alleged violation of *Ohio Revised Code § 2921.45*.

n11 Section 2921.45 provides:

(A) No public servant, under color of his office, employment, or authority, shall knowingly deprive, or conspire or attempt to deprive any person of a constitutional or statutory right.

(B) Whoever violates this section is guilty of interfering with civil rights, a misdemeanor of the first degree.

Fourth, Lally, Durham-Jefferson, Gase, Quinn, Spiers, Burt, Petterson, Stringer, Smith, and Kingrey request that the Court dismiss all claims against them. Defendants point out that Plaintiff's Complaint fails to include a description as [**26] to what individual conduct by Petterson, Burt, Quinn, Spiers, Durham-Jefferson, Kingrey and Smith violated Brunson's constitutional rights. This Court agrees. A review of the Plaintiff's Complaint leaves the Court at a loss to understand how Petterson, Burt, Quinn, Spiers, Durham-Jefferson, Kingrey and Smith violated Brunson's constitutional rights. In addition, Defendants point out that Plaintiff has failed to allege her Complaint as to whether Lally, Durham-Jefferson, Gase, Quinn, Spiers, Stringer, and Kingrey are being sued in their individual capacities. The Sixth Circuit has generally held that plaintiffs must designate in which capacity they are suing defendants; if not, by operation of law, defendants are deemed to have been sued in their official capacities. *Hardin v. Straub, 954 F.2d 1193, 1199 (6th Cir. 1992); Wells v. Brown, 891 F.2d 591, 592-94 (6th Cir. 1989)*. n12 Since the Plaintiff has not indicated that she intended to sue those Defendants in their individual capacities, the Court presumes that they have been sued in their official capacities, alone. Both of those shortcomings serve as the basis for dismissing all claims against Lally, [**27] Durham-Jefferson, Gase, Quinn, Spiers, Burt, Petterson, Stringer, Smith, and Kingrey.

n12 It appears that the Sixth Circuit will revisit its rule in this regard when it issues its en banc decision in Moore v. City of Harriman.

Accordingly, the Court sustains the Defendants' Partial Motion to Dismiss (Doc. # 14), to the extent that, with that motion, [*929] Lally, Durham-Jefferson, Gase, Quinn, Spiers, Burt, Petterson, Stringer, Smith, and Kingrey seek dismissal of all claims asserted against them. The Court will, however, afford Plaintiff the opportunity of filing an amended complaint, setting forth the conduct of Petterson, Burt, Quinn, Spiers, Durham-

Case 1:01-cv-00769-SAS   Document 121-2   Filed 04/05/2004   Page 8 of 8

Page 8

163 F. Supp. 2d 919, \*; 2001 U.S. Dist. LEXIS 14603, \*\*

Jefferson, Kingrey and Smith that is alleged to have violated Brunson's constitutional rights, and alleging that Lally, Durham-Jefferson, Gase, Quinn, Spiers, Burt, Petterson, Stringer, Smith, and Kingrey are being sued in their individual capacities. If such an amended pleading is to be filed, it must be in strict compliance with *Fed. R. Civ. P. 11*, and cannot [\*\*28] include Plaintiff's claims under *42 U.S.C. § 1985*(3) or *§ 2921.45 of the Ohio Revised Code*, nor may it include official capacity claims against any individual Defendants. In addition, if such an amended pleading is filed, the Plaintiff must either delete or add flesh to P 43 of her current pleading. Therein Plaintiff alleges:

> 43. Defendants violated the Administrator's, the Estate's and the Next-of-Kin's First, Fifth and Fourteenth Amendment rights to familio association, access to the Courts and Due Process of Law.

Although this allegation appears in the Plaintiff's Second Claim for Relief, in which she sets forth a claim under *42 U.S.C. § 1983*, predicated upon the alleged deprivation of her son's constitutional rights, P 43 appears to be an attempt to assert claims arising out of the deprivation of the rights of individuals other than Brunson. If that is Plaintiff's intent, she must explicitly so allege in a separate claim for relief in her amended complaint. If Plaintiff's intent was not to seek to recover damages based upon the constitutional deprivations suffered by others (for instance, because she is without [\*\*29] standing to seek such relief), her amended complaint cannot include allegations such as those contained in P 43. n13

> n13 If the Plaintiff chooses not to file an amended complaint, the Court will assume that the allegations contained in P 43 do not constitute an attempt to recover damages for constitutional deprivation suffered by anyone other than Brunson.

IV. Defendants' Motion to Bifurcate or to Stay Discovery (Doc. # 15)

With this motion, the Defendants request that the Court delay discovery on the Plaintiff's Monell claim against Dayton until such time as the Plaintiffs' claims against the individual Defendants have been resolved. n14 This Court will deny that request. Allowing all discovery to be conducted before the initial trial will avoid delaying the ultimate resolution of this litigation. For instance, in the event that the individual Defendants were to be granted summary judgment on the basis of qualified immunity, a trial of the Plaintiff's claims against Dayton could proceed expeditiously, [\*\*30] if the Plaintiff had already conducted discovery on her Monell claim. In addition, permitting all discovery to be conducted before the first trial will allow the second trial to commence quickly, in the event that such a trial becomes necessary, perhaps even before the same jury which heard the first phase of this litigation. Accordingly, the Court overrules Defendants' Motion to Bifurcate or to Stay Discovery (Doc. # 15).

> n14 With that motion, the Defendants also requested a protective order and an order of the Court quashing a subpoena. This Court previously noted that these requests were moot. See Doc. # 17.

Counsel will take note that the Court has scheduled a telephone conference call on Thursday, August 30, 2001, at 8:20 a.m., for the purpose of discussing the viability [\*930] of the November 5, 2001, trial date in this litigation.

August 21, 2001

/s/

WALTER HERBERT RICE, CHIEF JUDGE

UNITED STATES DISTRICT COURT