UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF | : | |
| ROGER D. OWENSBY JR., et al., | : | |
| | : | |
| | : | Case No. 01-CV-769 |
| Plaintiff, | : | |
| | : | Senior Judge S. Arthur Spiegel |
| v. | : | |
| | : | |
| CITY OF CINCINNATI, et al., | : | |
| | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER
DENYING SUMMARY JUDGMENT ON SOVEREIGN IMMUNITY;
REQUEST TO CERTIFY QUESTION TO OHIO SUPREME COURT; OR
ALTERNATIVE MOTION TO CERTIFY CONFLICT TO SIXTH CIRCUIT (doc. 118)**

**I.      INTRODUCTION**

In yet another attempt to delay the trial of this § 1983 civil rights action for the November 7, 2000 death of Roger Owensby, Jr., at the hands of Cincinnati and Golf Manor police, Defendants City of Cincinnati and its Police Chief, Thomas Streicher, Jr., have file this Motion for Reconsideration of March 25, 2004 Order Overruling Summary Judgment on Sovereign Immunity; Request to Certify Question to Ohio Supreme Court Regarding Revised Code 2744's Constitutionality; Alternative Motion to Certify Conflict to Sixth Circuit Court of Appeals (Doc. 118) ("Reconsideration Motion").

When Defendants filed this March 31, 2004 Reconsideration Motion, they contacted this Court for an urgent all-counsel conference call for the next morning, April 1, 2004.  In that conference call, Defense counsel asked this Court to grant some portion of its tri-pronged motion

without briefing from Plaintiff's counsel by claiming that Defendants' time to appeal this Court's ruling on sovereign immunity would expire on April 5, 2004. This Court refused Defendants' frantic and misguided effort but directed Plaintiff to respond within a week to Defendants' filing. We now do so.

Despite this Court pointing out defense counsel's misunderstanding of the time for filing a brief in the Court of Appeals pursuant to 28 U.S.C. § 1292(b), Defendants nonetheless have now filed both a Notice of Appeal pursuant to § 1292(b) as well as a Petition for Expedited Appeal and Motion to Stay All Proceedings before this Court with the Sixth Circuit Court of Appeals. In this hysteria to delay these proceedings Defendants neglected to obtain a ruling on either request from this Court as required by federal law.

Defendants' Reconsideration Motion should be denied because:

1. The Ohio Supreme Court has provided this Court with clear guidance in no less than three separate decisions that Ohio's Sovereign Immunity Act is unconstitutional;

2. Certification of this issue to the Ohio Supreme Court, pursuant to Ohio Supreme Court Practice Rule XVIII, is inappropriate because resolution of this issue is not determinative of the proceeding and because there is ample Ohio Supreme Court case law available to provide this Court with adequate direction; and,

3. An interlocutory appeal of this issue to the Sixth Circuit, pursuant to 28 U.S.C. § 1292(b), is inappropriate because such an appeal does not involve a controlling question of law in this § 1983 action, the Defendants have failed to establish that there is a substantial ground for difference of opinion concerning the correctness of the Court's decision, and an immediate appeal of this issue will not materially advance the ultimate termination of this litigation since the § 1983 core claims against all of the defendants remain to be tried and the individual police officers remain liable under the Sovereign Immunity Act for their malicious actions.

II.  **_BUTLER v. JORDAN_: OHIO'S SOVEREIGN IMMUNITY ACT IS UNCONSTITUTIONAL**

The City of Cincinnati and its Police Chief assert that "there is no language in the Ohio Supreme Court Decision, Butler v. Jordan, to support any notion that Revised Code 2744 Sovereign Immunity is unconstitutional."[1]  This statement is false.

In, *Butler v. Jordan*,[2] an eight-month-old child died at a daycare center when duct tape was placed over the infant's nose and mouth.  The parents sued the daycare center and the Cuyahoga County Department of Human Services ("CCDHS"), alleging that CCDHS was negligent and/or reckless in the licensing and certification of the daycare center.[3]  In the first three pages of its decision, the Ohio Supreme Court upheld the dismissal of CCDHS as immune from liability under Ohio Revised Code 2744(A)(1), noting "[t]he tragedy of this case is that appellant is able to shuck its clear duty and responsibilities, as are other political subdivisions, on the sole basis of the doctrine of sovereign immunity."[4]

Outraged that the "government" had "accorded itself the right to negligently injure its citizens with immunity, all in disregard of the constitutional protections reserved by its citizens to themselves," the Ohio Supreme Court found that its hands were tied because *Butler* appellant had not properly challenged the constitutionality of Chapter 2744.[5]  Nevertheless, the Court then

---

[1] Doc. 118, Reconsideration Motion., p. 5.

[2] 92 Ohio St. 3d 354, 358, 750 N.E.2d 554, 558 (2001).

[3] *Id*. at 354-55, 750 N.E.2d at 555-56.

[4] *Id.* at 354-58, 750 N.E.2d at 555-58.

[5] *Id.* at 358, 750 N.E.2d at 558.

3

devoted the next sixteen pages of its opinion to an extensive analysis of the Ohio sovereign immunity laws, inviting such a constitutional challenge in the future.[6]

Specifically, the Ohio Supreme Court disapproved of the legacy of mental gymnastics employed by Ohio courts in attempting to find exceptions to the Sovereign Immunity Act so that justice could be administered to Ohio citizens.[7] In examining the history of the Ohio Sovereign Immunity Act, *Butler* expressed the view that the Act violated Ohio's Constitution in two ways. First, it violated Article I, Section 16 of the Ohio Constitution which affords Ohio citizens redress in the courts.[8] Second, the Act violated Article I, Section 5 of the Ohio Constitution which guarantees Ohio citizens a right to jury trial.[9] This sixteen-page treatise on the unconstitutionality of the Ohio Sovereign Immunity Act, Defendants characterize as "subtle hints" regarding the constitutionality of the Act.[10] Not so. It is a clear invitation and roadmap

---

[6]*Id. a*t 358-74, 750 N.E.2d at 558-71.

[7]*Butler*, 92 Ohio St. 3d at 367-68, 750 N.E.2d at 566-67, *citing Muenchenbach v. Preble Cty.*, 91 Ohio St. 3d 141, 742 N.E.2d 1128 (2001) (holding that a four-wheeled tractor equipped with a street-sweeping brush on the front and a scraper blade on the back, being used in construction work, was a motor vehicle "employed in general highway transportation"); *Perkins v. Norwood City Schools*, 85 Ohio St. 3d 191, 707 N.E.2d 868 (1999); *Carter v. Cleveland*, 83 Ohio St. 3d 24, 697 N.E.2d 610 (1998) (holding that the glare of sunlight reflecting off of a glass-paneled wall along side a city swimming pool constituted a nuisance); *Garrett v. Sandusky*, 68 Ohio St. 3d 139, 140, 624 N.E.2d 704, 706 (1994) ( holding that a municipal wave pool was not a "swimming pool" [protected by Chapter 2744 immunity] and instead was "more akin to an amusement ride, which is not an immunized municipal function according to R.C. Chapter 2744,").

[8]*Butler*, 92 Ohio St. 3d at 368-74, 750 N.E.2d at 567-71; see also, Doc. 52, Plaintiff's Memo Contra MSJ re Sovereign Immunity, pp. 13-15.

[9]*Id.* at 370-74, 750 N.E.2d at 568-71; see also, Doc. 52, Plaintiff's Memo Contra MSJ re Sovereign Immunity, pp. 16-16.

[10]Doc. 118, Reconsideration Motion, p. 6.

provided by the Ohio Supreme Court on the unconstitutionality of this Sovereign Immunity Act which improperly cloaks municipalities with regal power to injure their citizen with impunity.

On March 25, 2004, this Court considered and rejected the City's sovereign immunity arguments. Doc. 113, Order. This Order was based upon a prior ruling by this Court in another civil rights case, *Kammeyer v. City of Sharonville*, No. 1:01-CV-00649 (S.D. Ohio Dec. 17, 2003). Specifically, this Court found that the Ohio Supreme Court "provided more than adequate direction for the Court to conclude that the invocation of sovereign immunity by the City and the individual Defendants violates the Plaintiffs' right to trial by jury and to remedy under the Ohio Constitution."[11]

Now, the City asks this Court to reconsider its decision because "it appears this Court was unaware of simultaneous and subsequent Ohio Supreme Court decisions on this issue."[12] This argument is based upon the following three Ohio Supreme Court decisions that provide no basis for reconsideration.

### A.     *Ryll v. Columbus Fireworks Display Co., Inc.*

The first case cited by the City is *Ryll v. Columbus Fireworks Display Co., Inc.*, in which suit was brought against the city of Reynoldsburg, Ohio, for wrongful death when Daniel Ryll was killed by an exploding fireworks shell during a July 4, 1996 fireworks display.[13] In yet another example of courts having to resort to "mental gymnastics" to avoid the injustice of the

---

[11] *Kammeyer v. City of Sharonville*, No. 1:01-CV-00649, p. 14 (S.D. Ohio Dec. 17, 2003).

[12] Doc. 118, Reconsideration Motion, p. 7.

[13] *Id.* at 7-8 citing *Ryll v. Columbus Fireworks Display Co., Inc.*, 95 Ohio St. 3d 467, 769 N.E.2d 372 (2002).

Sovereign Immunity Act, the Ohio Supreme Court found that municipal sponsorship of a fireworks display was not a governmental function, rendering the Sovereign Immunity Act inapplicable.[14] As a result, the Ohio Supreme Court expressly stated **"we resolve the issue before us in favor of the appellant without addressing the constitutional issue."**[15] Therefore, *Ryll* provides no support for Defendants' argument that subsequent Ohio Supreme Court decisions have addressed this constitutional issue.

    **B.**    ***Campbell v. Burton.***

Defendants next cite to *Campbell v. Burton*—a decision authored by Justice Douglas (who also authored *Butler* on the same day)—which concerned a conflict among Ohio courts of appeal as to whether the failure to report known or suspected child abuse violated an expressed duty that removed the violation from the immunity protection of the Sovereign Immunity Act.[16] As it had with *Ryll*, the Ohio Supreme Court did not address the constitutionality of the Act. Instead, it again confined its holding to the fact that the Sovereign Immunity Act expressly imposes liability for failing to report known or suspected child abuse, thus, rendering immunity for municipalities and their employees inapplicable.[17] Again, the constitutionality of the Sovereign Immunity Act was not challenged nor addressed by the Court. Therefore, it too provides no support for Defendants' argument.

---

[14] *Ryll*, 95 Ohio St. 3d at 470, 769 N.E.2d at 375-76.

[15] *Id.*, at 468, 769 N.E.2d at 374.

[16] *Campbell v. Burton*, 92 Ohio St. 3d 336, 337, 750 N.E.2d 539, 540 (2001).

[17] *Id.* at 343, 750 N.E.2d at 545-46.

C.  *Marshall v. Montgomery County Children Services Board.*

Finally, Defendants cite *Marshall v. Montgomery County Children Services Board*.[18] Like *Campbell*, this decision was written by Justice Douglas and issued on the same day as the *Butler* and *Campbell* decisions. In *Marshall* the Ohio Supreme Court distinguished between the expressed statutory obligation to <u>report</u> suspected child abuse and the failure to <u>investigate</u> suspected child abuse. The constitutionality of the Sovereign Immunity Act was never raised. In fact, *Marshall* concluded its opinion with the following statement:

> We find this troubling in light of the potential for a political subdivision to entirely disregard affirmative duties and yet avoid liability under the cloak of sovereign immunity.[19] However, we are confined to review the law based upon the issues presented in this appeal.[20]

Thus, all three of the Ohio Supreme Court decisions cited by the Defendants utterly fail to address the constitutionality of the Sovereign Immunity Act. *Marshall, Campbell* and *Butler* were all issued on the same day and all three were authored by Justice Douglas who clearly expressed the view, in *Butler*, that the Sovereign Immunity Act is unconstitutional. Further, the remaining *Ryll* decision was authored by Justice Pfeifer who concurred in *Butler* and has made it plainly known that he too believes the Sovereign Immunity Act is unconstitutional.[21]

---

[18] Doc. 118, Reconsideration Motion, p. 9-10 citing *Marshall v. Montgomery County Children Services Board*, 92 Ohio St. 3d 348, 750 N.E.2d 549 (2001).

[19] *Marshall* cites to its companion *Butler v. Jordan* decision, "For comparison to another statute that imposes a duty but does not impose liability." *Marshall*, 92 Ohio St. 3d at 353 n.1, 750 N.E.3d at 554 n.1.

[20] *Marshall*, 92 Ohio St. 3d at 353, 750 N.E.2d at 554.

[21] *Butler*, 92 Ohio St. 3d at 368, 750 N.E.2d at 568, *citing Garrett v. Sandusky*, 68 Ohio St. 3d 139, 144, 624 N.E.2d 704, 708 (1994) ("The true intent of the amendment to Section 16,

7

There is no basis for reconsidering this Court's decision based upon the cases cited by the Defendants.

**III.    CERTIFICATION TO THE OHIO SUPREME COURT IS IMPROPER**

The City and its Police Chief next argue that this Court should certify the question of the constitutionality of the Sovereign Immunity Act to the Ohio Supreme Court.[22] Defendants concede that such a certification must comply with Ohio Supreme Court Practice Rule XVIII which states that:

> The Supreme ***may*** answer a question of law certified to it by a court of the United States. This rule ***may*** be invoked when the certifying court, in a proceeding before it, determines there is a question of Ohio law that may be ***determinative of the proceeding*** and for which there is ***no controlling precedent*** in the decisions of the Supreme Court, and issues a certification order.[23]

Here, certification of this question to the Ohio Supreme Court is inappropriate, as a matter of law, for three distinct reasons.

First, resolution of the constitutionality of the Sovereign Immunity Act is not "determinative of the proceeding." This case proceeds to trial under its core federal civil rights claims, advanced upon 42 U.S.C. § 1983 against all of the Defendants, regardless of the constitutionality of the Sovereign Immunity Act.[24] Further, Defendants admit that it is not even

---

Article I was to abolish sovereign immunity in its entirety....Governmental immunity, including municipal immunity, is contrary to the clear meaning and mandate of the Ohio Constitution.") (Pfeifer, J.).

[22]Doc. 118, Reconsideration Motion, pp. 10-12.

[23]*Id.* at 10 citing Ohio Supreme Court Practice Rule XVIII § 1.

[24]Doc. 1, Complaint, First Claim.

determinative of the immunity defenses raised by the individual police officers, since the Sovereign Immunity Act does not immunize municipal employees if their "acts or omissions were with malicious purpose, in bad faith, or in a wanton reckless manner."[25]

Second, as discussed in *Kammeyer*, there is more than adequate direction provided to this Court by the Ohio Supreme Court in its *Butler* decision. Thus, the requirement that there be "no controlling precedent in the decisions of this Supreme Court" does not exist.

Third, while certification of this matter to the Ohio Supreme Court will certainly result in unwarranted delay, it will not guarantee resolution of this matter since the Supreme Court is not required to accept the certified question. It is a discretionary interlocutory appeal that will delay the trial of this case well beyond the schedule May 3, 2004 trial date. Such a certification would require this Court to prepare and submit a certification order.[26] The parties would be required to submit preliminary memoranda on the issue of whether the Ohio Supreme Court should accept the certified issue—a further delay for at least another 35 days.[27] There would then follow an indefinite delay while this Court and the parties wait for the Ohio Supreme Court to decide whether to accept the certified question. This would surely mean the loss of the May 3 trial date. Then, *if the certified question were accepted*, another two months would be devoted to briefing the subject to the Supreme Court.[28] All of this would be followed by the indeterminate delay in

---

[25] Doc. 49, Defendants' Sovereign Immunity MSJ, pp. 9-10; R.C. 2744.03(A)(6)(b).

[26] Ohio Supreme Court Practice Rule XVIII § 3.

[27] *Id.* at § 6.

[28] *Id.* at § 7.

waiting for the Supreme Court to act. All in all, certification of this matter to the Ohio Supreme Court will delay the resolution of this case indefinitely with no guarantee that any issue will be ultimately accepted for review or resolved.

Thus, certification of this issue to the Ohio Supreme Court is inappropriate and unwarranted.

### IV.     DEFENDANTS' ALTERNATIVE REQUEST TO CERTIFY THIS MATTER TO THE SIXTH CIRCUIT COURT OF APPEALS IS MERITLESS

On the one hand, the City and its Police Chief argue that this Court should certify the question of the constitutionality of the Sovereign Immunity Act to the Ohio Supreme Court to preserve Ohio's sovereignty.[29] However, on the other hand, these same Defendants illogically advance the alternative argument that this issue should be certified for interlocutory appeal to the United States Court of Appeals for the Sixth Circuit.[30] The Sixth Circuit possesses no more insight into Ohio's sovereignty than this Court. Thus, certification of an interlocutory appeal to the Sixth Circuit accomplishes nothing but delay.

Defendants request that this Court certify "a conflict" to the Sixth Circuit under the Interlocutory Appeals Act, which provides in relevant part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is **substantial ground for difference of opinion** and that an immediate appeal from the order **may materially advance the ultimate termination of the litigation**, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of

---

[29]Doc. 118, Reconsideration Motion, pp. 10-11.

[30]*Id.* at 13-14.

10

an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.[31]

Many of the same reasons that render certification of this issue to the Ohio Supreme Court improper also make an interlocutory appeal under 28 U.S.C. § 1292(b) inappropriate.

The legislative history of the Interlocutory Appeals Act establishes that Congress intended that § 1292(b) be sparingly applied in only exceptional cases.[32] In the seminal 1966 Sixth Circuit case on § 1292(b), *Kraus v. Board of County Road Commissioners,* the Court of Appeals rejected an appeal of a denial of summary judgment in an automobile personal injury action concerning the applicability of a Michigan statute that required written notice of a claim, stating:

> We conclude that this case is not within the class of interlocutory appeals contemplated by the statute....This statute was not intended to authorize interlocutory appeals in ordinary suits for personal injury or wrongful death that can be tried and disposed of on their merits in a few days. The granting of an interlocutory appeal in the present case would not "materially advance the ultimate termination of the litigation." Many months would be require before the case would be reached for argument on the congested docket of this court....On the other hand, it would appear that only a few days would be required for a jury trial and final disposition of the case in the district court. This procedure, which would avoid a piecemeal appeal, is preferable except in the extraordinary type of case contemplated by § 1292(b).[33]

---

[31] 28 U.S.C. § 1292(b).

[32] *Kraus v. Bd. of County Rd. Comm'rs*, 364 F.2d 919, 921-22 (6th Cir. 1966) citing *Milbert v. Bison Laboratories*, 260 F.2d 431, 433 (3rd Cir. 1958); *In re: City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002).

[33] *Kraus*, 364 F.2d at 922.

More recently, the Sixth Circuit has reaffirmed its ruling in *Kraus* and held that a trial court may certify a § 1292(b) interlocutory appeal if (1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation.[34]

Defendants have failed to demonstrate that there exists "substantial ground for difference for opinion" concerning the unconstitutionality of the Sovereign Immunity Act. The fact is that the issue has yet to be squarely presented to the Ohio Supreme Court. Nevertheless, the Court has repeatedly invited such a challenge and has clearly articulated its view that the Act violates the constitutional right of Ohio citizens.[35]

Moreover, as explained above, whether the Sovereign Immunity Act is constitutional will not "materially advance the ultimate termination of the litigation."

> When litigation will be conducted in substantially the same manner regardless of the [the court's] decision, the appeal cannot be said to materially advance the ultimate termination of the litigation.[36]

---

[34] *In re: City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002).

[35] *Butler*, 92 Ohio St. 3d at 368-74, 750 N.E.2d at 567-71 (Explaining that Ohio's Sovereign Immunity Act violates Article I, Section 16 of the Ohio Constitution which affords Ohio citizens redress in the courts and Article I, Section 5 of the Ohio Constitution which guarantees Ohio citizens a right to jury trial.); *Garrett*, 68 Ohio St. 3d at 144, 624 N.E.2d at 708 ("The true intent of the amendment to Section 16, Article I was to abolish sovereign immunity in its entirety....Governmental immunity, including municipal immunity, is contrary to the clear meaning and mandate of the Ohio Constitution."); *Marshall*, 92 Ohio St. 3d at 353, 750 N.E.2d at 554 ("We find this troubling in light of the potential for a political subdivision to entirely disregard affirmative duties and yet avoid liability under the cloak of sovereign immunity. However, we are confined to review the law based upon the issues presented in this appeal.").

[36] *In re: City of Memphis*, 293 F.3d 345, 351, *citing White v. Nix*, 43 F.3d 374, 378-79 (8th Cir. 1994).

The civil rights § 1983 claims against the municipalities and their police officers that are the core of this litigation are unaffected by the Sovereign Immunity Act and survive. Further, the Defendant police officers are still liable (even under the Sovereign Immunity Act) for their malicious actions in beating Mr. Owensby, crushing the air out of his lungs, handcuffing him and then leaving him to die in the back of a Golf Manor cruiser.

It should be noted that the Defendants have failed to discuss or even cite the aforementioned Sixth Circuit authority in their haste to delay the trial of this case. Instead, they cited a single Supreme Court decision, *Coopers & LyBrand v. Livesay*, 437 U.S. 463 (1978), for the proposition that this Court should certify "a conflict" to the Sixth Circuit.[37] *Coopers & Lybrand* has nothing to do with the issues presented here. First, *Coopers & Lybrand* involves an interlocutory appeal of the decertification of a class action under § 1291, not § 1292(b). In fact, the Supreme Court expressly noted, "Respondents did not request the District Court to certify its order for interlocutory review under 28 U.S.C. § 1292(b)."[38] Second, *Coopers & Lybrand's* discussion of interlocutory appeals of class certification determinations has since been codified in Rule 23(f) of the Federal Rules of Civil Procedure. And, finally, the "conflict" referred to in *Coopers & Lybrand* was the certiorari standard of a "conflict in the Circuits."[39] Even given Defendants' incorrect citation to *Coopers & Lybrand*, had they read the Supreme Court decision they would have discovered the following language which is fatal to their cause:

---

[37] Doc. 118, Reconsideration Motion, p. 13.

[38] *Coopers & LyBrand*, 437 U.S. at 466.

[39] *Id.,* at 465.

The Interlocutory Appeals Act of 1958, 28 U.S.C. § 1292(b), was enacted to meet the recognized need for prompt review of certain nonfinal orders. However, Congress carefully confined the availability of such review. Nonfinal orders could never be appealed as a matter of right. Moreover, the discretionary power to permit an interlocutory appeal is not, in the first instance vested in the courts of appeals. A party seeking review of an nonfinal order must first obtain the consent of the trial judge. This screening procedure serves the dual purpose of ensuring that such review will be confined to appropriate cases and avoiding time-consuming jurisdictional determinations in the court of appeals. Finally, even if the district judge certifies the order under § 1292(b), the appellant still "has the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment. *Fisons, Ltd. v. United States*, 458 F.2d 1241, 1248 (CA7 1972). The appellate court may deny the appeal for any reason, including docket congestion.[40]

Finally, Defendants ask this Court to drop everything and certify this matter for review by the Sixth Circuit because "28 U.S.C. § 1292(b) only permits the defendants ten days to file its brief with the Sixth Circuit on the conflict issue."[41] This too betrays a fundamental misunderstanding of § 1292(b). The statute requires that Defendants file their appeal "within ten days after the entry of the order." The "order" is the certification by the district court that the decision should be appealed to the Sixth Circuit.[42] The Court has yet to issue such an order. Therefore, the ten-day time period has yet to run.

Thus, such an interlocutory appeal is totally inappropriate as failing to meet any of the requirements of § 1292(b). It is equally clear that this entire motion is nothing more than a

---

[40]*Id.,* at 474-75. Concerning docket congestion, the Sixth Circuit is now recognized as the slowest circuit in the entire country.

[41]Doc. 118, Reconsideration Motion, p. 14.

[42]28 U.S.C. § 1292(b); *Coopers & Lybrand*, 437 U.S. at 474 ("A party seeking review of a nonfinal order must first obtain the consent of the trial judge.").

14

desperate attempt to delay the May 3 trial. Even though § 1292(b) expressly states that such an interlocutory appeal "shall not stay proceedings in the district court," Defendants has betrayed their true intent in their "Request for Stay of the Trial Court's Proceedings Pending Appeal," filed with the Sixth Circuit on April 5, 2004, attached.

## V.  CONCLUSION

For the past three years the Defendants have avoided having to answer for the brutal beating of Roger Owensby and the deliberate indifference to his fatal condition as he lay handcuffed in a police cruiser on November 7, 2000. Trial will now begin in less than a month, on May 3, 2004, and the Defendants are desperate to delay this matter further. Delay first wore the mask of a motion to bifurcate the case into separate trials even though separate trials would be highly inefficient since the same parties would have to testify twice, some of the same issues would have to be litigated twice, and the jury would never have the opportunity to consider all of the players in this homicide at a single time. Doc. 61, Plaintiff's Memo Contra Motion for Separate Trials.

Now the delay takes the form of Defendants' Motion for Reconsideration (Doc. 118). It should be denied because it is devoid of merit. First, the Ohio Supreme Court cases cited by the Defendants *do not* address the constitutionality of the Ohio Sovereign Immunity Act. The fact remains that the Ohio Supreme Court has provided this Court with no less than three separate decisions that clearly articulate the view that the Sovereign Immunity Act unconstitutional.[43]

---

[43] *Butler*, 92 Ohio St. 3d at 368-74, 750 N.E.2d at 567-71 (Explaining that Ohio's Sovereign Immunity Act violates Article I, Section 16 of the Ohio Constitution which affords Ohio citizens redress in the courts and Article I, Section 5 of the Ohio Constitution which guarantees Ohio citizens a right to jury trial.); *Garrett*, 68 Ohio St. 3d at 144, 624 N.E.2d at 708

Second, certification of this issue to the Ohio Supreme Court is inappropriate since the facts do not meet the requirements of Ohio Supreme Court Practice Rule XVIII, in that, the question of the constitutionality of the Sovereign Immunity Act is not determinative of the proceeding and there is ample Ohio Supreme Court case law available to provide this Court with "more than adequate direction." *Kammeyer v. City of Sharonville*, No. 1:01-CV-00649, Order (S.D. Ohio Dec. 16, 2003) (Spiegel, J.).

Finally, a § 1292(b) interlocutory appeal of this matter is also inappropriate because this does not involve a controlling question of law in this § 1983 action; the Defendants have failed to establish that there is a substantial ground for difference of opinion concerning the correctness of the Court's decision—in fact the *Butler*, *Garrett* and *Marshall* Ohio Supreme Court decisions support this Court's ruling; and an immediate appeal of this issue will not materially advance the ultimate termination of the litigation since the § 1983 core claims against all of the defendants remain to be tried and the individual police officers remain liable under the Sovereign Immunity Act for their malicious actions.[44]

Defendants' Motion for Reconsideration of March 25, 2004 Order Overruling Summary Judgment on Sovereign Immunity; Request to Certify Question to Ohio Supreme Court

---

("The true intent of the amendment to Section 16, Article I was to abolish sovereign immunity in its entirety....Governmental immunity, including municipal immunity, is contrary to the clear meaning and mandate of the Ohio Constitution."); *Marshall*, 92 Ohio St. 3d at 353, 750 N.E.2d at 554 ("We find this troubling in light of the potential for a political subdivision to entirely disregard affirmative duties and yet avoid liability under the cloak of sovereign immunity. However, we are confined to review the law based upon the issues presented in this appeal.").

[44]*In re: City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002).

Regarding Revised Code 2744's Constitutionality; Alternative Motion to Certify Conflict to Sixth Circuit Court of Appeals (Doc. 118) should be denied.

Respectfully submitted,

/s/Paul B. Martins
James B. Helmer, Jr.  (0002878)
Paul B.  Martins (0007623
Frederick M. Morgan, Jr.  (0027687)
HELMER, MARTINS & MORGAN CO., LPA
Fourth & Walnut Centre
Suite 1900
105 East Fourth Street
Cincinnati, Ohio 45202-4008
Telephone:     (513) 421-2400
Facsimile:       (513) 421-7902

*Trial Attorneys for the Plaintiff*

## CERTIFICATE OF SERVICE

       I hereby certify that a copy of the foregoing Plaintiff's Memorandum in Opposition to Defendants' Motion for Reconsideration of March 25, 2004 Order Overruling Summary Judgment on Sovereign Immunity; Request to Certify Question to Ohio Supreme Court Regarding Revised Code 2744's Constitutionality; Alternative Motion to Certify Conflict to Sixth Circuit Court of Appeals (Doc. 118), was electronically filed on April 7, 2004. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                     /s/ Paul B. Martins