UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ESTATE OF : <br> ROGER D. OWENSBY JR., et al., : <br>   : Case No. 01-CV-769 <br>   : <br> Plaintiff, : Senior Judge S. Arthur Spiegel <br>   : <br> v. : <br>   : <br> CITY OF CINCINNATI, et. al., : <br>   : <br>   : <br> Defendants. : | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS' LIMINAL MOTION
TO EXCLUDE THE DISCIPLINARY ACTION AND HISTORY
OF CINCINNATI POLICE OFFICERS (Doc. 109)**

---

Although admitting such evidence is relevant and admissible against the City of Cincinnati and its Police Chief Thomas Streicher, Jr.,[1] the City nonetheless has filed a motion in limine to preclude "all evidence and references to disciplinary actions and/or history" of:

1. All Cincinnati police officers <u>prior</u> to November 7, 2000; and

2. Defendant police officers <u>after</u> November 7, 2000.

This Court should not exclude such broad categories of evidence - evidence which the City admits is relevant and admissible against it - before a single witness is called. The evidence could be employed in a variety of proper ways to demonstrate elements Plaintiff needs to establish in his case, to rebut the City's recent side-switching on the cause of death and likely other side-switching, as well as to impeach

---

[1] Doc. 109, City Motion in Limine pp. 5, 7.

the anticipated testimony of City witnesses and other defendants. Such uses of the evidence, as well as others, would be appropriate, would not be "unfair" to any party and would not violate any Rule of Evidence.

In this case, unlike others the City likes to parade before this Court, there was an enormous record made by the City itself before this lawsuit progressed very far. The City investigated, held numerous press conferences, pursued administrative disciplinary proceedings against several of it employees, and brought and participated in criminal trials concerning the facts and actors in this case. Numerous witness transcripts, witness declarations, affidavits and testimony exist from those proceedings. The City is not entitled to now push the "delete" key and expect this case to be tried as though such evidence does not exist.

At bottom, the City's Motion in Limine is little more than a re-argument of its effort to bifurcate (or trifurcate) this case and to require Plaintiff to undergo multiple trials. It demonstrates a continued unwillingness to recognize that cases involving multiple defendants and multiple legal theories are tried every day in this country. It is the job of counsel to assist the Court in presenting cases to juries and, with appropriate limiting instructions if necessary, to help the jury understand the impact of any particular piece of evidence as to a particular issue or party. Excluding broad categories of admittedly relevant evidence or insisting that cases be tried in a factual vacuum is improper.

The Motion in Limine should be denied.

I.   **Argument**

On November 7, 2000, several Cincinnati police officers crushed to death an

unarmed Cincinnati citizen, suspected of jaywalking, when he attempted to run from the officers. The civil rights case brought by this citizen's father on behalf of the estate is scheduled for jury trial on May 3, 2004.

The City and its Police Department have what might charitably be called a sorry history of abusing its citizens, particularly African-Americans. Such history has been documented by the United States Commission on Civil Rights, the United States Department of Justice, the City of Cincinnati's Office of Municipal Investigation, the Cincinnati Health Department and by various public (and sometimes sworn) statements of a string of Cincinnati government figures. The City acknowledges that such evidence could be admissible to demonstrate policies and practices which create constitutional violations.[2] It will also show inadequate training, another basis for a §1983 violation.[3]

In addition, several of the Defendant officers in this case had had prior run-ins with the public which eerily mirror the one which culminated in Roger Owensby, Jr.'s death on November 7, 2000. The City was on notice of the propensity of certain officers to abuse their police powers, to misidentify African-American suspects, to physically assault citizens, including placing knees on their backs, and even to plant drugs on suspects.

Next, with the public outcry over the facts of this case, the City conducted a lengthy investigation which incompassed taking statements from numerous witnesses, including the defendant officers in this case. The City publicized the results of its

---

[2] Doc. 109, City's Motion in Limine at 5, 7.

[3] *City of Canton v. Harris*, 489 U.S. 378 (1989).

investigation, including the conclusions of a forensic pathologist hired by the City which support the findings reached by the Hamilton County Coroner.[4] The City initiated and successfully pursued disciplinary proceedings against several officers and prosecuted or assisted in prosecuting criminal trials against two of the defendant officers. Again, sworn testimony was taken from several witnesses who will also likely be called to testify before this Court.

    The Court can easily envision a variety of admissible and proper ways in which the information set out above could be used in this case. We can not predict today exactly how such evidence will be used. We will make such decisions after we hear the City's voir dire and opening statement and as the witnesses in this case testify.

    We are quite certain, however, that evidence of numerous events both before November 7, 2000 and after November 7, 2000 will be needed and will be admissible in this case. For example, should the City again attempt to contradict itself as it already has by its side-switching on the cause of death in this case, or should any of the officers testify differently from their previous statements or sworn testimony, then evidence beyond November 7, 2000 will undoubtedly be used. At this time, we can not predict either occurrence but, based on what we have seen to date, we think such conduct is entirely likely by both the City and the police officer defendants.

    Accordingly this Court should follow the instructions of the United States Court of Appeals for the Sixth Circuit:

---

[4] The City has also moved in limine to preclude the testimony of Cyril Wecht, M.D., J.D. (doc. 96) to which we responded on March 19, 2004. (doc. 111).

> Orders <u>in limine</u> which exclude broad categories of evidence should rarely be employed. A better practice is to deal with the questions of admissibility of evidence as they arise.

*Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712, 1975 U.S. App. LEXIS 13856 *11 (6th Cir. 1975).

While the City cites Rules 404(b) and 407 of the Federal Rules of Evidence as support for its Motion In Limine, neither Rule will prevent Plaintiff's use of evidence prior to or after November 7, 2000.

As to Rule 404, "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character."[5] The disciplinary actions taken against the officers prior to November 7, 2000 provide evidence of intent and absence of mistake in the alleged use of excessive force by the Defendant officers.[6] This evidence may also be used to impeach an officer's testimony or call into question his credibility.[7] Furthermore, the evidence gathered in these proceedings and the investigations leading up to them provide reliable insight into the City's policies and customs in force at the time of Mr.

---

[5] *Huddleston v. United States*, 485 U.S. 681, 686 (1988). With respect to Rule 404(b) alone, prior to Rule 403 balancing, *Huddleston* states that evidence of other bad acts "should be admitted if there is sufficient evidence to support a finding by a jury that a defendant committed the similar act." *Id.* 685.

[6] *United States v. Mohr*, 318 F.3d 613 (4th Cir. 2003); *Trahan v. City of Oakland*, 1992 U.S. App. Lexis 8566, 7 (9th Cir. 1992) (Exhibit A).

[7] *Kelly v. Ward*, 1994 U.S. Dist. Lexis 21511 (S.D. Ohio 1994) (Exhibit B).

Owensby's death.[8]

The probative value of the evidence in these categories far outweighs any prejudice it may cause, as it provides positive proof of the City's policies, customs, and failure to supervise and train the Defendant officers, which are elements of Plaintiff's § 1983 claims against the City.

As to Rule 407 and the City's claim that use by Plaintiff of evidence from the defendant officers' disciplinary proceedings is improper use of a subsequent remedial measure, the City needs to read the entire rule. Rule 407 only applies to bar evidence of remedial measures used to prove negligence - not an issue in this case - or culpable conduct. The Sixth Circuit has looked at the culpable conduct issue and allowed such evidence.[9] Moreover, we may well need to introduce the evidence of the disciplinary proceedings for numerous reasons other than to show culpable conduct. Examples include impeachment of testimony of officers or other City officials and affirmative use

---

[8] *Foley v. City of Lowell*, 948 F.2d 10, 14 (1st Cir. 1991), *citing Bordanero v. McLeod,* 871 F.2d 1151, 1167 (1st Cir. 1989) ("Post-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right").

[9] The disciplinary findings resulting from the Owensby homicide and the findings against the defendant officers in this case that they used excessive force, denied Mr. Owensby medical care, and/or otherwise violated Cincinnati Police Division policies and procedures are clearly admissible. The officers are "precluded from relitigating [those issues] in this action. *Green v. Distelhorst,* 1997 U.S. App. LEXIS 15461 at *10-11 (6th Cir. 1991) (attached as Exhibit C); accord *Czajkowski v. City of Chicago,* 810 F Supp. 1428, 1434 (N.D. III. 1993) (officer estopped from contesting facts of assault on citizen where convicted of misdemeanor). While *Greene* and *Czajkowski* address the preclusive effect of misdemeanor convictions, there is no basis for defendants to dispute that findings in disciplinary proceedings collaterally estop the losing party in subsequent civil litigation. E.G., Zois v. Cooper, 268 B.R. 890, 894 (S.D.N.Y. 2001): *Wilson v. Chicago,* 900 F. Supp. 1015, 1027 (N.D. III. 1995) (police officers collaterally estopped from denying use of excessive force where disciplinary proceedings resulted in findings of excessive force).

of judicial estoppel or collateral estoppel.[10]

## II. Conclusion

The City's Motion to eliminate from this case all evidence of defendants' acting prior to and after November 7, 2000 is ill-conceived and contrary to Sixth Circuit authority. The City's awareness of problems with its Police Department, which culminated in Mr. Owensby's homicide, and its indifference to the dangers to Cincinnati citizens posed by lawless action and lack of training of its officers can only be demonstrated by evidence occurring outside of November 7, 2000. While such a picture will be unflattering, as the truth often is, it will not be unfair.

The City's Motion should be denied.

Respectfully submitted,

/s/ James B. Helmer, Jr.
James B. Helmer, Jr.  (0002878)
Paul B. Martins (0007623
Frederick M. Morgan, Jr.  (0027687)
HELMER, MARTINS & MORGAN CO., LPA
Fourth & Walnut Centre
Suite 1900
105 East Fourth Street
Cincinnati, Ohio 45202-4008
Telephone:  (513) 421-2400
Facsimile:   (513) 421-7902

Trial Attorney for Plaintiff

---

[10] *See e.g.* Doc. 108, Plaintiff's Reply Memo in Support of Partial Summary Judgment, pp. 18-21.

CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing Plaintiff's Memorandum in Opposition to Defendants' Liminal Motion to Exclude the Disciplinary Action and History of Cincinnati Police Officers (Doc. 109) was electronically filed on April 9, 2004. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                               /s/ James B. Helmer, Jr.