appears to be about the same as the objective test articulated in Graham, and malicious motive or intent to inflict unreasonable force do not seem to be material. 1 Harper & James, supra, § 3.17; Prosser and Keeton, supra, 155; *Restatement (Second) of Torts § 132.*

California law appears to follow the general common law pattern, where "intent of the wrongdoer to injure is immaterial." *Lopez v. Surchia, 246 P.2d 111 (Cal. App. 1952).* The majority reads Andrews as effecting a change in this rule, apparently because of the comment in Andrews that the officer's "intent was a central issue." *Andrews, 252 Cal. Rptr. at 720.* But this comment means, when read in context, only what the Supreme Court's footnote in Graham meant: that intent may bear on credibility. The police officer and the arrestee told different stories in Andrews, and the intent remark is in the context of a paragraph stating that

> evidence [*18] that Ramirez had a practice of bullying and assaulting other persons under his custody without provocation or apparent reason would tend to show that the injuries suffered by the plaintiff were not the product of efforts to control him, but were inflicted intentionally and with malice. The evidence also tended to disprove Ramirez' testimony that the jacket falling to the ground and plaintiff's hitting his head against the concrete floor were accidental occurrences.

*Id. at 720-721* (citation omitted). This means that intent was central because it would help the jury to decide whether the officer or the arrestee was lying about the objective reasonableness of the force used.

C

Under this analysis, the excessiveness or not of the force used in an arrest, in both the section 1983 claim and the battery claim, depends on the objective circumstances rather than the motivations of the arresting officer. But evidence of the officer's motivations may sometimes help to resolve questions of what the objective circumstances really were. The key to this subtle problem is recognition that, at trial, the jury does not begin with knowledge of how much force was used [*19] and what the arrestee was doing, so that all it has to do is decide whether that amount of force was objectively reasonable. The jury begins, in many cases, with wildly disparate accounts of the arrest, and must decide how much force was used, and what was happening that might have occasioned its use.

There are two ways that evidence of animus or other conduct may bear on credibility of the police officer's account. First, a desire to hurt the person arrested would make it more likely that the police officer used excessive force than would a desire only to subdue the individual. We reasonably suppose that a person more likely did what he wanted to do, than that he did did something contrary to his own desires, so knowledge of motive is circumstantial evidence of conduct. Second, the more times a person claims to have participated in an unlikely event, whether that event is having a tossed coin come down heads twelve times in a row or having suspects shot while trying to escape, the less likely it is that any one claim is true. The statement, "I shot four holes in one in one summer," is far more likely to be a lie, than the statement, "I shot a single hole in one in 20 years of [*20] golf." The same logic may apply to the statement, "the suspect fell and hit his head on the floor," if the reported frequency of this event for the individual officer is many times higher than the norm. Because of the risk of unfair prejudice, undue consumption of time and other problems, evidence of other wrongful acts faces numerous barriers in the evidence rules. See *Fed. R. Evid. 403, 404, 608(b), 611(a).* The trial judge, in my view, correctly applied one of those barriers, Rule 403, to keep it out in this case. The reason that the trial judge was right is not that the evidence was immaterial, but that its slight probative value in this particular case was outweighed, in his reasonable judgment, by a high risk of confusion and unfair prejudice.

In *United States v. Bailleaux, 685 F.2d 1105, 1110 (1982),* the fourth prerequisite for admission of evidence of prior bad acts is that "the prior criminal conduct must be introduced to prove an element of the charged offense that is a material issue in the case." If that prerequisite is satisfied, then the trial judge is to balance probative value against the risk of unfair prejudice under *Federal Rule of Evidence* [*21] *403.* Prejudice -- that is, a tendency to affect the outcome -- is "unfair" to the extent that it "provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *Id. at 1111.*

The majority reads Bailleaux as making other acts evidence of Cervantes' motive and intent necessarily inadmissible in all circumstances on the federal claim, so the trial court would have no discretion to admit it. But the footnote in Graham and the analysis in Andrews both suggest, for the reasons developed above, that intent and motivation do have probative value for determining whether reasonable force was used, even though the reasonableness is itself objective and not dependent on motive or intent. There may be section 1983 cases where motive and intent evidence should be admitted.

In an excessive force case, the Rule 403 balancing inquiry presents the district judge with a complex task. It is not possible to list in advance all the factors which the

trial judge may consider regarding evidence of animus or other bad acts on the [*22] part of the police officer. Among the factors to consider that may militate in favor of admitting the evidence are whether it might significantly affect the probability of truth or falsehood of the officer's testimony on such questions as how much force was used, whether the arrested person was resisting or attempting to flee, how much danger the person to be arrested presented, and how the arrested person was hurt. Among the factors that may militate against admission are the time it may take for the presentation, cross examination, and rebuttal of the other acts evidence, the risk that the jury will become confused about which police brutality case it is supposed to decide, and the risk that the jury will render a verdict for a plaintiff not because unreasonable force was used to arrest that plaintiff, but rather because it feels that the officer should be punished for his conduct with respect to other people at other times.

A rule generally letting in the other acts evidence on a state law tort claim joined to a section 1983 claim cannot be reconciled with the Rule 403 balancing test required under Bailleaux, or the broad discretion we are required to leave to the district [*23] judge trying the case. Congress requires an individualized case-by-case balancing by the trial court in applying Rule 403. We cannot put our thumb on the scales for one category of cases and say the balancing must generally come out one way, without depriving the trial court of the authority delegated to it by the Rule 403. Nor should we try. The trial judge's estimate of whether the evidence is worth the time might be affected by highly individualized aspects of the case. For example, he might decide that more consumption of time is appropriate where the arrested person was seriously injured or killed than where the person had less severe injuries, and might decide that the officer's credibility was more seriously at issue in one case than another depending on how the direct and cross examinations of the parties and witnesses to the event had gone.

Suppose the officer and arrestee testify similarly, so there is no substantial credibility issue, and the arrestee suffered no substantial injury. The trial judge might reasonably exclude even highly credible evidence of racial bias and sadistic brutality against other arrestees, because its only impact would be unfairly prejudicial, [*24] i.e., to persuade the jury that the officer should be punished for other conduct at other times against other people or to support an inference of conduct from his general character rather than from the evidence of what occurred in the arrest at issue.

Alternatively, suppose the evidence of what happened was sharply conflicting, the injuries were severe or fatal, the officer had an unusually high frequency of suspects of a different race shot while trying to escape or arrestees who fell on their heads while resisting arrest, and the pattern was similar to the arrestee's account of what happened. Assume also that the officer was a clean cut, attractive well spoken individual, while the plaintiff was physically unattractive and expressed himself poorly, so that he might be less persuasive even though truthful. Here, the evidence of animus or other wrongful acts might be critically valuable to the jury, for the entirely proper purpose of assisting it in deciding whether the officer was lying about what had really happened with this arrestee. The majority's analysis would require the trial judge to exclude the evidence about other arrests, if the plaintiff had pled only the section [*25] 1983 claim, or the state law claims had been dismissed. I think that in these circumstances, the trial judge should have discretion to admit the evidence, with an instruction explaining to the jury that they may use it for whatever bearing it may have on the officer's credibility.

Our opinion, I fear, may be read to suggest that the balance generally must be tipped toward admitting the evidence, if the plaintiff pleads a state law battery claim along with the section 1983 claim. This would be unfair to police officers, and dangerous to the public. "It is not possible for the police to enforce the law and preserve the peace without incurring some hostility and resentment." Task Force Report: The Police, The President's Commission on Law and Enforcement and the Administration of Justice 178 (1967). Most people probably resent being arrested, understandably finding it an affront to their dignity. Many people arrested are likely to be drunk, drugged, violent or in some other way antisocial. If they were not perceived as troublesome, most of them would not have been arrested, and if the police are competent, the perception is likely to be correct in most instances. Police officers [*26] may reasonably make a show of ability and willingness to use great force, while actually inflicting much less force, in order to deter resistance and flight, and to speed the process of arrest and removal of the arrestee from the scene before others might interfere. A police officer might want the arrestee to think, "this cop is crazy -- he'll beat me up or kill me if I don't do what he says," when actually the officer has no such willingness or intention, in order best to assure public safety and avoid the need actually to inflict much force. Because of these unpleasant aspects of legitimate police coercion, many witnesses will doubtless be available to testify to what they regard as needlessly violent arrests and inappropriate behavior by almost any police officer.

Public safety may suffer if police officers must fear that every time they arrest someone, particularly with the accompaniment of some force or intentional use of fear, they are creating a witness whom they will ultimately face in someone else's claim for compensatory and punitive damages. Violent coercion by the government

does not make friends of its objects, but that is sometimes the task which police officers [*27] are assigned to perform.

II

In this case, Trahan claimed what appeared to be a non-severe back strain, and there was some evidence of misconduct by the police officer on other occasions. The plaintiff's witness list, submitted shortly before trial was to commence, identified two people who would have offered testimony on this issue. Leroy Hall and Charles Griffin were both listed for "reputation evidence concerning Cervantes' character for lack of peacefulness." ER 43-44. At the final pretrial conference, the judge properly informed the plaintiff that this could not be put on unless Cervantes opened the door, left the matter open for an offer of proof as the evidence developed, and discussed various evidentiary possibilities. The trial was then continued because of an unrelated hospitalization of Officer Cervantes.

Shortly before the new trial date, the judge issued a written order deferring his ruling on the defense motion to exclude this evidence and requiring additional briefing. ER 53. Since he deferred ruling, error cannot be predicated on the general discussion which occurred in the June 2, 1989 hearing.

Plaintiff then submitted materials on six other witnesses to support [*28] admissibility of evidence of "other acts of force and violence of Cervantes." ER 54. The proffer was by its terms of evidence of other acts of violence, not of Cervantes' reputation for truthfulness. Of the six, Khayami had no personal knowledge; Agnew said Cervantes was one of two officers who grabbed her around the neck seven years before; Murcko had no personal knowledge; Monroe said Cervantes squeezed his throat for no reason five years before; Torres said Cervantes had thrown her violently against a car, called her a bitch, and put his hands between her legs in her private parts during a pat down search; and Ducket said he was "busted up side the head" by Cervantes. None of these alleged incidents were closely similar to Trahan's claim, that Cervantes jerked her arm up high behind her back, causing back injury.

At the final pretrial conference before the second trial setting, the judge laid out his view that under Graham, intent was not an element of the section 1983 claim, and that therefore the six witnesses' testimony lacked relevance. The plaintiff's lawyer agreed with the trial judge's ruling insofar as it went to liability, but argued that intent would be relevant [*29] to damages:

> Mr. Murcko: Your honor, it does seem that that is the law concerning unreasonable use of force.
>
> That is probably true on the -- on the question of liability. However, when it comes to damages --
>
> Wouldn't it then be allowable to have state of mind and intent --
>
> Of the officer come into evidence?

ER 96. The judge agreed with the plaintiff's attorney, and ruled that, assuming it was otherwise appropriate, the evidence of other wrongful acts would be admitted for use by the jury in the punitive damages phase of the trial, if liability were found. ER 98-99. Plaintiff had not mentioned, as yet, the reputation for truthfulness argument, or the state tort claim argument. At this point, the plaintiff had all she sought, so up to this point, there is no ruling challengeable on appeal.

During the trial, plaintiff's attorney requested reconsideration on the theory that the prior wrongful acts evidence should come in on the state law battery claim under Andrews. The judge questioned the Andrews argument, analyzing the case as I have above, but determined that even if the evidence was relevant on the state law claim, it was "of marginal relevance as compared [*30] to its prejudice, so, on that ground, I would rule it out." ER 108. Nothing was said at this point about reputation for truthfulness, just the distinction between the state law claim and the federal law claim. The trial judge's ruling is plainly well within his discretion, since the probative value on the state law claim was marginal at best, and the jury would then have faced a confusing task of considering the wrongful acts evidence to decide if the privilege to batter was exceeded by objectively unreasonable force on one claim, but not the other, despite an indistinguishable difference between the test for unreasonable force.

Later, after all the testimony had come in, plaintiff sought to put on a witness to testify to "reputation for truthfulness and honesty" and also "reputation for peacefulness in the community." ER 116. That was the entire proffer. "Reputation for peacefulness in the community" amounts to hearsay regarding prior wrongful acts, and the judge ruled that for the entire proffer, under Rule 403, the risk of unfair prejudice exceeded the probative value. ER 117. Since the proffer would mix possibly admissible reputation evidence of slight value with inadmissible [*31] evidence, this ruling too was plainly an appropriate exercise of Rule 403 discretion.

At the very end of the trial, just before the jury was to be instructed, the plaintiff tried again. The plaintiff again wanted to put on a witness for the combined purposes of "reputation of Officer Cervantes for violence, and for honesty," "those two character traits." ER 117a-118a. Plaintiff correctly argued that once a

witness takes the stand, he puts his credibility at issue, so under *Federal Rule of Evidence 608(a)(1)*, the adverse party may introduce evidence of his reputation for the character trait of untruthfulness. The trial judge had some question about admissibility of such testimony under Rule 608, but did not rule on the basis of Rule 608. Instead, the judge excluded the evidence under Rule 403:

> it may very well be that 608 lets you put it on -- I think it also has to be put in the context of the case itself, and 608 has to be viewed with reference to 403. . . .
>
> In every instance the court is faced with the situation of trying to do the fair thing, so the jury is not confused or misled when you put on evidence. It doesn't produce that -- in this instance, to put on a person [*32] whose source of information would be prior arrest, and would be necessarily on the basis of persons who dealt with Officer Cervantes in terms of carrying out of his duties, even though it's characterized as reputation for truthfulness, it necessarily carries with it the prospect of misleading the jury. . . . And if it's at all with reference to confusing the jury with traits of conduct and traits of violence, as I said, we're not going to put that in.
>
> Even if it is admissible . . . your proffer in terms of the witness and the background that the witness has, that the danger of unfair prejudice or confusion of the jury is such that, under 403, I won't permit it.
>
> . . . If 608 allowed you to do that, the judge has to look in the context of this. It leads me to look at this and say: 403 is clearly meant to put us in a position where you don't confuse and mislead jurors.

TR 1158-1160.

This is a well reasoned, entirely appropriate ruling on the basis of Rule 403. The proffer would mix admissible with inadmissible evidence, and was of a witness who obviously had little foundation for the admissible evidence, so it would have little probative value, and the judge reasonably believed [*33] that the plaintiff's purpose in putting on the witness was to confuse and mislead the jurors into finding for Trahan because they believed that Cervantes had conducted himself badly in another arrest. The plaintiff, by the terms of his proffer, admitted that the witness would testify to character for violence, not with any purpose of showing that Cervantes was lying about what had happened with Trahan, but exactly for the purpose forbidden by Rule 608(b), to show that Cervantes was a violent man so he should be found liable, either because of a propensity for violence making it more likely that he was violent this time, or to punish him for other times. The judge thought the jury would likely be confused and misled, and that the evidence would have little legitimate probative value, so he exercised his discretion, carefully tailored to the case before him, to exclude it.

In assessing the Rule 403 balance, the trial judge properly makes a "concession to the shortness of life," I J. Wigmore, Evidence in Trials at Common Law 685 (1983) (quoting *Reeve v. Dennett, 11 N.E. 938, 944 (Mass. 1887)* (Holmes, J.)), and need not allow a parade of witnesses who can contribute [*34] only a little to the probability of truth of a relevant inference, greatly increase the probability of a decision on improper grounds, and take considerable time. That is just the sort of decision trial judges are supposed to make, and appellate courts should leave well enough alone.