1994 U.S. Dist. LEXIS 21511, *

## DONALD KELLY, Plaintiff, vs. ROBERT L. WARD, et al., Defendants.

### Case No. C-3-93-110

### UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

### 1994 U.S. Dist. LEXIS 21511

### July 6, 1994, Decided
### July 6, 1994, Filed

**DISPOSITION:** [*1] Motions of Defendants City of Dayton and Robert L. Ward for Separate Trials (Docs. # # 22 and 28) Sustained.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** For DONALD R KELLY, plaintiff: Irving Isaac Saul, Dayton, OH.

For DONALD R KELLY, plaintiff: Aubrey Melvin Kemmer, Troy, OH.

For DONALD R KELLY, plaintiff: Edmund John Wist, Huffman, Landis, Weaks & Wist Co LPA, Tipp City, OH.

For ROBERT L WARD, defendant: Neil Frank Freund, Freund Freeze & Arnold, Dayton, OH.

For DAYTON CITY OF, defendant: Patrick Joseph Bonfield, John J Danish, City of Dayton Law Department, Dayton, OH.

For COMMUNITY MUTUAL INSURANCE COMPANY, defendant: Charles Theodore Lester, Jr., Fort Thomas, KY.

For COMMUNITY MUTUAL INSURANCE COMPANY, defendant: Suzanne Peters, Kreiner & Peters Co, Cleveland, OH.

For COMMUNITY MUTUAL INSURANCE COMPANY, counter-claimant: Charles Theodore Lester, Jr., Fort Thomas, KY.

For COMMUNITY MUTUAL INSURANCE COMPANY, cross-claimant: Charles Theodore Lester, Jr., Fort Thomas, KY.

For DONALD R KELLY, counter-defendant: Irving Isaac Saul, Dayton, OH.

For DONALD R KELLY, counter-defendant: Aubrey Melvin Kemmer, Troy, OH.

For DONALD R KELLY, counter-defendant: Edmund John Wist, [*2] Huffman, Landis, Weaks & Wist Co LPA, Tipp City, OH.

For ROBERT L WARD, cross-defendant: Neil Frank Freund, Freund Freeze & Arnold, Dayton, OH.

**JUDGES:** WALTER HERBERT RICE, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** WALTER HERBERT RICE

**OPINION:**

DECISION AND ENTRY SUSTAINING THE MOTIONS OF DEFENDANTS THE CITY OF DAYTON AND ROBERT L. WARD FOR SEPARATE TRIALS (DOCS. # # 22 AND 28); PRELIMINARY RULING ON THE GENERAL ADMISSIBILITY OF CERTAIN EVIDENCE

This is an unusual and difficult case. In the early morning hours of March 16, 1992, Defendant Robert L. Ward, a police officer

**EXHIBIT B**

1994 U.S. Dist. LEXIS 21511, *

employed by the Defendant City of Dayton, shot Plaintiff Donald Kelly. There were no bystanding witnesses, and Plaintiff Kelly, as a result of his injuries, is unable to recollect the events that led to the shooting. As a result, the sole witness to the encounter is Defendant Ward.

Plaintiff Kelly filed this lawsuit seeking compensation for the alleged use of excessive force against him on March 16, 1992. The Plaintiff has asserted two causes of action against Defendant Ward, one under 42 U.S.C. § 1983 and one under Ohio law (an assault and battery claim); a cause of action against Defendant City under [*3] § 1983; and a cause of action against Defendant Community Mutual Insurance Company to require that Defendant to assert whatever claim for subrogation or reimbursement that it may have with regard to payments made for the Plaintiff's medical treatment.

This matter is currently before the Court on the respective motions of the Defendants, the City of Dayton and Robert L. Ward, for separate trials. Docs. # # 22 and 28. Specifically, the Defendants request that the claim against the City of Dayton be tried separately from the claims against Mr. Ward. Rule 42(b) of the Federal Rules of Civil Procedure provides, in part, that, "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim . . . ."

It is true, and Mr. Kelly does not dispute the fact, that, in order to recover against the City, Mr. Kelly will first have to prove that the actions taken by Mr. Ward against him amounted to a constitutional tort. n1 The crucial arguments on the bifurcation issue in this matter revolve around evidence of Mr. Ward's history of psychological and disciplinary problems and the City's actions [*4] with respect to that history. There are arguments as to the admissibility of any of this evidence against Mr. Ward, and, further, questions as to the prejudicial and/or cumulative nature of this evidence should it be deemed admissible.

n1 State municipal immunity law -- O.R.C. 2744(2) -- immunizes the City from respondeat superior liability on the Plaintiff's state law claim. At any rate, no such judgment is sought by the Plaintiff against the City in his state law claim.

Specifically, the Defendants allege that evidence of Mr. Ward's psychological and disciplinary history and the City's manner of dealing with his problems would be inadmissible in an action seeking solely to determine whether Mr. Ward acted unconstitutionally on the morning of March 16. The Defendants argue that such evidence would be prejudicial on the threshold question of whether Mr. Kelly was the victim of a constitutional tort.

The Plaintiff responds that the evidence of Mr. Ward's psychological and disciplinary history would be relevant [*5] and admissible in an action seeking solely to determine the constitutionality of Mr. Ward's actions during the course of his encounter with Mr. Kelly. That being the case, argues the Plaintiff, no unfair prejudice would be suffered by Mr. Ward, from the admission of this evidence in a non-bifurcated trial, and judicial economy and convenience would be well served by avoiding the necessity of bringing out the same facts in two separate trials.

This Court has always been reticent to make evidentiary rulings prior to trial; it is almost impossible to make an evidentiary ruling without knowing the specific context in which the evidence will be offered at the trial. In this case, however, the bifurcation question is intertwined with an evidentiary question, and, of course, ruling on the bifurcation question cannot wait until after trial has commenced. Therefore, the Court proceeds to review the proffered evidence and its context to the best of the Court's current understanding, following which the Court will make a preliminary ruling as to the admissibility of evidence of Mr. Ward's psychological and disciplinary history against him at trial. Having made this preliminary ruling, the Court [*6] will then proceed to rule

upon the motions for separate trials.

As the Court understands the proffered evidence, n2 in 1989, over two years before this incident, Defendant Ward turned in his firearm and explained to his superiors that he felt psychologically incapable of performing his duties as a field officer. Apparently, Mr. Ward's concerns were validated by a professional psychological evaluation, and he was found to be medically unfit to perform his duties. Mr. Ward was placed on a restricted duty assignment that kept him out of field work for over a year. At the close of that assignment, the Chief of Police informed Mr. Ward that, if he continued to be unable to perform the duties of a field officer, he would be placed on sick leave and, ultimately, terminated. The police chief did give Mr. Ward the option of obtaining a letter from a psychiatrist to show that he was recovered from his disability. Mr. Ward then procured a psychological evaluation that indicated that he was fit to return to field work. He returned to field work in an unidentified month in 1990. The incident in question occurred on March 16, 1992.

n2 All of the following facts are taken from the memoranda of the parties and the deposition of Mr. Ward.

[*7]

Additionally, it appears that Mr. Ward has some history of having been disciplined on multiple occasions by the police department. He has been suspended more than twice, perhaps as many as six times. He was once fired, but was reinstated. However, to his knowledge, he was never accused of using excessive force prior to the incident with Mr. Kelly.

Arguing for bifurcation, the Defendants assert that this information might be admissible against the City for purposes of the "official policy" claim under § 1983, but that it would not be admissible against Mr. Ward for the purpose of determining whether he acted in an objectively reasonable manner during the encounter of March 16, i.e., whether he inflicted a constitutional tort on the person of the Plaintiff. Mr. Ward specifically cites Rules 404(b) and 608(b) of the Federal Rules of Evidence in support of his position that this evidence would not be admissible against him in a bifurcated proceeding to determine whether a constitutional tort had been inflicted. Rule 404(b) prohibits the introduction of specific instances of conduct of a person to prove that person's character "in order to show action in conformity therewith." Rule 608(b) [*8] prohibits the introduction of extrinsic evidence of specific instances of conduct of a witness, other than conviction of a crime, in order to attack that witness' "credibility." n3 Rule 608(b) does allow a cross-examiner, "in the discretion of the court," to inquire into such specific instances of conduct where they are probative of truthfulness or untruthfulness. When such cross examination is allowed, the cross-examiner must take the answer of the witness, and may not seek to use extrinsic evidence to impeach that answer.

n3 As will be explained below, it is the opinion of the Court that the term "credibility" as used in Rule 608(b) refers to a witness' general credibility or character for truthfulness, as opposed to the witness' credibility upon a specific issue or incident.

Mr. Kelly responds that the evidence would not be offered to show Mr. Ward's character for purposes of proving action in conformity therewith on March 16, which Rule 404(b) would prohibit, nor would it be offered to attack Mr. Ward's character [*9] for truthfulness or general veracity. Rather, Mr. Kelly states that "such evidence would be offered for the sole purpose of demonstrating the potential bias and mental capacity of the only factual witness[.]" Doc. # 32 at 6.

Although the Court finds Mr. Kelly's mental capacity argument to be unavailing, the bias argument is well taken. As it appears to the Court, the evidence does not tend to show that Mr. Ward is incapable of accurately recalling the events of March 16; rather, it may tend to show the existence of an additional incentive

not to relate those events fully and accurately if, by doing so, he would inculpate himself. n4 Rule 601 of the Federal Rules of Evidence provides the general rule that "every person is competent to be a witness[.]" There does not appear to be any evidence that Mr. Ward was suffering from a psychological disability at the time of the events in this case, nor that he suffers from some such disability at this time. There is no evidence of any present psychological impairment; nor is there any evidence of the nature of the prior psychological problem and whether that problem would have any impact on Mr. Ward's ability to recollect and to [*10] relate past events. To the extent that evidence of a psychological problem that occurred more than a year prior to the incident at issue herein is intended to show that the witness would currently suffer from an inability to recall the facts of the case, that evidence will not be admissible for that purpose, absent some showing by the Plaintiff that the nature of the former impairment is such that a conclusion that Mr. Ward is currently incapacitated would be warranted. The argument that the evidence may be used to impeach the witness because it goes to bias or interest presents a different question.

n4 The references by the Plaintiff to Mr. Kelly's mental competence and "the 'filters' through which [his] testimony has passed" (Doc. # 32 at 7), may be characterized as an attempt to set forth the bias argument in a genteel manner, that is, without directly accusing Mr. Ward of being deliberately untruthful. Such a reading of the argument simply reinforces this Court's understanding that, at base, an argument as to bias is the real issue in this matter.

[*11]

The Defendants are absolutely correct in citing Rule 404(b) for the proposition that this evidence is not admissible in order to prove that Mr. Ward acted in a certain manner on March 16, 1992. However, because the evidence would be offered not to prove that Mr. Ward took any particular action, but rather to impeach his testimony, Rule 404(b) is not the appropriate framework within which to consider the admissibility of this evidence. The argument with respect to Rule 608(b) is closer to the point.

Rule 608 is entitled "Evidence of Character and Conduct of Witness." It first paragraph, Rule 608(a), is entitled "Opinion and reputation evidence of character." It outlines the manner in which a witness' "character for truthfulness or untruthfulness" may be demonstrated by opinion or reputation. Rule 608(b), is entitled "Specific instances of conduct." As mentioned above, it sets forth the rule that, in attacking or supporting the "credibility" of a witness, specific instances of conduct may not be proved by extrinsic evidence.

It is also true, however, that, although no such language is found in the Rules of Evidence, a party is permitted to prove by extrinsic evidence the bias [*12] or interest of a witness on a specific point. See generally 3 Weinstein's Evidence P 607[03]. Therefore, the term "credibility," as used in Rule 608(b), is not intended to refer to all manner or means of attacking the credibility of a witness, but, rather, specifically to attempts to impeach the witness through an attack upon his or her general character or general tendency to be untruthful. Evidence of bias or interest does not go to such general character assassination. It is specifically geared to the relationship between the witness and specific issues or incidents involved in the specific litigation on trial.

In explaining this distinction, Professor Wigmore, in his treatise, quotes at length for the reader the opinion in McHugh v. State, 31 Ala. 317, 320 (1858), which states:

> In considering the various modes by which the credit of a witness may be assailed, Courts must observe the distinction between an attack upon his general credit, and an attack upon his credit in the particular case. Particular facts cannot be given in evidence to impeach his general [i.e., moral