UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| The Estate of Roger D. Owensby Jr., | : | Case No. 01-CV-769 |
| Plaintiff | : | (Judge Speigel) |
| v. | : | |
| City of Cincinnati, et al., | : | |
| Defendant | : | |

DEFENDANTS CATON, HODGE, JORG, SELLERS AND SPELLEN'S
SURREPLY TO PLAINTIFF'S REPLY MEMORANDUM
IN SUPPORT OF PARTIAL SUMMARY JUDGMENT

Now come the Defendants Patrick Caton, Jason Hodge, Robert Jorg, Darren Sellers and Victor Spellen, by and through counsel, pursuant to this Court's order dated April 6, 2004 submit this surreply. Defendants respectfully request this Court to deny Plaintiff's Motion for Partial Summary Judgment.

Respectfully submitted,

/s/ Donald E. Hardin
Donald E. Hardin         (0022095)
HARDIN, LEFTON, LAZARUS & MARKS
915 Cincinnati Club Building
30 Garfield Place
Cincinnati, Ohio 45202-4322
Telephone:    (513) 721-7300
Facsimile:    (513) 721-7008

Trial Attorney for Defendants Patrick Caton, Robert Blaine Jorg, Jason Hodge, Darren Sellers and Victor Spellen in their individual capacities. Trial Attorney for Patrick Caton, Robert Blaine Jorg and Victor Spellen in their official capacities.

I.  **INTRODUCTION**

On February 2, 2004, Plaintiff filed a motion for partial summary judgment against Defendants Caton, Jorg, Sellers and Spellen.  (Doc. 88)   Plaintiff filed a reply in support of its motion for partial summary judgment that contained additional arguments and blatant inaccuracies.  (Doc. 108)  On April 2, 2004, Defendants Caton, Jorg, Sellers and Spellen filed a motion to strike Plaintiff's reply or alternatively to file a response.  (Doc. #120)  This Court granted leave for the Defendants to file a surreply.  (Doc. #124)  The accompanying memorandum addresses Plaintiff's reply in support of its motion for partial summary judgment.

**MEMORANDUM**

II.  **Judicial estoppel does not apply to defendants Caton, Jorg, Hodge, Sellers and  Spellen.**

According to the Sixth Circuit, the doctrine of judicial estoppel applies when a party is asserting a position contrary to one that was previously asserted under oath and adopted by the previous court.  *Teledyne Indus. V. NLRB,* 911 F.2d 1214 (6th Cir. 1990).

Plaintiff states that the defendant police officers are judicially estopped from asserting that Roger Owensby died from sudden cardiac arrest.  (Doc. #108, p.21)  This fallible argument is premised on the fact that the City accepted the coroner's findings and disciplined the officers.   Plaintiff erroneously states that "<u>no appeals were taken</u>" by the officers after they were disciplined.  (Id. at p.15)(emphasis added)  "Caton took no steps to pursue the matter through grievance proceedings or litigation."  (Id. at p.20)   These blatantly inaccurate statements are nothing more than an attempt to mislead this Court.  Officers Caton, Hodge and Spellen did not complacently accept the discipline that they

received. These officers are currently at various stages of the grievance or appeal process. (Doc #119) Officer Jorg resigned before receiving any discipline to appeal. (Id.)

The Defendant officers did not assert nor did they accept the coroner's findings as to Roger Owensby's cause of death. Therefore, the doctrine of judicial estoppel does not prevent defendants from presenting testimony that Roger Owensby died as a result of sudden cardiac death and raising a genuine issue of material fact that precludes summary judgment.

### III.  Ohio Revised Code 313.19 does not preclude defendant's from presenting evidence contrary to the coroner's findings.

The Ohio Supreme Court has stated that "[t]he coroner's factual determinations concerning the manner, mode and cause of death, as expressed in the coroner's report and the death certificate, create a nonbinding rebuttable presumption concerning such facts in the absence of competent, credible evidence to the contrary." *Vargo v. Travelers Ins. Co.*, (1987) 34 Ohio St. 3d 27, syllabus paragraph one. "The statute does not compel the fact-finder to accept, as a matter of law, the coroner's factual findings concerning the manner, mode and cause of decedent's death." *Id.* at syllabus paragraph two. In *Vargo*, the court allowed testimony of a cause of death that differed from the coroner's findings.

The Sixth Circuit and the Southern District of Ohio have permitted testimony to rebut coroner's determinations in cases arising in Ohio. See *Boyd v. Baeppler*, 215 F.3d 594 (6th Cir. 2000); *Carpenter v. Cincinnati*, 2003 U.S. Dist. LEXIS 7105 (S.D. Ohio 2003) (Attached as Exhibit "A").

In the present case, the actual struggle on the ground lasted less than one minute and twenty seconds from the time the officer needs assistance call went out until Officer

3

Hunter called to "slow the cars down." (Transcript of Dist. 4 Audio tape, attached as Exhibit "B"; Doc. #88, Exhibit A). Even to a layperson, this amount of time appears to be too short for a person to asphyxiate. Contrary to Plaintiff's assertions of Roger Owensby being "crushed," there is no testimony that all of the officers, or even two of the officers, were applying body weight to Roger Owensby. Defendant Jorg admits only to applying "a light bit of pressure" with one knee to Roger Owensby's left shoulder area to aid in the handcuffing. (Jorg Depo. p. 41) The coroner did not find any broken ribs or surface bruising consistent with punches. (Exhibit 103). Expert testimony should be presented to a jury on this issue.

**IV.    Plaintiff's reply memorandum contains false statements.**

In addition to the false statements referenced above, there are several other blatant inaccuracies contained in Plaintiff's reply memorandum in support of motion for partial summary judgment that need to be addressed.

Plaintiff refers to "undisputed evidence." "The undisputed evidence establishes that they knew Mr. Owensby was seriously injured…" (Doc. #108, p.2) None of the defendant officers knew Mr. Owensby was seriously injured. (Doc.#103, p.6-7) Only one Cincinnati Police Officer realized there was a possible medical problem, but he voiced his concerns to the Golf Manor officers, and not to any of the defendant officers believing Roger Owensby had been arrested by that agency. (Brazile Depo. p. 7, 54) Officer Brazile is not named as a defendant.

According to the "objective reasonableness" standard, the conduct must be judged under the circumstances of the event, not 20/20 hindsight. *Graham v. Connor,* 490 U.S. 386 (1989). The coroner testified that the injuries that would have been visible to the

defendant officers did not require immediate medical attention. (Schultz Depo. p. 148) It is highly inappropriate for Plaintiff to assert what the "undisputed evidence" establishes when the evidence is clearly disputed.

"The undisputed evidence establishes that the Cincinnati officers then placed the …unconscious Roger Owensby in the back of the Golf Manor cruiser." (Doc.#108, p.3) Officers Caton testified that Mr. Owensby struggled on the way to the car and butterflied out" to resist being placed in the car. (Caton Depo. p.125) Hodge stated that Mr. Owensby tucked his feet under his buttocks to avoid going to the car. When ordered to put his feet down he did and walked to the car. (Hodge homicide statement 11/20/00, p. 6) (Attached as Exhibit "C") Officer Jorg testified that Mr. Owensby walked to the car. (Jorg Depo. p. 149) Huntington Meadows security officer Whittaker stated Mr. Owensby was walking and "hollering" on the way to the Golf Manor car. (Whittaker Homicide statement 11/10/00, p. 10) (Attached as Exhibit "D") Huntington Meadows officer Menefee stated that Mr. Owensby struggled on the way to the car and "bucked back" against the officers. (Menefee Homicide statement 11/10/00, p.10) (Attached as Exhibit "E") It is clearly <u>not</u> undisputed that Roger Owensby was unconscious.

Plaintiff lists facts that are allegedly "uncontested" by the Cincinnati defendants. Several of these facts were contested by Defendants Caton, Hodge, Jorg, Sellers and Spellen in their motion in opposition to partial summary judgment including:

- Officer Hunter testified that Officer Caton repeatedly punched Mr. Owensby in the area of the head after he was handcuffed, as he lay unconscious on the back of the Golf Manor cruiser (Doc #108, p.4)(contested in Doc #103, p.3) ;
- Both Officers Hunter and Sellers testified that Officer Caton repeatedly punched Mr. Owensby *after* he was handcuffed and not resisting (Doc #108, p.4)(contested in Doc #103, pp. 2-3);

5

- Officer Caton straddled Mr. Owensby's buttocks as he struck at his back and right arm (Doc #108, p.7)(clarified in Doc #103, p. 2, that strikes were administered prior to handcuffs);
- In uniform, Officers Jorg and Caton weighed approximately 470 pounds as they knelt on and straddled Mr. Owensby as he lay face down on the asphalt (Doc #108, p. 7)(contested in Doc #103, p. 3).

Plaintiff also greatly exaggerates, "Officers Jorg and Caton had Mr. Owensby's blood *all over* the sleeves of their shirts." (Doc #108, p. 5)(emphasis added). In their motion for summary judgment the statement was "Officers Jorg and Caton had blood from Mr. Owensby on the sleeves of their shirts." (Doc #88, p. 10) The original statement was accurate in that there was blood on the officers' shirts. However the *allegedly uncontested* statement that there was blood "all over the sleeves of their shirts" is an over exaggeration that was not made in the original document and would have been highly contested. There was not enough blood present to cause Sergeant Watts to immediately check on Mr. Owensby after observing Officer Jorg's sleeve and determining all of the officers were not injured. (Watts Homicide statement 11/12/00, p. 3) (Attached as Exhibit "F")

More importantly, Plaintiff asserts as *uncontested facts* that "all of the officer knew that Cincinnati Procedure 12.545 required immediate medical care," "that the scene was sufficiently stabilized," and that "none of the eleven Cincinnati police officers…offered or provided medical care to Mr. Owensby." (Doc. #108, p.5-6) All of these facts were vigorously contested in the defendants' memorandum in opposition to partial summary judgment. Specifically, the officers did not realize that Mr. Owensby was in serious need of medical care when the only apparent injuries were minor cuts and abrasions, consistent with a struggle on asphalt. The deputy coroner testified that the only injuries visible to the officers did *not* require immediate medical attention. (Doc.

#103, pp. 6, 14) Medical care was commenced, immediately, upon discovery of its need. (Doc. #103, pp. 8, 14)

Furthermore, what "once the incident scene is stabilized" actually means and whether the scene was ever stabilized on November 7, 2000, is the subject of much confusion. (Doc. #103, pp. 9, 13) Defendants urge the Court to view the videotape from Officer Spellen's cruiser. Contrary to Plaintiff's claims that the scene was sufficiently stabilized for the officers to be joking and greeting each other, Officers Jorg, Caton, Hodge and Sellers are never engaged in such conduct. (Doc #108, p. 6) Immediately after placing Mr. Owensby in the Golf Manor car, Officers Caton and Jorg retrieved equipment dropped during the struggle, including ammunition, handcuffs and a PR24. (Caton Depo. p.129; Jorg Depo. p.151) Common sense dictates that these items should be retrieved and secured from civilians quickly.

Plaintiff also states that the scene was sufficiently stabilized for the officers to drive their cars over. (Doc. #108, p. 6) When Sergeant Watts arrived on scene, he asked for the Cincinnati police cars to be brought down in order to transport Mr. Owensby. (Sgt. Watts 11/08/00 Homicide statement, p. 2) (Attached as Exhibit "G") The video shows Officer Caton and Officer Sellers going to retrieve the cruisers within one minute and twenty seconds after the "in custody" call was broadcast. Retrieving unattended Cincinnati police cars would appear to be part of scene stabilization. Shortly thereafter, Officer Jorg describes the incident for nearly two minutes to Sergeants Watts and Browner. Clearly, these officers were not joking around they were doing their jobs.

Assuming *arguendo* that the issue of medical care is addressed under the Fourth Amendment reasonableness standard, the test is objectively reasonable in light of the

7

circumstances. *Graham v. Connor,* 490 U.S. 386 (1989). The circumstances surrounding the events of November 7, 2000, are far from clear. As often happens with witness statements, almost every fact has a different version. In order to determine the reasonableness of the events of that night, witness credibility needs to be judged.

Plaintiff blatantly misstates the facts and disingenuously uses the terms "uncontested" and "undisputed" in an attempt to cover the fact that there are genuine issues of material fact that need to be presented to a jury for proper determination.

## V. Conclusion

For the reasons stated above and the arguments contained in the Memorandum in Opposition to Partial Summary Judgment (Doc. #103), Defendants Caton, Hodge, Jorg, Sellers and Spellen respectfully request this Court to deny Plaintiff's Motion for Partial Summary Judgment.

Respectfully submitted,

/s/ Donald E. Hardin
Donald E. Hardin                (0022095)
HARDIN, LEFTON, LAZARUS & MARKS
915 Cincinnati Club Building
30 Garfield Place
Cincinnati, Ohio 45202-4322
Telephone:    (513) 721-7300
Facsimile:    (513) 721-7008

Trial Attorney for Defendants Patrick Caton, Robert Blaine Jorg, Jason Hodge, Darren Sellers and Victor Spellen in their individual capacities. Trial Attorney for Patrick Caton, Robert Blaine Jorg and Victor Spellen in their official capacities.

8

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Surreply to Plaintiff's Reply Memorandum in Support of Partial Summary Judgment has been electronically filed with the Clerk of the Court on April 16, 2004. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

James B. Helmer, Jr., Esq.
Paul B. Martins, Esq.
Frederick M. Morgan, Jr., Esq.
Robert M. Rice, Esq.
HELMER, MARTINS & MORGAN CO., L.P.A.
Fourth & Walnut Centre, Suite 1900
105 East Fourth Street
Cincinnati, Ohio 45202
Trial Attorneys for Plaintiff

Geri H. Geiler, Esq.
Assistant City Solicitor
Room 214, City Hall
801 Plum Street
Cincinnati, Ohio 45202
Trial Attorney for Defendants
John Shirey, Kent A. Ryan, S. Gregory Baker, Thomas Streicher, Jr., Robert B. Jorg, Patrick Caton

Mark T. Tillar, Esq.
240 Clark Road
Cincinnati, Ohio 45215
Trial Attorney for Plaintiff

John J. Helbling, Esq.
3672 Springdale Road
Cincinnati, Ohio 45251
Trial Attorney for Plaintiff

Neil F. Freund, Esq.
Vaseem S. Hadi, Esq.
FREUND, FREEZE & ARNOLD
One Dayton Centre
One South Main Street, Suite 1800
Dayton, Ohio 45402-2017
Trial Counsel for Defendants City of Cincinnati, John Shirey,
Kent A. Ryan, S. Gregory Baker, Thomas Streicher, Jr.,
Darren Sellers, Jason Hodge

Wilson G. Weisenfelder, Jr., Esq.
RENDIGS, FRY, KIELY & DENNIS, LLP
900 Fourth & Vine Tower
Cincinnati, Ohio 45202
Trial Attorney for Defendants City of Golf Manor, Stephen Tilley, Roby Heiland, and Chris Campbell

Dale A. Stalf, Esq.
BUCKLEY, KING & BLUSO
1320 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
Counsel for Defendants Huntington Meadows, LTD, and Bryan Menefee

Ravert J. Clark, Esq.
114 East Eighth Street
Suite 400
Cincinnati, Ohio 45202
Trial Attorney for Defendant
David Hunter

/s/ *Donald E. Hardin*
Donald E. Hardin          (0022095)