Estate of Roger Owensby vs. City of Cinti.
October 17, 2003

PATRICK E. CATON

Case 1:01-cv-00769-SAS   Document 130-9   Filed 04/16/2004   Page 1 of 12

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

- - - - - - - - - - - - - - - - -
ESTATE OF ROGER D.                :
OWENSBY JR., et al.,              :
                                  :
        Plaintiffs,               :
   vs.                            : Case No. 01-CV-769
                                  : (Judge S. A. Spiegel)
CITY OF CINCINNATI,               :
et al.,                           :
                                  :
        Defendants.               :
- - - - - - - - - - - - - - - - -

Videotaped deposition of PATRICK EDMUND CATON, a defendant herein, called by the plaintiffs for cross-examination, pursuant to the Federal Rules of Civil Procedure, taken before me, Wendy Davies Welsh, a Registered Diplomate Reporter and Notary Public in and for the State of Ohio, at the offices of Helmer, Martins & Morgan Co. LPA, 1900 Fourth & Walnut Centre, 105 East Fourth Street, Cincinnati, Ohio, on Friday, October 17, 2003, at  a.m.

Page 125

1   Q. Okay. Continue.
2   A. As he attempts to put him in the back seat
3 of the car, Owensby, what I've described as makes
4 himself bigger by essentially butterflying out. He
5 brings his elbows out as wide as he can, he tries to
6 stand up straight, to make it difficult to put him
7 in the back seat of the cruiser.
8   Q. Where is -- where -- where is Officer
9 Sellers in relation to Mr. Owensby at this time?
10   A. Behind him.
11   Q. He's behind him?
12   A. That's correct.
13   Q. Where are you?
14   A. At this point the door is between me and
15 them. So I go around to the driver's side of the
16 door and open up the rear driver's side door.
17   Q. When you say Mr. Owensby made himself big,
18 where were you?
19   A. Right there at the door.
20   Q. Do you know where Officer Sellers had his
21 hands at that point?
22   A. I -- I don't know
23   Q. Do you know if he was trying to hoist him
24 up by the arms, which would cause the arms to come

Page 129

1  Owensby's face was bleeding?
2     A. No, I did not.
3     Q. Did you notice that you had blood on your
4  shirt?
5     A. No, I did not.
6     Q. Okay. Continue. You -- you get up and
7  you close the door. Is that the position that you
8  left Mr. Owensby in?
9     A. Yes.
10    Q. Okay. What happens next?
11    A. At this point I had dropped, I think,
12  my -- one of my magazines during the fight, so I
13  ended up walking back to retrieve the magazine and I
14  put it back on my -- on my gear.
15       I see Blaine, he's picking up his gear and
16  my initial thought is I look around, I don't see any
17  Cincinnati police cruisers, so we need to get a
18  cruiser to our location to transfer him from Golf
19  Manor over to the Cincinnati cruiser.
20       So as you see on the tape, I asked Blaine,
21  who was driving that day, "You got the keys to the
22  car?" And he says he thought he left them in the
23  car. I said okay, and I started over towards the
24  Sam's lot to get our cruiser. As --

Page 151

1    CIS?
2    A. That's right.
3    Q. -- with Officer Jorg?
4    A. That's correct.
5    Q. Do you recall, when you went from CIS to
6 District 4, whether or not you were in your cruiser?
7    A. Do I -- I was in some type of police
8 vehicle. I don't remem-- remember if it was my
9 cruiser or not. Because all the cruisers left that
10 area. I -- I left the area in somebody else's
11 cruiser. I don't know how our cruiser got back to
12 the district. I don't recall.
13   Q. Do you recall whether or not you drove
14 from CIS to District 4?
15   A. No, I don't recall.
16   Q. Do you have any recollection of Officer
17 Jorg driving?
18   A. Other than during -- during the tour of
19 duty that night prior to this incident he was the
20 driver of our vehicle, but from CIS, I don't recall.
21   Q. What was the normal practice when you and
22 Officer Jorg were partners? Was there one person
23 who usually drove?
24   A. I would say Blaine probably drove more

124

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

- - - - - - - - - - - - - - - -

ESTATE OF ROGER D.            :
OWENSBY JR., et al.,          :
                              :
        Plaintiffs,           :
    vs.                       :  Case No. 01-CV-769
                              :  (Judge S. A. Spiegel)
CITY OF CINCINNATI,           :
et al.,                       :
                              :
        Defendants.           :

- - - - - - - - - - - - - - - -


VOLUME II


         Continued deposition of DANIEL L. SCHULTZ,

M.D., a witness herein, called by the plaintiffs for

cross-examination, pursuant to the Federal Rules of

Civil Procedure, taken before me, Wendy Davies

Welsh, a Registered Diplomate Reporter and Notary

Public in and for the State of Ohio, at the Frank P.

Cleveland, M.D. Institute of Forensic Medicine,

Toxicology and Criminalistics, 3159 Eden Avenue,

Cincinnati, Ohio, on Friday, February 6, 2004, at

1:02 p.m.

(800) 578-1542 * MERIT * (513) 381-8228

Page 148

1  look at his chest.
2     Q. I'm saying if you had viewed Mr. Owensby
3  without lifting up his shirt, without doing any of
4  that, just as he's clothed, in a normal fashion for
5  the purpose of the question, what injuries would you
6  have been able to see?
7     A. The injuries to his face. I don't know
8  what kind of -- because of course his shirt wasn't
9  there at the time. There was no shirt. So --
10    Q. I don't want you to worry about -- I'm
11 assuming for the purpose of the question that he did
12 have covering over his torso.
13    A. Okay. Well, his left forearm has some
14 abrasions, which if he's wearing a short-sleeve
15 shirt it would be visible.
16    Q. Right. If you have a long-sleeve shirt,
17 it may not be?
18    A. Right.
19    Q. All right. Were any of the injuries that
20 you saw on the facial area injuries that would have
21 necessitated immediate medical attention?
22        MR. MARTINS: Objection.
23    A. The injuries to his face are markers of
24 trauma and they themselves are not injuries that

Owensby, et al. vs. City of Cincinnati
November 6, 2003
BRIAN ANTHONY BRAZILE
Case 1:01-cv-00769-SAS    Document 130-9    Filed 04/16/2004    Page 7 of 12

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

- - - - - - - - - - - - - - - -

ESTATE OF ROGER D.              :
OWENSBY JR., et al.,            :
                                :
         Plaintiffs,            :
    vs.                         :  Case No. 01-CV-769
                                :  (Judge S. A. Spiegel)
CITY OF CINCINNATI,             :
et al.,                         :
                                :
         Defendants.            :

- - - - - - - - - - - - - - - -


    Videotaped deposition of BRIAN ANTHONY

BRAZILE, a witness herein, called by the plaintiffs

for cross-examination, pursuant to the Federal Rules

of Civil Procedure, taken before me, Wendy Davies

Welsh, a Registered Diplomate Reporter and Notary

Public in and for the State of Ohio, at the offices

of Helmer, Martins & Morgan Co. LPA, 1900 Fourth &

Walnut Centre, 105 East Fourth Street, Cincinnati,

Ohio, on Thursday, November 6, 2003, at 11:02 a.m.


(800) 578-1542 * MERIT * (513) 381-8228

Page 54

1    A. It was sort of like fetal sort of
2 position.
3    Q. Did you say anything to Officer Heiland at
4 that time, after seeing Mr. Owensby with your
5 flashlight?
6    A. Yes.
7    Q. What did you say to Officer Heiland?
8    A. I walked around to the other side of the
9 vehicle.
10   Q. To the -- to the --
11   A. To where they were.
12   Q. -- rear of the passenger's side of the
13 vehicle?
14   A. Where they were standing.
15   Q. Okay.
16   A. And I asked him, I said, "The guy you have
17 in your car, is he okay?" I said, "Can he breathe?"
18 I said, "He's in a" -- you know, position that
19 looked like he was in, it may have been hard, so I
20 asked him. I'm figuring he's their prisoner. No
21 one ever said whose he was. I figured he was
22 theirs, because he was in their car.
23       And basically I was just trying to let
24 them know to check on him, just to see what's going

Page 7

1  7th.
2  Q. And when was the first time on that
3  evening, how did it come to pass that you saw for
4  the first time Mr. Owensby?
5  A. He was already secured in a vehicle and I
6  went over after there -- I heard there was a
7  struggle going on, went over to see if I recognized
8  Mr. Owensby from being, you know, on the block up
9  there, hanging out.
10  Q. You at that time were assigned to District
11  4?
12  A. Yes, sir.
13  Q. And the vehicle that Mr. Owensby was in
14  was a Golf Manor cruiser; is that right?
15  A. Yes, sir, that's correct.
16  Q. When was the first time that you realized
17  that Mr. Owensby was dead?
18  A. I found out the next day.
19  Q. Were you present when Mr. Owensby was
20  removed from the Golf Manor cruiser?
21  A. Yes, sir.
22  Q. And did you observe officers conduct CPR
23  on Mr. Owensby?
24  A. Yes, sir.

Estate of Owensby vs. City of Cincinnati
October 14, 2003
Case 1:01-cv-00769-SAS   Document 130-9   Filed 04/16/2004   Page 10 of 12
ROBERT BLAINE JORG

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

- - - - - - - - - - - - - - - - -
ESTATE OF ROGER D.           :
OWENSBY JR., et al.,         :
                             :
        Plaintiffs,          :
   vs.                       : Case No. 01-CV-769
                             : (Judge S. A. Spiegel)
CITY OF CINCINNATI,          :
et al.,                      :
                             :
        Defendants.          :
- - - - - - - - - - - - - - - - -

   Videotaped deposition of ROBERT BLAINE JORG, a defendant herein, called by the plaintiffs for cross-examination, pursuant to the Federal Rules of Civil Procedure, taken before me, Wendy Davies Welsh, a Registered Diplomate Reporter and Notary Public in and for the State of Ohio, at the offices of Helmer, Martins & Morgan Co. LPA, 1900 Fourth & Walnut Centre, 105 East Fourth Street, Cincinnati, Ohio, on Tuesday, October 14, 2003, at 10:12 a.m.

Page 41

1   A. No.
2   Q. In the course of events on the evening of
3   November 7, 2000, at any time did you kneel on Mr.
4   Owensby's back?
5   A. Yes.
6   Q. When?
7   A. When handcuffing started to take place I
8   was able to relieve Mr. Owensby's left arm from
9   under his stomach. And as I brought his arm back, I
10  applied a light bit of pressure with my left knee
11  into the top part of his shoulder in order to get
12  leverage to pull it out of his stomach area and
13  bring it back to Officer Caton for handcuffing.
14  Q. That would be the scapular area --
15  A. Yes.
16  Q. -- of Mr. Owensby's back?
17  A. Yes.
18  Q. Was there ever a time when both your knees
19  were on his back?
20  A. No.
21  Q. Do you know of any officer who that
22  evening had both their knees on Mr. Owensby's back?
23  A. No.
24  Q. Do you know of any officer who also had

                                                    Page 149
 1  sure.
 2      Q. Did you walk over to the Golf Manor car
 3  any time after Mr. Owensby was placed in the car?
 4      A. Yes.
 5      Q. When?
 6      A. After I had retrieved my handcuffs and my
 7  night stick, I had turned to see how Pat was doing,
 8  Officer Caton. And as I approached the vehicle, Pat
 9  was just shutting the door on the driver's side.
10      Q. The side facing Seymour Avenue?
11      A. Yes.
12      Q. Okay.
13      A. At which time I stopped, and Pat started
14  asking me where the keys were to our car so he could
15  bring our vehicles over. And shortly thereafter,
16  probably within a matter of seconds, Sergeant Watts
17  seemed to be there.
18      Q. Why didn't -- why didn't you take Mr.
19  Owensby to your car?
20      A. It was too far away.
21      Q. Was Mr. Owensby walking?
22      A. He was walking. And from what -- now,
23  keep in mind, I did not escort him to the vehicle,
24  but everything I've gotten from the other