# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **ESTATE OF** | : | |
| **ROGER D. OWENSBY JR., et al.,** | : | |
| | : | |
| | : | **Case No. 01-CV-769** |
| **Plaintiff,** | : | |
| | : | **Senior Judge S. Arthur Spiegel** |
| **v.** | : | |
| | : | |
| **CITY OF CINCINNATI, et al.,** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

**PLAINTIFF'S SURREPLY MEMORANDUM IN OPPOSITION
TO DEFENDANTS CITY OF CINCINNATI'S AND THOMAS STREICHER'S
OMNIBUS MOTION (doc. 115 and doc. 129) AND DEFENDANT POLICE OFFICERS'
MOTION (doc. 120 and doc. 130)
FILED PURSUANT TO COURT ORDER (doc. 124)**

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and pendent state

wrongful death claims.  It arises out of the November 7, 2000 beating, macing, and abandonment

of Roger Owensby, Jr., by Cincinnati and Golf Manor police officers, causing his death.  Plaintiff

moved for partial summary judgment against these defendants for their deliberate indifference to

Mr. Owensby's injuries and their failure to provide critical medical care.[1]

Defendants City of Cincinnati and some of its police officers have filed motions to strike

Plaintiff's summary judgment reply memorandum[2] as improperly including "new arguments."

---

[1] Doc. 88, Plaintiff's MSJ re: City of Cincinnati and its Police Officers; Doc. 84,
Plaintiff's MSJ re: Village of Golf Manor and its Police Officers.

[2] Doc. 108, Plaintiff's Reply in Support of Motion for Partial Summary Judgment.

Defendants also sought leave to file surreply memoranda.[3]  This Court denied the Defendants'

motions to strike Plaintiff's Reply, finding that it properly responded to new arguments raised by

the Defendants for the first time in their opposition memoranda.  However, the Court agreed that

surreplies may be filed in the interest of having a complete discourse on these issues, directing

that all surreplies be filed on or before April 16, 2004.[4]  In accord with this Court's order, and in

keeping with the intent of S.D. Ohio Civ. R. 7.2(a) that the moving party have the final say on his

motion, Plaintiff now offers this surreply in response to the arguments raised by the Defendants.

I.      **REVISED CODE 313.19 IS APPLICABLE AND PROHIBITS DEFENDANTS
        FROM NOW CHALLENGING THE FINDING OF THE CORONER**

The Hamilton County Coroner found the manner of Mr. Owensby's death to be

"homicide (police intervention: asphyxiation during restraint attempts)" and the cause of death to

be "mechanical asphyxiation."[5]  In their summary judgment opposition memoranda, Defendants

argue an issue of fact exists as to Mr. Owensby's death, claiming now—for the first time in over

three years—that Mr. Owensby died of a "sudden cardiac event."

Defendants' current position is in direct contradiction to the Coroner's findings, findings

which these same Defendants confirmed through noted pathologist Cyril Wecht.  Defendants

then widely publicized those findings throughout the press.  Defendants also relied on them in

numerous administrative proceedings against the Defendant police officers.  Defendants now

refer to such prior conduct as "inadvertent acknowledgment" and that public opinion "forced"

---

[3] Doc. 115, (City), Doc. 120 (Officers) and Doc. 129 (City) and Doc. 130 (Officers).

[4] Doc. 124, Order, p. 4.

[5] Exhibit 103, Exhibit 134.

such actions.  The "truth" can only be determined, according to Defendants, by allowing them to erase the Coroner's findings and these Defendants' previous unambiguous embracing of them. In his Reply, Plaintiff pointed out that Defendants are prohibited from making such an argument in this Court by Ohio Revised Code 313.19.  That statute states that the Hamilton County Coroner's findings are binding unless and until they are set aside by the Hamilton County Court of Common Pleas:

> The cause of death and the manner and mode in which the death occurred, as delivered by the coroner and incorporated in the coroner's verdict and in the death certificate filed with the division of vital statistics, ***shall be the legally accepted manner and mode in which such death occurred, and the legally accepted cause of death***, unless the court of common pleas of the county in which the death occurred, after a hearing, directs the coroner to change his decision as to such cause and manner and mode of death.[6]

The City's Surreply[7] argues that R.C. 313.19 is only binding on state courts and "has no bearing on Plaintiffs' Section 1983 failure to provide medical attention claims in Federal District Court."[8]  In fact, the City and its Police Chief assert that "an exhaustive search of federal and state court cases failed to yield any case either in federal district court, or that involved Section 1983 claims, where Ohio Revised Code 313.19 precluded any party from submitting medical expert evidence to rebut the Coroner's finding."[9]  Apparently, the City and its Police Chief exhaust easily.  The Sixth Circuit has seen no problem in applying this Ohio statute in § 1983 cases.

---

[6] R.C. 313.19 (emphasis supplied).

[7] The original Police Surreply does not argue that R.C. 313.19 is inapplicable or not binding upon this case.  Doc. 120.

[8] Doc. 115, p. 12, Doc. 129, p. 9-10.

[9] Doc. 115 at 12-13, Doc. 129 at 10.

*Callihan v. Sudimack*[10] is a § 1983 action brought by heirs who alleged that the Trumbull County Coroner violated their constitutional rights when he incorrectly determined a cause of death due to overdose rather than strangulation.[11]  In affirming dismissal of the plaintiff's § 1983 claims, the Sixth Circuit relied upon R.C. 313.19:

> Ohio law provides a procedure through which an individual may challenge a coroner's findings regarding the cause of death.  Under this provision, the court of common pleas of the county in which the death occurred may, after a hearing, direct the coroner to change his decision as to the cause, manner, or mode of death.[12]

Two years later the Sixth Circuit again determined that R.C. 313.19 could apply in a § 1983 action.  In *Emph v. Sudimack*, heirs sued for constitutional violations arising out of the classification of a death as accidental when, after exhumation, it was determined to be a murder.[13]  In barring the plaintiff's § 1983 action as beyond the four-year statute of limitations, the Sixth Circuit again noted that "appellants could have successfully challenged the appellees' refusal to exhume and autopsy Morris' body in a declaratory judgment action under Ohio Rev. Code § 313.19 in the court of common pleas."[14]

The Ohio Supreme Court has also established that the Coroner's findings are binding

---

[10] 1997 U.S. App. LEXIS 17731 (6th Cir. July 10, 1997), attached.

[11] *Id.* at *3-4.

[12] *Id.* at *11-12 *citing* R.C. 313.19; *Estate of Severt v. Wood*, 107 Ohio App. 3d 123, 667 N.E.2d 1250 (Ohio App. 1995); *State ex rel. Blair v. Balraj*, 69 Ohio St. 3d 310, 631 N.E.2d 1044 (Ohio 1994) (noting that action for declaratory judgment is the proper way to challenge a coroner's findings pursuant to R.C. 313.19).

[13] 1999 U.S. App. LEXIS 12022, *2-4 (6th Cir. June 7, 1999), attached.

[14] *Id.* at *8.

4

unless challenged and changed by the common pleas court.  For instance, in *Perez v. Cleveland*, former Ohio Supreme Court Justice, now Sixth Circuit Judge, Deborah L. Cook, writing for the Ohio Supreme Court, held that "R.C. 313.19 delimits the procedure for challenging a coroner's verdict."[15]  The Court then went on to find that jurisdiction and venue are "exclusively vested" in the common pleas court by virtue of R.C. 313.19.[16]  Thus, even if this Court were so inclined, it would not have jurisdiction to allow these defendants to challenge the cause and manner of death findings of the Hamilton County Coroner.

Indeed, just last month, in *Fuerst v. Ford*, a unanimous Ohio Supreme Court again held:

> **As a matter of law, the manner of death delivered by the coroner is the legally accepted manner absent a hearing protesting the ruling.  R.C. 313.19.** The coroner's factual determinations concerning the manner of the decedent's death, create a non-binding, rebuttable presumption concerning such facts in the absence of competent, credible evidence to the contrary.  *Vargo v. Traveler's Ins. Co.* (1987), 34 Ohio St. 3d 27, 516 N.E.2d 226.  **Any challenges to the [coroner's] ruling must be made in the common pleas court.**  *Perez v. Cleveland* (1997), 78 Ohio St. 3d 376, 1997 Ohio 33, 678 N.E.2d 537.[17]

In the 3½ years since the homicide of Roger Owensby, Jr., no one has ever attempted to challenge the validity of the Hamilton County Coroner's findings in the common pleas court pursuant to R.C. 313.19.  Thus, Defendants are statutorily prohibited from now challenging in this § 1983 action the Hamilton County Coroner's findings concerning the manner of death, "homicide (police intervention: asphyxiation during restraint attempts)" or the cause of death,

---

[15] *Perez v. Cleveland*, 78 Ohio St. 3d 376, Syllabus 1, 1997 Ohio 33, 678 N.E.2d 537, *2 (Ohio 1997).

[16] *Id.* at 377, 678 N.E.2d at *4-5.

[17] *Fuerst v. Ford*, 2004 Ohio 1510, ¶6, 2004 Ohio App. LEXIS 1334, *4 (Ohio Mar. 29, 2004) (emphasis supplied), attached.

"mechanical asphyxiation." As a result, Defendants' proffered expert opinions concerning Mr. Owensby's death from a heart attack are inadmissible as a matter of law. Without such opinions there exists no support for Defendants' new-found heart attack theory. Defendants raise no cognizable genuine issue of material fact precluding Plaintiff's entitlement to partial summary judgment.[18]

## II.    DEFENDANTS ARE JUDICIALLY ESTOPPED FROM NOW CHALLENGING THE CORONER'S FINDINGS

A judicial estoppel analysis is unnecessary if this Court finds that R.C. 313.19 prohibits the Defendants from presenting any evidence challenging the Coroner's findings concerning the manner and cause of Mr. Owensby's death. Nevertheless, the City of Cincinnati, its Police Chief, and its police officers challenge Plaintiff's judicial estoppel argument presented in his

---

[18] The City and the Officers' second surreply cites to a Sixth Circuit and a Southern District of Ohio case for the proposition that parties may challenge the coroner's findings in a § 1983 action (Doc. 115, p. 13, Doc. 130, p.3, *citing Boyd v. Baeppler*, 215 F. 3d 594 (6th Cir. 2000) and *Carpenter v. Cincinnati*, 2003 U.S. Dist. LEXIS 7105, *9-10 (S.D. Ohio Apr. 17, 2003)). However, Defendants admit the fatal flaw in their argument—these decisions do not consider or even mention R.C. 313.19 (Doc. 115, p. 14, Doc. 129 at p. 11).

Moreover, the Southern District decision, *Carpenter v. Cincinnati,* (2003 U.S. Dist. LEXIS 7105 (S.D. Ohio Apr. 17, 2003) (Dlott, J.))*,* does not challenge the coroner's findings as to the cause or manner of death—a bullet to the head. Instead, the only "challenge" in that police-shooting-case was by a forensic firearms expert who testified concerning the *trajectory* of one of the bullets (*Carpenter,* 2003 U.S. Dist. LEXIS 7105 at *9-10). Similarly, the Sixth Circuit decision of *Boyd v. Baeppler*, 215 F. 3d 594 (6th Cir. 2000) (another police-shooting-case), also involved expert disagreement over the sequence and pathways of bullets, not the cause and manner of death (*Boyd,* 215 F. 3d at 603-04) . Therefore, the federal cases cited by the Defendants are inapplicable.

Defendants' reliance on the state case, *Johnston v. Univ. Mednet*, 1994 Ohio App. LEXIS 3495 (8th App. Dist. Aug. 11, 1994), is equally useless. First, unlike in our case, the challenge to the coroner's findings was raised in the common pleas court in accord with the terms of R.C. 313.19. Second, and more importantly, ***Johnston* was reversed by the Ohio Supreme Court.** *Johnston v. Univ. Mednet*, 71 Ohio St. 3d 608 (Ohio 1995).

Reply in support of his Motion for Partial Summary Judgment.[19]  The City attempts to bolster its

judicial estoppel attack by characterizing Plaintiff's argument as "dishonest,"[20] "tortured" and

"perverted."[21]  Stripped of its unprofessional rhetoric, the City's argument falls under the weight

of the facts and the law.

A.     **Judicial Estoppel Applies To The City's Adoption And Reliance Upon The Coroner's Findings In Its Administrative Disciplinary Proceedings.**

"The doctrine of judicial estoppel prevents a party from asserting a claim in a legal

proceeding that is inconsistent with a claim taken by that party in a previous proceeding."[22]  It is

an "equitable doctrine which preserves the integrity of the courts by preventing a party from

abusing the judicial process through cynical gamesmanship, achieving success on one position,

then arguing the opposite to suit an exigency of the moment."[23]  Judicial estoppel "applies to a

party who has successfully and unequivocally asserted a position in a prior proceeding; he is

estopped from asserting an inconsistent position in a subsequent proceeding."[24]

The Supreme Court summarized judicial estoppel as follows:

> Although we have not had occasion to discuss the [judicial estoppel]
> doctrine elaborately, other courts have uniformly recognized that its purpose is 'to
> protect the integrity of the judicial process,' *Edwards v. Aetna Life Ins. Co.*, 690

---

[19] Doc. 108, Plaintiff's MSJ Reply; Doc. 115, pp. 4-12; Doc. 120, p. 2, Doc. 129, pp. 1-9, Doc. 130, p. 2.

[20] Doc. 115, p. 9.

[21] Doc. 115 at 12, Doc. 129 at p. 9.

[22] 18 Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000).

[23] *Teledyne Industries, Inc. v. NLRB*, 911 F.2d 1214, 1217-18 (6th Cir. 1990).

[24] *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982).

F.2d 595, 598 (CA6 1982), by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment,' *United States v. McCaskey*, 9 F.3d 368, 378 (CA51993). See *In re Cassidy*, 892 F.2d 637, 641 (CA7 1990) ('Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process'); *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (CA4 1982) (judicial estoppel 'protects the essential integrity of the judicial process'); *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (CA3 1953) (judicial estoppel prevents parties from 'playing 'fast and loose with the courts'' (quoting *Stretch v. Watson*, 6 N.J. Super. 456, 469, 69 A.2d 596, 603 (1949))). Because the rule is intended to prevent 'improper use of judicial machinery,' *Konstantinidis v. Chen*, 200 U.S. App. D.C. 69, 626 F.2d 933, 938 (CADC 1980), judicial estoppel 'is an equitable doctrine invoked by a court at its discretion,' *Russell v. Rolfs*, 893 F.2d 1033, 1037 (CA9 1990) (citation omitted).[25]

"'[T]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle.'"[26]

Contrary to Defendants' assertions, judicial estoppel does not apply just to proceedings in court. The Sixth Circuit has expressly held that it applies fully where the prior proceeding was a quasi-judicial, administrative proceeding.[27]

In the administrative disciplinary proceedings initiated by the City of Cincinnati and its Police Chief against many of the police officer defendants, the City took the position that defend-

---

[25] *State of New Hampshire v. State of Maine*, 532 U.S. 742, 749-50 (2001) (in boundary dispute, New Hampshire judicially estopped, by prior successful assertion that state line ran down middle of river, from asserting that it was on the Maine shore). Many of the judicial estoppel cases assert that an "element" is that the side-switching party have taken the first position "under oath." *E.g.*, *Teledyne*, 911 F.2d at 1218. However, the City of Cincinnati is not a party capable of taking an oath. It is noteworthy in this context that the words "under oath" do not appear in the Supreme Court's decision in *New Hampshire v. Maine*.

[26] *Id.*, quoting *Allen*, 667 F.2d at 1166.

[27] *Smith v. Montgomery*, 388 F.2d 291 (6th Cir. 1968) (holding that judicial estoppel will apply to prevent a party from asserting a position in the district court that is "clearly inconsistent" with the position previously asserted before the Workers Compensation Commission).

ants Caton and Jorg violated Police Division procedures by failing to carry out a procedure which "leads to serious injury to another"—"Never leave prisoners unattended inside cars."[28]  The City included in its disciplinary procedures the Hamilton County Coroner's findings that Roger Owensby's death was a "homicide (police intervention: asphyxiation during restraint attempts)" and that the cause of death was "mechanical asphyxiation."[29]  Officer Jorg resigned rather than go through the disciplinary process.  Officer Caton, however, went to hearing before a designated Administrative Hearing Officer.  He lost and has not had any of the findings overturned.  The City prevailed on the claim that Caton's conduct "led to serious injury to another."

The City now says nothing Officer Caton did or did not do could have "[led] to serious injury to another" because, according to the newly-minted City position, Mr. Owensby died of an instantaneous heart attack and no medical care could have helped him.[30]

The City claims that its prior position was merely an "inadvertent acknowledgment of the County Coroner's opinion . . . insufficient to support judicial estoppel on the cause of death."[31]  As unpersuasive as this is, it also does not matter.  This exact issue was found to constitute judicial estoppel in *Czajkowski v. City of Chicago*, 810 F. Supp. 1428 (N.D. Ill. 1993), where the court held that the City was judicially estopped in a § 1983 civil rights action from denying that a police officer scratched the plaintiff's chest with a key because it had taken the position in

---

[28] Exhibit 35 at 2-3, Specification III.

[29] Exhibit 27, Part II.pdf.  The entire scanned copy of Exhibit 27, Cincinnati Pre-Disciplinary Hearing Report, is attached to Doc. 108, Plaintiff's Reply.

[30] Doc. 99, Cincinnati Memo Contra, pp. 1, 5-6, 12-13, 18-20.

[31] Doc. 115, p. 10, Doc. 129, p. 7.

administrative disciplinary proceedings against the officer that he had committed the assault. The court rejected a blizzard of supposed policy concerns the City raised against application of judicial estoppel:  *The City prevailed on the scratched chest issue in the Police Board issue so the requirement of prevailing on the issue in the prior proceeding is satisfied.*"[32]

As with *Czajkowski*, the City of Cincinnati took the position in the administrative disciplinary proceedings that the actions of Defendant Officer Caton led to the injury of Roger Owensby which resulted in his mechanical asphyxiation death, as found by the Hamilton County Coroner.  Thus, the City is judicially estopped from now switching its position to challenge the Coroner's findings and assert that Mr. Owensby died of an unforseen heart attack that no one could have prevented.

### B.    Defendants' Factual Arguments Are Wrong.

The City and its Police Chief base their opposition to judicial estoppel upon several facts that are incorrect.

First, in dramatizing the applicability of judicial estoppel in this case, the City asserts "If Cincinnati had previously accepted and adopted the Coroner's cause of death opinion, it is utterly illogical that the City would have continued to squander time and resources searching for medical experts to challenge this opinion over the past two years."[33]  However, the City and the world knows why the City hired Dr. Wecht to review the Coroner's findings in this case.  The City issued a press release at that time stating that it hired Dr. Wecht to get a second opinion to verify

---

[32] *Czajkowski*, 810 F. Supp. at 1444 (emphasis supplied).

[33] Doc. 115, p.6, Doc. 129, p. 3.

10

the accuracy and truth of the Coroner's findings before it proceeded with administrative

disciplinary proceedings against its police officers.  Local media outlets like the <u>Cincinnati</u>

<u>Enquirer</u> dutifully reported the story:

> The city of Cincinnati has hired a national forensic expert—renowned for his
> research into high-profile deaths—to review what killed Roger Owensby Jr.  A
> soon-to-be-released report by Dr. Cyril H. Wecht, coroner in Allegheny County,
> Pa., could help the city's Office of Municipal Investigation resolve competing
> theories on Mr. Owensby's cause of death after he was arrested in Roselawn in
> November 2000.  **The city wants to know whether Cincinnati police officers
> involved in the arrest 'committed any administrative or procedural
> violations,' said OMI Director Mark Gissiner, who has described the
> Owensby case as the most complicated his office has ever handled.  'Given
> the difficult circumstances in this case, we wanted a second opinion from a
> doctor who is well respected nationally,' Mr. Gissiner said.  'It's not unlike
> someone facing major surgery who wants a second opinion.'**[34]

Having obtained Dr. Wecht's report, which agreed with the Coroner's findings, the City

was satisfied that it had established the "truth."  The City then relied upon both reports, asserted

the position that Mr. Owensby's homicide was the result of mechanical asphyxiation as a result

of police restraint, and administratively disciplined the officers at the scene.  As such, the City

and its Police Chief are judicially estopped to now assert that Mr. Owensby's death was the result

of a "sudden cardiac event."[35]

Second, the City argues that Plaintiff "should have known" that it would someday switch

its position on the cause and manner of Mr. Owensby's death because counsel for the City

questioned the Deputy Coroner who conducted the Owensby autopsy, Dr. Schultz, on the issue of

---

[34] Exhibit A, *Forensic Expert Hired To Review Owensby Case*, Cincinnati Enquirer,
June 29, 2002 (emphasis supplied).

[35] *See Czajkowski*, 810 F. Supp. at 1444.

sudden cardiac death at a December 2003 deposition.[36]  Dr. Shultz repeatedly asserted that he

was certain Mr. Owensby died of mechanical asphyxia.[37]  He also positively asserted that sudden

cardiac death in an adult can result from extreme physical assertion ***only if the heart has a***

***preexisting defect***.[38]  No such defect existed in the normal heart of the 29-year-old Roger

Owensby.[39]

     Plaintiff's counsel objected to this line of questioning.  Such objections were not, as

asserted by the City in its Surreply, an acknowledgment or agreement by Plaintiff that the City

could switch its position.[40]   Indeed, in light of the City's previous agreement with Dr. Schultz's

---

[36] Doc. 115, pp. 6-7., Doc. 129, pp. 4-5.

[37] Schultz Depo., p. 51:1-4.

[38] Schultz Depo., pp. 92-93:
Q.  Have you ever done an autopsy on someone who's suffered from Sudden Cardiac
    Death?
A.  Yes.
Q.  Have you ever done an autopsy on someone who has suffered from Sudden Cardiac
    Death, without any specific findings, other than the fact that the person is dead?
A.  Not on an adult.
Q.  Not on an adult?
A.  Correct.
Q.  How about young people and children?
A.  We call that SIDS.
*See also*, Schultz Depo., pp. 93-95.

[39]Schultz Depo., pp. 33:5, 34:19-23, 37:20 - 38:3, 48:14-20.  Contriving to grasp at
straws, the City says that Mr. Owensby's heart had to be defective because it weighed at the high
end of normal.  No one but the City's desperate counsel says a heart weighing within normal
ranges is defective because it is at the high end of the normal range; indeed, Dr. Neuman's
affidavit acknowledges that Mr. Owensby's heart was "at the upper limit of normalcy if not,
frankly, abnormal."  This hardly constitutes an opinion of abnormalcy much less "defective" to
the required medical certainty.

[40] Doc. 115, p. 7.

views, Dr. Schultz's categorical rejection of Defendants' proffered sudden cardiac death theory, and the City's failure to challenge the Coroner's findings in Common Pleas Court as mandated by Ohio law, there was no reason to believe that the City would, side-switch. The City's acknowledgment is correct that its current attempt is an illogical position, directly contrary to the position that it asserted before the administrative disciplinary proceedings and to the world over the past three years.

Third, the City argues that Plaintiff "should have known" that it intended to switch its position on the cause and manner of Mr. Owensby's death because, a month before Plaintiff filed his Motion for Partial Summary Judgment, Defendants named as potential experts Drs. Thomas Neuman and Charles Wetli.[41]

Review of this "notice" (Exhibit B) reveals that it is nothing more than a list of names. No reports or other indicia were provided that the City intended to now turn away from the position that it had advocated for the past three years in an attempt to forge a new position for the sole purpose of avoiding liability in this action. In fact, the first disclosure of any defense expert report advocating the sudden cardiac death theory was in the affidavit of Dr. Neuman, attached to Defendants' opposition memorandum—*three weeks after* Plaintiff filed for partial summary judgment.[42] Further, Dr. Wetli's defense expert report was not produced to Plaintiff until March 9, 2004—*five weeks after* Plaintiff filed for partial summary judgment.[43]

---

[41] Doc. 115, p. 8, Doc. 129, p. 5; Exhibit B, Freund 1/7/04 Ltr.

[42] Doc. 99, Cincinnati and Streicher Memo Contra Plaintiff's MSJ, Exhibit B, Affidavit of Tom Neuman, M.D.

[43] Exhibit C, Freund 3/9/04 Letter, attached.

13

Finally, setting aside the factual inaccuracies of Defendants' arguments, whether the Defendants disclosed their new theory of sudden cardiac death before or after Plaintiff filed for partial summary judgment is irrelevant for purposes of judicial estoppel.  It is not the Plaintiff's knowledge *rel non* of the Defendants' new-found cause-of-death theory which matters.  Rather it is the Defendants' side-switching conduct - its playing fast and loose with this Court - which works the estoppel.

The sole estoppel argument advanced by the police officer defendants is that some officers (but not all defendants in this case) are in the process of appealing the various punishments adjudged in the City's administrative disciplinary proceedings.[44]

The only other argument voiced in the Police Officers' Surreply is that several factual statements in Plaintiff's Reply are inaccurate.[45]  Plaintiff stands by the factual statements in his Reply.  Officers Hunter and Sellers did testify that they saw Officer Caton repeatedly punch Mr. Owensby after he was handcuffed.  Officer Hunter did testify that he saw Officer Caton punching Mr. Owensby as he lay handcuffed in the Golf Manor cruiser.  Officers Jorg and Caton weighed approximately 470 pounds in their uniforms.  And, there was blood all over the sleeve of Officer Jorg's shirt—so much blood that it was cut off by Officer Hodge to prevent possible blood

---

[44] Doc. 120, p. 2, Doc. 130, pp. 2-3.  We note parenthetically that for judicial estoppel purposes, it does not matter—with respect to the liability of the City and Chief Streicher—what happens on any officer's appeal: The City, having prevailed before a forum on its argument that the officers' neglect of Mr. Owensby caused him substantial injury, cannot switch sides in this forum.

[45] Doc. 120, pp. 2-4, Doc. 130, pp. 4-8.  The Court will note the Officers' citation to several unsworn, uncross-examined "homicide statements".  Doc. 130, p. 5.  Such inadmissible statements can not be used to create an issue of fact.  *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991).

14

exposure contamination.[46]

## III.    DEFENDANTS' PROFFERED DEFENSE EXPERT, DR. NEUMAN, DOES NOT RAISE A GENUINE ISSUE OF MATERIAL FACT SAVING DEFENDANTS FROM SUMMARY JUDGMENT

Plaintiff's Reply argued that the affidavit of Defendants' proffered emergency medicine expert, Dr. Tom Neuman, does not raise a genuine issue of material fact that would save the Defendants from summary judgment.[47] Dr. Neuman's proffered opinions are so unreliable and incredible as amounting to no more than proffered "metaphysical doubt as to material facts" which will not save the Defendants from summary judgment.[48]

In their Surreply, the City and its Police Chief address a host of *Daubert* issues, maintaining that Dr. Neuman satisfies the minimal requirements of the *Daubert* judicial gatekeeper function and advocating, instead, that the numerous deficiencies in Dr. Neuman's qualifications be addressed through cross-examination at trial.[49]  Defendants' argument misses the mark.

---

[46] Doc. 108, pp. 2-7; Exhibit 155, Hodge 5/2/02 Statement to Cincinnati Internal Investigation Section, p. 16, ("I had to get his [Officer Jorg's] sleeve off of him because he had blood all over it and [I] was telling him about my blood exposure that I had").

[47] Doc. 108, Plaintiffs' MSJ Reply, pp. 21-28.

[48] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Williams v. Ford Motor Company*, 187 F.3d 533, 543 (6th Cir. 1999), *quoting Merit Motors, Inc. v. Chrysler Corp.*, 187 U.S. App. D.C. 11, 569 F.2d 666, 673 (D.C.Cir. 1977) ("The evidentiary rules regarding expert testimony at trial were 'not intended . . . to make summary judgment impossible whenever a party has produced an expert to support its position.'"); *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92 (1st Cir. 1993) ("[I]n order to defeat a motion for summary judgment an expert opinion must be more than a conclusory assertion about ultimate legal issues.").

[49] Doc. 115, pp. 16-21, Doc. 129, pp. 13-19.

Dr. Neuman's testimony, as well as all other evidence concerning the new theory that Mr. Owensby's death was caused by sudden cardiac arrest, is legally prohibited by statute (R.C. 313.19) and by operation of law (judicial estoppel). Thus, there will never be a *Daubert* hearing on Dr. Neuman's qualifications because all parties are bound by the Coroner's findings, and the City is bound by its previous conduct.

## IV.    THE MEDICAL AUTHORITIES AND REFERENCES ATTACHED TO PLAINTIFF'S SUMMARY JUDGMENT REPLY SHOULD NOT BE STRICKEN

Dr. Neuman also advances the incredible opinion that prompt CPR by the police officers on the scene would not have saved Roger Owensby's life.[50] In our Reply, Plaintiff provided this Court with a compendium of websites of nationally-recognized medical publications – Journal of the American College of Cardiology, the American Heart Association, and the Cleveland Clinic Heart Center[51] – that demonstrate that Dr. Neuman's theory is bunkum. In their Surreply, Defendants argue that these medical publications should be stricken because they do not constitute admissible evidence for purposes of summary judgment.[52]

As previously stated, R.C. 313.19 and/or the doctrine of judicial estoppel prohibit the Defendants from challenging the Coroner's manner and cause of death determinations in this action. Accordingly, the proffered testimony of Dr. Neuman is irrelevant and a nullity. If this is the case, then the challenge to Plaintiff's medical websites directed at Dr. Neuman's proffered

---

[50] Doc. 99, Cincinnati Memo Contra Plaintiff's MSJ, p. 5 ("More prompt CPR would not have saved the decedent's life.") *citing*, Doc. 99, Exhibit B, Neuman Affidavit, ¶¶ 20-21.

[51] Doc. 108, Plaintiff's Reply, pp. 25-28.

[52] Doc. 115, pp. 21-22, Doc. 129, pp. 19-21.

opinions is also rendered moot by R.C. 313.19 and/or judicial estoppel.

That said, Rule 56(c) and (e), Fed. R. Civ. P., establishes that summary judgment may be supported by affidavits made upon personal knowledge, facts admissible in evidence, pleadings, depositions, interrogatories, and admissions. In this respect, all of the internet documents appended to Plaintiff's Reply are admissible under Rules 801 or 803 of the Federal Rules of Evidence. Further, these internet exhibits are either self-authenticating under Rule 902, Fed. R. Evid., or are now authenticated by the attached declaration of Plaintiff's counsel, Frederick M. Morgan. Such a declaration from the person who found and printed the internet information is a recognized method of authenticating website information.[53] Specifically, the proffered medical publications are admissible based upon the following Rules of Evidence:

- Cincinnati Fire/Rescue Media Releases, December 1997 (Doc. 108, Exhibit G, http://www.cincyfire.com/med9712.htm) is admissible under Evidence Rules: 801(d)(2), admission by party-opponent; 803(6), business record; and, 803(8), public record or report. It is also self-authenticating under Evidence Rule 902(5), official publication.[54] It is also authenticated by the attached declaration of Plaintiff's counsel, Mr. Morgan, who verifies that the copy attached was personally retrieved from the internet in the form which is attached to the Reply memorandum, in accord with *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1154 (C.D. Cal. 2002) and *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000).

- Cleveland Clinic Heart Center, "Sudden Cardiac Death (SCD)" (Doc. 108, Exhibit H, http://www.clevelandclinic.org/heartcenter/pub/guide/disease/electric/scd.htm) is admissible under Evidence Rules: 803(6), business record; and 803(18), learned treatises. It is self-authenticating under Evidence Rule 902(6), newspapers and

---

[53] *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1154 (C.D. Cal. 2002); *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000).

[54] *Sannes v. Jeff Wyler Chevrolet, Inc.*, 1999 U.S. Dist. LEXIS 21748, *10 n.3 (S.D. Ohio Mar. 31, 1999).

periodicals. It is also authenticated by the attached declaration of Plaintiff's counsel, Mr. Morgan, who verifies that the copy attached was personally retrieved from the internet in the form which is attached to the Reply memorandum, in accord with the *Perfect 10* and *Tank* decisions.

• American Heart Association Statistical Fact Sheet, "Sudden Death From Cardiac Arrest" (Doc. 108, Exhibit I, http://www.americanheart.org/downloadable/heart/ 1079596866713FS27SDCA4.pdf) is admissible under Evidence Rules: 803(6), business record; and 803(18), learned treatises. It is self-authenticating under Evidence Rule 902(6), newspapers and periodicals. It is also authenticated by the attached declaration of Plaintiff's counsel, Mr. Morgan, who verifies that the copy attached was personally retrieved from the internet in the form which is attached to the Reply memorandum, in accord with the *Perfect 10* and *Tank* decisions.

• American Heart Association, "Statement on the Chain of Survival—A Statement for Health Professionals From the Advanced Cardiac Life Support Subcommittee and the Emergency Cardiac Care Committee" (Doc. 108, Exhibit J, http://www.americanheart. org/presenter.jhtml? identifier =3012022) is admissible under Evidence Rules: 803(6), business record; and 803(18), learned treatises. It is self-authenticating under Evidence Rule 902(6), newspapers and periodicals. It is also authenticated by the attached declaration of Plaintiff's counsel, Mr. Morgan, who verifies that the copy attached was personally retrieved from the internet in the form which is attached to the Reply memorandum, in accord with the *Perfect 10* and *Tank* decisions.

• Resume of Richard O. Cummins, M.D., M.P.H., M. Sc.[the principal author of the American Heart Association medical publication at Exhibit J] (Doc. 108, Exhibit K, http://depts.washington.edu/~doemuw/faculty/ cummins.htm) is admissible under Evidence Rules: 803(6), business record. It is also authenticated by the attached declaration of Plaintiff's counsel, Mr. Morgan, who verifies that the copy attached was personally retrieved from the internet in the form which is attached to the Reply memorandum, in accord with the *Perfect 10* and *Tank* decisions. Websites for the resumes of the other authors of the AHA medical publication (Exhibit J) are identified in Plaintiff's Reply (Doc. 108) at page 26, footnote 92, and are admissible for the same reasons.

• 35 Journal of the American College of Cardiology 825, "31st Bethesda Conference, Emergency Cardiac Care (1999)" (Doc. 108, Exhibit L, http://www.acc.org/ clinical/bethesda/beth31/ ja03t000825p.pdf) is admissible under Evidence Rules: 803(6), business record; and 803(18), learned treatises. It is self-authenticating under Evidence

Rule 902(6), newspapers and periodicals.[55]  It is also authenticated by the attached declaration of Plaintiff's counsel, Mr. Morgan, who verifies that the copy attached was personally retrieved from the internet in the form which is attached to the Reply memorandum, in accord with the *Perfect 10* and *Tank* decisions.

Thus, all of the website medical publications attached to Plaintiff's Reply in Support of Summary Judgment are admissible, properly authenticated and should be considered, provided this matter isn't rendered moot by R.C. 313.19 and judicial estoppel.

## V.    CONCLUSION

Federal and state law establishes that the parties to this litigation are bound by the Hamilton County Coroner's findings concerning the manner and cause of Roger Owensby's death.  R.C. 313.19.  Such a statutory requirement is grounded in sound public policy that the Coroner's findings be afforded a degree of finality.  The law also delimits the sole method for challenging the Coroner's findings—a declaratory judgment action in the common pleas court. No such challenge has ever been brought by any party.  Thus, the Coroner's finding that Roger Owensby's homicide was the result of mechanical asphyxiation from police restraint is binding on all parties to this litigation, rendering the arguments and expert opinions that Roger Owensby died of a sudden heart attack inadmissible and a nullity.

Similarly, the City's repeated reliance upon and successful advocacy of the Coroner's findings before administrative disciplinary proceedings over the past three years judicially estops them from now attempting to claim that Roger Owensby died of a sudden heart attack for the

---

[55] *Springer v. Weeks & Leo Co., Inc.*, 475 N.W.2d 630, 634 (Iowa 1991); 31 Charles A. Wright & Victor J. Gold, Federal Practice and Procedure: Evidence § 7140, p. 242 (2000).

sole purpose of avoiding summary judgment in this action. As with R.C. 313.19, judicial estoppel renders the arguments and expert opinions that Roger Owensby died of a sudden heart attack inadmissible and a nullity.

Finally, Defendants' motion to strike the website medical publications appended to Plaintiff's Reply should be denied. Plaintiff has demonstrated that these internet documents are admissible and properly authenticated in accord with the Federal Rules of Evidence.

Therefore, Plaintiff's Motions for Partial Summary Judgment against the City of Cincinnati and its Police Officers (Doc. 88) should be granted.

Respectfully submitted,

/s/Paul B. Martins

| | |
|---|---|
| Mark T. Tillar (0029898) | James B. Helmer, Jr.  (0002878) |
| 240 Clark Road | Paul B.  Martins (0007623) |
| Cincinnati, Ohio  45202 | Frederick M. Morgan, Jr.  (0027687) |
| Telephone: (513) 761-2958 | HELMER, MARTINS & MORGAN CO., LPA |
| | Fourth & Walnut Centre, Suite 1900 |
| John J. Helbling (0046727) | 105 East Fourth Street |
| 3672 Springdale Road | Cincinnati, Ohio 45202-4008 |
| Cincinnati, Ohio 45251 | Telephone:    (513) 421-2400 |
| Telephone: (513) 923-9740 | Facsimile:    (513) 421-7902 |

*Trial Attorneys for Plaintiff*

20

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Plaintiff's Surreply Memorandum in Opposition to Defendants City of Cincinnati's and Thomas Streicher's Omnibus Motion (doc. 115 and doc. 129) and Defendant Police Officers' Motion (doc. 120 and doc. 130) Filed Pursuant to Court Order (Doc. 124), was electronically filed on April 16, 2004. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Paul B. Martins