Source: Legal > States Legal - U.S. > Ohio > Cases > OH Federal & State Cases, Combined
Terms: **sannes v. jeff wyler** (Edit Search)

✔Select for FOCUS™ or Delivery

*1999 U.S. Dist. LEXIS 21748, **

MICHELE **SANNES,** et al, Plaintiffs, v. **JEFF WYLER** CHEVROLET, INC., Defendants.

Case No. C-1-97-930

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

1999 U.S. Dist. LEXIS 21748

March 31, 1999, Decided
March 31, 1999, Filed

**DISPOSITION:** [*1] Defendant's Motion for Summary Judgment GRANTED, Plaintiffs' Motion for Summary Judgment DENIED and Defendant's Motion to Strike Affidavit DENIED AS MOOT.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant auto dealership and plaintiffs lessees brought motions for summary judgment in an action filed by plaintiffs, which alleged violations of the Credit Repair Organization Act, 15 U.S.C.S. § 1679 et seq., and the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345. Defendants also brought a motion to strike an affidavit submitted by plaintiffs.

**OVERVIEW:** Plaintiffs lessees filed an action against defendant auto dealership alleging violations of the Credit Repair Organization Act (CROA), 15 U.S.C.S. § 1679 et seq., and the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345. Both parties brought motions for summary judgment; defendants brought a motion to strike an affidavit. In granting defendant's summary judgment motion, the court noted that CROA was designed to prevent fraud and abuses caused by credit repair organizations, and held that defendant was not a credit repair organization. Although defendant used instrumentalities of interstate commerce to represent that it could assist consumers improve their credit rating, no payment was assessed for the financing service. Defendant's advertisement that implied that consumers with bad credit would receive a loan and re-establish their credit fell short of the egregious conduct described by the Federal Trade Commission, who was responsible for enforcing CROA. Also, the advertisement was published in the newspaper's automobile classified section, which indicated that the financing service was ancillary to defendant's primary business of selling and leasing motor vehicles.

**OUTCOME:** The court granted the motion for summary judgment by defendant auto dealership, holding that the Credit Repair Organization Act was inapplicable to defendant. The court ruled that it was not Congress's intent to include auto dealerships, who arrange for purchase financing ancillary to their primary business of selling and leasing motor vehicles, in the category of credit repair organizations.

**CORE TERMS:** repair, summary judgment, consumer, financing, dealership, motor vehicle,

advertisement, customers, arrange, exercise jurisdiction, credit rating, motor vehicles, package, automobile dealership, interstate commerce, state law claim, scam, contradiction, disclosure, ancillary, re-establish, wrecked, newspaper, advice, lease, supplemental jurisdiction, valuable consideration, original jurisdiction, consumer protection, consumer reports

## LexisNexis (TM) HEADNOTES - Core Concepts -  ♦ Hide Concepts

Antitrust & Trade Law > Consumer Protection

**HN1** ♦ It is mandatory that the credit repair organization give a copy of the disclosure to the consumer before a contract is signed. 15 U.S.C.S. § 1679c(a) and § 1679e(c)(1).  More Like This Headnote

Antitrust & Trade Law > Consumer Protection > False Advertising

**HN2** ♦ The stated purposes of the Credit Repair Organization Act are (1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations. 15 U.S.C.S. § 1679(b)(2).  More Like This Headnote

Antitrust & Trade Law > Consumer Protection > False Advertising

**HN3** ♦ Under the Credit Repair Organization Act "credit repair organization": (A) means any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of (i) improving any consumer's credit record, credit history, or credit rating; or (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i). 15 U.S.C.S. § 1679a(3)(A).  More Like This Headnote

Antitrust & Trade Law > Consumer Protection

**HN4** ♦ The Credit Repair Organization Act does not require that the credit repair organization actually perform a credit repair service. Liability is established if the organization represents that it can perform the service. 15 U.S.C.S. § 1679a(3)(A).  More Like This Headnote

**COUNSEL:** For MICHELE **SANNES,** ANDREW STRASINGER, plaintiffs: Robert Ferd Alsfelder, Jr, Cincinnati, OH.

For MICHELE **SANNES,** ANDREW STRASINGER, plaintiffs: Ronald Lee Burdge, Burdge Law Office, Dayton, OH.

For **JEFF WYLER** CHEVROLET, defendant: Norman I Barron, Michael S Barron, Barron Peck & Bennie, Cincinnati, OH.

**JUDGES:** Susan J. Dlott, United States District Judge.

**OPINIONBY:** Susan J. Dlott

**OPINION: ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment (doc. # 15), Plaintiffs' Motion for Summary Judgment (doc. # 16), and Defendant's Motion to Strike the

Affidavit of Remar Sutton (doc. # 17). Plaintiffs filed a Complaint against the Defendant, an automobile dealership from whom they leased a motor vehicle, alleging violations of the federal Credit Repair Organization Act ("CROA"), 15 U.S.C. § 1679 et seq., and the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code chapter 1345. Defendant moved for summary judgment on the federal law claim arguing that the CROA is not applicable **[*2]** to this situation. Plaintiffs moved for summary judgment on the sole issue of liability under the CROA. Upon consideration of the law and the facts, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment, **DENIES** Plaintiffs' Motion for Summary Judgment, and **DENIES AS MOOT** Defendant's Motion to Strike the Affidavit. The Court declines to exercise jurisdiction over the remaining state law claim.

## I. FACTS

Defendant **Jeff Wyler** Chevrolet, Inc. is an automobile dealership. On September 15, 1997 Plaintiffs Michele **Sannes** and Andrew Strasinger leased a motor vehicle from Defendant for personal, family, and household purposes. Defendant arranged for financing through Banc One Acceptance Corporation. That is, the motor vehicle was sold to Banc One and, through an agreement simultaneously entered into, Plaintiffs agreed to lease the motor vehicle from Banc One. Pursuant to this lease agreement, Plaintiffs paid Defendant $ 1346.62. Plaintiffs paid $ 446.62 of this amount in cash and $ 900.00 via trade-in equity.

Defendant advertised its dealership in the Cincinnati Enquirer, a newspaper which is widely distributed in several states. Defendant ran advertisements **[*3]** in August and September 1997 in the automobile classified section which read:

> HAVE YOU WRECKED YOUR CREDIT?
>
> You cannot be refused due to past credit history.
>
> WE UNDERSTAND YOUR CREDIT PROBLEMS!
>
> Putting your loan approvals in the hands of amateurs may hurt your chance of loan approval.
>
> **Re-establish your credit through one of the largest banks in Ohio!**
>
> Call 1-888-292-EGGS For Credit Info

Defendant has averred through its Finance and Information Manager, **Jeff** Jernigan, that Defendant gives advice or assistance to customers in submitting credit applications to finance payment as part of its efforts to sell and lease motor vehicles. Defendant contends that the cost of this service is a part of its general overhead. Defendant does not charge a separate fee for this service and the cost of the motor vehicles does not vary whether the motor vehicle is paid for in cash or through financing.

## II. ANALYSIS

### A. Motions for Summary Judgment

The only issue for the Court to decide in ruling upon the Motions for Summary Judgment is whether Defendant qualifies as a "credit repair organization" under the CROA. Defendant

moved for summary judgment on the grounds that [*4] it is not a credit repair organization, and therefore, the CROA is not applicable to it. Plaintiffs move for summary judgment on the grounds that Defendant is a credit repair organization and Defendant committed technical violations of the CROA. n1 In its Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment, Defendant does not contest that technical violations of the CROA occurred if the CROA is deemed applicable. Therefore, if the Court concludes that **Wyler** is a credit repair organization then the Court must conclude that Defendant is liable for violations of the CROA.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Plaintiffs allege without contradiction that they were not given a written disclosure form containing the precise wording of the disclosure found at 15 U.S.C. § 1679c(a). *HN1* It is mandatory that the credit repair organization give a copy of the disclosure to the consumer before a contract is signed. See 15 U.S.C. § 1679c(a) and § 1679e(c)(1). Plaintiffs also allege without contradiction that the Defendant failed to provide them with a notice of cancellation as required by 15 U.S.C. § 1679e(b).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*5]

The CROA is a consumer protection statute designed to prevent fraud and abuses caused by credit repair organizations. In general terms, the credit repair business "involves the marketing of credit repair services to consumers whose consumer reports contain adverse information that interferes with their ability to obtain credit. . . . These businesses, through advertisements and oral representations, lead consumers to believe that adverse information in their consumer reports can be deleted or modified regardless of its accuracy." Consumer Reporting Reform Act of 1994, H.R. Rep. No. 103-486, 1994 WL 164513, at 151 (1994). Congress feared that certain advertising and business practices of some credit repair organizations "worked a financial hardship upon consumers, particularly those of limited economic means and who are inexperienced in credit manners." 15 U.S.C. § 1679(a)(2).

The CROA aimed to curb abuses by credit repair organizations by requiring them to provide certain information and disclosures to consumers. *HN2* The stated purposes of the CROA are "(1) to ensure that prospective buyers of the services of credit repair organizations are provided [*6] with the information necessary to make an informed decision regarding the purchase of such services; and (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations." 15 U.S.C. § 1679(b)(2).

*HN3* Under the CROA, "credit repair organization":

> (A) means any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of--
> (i) improving any consumer's credit record, credit history, or credit rating; or
> (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i).

15 U.S.C. § 1679a(3)(A). The definition also provides for specific exclusions not applicable here. See 15 U.S.C. § 1679a(3)(B).

Defendant uses instrumentalities of interstate commerce to represent that it can provide or perform the service of assisting consumers to improve their credit rating. Plaintiffs [*7] have established, without contradiction by Defendant, that the auto dealership advertises in a regional newspaper, the Cincinnati Enquirer, which is distributed in interstate commerce. Moreover, the language of Defendant's advertisement--"Have you wrecked your credit? . . . Re-establish your credit through one of the largest banks in Ohio!"--implies that financing a new car purchase at **Wyler** Chevrolet will help consumers improve their credit rating. n2 Plaintiffs also present affidavit testimony that Defendant's sales representatives "provided [them] with advice and assistance with regard to improving credit record and credit history and credit rating." Affidavit of Andrew Strasinger P 5; Affidavit of Michele **Sannes** P 5. Defendant argues that it cannot be liable for promoting a credit repair service in regards to Plaintiffs because Plaintiffs did not consider themselves to have bad credit. $^{HN4}$The CROA, however, does not require that the credit repair organization actually perform a credit repair service. Liability is established if the organization represents that it can perform the service. See 15 U.S.C. § 1679a(3)(A).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The Court emphasizes that it would not consider **Wyler** Chevrolet to be a credit repair organization merely because it assists its customers in arranging financing for their motor vehicle purchases. Defendant advertised more than an ability to arrange or assist with financing. The advertisement stated that by allowing the dealership to arrange the financing, credit which had been "wrecked" could be "re-established." Defendant would be well-advised to modify the language of its advertisements.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*8]

Defendant admitted, through Jernigan's affidavit, that it regularly advises and provides assistance to potential customers in submitting credit applications and financing documents to third parties, such as Banc One. Defendant argues, however, that it cannot be considered a credit repair organization even though it provides such a service to consumers because it does not charge or accept the payment of money or other valuable consideration in return for the service. Defendant emphasizes that it does not charges a separate fee to consumers when it arranges for financing through a third party for the purchase or lease of its vehicles. Defendant points out that even after the dealership has prepared or helped prepare the consumer's credit application and credit has been approved, the consumer can terminate the transaction and no fee will be charged. Defendant argues that it bears the cost of this service as part of its overhead expenses. That is, the cost of purchasing the motor vehicle does not vary according to whether the consumer pays in cash or with financing.

Plaintiffs ask the Court to view the transaction in a different way. Plaintiffs argue that the Court must consider the [*9] transaction between the consumer and the auto dealership as a package. The dealership provides a package of goods and services to the consumer. The package includes both the receipt of a motor vehicle and the service of providing assistance with credit financing. Under Plaintiffs' theory, the price of the automobile encompasses the cost of the entire package.

The Court concludes that **Wyler** Chevrolet is not a credit repair organization. It is undisputed that Plaintiffs paid Defendant $ 446.62 in cash and $ 900 via trade-in equity. In exchange, Defendant arranged for financing through Banc One and Plaintiffs received the motor vehicle. The total cost to Plaintiffs, however, would have been the same if Plaintiffs had paid for the vehicle in cash. Plaintiffs did not pay a fee for the financing service if the cost of the vehicle would not have been reduced had Plaintiffs not received the financing service. For example, if the cost of a vehicle is $ 15,000 if **Wyler** Chevrolet arranges financing, but only $ 14,500 if

customers pay in cash, then the payment charged for the financing service would be $ 500. However, no payment is assessed for the financing service when customers are required **[*10]** to pay a total $ 15,000 even when paying in cash.

Moreover, auto dealerships do not seem to be the primary target Congress intended when it drafted this consumer protection statute. The administrative n3 and legislative records reviewed by the Court do not directly address the issue of whether the CROA should encompass organizations like an automobile dealership to whom credit services are ancillary to their primary business. The government records, however, refer to the targeted businesses as "fraudulent companies," see The Consumer Reporting Reform Act of 1994, S. Rep. 103-209, 1993 WL 516162, at 21 (1993), or as "bogus credit repair organizations" and "credit repair cons," see Credit Repair? Buyer Beware! FTC, States Announce Crackdown on Scams That Bilk Consumers, FTC press release, at 1-2 (March 5, 1998).

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n3 The statements of the Federal Trade Commission ("FTC") are relevant because compliance with the requirements of the CROA are to be enforced under the Federal Trade Commission Act, 15 U.S.C. § 41 et seq., by the FTC. The Court finds that the FTC press releases attached to Defendant's Motion for Summary Judgment are admissible even though they are not attached to an authenticating affidavit. The FTC press releases, printed from the FTC's government world wide web page, are self-authenticating official publications under Rule 902 (5) of the Federal Rules of Evidence.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*11]**

The Federal Trade Commission ("FTC") states that credit repair cons scam consumers by two methods. In the first, the credit repair organizations falsely promise that truthful, adverse information in a consumer's credit report can be removed. In the second, the organizations advise the consumer on how to illegally create a new credit history by applying to the Internal Revenue Service for an employee identification number. See Credit Repair? Buyer Beware! FTC, States Announce Crackdown on Scams That Bilk Consumers, FTC press release, at 2 (March 5, 1998). The advertisement by Defendant which implies that consumers with bad credit will receive a loan and re-establish their credit falls far short of the egregious conduct described by the FTC. Also, the advertisement was published in the automobile classified section of the newspaper. The financing service was plainly ancillary to **Wyler** Chevrolet's primary business of selling and leasing motor vehicles. The Court does not believe that Congress intended to include auto dealerships, who arrange for purchase financing ancillary to their primary business of selling and leasing motor vehicles, in the category of credit repair organizations. **[*12]** n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n4 The Court is aware that the Honorable Magistrate Judge Merz stated in dicta that auto dealerships may be covered under the CROA. See Lovely v. Peffley Ford, Inc., No. C-3-97-435, Report and Recommendation, slip op. at 9 (S.D. Ohio Aug. 25, 1998). In that same opinion, Judge Merz dismissed the Complaint against Peffley Ford on other grounds and that dismissal was adopted by this Court. See Lovely v. Peffley Ford, Inc., No. C-3-97-435, Order, slip op. at 1 (S.D. Ohio Sept. 15, 1998). This Court did not comment on Magistrate Judge Merz's dicta regarding the applicability of the CROA at that time, and the Court now respectfully disagrees with that opinion.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Therefore, the CROA is inapplicable to Defendant **Jeff Wyler** Chevrolet. The Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

### B. Motion to Strike

Defendant moves to strike the affidavit of Remar Sutton, attached to Plaintiffs' Motion for Summary Judgment, on the basis that **[*13]** it contains hearsay allegations, is not based on personal knowledge, and improperly states conclusions on pure questions of law. Sutton's lengthy affidavit criticizes the general practices of auto dealerships across the nation and touches only briefly on the narrow issue at hand. The Court did not rely upon the affidavit of Remar Sutton in reaching its conclusion that Defendant is not a credit repair organization. Therefore, the Court **DENIES AS MOOT** the Motion to Strike.

### C. Remaining State Law Claim

The Court had original jurisdiction over the federal law CROA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law OCSPA claim pursuant to 28 U.S.C. § 1367. Section 1367 gives the Court discretionary authority to decline to exercise supplemental jurisdiction when, as is the situation here, the Court has dismissed the claims over which it had original jurisdiction. See Hankins v. The Gap, Inc., 84 F.3d 797, 802-03 (6th Cir. 1996). The Court declines to exercise jurisdiction over the OCSPA claim.

### III. CONCLUSION

The Court concludes that the CROA is inapplicable to Defendant **[*14]** **Jeff Wyler** Chevrolet. Therefore, Defendant's Motion for Summary Judgment (doc. # 15) is hereby **GRANTED** and Plaintiffs' Motion for Summary Judgment on the issue of liability under the CROA is hereby **DENIED**. Because the Court did not rely upon the Affidavit of Remar Sutton in reaching its decision on the Motions for Summary Judgment, Defendant's Motion to Strike is hereby **DENIED AS MOOT**. Finally, the Court declines to exercise jurisdiction over the remaining state law claim.

**IT IS SO ORDERED.**

Susan J. Dlott

United States District Judge

### JUDGMENT IN A CIVIL CASE

Decision by Court: This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED

. . .The Court concludes that the CROA is inapplicable to Defendant **Jeff Wyler** Chevrolet. Therefore, Defendant's Motion for Summary Judgment (Doc. 15) is hereby GRANTED and Plaintiffs' Motion for Summary Judgment on the issue of liability under the CROA is hereby DENIED. Because the court did not rely upon the afffidavit of Remar Sutton is hereby DENIED as MOOT. Finally, the Court declines to exercise jurisdiction over **[*15]** the remaining state law claim.

March 31, 1999

Source: Legal > States Legal - U.S. > Ohio > Cases > **OH Federal & State Cases, Combined** [i]
Terms: **sannes v. jeff wyler**  (Edit Search)
View: Full
Date/Time: Friday, April 16, 2004 - 9:54 AM EDT

\* Signal Legend:
● - Warning: Negative treatment is indicated
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
🅐 - Citing Refs. With Analysis Available
🅘 - Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.