```
              IN THE UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF OHIO
                       WESTERN DIVISION
```

| | | |
|---|---|---|
| **ESTATE OF ROGER D. OWENSBY,** | : | CASE NO. C-1-01-769 |
| **Plaintiff** | : | (Judge S. Arthur Spiegel) |
| **vs.** | : | **MOTION *IN LIMINE* TO EXCLUDE PLAINTIFF'S POLICE EXPERT MICHAEL D. LYMAN, Ph.D.** |
| **CITY OF CINCINNATI, et. al.,** | : | |
| **Defendants.** | : | |

## MOTION

Now come the Defendants City of Cincinnati and Police Chief Thomas J. Streicher, Jr., by and through counsel, and hereby move the Court *in limine* to exclude all testimony of Plaintiffs' police expert, Michael D. Lyman, Ph.D., pursuant to Federal Rules of Evidence 702, 704, and 403. Dr. Lyman's testimony is unreliable, irrelevant, lacks proper foundation, and can not assist the jury.

This Motion is more fully supported by the accompanying Memorandum and March 31, 2004 deposition of Michael D. Lyman, Ph.D., which is simultaneously being filed with the Court.

Respectfully submitted,

JULIA L. McNEIL (0043535)
City Solicitor

/s/ Neil F. Freund
Neil F. Freund (#0012183)
Vaseem S. Hadi (#0075617)
FREUND, FREEZE & ARNOLD
One Dayton Centre
1 South Main Street,
Suite 1800
Dayton, OH 45402-2017
Ph.(937) 222-2424

/s/*Geri Hernandez Geiler*
Geri Hernandez Geiler (#0042081)
Sr. Assistant City Solicitor
Julie Bissinger
Chief Counsel
Room 214, City Hall
801 Plum Street
Cincinnati, OH 45202
Ph.(513) 352-3338

Trial Attorneys for Defendants
City of Cincinnati and Police
Chief Thomas J. Streicher, Jr.

**MEMORANDUM**

I.  **STATEMENT OF FACTS**

This case involves the death of plaintiffs' decedent, Roger D. Owensby, Jr., after the decedent violently resisted arrest on November 7, 2000. (Compl. filed Nov. 8, 2001.) On this date, Cincinnati police officers Patrick Caton, David Hunter and Robert Jorg approached the decedent in a gas station parking lot. (Id.¶5.) These officers positively identified the decedent as a man wanted in connection with drug dealing and obstruction of justice activities. (Id. ¶4.) Officer Hunter specifically recognized decedent as the same man who eluded police custody for these activities a few weeks earlier. (Id.)

After the officers approached decedent, for unexplained reasons, the decedent became agitated, uncooperative and refused to assist.(Id.¶5.)  A chase and struggle ensued after the decedent fled. Eventually, the officers placed him under arrest and inside a Golf Manor police cruiser.(Id. ¶¶ 7,8.)

At a still undetermined point in time during this arrest, the decedent experienced a sudden cardiac arrest. (Affidavits of Defense Medical Experts Tom Neuman, M.D. and Charles Wetli, M.D. previously filed.)  The officers commenced CPR efforts and called emergency medical services immediately.(Compl.) The decedent died after transport to University Hospital. The decedent's family and next-of-kin now claim excessive force might have occurred. (Id.

3

¶¶5-6.) Therefore, on November 8, 2001, the plaintiff, as Administrator of the Estate of Decedent, filed a lawsuit against the City of Cincinnati Chief of Police, Thomas Striecher, Jr., individual police officers and other defendants alleging federal and state claims.

On March 31, 2004, defense counsel cross-examined Plaintiff's purported police expert, Michael D. Lyman, Ph.D. (Deposition filed simultaneously.) Despite a complete lack of the requisite background and training to qualify as an expert, Dr. Lyman expects to opine on use of force, medical care and Cincinnati police policies as related to the underlying case. For example, Dr. Lyman has not worked as a police officer since 1986. (Deposition of Dr. Lyman at 20-21)(hereinafter "Dr. Lyman depo.") In turn, he totally lacks any experience in arresting suspects or use of force procedures during the past eighteen years. (Id.) In fact, Dr. Lyman has never worked as a uniformed officer, served on any metropolitan police force, or performed street police duties at any time in his career. (Id. at 28-29.)

Moreover, Dr. Lyman's prior experience as a use of force instructor, between 1986 and 1989, fails to provide the requisite foundation for expert status. Dr. Lyman lacks specialized training in use of force and has never been certified as a use of force instructor by any certifying agency. (Id. at 81.) He cannot remember one situation where he employed force techniques

4

to capture a fleeing suspect (Id. at 12-13.)  He further lacks any experience where force was needed to take a suspect off his feet. (Id. at 13.)  Dr. Lyman never taught on the specific "use of force" techniques at issue in this controversy; head/neck restraints and mace.  (Id. at 63.)  As such, Dr. Lyman conceded his experience as a police officer, which occurred decades ago, does not render him an expert on these issues under these circumstances.  (Id. at 43).

Finally, Dr. Lyman's research and writing background is insufficient to render him as a police expert in this case.  Dr. Lyman lacks statistical knowledge on data on use of force in urban settings.  (Id. at 31.)  He has not written any articles on use of force.  (Id. at 27.)  While Dr. Lyman was involved in preparing several textbooks addressing use of force, these texts rely solely upon Dr. Lyman's "ability to research" and not any first-hand professional experience.  (Id. at 26.)  Without the requisite personal experience and professional background to render opinions on use of force and police practices, Dr. Lyman's testimony will be highly prejudicial, confusing and irrelevant to the jury.  For these reasons, defendants Cincinnati and Police Chief Streicher move the Court to exclude Dr. Lyman as an expert witness.

II. **LAW & ARGUMENT**

   A. **Dr. Lyman lacks the requisite foundation in "use of force" techniques and handling resisting suspects to qualify as a police expert.**

Under the Federal Rules of Evidence, any proffered police expert must have current, ongoing and first-hand experience as a police officer in "use of force" settings to qualify as a competent expert witness in this dispute. Fed. R. Evid. 403, 702, 703. Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Rule 702 requires that the evidence or testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." This condition goes primarily to relevance. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." 3 Weinstein & Berger P702[02], p. 702-18. See also United States v. Downing, 753 F.2d 1224, 1242 (CA3 1985) ("An additional consideration under Rule 702 -- and another aspect of relevancy -- is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute").

6

In <u>Daubert v. Merrill Dow Pharmaceuticals, Inc.,</u> 509 U.S. 579, 589-590 (1993), the United States Supreme Court held that while scientific testimony need not be "generally accepted" to be admissible under the Federal Rules of Evidence, Rule 702 does assign to the trial judge the task of ensuring that an expert's testimony both rests on reliable foundation and is relevant to the issues in the case.  While the Court's analysis in <u>Daubert</u> was limited to scientific testimony of an expert, the United States Supreme Court has since expanded its application to all expert testimony, including that based on "technical" or other "specialized knowledge."  <u>Kumho Tire Co. v. Carmichael,</u> 526 U.S. 137, 119 S.Ct. 1167 (1999).

The Sixth Circuit has also held that the "gatekeeper" function of federal judges is applicable to all expert testimony offered under Rule 702.  <u>Berry v. Detroit,</u> 25 F.3d 1342, 1350 (6th Cir. 1994).  The grant of testimonial latitude to all experts under the Rules of Evidence which is unavailable to lay witnesses, is based on the assumption that an expert's opinion will have a reliable basis in the knowledge and experience in the expert's discipline.  <u>Daubert,</u> supra at 592.

<u>Daubert</u> suggests a three step analysis to be used by the trial judge in assessing the admissibility of such testimony, including: (1) a reliability review as to whether the opinion the expert will offer is properly the subject of scientific,

7

technical or other specialized knowledge as required by Federal Rule of Evidences 104 and 702; (2) a relevancy determination of whether the expert's opinion will assist the trier of fact to understand the evidence or to determine a fact in issue, also as required by Federal Rules of Evidence 104 and 702; and (3) a review of the interplay with other federal evidentiary rules such as whether the potential for unfair prejudice outweighs the probative value under Federal Rule of Evidence 403.  See Daubert, *supra.*  Without the requisite knowledge and experience, the witness's opinion will not be reliable and therefore, will not be admissible.

In Berry, *supra,* the Sixth Circuit applied the Daubert criteria to a purported police policies and practice expert and provided much insight into the requirements which a police procedures expert or "non-scientific expert" must meet in order to testify in a federal district court in the Sixth Circuit. Id. at 1349.  The purported expert, "Postill," had taken courses in criminal justice, he had been employed as a deputy sheriff in 1966 but received no formal training for the position, as a deputy he had performed general patrol, investigation work, and responded to calls, he worked for the Justice Department developing criteria for training for officers, he conducted seminars in police management techniques and taught seminars,

8

and formed a consulting firm consisting only of himself. Id. at 1348-1349.

The Sixth Circuit concluded that such qualifications did not rise to the level necessary to testify as a non-scientific expert on police policies and practice and specifically, to the opinion that lax discipline of officers leads to increased inappropriate use of force, that is, killing of suspects, by the entire force. Id. "The fact that some of this [qualifications] would sound impressive to a jury is its vice not its virtue." Id. at 1349.

Dr. Lyman's deposition reveals a complete lack of any relevant, first-hand experience, current or otherwise, on "use of force" in fleeing suspects situations and police policies. Again, Dr. Lyman has not worked as a police officer since 1986. (Deposition of Dr. Lyman at 20-21)(hereinafter "Dr. Lyman depo.") In turn, he totally lacks any experience in arresting suspects or use of force procedures during the past eighteen years. (Id.) In fact, Dr. Lyman has never served as a uniformed officer, served on any metropolitan police force, or performed street police duties at any time in his career. (Id. at 28-29.)

Moreover, Dr. Lyman's prior experience as a use of force instructor, between 1986 and 1989, fails to provide the requisite foundation for expert status. Dr. Lyman lacks specialized training in use of force and has never been

9

certified as a use of force instructor by any certifying agency. (Id. at 81.) He cannot remember one situation where he employed force techniques to capture a fleeing suspect (Id. at 12-13.) He further lacks any experience where force was needed to take a suspect off his feet. (Id. at 13.) Dr. Lyman never taught on the specific "use of force" techniques at issue in this controversy; head/neck restraints and mace. (Id. at 63.) As such, Dr. Lyman conceded his experience as a police officer, which occurred decades ago, does not render him an expert on these issues under these circumstances. (Id. at 43).

Finally, Dr. Lyman's research and writing background is insufficient to render him as a police expert in this case. Dr. Lyman lacks statistical knowledge on data on use of force in urban settings. (Id. at 31.) He has not written any articles on use of force. (Id. at 27.) While Dr. Lyman was involved in preparing several textbooks addressing use of force, these texts rely solely upon Dr. Lyman's "ability research" and not any first-hand professional experience. (Id. at 26.)

As such, it is undisputed Dr. Lyman does not possess the requisite experience or expertise to render a reliable, expert opinion in this case. His credentials do not qualify him to know anything more than any member of the jury in this case about whether the actions of the Defendant Officers or the City were justified. The grant of testimonial latitude to all experts is

10

based on the assumption that an expert's opinion will have a reliable basis in the knowledge and experience in the expert's discipline. <u>See</u> <u>Daubert,</u> *supra* at 592.  Dr. Lyman lacks such necessary knowledge and experience in the area of police policies and procedures.  Therefore, his opinions must be excluded pursuant to the Federal Rules of Evidence.

**B.**     **<u>Dr. Lyman's medical opinions should be excluded because he lacks the requisite specialized knowledge, education and training to qualify as a medical expert.</u>**

Assuming arguendo that Dr. Lyman might qualify as a police expert, there is no evidence in the record to qualify him as an expert on the medical issues.  Dr. Lyman's deposition noticeably fails to set forth any medical background, training or experience in urgent or emergency care medicine.  Instead, the deposition only addresses use of force and the failure to provide medical care are based solely upon the opinion of the coroner as to cause of death in this case. Only a competent, qualified medical expert, who also possesses knowledge of police issues, would be competent to evaluate the defendant officers; conduct and the adequacy of Cincinnati' police polices and customs in urgent medical care situations.  Because Dr. Lyman's opinions involve a combination of police issues, medical issues and legal conclusions, all areas Dr. Lyman has not demonstrated the requisite foundation to comment upon, it is impossible to separate any appropriate testimony from inadmissible statements.

11

Under these circumstances, Dr. Lyman's proposed medical opinions are unreliable, unfounded and therefore, inadmissible.

## CONCLUSION

For the foregoing reasons, defendants City of Cincinnati and Police Chief Thomas J. Streicher, Jr. respectfully request the Court exclude plaintiff's proposed police expert Michael D. Lyman, Ph.D. as a witness.

>Respectfully submitted,
>
>JULIA L. McNEIL (0043535)
>City Solicitor
>
>/s/ Neil F. Freund
>NEIL F. FREUND (#0012183)
>Vaseem S. Hadi (#0075617)
>One Dayton Centre
>1 South Main St.
>Suite 1800
>Dayton, Ohio  45402-2017
>Ph. (937) 222-2424
>Fax (937) 2225369
>
>
>/s/ Geri Hernandez Geiler
>GERI HERNANDEZ GEILER (0042081)
>Sr. Assistant City Solicitor
>Julie Bissinger(0012055)
>Chief Counsel
>Room 214 City Hall
>801 Plum Street
>Cincinnati, Ohio  45202
>Ph. (513) 352-3338
>Fax (513) 352-3750
>email:geri.Geiler@cincinnati-oh.gov
>
>Trial Attorneys for Defendant City of Cincinnati and Police Chief Thomas J. Streicher, Jr.

**PROOF OF SERVICE**

This will certify that a copy of the foregoing was served upon counsel of record by email this 26${}^{th}$ day of April, 2004:

Mark T. Tillar (0029898)
240 Clark Road
Cincinnati, OH 45202
(513) 761-2958
Attorney for Plaintiff

John Helbling (0046727)
3672 Springdale Road
Cincinnati, OH 45251
513-923-9740
Attorney for Plaintiff

Paul B. Martins
HELMER, MARTINS & MORGAN CO.
Fourth & Walnut Centre, Suite 1800
105 East 4${}^{th}$ Street Cincinnati, Ohio 45202-4008
(513) 421-7902
Attorney for Plaintiff

Donald E. Hardin (0022095)
HARDIN, LEFTON, LAZARUS &
MARKS, LLC
915 Cincinnati Club Building
30 Garfield Place
Cincinnati, OH 45202
513-721-7300
Special Counsel for Defendants
Robert Blaine Jorg, Patrick Caton,
Darren Sellers, Jason Hodge, and
Victor Spellen

Wilson G. Weisenfelder, Jr.  (0030179)
RENDIGS, FRY, KIELY & DENNIS, LLP
900 Fourth & Vine Tower
Cincinnati, OH 45202
513-381-9200
Attorney for Defendants
Village of Golf Manor,
Chief Stephen Tilley,
Officer Robert Heiland, and
John Doe #7 nka Chris Campbell

Ravert J. Clark
114 East 8th Street
Suite 400
Cincinnati, OH 45202
(513) 587-2887
Attorney for Defendant
Cincinnati Police Officer
David Hunter

                                                      S/Neil F. Freund
                                                      Neil F. Freund

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**