UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ESTATE OF<br>ROGER D. OWENSBY JR., et al.,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CINCINNATI, et. al.,<br><br>Defendants. | Case No. 01-CV-769<br><br>Senior Judge S. Arthur Spiegel |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT POLICE OFFICERS' MOTION *IN LIMINE*
TO EXCLUDE THE DISCIPLINARY ACTION AND INVESTIGATIVE HISTORY
OF DEFENDANT POLICE OFFICERS (Doc. 121)**

Defendant Police Officers Caton, Hodge, Jorg, Sellers and Spellen ("Defendant Officers") have filed a motion *in limine* to preclude all evidence and references to disciplinary actions and/or history of:

1. All Cincinnati police officers prior to November 7, 2000; and

2. Themselves, in connection with their killing of Mr. Owensby on November 7, 2000 or anything else thereafter.[1]

While defendants' desire to rewrite history is understandable, their motion is ill-conceived and destined to fail. First, certain of these officers—notably, Defendant Caton—have a history of referring to African-American citizens as "niggers" and assaulting African-American citizens upon the flimsiest purported provocation.

---

[1] The City has also moved *in limine* to preclude the same evidence (Doc. 109) to which we responded on April 9, 2004. (Doc. 126).

Moreover, Officer Caton, immediately before he participated in the killing of Mr. Owensby, engaged in drunken driving, possession of unauthorized weapons, and the like. All of this evidence may at some point be relevant—for example, to prove habit, or to impeach testimony regarding the officers' supposed rectitude. Its admissibility *vel non* will be governed by the rules of evidence, but the question is patently inappropriate for liminal resolution.

Additionally, all defendant officers except Jorg were found to have violated police procedures in connection with the killing of Roger Owensby, Jr. We have demonstrated repeatedly that where administrative findings were made against the officers, they are collaterally estopped from denying the conduct for which they were disciplined, and collaterally estopped from denying that such conduct constituted violations of procedure. It likely will be necessary to use their post-killing disciplinary files to demonstrate to the Jury why they are estopped.

Finally, the post-homicide investigation, including the criminal trials against Caton and Jorg, the Internal Affairs investigations, and the Office of Municipal Investigations inquiry have given rise to a massive record of statements by the defendants and other witnesses. Those statements, many of which are tape-recorded and many of which are under oath, represent by far the best and most contemporaneous record of many of the events at issue in this case. The defendants cannot rationally expect this case to be tried as though such evidence does not exist.

It is the job of counsel to assist the Court in presenting cases to juries and, with appropriate limiting instructions if necessary, to help the jury understand the impact of any particular piece of evidence as to a particular issue or party. Excluding broad

categories of patently-relevant evidence, and imploring that the case be tried in a vacuum, is simply inappropriate here.

The Motion *in Limine* should be denied.

## I.     Argument

### A.     The Facts Underlying Disciplinary Encounters may be Relevant to the Claims Against the Officers, and are Clearly Relevant to the Case Against the City.

Several of the defendant officers in this case participated in prior use-of-force encounters which eerily mirror the one which culminated in Roger Owensby, Jr.'s death on November 7, 2000, and at least two of them have a demonstrated history of racial bias. These facts were known to the Police Division. Whether this evidence will be relevant to issues at trial cannot be predicted with certainty, but it is likely appropriate in the context of demonstrating that the City's *de facto* policies were a factor contributing to Mr. Owensby's killing. It may also be relevant to prove, for example, lack of mistake or motive on the part of the defendant officers. Accordingly, this Court should follow the instructions of the United States Court of Appeals for the Sixth Circuit: "Orders *in limine* which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise."[2]

The defendants rely on Rules 403, 404(b), 407 and 801(c), Fed. R. Evid., as support for their Motion In Limine, none of those Rules so clearly prevent Plaintiff's use of evidence regarding discipline to or after November 7, 2000.

Rule 403 prohibits the introduction of evidence whose probative value is sub-

---

[2] *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).

stantially outweighed by the danger of unfair prejudice. The term "unfair prejudice" speaks to the capacity of some concededly relevant evidence to lure the trier of fact into making a finding of fact on grounds different from proof specific to that fact.[3] Within the context of Rule 403, unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, although not necessarily, an emotional one."[4]

As to Rule 404, "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character."[5] The disciplinary actions taken against the officers prior to November 7, 2000 may provide evidence of intent and absence of mistake in the alleged use of excessive force by the Defendant officers.[6] This evidence may also be used to impeach an officer's testimony or call into question his credibility.[7] Furthermore, the evidence gathered in these proceedings and the investigations leading up to them provide reliable insight into the City's policies and customs in force at the time of Mr. Owensby's death.[8]

---

[3] *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

[4] *Id.*

[5] *Huddleston v. United States*, 485 U.S. 681, 686 (1988). With respect to Rule 404(b) alone, prior to Rule 403 balancing, *Huddleston* states that evidence of other bad acts "should be admitted if there is sufficient evidence to support a finding by a jury that a defendant committed the similar act." *Id.* 685.

[6] *United States v. Mohr*, 318 F.3d 613 (4th Cir. 2003); *Trahan v. City of Oakland*, 1992 U.S. App. Lexis 8566, 7 (9th Cir. 1992) (attached).

[7] *Kelly v. Ward*, 1994 U.S. Dist. Lexis 21511 (S.D. Ohio 1994) (attached).

[8] *Foley v. City of Lowell*, 948 F.2d 10, 14 (1st Cir. 1991), *citing Bordanero v. McLeod*, 871 F.2d 1151, 1167 (1st Cir. 1989) ("Post-event evidence can shed some light on what

As to Rule 407 and the Defendant Officers' claim that use by Plaintiff of evidence from the defendant officers' disciplinary proceedings is improper use of a subsequent remedial measure, the Defendant Officers need to read the entire rule. Rule 407 only applies to bar evidence of remedial measures used to prove negligence—not an issue in this case—or culpable conduct. The Sixth Circuit has looked at the culpable-conduct issue and allowed such evidence. Moreover, we may well need to introduce the evidence of the disciplinary proceedings for numerous reasons other than to show culpable conduct. Examples include impeachment of testimony of officers or other City officials and affirmative use of judicial estoppel or collateral estoppel.[9]

As to Rule 801(c), the "records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . factual findings resulting from an investigation made pursuant to authority granted by law" are excepted from the hearsay rule by Rule 803(8)(C).[10] The investigative reports of Cincinnati's Office of Municipal Investigation (OMI) and the Cincinnati Police Division's Internal Investigations Section (IIS) are admissible.[11]

---

policies existed in the city on the date of an alleged deprivation of constitutional right").

[9] *See e.g.* Doc. 108, Plaintiff's Reply Memo in Support of Partial Summary Judgment, pp. 18-21.

[10] Fed. R. Evid. 803(8)(C).

[11] *Carpenter v. City of Cincinnati*, 2003 U.S. Dist. LEXIS 7105, *15-16 (S.D. Ohio 2003) (attached).

### B. Defendants are Collaterally Estopped From Denying the Conduct Which Led to Their Discipline For Killing Roger Owensby, And Such Evidence Therefore Is Admissible

We have repeatedly demonstrated that when a police officer is subjected to discipline, he or she is collaterally estopped from denying that the conduct which gave rise to the discipline occurred. Indeed, the disciplinary findings resulting from the Owensby homicide and the findings against the defendant officers in this case that they used inappropriate force, denied Mr. Owensby medical care, and otherwise violated Cincinnati Police Division policies and procedures are clearly admissible. The officers are "precluded from relitigating [those issues] in this action." *Greene v. Distelhorst,* 1997 U.S. App. LEXIS 15461 at *10-11 (6th Cir. 1991) (attached); accord *Czajkowski v. City of Chicago,* 810 F Supp. 1428, 1434 (N.D. Ill. 1993) (officer estopped from contesting facts of assault on citizen where disciplined and convicted therefor); *Wilson v. Chicago,* 900 F. Supp. 1015, 1027 (N.D. Ill. 1995) (police officers collaterally estopped from denying use of excessive force where disciplinary proceedings resulted in findings of excessive force).

Rather than attempt to distinguish this case from *Czajkowski, Green,* and *Wilson* (an impossible task), defendants invoke the inapposite, relying on *Maddox v. Los Angeles*, 792 F.2d 1408 (9th Cir. 1986) for the proposition that "disciplinary measures taken by the city against the officer" should be liminally excluded. That reliance is sadly misplaced for one simple reason: There is no indication in *Maddox* that the officer was, in fact, disciplined: That is, nothing was resolved against him. That is not the case here. Rather, the City took positions regarding the officers' conduct on which it is

estopped from flip-flopping, and the officers, afforded due process, lost issues which they are estopped to deny.

Whether and how the evidence will be presented to the Court for admission remains to be seen. What is inescapable, however, is that this case is *not* a *tabula rasa*, and that its history is inextricably bound with its present.

## II. Conclusion

The Defendant Officers' Motion to eliminate from this case all evidence and references to disciplinary actions and/or investigative history prior to and after November 7, 2000 is ill-conceived. As to prior disciplinary records of the officers, it may be necessary to seek its admission against the officers to show motive or absence of mistake, or for rebuttal, and it is part of the policies-and-procedures case against the City. As to the disciplinary proceedings resulting from the killing of Mr. Owensby, there are certain aspects of those proceedings by which some of them are bound, and there are many statements in the transcripts resulting from those proceedings regarding which they will be cross-examined.

The City's Motion should be denied.

Respectfully submitted,

/s/ James B. Helmer, Jr.
James B. Helmer, Jr.  (0002878)
Paul B.  Martins (0007623
Frederick M. Morgan, Jr.  (0027687)
HELMER, MARTINS & MORGAN CO., LPA
Fourth & Walnut Centre
Suite 1900
105 East Fourth Street
Cincinnati, Ohio 45202-4008
Telephone:    (513) 421-2400
Facsimile:    (513) 421-7902

Trial Attorney for Plaintiff

CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing Plaintiff's Memorandum in Opposition to Defendants' Liminal Motion to Exclude the Disciplinary Action and History of Cincinnati Police Officers was electronically filed on April 29, 2004.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                                                       /s/ James B. Helmer, Jr.