1992 U.S. App. LEXIS 8566, *

88 of 100 DOCUMENTS

MARY TRAHAN, Plaintiff-Appellant, v. CITY OF OAKLAND; GABRIEL CERVANTES, Defendants-Appellees.

No. 89-16573

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

1992 U.S. App. LEXIS 8566

November 5, 1991, Argued and Submitted, San Francisco, California
April 20, 1992, Filed

**NOTICE:** [*1]

THIS DISPOSITION IS NOT APPROPRIATE FOR PUBLICATION AND MAY NOT BE CITED TO OR BY THE COURTS OF THIS CIRCUIT EXCEPT AS PROVIDED BY THE 9TH CIR. R. 36-3.

**SUBSEQUENT HISTORY:** *Reported as Table Case at 960 F.2d 152, 1992 U.S. App. LEXIS 23274.*

**PRIOR HISTORY:** Appeal from the United States District Court for the Northern District of California. D.C. No. CV-88-0204-DLJ. D. Lowel Jensen, District Judge, Presiding.

**DISPOSITION:** REVERSED AND REMANDED.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**JUDGES:** Before: BOOCHEVER, NORRIS, and KLEINFELD, Circuit Judges

**OPINION:**

### MEMORANDUM

Mary Trahan filed a section 1983 and state law assault and battery suit against Gabriel Cervantes, a police officer, and the City of Oakland. She alleged excessive use of force. The jury rendered a verdict in favor of Cervantes and the City.

On appeal, Trahan argues that (1) the district court improperly asserted jurisdiction in this case; (2) the district court erred in allowing Cervantes's counsel to use her peremptory challenges to exclude all black jurors from the jury panel; and (3) the district court committed reversible error in several of its evidentiary and other trial rulings.

We uphold the district court's jurisdiction, but reverse because the district court abused its discretion in excluding evidence of Officer Cervantes's prior acts of excessive use of force and of [*2] his reputation for untruthfulness.

I

As an initial matter, we must decide whether Trahan is correct in arguing that the district court improperly asserted jurisdiction because defendants' motion for removal was not filed within the thirty-day period required by *28 U.S.C. § 1446*. We uphold jurisdiction without deciding the issue of the timeliness of the removal petition because Trahan failed to preserve the issue for appeal. The statutory time limitation for removal petitions is merely a formal and model requirement and is not jurisdictional. See *Fristoe v. Reynolds Metals Co., 615 F.2d 1209, 1212 (9th Cir. 1980)*. Under Ninth Circuit precedent, a party preserves this issue for appeal only if she (1) moves to remand the action to state court and (2) seeks an interlocutory appeal of the district court's order denying her motion to remand. See *Sorosky v. Burroughs Corp., 826 F.2d 794, 798 (9th Cir. 1987)*. Although Trahan moved to remand the action to state court, she did not seek an interlocutory appeal. She has, therefore, failed to preserve this issue for appeal.

II

Appellant Trahan next contends that the district court erred in [*3] refusing to allow her to introduce evidence of Officer Cervantes's prior acts of excessive use of force against minorities in his duties as a police officer. The admissibility of "other acts" evidence is governed by *Federal Rule of Evidence 404(b)*, which provides that:

1992 U.S. App. LEXIS 8566, *

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In determining whether evidence of other wrongful acts is admissible under the *Fed. R. Evid. 404(b)* exceptions, we apply a four factor test that we articulated in *United States v. Bailleaux, 685 F.2d 1105, 1110 (9th Cir. 1982)*, and modified in *United States v. Miller, 874 F.2d 1255, 1268 (9th Cir. 1989)*: (1) "'There [must be] sufficient evidence to support a finding by the jury that the defendant committed the similar act.'" *Miller, 874 F.2d at 1268* (quoting *Huddleston v. United States, 108 S. Ct. 1496, 1499 (1988))*. [*4] (2) "The prior [act] must not be too remote in time from the commission of the [present wrong]." *Bailleaux, 685 F.2d at 1110*. (3) "The prior . . . conduct must, in some cases, be similar to the offense charged." Id. (4) "The prior conduct must be introduced to prove an element of the charged offense that is a material issue in the case." Id.

In a motion in limine, Trahan moved to admit evidence of the other wrongful acts under the *Fed. R. Evid. 404(b)* exceptions to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" with respect to the federal section 1983 claim. The district court excluded the evidence on the ground that none of the exceptions was applicable. Focusing in particular on the use of the prior acts to prove intent to use excessive force, the court invoked *Graham v. Connor, 490 U.S. 386, 397 (1989)* and held that, because intent is not an element of a section 1983 unreasonable force claim, the evidence may not be admitted to prove intent. In essence, the district court found that Graham rendered the evidence inadmissible under prong four of the Bailleaux [*5] test. *Bailleaux, 685 F.2d at 1110*. ("The prior conduct must be introduced to prove an element of the charged offense that is a material issue in the case.").

Subsequently, Trahan moved to introduce the same evidence to prove intent under the state law assault and battery claim. Relying on a California court of appeal opinion, *Andrews v. City and County of San Francisco, 205 Cal. App. 3d 938, 945 (1988)*, Trahan argued that, because intent is an element of the state law claim, evidence of other wrongs may be admitted to prove intent. The district court denied the motion first on the ground that the evidence was inadmissible because assault and battery "is a general intent crime in California [and] one can prove it without getting into areas of specific intent." In the alternative, the district court conducted the section 403 balancing inquiry and held that the probative value of the testimony is outweighed by its potential for prejudice. The court said, "Your argument about the use of [the other acts] as probative evidence of the intent necessary in a state action, is of marginal relevance as compared to its prejudice."

We hold that the [*6] district court was correct in holding that the evidence was inadmissible on the federal law claim. Because intent is not an element of the Fourth Amendment claim, prong four of the Bailleaux test precludes the admission of the evidence of other acts. See *United States v. Bailleaux, 685 F.2d 1105, 1110 (9th Cir. 1982)* ("The prior conduct must be introduced to prove an element of the charged offense that is a material issue in the case."). n1

> n1 For the Fourth Amendment claim, Trahan would be able to introduce evidence of intent for purposes of recovering punitive damages. *Smith v. Wade, 461 U.S. 30, 56 (1983)*. Indeed, the district court ruled that, if liability were found at trial, it would allow a subsequent trial for punitive damages where evidence of intent could be introduced.

Trahan, however, has the better of the argument with respect to the state law claim. As far as the state law claim is concerned, the district court appears to have misread *Andrews, 205 Cal. App. 3d at 945*, [*7] another case of police brutality which is on all fours with this case. In Andrews, the court considered the admissibility of an officer's acts of excessive use of force under a California rule of evidence which is materially indistinguishable from *Fed. R. Evid. 404(b)*. Reasoning that "evidence that [the officer] had a practice of bullying and assaulting other persons under his custody without provocation or apparent reason would tend to show that the injuries suffered by plaintiff were not the product of efforts to control him, but were inflicted intentionally and with malice," the court concluded that "[defendant's] intent was a central issue in the case." *Id. at 945*. It then held that the evidence of other acts was admissible to prove intent and absence of mistake. Accordingly, under Andrews, Cervantes' alleged prior acts of assault and battery against minorities were admissible to prove intent which is an essential element of the state law cause of action. We therefore conclude that the district court erred in holding that the evidence was inadmissible on the state law claim.

Because the district court also excluded the evidence on the alternate [*8] ground that its probative value is outweighed by its potential for prejudice, we must review for abuse of discretion its balancing under *Fed. R. Evid.*

*403*. In conducting the balancing inquiry, the district court was influenced by its view that intent is not an essential element of assault and battery. The court said: "You can prove [assault and battery] without getting into areas of specific intent. Considering it that way, . . . your argument about the use of [other acts] as probative evidence . . . is of marginal importance."

Because the district court's balancing inquiry was influenced by its views on the admissibility of the evidence, the court undervalued the probative value of the evidence. The district court also overestimated the potential for prejudice. On this issue, Andrews provides helpful guidance. In Andrews, the California trial court excluded the evidence of past acts of police brutality because it thought that the prejudicial effect of the evidence outweighed its probative value and that it would have to hold a "mini-trial" for each incident. In reversing, the California Court of Appeal held that the trial court abused its discretion. It reasoned: [*9]

> While we appreciate the court's concern, we do not perceive it as constituting sufficient justification for keeping out all of the misconduct incidents. . . . The court's ruling effectively left [defendant]'s testimony untarnished by depriving plaintiff of all the evidence to rebut it.

*205 Cal. App. 3d at 947.*

Under Andrews, Trahan would have been able to introduce evidence of past wrongful acts by Officer Cervantes if she had been able to proceed in state court. Although Andrews is a state law case, we see no reason why a federal appellate court should strike the balance any differently than a state appellate court, particularly because the applicable balancing inquiries are identical in state and federal court. There is no reason why Trahan should fare any worse in federal court than in California state court in prosecuting her California state law claim. In light of Andrews and having concluded that the district court underweighted the probative value of the other acts evidence, we hold that the district court abused its discretion in excluding the evidence under sections 404(b) and 403.

The final step in our inquiry is whether Trahan's [*10] substantial rights were prejudiced by the exclusion of the evidence. Because there is a strong possibility that the jury's verdict would have been affected by the evidence showing that Officer Cervantes has engaged in several past acts of police brutality, we resolve this issue in favor of Trahan. Accordingly, we reverse the judgment and remand.

III

Because we remand to the district court for further proceedings, we need not decide any of the remaining issues in this case. In our discretion and in the interests of justice, however, we may decide those issues which are likely to reoccur in a possible new trial.

Accordingly, we decline to decide the propriety of defendants' use of their peremptory challenges to exclude the two black jurors from the panel. Defendants' proffered justifications for excluding the two black jurors are so particular to the record of the first trial that our analysis of this issue would be no more helpful to the parties before us than to any other set of parties. Similarly, we decline to decide whether the district court's exclusion of evidence of Cervantes's reputation for violence or untruthfulness was proper because we do not know whether Cervantes [*11] will take the stand in a possible new trial and whether he will introduce evidence of his peaceful character. If Cervantes does take the stand, we call attention to *Fed. R. Evid. 608*. The rule permits evidence of character for untruthfulness and only limits when evidence of truthfulness may be introduced. Subsection (B) also limits the use of specific instances of conduct of a witness for the purpose of attacking or supporting credibility.

We reach the question whether the district court abused its discretion in allowing three experts to testify that the force Cervantes used was reasonable and hold that the court did not abuse its discretion. A court can limit expert testimony if the testimony is cumulative and repetitive. A court's refusal to limit expert testimony is reviewed for abuse of discretion. We do not believe that allowing three experts to testify amounted to an abuse of discretion.

We also reach the question whether the court erred in refusing to give requested jury instructions on the proper weight to be accorded to a police officer's testimony. Trahan argues that the district court erred when it refused to give special jury instructions that "the testimony of [*12] a police officer is entitled to no special or exclusive sanctity." Cervantes argues that the court gave a general instruction on the credibility of all witnesses and that this instruction sufficiently covered the testimony of the police officer. Although special instructions might be appropriate in certain circumstances, we agree with Cervantes that the district court did not commit reversible error in refusing to give them here.

**REVERSED and REMANDED.**

Trahan v. City of Oakland, 89-16573

**CONCURBY:** KLEINFELD (In Part)

**DISSENTBY:** KLEINFELD (In Part)

**DISSENT:**

KLEINFELD, Circuit Judge, Dissenting:

I concur with parts I and III of the majority decision, but respectfully dissent from part II.

We review the district court's balancing of the probative value and prejudicial effect of evidence only for abuse of discretion. *United States v. Ressi*, 868 F.2d 1097, 1107 (9th Cir. 1989). The district court judge had a difficult task to perform in exercising his discretion in this matter. We cannot perform it well for him, because we have not seen and heard the witnesses. The district court judge exercised discretion in a reasoned way, applying appropriate criteria. The discretion was his, not [*13] ours, and we cannot say that we are "left with the definite and firm conviction that the court committed a clear error of judgment in reaching its conclusion after weighing the relevant factors." *United States v. BNS Inc.*, 858 F.2d 456, 464 (9th Cir. 1988).

The majority determines that intent is an element of the state law tort of assault and battery, but not of the federal section 1983 excessive force claim, and reasons from this that the evidence of Cervantes' other wrongful acts was relevant on the state but not the federal claim. I think that the evidence had some relevance to both claims, because of its bearing on credibility of the police officer, but that the district court permissibly exercised its discretion to exclude the evidence under Rule 403.

I

A

As the majority correctly concludes, intent was not an element of the federal claim under *Graham v. Connor*, 490 U.S. 386 (1989). Graham teaches that a Fourth Amendment excessive force claim arising out of an arrest must be evaluated under an objective reasonableness standard. The trier of fact must balance the nature and quality of the intrusion against the countervailing government [*14] interests, according case-specific attention to the severity of the crime at issue, whether the suspect poses an immediate threat to safety, and whether the suspect is actively resisting arrest or attempting to flee. *Id. at 396.* The reasonableness of the use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the benefit of hindsight. Id. Finally, the reasonableness determination must be made based upon whether the officer's actions are objectively reasonable, without regard to the officer's intent or motive. Graham instructs us that even "malicious and sadistic" purposes will not make an otherwise reasonable use of force violative of the Fourth Amendment, *id. at 397-99*, so Officer Cervantes' intent was not an element of the plaintiff's section 1983 claim.

Even though subjective motivation is immaterial, Graham notes that "evidence that the officer harbored ill-will" might properly be considered by the factfinder "in assessing the credibility of an officer's account." *Graham*, 490 U.S. at 399 n.12. This dictum means that even though intent is not an element [*15] of excessive force, evidence of intent may be relevant to whether objectively excessive force was used.

B

1

The majority appears to suggest that *Andrews v. City & County of San Francisco*, 252 Cal. Rptr. 716 (Cal. App. 1988) controls on admissibility of the other acts evidence relating to the state law claim. This cannot be reconciled with *Federal Rule of Evidence 101*, which provides that federal evidence law controls in cases tried in federal courts regardless of what law controls on the substantive claims. The identical question, i.e., whether the state or federal construction of identical language in an evidence rule controls when a state law claim is tried in federal court, was answered by us in the context of a products liability diversity case, *Gauthier v. AMF, Inc.*, 788 F.2d 634 (9th Cir.), amended, 805 F.2d 337 (9th Cir. 1986). In Gauthier, we held that federal standards control. The California appellate courts have authority to decide upon the scope of appellate deference to discretionary decisions of California trial judges, but federal appellate courts make the analogous decisions for federal trial judges. [*16]

2

The majority suggests that California law makes intent an element of battery, so the officer's intent was an element, for the purpose of Rule 404(b), of the state tort claim. Since I analyze the case as a Rule 403 discretion problem, I would reach the same outcome regardless of the content of California law, obviating the need to decide what the substantive law of California may be on this issue. However, a rough outline may serve to clarify the issue.

Ordinarily, the only intent needed for battery is an intent to inflict an offensive touching. 1 F. Harper & F. James, The Law of Torts § 3.3 (1956); W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts 39 (5th ed. 1984) [hereinafter Prosser and Keeton]; *Restatement (Second) of Torts § 18* (1979). Nearly any arrest constitutes a battery. Sadistic or malicious intent is not necessary. A battery to accomplish a lawful arrest is privileged, provided the force is limited to what is reasonable. 1 Harper & James, supra, § 3.17; Prosser and Keeton, supra, § 26; *Restatement (Second) of Torts § 118.* The privilege to commit a battery for the purpose of making a lawful arrest, rather [*17] than absence of tortious intent, is what prevents most arrests from being actionable torts. The test of reasonableness is not so precisely developed in the battery context as in the section 1983 context, but

1992 U.S. App. LEXIS 8566, *

appears to be about the same as the objective test articulated in Graham, and malicious motive or intent to inflict unreasonable force do not seem to be material. 1 Harper & James, supra, § 3.17; Prosser and Keeton, supra, 155; *Restatement (Second) of Torts § 132.*

California law appears to follow the general common law pattern, where "intent of the wrongdoer to injure is immaterial." *Lopez v. Surchia, 246 P.2d 111 (Cal. App. 1952).* The majority reads Andrews as effecting a change in this rule, apparently because of the comment in Andrews that the officer's "intent was a central issue." *Andrews, 252 Cal. Rptr. at 720.* But this comment means, when read in context, only what the Supreme Court's footnote in Graham meant: that intent may bear on credibility. The police officer and the arrestee told different stories in Andrews, and the intent remark is in the context of a paragraph stating that

> evidence [*18] that Ramirez had a practice of bullying and assaulting other persons under his custody without provocation or apparent reason would tend to show that the injuries suffered by the plaintiff were not the product of efforts to control him, but were inflicted intentionally and with malice. The evidence also tended to disprove Ramirez' testimony that the jacket falling to the ground and plaintiff's hitting his head against the concrete floor were accidental occurrences.

*Id. at 720-721* (citation omitted). This means that intent was central because it would help the jury to decide whether the officer or the arrestee was lying about the objective reasonableness of the force used.

C

Under this analysis, the excessiveness or not of the force used in an arrest, in both the section 1983 claim and the battery claim, depends on the objective circumstances rather than the motivations of the arresting officer. But evidence of the officer's motivations may sometimes help to resolve questions of what the objective circumstances really were. The key to this subtle problem is recognition that, at trial, the jury does not begin with knowledge of how much force was used [*19] and what the arrestee was doing, so that all it has to do is decide whether that amount of force was objectively reasonable. The jury begins, in many cases, with wildly disparate accounts of the arrest, and must decide how much force was used, and what was happening that might have occasioned its use.

There are two ways that evidence of animus or other conduct may bear on credibility of the police officer's account. First, a desire to hurt the person arrested would make it more likely that the police officer used excessive force than would a desire only to subdue the individual. We reasonably suppose that a person more likely did what he wanted to do, than that he did did something contrary to his own desires, so knowledge of motive is circumstantial evidence of conduct. Second, the more times a person claims to have participated in an unlikely event, whether that event is having a tossed coin come down heads twelve times in a row or having suspects shot while trying to escape, the less likely it is that any one claim is true. The statement, "I shot four holes in one in one summer," is far more likely to be a lie, than the statement, "I shot a single hole in one in 20 years of [*20] golf." The same logic may apply to the statement, "the suspect fell and hit his head on the floor," if the reported frequency of this event for the individual officer is many times higher than the norm. Because of the risk of unfair prejudice, undue consumption of time and other problems, evidence of other wrongful acts faces numerous barriers in the evidence rules. See *Fed. R. Evid. 403, 404, 608(b), 611(a).* The trial judge, in my view, correctly applied one of those barriers, Rule 403, to keep it out in this case. The reason that the trial judge was right is not that the evidence was immaterial, but that its slight probative value in this particular case was outweighed, in his reasonable judgment, by a high risk of confusion and unfair prejudice.

In *United States v. Bailleaux, 685 F.2d 1105, 1110 (1982),* the fourth prerequisite for admission of evidence of prior bad acts is that "the prior criminal conduct must be introduced to prove an element of the charged offense that is a material issue in the case." If that prerequisite is satisfied, then the trial judge is to balance probative value against the risk of unfair prejudice under *Federal Rule of Evidence* [*21] *403.* Prejudice -- that is, a tendency to affect the outcome -- is "unfair" to the extent that it "provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *Id. at 1111.*

The majority reads Bailleaux as making other acts evidence of Cervantes' motive and intent necessarily inadmissible in all circumstances on the federal claim, so the trial court would have no discretion to admit it. But the footnote in Graham and the analysis in Andrews both suggest, for the reasons developed above, that intent and motivation do have probative value for determining whether reasonable force was used, even though the reasonableness is itself objective and not dependent on motive or intent. There may be section 1983 cases where motive and intent evidence should be admitted.

In an excessive force case, the Rule 403 balancing inquiry presents the district judge with a complex task. It is not possible to list in advance all the factors which the

1992 U.S. App. LEXIS 8566, *

trial judge may consider regarding evidence of animus or other bad acts on the [*22] part of the police officer. Among the factors to consider that may militate in favor of admitting the evidence are whether it might significantly affect the probability of truth or falsehood of the officer's testimony on such questions as how much force was used, whether the arrested person was resisting or attempting to flee, how much danger the person to be arrested presented, and how the arrested person was hurt. Among the factors that may militate against admission are the time it may take for the presentation, cross examination, and rebuttal of the other acts evidence, the risk that the jury will become confused about which police brutality case it is supposed to decide, and the risk that the jury will render a verdict for a plaintiff not because unreasonable force was used to arrest that plaintiff, but rather because it feels that the officer should be punished for his conduct with respect to other people at other times.

A rule generally letting in the other acts evidence on a state law tort claim joined to a section 1983 claim cannot be reconciled with the Rule 403 balancing test required under Bailleaux, or the broad discretion we are required to leave to the district [*23] judge trying the case. Congress requires an individualized case-by-case balancing by the trial court in applying Rule 403. We cannot put our thumb on the scales for one category of cases and say the balancing must generally come out one way, without depriving the trial court of the authority delegated to it by the Rule 403. Nor should we try. The trial judge's estimate of whether the evidence is worth the time might be affected by highly individualized aspects of the case. For example, he might decide that more consumption of time is appropriate where the arrested person was seriously injured or killed than where the person had less severe injuries, and might decide that the officer's credibility was more seriously at issue in one case than another depending on how the direct and cross examinations of the parties and witnesses to the event had gone.

Suppose the officer and arrestee testify similarly, so there is no substantial credibility issue, and the arrestee suffered no substantial injury. The trial judge might reasonably exclude even highly credible evidence of racial bias and sadistic brutality against other arrestees, because its only impact would be unfairly prejudicial, [*24] i.e., to persuade the jury that the officer should be punished for other conduct at other times against other people or to support an inference of conduct from his general character rather than from the evidence of what occurred in the arrest at issue.

Alternatively, suppose the evidence of what happened was sharply conflicting, the injuries were severe or fatal, the officer had an unusually high frequency of suspects of a different race shot while trying to escape or arrestees who fell on their heads while resisting arrest, and the pattern was similar to the arrestee's account of what happened. Assume also that the officer was a clean cut, attractive well spoken individual, while the plaintiff was physically unattractive and expressed himself poorly, so that he might be less persuasive even though truthful. Here, the evidence of animus or other wrongful acts might be critically valuable to the jury, for the entirely proper purpose of assisting it in deciding whether the officer was lying about what had really happened with this arrestee. The majority's analysis would require the trial judge to exclude the evidence about other arrests, if the plaintiff had pled only the section [*25] 1983 claim, or the state law claims had been dismissed. I think that in these circumstances, the trial judge should have discretion to admit the evidence, with an instruction explaining to the jury that they may use it for whatever bearing it may have on the officer's credibility.

Our opinion, I fear, may be read to suggest that the balance generally must be tipped toward admitting the evidence, if the plaintiff pleads a state law battery claim along with the section 1983 claim. This would be unfair to police officers, and dangerous to the public. "It is not possible for the police to enforce the law and preserve the peace without incurring some hostility and resentment." Task Force Report: The Police, The President's Commission on Law and Enforcement and the Administration of Justice 178 (1967). Most people probably resent being arrested, understandably finding it an affront to their dignity. Many people arrested are likely to be drunk, drugged, violent or in some other way antisocial. If they were not perceived as troublesome, most of them would not have been arrested, and if the police are competent, the perception is likely to be correct in most instances. Police officers [*26] may reasonably make a show of ability and willingness to use great force, while actually inflicting much less force, in order to deter resistance and flight, and to speed the process of arrest and removal of the arrestee from the scene before others might interfere. A police officer might want the arrestee to think, "this cop is crazy -- he'll beat me up or kill me if I don't do what he says," when actually the officer has no such willingness or intention, in order best to assure public safety and avoid the need actually to inflict much force. Because of these unpleasant aspects of legitimate police coercion, many witnesses will doubtless be available to testify to what they regard as needlessly violent arrests and inappropriate behavior by almost any police officer.

Public safety may suffer if police officers must fear that every time they arrest someone, particularly with the accompaniment of some force or intentional use of fear, they are creating a witness whom they will ultimately face in someone else's claim for compensatory and punitive damages. Violent coercion by the government

does not make friends of its objects, but that is sometimes the task which police officers [*27] are assigned to perform.

## II

In this case, Trahan claimed what appeared to be a non-severe back strain, and there was some evidence of misconduct by the police officer on other occasions. The plaintiff's witness list, submitted shortly before trial was to commence, identified two people who would have offered testimony on this issue. Leroy Hall and Charles Griffin were both listed for "reputation evidence concerning Cervantes' character for lack of peacefulness." ER 43-44. At the final pretrial conference, the judge properly informed the plaintiff that this could not be put on unless Cervantes opened the door, left the matter open for an offer of proof as the evidence developed, and discussed various evidentiary possibilities. The trial was then continued because of an unrelated hospitalization of Officer Cervantes.

Shortly before the new trial date, the judge issued a written order deferring his ruling on the defense motion to exclude this evidence and requiring additional briefing. ER 53. Since he deferred ruling, error cannot be predicated on the general discussion which occurred in the June 2, 1989 hearing.

Plaintiff then submitted materials on six other witnesses to support [*28] admissibility of evidence of "other acts of force and violence of Cervantes." ER 54. The proffer was by its terms of evidence of other acts of violence, not of Cervantes' reputation for truthfulness. Of the six, Khayami had no personal knowledge; Agnew said Cervantes was one of two officers who grabbed her around the neck seven years before; Murcko had no personal knowledge; Monroe said Cervantes squeezed his throat for no reason five years before; Torres said Cervantes had thrown her violently against a car, called her a bitch, and put his hands between her legs in her private parts during a pat down search; and Ducket said he was "busted up side the head" by Cervantes. None of these alleged incidents were closely similar to Trahan's claim, that Cervantes jerked her arm up high behind her back, causing back injury.

At the final pretrial conference before the second trial setting, the judge laid out his view that under Graham, intent was not an element of the section 1983 claim, and that therefore the six witnesses' testimony lacked relevance. The plaintiff's lawyer agreed with the trial judge's ruling insofar as it went to liability, but argued that intent would be relevant [*29] to damages:

> Mr. Murcko: Your honor, it does seem that that is the law concerning unreasonable use of force.
>
> That is probably true on the -- on the question of liability. However, when it comes to damages --
>
> Wouldn't it then be allowable to have state of mind and intent --
>
> Of the officer come into evidence?

ER 96. The judge agreed with the plaintiff's attorney, and ruled that, assuming it was otherwise appropriate, the evidence of other wrongful acts would be admitted for use by the jury in the punitive damages phase of the trial, if liability were found. ER 98-99. Plaintiff had not mentioned, as yet, the reputation for truthfulness argument, or the state tort claim argument. At this point, the plaintiff had all she sought, so up to this point, there is no ruling challengeable on appeal.

During the trial, plaintiff's attorney requested reconsideration on the theory that the prior wrongful acts evidence should come in on the state law battery claim under Andrews. The judge questioned the Andrews argument, analyzing the case as I have above, but determined that even if the evidence was relevant on the state law claim, it was "of marginal relevance as compared [*30] to its prejudice, so, on that ground, I would rule it out." ER 108. Nothing was said at this point about reputation for truthfulness, just the distinction between the state law claim and the federal law claim. The trial judge's ruling is plainly well within his discretion, since the probative value on the state law claim was marginal at best, and the jury would then have faced a confusing task of considering the wrongful acts evidence to decide if the privilege to batter was exceeded by objectively unreasonable force on one claim, but not the other, despite an indistinguishable difference between the test for unreasonable force.

Later, after all the testimony had come in, plaintiff sought to put on a witness to testify to "reputation for truthfulness and honesty" and also "reputation for peacefulness in the community." ER 116. That was the entire proffer. "Reputation for peacefulness in the community" amounts to hearsay regarding prior wrongful acts, and the judge ruled that for the entire proffer, under Rule 403, the risk of unfair prejudice exceeded the probative value. ER 117. Since the proffer would mix possibly admissible reputation evidence of slight value with inadmissible [*31] evidence, this ruling too was plainly an appropriate exercise of Rule 403 discretion.

At the very end of the trial, just before the jury was to be instructed, the plaintiff tried again. The plaintiff again wanted to put on a witness for the combined purposes of "reputation of Officer Cervantes for violence, and for honesty," "those two character traits." ER 117a-118a. Plaintiff correctly argued that once a

1992 U.S. App. LEXIS 8566, *

witness takes the stand, he puts his credibility at issue, so under *Federal Rule of Evidence 608(a)(1)*, the adverse party may introduce evidence of his reputation for the character trait of untruthfulness. The trial judge had some question about admissibility of such testimony under Rule 608, but did not rule on the basis of Rule 608. Instead, the judge excluded the evidence under Rule 403:

> it may very well be that 608 lets you put it on -- I think it also has to be put in the context of the case itself, and 608 has to be viewed with reference to 403. . . .
>
> In every instance the court is faced with the situation of trying to do the fair thing, so the jury is not confused or misled when you put on evidence. It doesn't produce that -- in this instance, to put on a person [*32] whose source of information would be prior arrest, and would be necessarily on the basis of persons who dealt with Officer Cervantes in terms of carrying out of his duties, even though it's characterized as reputation for truthfulness, it necessarily carries with it the prospect of misleading the jury. . . . And if it's at all with reference to confusing the jury with traits of conduct and traits of violence, as I said, we're not going to put that in.
>
> Even if it is admissible . . . your proffer in terms of the witness and the background that the witness has, that the danger of unfair prejudice or confusion of the jury is such that, under 403, I won't permit it.
>
> . . . If 608 allowed you to do that, the judge has to look in the context of this. It leads me to look at this and say: 403 is clearly meant to put us in a position where you don't confuse and mislead jurors.

TR 1158-1160.

This is a well reasoned, entirely appropriate ruling on the basis of Rule 403. The proffer would mix admissible with inadmissible evidence, and was of a witness who obviously had little foundation for the admissible evidence, so it would have little probative value, and the judge reasonably believed [*33] that the plaintiff's purpose in putting on the witness was to confuse and mislead the jurors into finding for Trahan because they believed that Cervantes had conducted himself badly in another arrest. The plaintiff, by the terms of his proffer, admitted that the witness would testify to character for violence, not with any purpose of showing that Cervantes was lying about what had happened with Trahan, but exactly for the purpose forbidden by Rule 608(b), to show that Cervantes was a violent man so he should be found liable, either because of a propensity for violence making it more likely that he was violent this time, or to punish him for other times. The judge thought the jury would likely be confused and misled, and that the evidence would have little legitimate probative value, so he exercised his discretion, carefully tailored to the case before him, to exclude it.

In assessing the Rule 403 balance, the trial judge properly makes a "concession to the shortness of life," I J. Wigmore, Evidence in Trials at Common Law 685 (1983) (quoting *Reeve v. Dennett, 11 N.E. 938, 944 (Mass. 1887)* (Holmes, J.)), and need not allow a parade of witnesses who can contribute [*34] only a little to the probability of truth of a relevant inference, greatly increase the probability of a decision on improper grounds, and take considerable time. That is just the sort of decision trial judges are supposed to make, and appellate courts should leave well enough alone.