Case 1:01-cv-00769-SAS    Document 139-3    Filed 04/29/2004    Page 1 of 7

Page 1
1994 U.S. Dist. LEXIS 21511, *

1 of 100 DOCUMENTS

DONALD KELLY, Plaintiff, vs. ROBERT L. WARD, et al., Defendants.

Case No. C-3-93-110

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

*1994 U.S. Dist. LEXIS 21511*

July 6, 1994, Decided
July 6, 1994, Filed

**DISPOSITION:** [*1] Motions of Defendants City of Dayton and Robert L. Ward for Separate Trials (Docs. ## 22 and 28) Sustained.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** For DONALD R KELLY, plaintiff: Irving Isaac Saul, Dayton, OH.

For DONALD R KELLY, plaintiff: Aubrey Melvin Kemmer, Troy, OH.

For DONALD R KELLY, plaintiff: Edmund John Wist, Huffman, Landis, Weaks & Wist Co LPA, Tipp City, OH.

For ROBERT L WARD, defendant: Neil Frank Freund, Freund Freeze & Arnold, Dayton, OH.

For DAYTON CITY OF, defendant: Patrick Joseph Bonfield, John J Danish, City of Dayton Law Department, Dayton, OH.

For COMMUNITY MUTUAL INSURANCE COMPANY, defendant: Charles Theodore Lester, Jr., Fort Thomas, KY.

For COMMUNITY MUTUAL INSURANCE COMPANY, defendant: Suzanne Peters, Kreiner & Peters Co, Cleveland, OH.

For COMMUNITY MUTUAL INSURANCE COMPANY, counter-claimant: Charles Theodore Lester, Jr., Fort Thomas, KY.

For COMMUNITY MUTUAL INSURANCE COMPANY, cross-claimant: Charles Theodore Lester, Jr., Fort Thomas, KY.

For DONALD R KELLY, counter-defendant: Irving Isaac Saul, Dayton, OH.

For DONALD R KELLY, counter-defendant: Aubrey Melvin Kemmer, Troy, OH.

For DONALD R KELLY, counter-defendant: Edmund John Wist, [*2] Huffman, Landis, Weaks & Wist Co LPA, Tipp City, OH.

For ROBERT L WARD, cross-defendant: Neil Frank Freund, Freund Freeze & Arnold, Dayton, OH.

**JUDGES:** WALTER HERBERT RICE, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** WALTER HERBERT RICE

**OPINION:**

DECISION AND ENTRY SUSTAINING THE MOTIONS OF DEFENDANTS THE CITY OF DAYTON AND ROBERT L. WARD FOR SEPARATE TRIALS (DOCS. ## 22 AND 28); PRELIMINARY RULING ON THE GENERAL ADMISSIBILITY OF CERTAIN EVIDENCE

This is an unusual and difficult case. In the early morning hours of March 16, 1992, Defendant Robert L. Ward, a police officer employed by the Defendant City of Dayton, shot Plaintiff Donald Kelly. There were no bystanding witnesses, and Plaintiff Kelly, as a result of his injuries, is unable to recollect the events that led to the shooting. As a result, the sole witness to the encounter is Defendant Ward.

Plaintiff Kelly filed this lawsuit seeking

compensation for the alleged use of excessive force against him on March 16, 1992. The Plaintiff has asserted two causes of action against Defendant Ward, one under *42 U.S.C. § 1983* and one under Ohio law (an assault and battery claim); a cause of action against Defendant City under [*3] § 1983; and a cause of action against Defendant Community Mutual Insurance Company to require that Defendant to assert whatever claim for subrogation or reimbursement that it may have with regard to payments made for the Plaintiff's medical treatment.

This matter is currently before the Court on the respective motions of the Defendants, the City of Dayton and Robert L. Ward, for separate trials. Docs. # # 22 and 28. Specifically, the Defendants request that the claim against the City of Dayton be tried separately from the claims against Mr. Ward. *Rule 42(b) of the Federal Rules of Civil Procedure* provides, in part, that, "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim . . . ."

It is true, and Mr. Kelly does not dispute the fact, that, in order to recover against the City, Mr. Kelly will first have to prove that the actions taken by Mr. Ward against him amounted to a constitutional tort. n1 The crucial arguments on the bifurcation issue in this matter revolve around evidence of Mr. Ward's history of psychological and disciplinary problems and the City's actions [*4] with respect to that history. There are arguments as to the admissibility of any of this evidence against Mr. Ward, and, further, questions as to the prejudicial and/or cumulative nature of this evidence should it be deemed admissible.

n1 State municipal immunity law -- O.R.C. 2744(2) -- immunizes the City from respondeat superior liability on the Plaintiff's state law claim. At any rate, no such judgment is sought by the Plaintiff against the City in his state law claim.

Specifically, the Defendants allege that evidence of Mr. Ward's psychological and disciplinary history and the City's manner of dealing with his problems would be inadmissible in an action seeking solely to determine whether Mr. Ward acted unconstitutionally on the morning of March 16. The Defendants argue that such evidence would be prejudicial on the threshold question of whether Mr. Kelly was the victim of a constitutional tort.

The Plaintiff responds that the evidence of Mr. Ward's psychological and disciplinary history would be relevant [*5] and admissible in an action seeking solely to determine the constitutionality of Mr. Ward's actions during the course of his encounter with Mr. Kelly. That being the case, argues the Plaintiff, no unfair prejudice would be suffered by Mr. Ward, from the admission of this evidence in a non-bifurcated trial, and judicial economy and convenience would be well served by avoiding the necessity of bringing out the same facts in two separate trials.

This Court has always been reticent to make evidentiary rulings prior to trial; it is almost impossible to make an evidentiary ruling without knowing the specific context in which the evidence will be offered at the trial. In this case, however, the bifurcation question is intertwined with an evidentiary question, and, of course, ruling on the bifurcation question cannot wait until after trial has commenced. Therefore, the Court proceeds to review the proffered evidence and its context to the best of the Court's current understanding, following which the Court will make a preliminary ruling as to the admissibility of evidence of Mr. Ward's psychological and disciplinary history against him at trial. Having made this preliminary ruling, the Court [*6] will then proceed to rule upon the motions for separate trials.

As the Court understands the proffered evidence, n2 in 1989, over two years before this incident, Defendant Ward turned in his firearm and explained to his superiors that he felt psychologically incapable of performing his duties as a field officer. Apparently, Mr. Ward's concerns were validated by a professional psychological evaluation, and he was found to be medically unfit to perform his duties. Mr. Ward was placed on a restricted duty assignment that kept him out of field work for over a year. At the close of that assignment, the Chief of Police informed Mr. Ward that, if he continued to be unable to perform the duties of a field officer, he would be placed on sick leave and, ultimately, terminated. The police chief did give Mr. Ward the option of obtaining a letter from a psychiatrist to show that he was recovered from his disability. Mr. Ward then procured a psychological evaluation that indicated that he was fit to return to field work. He returned to field work in an unidentified month in 1990. The incident in question occurred on March 16, 1992.

n2 All of the following facts are taken from the memoranda of the parties and the deposition of Mr. Ward.

[*7]

Additionally, it appears that Mr. Ward has some history of having been disciplined on multiple occasions by the police department. He has been suspended more than twice, perhaps as many as six times. He was once fired, but was reinstated. However, to his knowledge, he was never accused of using excessive force prior to the incident with Mr. Kelly.

1994 U.S. Dist. LEXIS 21511, *

Arguing for bifurcation, the Defendants assert that this information might be admissible against the City for purposes of the "official policy" claim under § 1983, but that it would not be admissible against Mr. Ward for the purpose of determining whether he acted in an objectively reasonable manner during the encounter of March 16, i.e., whether he inflicted a constitutional tort on the person of the Plaintiff. Mr. Ward specifically cites *Rules 404(b) and 608(b) of the Federal Rules of Evidence* in support of his position that this evidence would not be admissible against him in a bifurcated proceeding to determine whether a constitutional tort had been inflicted. Rule 404(b) prohibits the introduction of specific instances of conduct of a person to prove that person's character "in order to show action in conformity therewith." Rule 608(b) [*8] prohibits the introduction of extrinsic evidence of specific instances of conduct of a witness, other than conviction of a crime, in order to attack that witness' "credibility." n3 Rule 608(b) does allow a cross-examiner, "in the discretion of the court," to inquire into such specific instances of conduct where they are probative of truthfulness or untruthfulness. When such cross examination is allowed, the cross-examiner must take the answer of the witness, and may not seek to use extrinsic evidence to impeach that answer.

> n3 As will be explained below, it is the opinion of the Court that the term "credibility" as used in Rule 608(b) refers to a witness' general credibility or character for truthfulness, as opposed to the witness' credibility upon a specific issue or incident.

Mr. Kelly responds that the evidence would not be offered to show Mr. Ward's character for purposes of proving action in conformity therewith on March 16, which Rule 404(b) would prohibit, nor would it be offered to attack Mr. Ward's character [*9] for truthfulness or general veracity. Rather, Mr. Kelly states that "such evidence would be offered for the sole purpose of demonstrating the potential bias and mental capacity of the only factual witness[.]" Doc. # 32 at 6.

Although the Court finds Mr. Kelly's mental capacity argument to be unavailing, the bias argument is well taken. As it appears to the Court, the evidence does not tend to show that Mr. Ward is incapable of accurately recalling the events of March 16; rather, it may tend to show the existence of an additional incentive not to relate those events fully and accurately if, by doing so, he would inculpate himself. n4 *Rule 601 of the Federal Rules of Evidence* provides the general rule that "every person is competent to be a witness[.]" There does not appear to be any evidence that Mr. Ward was suffering from a psychological disability at the time of the events in this case, nor that he suffers from some such disability at this time. There is no evidence of any present psychological impairment; nor is there any evidence of the nature of the prior psychological problem and whether that problem would have any impact on Mr. Ward's ability to recollect and to [*10] relate past events. To the extent that evidence of a psychological problem that occurred more than a year prior to the incident at issue herein is intended to show that the witness would currently suffer from an inability to recall the facts of the case, that evidence will not be admissible for that purpose, absent some showing by the Plaintiff that the nature of the former impairment is such that a conclusion that Mr. Ward is currently incapacitated would be warranted. The argument that the evidence may be used to impeach the witness because it goes to bias or interest presents a different question.

> n4 The references by the Plaintiff to Mr. Kelly's mental competence and "the 'filters' through which [his] testimony has passed" (Doc. # 32 at 7), may be characterized as an attempt to set forth the bias argument in a genteel manner, that is, without directly accusing Mr. Ward of being deliberately untruthful. Such a reading of the argument simply reinforces this Court's understanding that, at base, an argument as to bias is the real issue in this matter.

[*11]

The Defendants are absolutely correct in citing Rule 404(b) for the proposition that this evidence is not admissible in order to prove that Mr. Ward acted in a certain manner on March 16, 1992. However, because the evidence would be offered not to prove that Mr. Ward took any particular action, but rather to impeach his testimony, Rule 404(b) is not the appropriate framework within which to consider the admissibility of this evidence. The argument with respect to Rule 608(b) is closer to the point.

Rule 608 is entitled "Evidence of Character and Conduct of Witness." It first paragraph, Rule 608(a), is entitled "Opinion and reputation evidence of character." It outlines the manner in which a witness' "character for truthfulness or untruthfulness" may be demonstrated by opinion or reputation. Rule 608(b), is entitled "Specific instances of conduct." As mentioned above, it sets forth the rule that, in attacking or supporting the "credibility" of a witness, specific instances of conduct may not be proved by extrinsic evidence.

It is also true, however, that, although no such language is found in the Rules of Evidence, a party is permitted to prove by extrinsic evidence the bias [*12]

or interest of a witness on a specific point. See generally 3 Weinstein's Evidence P 607[03]. Therefore, the term "credibility," as used in Rule 608(b), is not intended to refer to all manner or means of attacking the credibility of a witness, but, rather, specifically to attempts to impeach the witness through an attack upon his or her general character or general tendency to be untruthful. Evidence of bias or interest does not go to such general character assassination. It is specifically geared to the relationship between the witness and specific issues or incidents involved in the specific litigation on trial.

In explaining this distinction, Professor Wigmore, in his treatise, quotes at length for the reader the opinion in *McHugh v. State*, 31 Ala. 317, 320 (1858), which states:

> In considering the various modes by which the credit of a witness may be assailed, Courts must observe the distinction between an attack upon his general credit, and an attack upon his credit in the particular case. Particular facts cannot be given in evidence to impeach his general [i.e., moral character] credit only, but may be to affect his particular credit, [*13] that is, his credit [due to bias or interest] in the particular cause. Thus, the general credit of a witness for the prosecution may be unassailable; he may be hostile to the prisoner, and on cross-examination may deny that he is so; in such case, who can doubt the right of the prisoner to prove the hostility?

3A Wigmore, Evidence § 943 (Chadbourn Rev. 1970) (bracketed material in treatise).

Mr. Ward's less-than-stellar history with the Dayton Police Department, including his self-imposed removal from field duty, would not be relevant to attack his general character for truthfulness, but does appear to be relevant to his credibility in this case. While any officer would naturally have an interest in the outcome of an excessive force suit brought against him or her, the stakes for this particular officer, it might well be argued (as posited below), would be higher than those that would be present in a case against an officer with an unblemished record.

In *United States v. Garrett*, 542 F.2d 23 (6th Cir. 1976), the Sixth Circuit Court of Appeals had occasion to apply the above-described distinction between matters of general and specific credibility. [*14] In Garrett, the chief witness against a defendant in a drug prosecution case was a police officer (Lehman) who had been suspended from duty for refusing to submit to a urinalysis. *Garrett*, 542 F.2d at 24. The trial court allowed the fact and length of the suspension to come before the jury, but refused to allow the defendant to cross-examine the police officer as to the nature of or reason for the suspension. Id.

On appeal, the defendant argued that counsel should have been permitted to elicit testimony from Lehman concerning the reason for the suspension (i.e., possible drug abuse). The Government argued that what was sought was impermissible credibility evidence. n5 The Court of Appeals rejected that argument, noting that, "there is a difference between general credibility and answers which might possibly establish untruthfulness with respect to the specific events of the crime charged." *Id.* at 26 (citing *United States v. Cardillo*, 316 F.2d 606, 613 (2nd Cir.) cert. denied, 375 U.S. 822, 11 L. Ed. 2d 55, 84 S. Ct. 60 (1963)). The court held that evidence n6 as to the nature of or reason for the suspension [*15] should have been allowed, as possibly showing the bias or interest of a key witness. Id.

---

n5 The arguments in Garrett were made without specific reference to the Federal Rules of Evidence. The case was argued before the Court of Appeals in June of 1976, and it appears to be possible that the original trial may have taken place before the Federal Rules of Evidence became effective in mid-1975.

n6 The decision in Garrett focused only on the permissibility of cross-examination of the witness as to the nature of and reason for the suspension, and did not consider the question of the admissibility of extrinsic evidence on that subject. However, it cannot be doubted that, as the court viewed said cross-examination as seeking to elicit evidence of a potential bias, extrinsic evidence of the nature of and reason for the suspension would have been admissible in addition to the answers provided upon cross-examination. See 3 Weinstein's Evidence P 607[03].

---

In finding that the evidence concerning [*16] the suspension might have tended to show bias or interest on the part of the witness, the Garrett court reasoned that, "Lehman might well have looked upon a successful prosecution of Garrett as a means of having his suspension lifted and being returned to full duty as a police officer." Id. In this case, Mr. Ward might well have a point of view not unlike the point of view attributed to Lehman by the Garrett court. That is to say, Lehman might have thought that he could be returned to duty by a successful prosecution, and Mr. Ward might well believe that a jury finding that he used excessive force would, in conjunction with his prior history with

Case 1:01-cv-00769-SAS    Document 139-3    Filed 04/29/2004    Page 5 of 7

Page 5
1994 U.S. Dist. LEXIS 21511, *

the police department, place his livelihood in grave jeopardy. Accordingly, the observation of the Garrett court, that the evidence of the nature of and reason for Lehman's suspension would be relevant to a question of interest or bias, supports this Court's finding that evidence of Mr. Ward's history with the police department is relevant to potential bias or interest on his part in this specific litigation.

Mr. Ward is not simply the chief witness to the events that gave rise to this action, he is the only one. Upon [*17] his credibility will rise and fall the entirety of this case. The centrality of his credibility increases the importance of permitting Mr. Kelly to attack that credibility through the permissible use of evidence of bias or interest.

Preliminarily, the Court finds that the probative value of this bias or interest evidence is not substantially outweighed by the danger of unfair prejudice to Mr. Ward, even in a bifurcated action. *Fed. R. Evid. 403.* However, the Court is not unaware of the potential for unfair prejudice. Specifically, there is a real danger that a jury might take the evidence not for its impeachment purpose, but for the purpose prohibited by Rule 404(b) (as evidence of Mr. Ward's character to prove action in conformity therewith during the events in question in the case) and/or Rule 608(b) (to attack Mr. Ward's general character for truthfulness). Accordingly, limiting instructions will be liberally employed, and the Court will remain (and will expect counsel to remain) vigilant to prevent the misuse or mispresentation of this evidence. Excessive reference to and evidence of the history of psychological and disciplinary problems may tend to become cumulative and [*18] prejudicial, which development is prohibited by Rule 403. The Court will be prepared to limit cumulative testimony.

Prior psychological problems as well as incidents of discipline of the Defendant Ward by the police department may both be inquired into and proved (in a non-cumulative fashion, subject to proper limiting instructions) by extrinsic evidence, regardless of the answers given by Defendant Ward on cross-examination.

This preliminary evidentiary ruling is not dispositive of the entirety of the question of whether bifurcation is appropriate in this case. The Court will proceed to discuss additional aspects of the bifurcation question.

The Court admits to having an amount of uncertainty regarding the nature of the Plaintiff's "official policy" claim. In the final pretrial order, the Plaintiff's claim is phrased as follows:

> The Plaintiff claims liability of Defendant City of Dayton for the constitutional deprivation inflicted upon the Plaintiff by Defendant Ward; the Plaintiff claims that the Defendant City, by the application and implementation of its customs, policies and procedures in connection with hiring and retention of employees, retained Defendant Ward in [*19] its employ in spite of specifically expressed difficulties and fear by Ward of misuse of his weapon on the public and the City, despite its specific knowledge, failed to require or provide any treatment, training or supervision of this specific Defendant; the wrongful activity of Defendant City was the moving force behind the eventual misuse of the weapon by Defendant Ward and the deprivation of the Plaintiff's constitutional rights.

Amended and Supplemental Final Pretrial Order at 3 - 4.

Thus, it might appear that the Plaintiff is making a claim that only specific actions by specific municipal policymakers with regard to the employ of this specific officer are in question in this matter. That is to say, the question in the case might be simply and specifically whether a series of decisions by municipal policymakers placed in field duty an officer those policymakers should have known to be unfit for such duty.

A municipality may be liable for a specific act or series of acts by a municipal policymaker. The Supreme Court, in *Jett v. Dallas Independent School District, 491 U.S. 701, 105 L. Ed. 2d 598, 109 S. Ct. 2702 (1989)*, explained the manner in which such [*20] liability could be determined.

> Reviewing the relevant legal materials, including state and local positive law, as well as "'custom or usage' having the force of law," . . . the trial judge must identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue. Once those officials who have the power to make official policy on a particular issue have been identified, it is for the jury to determine whether their decisions have caused the deprivation of rights at issue[.]

*Id. at 737* (citations omitted)(emphasis in original). See also *Feliciano v. City of Cleveland, 988 F.2d 649 (6th Cir. 1993)* (court, analyzing state and local law, finds that chief of police did not have final policymaking authority with regard to drug testing of cadets).

To establish such liability in this case, the Plaintiff in

1994 U.S. Dist. LEXIS 21511, *

this case would be required to: (1) identify the final policymaking official(s) for the retention or assignment to field duty of Dayton police officers in general; (2) identify [*21] the official(s) responsible for the retention and/or assignment to field duty of Defendant Ward, showing that the official(s) so identified is/are the same as the official(s) identified in part (1); and (3) show that the decision to retain and or assign to field duty Defendant Ward was the moving force behind the Plaintiff's injuries.

That analysis, however, assumes that the Plaintiff intends only to put before the jury the issue of Defendant Ward's fitness for duty. If, on the other hand, the Plaintiff intends to establish that there is no policy for dealing with stress-impaired police officers, the question is a different one. Although Plaintiff has stated in memoranda and in the final pretrial order that he intends to introduce no evidence of the manner in which the City dealt with the psychological problems of other officers, he has stated in at least one other memorandum that,

> The claim of "official policy" against the City is that the City had "no policy" concerning the care and treatment of officers with emotional and psychological problems which could present significant dangers to the general public and, in this case, with emotional and psychological problems [*22] specifically relating to the ability to perform as a regular officer on the street who feels himself to be a threat to the public through use of his gun.

Doc. # 24 at 5 (emphasis added). Such a claim is a more classic Monell n7 issue, and would require proof of a general policy or custom which would, in turn, require the introduction of evidence of cases other than that of Defendant Ward.

> n7 *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978).

In such cases, involving proof of a general policy, this Court has tended in the past to favor bifurcation of such claims. If a single trial were held on all of the claims in such a case, evidence offered against the municipal defendant, regarding incidents of alleged misconduct by or in relation to other municipal employees, unrelated to the incident in question in a particular case but relevant to the question of municipal liability for a policy or practice, would be highly prejudicial [*23] to individual defendants. The questions regarding the liability of individual defendants should be decided by the jury only on the facts of the particular events on which a particular case is based. That is to say, individual defendants cannot be made to bear the burden of answering for all of the alleged misdeeds of every past and current municipal employee, or for all of the alleged misdeeds of the municipality in its dealings with other municipal employees. A jury must be allowed to consider the evidence regarding a particular incident, and that incident alone, with its focus on that evidence unimpaired.

For those reasons, the Court would tend to favor bifurcation in this case, should it be the Plaintiff's intent to demonstrate a flaw in some general policy of the Defendant City, as opposed simply to a claim made as to the misdeeds of municipal policymakers in their handling of the retention and/or assignment to field duty of Defendant Ward solely in the context of the relationship between the Defendant City and the Defendant Ward.

Given that the Court would certainly bifurcate this case if it were the Plaintiff's object to show a general policy flaw, the Court will assume for [*24] present purposes, as a "best case scenario," that the Plaintiff intends his claim against the Defendant City to be one based solely upon the actions of final policymakers with respect to Defendant Ward's retention and/or assignment to field duty. Even under that assumption, however, it appears that bifurcation would be appropriate. Although evidence of the psychological and disciplinary problems of Mr. Ward will be admissible against him, there is a significant difference between the amount and kind of such evidence that will be admissible against him and the amount and kind of such evidence admissible against the City. It is the opinion of this Court that this difference is significant enough to raise the specter of unfair prejudice. n8

> n8 Plaintiff has also argued that he is entitled to a separate element of damages, which damages he would not be able to recover in the first stage of a bifurcated action in which he would proceed solely against Mr. Ward. Namely, the Plaintiff seeks damages for the special emotional anguish he has suffered due to his knowledge that the City was the moving force that caused his injuries. Resolution of the viability of this claim for additional damages will await the trial; the viability or non-viability of this claim does not affect the concerns regarding prejudice upon which the Court bases its decision to bifurcate this litigation.

[*25]

After reviewing the amended final pretrial order, the Court has some concerns as to the possible prejudicial or cumulative nature, as against Defendant Ward, of the

1994 U.S. Dist. LEXIS 21511, *

psychological problem testimony that the Plaintiff intends to offer against the Defendant City. There appear to be 34 testimony synopses on the Plaintiff's witness list, and it appears that 14 of those synopses indicate that the witness will testify as to Defendant Ward's psychological problems.

Simply by sheer numbers, this appears to go far beyond the amount of testimony that would be needed to establish Defendant Ward's incremental interest in the outcome of the case for purposes of impeaching his specific (as opposed to general) credibility. For the purposes of the policy question, testimony as to widespread knowledge of Defendant Ward's problems might be relevant for demonstrating a mishandling of his case by the City, and therefore admissible against the municipality. However, from the witness list, it appears that testimony as to Defendant Ward's psychological difficulties may come dangerously close to becoming the focal point of the case. That focal point should be, at the threshold, what the circumstances were [*26] that led to the shooting, and whether Defendant Ward acted in an objectively reasonable manner under those circumstances. For the initial determination of liability, the psychological problem testimony is relevant only to his credibility on the factual question as to the actual circumstances, and should not be, at that stage, the primary focus of the jury's attention.

To try the City's liability for an "official policy," alongside Mr. Ward's liability for a specific incidence of conduct would create serious problems under Rule 403, as the amount and kind of evidence that would be admissible against the City concerning Mr. Ward's history of psychological and disciplinary problems might well be prejudicial and cumulative as against Mr. Ward. At the same time, an attempt to limit the use of such evidence, in a non-bifurcated proceeding, might be prejudicial to the Plaintiff, as it would tend to unfairly diminish his case against the City. n9

> n9 Plaintiff argues that bifurcation of this action would lead to the inescapable conclusion that no Monell claim could ever be tried against a municipal defendant. Doc. # 24 at 15 - 16. The Court disagrees. This decision has been based upon the unique facts and circumstances of this case. Nothing that the Court has stated herein should be construed as an inflexible rule that bifurcation will always be appropriate in an action in which a plaintiff has sued, in a § 1983 civil rights action, both an individual defendant and his or her municipal employer. In addition, an action might be maintained against a municipality as sole defendant where the action of an individual municipal employee is alleged to have caused injury. In such a case, questions of prejudice would be dramatically decreased in significance, as there would be no individual co-defendant who might suffer from such prejudice, even though it would still be incumbent upon the plaintiff to prove the infliction of a constitutional tort upon him or her by the individual employee, prior to the consideration of imposing liability upon the defendant municipal employer.

[*27]

Accordingly, the Court would rule preliminarily that evidence of Defendant Ward's history of psychological and disciplinary difficulties will be admissible against him to impeach his credibility with regard to this case, subject to the limitations placed on excessively cumulative or unfairly prejudicial evidence by Rule 403. The Court does also find, however, that the amount of such evidence admissible against the City is so much greater than the amount of such evidence that would be admissible to impeach Mr. Ward, that to try both Defendants together would create significant prejudice to Mr. Ward due to the cumulative nature, as against Mr. Ward, of the evidence admissible against the City.

Pursuant to Rule 42(b), this Court does order the separation of the trials of Defendant Ward and the Defendant City, in order to avoid prejudice to Defendant Ward and in furtherance of convenience and the expeditious and economical resolution of this controversy.

July 6, 1994

WALTER HERBERT RICE

UNITED STATES DISTRICT JUDGE