prisoners for his own safety. He remained in administrative segregation until his death.

On November 24, May met with Bush, an employee of Valley Counseling, which provided mental health services to inmates of the jail. Bush determined that May was not suicidal and entered a "verbal contract" under which May promised not to harm himself. Upon leaving the jail, Bush informed Medve that he did not believe May would commit suicide but that Medve should monitor May every fifteen to thirty minutes.

On the evening of November 24 and the early morning of November 25, Corrections Officer Ronald Kirkwood checked May's cell twenty times between 11:26 p.m. and 4:14 a.m. Kirkwood then went to the jail kitchen to prepare breakfast, a process that takes between thirty and forty-five minutes. The other two officers on duty at this time, Lisa Fraelich and Russell Molinatto, were busy completing paperwork [*4] and booking a new prisoner. According to jail records, Molinatto checked May's cell again at 4:30 a.m., although the Mays dispute this fact. Molinatto found May hanging in his cell at approximately 4:50 a.m. May was later pronounced dead.

## II.

[HN1] This court reviews a grant of summary judgment de novo. *Pinney Dock & Transp. Corp. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir. 1988). Summary judgment is proper only if the moving party demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party is entitled to summary judgment where the non-moving party fails to establish the existence of an element essential to its claim and on which that party would bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

## III.

The claims against Strickland and Medve in their individual capacities hinge on the fact that these officers failed to notify corrections officers coming on duty of the possibility of May's attempting suicide, a fact of which Bush made them aware. Assuming that these allegations are true, [*5] plaintiffs have failed to state facts sufficient to overcome the officers' qualified immunity under applicable law.

The Supreme Court first stated the standard for qualified immunity for government officials sued in their individual capacities in *Anderson v. Creighton*, 483 U.S. 635, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987). [HN2] The Sixth Circuit adopted that standard for § 1983 cases based on failure to prevent suicides in *Danese v. Asman*, 875 F.2d 1239 (6th Cir. 1989). In general, "government officials performing discretionary functions [have] a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson*, 483 U.S. at 638 (citation omitted). Whether an official is protected by qualified immunity depends on the "'objective legal reasonableness'" of the action. *Id. at 639*. This determination should be made at a particularized level.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by [*6] qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id. at 640*.

On these facts, plaintiffs have not shown that Strickland and Medve took any actions which they knew violated a particularized right of May. [HN3] The generalized right of prisoners to receive medical care was set forth in *Estelle v. Gamble*, 429 U.S. 97, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976), and has been extended to pretrial detainees. *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985). This right is evaluated under a standard of deliberate indifference, which requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994).

Applying the deliberate indifference standard, this court has held that a prisoner's right to medical care does not extend to "the right to have steps taken that would have prevented suicide. The general right to medical care, for example, is not sufficient [*7] to require a police officer . . . to stop him from following through [with suicide]." *Danese*, 875 F.2d at 1244. Interpreting *Danese*, this court has further held that there is no "clearly established right to be protected from committing suicide." *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1096 (6th Cir. 1992). The officers relied upon Bush's advice and followed it. Thus, Strickland and Medve did not act in a way that violated a clearly established right and are entitled to qualified immunity.

## IV.

[HN4] A suit against county officials in their official capacities is treated as a suit against the county

itself. *See Marchese v. Lucas, 758 F.2d 181 (6th Cir. 1985).* In other words, Trumbull County may not be held liable on a theory of vicarious liability for the actions of Strickland and Medve and Sheriff Jakmas; it may only be held liable on the basis of its own actions. *See Molton v. City of Cleveland, 839 F.2d 240, 243 (6th Cir. 1988)* (citing *Pembaur v. City of Cincinnati, 475 U.S. 469, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986)).* Thus, plaintiffs must show that the county "had a custom or policy which caused the officers to be deliberately indifferent [*8] to [the prisoner's] serious medical needs." *Molton, 839 F.2d at 243.* Under present law, the actions and policies of Trumbull County, as alleged by plaintiffs, constitute at most negligence and do not rise to the level of deliberate indifference.

The liability of a county under § 1983 for a jail detainee's suicide is "whether the decedent showed a strong likelihood that he would attempt to take his own life in such a manner that failure to take adequate precautions amounted to deliberate indifference to the decedent's serious medical needs." *Barber v. City of Salem, Ohio, 953 F.2d 232, 239-40 (6th Cir. 1992).* Most of the allegations of inadequate training rising to the level of deliberate indifference track those addressed by the Sixth Circuit in *Barber* and *Molton*. In both of those cases, this court held that alleged actions of the municipalities such as inadequate training of officers, lack of suicide prevention procedures, or inadequate facilities rose only to the level of negligence, not deliberate indifference.

In this case, the Mays also argue that inadequate funding of the jail and the resulting understaffing of the facility rose to the level of deliberate [*9] indifference sufficient to support § 1983 liability for Trumbull County. This court addressed similar claims in *Roberts v. City of Troy, 773 F.2d 720 (1985)*, and held that funding and staffing decisions, even where they did not comply with regulations, could not form the basis for a charge of deliberate indifference because intent and cause had not been demonstrated. *Id. at 725.* The evidence presented by the Mays does not demonstrate intent and causation because it does not show that Trumbull County made its funding and staffing decisions with a known risk of the potential for detainees' suicides and a conscious disregard of that risk. Thus, Trumbull County's policy decisions and allocation of resources cannot form the basis for municipal liability under § 1983.

V.

The claims against the county commissioners are determined in *Shoultes v. Laidlaw, 886 F.2d 114 (6th Cir. 1989)*, where the court held "that [HN5] local legislators are protected by absolute immunity when they act in their legislative capacities." *Id. at 117.* An action is legislative in nature if it "was passed by a properly constituted legislative body, which was empowered to pass" the measure in question. [*10] *Id.* Thus, as the county commissioners were acting in their legislative capacities in making funding decisions, they may not be held liable under § 1983.

VI.

Under *Jaco v. Bloechle, 739 F.2d 239 (6th Cir. 1984)*, the Mays do not have standing to bring a wrongful death action under § 1983, based on the premise that a [HN6] § 1983 claim is personal to the injured party. However, the plaintiffs argue that since *Jaco* was decided, other circuits have come to a different conclusion and have undermined the reasoning of *Jaco*. Nevertheless, that is the law of this circuit. We reaffirm the premise of *Jaco* that a § 1983 claim is personal to the injured party and affirm the district court's ruling that the Mays lacked standing to bring an action for wrongful death.

VII.

The district court properly dismissed plaintiffs' state law claims after it dismissed all federal claims over which it had jurisdiction. *See* [HN7] *United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966)*("pendent [*11] jurisdiction is a doctrine of discretion, not of plaintiff's right.").

**AFFIRMED.**