APPENDIX "B"

## Roger Owensby, Jr.

**Black Male, 67 inches, 185 pounds, 29 years old**

### Brief Synopsis of the Events and the Issue

On November 7, 2000, Mr. Owensby, Jr., was recognized as a person matching the description of an assailant of a police officer. After being patted down for weapons, Mr. Owensby became nervous and attempted to flee from three police officers. One of the police officers tackled him immediately and brought him to the ground. The three initial police officers were able to handcuff Mr. Owensby on the ground, with the assistance of three additional police officers. During the struggle on the ground, one of the police officers applied a "head wrap" around Mr. Owensby's head and another police officer acknowledged striking Mr. Owensby several times in the back with hand strikes to gain compliance. During the handcuffing process, Mr. Owensby was also sprayed with a chemical irritant by one of the police officers.

After being handcuffed, Mr. Owensby was taken to a police vehicle and pulled into the rear seat by a police officer. A police sergeant, immediately responding to the scene, observed Mr. Owensby in the back of the vehicle. He noticed that Mr. Owensby was not breathing. Mr. Owensby was taken from the vehicle and medical assistance personnel were contacted. Mr. Owensby was transported to the hospital and pronounced dead.

On November 30, 2000 an autopsy was completed by the Hamilton County Coroner's Office. The Coroner's Office concluded that the cause of death was "mechanical asphyxia." Manner of death was "Homicide (police intervention; asphyxiation during restraint attempts)".

The diagnoses of Death Record #131577 was: (1) Mechanical Asphyxia; (2) Left inframammary, right anterior axillary, and anterior left shoulder abrasions; (3) Bilateral deep back musculature contusions (scapular); (4) Facial abrasions; (5) Left forearm abrasions; and (6) Bilateral knee abrasions.

Two (2) City of Cincinnati police officers were indicted for causing the death of Mr. Owensby. One officer (Officer Caton) was acquitted of a misdemeanor assault for striking Mr. Owensby with his hands. Another police officer (Officer Jorg) was indicted for misdemeanor assault and involuntary manslaughter. Jury could not reach a verdict on the involuntary manslaughter charge, and he was acquitted of the misdemeanor assault. Officer Jorg has since filed a $30 million lawsuit against City of Cincinnati and Hamilton County officials for ruining his career and good name by unfairly blaming him for the death of Mr. Owensby.

The OMI investigation was initiated to determine if any police officers engaged in serious misconduct during the arrest of Mr. Owensby.

## Questions

(1) According to the autopsy, the right and left cut surfaces of the lungs revealed diffuse pulmonary congestion and edema. The lungs were extremely congested and edematous. What is edema? The police officer that applied the head wrap of Mr. Owensby had his sleeve saturated with a fluid. The sleeve is still located in the property room of the courthouse. No tests were conducted of the fluid on the sleeve. Are there any tests available for suspected edema dried stains on the sleeve of a uniform? Are these tests conclusive or inconclusive? What would be the importance of having the sleeve tested before it dried? Could the arm/sleeve of the officer block the nose and the mouth to cause death? Could blocking the air passages cause edema? How long does the blocking of the airways take before edema is produced? Once edema is generated can the medical condition be reversed or stopped sufficiently for the individual to recover? Can a suffocated victim expel fluid if airways were blocked?

(2) According to the autopsy, the left anterior descending coronary artery, of the cardiovascular system, had a fifty percent obstructive plaque situated at the mid portion. The coronary artery distribution is left dominant. The right coronary artery is patent. What factors could have caused this physical condition? Was this a life-threatening condition? How could this physical condition impact Mr. Owensby in a physical struggle? Is this medical condition a contributory factor in the diagnoses of mechanical asphyxia?

(3) According to the autopsy, the strap muscles of the neck were reflected and revealed no underlying hemorrhages. The hyoid bone, cricoid cartilage, and thyroid cartilage had no injuries. The epiglottis was not swollen or inflamed. The airways had no obstructions. The cervical vertebrae was examined from the anterior and posterior approach and revealed no bony fractures, ligamental injuries or synovial injuries. Could these findings have been made if a chokehold or strangle hold have been employed by a police officer? Could an individual, with these findings, expire from a chokehold or strangle hold? Could mechanical asphyxia occur with no visible injuries to the throat or neck areas?

(4) According to the autopsy, the suprascapular area of the back and the lower aspects of the back have several cutaneous petechiae. The petechiae are absent in the area of blanching in the scapular regions. The conjunctivae have petechiae as well as scleral hemorrhages. The right eye has fairly significant inferior scleral hemorrhage and conjunctival hemorrhages. Several petechiae are seen in the conjunctive of the right eye. The left eye has a few scattered petechiae.

What are petechiae? What causes petechiae to occur? Are petechiae in the eye region an indication of mechanical asphyxia? What are scleral hemorrhages? What is the significance of the amount of petechiae contained in the right and left eye?

(5) Vomit, which inspected visually consisted of blood and mucus, reportedly came from Mr. Owensby's mouth when he was removed from the back seat of the police vehicle. What is the significance of this vomit in terms of mechanical asphyxia? Would this vomit signify a terminal state for Mr. Owensby?

(6) The lawsuit filed by Officer Jorg contended:

    (a) Mr. Owensby did not die of mechanical asphyxia, but he died as a result of "a cardiac event."
    (b) The medical autopsy, prepared by Dr. Daniel Schultz, "falsely listed the death of Roger Owensby, Jr."

Is a cardiac event death consistent with the evidence obtained via autopsy by Doctor Schultz? Can a medical determination be made from the autopsy results that the heart malfunctioned sufficiently to be the primary cause of death?