IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ESTATE OF ROGER D. OWENSBY,     *     CASE NO. C-1-01-769

      Plaintiff                     (Judge S. Arthur Spiegel)

vs._____*     RESPONSE CONTRA MOTION IN
                                   LIMINE TO EXCLUDE ILLEGAL
CITY OF CINCINNATI, et. al.,         DRUGS EVIDENCE OF DEFENDANTS
_____    _____*     CINCINNATI AND POLICE CHIEF
_____Defendants._____       THOMAS STREICHER, JR.

**MEMORANDUM**

I.   **STATEMENT OF FACTS**

      On September 27, 2000, Officers Hunter and Jorg worked plainclothes during drug investigation in front of Sam's Drive Thru near the Huntington Meadows Apartment complex. (Hunter depo. at 54)(attached as Exhibit A to plaintiffs' mot. Limine). The officers saw three to four persons engage in illegal drug dealing. (Id.) The officers wanted to stop these persons. (Id.) Therefore, Officer Jorg stayed with two of the suspects while the other two suspects crossed the street. (Id.) Officer Hunter followed the other suspects who crossed the street. Office Walker arrived in a uniformed car to assist Officer Hunter apprehend the two suspects. (Id. at 54-55.)

      After discussing how to approach the suspects, Officer Hunter and Officer Walker started towards the suspects. (Id. at 55.) At this point, decedent Roger Owensby Jr. "alerted the individuals that [the officers] were trying to catch up to apprehend that the

police were coming and that [the officers] were in the area."
(Id.) The suspects got away because of decedent's interference.
(Id.)

Immediately afterwards, Officer Hunter approached the decedent
face-to-face. (Id. at 55, 77.) He told decedent, "[y]ou know, you
can't be doing what you just did. You can't be warning people that
the police is here." (Id. at 55-56.) He placed his left hand on
the decedent's shoulder. (Id.) Office Hunter looked "directly at"
the decedent. (Id. at 86.) Next, Officer Hunter reached inside his
shirt and showed decedent his badge, which Officer Hunter wore on
a chain around his neck. (Id. at 56.) After viewing the police
badge, the decedent pushed Officer Hunter and ran. (Id. at 56-57;
78.) Officer Hunter held the decedent's hooded sweatshirt, which
decedent tugged and pulled at until he came out of the garment.
(Id. at 56.) While he had no intention of shooting, Officer Hunter
drew his weapon and stated, "[d]on't move, freeze," to convince the
decedent to cooperate. (Id.) In the face of a drawn weapon and
police orders to remain, the decedent decided to run. (Id. at 56-
57.) Officer Hunter chased the decedent on foot unsuccessfully.
(Id. at 57.)

A few weeks later, on November 7, 2000, Officers Hunter, Jorg
and Caton parked their cruisers in the Sam's Drive-Thru parking
lot. (Jorg Depo. at 86, attached as Exhibit C to plaintiffs' mot.
Limine.) The officers wore their uniforms. (Id. at 87.) The
officers saw the decedent walk from the parking lot into the

2

convenience store. Officer Hunter positively identified the decedent as the same suspect who assisted drug dealers, obstructed the drug investigation, and resisted arrest a few weeks earlier. (Id. at 86-87.) After seeing the decedent, Officer Hunter stated, "Yes, that's the man that ran ... [t]hat's the guy." (Id. at 102; Officer Hunter depo. at 132.)  Officer Hunter further stated that the decedent obstructed an investigation and assaulted him during the earlier incident.  (Officer Caton depo. at 73, 76, 81; Officer Jorg Depo. at 75.)  The officers felt they had probable cause to arrest decedent for obstructing, related to the September, 2000 incident, and jaywalking.  (Officer Hunter depo. at 132.)

After the decedent exited the store, Officer Jorg reached for his handcuffs and attempted to inform decedent he was under arrest. (Id. at 12, 99, 103.)  Once again, the decedent ran.  The officers chased.(Id. at 102-107; Officer Caton depo. at 94-98.) The decedent resisted violently and kicked at the officers until the arrest had been completed. (Officer Caton depo. at 103).  Eventually, the arrest was completed and decedent was placed in the back of a police cruiser.  (Officer Hunter depo. at 175; Officer Sellers depo. at 54-55.) Minutes later, the officers called for medical attention because the decedent was not moving.

The decedent presented to the University of Cincinnati Medical Center emergency room in cardiac arrest.  (Depo. Suzanne A. Flottemesch, R.N. at 9, 17.)   He was pronounced dead after resuscitation efforts failed.  (Id. at 12).  Nurse Suzanne

FREUND, FREEZE & ARNOLD
A Legal Professional Association

Flottemesch removed decedent's clothes (Id. at 13, 18.) Nurse Flottemesch retrieved "a baggie that appeared to have marijuana in it, and a baggie that had some white substance in it" from the decedent's pants pocket. (Id. at 19.) Nurse Flottemesch documented her observations in a subsequent statement. At deposition, she authenticated and attested to the accuracy of the recollections contained in this statement.

On November 8, 2001, the decedent's estate and next-of-kin filed a lawsuit against the City of Cincinnati, Police Chief Streicher, and other defendants asserting civil rights violations, state tort claims, wrongful death and loss of consortium. Trial is scheduled for June 14, 2004. The plaintiffs have filed a motion to exclude all evidence of decedent's illegal drug possession, illegal drug dealing and drug investigation obstruction activities. Plaintiffs hope to strengthen their 42 U.S.C. § 1983 "excessive force" claim by excluding this evidence. Specifically, the plaintiffs intend to portray the decedent inaccurately as a law abiding citizen, who had just exited the Presidential voting polls, when the police officers unleashed a "Nazi Panzer-like attack" as punishment for jaywalking. As discussed below, the decedent's illegal drug and investigation obstruction activities must be presented to the jury because this evidence bears directly on the appropriate amount of force and decedent's state of mind when he fled and violently resisted arrest.

4

II.  **LAW AND ARGUMENT**

Decedent's crack-cocaine and marijuana possession, drug dealing activities and police drug investigation obstruction activities must be presented to the jury when: 1)this highly relevant, probative evidence bears on the "excessive force" issue and explains decedent's state of mind when he fled and violently resisted arrest on two separate occasions. Fed. R. Evid. 401, 402; and 2)this evidence is admissible under Federal Rule of Evidence 901's "chain of custody" standard. Fed. R. Evid. 901; United States v. Brown, 1996 U.S. App. LEXIS 24207 (6th Cir. 1996)(attached as Exhibit A).  These issues will be addressed in this order below.

   A.   **Decedent's crack-cocaine and marijuana possession, drug dealing, obstruction and resisting arrest activities justified the officers' use of force and establishes the decedent's state of mind.**

Evidence of decedent's illegal drug possession, drug dealing efforts and investigation obstruction will assist the jury in deciding whether the police officers used appropriate force.  Fed. R. Evid. 401, 402; 42 U.S.C. § 1983.  Further, the officers' intention of arresting decedent for obstructing, related to the September 27, 2000 incident, directly contradicts plaintiffs' claims the underlying arrest involved only jaywalking.

Throughout this lawsuit, the plaintiffs have urged the Court to introduce all "relevant evidence," which will "make a fact in dispute more or less likely," and "assist the trier of fact to understand the evidence or to determine a fact in issue."  (Pl. Mar. 19, 2004 Memo Opp. Mot. Limine to Exclude Dr. Wecht Testimony

FREUND, FREEZE & ARNOLD
A Legal Professional Association

at 9 (citing Fed. R. Evid. 401, 402, 701).  By filing a complaint asserting claims related to the decedent's November 7, 2000 arrest, plaintiffs have placed the underlying reasons for decedent's arrest and the officers' state of mind when they used force to facilitate the arrest into issue.  Further, the decedent's state of mind is at issue because his acts of obstructing a drug investigation and violently resisting arrest twice, prompted the officers to employ force techniques.  The jury must fully understand the decedent's and officers' mind sets when they weigh how much force would have been appropriate under these circumstances.

"Relevant evidence" includes evidence having any tendency to make the existence of any fact that is a consequence to the determination of the action more probable or less probable than it would be without the evidence.  Fed. R. Evid. 401.  All relevant evidence is admissible.  Fed. R. Evid. 402.  Lay witnesses may offer testimony "rationally based" on the witness' perception and that helps the jury achieve "a clear understanding of the witness' testimony or the determination of a fact in issue."  Fed. R. Evid. 701.

In the case at bar, the plaintiffs contend the defendant officers employed excessive force, to support their 42 U.S.C. 1983 claim, in response to jaywalking.  Moreover, the plaintiffs completely gloss over how Officer Hunter positively identified decedent as the person who assisted drug dealers, obstructed a drug investigation and resisted arrest a few weeks earlier. If evidence

6

of decedent's drug activities is excluded, it may appear only a very minimal use of force, if any, might have been appropriate. Such an outcome would be highly unfair and impede justice because the officers' decision to arrest decedent directly related to the decedent's illegal drug connections and activities. In short, if plaintiffs' motion in limine is granted, the defendant officers will be unable to provide the jury with the truth behind the decedent's arrest.

In contrast, if the jury believes the defendant officers' and Nurse Flottemesch's sworn testimony, the officers' use of force techniques would appear much more appropriate. Officer Hunter's testimony of the September 27, 2000 incident, places decedent at the site of a four-person illegal drug exchange. Decedent's act of tipping these suspects, so they could avoid arrest, shows decedent knew these suspects and, at a minimum, condoned illegal drug dealing. These facts show the decedent willingly committed the crime of obstruction, subjecting himself to immediate arrest, to assist drug dealers. Decedent's acts of violently resisting arrest and fleeing further establishes that the decedent knew he had committed a very serious crime.

Turning to the events of November 7, 2000, the jury undoubtedly will question why the decedent fled regardless of the reason why the officers approached him. Even if the decedent only committed jaywalking, reasonable jurors certainly will question why he fled as opposed to cooperating. Further, reasonable jurors will

FREUND, FREEZE & ARNOLD
A Legal Professional Association

interpret decedent's acts of fleeing and violently resisting as proof that the officers' felt much more serious violations than jaywalking had occurred.  The officers' state of mind when they employed use of force techniques, after Officer Hunter positively identified decedent as a drug suspect who obstructed a police drug investigation, bears directly on the appropriate amount of force under the circumstances.

Moreover, the jury will question the decedent's state of mind when he fled and violently kicked the officers during arrest. Again, Officer Hunter's positively identified decedent suspect who associated and tipped known drug dealers in the face of an ongoing police investigation.  The fact decedent was willing to commit obstruction to assist drug dealer friends, at a time Officer Hunter and Officer Jorg saw these friends commit a drug exchange, strongly suggests the decedent knew of and approved of these friends' drug activities.  Additionally, these facts strongly suggest decedent participated in drug dealing himself; the focus of a police investigation in the subject neighborhood.

The jury must be permitted to construe Officer Hunter's testimony in light of Nurse Flottemesch's sworn personal recollections.  Nurse Flottemesch recovered illegal drugs from the decedent's pants pocket shortly after he presented to the University of Cincinnati emergency room.  Officer Hunter's and Nurse Flottemesch's testimony collectively establish that the decedent was involved in an illegal drug trade at all material

8

times.    Further,  their  testimony  establishes    decedent  ran  and violently resisted arrest on both occasions because of his own drug activities, in addition to obstruction of a drug investigation.

In short, once the jurors realize the officers intended to arrest decedent because he was a drug suspect who interfered with a drug investigation, and that decedent fled because he was a drug suspect, it is highly likely the jurors will conclude force techniques  were  justified.  Since  the  illegal  drugs  evidence corroborates  the  officers'  testimony,  the  plaintiffs  hope  to exclude this highly relevant, probative evidence because they realize it is fatal to their "excessive force" claim.  Since this evidence makes plaintiffs' "excessive force" claims less probable than they would be without the evidence, this evidence must be considered relevant, as a matter of law.  Fed. R. Evid. 401.  Thus, all relevant evidence is admissible under Federal Rule of Evidence 402.

   **B.    Plaintiffs  challenged  the  weight  and  not  the admissibility of the illegal drugs evidence, which is insufficient grounds to exclude this evidence under Evid. R. 901's "chain of custody" standard.**

Evidence of illegal drugs retrieved in plastic bags should be presented  to  the  jury  when  challenges  go  to  the  weight  or relevancy, but not the admissibility, of such evidence. Fed. R. Evid. 901; United States v. Brown, 1996 U.S. App. LEXIS 24207 *9 (6th Cir. 1996)(attached as Exhibit A).  Evidence Rule 901's "chain of custody" standard provides:

9

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

Fed. R. Evid. 901(a).

The requisite authentication or identification may be satisfied by the testimony of a witness with personal knowledge. Fed. R. Evid. 901(b)(1). Rule 901's "chain of custody" standard is not "an iron-clad requirement, and the fact of a missing link does not prevent admission of real evidence, so long as there is sufficient proof that the evidence is what it purports to be and has not been altered in any material aspect." United States v. Davis, 1999 U.S. App. LEXIS 19239, No. 98-4517, No. 98-4518 *22 (4th Cir. 1999), (attached as Exhibit B), cert. denied, Davis v. United States, 528 U.S. 1175, 120 S.Ct. 1205, 145 L. Ed. 2d 1107; accord, United States v. Brown, 1996 U.S. App. LEXIS 24207, No. 96-3074 (6th Cir. 1996)(reversing the District Court's decision to exclude four baggies containing cocaine found hidden under a neighborhood resident's porch offered as evidence of the defendant's drug dealing activities, after police failed to uncover illegal drugs in the defendant's possession two weeks earlier, because the defendant's view that the evidence might have been "found and modified" by others during the two-week interval went to the weight and not the admissibility of the evidence under Evidence Rule 901)(attached as Exhibit B).

In the case at bar, the Owensby plaintiffs' speculation that it is possible someone tampered with the crack-cocaine and

FREUND, FREEZE & ARNOLD
A Legal Professional Association

marijuana discovered in the decedent's immediate possession, provides even less basis to exclude such evidence than the Brown defendant's challenge.  While the Brown defendant's cocaine was retrieved two weeks after police interaction with the defendant, decedent Owensby's illegal drugs have been documented from the time Nurse Flottemesch removed the drugs from decedent's pants pockets until they reached toxicology for testing. The plaintiffs' attempts to exclude this evidence amounts to mere speculation that it is possible this evidence might have been tampered with in the chain of custody.  Considering the decedent's history of befriending and tipping known drug dealers, in the face of an ongoing police investigation, as well as decedent's history of evading police, it is highly unlikely the jury would view tampering as a legitimate explanation for the presence of these drugs in the decedent's pants pocket.  It should be noted there is absolutely no evidence in this case to support the plaintiffs' speculation that the police might have planted or tampered with this evidence at any time.

While anything is possible, Evidence Rule 901 as well as the Brown and Davis cases establish collectively that such speculation goes to the weight and not the admissibility of such evidence.  The Sixth Circuit, in Brown, held Evidence Rule 901 does not exclude such evidence for the reasons plaintiffs asserted.  The Sixth Circuit, in fact, views excluding such evidence for the reasons plaintiffs have asserted as an abuse of discretion and reversible error.  Brown, supra.  The plaintiffs must be required to challenge

11

the weight of this evidence and the testimony of individuals like Nurse Flottemesch, who have personal knowledge linking these drugs to the decedent during his arrest, on cross-examination in front of the jury.  Under these circumstances, the plaintiffs' "chain of custody" speculation lacks merit because it goes to the weight, and not the admissibility, of the disputed evidence.

## **CONCLUSION**

For the foregoing reasons, Defendants City of Cincinnati and Police Chief Thomas Streicher, Jr. respectfully request this Court overrule the plaintiffs' motion *in limine* to exclude evidence of the decedent's illegal drugs.

Respectfully submitted,

J. Rita McNeil (#0043535)
City Solicitor


S/Neil F. Freund
Neil F. Freund (0012183)
Trial Attorney
Vaseem S. Hadi (0075617)
FREUND, FREEZE & ARNOLD
One Dayton Centre
1 South Main Street, Suite 1800
Dayton, OH 45402-2017
(937) 222-2424
(937) 222-5369 (fax)
nfreund@ffalaw.com
vhadi@ffalaw.com

Geri Hernandez Geiler (0042081)
Sr. Assistant City Solicitor
Julie F. Bissinger (0012055)
Chief Counsel
City Solicitor's Office
Room 214, City Hall
801 Plum Street
Cincinnati, OH 45202
(513) 352-3338

12

(513) 352-1515 (fax)
geri.geiler@cincinnati-oh.gov
julie.bissinger@cincinnati-oh.gov

**PROOF OF SERVICE**

This will certify that a copy of the foregoing was served upon counsel of record by email this 18th day of May, 2004:

Mark T. Tillar (0029898)
240 Clark Road
Cincinnati, OH 45202
(513) 761-2958
Attorney for Plaintiff

John Helbling (0046727)
3672 Springdale Road
Cincinnati, OH 45251
513-923-9740
Attorney for Plaintiff

Paul B. Martins
HELMER, MARTINS & MORGAN CO.
Fourth & Walnut Centre, Suite 1800
105 East 4th Street Cincinnati, Ohio 45202-4008
(513) 421-7902
Attorney for Plaintiff

Donald E. Hardin (0022095)
HARDIN, LEFTON, LAZARUS &
MARKS, LLC
915 Cincinnati Club Building
30 Garfield Place
Cincinnati, OH 45202
513-721-7300
Special Counsel for Defendants
Robert Blaine Jorg, Patrick Caton,
Darren Sellers, Jason Hodge, and
Victor Spellen

Wilson G. Weisenfelder, Jr.  (0030179)
RENDIGS, FRY, KIELY & DENNIS, LLP
900 Fourth & Vine Tower
Cincinnati, OH 45202
513-381-9200
Attorney for Defendants
Village of Golf Manor,
Chief Stephen Tilley,
Officer Robert Heiland, and
John Doe #7 nka Chris Campbell

13

```
Ravert J. Clark
114 East 8th Street
Suite 400
Cincinnati, OH 45202
(513) 587-2887
Attorney for Defendant
Cincinnati Police Officer
David Hunter
```

**s: Neil F. Freund**
Neil F. Freund

14

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**