UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ESTATE OF : | |
| ROGER D. OWENSBY JR., et al., : | |
| : | Case No. 01-CV-769 |
| Plaintiff, : | |
| : | Senior Judge S. Arthur Spiegel |
| v. : | |
| : | Magistrate Judge Timothy S. Black |
| CITY OF CINCINNATI, et al., : | |
| : | |
| Defendants. : | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE
PLAINTIFF'S POLICE EXPERT, MICHAEL D. LYMAN, Ph. D. (doc. 136)**

**I.   INTRODUCTION**

Defendants City of Cincinnati and its Police Chief, Thomas Streicher, Jr., have moved this Court *in limine* to summarily exclude the testimony of Plaintiff's police procedures expert, Michael D. Lyman, Ph.D., because they allege that he lacks the "requisite knowledge and experience" to offer opinions on the police procedures at issue in this case.  Doc. 136, Motion to Exclude Testimony, pp. 8, 10.  Defendants' motion should be denied because Dr. Lyman is eminently knowledgeable and experienced in the field of police procedures and, in particular, in the area of use of force at issue in this action.

**II.   QUALIFICATIONS OF MICHAEL LYMAN, Ph.D.**

Michael D. Lyman, Ph.D., is a Professor of Criminal Justice at Columbia College in Columbia, Missouri—a position that he has held since 1989.  He is also the Director of Graduate Studies and Advisor to the Forensic Sciences Program at Columbia College.  Exhibit A, Lyman

Report and Resume, p. 23, attached. He has earned Bachelor of Science and Master or Science degrees in the field of Administration of Justice and earned a Doctor of Philosophy in Higher and Adult Education and Foundations. *Id.* at 25.

Presently, Dr. Lyman teaches criminal justice subjects at both the undergraduate and graduate level at Columbia College. Lyman Depo., p. 33:8-18. He has been a faculty member of Columbia College since 1989. He developed a baccalaureate program in forensic science for Columbia College—one of only a handful of such programs in the nation. Lyman Depo., p. 21:12-23. He is a member of the Academy of Criminal Justice Sciences; the American Academy of Forensic Science; the American Society of Criminology; the Police Executive Research Forum; the International Association for the Study of Organized Crime; and, the International Association of Chiefs of Police. Exhibit A, Resume, p. 26.

Last year, Dr. Lyman was invited to serve as a consultant for the Federal Research Division of the United States Library of Congress and the Director of Central Intelligence and Narcotics Center in Washington, D.C. *Id.* at 26.

Between 1989 and 1991, Dr. Lyman conducted two training seminars in Columbus, Ohio, for the Public Agency Training Council on such topics as: criminal investigations, undercover operations and informant management. *Id.*

Before that, from 1986 to 1989, Dr. Lyman was a certified instructor at the Law Enforcement Training Institute, a certified police academy under the law school at the University of Missouri - Columbia. *Id.*; Lyman Depo., p. 16:8-13. During these three years Dr. Lyman instructed police officers in the areas of use of force, criminal investigation, interviews and interrogations, information management, felony arrests and professional ethics. *Id.*; Lyman

Depo., pp. 16:14 - 18:2.  He was also recognized as the Police Instructor of the Year in 1988, by the Missouri Department of Public Safety, Police Officer's Standards and Training.  Exhibit A at 25.

Before that, Dr. Lyman worked as a Senior Agent for the Oklahoma Bureau of Narcotics and Dangerous Drugs for five years from 1981 to 1986.  *Id.* at 23-24.  In that capacity, Dr. Lyman made arrests, conducted investigations, testified in criminal cases in both federal and state courts, and testified before two congressional hearings.  *Id.*  He also served as a training and field training officer for police recruits.  *Id.* at 24.

Before that, from 1975 to 1980, Dr. Lyman served as a Special Agent with the Kansas Bureau of Investigation, making arrests, conducting interviews and interrogations, originating and managing large-scale criminal state-wide investigations, and testifying in state and federal criminal trials.  *Id.*

Dr. Lyman has authored seven text books on police procedures—all of which are peer reviewed and many of which are presently used by major metropolitan law enforcement organizations as training guides.  Dr. Lyman's peer-reviewed publications include:  a text book entitled *Practical Drug Enforcement*, copies of which have been purchased by the Federal Drug Enforcement Administration for its library; and a text book entitled *Criminal Investigation: The Art and the Science*, which is required reading for candidates for promotion to sergeant with the Dearborn, Michigan, Police Department.  *Id.*; Lyman Depo., p. 43 (clarification sheet).  Three of Dr. Lyman's text books specifically address the use of force: *The Police: An Introduction*; *Criminal Investigation: The Art and the Science* (required reading for the Dearborn Police Department sergeant's exam); and *Practical Drug Enforcement* (a DEA library reference text).  Lyman Depo., p. 24:3-23.

### III.  STANDARD OF REVIEW

Evidence Rule 702, as well as the Supreme Court's decisions in *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), require that the Court exercise its "gatekeeper" authority to ensure that expert opinions are relevant and the product of reliable principles and methods.  This requirement is designed "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.

The Court enjoys broad discretion in exercising this gatekeeper function and its decisions are reviewed only for an abuse of that discretion.  *General Elec. Co. v. Joiner*, 552 U.S. 136 (1997); *Morales v. American Honda Motors Co., Inc.*, 151 F.3d 500, 515 (6th Cir. 1998).

Defendants have moved to summarily exclude Dr. Lyman as an expert in police procedures in this case under the *Daubert* reliability prong because they allege that he lacks the "requisite knowledge and experience" to offer opinions on the police procedures at issue in this case. Doc. 136, Motion to Exclude Testimony, pp. 8, 10.  The Sixth Circuit has instructed all Courts that "Orders in limine which exclude broad categories of evidence should rarely be employed.  A better practice is to deal with the questions of admissibility of evidence as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).  This Court has already announced its intension to abide by this advice, reserving ruling on Defendants' motion until trial.  Doc. 156, Order, p. 89.  Therefore, this brief is offered to provide the Court with Plaintiff's thoughts on the *Daubert* issue in advance of trial.

*Daubert* suggested a non-exclusive list of four factors for courts to consider in

determining reliability of an expert witness—(1) whether the expert's theory or technique has been tested; (2) whether the theory or technique has been subject to peer review or publication; (3) the rate of error; and (4) general acceptance. *Daubert*, 509 U.S. at 593-94. These factors have been adopted by the Sixth Circuit as an analytical guide for assessing reliability of non-scientific expert testimony. *First Tennessee Bank Natl. Assn. v. Barreto*, 268 F.3d 319, 334 (6th Cir. 2001); *Berry v. City of Detroit*, 25 F.3d 1342, 1350-51 (6th Cir. 1994).

Here, Dr. Lyman's opinions on police procedures applicable to this case, i.e., the stop of Mr. Owensby, the decision to arrest Mr. Owensby, the excessive use of force and the failure to provide medical care are all subjects upon which he has academic as well as field experience. As established above, he has ten years of hands-on experience on these topics while serving as an Agent for the Kansas Bureau of Investigation and the Oklahoma Bureau of Narcotics and Dangerous Drugs. He was a certified instructor of police officers on these subjects for an additional three years with the Law Enforcement Training Institute. And he is a full professor teaching these subjects to police officers at the undergraduate as well as graduate level.

Moreover, Dr. Lyman's "theories" or "techniques" in this arena have been published and subject to peer review through his multiple authoritative text books. His views are also "generally accepted" by virtue of this peer review publication process and by the fact that his text on *Criminal Investigation* is required reading for the Dearborn, Michigan Police Department's sergeant's examination. Further, his publication on *Practical Drug Enforcement* is a reference text in the DEA's library.

Defendants primarily rely upon *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994) in arguing that Dr. Lyman's opinions are not "reliable." Doc. 136, Motion to Exclude Testimony,

pp. 8-9. However, *Berry* is inapplicable to the facts of this case.

*Berry*—issued five years before the Supreme Court issued it *Kumho* decision which analyzes non-scientific expert testimony—attacked the qualifications of a proffered police procedures expert who had no formal education in criminal justice. *Berry*, 25 F.3d at 1348. Here, Dr. Lyman has baccalaureate as well as masters degrees in criminal justice. Exhibit A, Lyman Resume, p. 25.

In *Berry*, the proffered expert was appointed as a deputy sheriff, a position for which *no* qualifications were required and for which he received *no* formal training. *Berry*, 25 F.3d at 1348-49. In contrast, Dr. Lyman served as a police officer with the Kansas Bureau of Investigation and then with the Oklahoma Bureau of Narcotics and Dangerous Drugs for ten years. During that time he not only graduated from a police academy, but also underwent approximately 2000 hours of additional state-required training that covered the topics at issue in this litigation, including use of force training as well as use of the police baton / PR-24. Lyman Depo., pp. 14:3 - 15:15. Thereafter, Dr. Lyman was certified as an instructor of police officers in subjects like use of force at the Law Enforcement Training Institute, a certified police academy under the law school at the University of Missouri - Columbia. Exhibit A, Lyman Resume, p. 23; Lyman Depo., p. 16:8-13.

Thus, *Berry* provides no basis for summarily disqualifying Dr. Lyman, who is eminently qualified to testify and offer his opinions on the police procedures at issue in this action.

**IV.   DEFENDANTS' FAULTY CHALLENGES TO DR. LYMAN'S QUALIFICATIONS**

As demonstrated above, Dr. Lyman does, in fact, have the requisite background and

training to qualify as an expert on police procedures in this action. Defendants, however, argue that "any proffered police expert must have current, ongoing and first-hand experience as a police officer in 'use of force' settings." Doc. 136, Motion to Exclude Testimony, p. 6. Of course, there is no requirement in either the Rules of Evidence or in the law that restricts police procedure experts to those with "current" and "on-going" experience as a police officer. If this were the case, then Defendants own proffered police procedures expert, Joe Callanan, would be automatically disqualified since he retired as a deputy sheriff over fifteen years ago, in 1989, and has been working as a private consultant/expert ever since. Exhibit B, Resume of Joe Callanan, p. 1.

      Defendants also make a number of assertions in their motion that are incorrect or taken out of context. First, they assert that "Dr. Lyman has not worked as a police officer since 1986." Doc. 136, Motion to Exclude Testimony, p. 4. What defendants fail to acknowledge is that, beginning in 1986, Dr. Lyman moved beyond being a police officer and became a certified instructor at the Law Enforcement Training Institute at the University of Missouri - Columbia, a certified police academy operated under the University of Missouri School of Law. Exhibit A, Resume, p. 25; Lyman Depo., p. 16:8-13. During this time he taught police officers subjects relevant to this case, including the use of force. Lyman Depo., p. 16:14-24. In fact, he was recognized for his expertise in 1988 by being named Police Instructor of the Year by the Missouri Department of Public Safety, Police Officer's Standards and Training. Exhibit A, Resume, p. 25.

      Next, Defendants argue that Dr. Lyman should be excluded because "he has never worked as a uniformed officer." Doc. 136, Motion to Exclude Testimony, pp. 4, 9. Again, this is

a half truth. For over ten years, Dr. Lyman worked as a Special Agent for Kansas Bureau of Investigation and then for the Oklahoma Bureau of Narcotics and Dangerous Drugs. Exhibit A, Resume, p. 25. As such, he did not wear a police uniform but was a police officer. Moreover, as he explained at his deposition, Dr. Lyman worked with uniformed police officers and trained uniformed police officers. Lyman Depo., p. 31:14-22.

    Defendants also attack Dr. Lyman's expert qualifications because he did not serve on a major metropolitan police force. Doc. 136, Motion to Exclude Testimony, pp. 4, 9. The first flaw in Defendants logic is that they assume that there are different standards of behavior for police officers in major metropolitan settings as opposed to the rest of the United States. They offer no facts to support this argument because there are none. The standard for use of force as announced by the Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989) and *Tennessee v. Garner*, 471 U.S. 1 (1985), does not allow for the use of more force if the arrest occurs in a metropolitan setting. Likewise, the City of Cincinnati's use of force regulation makes no distinction in the applicable use of force standards if an arrest is made in Over-the-Rhine as opposed to Eden Park or Western Hills.

    The second flaw in Defendants' argument is that they have ignored the fact that Dr. Lyman taught use of force standards to metropolitan uniformed police officers. Lyman Depo., p. 31:14-22. And, while not employed by a metropolitan police department, he worked with and conducted investigations with major metropolitan police departments in Kansas City, Oklahoma City, Wichita, Tulsa, Dallas and Albuquerque. Lyman Depo., p. 29 (clarification sheet).

    Finally, consistent with the *Daubert* peer review and general acceptance factors, Dr. Lyman's text, *Criminal Investigation*, which addresses use of force standards, is required reading

for the Dearborn, Michigan Police Department—a suburb of Detroit. Lyman Depo., p. 24:3-23.

Defendants next fault Dr. Lyman for not being able to recall specific situations where he used force to effectuate an arrest, implying that he has never done so. Doc. 136, Motion to Exclude Testimony, p. 4-5, 9-10. In fact, Dr. Lyman has testified that, while working for the Oklahoma Bureau of Narcotics and Dangerous Drugs, he specifically recalled suspects resisting arrest. Lyman Depo., p. 12:8-10. He was then asked if he used force to effectuate those arrests and he replied:

> A.  I think, like I stated, the chances are I did use some degree of force however you want to identify or define as force. They were almost all felony arrests. And I can't remember anybody specifically running from me.
>  \*   \*   \*   \*   \*
> Q.  Do you think there's a probability that you did or – or didn't [use force to effectuate an arrest]?
> A.  I think I testified I think that I did.

Lyman Depo., pp. 12:11 - 13:16. Thus, the fact that Dr. Lyman cannot recall a specific instance where he chased or tackled a fleeing suspect is of no consequence in determining his qualifications to render a relevant and reasonable opinion in this action.

Finally, Defendants separate Dr. Lyman's professional experience as a police officer from his academic and writing experience, arguing that each is insufficient to qualify him as an expert in this case. Doc. 136, Motion to Exclude Testimony, p. 5. They even allege that Dr. Lyman "conceded" that his experience as a police officer did not make him an expert. *Id* at 5, 10. This argument is taken out of context and does not accurately reflect Dr. Lyman's testimony.

Dr. Lyman testified that his experience as a police officer does not alone qualify him as an expert. Likewise, his particularized knowledge as a teacher of police officers and an author of authoritative text books on this subject does not alone qualify him as an expert. Instead, as

9

candidly explained in his deposition, it is the combination of practical field experience and years of academic study and research (subject to publication and peer review) that renders Dr. Lyman qualified to offer opinions in this matter to assist the Court and jury.

> Q. In your opinion, when do you first consider yourself to be an expert on the use of force?
>
> A. I don't have a date to give you....I have been a professor for 16 years now. I have an 18-year publishing record. On the low end, when I first began publishing, you know, when I first left law enforcement, I can tell you I – I did not feel I was an expert on use of force. I don't feel my experience in and of itself would qualify me for that, even though I was an instructor in the academy.
> I think over a period of time, and I'm not clear exactly whether it would be three years or five years or ten years, during the period of time that I researched in one form or another use of force or use of deadly force, I think at some point I became competent, in my estimation, in my ability to – to understand it and to apply it to practical situations.
>
> Q. Thank you.

Lyman Depo., p. 42:3-24.

> A. I do not consider a police officer as an expert only because he/she worked in the field in that capacity. Rather, I consider a policing expert as such when they have a base of practical experience but that knowledge has been expanded through professional research, policy development, and training. I have authored a total of seven text books that all deal with police procedure. I also interact daily with the law enforcement community. My books are all peer-reviewed and many are <u>now</u> used by major law enforcement organizations as training guides. For example, candidates for promotion to Sgt. at the Dearborn, Michigan Police Dept. <u>require</u> the reading of my <u>Criminal Investigation</u> book; and the Federal Drug Enforcement Administration has purchased 5 copies of my "Practical Drug Enforcement" book for their library.

Lyman Depo., p. 43 (clarification sheet).

V.  **DR. LYMAN'S OPINIONS CONCERNING THE FAILURE OF THESE DEFENDANTS TO RENDER NECESSARY MEDICAL CARE.**

Defendants challenge the opinions expressed by Dr. Lyman concerning the failure of the police officers to render necessary medical care to Mr. Owensby because Dr. Lyman is not a "medical expert." Doc. 136, Motion to Exclude Testimony, p. 11. Defendants' argument is misplaced. The requirement of the police to provide medical care to citizens in their custody is a function of police procedures, specifically, use of force procedures. It is not a medical question. In fact, the City of Cincinnati admits as much in its Procedure 12.545, <u>Use of Force</u> wherein it provides:

> Following any use of force resulting in a citizen's injury, officers will ensure appropriate first aid is rendered immediately once the incident scene is stabilized.

Plaintiff's Trial Exhibit 160, p. 3.

Dr. Lyman's opinions on this matter center on the failure of the Cincinnati Police Department to train its officers in implementing this vague standard with its competing requirement of "immediate" care "once the incident scene is stabilized." Exhibit A, Lyman Report, Opinion 4, pp. 13-15. Even the Defendant Cincinnati police officers admitted that they had no such training. Doc. 102, Response of Defendant Hunter In Opposition To Plaintiff's Motion for Partial Summary Judgment, pp. 8-9; Doc. 103, Defendants' Caton, Jorg, Sellers and Spellen Memorandum In Opposition to Partial Summary Judgment, pp.8-9.

Dr. Lyman also opines on the failure and indifference of the police officers to provide medical care Mr. Owensby. *Id.*, Opinion 3, pp. 11-13. Finally, he opines upon the complete lack of any training in the implementation and responsibilities of the responding police officers under the Mutual Aid Agreement in effect between Defendants City of Cincinnati and the Village of

Golf Manor. *Id.* at p. 17. All of these opinions address deficiencies in police procedures, for which Dr. Lyman is qualified to provide. They are not medical opinions.

Moreover, the failure of the Defendants to provide medical care to Mr. Owensby has been conclusively established as a result of this Court's summary judgment decision. Doc. 156, Order. Thus, Dr. Lyman's opinions concerning the duty of the Defendant police officers and their police departments to provide medical care to Mr. Owensby will be deminished at trial since the violation of these standards is now established as a matter of law.

## VI.  DEFENDANTS' FALSE CITATION TO PLAINTIFF'S COMPLAINT

Finally, Plaintiff notes that Defendants have incorrectly attributed a number of their allegations of fact to Plaintiff's Complaint. These allegation do not appear in the Complaint, are not factually correct and, therefore, warrant this response.

Specifically, Defendants cite to Plaintiff's Complaint for the proposition that Roger Owensby died "after the decedent violently resisted arrest on November 7, 2000." Doc. 136, Motion to Exclude Testimony, p. 3. Plaintiff has never alleged that Roger Owensby "violently resisted arrest." In fact, Plaintiff's Complaint alleges just the opposite—that "Roger D. Owensby, Jr., was assaulted, tortured and killed by Defendants." Doc. 1, Complaint, ¶ 2.

Defendants falsely attribute to paragraph 4 of the Complaint their statement that Officers Caton, Hunter and Jorg "positively identified the decedent as a man wanted in connection with drug dealing and obstruction of justice activities." Doc. 136, Motion to Exclude Testimony, p. 3. Not so. The Complaint states that a clean-shaven person, <u>not matching the appearance of Roger Owensby</u>, was wanted for questioning for a "*possible* obstruction of justice charge" and that "Defendant Hunter *alleged* that Roger D. Owensby, Jr. *looked like* the individual seen almost two

12

months prior to the November 7, 2000 date." Doc. 1, Complaint, ¶ 4 (emphasis in original).

Defendants falsely cite to paragraph 5 of the Complaint for the proposition that "[a]fter the officers approached decedent, for unexplained reasons, decedent became agitated, uncooperative and refused to assist." Doc. 136, Motion to Exclude Testimony, p. 3. This citation too is false. Neither paragraph 5, nor any other portion of the Complaint, alleges that Roger Owensby was agitated, uncooperative or refused to assist. In fact, the sworn testimony of Officer Jorg is to the contrary, admitting that Mr. Owensby was cooperative and respectful. Jorg Depo., p. 100:17-20.

## VII.   CONCLUSION

Dr. Lyman is qualified to render the opinions set forth in his Report (Exhibit A) based upon his ten years of field experience as a police officer; his sixteen years of academic experience teaching police officers; his certification as a police academy instructor; and his numerous authoritative text books on these subjects which are generally accepted in the police community and all of which have been subject to peer review. Dr. Lyman should be allowed to testify and Defendants Motion to summarily exclude his testimony should be denied.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  |  |
|  | /s/Paul B. Martins |
| Mark T. Tillar (0029898) | James B. Helmer, Jr.  (0002878) |
| 240 Clark Road | Paul B.  Martins (0007623) |
| Cincinnati, Ohio  45202 | Frederick M. Morgan, Jr.  (0027687) |
| Telephone: (513) 761-2958 | HELMER, MARTINS & MORGAN CO., LPA |
|  | Fourth & Walnut Centre, Suite 1900 |
| John J. Helbling (0046727) | 105 East Fourth Street |
| 3672 Springdale Road | Cincinnati, Ohio 45202-4008 |
| Cincinnati, Ohio 45251 | Telephone:     (513) 421-2400 |
| Telephone: (513) 923-9740 | Facsimile:     (513) 421-7902 |
|  |  |
|  | *Trial Attorneys for Plaintiff* |

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing Plaintiff's Memorandum in Opposition to Defendants' Motion *In Limine* to Exclude Plaintiff's Police Expert, Michael D. Lyman, Ph.D. (Doc. 136), was electronically filed on May 20, 2004. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                /s/ Paul B. Martins