UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ESTATE OF                                  :
ROGER D. OWENSBY JR., et al.,              :
                                           :      Case No. 01-CV-769
             Plaintiff,                    :
                                           :      Senior Judge S. Arthur Spiegel
v.                                         :
                                           :      Magistrate Judge Timothy S. Black
CITY OF CINCINNATI, et al.,                :
                                           :
             Defendants.                   :

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
AND MOTION TO STRIKE
MOTION TO TAKE SUPPLEMENTAL DEPOSITION OF DR. WECHT
BY DEFENDANTS CATON, HODGE, JORG, SELLERS AND SPELLEN (doc. 152)**

More than four months after the discovery cutoff and on the eve of trial, the Cincinnati

Police Officer Defendants have moved to reopen discovery so they can take a supplemental

expert deposition of Dr. Cyril Wecht, a forensic pathologist in Pittsburgh, Pennsylvania.  Dr.

Wecht was initially hired by the City of Cincinnati to provide a "second opinion" as to the

manner, mode and cause of death of Roger Owensby, Jr.  His opinion was issued to the City, who

then published it two years ago to the world, including the Defendant Cincinnati Police Officers,

in September, 2002.

Counsel for these police officer Defendants elected not to physically attend Dr. Wecht's

February 25, 2004 video trial deposition, choosing instead to participate by phone.  Now defense

counsel claims that he should get to depose Dr. Wecht again under the pretext that he has since

obtained a half page of handwritten notes from a Cincinnati police officer who allegedly attended

a meeting with Dr. Wecht between the time of Dr. Wecht's initial and final reports.  That double-

hearsay handwritten note purports to contradict opinions expressed by Dr. Wecht in his initial

report (issued *before* the note was allegedly created); in his second preliminary report (issued *on the same day* that the note was allegedly created); in his final report (issued *after* the note was allegedly created); and in his video deposition (taken *after* the note was allegedly created).

At the April 29, 2004 Status Conference (Doc. 135), counsel for these Defendants requested leave to reopen discovery to take a supplemental video deposition of Dr. Cyril Wecht. This Court considered the arguments of counsel and denied the motion but directed Plaintiff's counsel to forward the note to Dr. Wecht to see if the Doctor could recall any such conversation. Plaintiff did just that. On the morning that Defendants filed their motion, Dr. Wecht called Plaintiff's counsel stating that he had reviewed the note, that it was incorrect and further stating that there were portions of the note that were medically impossible and, thus, could not accurately record any conversation that he may have had concerning the death of Mr. Owensby.

Because this Court already denied this very motion less than three weeks ago, Defendants' motion should be stricken.

If it is not stricken, Defendants' motion should be denied because: (1) Defendants' counsel knew that the City of Cincinnati had initially hired and dealt with Dr. Wecht for the past two years yet chose not to inquire into the communications between the City and Dr. Wecht until after Dr. Wecht's video deposition was taken; (2) the cause of Mr. Owensby's death was determined by the Hamilton County Coroner, and that finding is binding on the parties by operation of Ohio Rev. Code Ann. § 313.19; (3) the discovery deadline is long past and we are on the eve of trial; (4) the use of the note is an improper attempt to impeach Dr. Wecht with inadmissible hearsay evidence in violation of Rules 608(b) and 802, Fed. R. Evid.; (5) the topics identified in the cryptic hearsay note were extensively covered at Dr. Wecht's video deposition;

and (6) reopening discovery to redepose Dr. Wecht on this hearsay note would impose an undue

burden on Plaintiff by necessitating that Plaintiff depose all of the Cincinnati personnel who met

with Dr. Wecht on August 14, 2002, including the Director of OMI, Mark Gissiner, and the

purported author of the hearsay note, Cincinnati Police Lt. Col. Biehl.

## I.     DEFENDANTS CHOSE NOT TO INQUIRE INTO COMMUNICATIONS BETWEEN THE CITY AND DR. WECHT UNTIL AFTER THE VIDEO TRIAL DEPOSITION WAS TAKEN

In June, 2002, the Director of Cincinnati's Office of Municipal Investigations, Mark

Gissiner, announced that the City had hired Dr. Cyril Wecht to examine the autopsy of Roger

Owensby, Jr.  This was widely reported in the Cincinnati *Enquirer* on July 29, 2002:

> The city of Cincinnati has hired a national forensic expert—renowned for his
> research into high-profile deaths—to review what killed Roger Owensby Jr.  A
> soon-to-be-released report by Dr. Cyril H. Wecht, coroner in Allegheny County,
> Pa., could help the city's Office of Municipal Investigation resolve competing
> theories on Mr. Owensby's cause of death after he was arrested in Roselawn in
> November 2000.  The city wants to know whether Cincinnati police officers
> involved in the arrest "committed any administrative or procedural violations,"
> said OMI Director Mark Gissiner, who has described the Owensby case as the
> most complicated his office has ever handled.  "Given the difficult circumstances
> in this case, we wanted a second opinion from a doctor who is well respected
> nationally," Mr. Gissiner said.  "It's not unlike someone facing major surgery who
> wants a second opinion."

Gregory Korte and Jane Prendergast, *Forensic expert hired to review Owensby case*, The

Enquirer, June 29, 2002 (attached as Exhibit A).

Thus, at least two years ago, counsel for the Defendant police officers knew that Dr.

Wecht had been hired by the City of Cincinnati Office of Municipal Investigation; that OMI

Director Mark Gissiner, hired Dr. Wecht to get a "second opinion" as to the cause of Mr.

Owensby's death; and that Dr. Wecht's analysis was to be used to determine whether any of the

defendant police officers "committed any administrative or procedural violations." Exhibit A.

On August 8, 2002, Dr. Wecht authored a preliminary report to the City agreeing with the findings of the Hamilton County Coroner and confirming that Mr. Owensby died of mechanical asphyxiation as a result of the force used by the Defendant Cincinnati police officers. Exhibit B. A week later, on August 14, 2002, Dr. Wecht met with several Cincinnati representatives, including Mr. Gissiner to discuss his preliminary report. On the same day as the meeting, August 14, he also issued a second preliminary report which again reaffirmed the finding of mechanical asphyxiation as a result of the use of force by the police officers. Exhibit C. Thereafter, on September 10, 2002, Dr. Wecht issued his final report. Exhibit D.

Immediately upon receipt of Dr. Wecht's report, the City and its OMI Director issued it to the press where Dr. Wecht's finding were widely reported. Exhibit E: Gregory Korte, *Coroner's review verifies Owensby's cause of death*, The Enquirer, Sept. 13, 2002; Exhibit F: Craig Garretson, *Report blames ex-officer for death*, The Kentucky Post, Sept. 13, 2002; Exhibit G: Liz Foreman, *Outside Expert: Police Officer Killed Roger Owensby*, WCPO 9 News, Sept. 12, 2002. Defendants' counsel took no steps to determine what, if any, communications existed between the City and Dr. Wecht.

Dr. Wecht's report was then incorporated into the OMI Investigative Report finding that the Cincinnati police officer defendants violated Cincinnati procedures. Exhibit H: Craig Garretson, *Internal Reports Fault Officers*, The Cincinnati Post, Oct. 15, 2002. Again, Defendants' counsel to no steps to determine what, if any, communications existed between the City and Dr. Wecht even though Defendants' counsel was actively representing several of the officer defendants in administrative proceedings before the City. And Officer Biehl never came

forward to dispute any of Dr. Wecht's findings.

On November 30, 2003, Plaintiff's counsel noticed the video deposition of Dr. Wecht. In response, the City filed a Motion for Protective Order to prevent the deposition from going forward. Doc. 68. Plaintiff voluntarily postponed the deposition until the City's motion was resolved. Doc. 69. On January 5, 2004, this Court denied the City's motion, and Dr. Wecht's video deposition was again noticed for February 25, 2004. Doc. 80. Still, Defendants' counsel took no steps to determine what, if any, communications existed between the City and Dr. Wecht.

The video deposition of Dr. Wecht was taken on February 25, 2004 in Pittsburgh. Counsel for Plaintiff, counsel for Defendant City of Cincinnati, its Police Chief and the Cincinnati Officers in their official capacity, as well as counsel for the Golf Manor Defendants all attended the deposition. The Defendant Officers' individual counsel who filed this motion participated and questioned Dr. Wecht by phone, electing not to attend in person.

A month *after* Dr. Wecht's deposition and 3½ months after the discovery cutoff, Defendants' counsel made a public records request to the City for "all City records that document the names and titles of all agents or employees of the City of Cincinnati who corresponded with or traveled to the offices of Cyril H. Wecht, M.D." as well as "all contracts, proposals, memoranda, or other documents relating to the retention and payment of Dr. Wecht for th reports provided to Mark A. Gissiner, Acting Municipal Investigation Manager, City of Cincinnati." Doc. 152, Motion to Take Supplemental Deposition of Dr. Wecht, Exhibit D. A month after that, Defendants' counsel says that he obtained the names of the Cincinnati personnel who met with Dr. Wecht which, in turn, led him to a conversation with Cincinnati Police Lt. Col. Biehl

who then produced the half-page note purportedly created at a meeting with Dr. Wecht on

August 14, 2002.   Doc. 152, Motion to Take Supplemental Deposition of Dr. Wecht, p. 3,

Exhibit F.  This note was neither prepared by, signed by, or even seen by Dr. Wecht.

There are no equities weighing in favor of reconvening Dr. Wecht's video deposition.

Defense counsel was aware that Dr. Wecht was working with the City of Cincinnati on the

Owensby autopsy for the past two years and failed to conduct any discovery.  He knew that Dr.

Wecht's report was being used against his client in administrative proceedings for the past 18

months and he did nothing.  He knew that Plaintiff planned to take Dr. Wecht's video deposition

for four months before the deposition was actually taken and he did nothing.  Since the hearsay

note Defendants' counsel wishes to now use was not prepared by, seen by, or sworn to by Dr.

Wecht, it is inadmissible for any purpose.  Furthermore, as demonstrated in this memorandum,

the subjects listed on the note were, in fact, already covered at length in Dr. Wecht's deposition

Thus, there is no basis for now violating this Court's discovery cutoff and reconvening this

deposition in Pittsburgh on the eve of this June 14 trial.

## II.    THE NOTE IS IRRELEVANT, BECAUSE THE CORONER'S OPINION ON THE CAUSE AND MANNER OF MR. OWENSBY'S DEATH IS BINDING ON THE PARTIES AND THE COURT

The Hamilton County Coroner ruled that Mr. Owensby, Jr. died as a result of mechanical

asphyxiation.  That finding is binding by operation of Ohio Rev. Code Ann. § 313.19, unless and

until it is set aside by the Hamilton County Court of Common Pleas.  As an Ohio appellate panel

reiterated just weeks ago,[1]

---

[1] *Fuerst v. Ford*,  2004 Ohio 1510, 2004 Ohio App. LEXIS 1334, *4 (Ohio App. Mar. 29, 2004) (emphasis supplied).

> As a matter of law, the manner of death delivered by the coroner is the legally accepted manner absent a hearing protesting the ruling. R.C. 313.19. The coroner's factual determinations concerning the manner of the decedent's death, create a non-binding, rebuttable presumption concerning such facts in the absence of competent, credible evidence to the contrary. *Vargo v. Traveler's Ins. Co.* (1987), 34 Ohio St. 3d 27, 516 N.E.2d 226. Any challenges to the [coroner's] ruling must be made in the common pleas court. *Perez v. Cleveland* (1997), 78 Ohio St. 3d 376, 1997 Ohio 33, 678 N.E.2d 537.

*See also*, Doc. 108, Plaintiff's Reply in support of Motion for Partial Summary Judgment, pp. 16-18; Doc. 131, Plaintiff's Supplemental Memorandum in support of Motion for Partial Summary Judgment, pp. 2-6.

The defendants in this case have taken no steps to challenge the Coroner's findings in the Court of Common Pleas. Therefore, any attempt to cause Dr. Wecht to reconsider his repeated agreement with the Coroner's opinions are moot, because the cause of death is not a question open to factual or legal dispute. Thus, the probative value of the purported note is sufficiently *de minimis* that the palpable prejudice to Plaintiff resulting from opening a new discovery front strongly outweighs whatever minuscule benefit Defendants might hope to obtain from again having at Dr. Wecht.

## III.    THE DISCOVERY DEADLINE IS LONG PAST AND WE ARE ON THE EVE OF TRIAL.

The discovery cutoff in this action was 4½ months ago, on January 1, 2004. Doc. 32, Scheduling Order. The only reason Dr. Wecht's deposition was taken after the discovery cutoff was because of the delay caused by the City of Cincinnati's motion to prevent the deposition. Docs. 68, 80. Thus, Defendants's counsel had four months advance notice of the pending deposition of Dr. Wecht and chose to do nothing. Instead, counsel waited until a month after Dr. Wecht's deposition to begin obtaining the discovery that he now claims is so indispensable as to

warrant reopening discovery for a second deposition.

We are three weeks from jury selection and trial. However, Defendants' counsel now wants Plaintiff and the other defendants to abandon their trial preparations, travel to Pittsburgh and reconvene the deposition of Dr. Wecht so that counsel can ask him about an inadmissible hearsay note—the subject of which he has already addressed and refuted in his initial reports (written before and the day that the note was allegedly created), his final report (written after the note was allegedly created) and in his February 25, 2004 deposition testimony. Dr. Wecht's testimony has remained consistent from his first initial report through to his trial testimony. There is no reason to believe that he will alter his testimony one iota when faced with this hearsay note. In fact, based upon his statement to Plaintiff's counsel on Monday, May 17, we know for a fact that his testimony will remain steadfast. Martins Declaration, attached.

Moreover, reopening discovery based upon this hearsay note will require Plaintiff to depose all City personnel who met with Dr. Wecht on August 14, 2002, including Mr. Gissiner and Lt. Col. Biehl. Thus, reopening discovery will unfairly disrupt trial preparations and will operate to the extreme prejudice of Plaintiff's counsel while serving no practical purpose.

## IV. USE OF THE DOUBLE-HEARSAY NOTE IS AN IMPROPER ATTEMPT TO IMPEACH DR. WECHT IN VIOLATION OF RULES 608(b) AND 802, FED. R. EVID.

Rule 608(b), Fed R. Evid., expressly prohibits the introduction of extrinsic evidence of specific instances of conduct of a witness for the purpose of attacking the witness' credibility. This is precisely what Defendants are attempting to do with the use of the hearsay note of Cincinnati Police Lt. Col. Biehl. Defendants want to use this piece of extrinsic evidence—the note or the hearsay testimony of Lt. Col. Biehl—to attack the credibility of Dr. Wecht by alleging

that Dr. Wecht told Lt. Col. Biehl something that is contrary to prior and subsequent reports and testimony of Dr. Wecht. Such a collateral attack on Dr. Wecht's credibility is absolutely prohibited by the first sentence of Rule 608(b), Fed. R. Evid.

The second sentence of Rule 608(b) empowers the Court with discretion to allow a party to question a witness about a specific instance of conduct (without identifying or introducing the extrinsic evidence) if it concerns the witness' character for truthfulness or untruthfulness. Thus, Defendants' counsel could theoretically ask Dr. Wecht if he ever previously said that the injuries to Mr. Owensby could have been caused by a "heart occlusion"—whatever this nonsensical term means—or whether the deep muscle hemorrhages on the shoulder blades of Mr. Owensby's back could have been caused by punches. However, such an examination would be redundant since all of the topics identified in the hearsay note were previously addressed by Dr. Wecht in his video deposition.

## V.    THE ISSUES IDENTIFIED IN DEFENDANTS' NOTE WERE FULLY ADDRESSED AT DR. WECHT'S DEPOSITION

A supplemental deposition to further cross-examine Dr. Wecht on the topics identified in the note would be a useless act here, since Dr. Wecht was already extensively cross-examined at his video deposition for over a hundred pages on these very issues by Defendants' counsel as well as defense counsel for the City of Cincinnati. At Dr. Wecht's February 25, 2004 deposition, Defendants' counsel cross-examined Dr. Wecht for 41 pages. Doc. 114, Wecht 2/25/04 Depo. Additionally, defense counsel for the City of Cincinnati cross-examined Dr. Wecht for another 66 pages. *Id*.

Dr. Wecht discussed his August 14, 2002 meeting with Cincinnati representatives

wherein he explained his findings and specifically stated: "my recollection is quite clear that nobody was arguing for this being a cardiac death, and when everybody left, you know, as far as I know, in terms of what was discussed there, you know, there seemed to be general acceptance." Wecht Depo., p. 81:4-8.  Defendants' counsel already cross-examined Dr. Wecht on his meetings with City personnel.  *Id.* at 158:3 - 172:12.  Thus, there is no need to reopen discovery to examine Dr. Wecht on this subject a second time.

The hearsay note upon which Defendants base their motion to reopen discovery identifies five issues—a "heart occlusion" playing "some role;" mace as a contributing factor; punches as the "source of deep muscle trauma;" arm over nose/mouth as a "factor;" and the unspecified "do not have substantive, significant injury."  Doc. 152, Motion for Supplemental Depo., Exhibit F. All of these issues were fully addressed by Dr. Wecht at the February 25 video deposition.

Heart Occlusion:  First and foremost, there is no such thing as a "heart occlusion." Dr. Wecht testified that he and the Hamilton County Coroner found a coronary artery occlusion due to atherosclerosis of between 30 to 40 percent.  Wecht Depo., p. 30:13-17.  However, Dr. Wecht explained that this played no part in Mr. Owensby's death since it is a minor abnormality in an otherwise completely healthy cardiovascular system.  *Id.* at 53:22 - 54:19.  Dr. Wecht was extensively cross-examined by the City's counsel on this topic as well as all aspects of cardiac death.  Dr. Wecht repeatedly and consistently explained that the forensic evidence clearly established that Mr. Owensby died of mechanical asphyxiation.  *Id.*  at 124:3 - 145: 24.

Mace As A Contributing Factor:  Dr. Wecht testified (consistent with the note) that the mace applied to Mr. Owensby by Officer Hunter was a contributing factor to his death because it compromises the ability of the victim to breath.  *Id.* at 62:22 - 64:6.  He was cross-

examined on this subject by Defendants' counsel. *Id.* at 183:14-24.

Punches As The Source Of The Deep Muscle Trauma: Dr. Wecht repeatedly testified that punches could <u>not</u> be the source of the two large deep muscle hemorrhages found over Mr. Owensby's shoulder blades, because there was no bruising of the overlying skin and subcutaneous tissue. *Id.* at 34:21 - 41:18. Again, he was cross-examined extensively on this topic by Defendants' counsel. *Id.* at 178:6 - 183:13.

Arm Over Nose/Mouth As A Factor: Dr. Wecht testified (consistent with this note) that the "head wrap" arm hold over Mr. Owensby's nose and mouth by Officer Jorg as part of his "mandibular angle" pain technique, contributed to Mr. Owensby's asphyxiation death. *Id.* at 46:20 - 50:3; 66:13 - 67:14. Once more, Dr. Wecht was fully cross-examined on this subject by Defendants' counsel. *Id.* at 183:25 - 187:2.

Do Not Have Substantive, Significant Injury: It is difficult to tell what the hearsay comment "do not have substantive, significant injury" means in the context of Mr. Owensby's death. If it refers to the fact that resuscitation efforts can result in some minor or insignificant edema in the lungs, this subject was covered on cross-examination. *Id.* at 118:4-10. If it means that Mr. Owensby had no substantive or significant heart disease that played any part in his death, this subject was covered on cross-examination. *Id.* at 53:22 - 54:19; 124:3 - 145: 24. If it means that the deep muscle bilateral hemorrhages on his shoulder blades had no visible injury to the overlying skin, this subject was covered on cross-examination. *Id.* at 34:21 - 41:18; 178:6 - 183:13. If it means that the numerous cuts and abrasions on Mr. Owensby's face and head from the beating and being restrained face down on the asphalt were not a "significant injury" that caused his death, this too was covered at Dr. Wecht's deposition. *Id.* at 112:9-22; 135:7-16.

Moreover, as previously explained in Plaintiff's summary judgment briefing, the cause of death (mechanical asphyxiation) as evidenced by the deep muscle hemorrhages is conclusively fixed in this action by R.C. 313.19 and by the doctrine of judicial estoppel. Doc. 108, Plaintiff's Reply in Support of Motion for Partial Summary Judgment, pp. 16-21. Since all parties are bound by these finding of the Hamilton County Coroner, further cross-examination would be useless and contrary to the law of this case.

## VI.    CONCLUSION

Defendants Motion to Take Supplemental Deposition of Dr. Wecht should be denied because:

(1) Despite knowing for the past two years that representatives of the City of Cincinnati had hired and were communicating with Dr. Wecht, Defendants elected not to conduct any discovery into those communications until after Dr. Wecht's video trial deposition was taken;

(2) Despite knowing four months in advance that Plaintiff was going to take the video deposition of Dr. Wecht, Defendants elected not to conduct any discovery into communications between the City and Dr. Wecht until after the deposition was taken;

(3) Defendants' request is now made four months after the discovery cutoff;

(4) The note is irrelevant, because the Coroner's determination of the manner, mode and cause of Mr. Owensby's death is binding on the parties and this Court, pursuant to R.C. 313.19.

(5) Defendants' motion is made on the eve of trial and will impose an undue burden on Plaintiff's counsel who are preparing for trial and should not be forced to travel to Pittsburgh to reconvene this deposition;

(6) Defendants' motion is based upon a hearsay note that is inadmissible under Rules

608(b) and 802, Fed. R. Evid., and constitutes an impermissible attempt at introducing extrinsic evidence in an attempt to challenge Dr. Wecht's character for truthfulness;

(7) All of the subjects identified in Defendants' hearsay note were already examined and subject to cross-examination by Defendants' counsel at Dr. Wecht's 2/25/04 video deposition;

(8) The cause, mode and manner of Roger Owensby's death is fixed, as a matter of law, by the Hamilton County Coroner's autopsy report in accord with R.C. 313.19 and the doctrine of judicial estoppel; and,

(9) Allowing Defendants to reopen the deposition of Dr. Wecht to cross-examine him on the contents of the proffered hearsay note will necessitate allowing Plaintiff to depose all Cincinnati personnel who were present at that meeting, including Mr. Gissiner and Cincinnati Police Lt. Col. Biehl.

Respectfully submitted,

/s/Paul B. Martins

| | |
|---|---|
| Mark T. Tillar (0029898) | James B. Helmer, Jr.  (0002878) |
| 240 Clark Road | Paul B.  Martins (0007623) |
| Cincinnati, Ohio  45202 | Frederick M. Morgan, Jr.  (0027687) |
| Telephone: (513) 761-2958 | HELMER, MARTINS & MORGAN CO., LPA |
| | Fourth & Walnut Centre, Suite 1900 |
| John J. Helbling (0046727) | 105 East Fourth Street |
| 3672 Springdale Road | Cincinnati, Ohio 45202-4008 |
| Cincinnati, Ohio 45251 | Telephone:    (513) 421-2400 |
| Telephone: (513) 923-9740 | Facsimile:    (513) 421-7902 |

*Trial Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Plaintiff's Memorandum in Opposition to and Motion to Strike Motion to Take Supplemental Deposition of Dr. Wecht By Defendants Caton, Hodge, Jorg, Sellers and Spellen (doc. 152), was electronically filed on May 20, 2004. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>/s/ Paul B. Martins</u>