



ENQUIRER | POST | WCPO | CIN WEEKLY | Classifieds | Cars | Homes | Jobs | Custome

POST HOME   NEWS   ENTERTAINMENT   SPORTS   REDS   BENGALS   LOCAL GUIDE   MULTIMEDIA   ARCHIV

**DEPARTMENTS**
NEWS
SPORTS
BUSINESS
LIVING
OPINION
KENTUCKY
WEATHER LINKS

**RESOURCES**
Subscribe
Contact Us
Search
Back Issues
The Post Store

U.S. & WORLD
A.P. Top Stories
A.P. In Depth

**SCRIPPS LINKS**
Do It Yourself
Fine Living
Food Network
Home & Garden

**DAILY FIX**
Weather
Traffic
Talk, Cincinnati
Giveaways
Horoscopes
Lottery Numbers
Comics
Crosswords
Stahler

**SPORTS**
Bengals
Reds
Golf Guide
Hockey

**ENTERTAINMENT**
Movies
Dining
Menus
Local Events
Video Games

**CLASSIFIEDS**
Jobs

# Internal reports fault officers

*By Craig Garretson*
*Post staff reporter*

Two internal investigations released Monday accuse eight Cincinnati Police officers of doing nothing to help Roger Owensby Jr. as he lay dying after a scuffle with officers, but differ on whether any of the officers used excessive force as they arrested him.

The two reports are in agreement that the police on the scene violated several department rules and regulations while arresting him, and City Manager Valerie Lemmie called Monday for departmental hearings to begin into the officer's actions. Following those hearings, she will rule on discipline, which could range from firing to nothing.

The city's Office of Municipal Investigation recommended in its report that Police Officer Patrick Caton be fired, former police officer Robert "Blaine" Jorg be barred from returning to the police force and five other officers be suspended without pay for their actions outside the Roselawn convenience store where the 29-year-old College Hill man died Nov. 7, 2000.

**Reaction**
• Owensby's parents, Roger Sr. and Brenda, say they are disappointed with the results, WLWT reports.

• "We believe that this report is a self-serving document," the couple said.

The recommendations and accompanying reports include a 79-page document from OMI, a 31-page report from the Internal Investigations Section, a 17-page report from an outside medical examiner, and a 9-page report from the Hamilton County Coroner's Office.

The recommendations will be reviewed by the police chief and city attorneys before Lemmie rules on what will happen to Caton and Police Officers Brian Brazile, Jason Hodge, David Hunter, Abraham Lawson, Darren Sellers and Victor Spellen.

But Jorg resigned from the force seven months ago — the same day he was to talk to OMI investigators — and can't be made to attend the hearing or be subjected to any discipline from the city. He's now a police officer in Pierce Township, Clermont County.

All eight are accused of failure of good behavior and neglect of duty for not seeking medical attention for Owensby and for not immediately reporting their use of force to supervisors. Caton and Jorg also are accused of improper handling of a prisoner for leaving Owensby unattended while handcuffed in the back of a police cruiser. Spellen, who admitted he lied on the stand during Jorg's trial for manslaughter, also faces an additional charge of dishonesty.


Post Featur

Store at the


Subscribe (

Lottery Nur


HGTV


Personal Fi

Contact Us
Ed
The Cin

Ed
The Ker

Wel

Spor

Livir

Busin

Metr

Kentu
City

LATEST N.
INTERNAT

• Bush Ma
Annivers
War

• General:
Capture 1
War

• Ohio Snij
Agrees to

Cars
Homes
General

LOCAL INFO
Maps / Directions
Send an E-Postcard
Visitor's Guide
Local Links
School Links

HELP
Feedback
Survey

"I believe hearings are in order to determine the nature and extent of the violations of departmental policies and procedures as well as internal rules and regulations," Lemmie wrote in a statement released with Monday's report. She wouldn't elaborate.

Owensby's parents, Roger Sr. and Brenda Owensby, released a statement saying they are disappointed with the results, WLWT reported.

"(We) have read over the report issued by the City of Cincinnati on its investigation of the murder of our son by the Cincinnati Police Department," the couple said. "We believe that this report is a self-serving document that proves the City of Cincinnati is incapable of investigating the Cincinnati Police Department."

Both reports ruled Owensby's death was accidental.

But investigators did find the arresting officers' actions — Jorg kneeling on Owensby's shoulder blade with his arm wrapped around his forehead, while Caton was punching him in the back, after Hunter had sprayed chemical irritant in his face — were "direct contributing factors" that led to Owensby's death, which was likely due to hypoxia, a lack of oxygenated blood reaching the brain due to an inability to breathe.

The reports also agreed that Caton continued to punch Owensby even after he was handcuffed and no longer resisting.

Caton and Jorg were acquitted of assault charges in separate trials. Jorg's jury deadlocked, 10-2, on a manslaughter charge, and Hamilton County Prosecutor Mike Allen said he won't be retrying the case.

Lemmie's request for a departmental hearing is the first step in the disciplinary process, said police spokesman Lt. Kurt Byrd. Capt. Andrew Raabe, the District 3 commander, will be the hearing officer, because Raabe was "next in the rotation," Byrd said.

He said there's no timetable for the hearings, but they will be "fast-tracked" at Lemmie's request.

The officers will come before Raabe, Internal Investigations will present its findings, and the officers will respond, including citing mitigating factors. Raabe will make a recommendation to Police Chief Thomas H. Streicher Jr., who will review it and modify it if he wishes, then forward it to Lemmie.

Ultimately, Byrd said, Lemmie would determine what the discipline will be, "which runs the gamut from nothing up to possible dismissal."

OMI recommended that Caton be fired; that Hodge, Hunter and Sellers be suspended without pay for two weeks; and that Brazile and Spellen, who arrived on the scene after Owensby was in the cruiser, be suspended without pay for one week. The report from Internal Investigations didn't include disciplinary recommendations.

OMI said Jorg also should be fired but, noting he's no longer an employee, instead recommended he be barred from future employment with the police department.

- Spring O Drought
- Cops Wa Schools Threat
- Neb. Tee School N
- Denver T on Paym
- Tenness Reverses
- Gorilla S After Zoc
- Three Ph Court Of
- Explosio Central E
- Yemen A USS Col
- Panel Co U.S.-Eur
- Spain Ch Deadly T
- Taiwan P Shui-Bia
- Taiwan's Islandwi Referend
- Mercanti for Nond
- London Rise
- Tyco Del Resume
- Putnam Nominat Member
- Coke Wit Bottled V U.K.

http://www.cincypost.com/2002/10/15/owens101502.html                    3/19/2004

Caton is already on desk duty, accused of having used a racial slur while driving his police vehicle earlier this month. Spellen was placed on desk duty five months ago, after police investigators turned up inconsistencies in his testimony at the Jorg trial. The other officers remain on duty, with police powers.

OMI didn't include a recommendation for Lawson, Hodge's partner, who was outside the convenience store but was watching the crowd rather than joining in the struggle to subdue Owensby. Lawson told investigators that he saw blood on Owensby's face and on Jorg's shirt, that Owensby wasn't moving after he was handcuffed, and that Owensby was "kind of limp— not walking on his own" as two police officers took him to the cruiser and pushed him inside. However, he didn't seek medical attention for Owensby, nor did he report the use of force to supervisors when they arrived on the scene.

The OMI report also recommends additional training in recognizing mechanical asphyxia, particularly when trying to arrest someone who is prone, and on observing and reacting to medical injuries caused during an arrest; and that police patrol vehicles be supplied with chemical irritant decontamination packets.

The two reports found that:

- **Police did** not use excessive force in subduing Owensby, but the actions of Jorg, Caton and Hunter did lead to Owensby's death.

OMI and Internal Investigations agreed with the findings of Hamilton County Deputy Coroner Dr. Daniel Schultz and Dr. Cyril Wecht, the Allegheny County, Pa., coroner and a forensic pathologist commissioned by OMI to study Owensby's death. Both concluded that Owensby died from mechanical asphyxia due to compression of the chest. His inability to breathe lead to a diminished supply of oxygen reaching the brain, which meant Owensby was dead or dying as police carried him to a cruiser.

But OMI found that the actions of the five police officers trying to arrest Owensby were within police guidelines.

"The incident was a tragic, unintentional death, which resulted from a combination of factors, and the evidence is insufficient to render a conclusion regarding the propriety of the police use of force," the Internal Investigations report said.

A point of contention between various witnesses at the scene is whether Owensby walked to the police car under his own power, or if Caton, Hunter and Sellers dragged him to the car. The reports agreed with Wecht's findings that, given the effects of hypoxia, Owensby couldn't have walked to the car. Instead, police officers held him up and dragged him to the car, then pushed him inside, with Caton going around to the other side of the car and pulling him across the backseat.

- **Jorg used** an improper head wrap technique, but not a chokehold, while attempting to subdue Owensby.

Both reports agree that there's no evidence to support a witness's claim that Jorg used a chokehold, but instead had wrapped his left arm around

Owensby's forehead while trying to apply pressure to the "mandibular angle pressure point" — between the ear and the jawbone — with his right thumb. The OMI report concluded Jorg should've wrapped his left arm around Owensby's chin, not his forehead, for that technique to work.

- **Caton continued** punching Owensby after he was handcuffed and no longer resisting. Hunter and Sellers observed Caton punch Owensby several times in the back after Mr. Owensby was handcuffed and not resisting, the IIS report states. "Officer Caton used unnecessary force when arresting Mr. Owensby," the report stated.

- **There was** probable cause to detain Owensby inside the convenience store.

Hunter told Jorg and Caton that Owensby looked like the man who had run from him six weeks before during an undercover drug bust. Jorg and Caton began questioning Owensby about the incident when Hunter entered the store and again said Owensby was the one who had run from him. At this point, Jorg tried to cuff Owensby, but he broke free from the three officers and ran outside.

OMI found that police acted within department guidelines when they questioned Owensby and then tried to subdue him after he ran.

- **The officers** on the scene failed to immediately provide medical attention to Owensby.

OMI alleges Owensby — already dead or dying from brain hypoxia — was dragged to the police car "and was in serious medical distress when taken to and placed in the cruiser."

The officers on the scene knew that Owensby had been injured, OMI noted, but didn't provide him with first aid. Sgt. William Watts, who arrived after the scuffle, discovered Owensby's injuries on his own, the report pointed out.

Wecht, in his forensic report to OMI, said the four- to five-minute delay in attempting to revive Owensby may have contributed to his death.

Also, Internal Investigations faults the eight officers for not immediately reporting the use of force to supervisors at the scene.

Byrd said it took so long to release the report because investigators had to wait until the criminal cases against Jorg and Caton were concluded — each ended a year after Owensby's death — before they could begin their own investigation.

"No one is denying that it took a long time," Byrd said. "But you have to look at the circumstances surrounding this case. We would be remiss if we didn't review every report and every witness and include them in our own report."

Jorg's attorney, William Gustavson, said the report clears his client, and Jorg has no intention of attending the departmental hearing with Raabe.

"How or why would he submit himself to the jurisdiction of the city of Cincinnati, after they prosecuted him for being responsible for the death of Roger Owensby, and now they say, 'Oops, you were right. It wasn't your fault after all.'

"This is great news, but it comes a little too late. Too bad they didn't figure this out before they charged him with a crime, instead of after."

He said Jorg has no intention of dismissing his $30 million federal lawsuit against Hamilton County and the city of Cincinnati, accusing government officials of using him as a scapegoat to placate blacks outraged by Owensby's death. Jorg also leveled a $10 million lawsuit against the Black United Front for claiming Jorg had used a "marine-style chokehold" on Owensby during the arrest.

Rev. Damon Lynch III, leader of the Black United Front and an outspoken critic of the police department's use of force, said he hadn't seen the report and wouldn't comment on it until he'd read it. Vice Mayor Alicia Reece and Councilman Pat DeWine also said they needed to review the report before commenting.

Publication Date: 10-15-2002


Enquirer · Post · 9WCPO · CiN Weekly

Search our site by keyword: [        ] go!

Search also: News | Jobs | Homes | Cars | Classifieds | Obits | Coupons | Events | Dining
Movies/DVDs | Video Games | Hotels | Golf | Visitor's Guide | Maps/Directions | Yellow P:

CINCINNATI.COM | ENQUIRER | POST | WCPO | CIN WEEKLY | Classifieds | Cars | Homes | Jobs | Custo

Need help? | Suggestions | News tips | Letters to editors
Web advertising | Place a classified | Subscribe | Circulation

Copyright 2004 The Cincinnati Post, an E.W. Scripps newspaper.
Use of this site signifies agreement to terms of service updated 12/19/02.



http://www.cincypost.com/2002/10/15/owens101502.html                    3/19/2004