UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF ROGER OWENSBY, JR. | : | |
| | | CASE NO. C-1-01-769 |
| Plaintiff, | : | |
| | | Judge Spiegel |
| vs. | : | |
| | | **AMENDED MOTION TO VACATE** |
| CITY OF CINCINNATI, et al. | : | **SCHEDULE AND STAY** |
| | | **PROCEEDING AND REQUEST** |
| Defendants. | : | **FOR EXPEDITED RULING** |

Defendants Police Officers Sellers, Jorg, Caton, Spellen, and Hunter, Police Chief Streicher, and the City of Cincinnati move the court for an expedited stay of trial pending appeal for the reasons expressed below.

This Court scheduled a trial date to commence June 14, 2004. By Order entered May 20, 2004, the Court rejected the individual defendants' defense of qualified immunity to the claim that in the year 2000 they unconstitutionally deprived the decedent of his substantive due process right to receive medical care. The Court further ruled that the City of Cincinnati had unconstitutionally failed to train its police officers when to provide medical care. On May 27, 2004, the defendants filed a notice of appeal from this Court's May 20, 2004, Order. [1]

The notice of appeal entered on May 20, 2004, is the officers' first qualified immunity appeal in this case. Defendants Police Officers Sellers, Spellen, Hunter, Jorg, and Caton, Police Chief Streicher, and the City of Cincinnati, move this Court to vacate the schedule in this case and to stay the proceeding while the defendants' appeal is

---

[1] Case No. 04-3725 in the Sixth Circuit.

pending in the Sixth Circuit. The appeal also presents the pendent issue challenging the ruling that the City of Cincinnati unconstitutionally failed to train its police officers. The defendants request expedited review of this motion to stay the trial since trial is scheduled to begin June 14, 2004.

The abstract issues of law presented to the Sixth Circuit in the appeal include this Court's unauthorized factfinding when ruling on the plaintiff's motion for partial summary judgment,[2] the unreasonable and improper inferences and presumptions made against the police officers,[3] the selective ignoring of Rule 56 admissible evidence

---

[2] For instance, notwithstanding that this Court conceded that "Owensby's condition and method of transport to the cruiser is in active dispute (Order, p. 17, n. 11)," "[t]he facts supporting the parties' respective positions [about cause of death] are hotly disputed (Order, p. 21)," "[t]he expert testimony surrounding the cause of Owensby's death has become the grounds of a substantial evidentiary fight between the Plaintiff and the Cincinnati Defendants" (Order, p. 22, n. 17), the City provided evidence that Owensby died of a sudden cardiac arrest (Order, p. 52), and that "Owensby was discovered to be in distress" at a point in time when he was provided medical care (Order, p. 61, n. 33), the Court nevertheless found that Owensby's condition was so sufficiently serious and subjectively ignored as to establish a deprivation of substantive due process. This Court erroneously nullified the material effect of the defendants' evidence that Owensby died of sudden cardiac arrest. Order, pp. 51-55. Instead, in the face of evidence to the contrary, this Court made findings of fact that Owensby's condition was sufficiently serious and assumed that condition was known to, and ignored by, the police officers. The Court erroneously held that the cause of Owensby's death "has little or no effect on the determination of the Defendants' liability for failure to provide medical care." Order, p. 22, n. 17. In other words, this Court found that Owensby's condition was "a cessation of breathing and an arrested heart" (Order, p. 46), but without any evidence that the individual defendants were aware of that serious condition, and even though the parties agree that Owensby died in the police cruiser (Plaintiff's Reply Memorandum in Support of Motion for Partial Summary Judgment, p. 3) and the defendants' evidence indicates that the cause of death was sudden cardiac arrest, the district court faults the police officers for not providing "immediate care" (Order, p. 46) to Owensby.

[3] This Court described that after the decedent was stopped, he "attempted to slip past Officers Hunter and Caton and through the exit." Order, p. 13. The Order describes how the defendant officers attempted to arrest the decedent by gaining control over him, handcuffing him, and placing him in a police vehicle. *Id*., pp. 13-18. The Order identifies that the decedent was not provided medical care for six minutes. *Id*., p. 18. The Court admitted that Officer Spellen arrived at the scene after Owensby had been arrested and placed in a Golf Manor cruiser (Order, p. 46), and that it was dark outside, yet simply because Officer Spellen knew Owensby had been maced and was hurting from the mace (a matter the Court conceded did not give rise to an "excessive risk" (Order, p. 47, n. 27 and 28)), the Court erroneously inferred with 20/20 hindsight that Officer Spellen "was subjectively aware of the risk to Owensby's well-being (Order, p. 48). The Court noted that Officer Sellers had observed the struggle to arrest Owensby and had observed Owensby being placed prone and head first into the cruiser (Order, p. 49). This Court then erroneously inferred that Officer Sellers was aware of a substantial risk of serious harm to Owensby. *Id*. The Court made similar inferences about Officer Hunter (Order, p. 50). For Officers Jorg and Caton, the Court conceded that "there is no evidence indicating that Jorg or Caton made any subjective assessment of any risk of serious harm to

2

provided by the police officers in opposition to the motion for partial summary judgment,[4] and erroneous conclusions of law.[5]  By depriving the individual police officers of their entitlement to qualified immunity from suit, this Court is requiring Officers Jorg and Caton to stand trial on liability and damages issues on the plaintiff's substantive due process claim, and requiring Officers Sellers, Spellen, and Hunter, and Chief Streicher,[6] to stand trial on damages issues.

In *Behrens v. Peltier*, 516 U.S. 299 (1996), the Supreme Court emphasized that even "one appeal on the immunity issue might not be enough."  516 U.S. at 309.  The police officers have just filed their first qualified immunity appeal.  The Supreme Court further emphasized that public officials have an entitlement "not to stand trial" and that

---

Owensby (Order, p. 51), but then erroneously concluded that they were not entitled to qualified immunity from suit on the claim of failure to provide medical care.

[4] Eg. The only visible signs of trauma were some abrasions consistent with Owensby resisting arrest, and the abrasions were not considered injuries needing immediate attention.  Deposition of Deputy Coroner Schultz, p. 148.

[5] For instance, this Court substantially relied on the 2001 decision involving a pretrial detainee in *Watkins v. City of Battle Creek*, 273 F.3d 682 (6th Cir. 2001) to conclude that the substantive due process standard of medical care due a pretrial detainee who had resisted arrest and was placed into custody after a struggle was clearly established with the requisite particularity in the earlier year 2000.  Other earlier decisions cited by the Court did not define a substantive due process standard for providing medical care to a pretrial detainee just placed in custody after resisting arrest.  Substantive due process principles dictate that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'"  *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998).  The challenged conduct has to be "conscience shocking."  *Id.*, p. 847.  Under circumstances requiring concurrent attention to various matters, and limited time to act, substantive due process principles may require proof of malice and intent to harm.  *Id.*, p. 854.  The claim in the case at bar is very different than a situation where police officers had a minimum of five hours to deliberate prior to making a decision and, therefore, "deliberate indifference" was the appropriate standard.  *Ewolski v. City of Brunswick*, 287 F.3d 492, 511 (6th Cir. 2002).  Rather, only minutes, not hours, passed between the time Owensby was in custody and the provision of medical care to him.  This Court compounded its errors of law by both erroneously concluding that Owensby was denied medical care and that the plaintiff did not have to prove that the delay in providing medical care caused an injury.  Order, pp. 51-55.  Even in the absence of prior case law analyzing the alleged substantive due process duty to provide instantaneous medical care to a pretrial detainee who had resisted arrest and was placed into custody after a physical struggle, and notwithstanding that the circumstances of that resistance and struggle, and its immediate aftermath, more resemble required quick decisionmaking than the unlimited time available to deliberate in long-term confinement and institution situations, this Court (citing 2002 and 2003 case law; Order, p. 66) concluded that each of the individual defendants either did (Sellers, Spellen, and Hunter) or may have (Jorg and Caton) violated the decedent's substantive due process right to receive medical care, that right was clearly established with sufficient particularity in the year 2000, and each defendant was not reasonably mistaken about the lawfulness of his conduct.

[6] It is unclear from the Court's Order whether it concluded that Chief Streicher unconstitutionally failed to supervise the defendant officers and whether the Court specifically denied his qualified immunity defense.

3

the officials' qualified immunity defense "is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It defeats the important public objectives underlying the qualified immunity defense to subject the police officers to trial on liability and/or damages issues related to the failure to provide medical care claim even as their interlocutory appeal is pending before the Sixth Circuit.

There is no question that the United States Supreme Court has protected public officials from the burden of unmeritorious lawsuits by allowing them even multiple interlocutory appeals from district court orders denying their motions raising the qualified immunity defense. The Supreme Court has carefully balanced the right of public officials to qualified immunity from suit with the rights of plaintiffs. *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982); *Mitchell v. Forsyth*, *supra*; *Johnson v. Jones*, 515 U.S. 304, 311-12 (1995); *Behrens v. Pelletier*, *supra*.

The police officers' right to appeal does not turn on the phrasing of the district court's order. *Christophel v. Kukulinsky*, 61 F.3d 479, 485 (6th Cir. 1995). "[R]egardless of the district court's reasons for denying qualified immunity, we may exercise jurisdiction over the officers' appeal to the extent it raises issues of law." *Dickerson, et al. v. McClellan, et al.*, 101 F.3d 1151, 1157 (6th Cir. 1996). Furthermore, in *Johnson v. Jones*, *supra*, the Supreme Court held that an officer is entitled to an interlocutory appeal in cases where the district court, as in the case at bar, has denied the qualified immunity defense "on the ground that even under the defendant's version of the facts the defendant's conduct violated clearly established law . . . ." The Supreme Court held that, also like the case at bar, if a district court determines that an officer's conduct violated clearly established law, the officer is entitled to seek interlocutory review of that

4

determination.[7] *Id.*, p. 318. Even denial of the qualified immunity defense on the ground that "there are controverted issues of material fact . . . does *not* mean that every such denial of summary judgment is nonappealable."[8] *Behrens v. Pelletier*, *supra*, 516 U.S. at 312-13 (emphasis in original).

Given the pendency of the qualified immunity appeals, and the prohibition against forcing the defendants to trial on those claims, the remaining but interrelated excessive force claims cannot practically and fairly be tried in isolation. The police officers are lawfully entitled to a meaningful interlocutory appeal, the evidence of use of force and the decedent's medical condition are related, and all the parties will inefficiently and wastefully be subjected to two trials if the Sixth Circuit subsequently rules that the plaintiff's substantive due process claim must be tried to the jury. There are many witnesses identified for trial and trial preparation will continue to be unnecessarily burdensome for many public officials and others and is causing significant costs to be incurred.

The police officers have appealable issues of law that they are entitled to present to the Sixth Circuit. They have acted expeditiously throughout this litigation. When reviewing the plaintiff's motion for partial summary judgment, this Court committed errors of law related to the police officers' claim of entitlement to qualified

---

[7] This Court ruled that Officers Sellers, Spellen, and Hunter violated clearly established law. The Court defined that failure to provide medical care substantive due process law by reference to decisions related to conditions of long-term confinement, not by reference to decisions related to the medical condition of individuals who just minutes earlier had physically resisted arrest and had to be subdued by several officers. As discussed, *supra*, the more limited the time for public officials to respond, the greater the burden on a plaintiff to prove a deprivation of the right to substantive due process. This Court erroneously established the standard in the case at bar as if each individual officer had sufficient information and a lot of time to deliberate.

[8] Even accepting this Court's description of Officers Jorg's and Caton's conduct, including the finding that "there is no evidence indicating that Jorg or Caton made any subjective assessment of any risk of serious harm to Owensby" (Order, p. 51), they did not violate clearly established law.

5

immunity from suit. This Court similarly erred by ruling that the City of Cincinnati unconstitutionally failed to train its police officers. It is established that the police officers may have the Sixth Circuit evaluate their appealable issues in a reasoned manner without the prejudice of a looming trial date scheduled in two weeks.

The defendants' motion for expedited stay of trial should be granted. This Court committed legal errors when ruling on the police officers' qualified immunity defense and the Sixth Circuit is required to review those errors and protect the officers' qualified immunity defense. Furthermore, this Court's ruling that the City failed to train its police officers is inextricably intertwined with the claim against the officers in at least two ways.[9] First, as this Court acknowledged, the City cannot be liable for a failure to train claim unless one of the individual officers actually deprived the decedent of a constitutional right to receive medical care. Order, p. 68, n. 37. Second, this Court connected the issues and stated it "realizes that it is a rare case where a plaintiff will be entitled to summary judgment in its favor on constitutional claims for failure to provide medical care claims against the offending officers and, by extension, summary judgment against the sponsoring municipality on its failure to train claims. Upon careful, lengthy consideration, however, the Court is confident that this is, indeed, such a case." Order, p. 73.

---

[9] An additional erroneous ruling by this Court was its presumption and summary conclusion, without any evidence of actual or constructive knowledge of an alleged deficiency, no evidence of prior incidents related to the alleged failure to provide medical care, and no case law discussing the relationship between the need to stabilize a scene and the provision of medical care to an individual resisting arrest, that the alleged constitutional deficiency in the City's policies was "so obvious" that City policymakers must have been "deliberately indifferent." Order, p. 72.

Respectively submitted,

**JULIA L. McNEIL (0043535)**
City Solicitor


**s/ Richard Ganulin**
**RICHARD GANULIN (0025642-C)**
**GERI HERNANDEZ GEILER (0042081)**
Assistant City Solicitors
Room 214, City Hall
801 Plum Street
Cincinnati, Ohio 45202
(513) 352-3329
Fax: (513) 352-1515
E-Mail: richard.ganulin @cincinnati-oh.gov

**NEIL F. FREUND (0012183)**
One Dayton Centre
1 South Main Street
Suite 1800
Dayton, Ohio 45402-2017
(937) 222-2424
Fax: (937) 222-5369
Email:  nfreund@ffalaw.com

**TRIAL ATTORNEYS FOR DEFENDANTS CITY OF CINCINNATI AND THOMAS STREICHER**

**s/ Donald E. Hardin**
**DONALD E. HARDIN (0022095)**
**HARDIN, LEFTON, LAZARUS & MARKS**
915 Cincinnati Club Building
30 Garfield Place
Cincinnati, Ohio 45202
(513) 721-7300
FAX: (513) 721-7008

Email: donhardin@hllmlaw.com

**TRIAL ATTORNEY FOR ROBERT JORG, PATRICK CATON, VICTOR SPELLEN, AND DARREN SELLERS**

7

*s/ Ravert J. Clark*
**RAVERT J.CLARK (0042027)**
114 East Eighth Street
Cincinnati, Ohio 45202
(513) 587-2887
FAX: (513) 621-2525
Email: notguilty14@aol.com

**TRIAL ATTORNEY FOR DAVID HUNTER**

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2004, I electronically filed the foregoing Amended Motion to Vacate Schedule and Stay Proceeding and Request for Expedited Ruling with the Clerk of the Court using the CMF/ECF system that will send notification of such filing to all parties of record.

*s/Richard Ganulin*
RICHARD GANULIN (0025642-C)
Assistant City Solicitor

JLM/RG/(chs)
POL-505-RG

8