Case 1:01-cv-00769-SAS   Document 178-2   Filed 06/02/2004   Page 1 of 5

Estate of Roger Owensby vs. City of Cinti.                    PATRICK E. CATON
October 17, 2003

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

- - - - - - - - - - - - - - - - -
ESTATE OF ROGER D.            :
OWENSBY JR., et al.,          :
                              :
         Plaintiffs,          :
    vs.                       :  Case No. 01-CV-769
                              :  (Judge S. A. Spiegel)
CITY OF CINCINNATI,           :
et al.,                       :
                              :
         Defendants.          :
- - - - - - - - - - - - - - - - -


Videotaped deposition of PATRICK EDMUND CATON, a defendant herein, called by the plaintiffs for cross-examination, pursuant to the Federal Rules of Civil Procedure, taken before me, Wendy Davies Welsh, a Registered Diplomate Reporter and Notary Public in and for the State of Ohio, at the offices of Helmer, Martins & Morgan Co. LPA, 1900 Fourth & Walnut Centre, 105 East Fourth Street, Cincinnati, Ohio, on Friday, October 17, 2003, at    a.m.

Case 1:01-cv-00769-SAS  Document 178-2  Filed 06/02/2004  Page 2 of 5

Estate of Roger Owensby vs. City of Cinti.
October 17, 2003
PATRICK E. CATON

## Page 2

```
 1  APPEARANCES:

 2      On behalf of the Plaintiffs:

 3          Paul B. Martins, Esq.
            Don Stiens, Esq.
 4          Frederick M. Morgan, Jr. Esq.
            Helmer, Martins & Morgan Co. LPA
 5          Suite 1900, Fourth & Walnut Centre
            105 East Fourth Street
 6          Cincinnati, Ohio 45202
            Phone: (513) 421-2400
 7
            John J. Helbling, Esq.
 8          The Helbling Law Firm, L.L.C.
            3672 Springdale Road
 9          Cincinnati, Ohio 45251
            Phone: (513) 923-9740
10
        On behalf of the Defendants City of Golf Manor,
11      Stephen Tilley, Roby Heiland and Chris
        Campbell:
12
            Lynne Marie Longtin, Esq.
13          Rendigs, Fry, Kiely & Dennis
            900 Fourth & Vine Tower
14          One West Fourth Street
            Cincinnati, Ohio 45202-3688
15          Phone: (513) 381-9200

16      On behalf of Defendants City of Cincinnati,
        Darren Sellers, Jason Hodge:
17
            Geri Hernandez Geiler, Esq.
18          Assistant City Solicitor
                and
19          Julie F. Bissinger, Esq.
            Chief Counsel
20          Department of Law
            Room 214, City Hall
21          801 Plum Street
            Cincinnati, Ohio 45202
22          Phone: (513) 352-3346
```

## Page 3

```
 1  APPEARANCES (Continued):

 2      On behalf of the Defendants Robert B. Jorg,
        Patrick Caton, Jason Hodge, Victor Spellen and
 3      Darren Sellers:

 4          Donald E. Hardin, Esq.
            Hardin, Lefton, Lazarus & Marks, LLC
 5          915 Cincinnati Club Building
            30 West Garfield Place
 6          Cincinnati, Ohio 45202
            Phone: (513) 721-7300
 7
    Also present:
 8
    Richard W. Grubb, Videograher
 9
    Lisa Damstrom, Law Clerk
10  Helmer, Martins & Morgan Co., L.P.A.

11  Wendy M. Weller, Paralegal
    Buckley, King & Bluso
12
    Mr. Roger Owensby
13
    Mrs. Brenda Owensby
14
    Mr. Shawn Owensby
15
    Victor N. Spellen
```

## Page 4

```
 1           S T I P U L A T I O N S

 2      It is stipulated by and among counsel for the

 3  respective parties that the deposition of PATRICK

 4  EDMUND CATON, a defendant herein, called by the

 5  plaintiffs for cross-examination, pursuant to the

 6  Federal Rules of Civil Procedure, may be taken at

 7  this time by the notary; that said deposition may be

 8  reduced to writing in stenotype by the notary, whose

 9  notes may then be transcribed out of the presence of

10  the witness; and that proof of the official

11  character and qualifications of the notary is

12  expressly waived.
```

## Page 5

```
 1              I N D E X

 2      Examination by:          Page

 3      Mr. Martins . . . . . . . . . 6

 4      Ms. Longtin . . . . . . . 232

 5      Mr. Martins. . . . . . . .238


 8              E X H I B I T S

 9                                           Page
        Deposition Exhibit 28 . . . . . . . . . . . . . . .  22
10      Deposition Exhibit 29 . . . . . . . . . . . . . . .  30
        Deposition Exhibit 30 . . . . . . . . . . . . . . .  43
11      Deposition Exhibit 31 . . . . . . . . . . . . . . .  65
        Deposition Exhibit 32 . . . . . . . . . . . . . . . 115
12      Deposition Exhibit 33 . . . . . . . . . . . . . . . 186
        Deposition Exhibit 34 . . . . . . . . . . . . . . . 191
13      Deposition Exhibit 35 . . . . . . . . . . . . . . . 194
        Deposition Exhibit 36 . . . . . . . . . . . . . . . 207
```

Case 1:01-cv-00769-SAS   Document 178-2   Filed 06/02/2004   Page 3 of 5

Estate of Roger Owensby vs. City of Cinti.
October 17, 2003
PATRICK E. CATON

### Page 34

1 Marine Corps, active duty from September of 1990
2 through March 15 of 1996?
3   A. 1995. It -- it should --
4   Q. Oh, is it '95?
5   A. Where's the -- where is the closing date?
6   Q. It says date of discharge -- see date of
7 discharge is about three -- four lines from the
8 bottom?
9   A. One, two, three. That's incorrect. That
10 should be -- that's my mistake. It should read
11 1995.
12   Q. All right. So about four and a half
13 years?
14   A. With OCS that'd make it an even five.
15 That -- those -- those dates would culminate my
16 active duty service in the fleet.
17   Q. When you say OCS, does that stand for
18 Officer Candidate School?
19   A. That's correct.
20   Q. So you started off as an enlisted man?
21   A. No, I did not. I started off on a college
22 program called Platoon Leaders Course.
23   Q. In any event, you received a discharge in
24 March of '95?

### Page 35

1   A. That's correct.
2   Q. And at that time you held the rank of
3 captain?
4   A. That's correct.
5   Q. And your service in the Marine Corps had
6 been in armor?
7   A. That was my primary MOS, that's correct.
8   Q. I take it you were discharged with an
9 honorable discharge?
10   A. Yes. I went from active duty, and then I
11 reverted to the IRR and I had served some time in
12 the active reserves.
13   Q. But when you went off of active duty --
14   A. It was an honorable discharge.
15   Q. -- your discharge was an honorable
16 discharge?
17   A. That's correct.
18   Q. Are you still in the IRR?
19   A. That is correct.
20   Q. For the record, IRR stands for Individual
21 Ready Reserve?
22   A. That's correct.
23   Q. While you were in the Marine Corps, did
24 you receive CPR training?

### Page 36

1   A. Yes.
2   Q. Go to the next page, C001631. That is the
3 oath that you took to become a Cincinnati police
4 officer on May 30, 1997, correct?
5   A. Correct.
6   Q. And as I understand it, you began at the
7 police academy as a recruit in January of '97?
8   A. That is correct.
9   Q. What did you do between May or -- or March
10 of '95 and January of '97?
11   A. I re-- I worked for about a year -- I took
12 some time off once I got out of the service and
13 traveled a little bit. And then I worked for about
14 a year as a ball bearing salesman for a local
15 industrial warehouse.
16   Q. What company?
17   A. Motion Industries.
18   Q. Here in Cincinnati?
19   A. Actually, they were located -- my office
20 was located in Middletown.
21   Q. If you recall, about how much time did you
22 take off and do some traveling and then when did you
23 start working for the ball bearing company?
24   A. I recall I took off about three, four

### Page 37

1 months, and then I worked for the company for about
2 a year, roughly.
3   Q. The next page is the continuous service
4 record. It has a Bates number of 1632. We see that
5 January 5, '97 you enroll as a police recruit; June
6 of '97, promoted to police officer and transferred
7 to District 4; February 4 of 2001, transferred to
8 Impound Unit?
9   A. That is correct.
10   Q. And then December 2 of '01, transferred to
11 unit -- to District 1; is that right?
12   A. That's correct.
13   Q. After District 1, if we were to continue
14 your service record, what would we have here?
15   A. I was terminated.
16   Q. And when was that?
17   A. Exact date, I believe, was early March of
18 2003.
19   Q. At the time that you were terminated,
20 though, you were assigned to District 1?
21   A. No. I had been temporarily assigned back
22 to the Impound Unit.
23   Q. So --
24   A. But it doesn't show as a transfer, because

Case 1:01-cv-00769-SAS    Document 178-2    Filed 06/02/2004    Page 4 of 5

Estate of Roger Owensby vs. City of Cinti.
October 17, 2003
PATRICK E. CATON

Page 54

1   A. Yes.
2   Q. So if there were any founded complaints,
3 you would be notified?
4   A. I believe when the officer is notified
5 either way. And if -- if the officer makes any
6 testimony, the officer receives a transcript of what
7 the findings of OMI were.
8   Q. Okay. Well, then that gets back to my
9 original question, that when a -- when a citizen
10 files a complaint --
11  A. Then --
12  Q. -- is the officer notified?
13  A. And I'm qualifying that. When the officer
14 is notified and testifies, he receives the finding.
15 If he -- for example, I don't know if Miss --
16 Miss Byrd -- I can't recall if Mrs. Byrd registered
17 a complaint or not with regard to this incident. I
18 don't recall receiving any notification or giving
19 any testimony. That's not to say I didn't do it. I
20 just don't recall it.
21  Q. Do you -- directing your attention to
22 page three of the article --
23  A. Uh-huh.
24  Q. -- second full paragraph, it says "Officer

Page 55

1 Caton was named in nine citizen complaints" filed
2 with OMI.
3   A. Uh-huh.
4   Q. Do you have any knowledge as to whether or
5 not that is accurate?
6   A. I believe that's accurate, but what I
7 don't believe is accurate is that -- is that I think
8 they ranked me as the seventh most complained-on
9 officer in the city of Cincinnati, and that's not
10 true. I saw the article that said that. I know
11 officers are complained on -- complained on more
12 times than I do -- than I have been and they --
13  Q. Well, do you know that there are six other
14 officers that are complained on more than you are?
15  A. At least six other officers.
16  Q. Okay.
17  A. And that I carry the most complaints for
18 excessive use of force, that's not accurate, either.
19 This -- this incident was actually the first
20 incident that an accusation of excessive use of
21 force was used. The only -- the only other incident
22 that I can possibly recall where excessive force was
23 used or -- or complained about was the threat of
24 excessive force when I drew my weapon.

Page 56

1   Q. When you say "this incident," what
2 incident are you referring to?
3   A. I'm referring to the Owensby incident.
4   Q. What about Mr. Smiley?
5   A. I -- I wasn't complained on for excessive
6 use of force. Officer George was complained on for
7 excessive.
8   Q. Okay. The -- going back to that
9 paragraph, it says, the -- the second sentence of
10 the paragraph says "Four of the complaints alleged
11 Officer Caton used obscenities and in one case used
12 the n-word."
13  A. That is not --
14  Q. Do you know if that's accurate or not
15 accurate?
16  A. I have been accused of that, but that
17 particular incident, my partner was black and heard
18 the entire conversation and said that never
19 happened.
20  Q. And -- and you deny it, I take it?
21  A. And I deny it.
22  Q. Is there anything else, as you look
23 through the article, that you believe is inaccurate,
24 beyond what you've already stated?

Page 57

1       MR. HARDIN: Objection.
2       You may answer.
3   A. I'm going to have to reread it. I'm going
4 to have to -- there's quite a few inaccuracies here,
5 and they don't tell the full story and they don't --
6 the accurate -- it is completely misleading.
7   Q. Are you currently working?
8   A. No, I am not.
9   Q. Since leaving the Cincinnati police force,
10 have you held any jobs?
11  A. No, I have not.
12      MR. MARTINS: We've been going about an
13   hour and a half. Why don't we take a short
14   break.
15      VIDEOGRAPHER: Going to change to
16   videotape number 2, Mr. Martins.
17      Off the record.
18      (Recess taken: 11:19 a.m. - 11:30 a.m.)
19      VIDEOGRAPHER: We're on the record. This
20   is videotape number 2 for this witness.
21 BY MR. MARTINS:
22  Q. Sir, on November 7th you had on your
23 possession a cell phone; is that right?
24  A. That is correct.

244

| | | |
|---|---|---|
| 17:00:39 | 1 | MR. HARDIN: Caton. |
| 17:00:39 | 2 | VIDEOGRAPHER: Sorry. Mr. Caton, you have |
| 17:00:39 | 3 | a right to review this videotape deposition |
| 17:00:39 | 4 | prior to its being shown to a court or jury. |
| 17:00:39 | 5 | Will you waive that right? |
| 17:00:39 | 6 | THE WITNESS: No. |
| 17:00:40 | 7 | VIDEOGRAPHER: We're off the record. The |
| 17:00:42 | 8 | time showing is 5:04 p.m. |
| 17:00:42 | 9 | MR. MARTINS: I take it you also want |
| 17:00:49 | 10 | signature on the deposition? |
| 17:00:51 | 11 | MR. HARDIN: Yes. Yes. |
| 17:00:52 | 12 | |
| 17:00:52 | 13 | *[signature]* |
| 17:00:52 | 14 | PATRICK EDMUND CATON |
| 17:00:52 | 15 | - - - |
| 17:00:52 | 16 | |
| 17:00:52 | 17 | (Deposition concluded.) |
| | 18 | - - - |