Case 1:01-cv-00769-SAS   Document 178-3   Filed 06/02/2004   Page 1 of 12

Owensby, et al.vs. City of Cincinnati                                       DAVID WILLIAM HUNTER, JR.
November 6, 2003

                                                                                    1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

- - - - - - - - - - - - - - -
ESTATE OF ROGER D.            :
OWENSBY JR., et al.,          :
                              :
        Plaintiffs,           :   Case No. 01-CV-769
vs.                           :   (Judge S. A. Spiegel)
                              :
CITY OF CINCINNATI,           :       VOLUME I
et al.,                       :
                              :
        Defendants.           :
- - - - - - - - - - - - - - -


        Videotaped deposition of DAVID WILLIAM

HUNTER JR., a witness herein, called by the

plaintiffs for cross-examination, pursuant to the

Federal Rules of Civil Procedure, taken before me,

Wendy Davies Welsh, a Registered Diplomate Reporter

and Notary Public in and for the State of Ohio, at

the offices of Helmer, Martins & Morgan Co. LPA,

1900 Fourth & Walnut Centre, 105 East Fourth Street,

Cincinnati, Ohio, on Thursday, November 6, 2003, at

2:43 p.m.

Case 1:01-cv-00769-SAS   Document 178-3   Filed 06/02/2004   Page 2 of 12

Owensby, et al. vs. City of Cincinnati                          DAVID WILLIAM HUNTER, JR.
November 6, 2003

Page 2

1  APPEARANCES:

2      On behalf of the Plaintiffs:

3          Paul B. Martins, Esq.
           Don Stiens, Esq.
4          Frederick M. Morgan Jr., Esq.
           Helmer, Martins & Morgan Co. LPA
5          Suite 1900, Fourth & Walnut Centre
           105 East Fourth Street
6          Cincinnati, Ohio 45202
           Phone: (513) 421-2400
7
           John J. Helbling, Esq.
8          The Helbling Law Firm, L.L.C.
           3672 Springdale Road
9          Cincinnati, Ohio 45251
           Phone: (513) 923-9740
10
       On behalf of the Defendants City of Golf Manor,
11     Stephen Tilley, Roby Heiland and Chris
       Campbell:
12
           Wilson G. Weisenfelder Jr., Esq..
13         Rendigs, Fry, Kiely & Dennis
           900 Fourth & Vine Tower
14         One West Fourth Street
           Cincinnati, Ohio 45202-3688
15         Phone: (513) 381-9200

16     On behalf of the Defendants City of Cincinnati,
       Darren Sellers, Jason Hodge:
17
           Geri Hernandez Geiler, Esq.
18         Assistant City Solicitor
               and
19         Julie F. Bissinger, Esq.
           Chief Counsel
20         Department of Law
           Room 214, City Hall
21         801 Plum Street
           Cincinnati, Ohio 45202
22         Phone: (513) 352-3346

23

24

Page 3

1  APPEARANCES (Continued):

2      On behalf of the Defendants Robert B. Jorg,
       Patrick Caton, Jason Hodge, Victor Spellen and
3      Darren Sellers:

4          Donald E. Hardin, Esq.
           Hardin, Lefton, Lazarus & Marks, LLC
5          915 Cincinnati Club Building
           30 Garfield Place
6          Cincinnati, Ohio 45202
           Phone: (513) 721-7300
7
       On behalf of the David William Hunter Jr.:
8
           Jay Clark, Esq.
9          114 East 8th Street
           Suite 400
10         Cincinnati, Ohio 45202
           Phone (513) 587-2887
11
   Also present:
12
   Richard W. Grubb, Videographer
13
   Lisa Damstrom, Law Clerk
14 Helmer, Martins & Morgan Co., L.P.A.

15 Mr. Roger Owensby

16 Mrs. Brenda Owensby

17

18              - - -

19          S T I P U L A T I O N S
20
21     It is stipulated by and among counsel for the
22 respective parties that the deposition of DAVID
23 WILLIAM HUNTER JR., a witness herein, called by the
24 plaintiffs for cross-examination, pursuant to the

Page 4

1  Federal Rules of Civil Procedure, may be taken at

2  this time by the notary; that said deposition may be

3  reduced to writing in stenotype by the notary, whose

4  notes may then be transcribed out of the presence of

5  the witness; and that proof of the official

6  character and qualifications of the notary is

7  expressly waived.

8

              - - -

9

10              I N D E X

11     Examination by:            Page

12     Mr. Martins . . . . . . .   5

13              - - -

14

15          E X H I B I T S

16                              Page

17

18 Deposition Exhibit 6A ................. 89
   Deposition Exhibit 54 ................. 29
19 Deposition Exhibit 55 ................. 43
   Deposition Exhibit 56 ................. 62
20 Deposition Exhibit 57 ................. 64
   Deposition Exhibit 58 ................. 67
21
22              - - -
23
24

Page 5

1      VIDEOGRAPHER: Time is 2:43 p.m. The date
2  is November the 6th. The year is 2003.
3      If you'd please swear the witness, ma'am.
4      DAVID WILLIAM HUNTER JR.
5  being by me first duly cautioned and sworn, deposes
6  and says as follows:
7      VIDEOGRAPHER: We're on the record, Mr.
8  Martins. This is videotape number 1, sir.
9          CROSS-EXAMINATION
10 BY MR. MARTINS:
11     Q. Sir, would you state for the record your
12 full name, please.
13     A. David William Hunter Jr.
14     Q. And your age?
15     A. 36.
16     Q. Date of birth?
17     A. 5/20/67.
18     Q. What is your height?
19     A. 5' 7."
20     Q. And on November 7th of 2000 what was your
21 weight?
22     A. Approximately 175.
23     Q. Have you ever had your deposition taken
24 before?

Case 1:01-cv-00769-SAS   Document 178-3   Filed 06/02/2004   Page 3 of 12

Owensby, et al. vs. City of Cincinnati
November 6, 2003

DAVID WILLIAM HUNTER, JR.

Page 74

1  A. Well --
2  Q. Did you want to say something?
3  A. It was not -- it was not a set -- like
4  a -- like a -- just one building. It was like
5  buildings. It was --
6  Q. Okay.
7  A. You know, it was -- it was like two or
8  three like together, but you can go through the
9  courtyard and then you can come around, and there's
10 like a building here on the right (indicating).
11 That's the way Curtis went, Officer Walker. And
12 then I was going to cut through.
13 Q. All right. At some point, then, you
14 folk-- you and Officer Walker split up and you start
15 to go your way and he goes his, right?
16 A. Yes.
17 Q. At that point someone says something to
18 warn the two individuals; is that right?
19 A. Yes.
20 Q. That's the next thing that happens?
21 A. Yes.
22 Q. Okay. And that person, if I'm
23 understanding you correctly, was Mr. Owensby?
24 A. Yes.

Page 75

1  Q. Are you sure of that?
2  A. Yes.
3  Q. What is the best of your recollection of
4  what Mr. Owensby said?
5  A. It was, The boys or Five-oh.
6  Q. Say that again.
7  A. It was either, The boys or Five-oh.
8  Q. And in response to what -- could you see
9  the two individuals at the time Mr. Owensby said
10 this?
11 A. They would -- they were just -- as he said
12 it, they were just leaving out of my view.
13 Q. Did you see -- so then you could not see
14 what, if anything, they did in response?
15 A. Oh. Ran.
16 Q. You did see that?
17 A. Yes. Uh-huh.
18 Q. Okay. Do you know if Mr. Owensby said
19 that toward them or was saying it to someone else?
20 A. He's saying it toward them, because he
21 turned to them and said it, in their direction.
22 Q. Do you know where Officer Walker was at
23 the time?
24 A. No.

Page 76

1  Q. Do you know if the individuals started
2  running because of what Mr. Owensby said or because
3  they saw a uniformed officer?
4  A. Beca--
5     MR. HARDIN: Objection.
6     You may answer.
7  A. Because of what Mr. Owensby said. Because
8  when that happened, Officer Walker didn't have
9  enough time to get around. So they -- they had --
10 they had -- they -- they couldn't have possibly even
11 seen him yet.
12 Q. But as I understand it, Mr. Owensby was
13 not one of the four individuals that you and Officer
14 Jorg had observed conducting drug activity at the
15 phone booth?
16 A. That's correct.
17 Q. He was just somebody that you happened
18 upon as you were going around the building?
19 A. Yes.
20 Q. At that point, as I understand it, you
21 walk up to Mr. Owensby and put your left hand on his
22 shoulder?
23 A. Yes.
24 Q. What shoulder did you put it on?

Page 77

1  A. On his left shoulder.
2  Q. Were you facing him face to face or did
3  you come up from behind?
4  A. Walking to his right, right beside him.
5  Q. So you put your left arm -- you're --
6  you're to his -- his right and you put your left
7  hand on his left shoulder?
8  A. Yes.
9  Q. And you say "What's up?" And he says,
10 "What's up?" And you say, you know, You can't be
11 doing that, or something like that, right?
12 A. Yes.
13 Q. And he said, What do you -- What do you
14 mean or what. And you said, What you just did. Is
15 that right?
16 A. Yes.
17 Q. And then you started to reach in your
18 shirt to pull your badge out, which was hanging on a
19 chain around your neck?
20 A. Yes.
21 Q. Do you know whether or not you got the
22 badge all the way out before Mr. Owensby started to
23 run?
24 A. Yes, I got it out.

Case 1:01-cv-00769-SAS   Document 178-3   Filed 06/02/2004   Page 4 of 12

Owensby, et al. vs. City of Cincinnati
November 6, 2003
DAVID WILLIAM HUNTER, JR.

Page 86

1 letting them know that we were there.
2   Q. How -- how far was he from you when he
3 said that?
4   A. About, hmm, maybe from here to that wall
5 (indicating).
6   Q. What, ten feet?
7   A. Oh, more than that.
8   Q. More?
9   A. Maybe --
10   Q. 20 feet?
11   A. Maybe. Maybe 20 feet. I don't know
12 exactly.
13   Q. All right. When you had walked up to Mr.
14 Owensby, put your arm -- your left hand on his left
15 shoulder, around him, when you were talking to him,
16 were you looking at him?
17   A. Directly at him, yes.
18   Q. Did you notice if he had any facial hair?
19   A. If he did, it was like real light. I
20 don't remember having like a full beard or full
21 mustache or anything.
22   Q. Did he have the -- did he have -- how was
23 his hair? Was it in dreadlocks, was it short-cut?
24 How -- how was it?

Page 87

1   A. Like a short afro.
2   Q. At that point, as I understand your
3 testimony, you then return to Officer Jorg, tell him
4 what happened, right?
5   A. Uh-huh. Yes.
6   Q. And maybe -- maybe you've already answered
7 this, but do you recall whether or not Officer
8 Walker joined you and Officer Jorg?
9   A. I don't recall if he came back over there.
10   Q. Do you recall who of the two people that
11 were arrested, who was cited, their -- their names?
12   A. I don't remember their names.
13   Q. Let me show you -- let me show you what's
14 previously been marked as Exhibit 6. These are
15 two -- Exhibit 6 are two arrest and investigation
16 reports. The first one is for a Jaysen Hill and the
17 second is for a Jarvis Nixon.
18      You see the arrest location is the Sam's
19 Carry Out address of 2092 Seymour Avenue and the
20 arresting officer is Jorg, with your name also
21 listed. Do you see that?
22   A. Yes.
23   Q. Are these the two individuals that Officer
24 Jorg arrested --

Page 88

1   A. Yes.
2   Q. -- on that day?
3   A. Yes.
4   Q. Do you see that with respect to Jaysen
5 Hill he is charged with criminal trespass and an
6 open container?
7   A. Yes.
8   Q. Is there any reason why there's no charge
9 of trafficking --
10   A. Yes.
11   Q. -- or any kind of drug activity?
12   A. Yes.
13   Q. Why?
14   A. Because we didn't recover the drugs.
15   Q. Did you recover any money, any large sums
16 of money on these people out of these drug deals?
17   A. I didn't.
18      THE REPORTER: I'm sorry?
19      THE WITNESS: I did not.
20   Q. Do you know whether Officer Jorg did?
21   A. Not to my knowledge he didn't.
22   Q. So based on what you found on these
23 individuals -- well, let's talk about the second
24 one. Mr. Nixon is cited with criminal trespass.

Page 89

1 Same thing, there were no -- no drugs and no large
2 sums of money found, correct?
3   A. That's correct.
4   Q. Based on what you found at the scene when
5 you got there, there was no evidence of drug
6 activity taking place, was there?
7   A. Are you talking about after the fact?
8   Q. When -- when you're -- based on the arrest
9 and what you found on the person of these
10 individuals.
11   A. Okay. What we observed to put us there
12 went with the two that got away.
13   Q. Okay. That's what you believe?
14   A. That's what I believe.
15   Q. Let me show you what I'm going to mark as
16 Exhibit 6A.
       (Deposition Exhibit 6A
17      was marked for identi-
18      fication.)
19   Q. You see Exhibit 6A is an arrest and
20 investigation report for one Dominic Peterson, same
21 location, same date, same time. And the person is
22 searched by Officer Walker, and this person is
23 charged with criminal trespass. Was Mr. Peterson
24 also involved in this?

Case 1:01-cv-00769-SAS   Document 178-3   Filed 06/02/2004   Page 5 of 12

Owensby, et al.vs. City of Cincinnati   DAVID WILLIAM HUNTER, JR.
November 6, 2003

**Page 94**

1  A. No. Jorg marked all of these when he
2  filled out the --
3  Q. Do you recall -- do you --
4  A. -- the arrest slips.
5  Q. Do you recall any discussion between you
6  and Officer Jorg as to who was going to go to court?
7  A. No.
8     Can I add something to this?
9  Q. Sure.
10 A. It's not directly related to this
11 particular thing, but when this incident happened,
12 after the night of November 7th, 2000, Officer Jorg
13 and Officer Caton were going around saying, that
14 same night, that the -- that Mr. Owensby was wanted
15 for assault on a PO and obstructing.
16    He ran from me. It was basically my
17 investigation that day. That night and from there
18 on I always said, had this tragedy not happened, the
19 only charges I was going to place on him was
20 obstruction and jaywalking. And the jaywalking is
21 because he -- I chased him through a crosswalk,
22 around a car. And obstructing is for warning the --
23 the individuals of our presence.
24    And that goes back to what I was telling

**Page 95**

1  you about different officers and officer discretion
2  and different styles. I wouldn't have placed a
3  criminal trespass. If, for whatever reason, I
4  didn't get the drugs and the money to make my case,
5  even though we set there and we observed them, we
6  watched them, if I couldn't make it, you know, I try
7  again another day, the next time.
8     Same way with Mr. Owensby. He pushed me
9  to flee. He didn't strike me or -- I didn't -- I
10 wasn't under the impression that he was trying to
11 harm -- or cause me harm. Therefore, I would not
12 have charged him with felon-- with assault on a PO,
13 with assault on a police officer. But they would
14 have. That's the difference between this and that.
15 That -- I'm trying to show you the --
16 Q. Right.
17 A. Okay.
18 Q. Thank you.
19 A. You're welcome.
20 Q. Do you think -- was the push a result of
21 you having your hand and arm around his shoulder?
22    MR. HARDIN: Objection.
23 A. It was when I identified myself as a
24 police officer. And he pushed me and kept saying,

**Page 96**

1  "I didn't do anything, I didn't do nothing, I didn't
2  do nothing." That's why I felt like he was just
3  trying to basically get away. He -- he wasn't try
4  to hurt me.
5  Q. When you put your arm around Mr. Owensby,
6  he didn't know that you were a police officer,
7  right?
8  A. No.
9  Q. Based on your training, was that an
10 assault on Mr. Owensby?
11 A. No.
12 Q. Why not?
13 A. Because I didn't strike him, I didn't -- I
14 didn't cause or attempt to cause or knowingly
15 attempt to cause him any physical harm.
16 Q. And was -- you've already indicated when
17 Mr. Owensby tried to push away, he wasn't trying to
18 strike you?
19 A. No.
20 Q. And he wasn't trying to cause you any
21 harm?
22 A. No.
23 Q. When -- when you Maced Mr. Owensby and
24 the -- the -- the blowback that you described, did

**Page 97**

1  you then file some sort of report about deploying
2  your Mace?
3  A. No.
4  Q. I thought that earlier today you had
5  indicated that when Mace is used, you have to --
6  A. If you actually Mace --
7  Q. -- the officer has to --
8  A. Yeah, if you actually Mace somebody. I
9  didn't get -- I didn't get to Mace him.
10 Q. How do you know the Mace didn't get to
11 him?
12 A. I don't. I don't. I don't know.
13 Q. Okay.
14 A. You're right. You're right. I don't
15 know. But I don't think it did, in my opinion.
16 Q. What color was the sweat shirt, the -- the
17 hooded sweat shirt?
18 A. Dark color. Dark blue or black.
19 Q. In the radio transmission or the
20 transcript of -- well, let me show you what's
21 previously been marked as Exhibit 7. This is a
22 transcription of the radio traffic on September 27,
23 2000. And what I want to direct your attention
24 to -- are you -- are you -- first of all, are you

Page 94 - Page 97

# AFFIDAVIT

- - -

STATE OF OHIO        :
                     :  SS
COUNTY OF HAMILTON   :

I, Wendy L. Welsh, Notary Public in and for the State of Ohio, do hereby state that the transcript of the deposition of DAVID WILLIAM HUNTER, JR., deponent herein, having been submitted to said deponent for review and signature, has not been signed within the thirty (30) day period allowed under the Federal Rules; said deposition to now have the same force and effect as though signed.

_____
Wendy L. Welsh, Court Reporter

Sworn to before me this 27th day of January, 2004.

_____
Thomas M. Blasing
Notary Public - State of Ohio

My commission expires:
May 4, 2004.

107

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

- - - - - - - - - - - - - - -

ESTATE OF ROGER D.              :
OWENSBY JR., et al.,            :
                                :
         Plaintiffs,            :  Case No. 01-CV-769
vs.                             :  (Judge S. A. Spiegel)
                                :
CITY OF CINCINNATI,             :     VOLUME II
et al.,                         :
                                :
         Defendants.            :
- - - - - - - - - - - - - - - -


Continued videotaped deposition of DAVID

WILLIAM HUNTER JR., a witness herein, called by the

plaintiffs for cross-examination, pursuant to the

Federal Rules of Civil Procedure, taken before me,

Wendy Davies Welsh, a Registered Diplomate Reporter

and Notary Public in and for the State of Ohio, at

the offices of Helmer, Martins & Morgan Co. LPA,

1900 Fourth & Walnut Centre, 105 East Fourth Street,

Cincinnati, Ohio, on Thursday, December 4, 2003, at

10:11 a.m.

Pages:  107 - 282

Page 108

1 APPEARANCES:

2  On behalf of the Plaintiffs:

3   Paul B. Martins, Esq.
    Don Stiens, Esq.
4   Helmer, Martins & Morgan Co. LPA
    Suite 1900, Fourth & Walnut Centre
5   105 East Fourth Street
    Cincinnati, Ohio 45202
6   Phone: (513) 421-2400

7   John J. Helbling, Esq.
    The Helbling Law Firm, L.L.C.
8   3672 Springdale Road
    Cincinnati, Ohio 45251
9   Phone: (513) 923-9740

10 On behalf of the Defendants City of Golf Manor,
   Stephen Tilley, Roby Heiland and Chris
11 Campbell:

12  Wilson G. Weisenfelder Jr., Esq.
    Rendigs, Fry, Kiely & Dennis
13  900 Fourth & Vine Tower
    One West Fourth Street
14  Cincinnati, Ohio 45202-3688
    Phone: (513) 381-9200

15 On behalf of the Defendants City of Cincinnati,
16 Darren Sellers, and Jason Hodge:

17  Geri Hernandez Geiler, Esq.
    Assistant City Solicitor
18  Department of Law
    Room 214, City Hall
19  801 Plum Street
    Cincinnati, Ohio 45202
20  Phone: (513) 352-3346

Page 109

1 APPEARANCES (Continued):

2  On behalf of the Defendants Robert B. Jorg,
   Patrick Caton, Jason Hodge, Victor Spellen and
3  Darren Sellers:

4   Donald E. Hardin, Esq.
    Hardin, Lefton, Lazarus & Marks, LLC
5   915 Cincinnati Club Building
    30 Garfield Place
6   Cincinnati, Ohio 45202
    Phone: (513) 721-7300

7  On behalf of David William Hunter Jr.:
8
9   Jay Clark, Esq.
    114 East 8th Street
10  Suite 400
    Cincinnati, Ohio 45202
    Phone (513) 587-2887

11 Also present:
12
   Richard W. Grubb, Videographer
13
   Lisa Damstrom, Law Clerk
14 Helmer, Martins & Morgan Co., L.P.A.

15 Roger Owensby Senior

16 Brenda Owensby

17 Shawn Owensby

18         - - -

19        STIPULATIONS
20
21 It is stipulated by and among counsel for the
22 respective parties that the deposition of DAVID
23 WILLIAM HUNTER JR., a witness herein, called by the
24 plaintiffs for cross-examination, pursuant to the

Page 110

1 Federal Rules of Civil Procedure, may be taken at
2 this time by the notary; that said deposition may be
3 reduced to writing in stenotype by the notary, whose
4 notes may then be transcribed out of the presence of
5 the witness; and that proof of the official
6 character and qualifications of the notary is
7 expressly waived.

8              INDEX

9  Examination by:              Page

10 Mr. Martins . . . . . . . .  111, 277

11 Mr. Hardin. . . . . . . . .  258

12            - - -

13         EXHIBITS

14                              Page
   Deposition Exhibit 85 . . . . . . . . . . . . . . . 120
15 Deposition Exhibit 86 . . . . . . . . . . . . . . . 131
   Deposition Exhibit 87 . . . . . . . . . . . . . . . 152
16 Deposition Exhibit 88 . . . . . . . . . . . . . . . 219
   Deposition Exhibit 89 . . . . . . . . . . . . . . . 221
17 Deposition Exhibit 90 . . . . . . . . . . . . . . . 234
   Deposition Exhibit 91 . . . . . . . . . . . . . . . 236
18 Deposition Exhibit 92 . . . . . . . . . . . . . . . 238
   Deposition Exhibit 93 . . . . . . . . . . . . . . . 244
19 Deposition Exhibit 94 . . . . . . . . . . . . . . . 244
   Deposition Exhibit 95 . . . . . . . . . . . . . . . 245
20 Deposition Exhibit 96 . . . . . . . . . . . . . . . 250

21            - - -

Page 111

1        DAVID WILLIAM HUNTER JR.
2 being by me previously duly cautioned and sworn,
3 deposes and says as follows:
4    VIDEOGRAPHER: Time is 10:11 a.m. The
5  date is December the 4th. The year is 2003.
6  We're on the record, sir.
7    CONTINUED CROSS-EXAMINATION
8 BY MR. MARTINS:
9  Q. Officer Hunter, we're picking up where we
10 left off after November 6, your first couple hours
11 of your deposition. Remind you that you are still
12 under oath. Okay?
13  A. Yes, sir.
14  Q. All right. Have you talked with anyone
15 about your deposition on November 6th between
16 November 6th and today?
17  A. No, besides my attorney.
18  Q. Okay. Have you discussed the facts of the
19 Owensby case with anyone between November 6th and
20 today?
21  A. No.
22  Q. I want to direct your attention now to
23 November 7, 2000. I understand in the -- sometime
24 on that day you received an MTD message request for

Page 140

1  said, "You can" -- he said -- he -- he said, "I
2  don't have anything on me," and he lifted his shirt.
3  And then he said, "You can pat me down." He said,
4  "I'm not -- I haven't done anything. I'm not
5  wanted. You can -- you can pat me down after you
6  run me through."
7      Q. When you told Officer Jorg and Officer
8  Hunter that, "That's him," you were standing at the
9  window -- excuse me -- did they say anything in
10 response?
11     A. You said Officer --
12        MR. CLARK: You mean Caton?
13     A. Caton. It should have been Caton. You
14 said Officer Jorg and Officer Hunter.
15     Q. I'm sorry. I'm sorry. Officer -- when
16 you told Officer Jorg and Officer Caton that,
17 "That's him," when you were standing at the window,
18 did they say anything in response?
19     A. I don't remember if they said anything.
20     Q. You folks walk around to the front and
21 either Jorg or Caton start talking to Mr. Owensby
22 at -- at the -- the entrance; is that right?
23     A. Yes.
24     Q. Where are you at this point?

Page 141

1      A. Standing just behind them.
2      Q. Be--
3      A. Off to the left side.
4      Q. To the left of Jorg and Caton?
5      A. Just behind them, to the -- just slightly
6  to the left. I was -- they were right in the
7  doorway, both of them, because -- that's -- the
8  reason why I can't remember who was talking, because
9  at some point they both were talking, and so I don't
10 know who says what first.
11     Q. Okay. On Exhibit 86 there, would you draw
12 a circle indicating where Jorg, Caton and Owensby
13 were and put the number 2 in it.
14     A. Just a circle where they were?
15     Q. Where they were located.
16     A. Okay. All together? Just a circle all
17 together?
18     Q. Yeah.
19     A. Because -- okay. And put a number 2?
20     Q. Yes, sir. And then a number 3 with a
21 circle, indicating where you were.
22     A. (Witness complies.)
23     Q. When Officer Jorg walked over to that
24 entrance to stop and talk to Mr. Owensby, do you

Page 142

1  know whether or not he was carrying a nightstick?
2      A. I don't recall.
3      Q. A PR-24?
4      A. I don't recall if he was carrying one or
5  not.
6      Q. Do you know whether or not that night
7  Officer Jorg was carrying a collapsible PR-24 or a
8  regular full-size PR-24?
9      A. I don't remember what type he had.
10     Q. What happens next?
11     A. Officer Jorg and Officer Caton talk to Mr.
12 Owensby. They asked him questions. And then, like
13 I said, I -- I stood back, because I was still under
14 the contact-cover concept. If they both were going
15 to jump in and talk, then I just stood back as
16 cover. Because in actuality only one person should
17 have been talking. The other two should have been
18 standing back.
19        So once they were done doing their --
20 their thing, they -- the -- the last thing one of
21 them asked, I believe it was Officer Jorg, was,
22 "Well, have you ever fought the police?"
23     Q. Fought?
24     A. Fought. Fought the police. And then Mr.

Page 143

1  Owensby said no. Then, after that, that's when I
2  walked up. Well, you know, I -- not really walked
3  up, I was there, but that's when I came in the
4  doorway just, you know, where I could make eye
5  contact with Mr. Owensby. And I -- and I asked him,
6  I said, "So, have you ever ran from the police?"
7         And then when he saw that, it was a
8  reaction on his face and then that's when he broke
9  for the door.
10        THE REPORTER: I'm sorry, "broke for
11 the" --
12        THE WITNESS: The door.
13     A. Ran toward -- I mean, he was in the
14 doorway. And then it's like he tried to run past
15 us.
16     Q. When he broke to ran -- to run, did -- did
17 he push you or assault you in any way?
18     A. No.
19     Q. As he went past you, did -- did he get
20 completely past Officer Jorg and Caton before they
21 grabbed him?
22     A. I think he did. It happened so fast, but
23 I -- I think he actually just got -- because he went
24 by so fast. And then it was like, next thing you

### Page 208

1   A. Yes.
2   Q. I want to show you what's previously been
3 marked as Exhibit 21. This is a transcription of
4 the audio on the tape that you've just seen, the
5 videotape that you've just seen. I want to ask you
6 some questions. And if you want to hear, in
7 addition to what's there, I'll be happy to --
8   A. Okay.
9   Q. -- go through the tape, but what I want to
10 direct you to is on the third page. It says that --
11 at the top of the page, you say "Stopped for
12 investigation of ... obstruction." And that's what
13 we just talked about today, right?
14   A. Okay.
15   Q. Is that right?
16   A. Yes.
17   Q. Okay. And "I had on him, remember the
18 hooded sweatshirt guy? Was working that day, sarge.
19 The guy that ripped out uh."
20     Now, who are you talking to when you're
21 saying "Stopped for investigation of ...
22 obstruction"?
23   A. I was talking to Sergeant Browner, I
24 believe.

### Page 209

1   Q. And when you said "Stopped for
2 investigation of ... obstruction," are you referring
3 to the incident on September 27th?
4   A. Yes.
5   Q. Then if we go further downer -- down
6 there, Sergeant Browner says, "What's he wanted
7 for?"
8     And Officer Jorg says, "He's wanted for
9 trafficking resisting and assault on a police
10 officer from a prior."
11     We've already established that he was not
12 wanted for trafficking, right?
13   A. Right.
14   Q. And he was not wanted for assault on a
15 police officer?
16   A. Right.
17   Q. And was he wanted for resisting or just
18 obstruction?
19   A. Obstructing.
20   Q. So he wasn't wanted for resisting either?
21     And then it says, "But we didn't know his
22 name at the time. Now we got him ID, he's wanted
23 again for assault on a police officer" and
24 "resisting."

### Page 210

1     Did you see on the night of November 7,
2 2000, Mr. Owensby assault any police officer?
3   A. No.
4   Q. He certainly didn't assault you?
5   A. No.
6   Q. In fact, he never touched you as he went
7 by.
8   A. No.
9   Q. Is that correct?
10   A. Yes.
11   Q. And the resisting would be -- well, what
12 do you take the resisting to mean? Or did you think
13 he was resisting?
14   A. Yeah, that night.
15   Q. And how was he resisting?
16   A. By not allowing himself to be arrested.
17 So he was resisting arrest. He was in a defensive
18 posture, but he was ordered to give his hands and
19 his wrist and allow us to handcuff him, and he did
20 not. He didn't comply with our orders.
21   Q. Now -- now, while Officer Jorg is saying
22 all of this to Sergeant Browner, you're standing
23 there, right?
24   A. Yes.

### Page 211

1   Q. Is there a reason --
2   A. I think I'm standing there.
3   Q. I'm sorry?
4   A. I said I think I'm still standing there.
5   Q. Okay.
6   A. I don't know if I walked away or not.
7   Q. Is there -- well, you see at the end of
8 Officer Jorg's talking --
9   A. Yeah, down here. Okay.
10   Q. -- you start talking again?
11   A. Yeah. I'm still there.
12   Q. So --
13   A. That's what I was trying to get down to,
14 that part. Yeah.
15   Q. Okay. Is there a reason why you did not
16 correct Officer Jorg as to the prior, where he told
17 Sergeant Browner that Mr. Owensby was wanted for a
18 prior trafficking and assault on a police officer?
19   A. No, no reason other than when he was
20 telling her whatever he was telling her, I wasn't
21 really paying complete attention of what the charges
22 were that he was saying -- that he was saying,
23 because I already had it in my mind, I already knew
24 in my mind what the charges should have been. So I

Page 212

1 wasn't really tuned in to hear what he was saying.
2 I knew what the charges should have been.
3    Q. And in your mind, the prior charges should
4 have been obstructing --
5    A. And --
6    Q. -- and jaywalking?
7    A. Right.
8    Q. And when he said -- when Officer Jorg then
9 says "he's wanted again for assault on a police
10 officer to resisting," again, is there a reason why
11 you didn't say something to the effect of he's not
12 wanted for assault on a police officer?
13    A. Where's that at?
14    Q. Third line in what -- in Jorg's -- see
15 Jorg says, "He's wanted for trafficking
16 resisting" --
17    A. Trafficking, resisting.
18    Q. -- "assault on a police officer from a
19 prior." And we just talked about that.
20    A. Okay.
21    Q. He says, "But we didn't know his name at
22 the time."
23    A. Uh-huh.
24    Q. "Now we got him ID, he's wanted again for

Page 213

1 assault on a police officer to resisting."
2    A. Uh-huh.
3    Q. And my question is, is there a reason why
4 you did not correct Officer Jorg as to assault?
5    A. On that -- that new charge?
6    Q. As to the -- the charge for that night of
7 assault on a police officer.
8    A. Okay. Because I didn't know if he, you
9 know, felt like -- I didn't know if I missed
10 something where he -- they -- him or Caton got
11 assaulted.
12       There was nothing that I saw that I would
13 say that yeah, you know, this person -- if they made
14 a claim or if they said they got assaulted and I was
15 called to court to testify, there was nothing I
16 could say to substantiate that they had been
17 assaulted.
18       So to me, no, he that -- not-- nobody got
19 assaulted. But if they claimed an assault, I -- I
20 can't say that they didn't get assaulted as far as
21 like if that was their claim that night. But in
22 testifying, I can say no, I didn't see them get
23 assaulted.
24    Q. At the bottom of the page you -- you say,

Page 214

1 "that's when I said oh, so when was the last time
2 you ran from the police." And "That's when we" --
3       And then Sergeant Watts breaks in and
4 says, "Did anyone strike him or spray?" And then he
5 says, "Just sprayed him."
6       And Jorg says, "I don't know who sprayed
7 him. I had his head wrapped almost the whole time."
8       Is there a reason why, at that point when
9 Sergeant Watts asked about if anybody struck him,
10 struck Mr. Owensby, why --
11    A. Uh-huh.
12    Q. -- you didn't say yeah, somebody struck
13 him?
14    A. Yeah, there was a reason.
15    Q. What was the reason?
16    A. The reason is I wasn't going to talk out
17 against two other officers in front of them at that
18 particular time. I was going to take Officer -- I
19 mean Sergeant Watts off to the side and tell him
20 what happened.
21    Q. Did you ever get that opportunity?
22    A. No.
23    Q. On the -- the last page Officer Jorg says,
24 he had -- "I had my hand across his forehead, trying

Page 215

1 to hold him down to the ground. I ... had one of
2 his arms as a restraint move. I didn't throw
3 anything. And then uh, he dropped his head. As I
4 was" turning "to hold him down, he brought his head
5 up. I had to push it back down and he hit his head
6 on the ground. It wasn't intentional move. I
7 didn't go to hit his head on the ground. Sarge, I'm
8 gonna, well I'm" --
9       Did you see what Officer Jorg is
10 describing here as pushing his head down on the
11 ground?
12    A. I didn't see that.
13    Q. You did not?
14    A. No.
15    Q. On -- going back to page 3, Officer Jorg's
16 statement, after he says in the third line, "wanted
17 again for assault on a police officer to resisting,"
18 and then he says, "We uh, well we're" over -- "over
19 there doing investigation waiting for these guys,"
20 do you know who he's talking about as far as
21 "waiting for these guys"?
22    A. That night?
23    Q. Yeah. I guess this is -- this is the
24 night of November 7.

# AFFIDAVIT

- - -

STATE   OF   OHIO     :
                      :   SS
COUNTY OF HAMILTON    :

I, Wendy L. Welsh, Notary Public in and for the State of Ohio, do hereby state that the transcript of the deposition of DAVID WILLIAM HUNTER, JR., deponent herein, having been submitted to said deponent for review and signature, has not been signed within the thirty (30) day period allowed under the Federal Rules; said deposition to now have the same force and effect as though signed.

_____
Wendy L. Welsh, Court Reporter

Sworn to before me this 27th day of January, 2004.

_____
Thomas M. Blasing
Notary Public - State of Ohio

My commission expires:
May 4, 2004.