UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| The Estate of Roger D. Owensby Jr., | : | Case No. 01-CV-769 |
| Plaintiff | : | (Judge Speigel) |
| v. | : | |
| City of Cincinnati, et al., | : | **MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANT JASON HODGE** |
| Defendant. | : | |

**I.      INTRODUCTION**

On May 19, 2004, this Court granted summary judgment in favor of the plaintiffs against several Cincinnati police officers for failure to provide medical care. (Doc. #156) Defendant Cincinnati Police Officer Jason Hodge was on active military duty in Kuwait and Iraq from January, 2003 through mid-January, 2004. In deference to the Servicemembers Civil Relief Act, 50 U.S.C. app. §§501-594, plaintiff did not seek summary judgment against Officer Hodge. Defendant's counsel was not informed of Officer Hodge's return from military duty until after the date for filing motions. (Doc. #32) His deposition was taken and discovery is now complete. Pursuant to Fed. R. Civ. P. 56(C) and 50 U.S.C. app. §§501-594, Officer Jason Hodge respectfully moves this Court for summary judgment in his favor as there is no genuine issue of material fact and he is entitled to judgment as a matter of law. The accompanying memorandum supports this motion.

      Respectfully submitted,

/s/ Kimberly A. Rutowski
Kimberly A. Rutowski    (#0076653)
Special Counsel for Defendant Police Officer Jason Hodge
Hardin, Lefton, Lazarus & Marks, LLC
915 Cincinnati Club Building
30 Garfield Place
Cincinnati, Ohio 45202
(513) 721-7300

**MEMORANDUM**

## II. STATEMENT OF FACTS

On November 7, 2000, Roger Owensby, Jr., was identified by Officer David Hunter as a suspect involved in a previous encounter with Officer Hunter. (Hunter Depo. p.131) Officers Robert Blaine Jorg and Patrick Caton believed that Mr. Owensby was wanted for an assault against Officer Hunter. (Jorg Depo. p. 75; Caton Depo. p. 75) The suspect crossed the street and entered the Sunoco station located next to the officers' location. All three officers walked from the Sam's carryout parking lot to the Sunoco station. (Jorg Depo. p. 92; Caton Depo. p. 79) After Hunter made a positive identification, Jorg attempted to handcuff Mr. Owensby. Owensby ran past the three officers. (Jorg Depo. p. 103, Caton Depo. p. 96, Hunter Depo. p.142-143) When Jorg and Caton caught Mr. Owensby, he strongly resisted arrest. (Jorg Depo. p. 35, 153; Caton Depo. p. 103; Hunter Depo. p. 274) Officer Caton called for additional assistance to subdue Mr. Owensby. (Caton Depo. p. 99) Officer Darren Sellers responded to

the call for assistance, running from his location in the adjacent parking lot. (Sellers Depo. p. 37, 46; Jorg Depo. p. 142)

During the struggle, Mr. Owensby was kicking. (Caton Depo. p.103-4; Hunter Depo. pp.154-5; Jorg Depo. p. 153) He refused to allow the officers to handcuff him. (Jorg Depo. p. 125-6; Caton Depo. p.109) Officers Jorg and Caton stated that Mr. Owensby was stronger than they were. (Jorg Depo. p. 122; Caton Depo. p.107) It was necessary for these officers to use force to subdue the strong, violently resisting suspect. Officer Jorg used a head wrap to stabilize Mr. Owensby's head in order to apply a mandibular angle pressure point pain compliance technique to gain control. (Jorg Depo. p. 35) Officer Caton applied two pain compliance strikes to the lower back and three to the forearm attempting to gain control. (Caton Depo. pp. 105-6, 112) When these efforts were unsuccessful in subduing Mr. Owensby, Officer Hunter applied mace. (Hunter Depo. p. 169; Jorg Depo. p. 126; Caton Depo. p. 110)

When Officer Caton broadcast the call for assistance, Officer Jason Hodge and his partner Abe Lawson were waiting at a nearby park to question a drug suspect. Officer Hodge and Lawson were working "undercover" in the mini-tac unit. (Hodge Depo. p. 26) As Officer Lawson pulled their car into the Sam's lot in response to the assistance call, a uniformed officer pointed to the Sunoco station next door. Officer Hodge jumped out of the car and ran across the parking lot to lend assistance to his fellow officers. (Id. at 29) As Officer Hodge approached the scene, he observed three uniformed officers actively involved in the struggle and Officer Hunter several feet away from the subject's head. (Id. at

32-33)  There was a handcuff on Mr. Owensby's right wrist, but he was "giving a lot of resistance" to prevent the officers from pulling his arm out.  (Id. at 35)  Officer Hodge grabbed Hunter's PR-24 and used it as leverage to pry Mr. Owensby's right arm out.  (Id. at 39, 41, Jorg Depo. p. 129)   Officer Jorg took the PR-24 and leveraged the left arm out.   (Hodge Depo. p. 41, Jorg Depo. 130)  As soon as both arms were pried out, Mr. Owensby was handcuffed.  (Id.)

Officers Caton, Jorg and Sellers picked Mr. Owensby up.  (Hodge Depo. p. 46)  At this point, Mr. Owensby had his feet pressed up against his buttocks.  (Id. at 47)  One of the officers said, "Put your feet down and walk."  (Id. at 48)  Mr. Owensby put his feet down and walked to the car using short, choppy steps as if he was intoxicated.  (Id. at 53)  Mr. Owensby was placed in a Golf Manor cruiser because it was nearby. (Jorg Depo. p. 150; Caton Depo. p. 123)   Golf Manor Officer Heiland authorized the use of his cruiser and opened the door as he observed the Cincinnati officers escort Mr. Owensby to the cruiser.  (Heiland Depo. pp. 126,129)

Shortly after arriving on scene and within minutes of the struggle, Sergeant Watts discovered that Mr. Owensby was not moving and called for EMT and Fire Rescue. (Caton Depo. p.18)    Officers Caton and Hasse immediately removed Mr. Owensby from the cruiser and began CPR. (Id. at 140-41)   Mr. Owensby was transported to University Hospital and was later pronounced dead.  The coroner listed the cause of death as "mechanical asphyxiation." (Dr. Schultz Depo. p. 51)

However, Emergency Medicine Specialist Tom S. Neuman, M.D. has reviewed the coroner's report and stated that it is "highly unlikely" that Mr. Owensby died from mechanical asphyxiation. (Affidavit of Tom S. Neuman, M.D., ¶ 15) "It defies logic to believe that in a struggle with several police officers that Mr. Owensby was not able to breathe at all. But even if he were not able to breathe at all, two minutes is simply not enough time to asphyxiate to death." (Id.) Dr. Neuman has opined to a reasonable degree of medical probability that given the circumstances and Mr. Owensby's enlarged heart sudden cardiac arrest is the most likely cause of death. (Id. at ¶ 18, 21) "Furthermore, CPR regardless of when it would have been instituted, would not, to a reasonable degree of medical probability have made it more likely than not that he would have survived." (Id.)

### III.    Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact is based on the substantive law of the case and exists if the evidence would allow a reasonable jury to find for either side. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The nonmoving party must "make a showing sufficient to establish the existence of an element essential to his case and on which he will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Furthermore, "[t]he mere

existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. The Court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

In the case of Officer Jason Hodge, there are no issues of material fact on which a jury could reasonably find that he violated any constitutional right of Roger Owensby Jr. Therefore, summary judgment should be granted.

IV.   **Argument**

  A.   **SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE OFFICER HODGE DID NOT UNCONSTITUTIONALLY FAIL TO PROVIDE MEDICAL CARE**

Officer Hodge did not violate any constitutional right of Roger Owensby Jr. Plaintiff has asserted a § 1983 Civil Rights claim against Officer Hodge alleging that he violated Mr. Owensby' right to receive medical care. In order to establish such a claim, the plaintiff must prove that Officer Hodge was acting under color of state law and that Owensby was deprived of a right secured by the Constitution or laws of the United States. It is undisputed that Officer Hodge was acting under color of state law in his official capacity at the time of the incident.

The analysis of the right to receive medical care has evolved over the years. The general right of prisoners to receive medical care was established under the Eighth Amendment in *Estelle v. Gamble,* 429 U.S. 97, 104 (1979). The Supreme Court has held that under the due process clause of the

Fourteenth Amendment, pretrial detainees also have a constitutional right to medical care. *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16 (1979); *City of Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 244 (1983). This right is violated by "deliberate indifference to serious medical needs of prisoners." *Estelle*, at 104; *Roberts v. City of Troy,* 773 F.2d 720, 722 (6th Cir. 1985). Objectively, the medical need at issue must be "sufficiently serious" to actually raise awareness in a person's custodians of the existence of a medical condition. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

The Sixth Circuit addressed the issue of medical care, stating that "where the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness" constitutional due process requires providing such care. *Fitzke v. Shappell,* 468 F.2d 1072, 1076 (6th Cir. 1972); see also *Roberts,* 773 F.2d at 723; *Danese v. Asman,* 875 F.2d 1239 (6th Cir. 1989); *Rich v. Mayfield Heights,* 955 F.2d 1092, 1096 (6th Cir. 1992).

In *Farmer,* the Court specifically addressed "deliberate indifference" and articulated a subjective test for determining whether the right to medical care has been violated. *Id*. at 838. The official must *actually know* of the risk and *disregard it*. "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* See also, *Watkins v. City of Battle Creek,* 273 F.3d 682 (6th Cir. 2002)(It is not enough to show what a police officer should have known; plaintiff must show actual knowledge.); *Weaver v. Shadoan,* 340 F.3d 398 (6th Cir. 2003).

However, the Supreme Court has recently held that "intent to harm" is an appropriate standard to find liability for a substantive due process violation actionable under a §1983 claim when there is limited time to deliberate. *County of Sacramento v. Lewis,* 523 U.S. 833, 855 (1998). A government actor violates a due process right when his conduct is arbitrary and "shocks the conscience." *Collins v. Harker Heights,* 503 U.S. 115 (1992). In *County of Sacramento*, the Court specifically analyzed whether the "deliberate indifference" standard was appropriate to "shock the conscience" in a police pursuit case. The Court stated:

> Thus, attention to the markedly different circumstances of normal pretrial custody and high-speed law enforcement chases shows why the deliberate indifference that shocks in the one case is less egregious in the other (even assuming that it makes sense to speak of indifference as deliberate in the case o sudden pursuit). As the very term "deliberate indifference" implies, the standard is sensibly employed only when actual deliberation is practical, see Whitley v. Albers, 475 U.S. at 320. . .

*County of Sacramento*, 523 U.S. at 851.

Although the present case does not involve a police pursuit, it does involve a situation with quickly evolving circumstances and limited time for action. The "in-custody" call was made at 1949:40 and the call for fire/rescue was made at 1955:10. Also, Sergeant Watts is on scene and walking toward the Golf Manor cruiser less than two minutes after the "in-custody" call. (Exhibit "A")[1] The entire struggle lasted less than two minutes. The call for assistance was made at 1947:40 and the "in-custody" call was made at 1949:40 after Owensby was escorted to the Golf Manor car and the door was closed. (Caton Depo. p. 175)

---

[1] Exhibit "A" is an integrated transcript of Dist. 4 Police Communications and the audio portion of the VHS tape from equipment #473. Plaintiff and defense counsel are in the process of finalizing the transcript as a joint exhibit. All references are in military time.

8

Therefore the "intent to harm" standard should be applied to determine if Officer Hodge violated Mr. Owensby's right to medical care.

Under either standard, Officer Hodge did not violate any constitutional right. Officer Hodge did not have any knowledge of a serious medical condition or need for medical treatment. When Officer Hodge was running up to the struggle, he did observe blood on Mr. Owensby's face, but he did not notice any abrasions on Owensby's forehead. (Hodge Depo. p. 43) At this point Mr. Owensby was actively struggling with the officers. Any blood observed by Officer Hodge at that time could have come from either Mr. Owensby or any of the officers involved in the struggle. According to Daniel L. Schultz, M.D., Deputy Coroner, Hamilton County, Ohio, who performed the autopsy on Roger Owensby, the only visible signs of trauma that would have been apparent to the officers that night were facial abrasions and possibly abrasions to the left forearm. (Schultz Depo. at 148). "The injuries to his face are markers of trauma and they themselves are not injuries that need immediate attention." (Id.)

This Court recently applied the deliberate indifference standard ruling against several other officers involved in this incident. Unlike this Court's finding against Officer Hunter (Doc # 156, p. 49), Officer Hodge has consistently stated that Mr. Owensby struggled on the way to the Golf Manor cruiser. His subjective knowledge is uncontroverted. In his police officer notes written on November 7, 2000 at 10:29pm, he stated that Owensby continued to struggle after the Golf Manor officer was asked if they could use his cruiser. (Exhibit "B") On November 12, 2000, Officer Hodge told the homicide investigators that Owensby

had his heels pressed up against us buttocks and that he put his feet down to walk after he was instructed to do so. (Exhibit "C", p. 6, 9) On March 14, 2002, Officer Hodge made the same statements to the Cincinnati Police Department's internal investigators. (Exhibit D, p. 20) Finally, Officer Hodge testified, at his deposition, that when he heard someone say, "walk…put your feet down," Hodge saw Owensby had the heels of his feet against his buttocks and then he put his feet down and walked to the Golf Manor cruiser. (Hodge Depo. p. 53) From Officer Hodge's subjective perspective, Roger Owensby did not need medical attention. (Id. at 113-114) His subjective knowledge is uncontroverted. A reasonable jury could only conclude that Officer Hodge's observations and his conclusion that a struggling man does not require immediate medical attention, does not violate any constitutional right.

Unlike Officer Hunter, Officer Hodge did not see any officer strike Mr. Owensby. (Id. at 52) He also did not see Officer Jorg's left arm around the area of Mr. Owensby's face. (Id. at 100) Furthermore, Officer Hodge did not see any officer put their weight on Owensby. (Id. at 38) He also did not see mace applied nor did he smell it. (Id. at 44) Officer Hodge did observe Owensby struggling with Officers Caton, Jorg and Sellers on the ground and on the way to the Golf Manor cruiser. Officer Hodge felt strong resistance from Owensby when Hodge attempted to pull Owensby's right arm out to be handcuffed. Nothing that Officer Hodge observed provides any indication that Owensby needed medical attention. Officer Hodge's subjective knowledge and observations are uncontroverted.

Plaintiff may argue that Officer Hodge's concern about blood on Officer Jorg's sleeve shows he was aware of an injury to Mr. Owensby. However, Officer Hodge testified that at first he did not know whose blood was on Officer Jorg's sleeve. It was only after the sleeve was cut off that Officer Hodge discovered the blood was not Officer Jorg's. (Id. at 83) At that point, Sergeant Watts was checking on Mr. Owensby and the call for fire was made less than 50 seconds later. (Exhibit "A")[2] Furthermore, this heightened concern can be attributed to a previous incident when Officer Hodge was working uniform patrol. Hodge was involved in a fight with a suspect who later claimed to be HIV positive. Officer Hodge had cuts on his hand and the suspect's blood on him. (Id. at 70) Officer Hodge went through the difficult ordeal of HIV medication as well as the emotional strain of dealing with the possibility of contracting HIV and AIDS. Significantly, even though the suspect in Officer Hodge's previous incident was bleeding and obviously injured, Officer Hodge did not provide immediate medical care. (Id. at 73)

A reasonable jury could only conclude that Officer Hodge was unaware of Mr. Owensby's need for medical care. Clearly Officer Hodge did not act with deliberate indifference or "intent to harm." Therefore, summary judgment should be granted.

### B.  SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE OFFICER HODGE DID NOT USE EXCESSIVE FORCE DURING THE ARREST OF ROGER OWENSBY JR.

---

[2] At the end of the MVR tape, Officer Jorg is seen walking toward Officer Hodge at the back of the cruiser. According to the joint transcript, this occurs at 1954:18 and fire is called at 1955:10.

Officer Hodge used only the amount of force necessary to effect the arrest of Owensby. An excessive force claim is be analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor,* 490 U.S. 386 (1989). The analysis is whether the police officer's use of force was objectively reasonable in light of the facts and circumstances confronting him at that time, not with 20/20 hindsight. *Id.*

Officer Hodge was responding to a call for assistance from a fellow police officer. As Officer Hodge approached the scene, he observed three uniformed officers struggling to handcuff the subject. He did not know what the subject was being arrested for or if the subject was armed. Officer Hodge used a PR24 as a leverage device to pry Owensby's arm out from underneath his body in order to effect the arrest. Officer Hodge did not strike, nor did he see any officer strike Mr. Owensby. A reasonable jury could only conclude that Officer Hodge did not use any force, much less excessive force against Mr. Owensby. Therefore, summary judgment should be granted.

    **C.**    **OFFICER HODGE IS ENTITLED TO QUALIFIED IMMUNITY ON BOTH CLAIMS OF EXCESSIVE USE OF FORCE AND FAILURE TO PROVIDE MEDICAL CARE**

Qualified immunity is an affirmative defense where "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 US 800, 816-18 (1982). In *Malley v. Briggs,* 475 US 335, 341 (1986), the Court extended *Harlow* to hold that police officers are entitled to

qualified immunity unless, "on an objective basis, it is obvious that no reasonably competent officer would have concluded that [the conduct was lawful]; but if officers of reasonable competence could disagree on this issue, immunity should be recognized."

Defining the right that is violated is important. "Our cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 639 (1987). The right must be analyzed within the specific circumstances of the case. *Id.*; *Russo v. City of Cinti.,* 953 F.2d 1036, 1043 (6th Cir. 1992)(without binding Supreme Court precedent as to a constitutional right, a district court must find evidence that "leaves no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting.").

The Sixth Circuit employs a three-step analysis to determine if an officer is entitled to qualified immunity. The first step is to determine if a constitutional right was violated, based on the facts alleged. If a violation is found, the second step is that an examination of whether the right was clearly established must be "undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz,* 533 U.S. 194, 201 (2001). The final step is to determine if the evidence is sufficient to indicate that the officer's actions were objectively unreasonable in light of the clearly established Constitutional right.

13

*Feathers v. Aey*, 319 F.3d 843 (6th Cir. 2003); *Sallier v. Brooks*, 343 F.3d 868 (6th Cir. 2003).

In *Saucier,* the Court reconciled an apparent conflict between the "objective reasonableness standard" set forth in *Graham v. Conner,* 490 U.S. 386 (1989) for analyzing Fourth Amendment excessive use of force claims and the qualified immunity analysis in *Anderson.*  Under *Graham* "the reasonableness of the officer's belief as to the appropriate use of force should be judged from that on-scene perspective." *Id.* at 395.  The Court cautioned against "20/20 vision of hindsight" urging deference to officers in the field making split-decisions in difficult situations. *Id.*

The respondents in *Saucier* asserted that the excessive force analysis made the qualified immunity analysis "superfluous and inappropriate."  533 U.S. at 206.  The Court stated:

> [E]ven if a court were to hold that the officer violated the Fourth Amendment by conducting an unreasonable, warrantless search, Anderson still operates to grant officers immunity for reasonable mistakes as to the legality of their actions.  The same analysis is applicable in excessive force cases, where in addition to the deference officers receive on the underlying constitutional claim, qualified immunity can apply in the event the mistaken belief was reasonable.
>   *Id.*

Thus, qualified immunity protects officers from reasonable mistakes as to the legality of their actions.  See, e.g., *Malley,* 475 U.S. at 341(qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law); *Mitchell v. Forsyth,* 472 U.S. 511, 528 (1985)(officials are immune unless "the law clearly proscribed the actions" they took); *Anderson,* 483 U.S. at 641(even

14

law enforcement officials who "reasonably but mistakenly conclude that probable cause is present are entitled to immunity")

In *Danese,* the Court specifically addressed the factual differences in *Estelle* and *Fitzke* where the prisoner actually *requested* medical care. "It is one thing to ignore someone who has a serious injury and is asking for medical help; it is another to be required to screen prisoners correctly to find out if they need help." *Danese,* 875 F.2d at 1244. The Court found that a reasonable officer who did not realize his prisoner needed medical care did not violate that prisoner's constitutional rights. *Id.*

### A. Officer Hodge is entitled to qualified immunity on the denial of medical care claim.

In the present case, Officer Hodge did not observe anything that would indicate that Owensby was in need of medical attention. Officer Hodge was only involved at the very end of the struggle and he did not escort Mr. Owensby to the Golf Manor cruiser. In fact, Officer Hodge's observations of Owensby struggling on the way to the cruiser only indicate that Owensby was not in need of medical attention. Officer Hodge was not aware that Owensby needed medical attention until fire/rescue was called. (Hodge Depo. p. 18) Officer Hodge is entitled to qualified immunity because his actions were clearly reasonable under the circumstances.

### B. Officer Hodge is entitled to qualified immunity on the excessive use of force claim.

Using a PR24 as a leverage device is not an excessive use of force. Therefore, it is not a right that is clearly established. A reasonable officer would

15

not know that using a PR24 in this manner would lead to a possible constitutional violation.

## V.  Conclusion

As set forth above, there are no genuine issues of material fact relating to Officer Hodge.  A reasonable jury could only come to one conclusion, that Officer Hodge unaware of Roger Owensby's need for medical care.  Therefore, summary judgment should be granted in his favor.

Respectfully submitted,

/s/ Kimberly A. Rutowski
Kimberly A. Rutowski     (#0076653)
Special Counsel for Defendant Police Officer Jason Hodge
Hardin, Lefton, Lazarus & Marks, LLC
915 Cincinnati Club Building
30 Garfield Place
Cincinnati, Ohio  45202
(513) 721-7300

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing Motion for Summary Judgment on Behalf of Defendant Jason Hodge has been electronically filed with the Clerk of this Court on August 30, 2004. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

James B. Helmer, Jr., Esq.
Paul B. Martins, Esq.
Frederick M. Morgan, Jr., Esq.
Robert M. Rice, Esq.
HELMER, MARTINS & MORGAN CO., L.P.A.
Fourth & Walnut Centre, Suite 1900
105 East Fourth Street
Cincinnati, Ohio 45202
Trial Attorneys for Plaintiff

Geri H. Geiler, Esq.
Assistant City Solicitor
Room 214, City Hall
801 Plum Street
Cincinnati, Ohio 45202
Trial Attorney for Defendants
John Shirey, Kent A. Ryan, S. Gregory Baker, Thomas Streicher, Jr., Robert B. Jorg, Patrick Caton

Mark T. Tillar, Esq.
240 Clark Road
Cincinnati, Ohio 45215
Trial Attorney for Plaintiff

John J. Helbling, Esq.
3672 Springdale Road
Cincinnati, Ohio 45251
Trial Attorney for Plaintiff

Neil F. Freund, Esq.
Vaseem S. Hadi, Esq.
FREUND, FREEZE & ARNOLD
One Dayton Centre
One South Main Street, Suite 1800
Dayton, Ohio 45402-2017
Trial Counsel for Defendants City of Cincinnati, John Shirey, Kent A. Ryan, S. Gregory Baker, Thomas Streicher, Jr., Darren Sellers, Jason Hodge

Wilson G. Weisenfelder, Jr., Esq.
RENDIGS, FRY, KIELY & DENNIS, LLP
900 Fourth & Vine Tower
Cincinnati, Ohio 45202
Trial Attorney for Defendants City of Golf Manor, Stephen Tilley, Roby Heiland, and Chris Campbell

Ravert J. Clark, Esq.
114 East Eighth Street
Suite 400
Cincinnati, Ohio 45202
Trial Attorney for Defendant David Hunter

      /s/Kimberly A. Rutowski
      Kimberly A. Rutowski    (#0076653)