Estate of Roger Owensby vs. City of Cinti.
October 17, 2003

PATRICK E. CATON

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

- - - - - - - - - - - - - -

ESTATE OF ROGER D. :
OWENSBY JR., et al., :
                            :
       Plaintiffs, :
   vs. :  Case No. 01-CV-769
                            :  (Judge S. A. Spiegel)
CITY OF CINCINNATI, :
et al., :
                            :
       Defendants. :

- - - - - - - - - - - - - -

        Videotaped deposition of PATRICK EDMUND CATON, a defendant herein, called by the plaintiffs for cross-examination, pursuant to the Federal Rules of Civil Procedure, taken before me, Wendy Davies Welsh, a Registered Diplomate Reporter and Notary Public in and for the State of Ohio, at the offices of Helmer, Martins & Morgan Co. LPA, 1900 Fourth & Walnut Centre, 105 East Fourth Street, Cincinnati, Ohio, on Friday, October 17, 2003, at  a.m.

(800) 578-1542 * MERIT * (513) 381-8228

Estate of Roger Owensby vs. City of Cinti.
October 17, 2003

PATRICK E. CATON

**Page 2**

```
 1  APPEARANCES:
 2      On behalf of the Plaintiffs:
 3          Paul B. Martins, Esq.
            Don Stiens, Esq.
 4          Frederick M. Morgan, Jr. Esq.
            Helmer, Martins & Morgan Co. LPA
 5          Suite 1900, Fourth & Walnut Centre
            105 East Fourth Street
 6          Cincinnati, Ohio 45202
            Phone: (513) 421-2400
 7
            John J. Helbling, Esq.
 8          The Helbling Law Firm, L.L.C.
            3672 Springdale Road
 9          Cincinnati, Ohio 45251
            Phone: (513) 923-9740
10
    On behalf of the Defendants City of Golf Manor,
11  Stephen Tilley, Roby Heiland and Chris
    Campbell:
12
            Lynne Marie Longtin, Esq.
13          Rendigs, Fry, Kiely & Dennis
            900 Fourth & Vine Tower
14          One West Fourth Street
            Cincinnati, Ohio 45202-3688
15          Phone: (513) 381-9200

16  On behalf of Defendants City of Cincinnati,
    Darren Sellers, Jason Hodge:
17
            Geri Hernandez Geiler, Esq.
18          Assistant City Solicitor
                    and
19          Julie F. Bissinger, Esq.
            Chief Counsel
20          Department of Law
            Room 214, City Hall
21          801 Plum Street
            Cincinnati, Ohio 45202
22          Phone: (513) 352-3346
```

**Page 4**

```
 1              STIPULATIONS
 2      It is stipulated by and among counsel for the
 3  respective parties that the deposition of PATRICK
 4  EDMUND CATON, a defendant herein, called by the
 5  plaintiffs for cross-examination, pursuant to the
 6  Federal Rules of Civil Procedure, may be taken at
 7  this time by the notary; that said deposition may be
 8  reduced to writing in stenotype by the notary, whose
 9  notes may then be transcribed out of the presence of
10  the witness; and that proof of the official
11  character and qualifications of the notary is
12  expressly waived.

                    - - -
```

**Page 3**

```
 1  APPEARANCES (Continued):
 2      On behalf of the Defendants Robert B. Jorg,
        Patrick Caton, Jason Hodge, Victor Spellen and
 3      Darren Sellers:
 4          Donald E. Hardin, Esq.
            Hardin, Lefton, Lazarus & Marks, LLC
 5          915 Cincinnati Club Building
            30 West Garfield Place
 6          Cincinnati, Ohio 45202
            Phone: (513) 721-7300
 7
    Also present:
 8
    Richard W. Grubb, Videographer
 9
    Lisa Damstrom, Law Clerk
10  Helmer, Martins & Morgan Co., L.P.A.

11  Wendy M. Weller, Paralegal
    Buckley, King & Bluso
12
    Mr. Roger Owensby
13
    Mrs. Brenda Owensby
14
    Mr. Shawn Owensby
15
    Victor N. Spellen
```

**Page 5**

```
                    I N D E X

    Examination by:                     Page

    Mr. Martins  . . . . . . . . .        6

    Ms. Longtin  . . . . . . . .        232

    Mr. Martins. . . . . . . . .        239

                    - - -

                  E X H I B I T S

                                        Page
    Deposition Exhibit 28  . . . . . . . .  22
    Deposition Exhibit 29  . . . . . . . .  30
    Deposition Exhibit 30  . . . . . . . .  43
    Deposition Exhibit 31  . . . . . . . .  65
    Deposition Exhibit 32  . . . . . . . . 115
    Deposition Exhibit 33  . . . . . . . . 186
    Deposition Exhibit 34  . . . . . . . . 191
    Deposition Exhibit 35  . . . . . . . . 194
    Deposition Exhibit 36  . . . . . . . . 207
```

Case 1:01-cv-00769-SAS   Document 196-9   Filed 09/23/2004   Page 3 of 4

Estate of Roger Owensby vs. City of Cinti.
October 17, 2003

PATRICK E. CATON

Page 14

1   A. That is correct.
2   Q. And was there a pulse?
3   A. I couldn't find one.
4   Q. Did Officer Hasse try to take his pulse at
5   his wrist?
6   A. I -- I don't think he could. No, I would
7   say no, because his hands were underneath him at --
8   at that point. Officer Hasse was also -- had to use
9   both hands to use the -- the rescue breathing mask
10  that was supplied by a Golf Manor officer.
11  Q. Did Officer Hasse say anything to you
12  concerning the condition of Mr. Owensby at that
13  time?
14  A. Well, while we were giving him CPR, like I
15  said, his hands had to be on the mask in order to
16  employ it. And I basically did all the manipulation
17  of Mr. Owensby to get him in the proper position,
18  and the chest compressions. During the -- and --
19  and periodically taking his pulse through the
20  incident.
21      At one point Officer Hasse, who is EMT
22  trained, said -- asked me if air was going into his
23  lungs or going into his stomach.
24      And I said, "How do you tell?"

Page 15

1       And he says, "Is his chest rising and
2   falling or is his stomach rising and falling?" And
3   when he gave two rescue breaths, I -- I observed his
4   stomach rising and falling.
5       He then said, "That means something's
6   blocking his throat," at which point I repositioned
7   Mr. Owensby's head with a chin tilt and attempted to
8   physically clear his airway. At that point I
9   couldn't find anything, and we began the rescue
10  breathing and CPR again.
11  Q. When you say "couldn't find anything,"
12  there was no obstruction as far as his --
13  A. I can only reach as deep as the back of
14  his mouth.
15  Q. Right. And you -- you found no
16  obstruction?
17  A. I -- I couldn't find an obstruction at --
18  from -- at that point.
19  Q. Had you --
20  A. Officer --
21  Q. I'm sorry.
22  A. I'm sorry. I was going to continue.
23  Officer Hasse believed that there was something
24  obstructing his airway at that point and called.

Page 16

1   When Fire arrived, he immediately -- I -- I can't
2   remember the technical term he used. It was -- he
3   referenced, "We need the suction device off the
4   truck to clear his airway."
5   Q. Had you received training as a Cincinnati
6   police officer in conducting CPR in circumstances
7   such as this?
8   A. Once.
9   Q. When?
10  A. Received about four hours of training at
11  the academy in 1997.
12  Q. No follow-up training?
13  A. No.
14  Q. Had anyone ever instructed you that in
15  order to do CPR, the handcuffs had to be removed
16  from the suspect so that his arms were not behind
17  his back?
18  A. No. What I was instructed is that his
19  back and shoulders must be flat on the ground in
20  order to do chest -- chest compressions correctly.
21  And I believed at that time they were.
22  Q. What has to be flat on the ground?
23  A. His back -- his back and shoulders.
24  Q. Now, when the fire rescue unit arrived --

Page 17

1   well, let me ask you, where were they from?
2   A. I don't know what fire unit responded.
3   Q. Okay. In any event, when they arrived,
4   one of the first things that you and Officer Hasse
5   were told to do was to remove the handcuffs from Mr.
6   Owensby, correct?
7   A. That's correct.
8   Q. Let me ask you, when did you first realize
9   that Roger Owensby was injured?
10  A. What -- what kind of injury are we talking
11  about?
12  Q. Any injury that requires some medical
13  attention.
14  A. Medical assistance. Okay. When Sergeant
15  Watts and I approached the cruiser afterwards to get
16  information from Mr. Owensby, Sergeant Watts opened
17  the cruiser door and made a statement to the effect
18  of, Pat, I don't think he's breathing.
19      And that's when I looked in, and he was in
20  a real awkward position at that point. And I looked
21  up, saw Officer Hasse standing on the other side of
22  the Golf Manor cruiser at that point. And realizing
23  that he's EMT trained, I said, "Have you got any
24  rubber gloves?"

244

| | |
|---|---|
| 17:00:39 | 1 |
| 17:00:39 | 2 |
| 17:00:39 | 3 |
| 17:00:39 | 4 |
| 17:00:39 | 5 |
| 17:00:39 | 6 |
| 17:00:40 | 7 |
| 17:00:42 | 8 |
| 17:00:42 | 9 |
| 17:00:49 | 10 |
| 17:00:51 | 11 |
| 17:00:52 | 12 |
| 17:00:52 | 13 |
| 17:00:52 | 14 |
| 17:00:52 | 15 |
| 17:00:52 | 16 |
| 17:00:52 | 17 |
| | 18 |
| | 19 |
| | 20 |
| | 21 |
| | 22 |
| | 23 |
| | 24 |

MR. HARDIN: Caton.

VIDEOGRAPHER: Sorry. Mr. Caton, you have a right to review this videotape deposition prior to its being shown to a court or jury. Will you waive that right?

THE WITNESS: No.

VIDEOGRAPHER: We're off the record. The time showing is 5:04 p.m.

MR. MARTINS: I take it you also want signature on the deposition?

MR. HARDIN: Yes. Yes.

*[signature]*
PATRICK EDMUND CATON

- - -

(Deposition concluded.)

- - -