UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ESTATE OF                               :
ROGER D. OWENSBY JR.,                   :
                                        :
                                        :    Case No. 01-CV-769
            Plaintiff,                  :
                                        :    Senior Judge S. Arthur Spiegel
v.                                      :
                                        :
CITY OF CINCINNATI, et al.,             :
                                        :
                                        :
            Defendants.                 :
                                        :

**PLAINTIFF'S REPLY IN SUPPORT OF
CROSS MOTION FOR SUMMARY JUDGMENT AGAINST
DEFENDANT OFFICER JASON HODGE (Doc. 197)**

Defendant Cincinnati Police Officer Jason Hodge seeks to avoid summary judgment by attempting to redefine the standard of care already established by this Court. Because Officer Hodge violated Roger Owensby's well-established constitutional right to medical care while in the custody of the police, summary judgment should be entered against him in the same fashion as summary judgment has already been entered against his co-defendant officers, chiefs of police and municipalities.

**I.      STANDARD OF CARE CONSTITUTIONALLY OWED**

Defendant Officer Hodge seeks to avoid summary judgment by attempting to redefine the standard of care owed Mr. Owensby on the evening of November 2, 2000. According to Officer Hodge, he is not liable for failing to provide medical care to Mr. Owensby because he "was unaware of Roger Owensby [sic] need for <u>immediate</u> medical care." Doc. 198, Defendant

Hodge's Memo Contra Motion for Summary Judgment, p. 2 (emphasis in original). Importantly, Officer Hodge does not say that he was unaware that Mr. Owensby needed medical care. The evidence is undisputed that he did know that Mr. Owensby needed medical care. Rather, he attempts to avoid his constitutional duty by saying that he was unaware that Mr. Owensby needed "immediate" medical care. Officer Hodge misstates his constitutional duty to provide medical care to Mr. Owensby.

This Court has defined the relevant standard of care for this case as "deliberate indifference." Doc. 156, Order, p. 44-45; *Estate of Roger Owensby v. City of Cincinnati*, 2004 U.S. Dist. LEXIS 9444, *60-62 (S.D. Ohio May 19, 2004). Officer Hodge admits that this means that "the defendant must both 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Doc. 198, p. 2, quoting *Farmer v. Brennan*, 511 U.S. 824, 834 (1994). It is not necessary, however to demonstrate that Officer Hodge had a conscious intent to inflict pain. Doc. 156, Order, p. 45; *Estate of Roger Owensby*, 2004 U.S. Dist. LEXIS 9444, *62 *citing*, *Horn by Parks v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (noting that willful blindness to risks may suffice). Further, establishing that the officer actually drew the required inference may be demonstrated through circumstantial evidence or by showing that the risk was "obvious." *Id.* citing *Farmer*, 511 U.S. at 842. Here, the risk was both obvious and is established by the admitted circumstantial evidence at the scene.

Thus, the mere protestation of Officer Hodge at his deposition that he did not think that Mr. Owensby needed immediate medical care cannot save him from liability. As established by the evidence of record, Officer Hodge knew that Mr. Owensby was in need of medical care and

- 2 -

consciously choose not to provide or seek that care.  The fact that he felt that Mr. Owensby's

need for medical care was not "immediate" is irrelevant.

## II.    FACTS ESTABLISH THAT OFFICER HODGE VIOLATED MR. OWENSBY'S CONSTITUTIONAL RIGHT TO MEDICAL CARE

In opposing summary judgment, Officer Hodge argues that the individual fact that Mr.

Owensby remained silent while being physically struck by five police officers as he lay bleeding

on the ground "proves nothing."  Doc. 198 at 3.  Although acknowledging that sweating can be a

sign of physical distress, Officer Hodge likewise asserts that the individual fact that Mr.

Owensby was sweating "proves nothing."[1]  *Id.* at 4.  Officer Hodge also asserts that it is

"irrelevant" that he saw Mr. Owensby's feet moving in short, choppy steps like a severely

intoxicated person even though he smelled no alcohol on him.  Finally, Officer Hodge argues that

seeing blood on Mr. Owensby's face did not alert him to a "substantial risk of serious bodily

harm."  *Id.* at 3.

Defendant's argument is based upon the segregation and examination of each of these

facts individually in a vacuum.  However, the events require that they be viewed collectively,

since Officer Hodge was aware of all of these facts as Mr. Owensby was picked up off of the

ground and placed in the Golf Manor cruiser.

The undisputed admitted evidence is that Officer Hodge knew that the 5' 8" Roger

---

[1]Officer Hodge attempts to explain Mr. Owensby's perfuse sweating by saying that he "ran from three police officer and actively resisted arrest."  Doc. 198, p. 4.  Such an argument fails in light of the fact that it is undisputed that Mr. Owensby took no more than 5 to 7 steps before being tackled into a parked car by Officer Jorg (around the shoulders) and Officer Caton (at the back of the legs).  Doc. 88, Plaintiff's Motion for Summary Judgment,  Jorg 10/14/03 Depo., pp. 107:1-10, 115:1-7; Caton 10/17/03 Depo., pp. 96:6 - 99:14, 101:18-20.  Further, while on the asphalt, Mr. Owensby lay face down with his arms under him.  He was not "actively resisting arrest."  Doc. 88 at 7-9.

Owensby:

> (1) had just been subjected to physical force by five Cincinnati Police officers, including Officer Hodge;
>
> (2) was bleeding from the face;
>
> (3) produced enough blood on Officer Jorg's sleeve that Officer Hodge was concerned that it should be immediately cut off to avoid blood contamination;
>
> (4) was silent despite having five officers exert force upon him;
>
> (5) was sweating (which Officer Hodge acknowledges may be a sign of physical distress); **and**,
>
> (6) took short, choppy steps as he was taken by the arms to the Golf Manor cruiser "like if you notice somebody really intoxicated" even though Officer Hodge testified that he did not smell any alcohol on Mr. Owensby.

Doc. 197, Plaintiff's Cross Motion for Summary Judgment Against Officer Hodge, pp. 6-8.

These facts, all admitted to by Officer Hodge, establish that he was aware that a substantial risk of serious harm existed. Further, a collective viewing of all of these facts establish that it was obvious that there existed a substantial risk of serious harm to Mr. Owensby as he was handcuffed, picked up off of the asphalt, taken to the Golf Manor cruiser, and left unattended in the cruiser.

The evidence is undisputed that Officer Hodge was experienced in CPR and first aid, based on his police training as well as his training as a Military Police sergeant. Doc. 197, p. 13 *citing* Hodge Depo., pp. 60:18 - 64:13. Despite Officer Hodge's subjective knowledge of Mr. Owensby's condition, he admits that he never checked on Mr. Owensby. Doc. 197 at 8-9 *citing* Hodge Depo., pp. 62:21 - 63:3; 80:15-20; 113:3 - 114:21. He also admits that he knew that no one else checked on Mr. Owensby as he lay handcuffed in the Golf Manor cruiser. *Id. citing*

- 4 -

Hodge Depo., pp. 62:21 - 63:3; 64:21 - 65:2.  Instead, Officer Hodge talked to the manager of the

convenience store and purchased a pack of cigarettes and a soda.  *Id.* at 8 *citing* Hodge Depo., pp.

65:10-13; 88:14 - 89:2; 107:20 - 108:7.  This is deliberate indifference to a known risk of

substantial medical harm in violation of Mr. Owensby's constitutional right to medical care while

in police custody.

Defendant seeks to create an issue of fact as to whether Officer Hodge talked to the

convenience store manager and bought his cigarettes and a soda before or after Mr. Owensby was

found not breathing in the back of the Golf Manor cruiser by directing us to the store surveillance

tape and the police cruiser video of the scene.  Doc. 198, p. 4.  Officer Hodge was quite clear on

this point at his deposition.

> Q.  Do you recall anyone going over to check on Mr. Owensby between the time
> that he was taken to the car and the time that you saw Officer Caton and Officer
> Hasse attempting to administer CPR to him?
>
> A.  I didn't see anybody walk over to the car, no.
>
> Q.  In that period of time, between when Mr. Owensby was placed in the cruiser
> and the time that you saw Officer Hasse and Officer Caton administering CPR, as
> I understand your testimony, you went over to talk to the manager of the Sunoco
> station to get his identification; is that right?
>
> A.  Yes.
>
> Q.  Do you recall doing anything else in that period of time?
>
> A.  I bought a pack of cigarettes out of the -- out of the store.

Doc. 197, Hodge Depo., pp. 64:21 - 65:13.

This testimony is also consistent with Officer Hodge's testimony provided just two weeks

after Mr. Owensby's death, on November 20, 2000.  At that time, in a statement to Cincinnati

Homicide detectives, Officer Hodge said:

> ...Uhm short choppy steps like, like if you notice somebody really intoxicated walking to to any direction and they kinda shuffle their feet a little bit. Uh I walked away from the car at that time to look for my partner uh Officer Lawson. Uh I didn't see where he was at. So I was kinda milling around there for a second. Uh I noticed uh they were trying to put him into the vehicle. I walked towards the vehicle. I was probably about fifteen feet away from the vehicle on the uh the passenger side. Uhm I saw somebody trying to, trying to push him in the vehicle and then I couldn't tell who that was. Uhm I saw Caton on the drivers side. He, he had opened the rear pass-, the the rear uh drivers side door, and then just leaned down and I couldn't see him any more. Uhm I walked away again. Uhm walked over to the uh, to the store manager at the Sunoco and uh started getting his information as a, as a witness to the, to the whole thing. Uhm a short time later, somebody had walked by the car and said, "I don't think he's breathing." I don't know who that was. Uhm Sergeant Browner said, "Take him outta the car."

Exhibit 156, Hodge 11/20/00 Statement, p. 6.

Moreover, Officer Hodge cites to the mobile video from Officer Spellen's cruiser, saying, "the MVR tape shows that Officer Hodge is not out of view of the camera for more than thirty seconds." Doc. 198, p. 4. This is incorrect. Officer Spellen's police cruiser video (Exhibit 20 to Doc. 88, Plaintiff's Motion for Summary Judgment) starts with Mr. Owensby already in the Golf Manor cruiser for an indeterminate period of time. Officer Hodge does not appear in the Spellen video until minute 1:07. Thereafter, he is out of the camera's view for another 50 seconds. As a result, Officer Hodge is absent from the view of the police cruiser camera for almost 2 of the five minutes that is recorded.

Regardless of whether Officer Hodge purchased his cigarettes and soda while the man he helped arrest lay dying in the back of the Golf Manor cruiser, the cruiser video tape establishes one uncontroverted fact—during the entire recorded five minutes, as Mr. Owensby lay unattended, unconscious, bleeding and dying, there was no emergency, no pressing circumstance

that would have prevented Officer Hodge from checking on the medical condition of Mr.

Owensby.  Despite knowing that Mr. Owensby (1) had just been subject to physical force by five

police officers, (2) was bleeding from his face, (3) made no sound, (4) was sweating, (5) took

short choppy steps like a severely intoxicated person (even though he detected no alcohol on

him) as he was taken to the cruiser, and (6) had to be pushed and pulled into the back seat of the

cruiser by two officers, Officer Hodge, like the other defendants who have already been found

liable, simply chose to ignore the person he had helped place in custody.  Officer Hodge never

provided or sought medical care for Mr. Owensby and knew that no one else did either.  All of

this constitutes deliberate indifference in violation of Mr. Owensby's constitutional right to

medical care—a violation that cost Mr. Owensby his life.

## III.    OFFICER HODGE IS NOT ENTITLED TO QUALIFIED IMMUNITY

Relying on the same mistaken standard, defendant argues that Officer Hodge is entitled to

qualified immunity because he "was not aware that Owensby needed immediate medical care."

Doc. 198, p. 5.  As explained in Plaintiff's underlying motion for summary judgment, this Court

has already held that the Fourteenth Amendment right to medical care while in custody was

clearly established as of Mr. Owensby's November 7, 2000.  Doc. 197, p. 13, citing Doc. 156,

Order, p. 59-61; *Estate of Roger Owensby*, 2004 U.S. Dist. LEXIS 9444, *79-81.

Therefore, the only remaining qualified immunity inquiry is whether Officer Hodge's

conduct violated this constitutional right to medical care.  As established above, Officer Hodge

admits that he knew that Mr. Owensby was in need of medical care.  He contends that he was

unaware of whether Mr. Owensby was in need of "immediate" medical care.  This is not his call

to make.  The constitutional duty is to provide medical care when the officer knows that medical

care is needed—not to diagnose or triage medical needs into immediate and non-immediate categories.

All Officer Hodge had to do to fulfill his constitutional duty to Mr. Owensby was to check on him.  He admits that he knew Mr. Owensby was bleeding.  He admits that he knew that Mr. Owensby was moving like he was severely intoxicated, although he did not detect any alcohol on him.  He admits that he knew that he and four other officers had just used physical force on Mr. Owensby.  He admits that he knew that Mr. Owensby made no sound.  All he had to do was check on Mr. Owensby given these obvious facts.  Had he done so, he would have discovered that Mr. Owensby was not breathing and his CPR and first aid training as a police officer and a Military Police sergeant would have told him that Mr. Owensby was, indeed, in need of "immediate" medical attention.  Instead, he did nothing as Mr. Owensby died of the asphyxiation resulting from the physical force used in the arrest.

Officer Hodge violated Mr. Owensby's constitutional right to medical care.  He is not entitled to qualified immunity.

## IV.    OFFICER HODGE IS COLLATERALLY ESTOPPED FROM DENYING THAT HE WAS AWARE OF, AND IGNORED, MR. OWENSBY'S NEED FOR MEDICAL ATTENTION

Plaintiff established in his motion for summary judgment that Officer Hodge was collaterally estopped from denying that he was aware of, and ignored, Mr. Owensby's need for medical care based upon the findings of the City of Cincinnati's disciplinary proceedings against him.  Doc. 197, pp. 13-14.  Specifically, the City found that "Officer Hodge was aware Mr. Owensby was injured" and "failed to tend to or seek medical aid for Mr. Owensby's injuries." *Id. citing* Exhibit 163, Pre-Disciplinary Hearing Summary, Specification I, pp. 3-4.  The City also

- 8 -

found that "Officer Hodge observed an injury to Mr. Owensby and rendered no appropriate first

aid immediately once the scene was stabilized." *Id. citing* Exhibit 163, Pre-Disciplinary Hearing

Summary, Specification II, pp. 3-4.

When a police officer is subjected to discipline, he or she is collaterally estopped from

denying that the conduct which gave rise to the discipline occurred and is "precluded from

relitigating [those issues] in this action." *Greene v. Distelhorst*, 1997 U.S. App. LEXIS 15461 at

*10-11 (6th Cir. 1991); *Czajkowski v. City of Chicago*, 810 F Supp. 1428, 1434 (N.D. III. 1993)

(officer estopped from contesting facts of assault on citizen where disciplined and convicted

therefor); *Wilson v. Chicago*, 900 F. Supp. 1015, 1027 (N.D. III. 1995) (police officers

collaterally estopped from denying use of excessive force where disciplinary proceedings resulted

in findings of excessive force).

In response, Officer Hodge maintains that he is not estopped because, on administrative

appeal to a peer review panel, his discipline was reduced.  Doc. 198, p. 5.  Officer Hodge

maintains that the peer review panel found that he "did not have knowledge of the need for aid

and that he did not have primary responsibility to ensure aid was rendered." *Id*.  This is not

completely accurate.  The peer review panel did not exonerate Officer Hodge.  Instead, the panel

reduced his discipline because:

> P.O. Jason Hodge did not have <u>primary</u> responsibility to insure that aid was
> rendered to Mr. Owensby @ the time of the arrest.  P.O. Hodge was not the
> <u>primary</u> officer on the scene and did not have the <u>full knowledge</u> of the initiated
> necessity of aid.

*Id*. at Exhibit B (emphasis supplied).

Thus, contrary to defendant's assertion, the panel did not find that Officer Hodge "did not

have knowledge of the need for aid." Rather, the panel found that he did not have "full knowledge" because he arrived after Mr. Owensby had been tackled to the asphalt, maced, and knelt upon. Likewise, the panel did not excuse Officer Hodge from his responsibility to provide medical care to Mr. Owensby. Instead, the panel simply reduced his discipline because he was not the "primary officer" having "primary responsibility" for providing Mr. Owensby with medical care. These factors are in the nature of sentence mitigation. They do not excuse the misconduct. And, for purposes of collateral estoppel, they do not allow Officer Hodge to now deny that he was aware of, and ignored, Mr. Owensby's need for medical care—the factual predicates for Officer Hodge's constitutional liability in this action.

## V.    CONCLUSION

Officer Hodge acted with deliberate indifference to Mr. Owensby's medical condition based upon his admitted subjective knowledge of Mr. Owensby's condition. He admits as much in his opposition memorandum by stating that he was unaware of Mr. Owensby's need for "immediate" medical care. This is not the constitutional standard. Rather, Officer Hodge is liable for the violation of Mr. Owensby's Fourteenth Amendment right to medical care because he knew that Mr. Owensby was in police custody, he knew that Mr. Owensby was injured, and, despite this knowledge of obvious injury, he ignored Mr. Owensby and failed to provide any medical care or to even check on his condition. This is awareness of "facts from which the inference could be drawn that a substantial risk of serious harm exists," establishing Officer Hodge's Fourteenth Amendment liability for failing to provide medical care to Mr. Owensby.

Officer Hodge is also estopped from denying that he was aware of Mr. Owensby's need for medical attention and ignored that need based upon the Cincinnati Police administrative

disciplinary proceedings. As a result, Plaintiff is entitled to summary judgment against Officer

Hodge for the violation of Mr. Owensby's constitutional right to medical care based upon the

same standards used to determine the liability of the other defendants in this action.

Therefore, Plaintiff's cross motion for summary judgment against Officer Hodge for his

violation of Mr. Owensby's constitutional right to medical care should be granted.


Respectfully submitted,


/s/Paul B. Martins

| | |
|---|---|
| | James B. Helmer, Jr. (0002878) |
| Mark T. Tillar (0029898) | Paul B. Martins (0007623) |
| 105 E. Main Street, Ste. 202 | Frederick M. Morgan, Jr. (0027687) |
| Mason, Ohio 45040 | HELMER, MARTINS & MORGAN CO., LPA |
| Telephone: (513) 770-0264 | Fourth & Walnut Centre, Suite 1900 |
| | 105 East Fourth Street |
| John J. Helbling (0046727) | Cincinnati, Ohio 45202-4008 |
| 105 E. Main Street, Ste. 202 | Telephone:   (513) 421-2400 |
| Mason, Ohio 45040 | Facsimile:   (513) 421-7902 |
| Telephone: (513) 770-0322 | |

*Trial Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Plaintiff's Reply In Support Of Cross Motion for Summary Judgment Against Officer Jason Hodge (doc. 197) was electronically filed on October 28, 2004.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Paul B. Martins