IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **ESTATE OF ROGER D. OWENSBY** | : | **CASE NO. C-1-01-769** |
| Plaintiff, | : | (Judge S. Arthur Spiegel) |
| vs. | : | |
| **CITY OF CINCINNATI, et al.** | : | **JOINT MOTION OF DEFENDANTS TO RE-OPEN THE TRIAL DEPOSITION OF CYRIL WECHT, M.D.** |
| Defendants. | : | |

Defendants, by and through counsel, hereby move this Court to re-open the trial deposition of Cyril H. Wecht, M.D., one of Plaintiff's expert witnesses. The reason the Defendants must be permitted to re-open Dr. Wecht's deposition is that an important, if not the most important, question the jury will answer in this case is whether the acts or omissions of City police officers caused the death of Roger Owensby, Jr., and the jury will not be able to provide the correct answer to that question if Defendants are not permitted to re-open Dr. Wecht's deposition.

When Plaintiff decided that it would not call Dr. Wecht as a live witness at trial and instead use his deposition testimony Defendants did not object because they had no legitimate reason to do so. However, the circumstances have significantly and materially changed since Dr. Wecht's deposition was taken, and it is necessary for the trial deposition to be re-opened. First, since his trial deposition was taken a federal grand jury has issued an 84-count indictment against Dr. Wecht for fraud, wire fraud, theft in public office, and theft from private clients. (A copy of the indictment is attached hereto as Ex. "A.") As a result of the indictment Dr. Wecht has been forced to resign his position as the medical examiner of Allegheny County, Pennsylvania, he may be forced to resign other positions, and he may have his licenses and memberships to many organizations suspended. Second, since Dr. Wecht's trial deposition was taken, Defendants has learned of recent

medical/forensic experimental studies that they believe conclusively disprove Dr. Wecht's opinion that Roger D. Owensby, Jr. died of mechanical or positional asphyxia.

Before the jury is permitted to hear Dr. Wecht's opinions this Court must perform its role as a "gatekeeper" to determine if Dr. Wecht is qualified to render those opinions and, if he is, whether the opinions are based on reliable medical and forensic principles. That cannot be done unless Dr. Wecht's deposition is re-opened and Defendants are given the opportunity to question Dr. Wecht in full about the above topics. Further, even if this Court determines that Dr. Wecht should be permitted to testify, Defendants are entitled to cross-examine Dr. Wecht about the above topics because they are directly relevant to his honesty, integrity, credibility and reputation. With respect to Dr. Wecht's credibility, it is essential that Defendants be able to fully explore whether Dr. Wecht, whose private consulting business generated more than $8.75 million in gross income between 1997 and 2004, has in essence been a "hired gun" who will render the opinion *he* concludes the client wants to hear if the client is willing to pay the price. To prevent Defendants from presenting this evidence at trial will be grossly unfair and prejudicial to them and permit the jury to make a determination on what may be the most important issue in this case based on incomplete, inaccurate and misleading information.

Respectfully submitted,

CRABBE, BROWN & JAMES LLP

s/Larry H. James
Larry H. James (0021773)
500 South Front Street, Suite 1200
Columbus, Ohio 43215
(614) 229-4567 - telephone
(614) 229-4559 - facsimile
ljames@cbjlawyers.com
Lead Trial Attorney For Defendants City of Cincinnati And All Current And Former Employees Of City of Cincinnati In Their Official Capacities Only

s/Brian E. Hurley
Brian E. Hurley (0007827)
Robert J. Gehring (0019329)
30 Garfield Place, Suite 740
Cincinnati, Ohio 45202
(513) 784-1525 - telephone
(513) 784-1250 - facsimile
bhurley@cbjlawyers.com
rgehring@cbjlawyers.com
Co-Counsel For Defendants City of Cincinnati And All Current And Former Employees Of City of Cincinnati In Their Official Capacities

s/Donald E. Hardin
Donald E. Hardin (0022095)
Hardin, Lefton, Lazarus & Marks
915 Cincinnati Club Building
30 Garfield Place
Cincinnati, Ohio 45202
(513) 721-7300 - telephone
(513) 721-7008 - facsimile
donhardin@hllmlaw.com
Special Counsel for Defendants Robert Blaine Jorg, Patrick Caton, Darren Sellers, Jason Hodge, and Victor Spellen

## MEMORANDUM

A.   **STATEMENT OF RELEVANT FACTS**

   1.   **Dr. Wecht Between 1997 and 2004**

From 1997 to 2004 Dr. Wecht was supposed to be serving as the Coroner of Allegheny County, Pennsylvania. However, during those years and unbeknownst to his government employer and private clients[1] Dr. Wecht was devoting 100% of his time to his private consulting practice,[2] which grossed over $8.75 million in income. In addition, according to the recent 84-count indictment issued against him, Dr. Wecht secretly and criminally misused his government office to help operate his private consulting practice.

   2.   **The Retention Of Dr. Wecht By The OMI**

In 2002 Dr. Wecht was the Coroner for Allegheny County, Pennsylvania, and he had a national reputation for his work and experience in forensic pathology. Based on that reputation, the OMI hired Dr. Wecht to provide what it thought would be his independent opinion as to whether Mr. Owensby died by mechanical or positional asphyxiation. When the OMI hired Dr. Wecht it, of course, was not aware of the serious issues about Dr. Wecht's honesty and integrity. More important, the OMI was not aware of what now is so painfully obvious - i.e. Dr. Wecht's opinions are not credible because they appear to have been made available to whomever had the financial ability to pay for them and were designed to be what *Dr. Wecht* concluded the client wanted to hear. In short, there are now strong reasons to believe that Dr. Wecht's opinions are anything but independent and accurate.

---

[1] One of those clients was the City's Office of Municipal Investigation ("OMI").

[2] This is based on representations Dr. Wecht made to the Internal Revenue Service.

1

### 3. **Dr. Wecht's Trial Deposition**

On February 24, 2004, Plaintiffs took the trial deposition of Dr. Wecht. During the deposition Plaintiff's counsel elicited information from Dr. Wecht that was used exclusively for the purpose of qualifying him to render the opinions Dr. Wecht was to give in this case. (That information is found on pages 6-19 of the deposition transcript and the curriculum vitae attached to the deposition as Exhibit 1.) Those qualifications included:

1. his then current position as the Coroner of Allegheny County, Pennsylvania;

2. his then current positions as a forensic pathology consultant to five other Pennsylvania county coroner's offices;

3. his then current medical licensures with three states and the National Board of Medical Examiners;

4. his then current position as a forensic pathology consultant and lecturer to the C.I.A., Medical Division;

5. his then current position as a pathology consultant to two Pennsylvania hospitals;

6. his then current teaching appointments at nine universities;

7. his then current membership in eleven medical societies and organizations, three legal societies, and thirteen medical-legal societies;

8. his then current position on three professional, advisory boards; and

9. his then current sixteen editorial positions.

Indeed, after questioning Dr. Wecht about these qualifications, Plaintiff's counsel asked the following question of Defendants' counsel:

> **Do you want to do any *voir dire* before I move to the opinion stage [of the deposition]?**

Wecht dep., p. 20. Of course, because he had not yet been indicted, Defendants could not have questioned Dr. Wecht on the effect the indictment has or will have on his then current positions, appointments, licenses and memberships. As such, Defendants could not fully question Dr. Wecht

2

about the very qualifications and reputation upon which Plaintiffs have explicitly relied to qualify Dr. Wecht as an expert.

Subsequent to Dr. Wecht's deposition, Defendants also became aware of recent scientific/medical experimental studies and findings that they believe conclusively establish that Mr. Owensby did not, as Dr. Wecht opines, die as a result of mechanical or positional asphyxia.[3] More specifically, Defendants have learned that:

1. there is not one experimental study in the literature that shows that blood oxygen levels go down when police restraint maneuvers are used;

2. there is not one experimental study in the literature that shows that breathing is impaired to a degree that problems with blood oxygenation would be anticipated when weight is placed on the back; and

3. there is not one experimental study in the literature that shows upward pressure on the diaphraym interferes with the oxygenation of the blood.

As such, there is not a single experimental study in the literature that supports Dr. Wecht's opinion in this case that Mr. Owensby died of mechanical asphyxia. To the contrary, the experimental studies have shown that, under the circumstances of this case, Mr. Owensby died from sudden cardiac death. Nowhere in Dr. Wecht's deposition does he even state that, let alone explain why, his opinions should be admitted in evidence when they are in direct conflict with conclusive and reliable medical and forensic principles.

**5.    The Indictment**

On January 20, 2006, a federal grand jury issued an 84-count indictment against Dr. Wecht in which Dr. Wecht is charged with mail fraud, wire fraud, theft in public office and theft from his private clients. Those charges are based, in part, on the following allegations:

---

[3]Defendants' medical experts will explain in full the significance of these studies and findings when providing their opinions that Mr. Owensby died of sudden cardiac death, not mechanical asphyxia.

3

      1.     Dr. Wecht routinely used county resources, including office equipment, vehicles and employees, to conduct his private business.[4]

      2.     Dr. Wecht overbilled his private clients.

      3.     Dr. Wecht traded unclaimed bodies at his county office for use of lab space at a local university.

Shortly after the indictment Dr. Wecht resigned his position as the Medical Examiner of Allegheny County. Further, the indictment may require certain of Dr. Wecht's licenses and memberships in organizations to be suspended and Dr. Wecht to resign certain of his positions. In short, Dr. Wecht may already be, or may soon be, stripped of the very qualifications Plaintiff relied upon in its attempt to qualify him as an expert witness.

**B.    DR. WECHT'S DEPOSITION MUST BE RE-OPENED FOR THIS COURT TO PROPERLY FULFILL ITS ROLE AS "GATEKEEPER" AND ENABLE DEFENDANTS TO PRESENT EVIDENCE DIRECTLY RELATED TO DR. WECHT'S HONESTY, INTEGRITY, CREDIBILITY AND REPUTATION.**

    **1.    This Court's Role As "Gatekeeper"**

Fed. R. Ev. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

To be certain that juries do not make their decisions based on opinions rendered by persons who are not qualified to render those opinions or which are the product of bad science, the United States Supreme Court has made clear that trial courts must properly fulfill their roles of "gatekeepers."

---

[4] Indeed, the indictment refers to illegal conduct by Dr. Wecht in his communications with lawyers. (*See* Indictment, p. 22 Ex. "A.") That means that Dr. Wecht's conduct in connection with his engagement by OMI and Plaintiff could be subjects of the indictment.

4

*Daubert v. Merrell Dow Pharms. Inc.* (1993), 509 U.S. 579, 125 L.Ed.2d 469, 113 S. Ct. 2786;

*Kuhmo Tire Co. v. Carmichael* (1998), 526 U.S. 137, 119 S.Ct. 1167 at 1176, 143 L.Ed2d 238.

      Dr. Wecht's deposition must be re-opened so that this Court has the information necessary to determine whether the 84-count indictment and the facts supporting the indictment will result in a finding that Dr. Wecht lacks the qualifications to be an expert witness in this case. The City acknowledges that in February, 2004 it chose not to conduct a *voir dire* examination of Dr. Wecht. However, circumstances have obviously and dramatically changed since February, 2004. Dr. Wecht may not now have, or he soon may not have, the qualifications upon which Plaintiff relied when his deposition was taken. These new circumstances are very significant, and they provide Defendants with the right to conduct a *voir dire* examination of Dr. Wecht to provide this Court with the information it needs to determine what qualifications he now claims to have and whether they are sufficient to qualify him as an expert witness. Defendants respectfully submit that, without this information, this Court is not able to make the most basic determination required by Rule 702 and *Daubert*: Is Dr. Wecht qualified to render his opinions?

      To fulfill its role as the "gatekeeper" this Court must also have the information necessary to determine if Dr. Wecht's opinions are based on bad science.

> . . . The objective of [the gatekeeper] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

*Kuhmo, supra*, at 1176. In short, this Court must have the information Defendants now seek from Dr. Wecht because it ". . . *must* determine whether [Dr. Wecht's] testimony has 'reliable basis in the knowledge and experience of the [relevant] discipline.'" *Id*. at 1175. More specifically, it is now known that Dr. Wecht's opinions directly conflict with the recent medical/forensic experimental

5

studies concerning sudden deaths that occur in restraint associated situations. Further, there is not a single study in the literature that supports Dr. Wecht's opinion that Mr. Owensby died of mechanical asphyxia. In short, the real and accepted science and medicine establishes that Mr. Owensby died of sudden cardiac death. Under these circumstances, in order for this Court to fulfill its role as "gatekeeper" it must hear Dr. Wecht's explanations for why his opinions should be admissible when they are in direct conflict with these studies. Without these explanations this Court will not be able to make the determination required by *Daubert* and Rule 702 whether his opinions are based on "reliable principles and methods" and Dr. Wecht "has applied the principles and methods reliably to the facts of [this] case."

### 2. Dr. Wecht's Honesty, Integrity, Credibility And Reputation

Even if this Court determines that Dr. Wecht is qualified and is permitted to testify under Rule 702, the City still has the right to re-open the deposition of Dr. Wecht. Defendants have the right to challenge the credibility and reliability of Dr. Wecht's opinions by questioning him about the above-discussed studies and attempt to convince the jury that his opinions should not be believed because they conflict with those studies. Further, the circumstances that support the 84-count indictment are directly relevant to Dr. Wecht's honesty, integrity and reputation, and Defendants have the right to discover and present evidence to the jury on those topics.

### C. CONCLUSION

This is a significant and highly publicized lawsuit, which involves claims about improper conduct on the part of the City police officers that allegedly caused the death of Mr. Owensby. For that reason, it is important to everyone - the Owensby's, the Police Department and its officers and the community - that the truth be revealed at trial. That will not happen if this Court does not re-open Dr. Wecht's deposition because permitting Plaintiff to use Dr. Wecht's deposition as it

currently exists may result in the jury hearing the opinions of an unqualified person that are based on unreliable medical and forensic principles. At the very least, it will result in the jury making its decision on this critical issue without hearing clearly relevant evidence about Dr. Wecht's honesty, integrity, credibility and reputation. Either will be grossly unfair and prejudicial to Defendants. For these reasons, the motion to re-open Dr. Wecht's deposition should be granted.

Respectfully submitted,

CRABBE, BROWN & JAMES LLP

s/Larry H. James
Larry H. James (0021773)
500 South Front Street, Suite 1200
Columbus, Ohio 43215
(614) 229-4567 - telephone
(614) 229-4559 - facsimile
ljames@cbjlawyers.com
Lead Trial Attorney For Defendants City of Cincinnati And All Current And Former Employees Of City of Cincinnati In Their Official Capacities Only

s/Brian E. Hurley
Brian E. Hurley (0007827)
Robert J. Gehring (0019329)
30 Garfield Place, Suite 740
Cincinnati, Ohio 45202
(513) 784-1525 - telephone
(513) 784-1250 - facsimile
bhurley@cbjlawyers.com
rgehring@cbjlawyers.com
Co-Counsel For Defendants City of Cincinnati And All Current And Former Employees Of City of Cincinnati In Their Official Capacities

      s/Donald E. Hardin
Donald E. Hardin (0022095)
Hardin, Lefton, Lazarus & Marks
915 Cincinnati Club Building
30 Garfield Place
Cincinnati, Ohio 45202
(513) 721-7300 - telephone
(513) 721-7008 - facsimile
donhardin@hllmlaw.com
Special Counsel for Defendants Robert Blaine Jorg,
Patrick Caton, Darren Sellers, Jason Hodge, and
Victor Spellen

CERTIFICATE OF SERVICE

    This will certify that a copy of the forgoing was served upon counsel of record by electronic mail this 21st day of February 2006.

      s/Brian E. Hurley
Brian E. Hurley

275311

8