IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. |
| | ) | (18 U.S.C. §§ 666(a)(1)(A), |
| v. | ) | 1341, 1343, 1346, and 2) |
| | ) | |
| CYRIL H. WECHT | ) | |
| | ) | |

## INDICTMENT

The grand jury charges:

### GENERAL ALLEGATIONS

1.    During each of the years from 1996 through 2005, Allegheny County, Pennsylvania, was an organization of local government that received federal assistance in excess of $10,000.00.

2.    During the years 1996 through 2000, Allegheny County was organized and governed by the provisions of the Second Class County Code, Act of July 28, 1953, P.L. 723, as amended, 16 P.S. §§ 3101-5106-A (hereinafter the "Second Class County Code"). The Second Class County Code provided that Allegheny County voters would periodically elect a Coroner of Allegheny County (hereinafter the "Coroner"). The Coroner was one of several elected county officials referred to as Row Officers. The Coroner managed the personnel and resources of the Allegheny County Coroner's Office and received funding for the operations of the Allegheny County Coroner's Office from Allegheny County and federal grants.

3.    In May of 1998, Allegheny County voters approved by referendum the adoption of the Allegheny County Home Rule Charter (hereinafter the "Home Rule Charter"). The Home Rule Charter went into effect on January 1, 2000, and stated in its preamble that a "home rule government that holds its officers and employees to high standards of conduct and behavior will enhance public trust in County government."

4.    From 2000 through 2005, pursuant to the adoption of the Home Rule Charter, Allegheny County was organized and governed by the provisions of an administrative code promulgated pursuant to the Home Rule Charter (hereinafter the "Administrative Code.") The Coroner was bound by the Administrative Code.

### Fiduciary and Ethical Duties of the Coroner

5.    From 1996 through 2000, the Second Class County Code required the Coroner to comply with ethics and reporting requirements set forth in 65 Pa.C.S.A. § 1101.1 et seq. (hereinafter the "Pennsylvania State Ethics Code"). In addition, the employment policy promulgated by the Allegheny County Coroner's Office in 2000 provided that all employees of the Allegheny County Coroner's Office were subject to the Pennsylvania State Ethics Code.

6.    Sections 1102 and 1103(a) of the Pennsylvania State Ethics Code prohibited the Coroner from using the authority of his

2

office, or any confidential information received through his holding public office, for his private pecuniary benefit. In addition, Section 1103(d) prohibited the Coroner from accepting any honorarium.

7.    The Second Class County Code provided, at 16 P.S. § 4235, that the Coroner could conduct autopsies and other professional services for other counties, but required that any fees collected from other counties for such services be accounted for and paid to the Allegheny County Treasurer.

8.    From 2000 through 2005, Section 601.01 of the Administrative Code required that all Independently Elected Officials (including the Coroner) devote a full-time effort to the duties of their offices.

9.    From 2000 through 2005, Section 601.04 of the Administrative Code required that all Independently Elected Officials (including the Coroner) abide by the accountability, conduct and ethics code set forth under the Administrative Code, which, *inter alia*, prohibited the Coroner from using county resources for any non-County purpose or for his private financial gain, and required the Coroner to file annual financial disclosure forms.

3

10.  At all times material to this indictment, 16 P.S. §
4233 required the Coroner to exercise the following duties with
respect to unclaimed bodies:

> Whenever the body of any deceased person who
> is unidentified, or which body is unclaimed by
> proper persons, has been found within the
> county, it shall be removed to the county
> morgue. The coroner shall, if he deems it
> necessary, cause any such body to be properly
> embalmed or prepared for preservation for such
> length of time as he may think proper. Any
> such body shall be examined or inspected only
> by such persons as the coroner authorizes in
> writing or who are admitted in his presence.
> No such body shall be removed from any such
> morgue except upon the certificate of the
> coroner.

11.  At all times material to this indictment, 16 P.S. §
4237 permitted the Coroner to perform an autopsy or order an
autopsy on bodies under the jurisdiction of the Allegheny County
Coroner's Office only if the Coroner was unable, upon
investigation, to determine the cause and manner of death.

### The Defendant

12.  From 1970 through 1980, and again from 1996 through
2005, defendant CYRIL H. WECHT was the Coroner of Allegheny County.
As the Coroner, he was responsible for managing the operations of
the Allegheny County Coroner's Office.

13.  At all times material to the indictment, defendant
CYRIL  H.  WECHT  was  prohibited  by  state  and  local  ethics

4

requirements from using Allegheny County's resources for his private financial gain.

14. For the years 2001 through 2004, defendant CYRIL H. WECHT was required by his state and local ethical duties to file truthful annual financial disclosure forms.

15. Defendant CYRIL H. WECHT failed to timely file any financial disclosure forms for the years 2001, 2002, and 2003. On or about February 15, 2005, days after local newspapers reported that authorities had "launched a criminal investigation of county Coroner Dr. Cyril H. Wecht for possible violations of state and federal law," defendant CYRIL H. WECHT filed financial disclosure forms for years 2001, 2002, and 2003 for the first time.

16. On or about June 21, 2000, the defendant, CYRIL H. WECHT, filed a declaratory judgment action seeking to declare that the ethics provisions of the Administrative Code did not apply to him as Coroner. On or about December 21, 2001, the Pennsylvania courts ruled that the ethics provisions of the Administrative Code did in fact apply to defendant CYRIL H. WECHT as the Coroner of Allegheny County.

### The Defendant's Private Business

17. At all times material to the indictment, Cyril H. Wecht and Pathology Associates, Inc. (hereinafter "Wecht Pathology") was a domestic professional for-profit corporation

5

registered with the Pennsylvania Department of State and located in Pittsburgh within the Western District of Pennsylvania.

18. At all times material to the indictment, the defendant CYRIL H. WECHT was the sole owner and principal officer of Wecht Pathology.

19. At all times material to the indictment, defendant CYRIL H. WECHT used an outside accounting firm to assist with certain financial matters, including preparation of Wecht Pathology's income tax returns and assistance with management of a pension plan.

20. From 1997 through 2004, while defendant CYRIL H. WECHT was the elected Coroner, Wecht Pathology generated over $8.75 million in gross income:

a)    in 1997, Wecht Pathology reportedly received over $1,042,955.09 in gross receipts;

b)    in 1998, Wecht Pathology reportedly received $1,059,426 in gross receipts;

c)    in 1999, Wecht Pathology reportedly received $922,438.00 in gross receipts;

d)    in 2000, Wecht Pathology reportedly received $1,090,039.00 in gross receipts;

e)    in 2001, Wecht Pathology reportedly received $1,074,629.00 in gross receipts;

6

f)    in 2002, Wecht Pathology reportedly received $1,114,236.00 in gross receipts;

g)    in 2003, Wecht Pathology reportedly received $1,245,414.00 in gross receipts;

h)    in 2004, Wecht Pathology reportedly received $1,202,204.00 in gross receipts.

21.   From 1997 through 2004, while defendant CYRIL H. WECHT was the elected Coroner, Wecht Pathology paid defendant CYRIL H. WECHT over $4.65 million in officer compensation:

a)    in 1997, Wecht Pathology reportedly paid approximately $500,000 in officer compensation payments to defendant CYRIL WECHT;

b)    in 1998, Wecht Pathology reportedly paid approximately $600,000 in officer compensation payments to defendant CYRIL WECHT;

c)    in 1999, Wecht Pathology reportedly paid approximately $540,000.00 in officer compensation payments to defendant CYRIL WECHT;

d)    in 2000, Wecht Pathology reportedly paid approximately $623,527.00 in officer compensation payments to defendant CYRIL WECHT;

7

e)    in  2001,  Wecht  Pathology  reportedly  paid approximately  $550,000.00  in  officer  compensation  payments  to defendant CYRIL WECHT;

f)    in  2002,  Wecht  Pathology  reportedly  paid approximately  $620,000.00  in  officer  compensation  payments  to defendant CYRIL WECHT;

g)    in  2003,  Wecht  Pathology  reportedly  paid approximately  $664,000.00  in  officer  compensation  payments  to defendant CYRIL WECHT;

h)    in  2004,  Wecht  Pathology  reportedly  paid approximately  $555,000.00  in  officer  compensation  payments  to defendant CYRIL WECHT.

22.   Defendant CYRIL H. WECHT represented to the Internal Revenue Service that from 1998 through 2004, 100% of his time was devoted to the business of Wecht Pathology.

23.   Defendant CYRIL H. WECHT engaged in private income-generating business through Wecht Pathology, including:

a)    providing  medical-legal  forensic  pathology opinions, consultations, and expert testimony for private attorneys engaged in civil and criminal litigation in locations throughout the United States and in foreign countries;

b)    providing  medical-legal  forensic  pathology opinions, consultations, and expert testimony for public entities

8

such as legal-aid organizations, district attorney's offices,
public defender's offices, and others engaged in civil and criminal
litigation;

        c)    conducting autopsies for counties in Western
Pennsylvania, including Armstrong, Clarion, Fayette, Greene,
Indiana, and Westmoreland (but not for Allegheny County);

        d)    conducting autopsies for other clients;

        e)    speaking at private and public events for
honoraria;

        f)    authoring publications for royalties; and

        g)    performing in shows at entertainment venues.

<u>COUNTS ONE THROUGH TWENTY-FOUR</u>
<u>THEFT OF HONEST SERVICES - WIRE FRAUD</u>

The Grand Jury further charges that:

24.    Paragraphs    one    through    twenty-three    of    this
Indictment    are    re-alleged    and    incorporated    fully    herein    by
reference.

25.    From in and around 1996, and continuing thereafter
to in and around 2005, in the Western District of Pennsylvania, the
defendant, CYRIL H. WECHT, devised and intended to devise a scheme
to defraud, for obtaining money and property, and for depriving
another of the intangible right of honest services, by means of
breaching his fiduciary and ethical duties as Coroner of Allegheny
County    and    making    false    and    fraudulent    pretenses    and
representations, well knowing at the time that he was breaching his
fiduciary    and    ethical    duties    and    that    the    pretenses    and
representations were false and fraudulent when made.

<u>Purpose of the Scheme</u>

26.    It was the purpose of the scheme, among other
things, to (a) obtain money, property, services and other things of
value; (b) violate the fiduciary and ethical duties of defendant
CYRIL H. WECHT as Coroner of Allegheny County to Allegheny County
and its citizens; and (c) deprive Allegheny County and its citizens
of the intangible right to the honest services of defendant CYRIL

10

H. WECHT as Coroner of Allegheny County and other employees of the Allegheny County Coroner's Office.

## The Scheme

27.    It was part of the scheme that, from 1996 through 2005, the defendant, CYRIL H. WECHT, used the position, authority, and resources of the Allegheny County Coroner's Office to assist with Wecht Pathology's business activities and thus generate income for Wecht Pathology and himself:

a)    Allegheny County Coroner's Office employees were instructed to spend substantial portions of their time while on duty at the Allegheny County Coroner's Office working on private matters to assist with Wecht Pathology's business activities;

b)    defendant CYRIL H. WECHT operated a substantial portion of his private consulting business using secretarial, computer, telephone, facsimile, and other general office resources of the Allegheny County Coroner's Office;

c)    Wecht Pathology's billing, bookkeeping, client intake, consultation, investigation, research, correspondence, dictation, courier services, scheduling, and other private business activities were conducted at and by the Allegheny County Coroner's Office using Allegheny County Coroner's Office personnel, resources, space, and time;

d)    defendant CYRIL H. WECHT personally examined slide tissues and prepared private consulting reports for Wecht

12

Pathology's private "black lung" cases while at the Allegheny County Coroner's Office;

e)    defendant CYRIL H. WECHT caused human brain tissues to be examined and stored at the Allegheny County Coroner's Office for use in private cases for his private financial gain;

f)    defendant CYRIL H. WECHT caused on-duty Deputy Coroners to provide courier and transportation services for his private financial gain and in detriment to Allegheny County Coroner's Office business;

g)    defendant CYRIL H. WECHT's transportation to and from Pittsburgh International Airport for private business trips was routinely provided by on-duty Deputy Coroners using county-owned vehicles, yet he billed his clients an "airport limousine charge" in connection with these private business trips; Allegheny County paid for the gas and maintenance on the county-owned vehicle used for these trips; nevertheless, defendant CYRIL H. WECHT did not remit the proceeds of his fraudulent "airport limousine charges" to Allegheny County, but retained the proceeds for his own benefit;

h)    from in and around June 2003 through in and around December 2005, defendant CYRIL H. WECHT caused Allegheny County cadavers to be provided to Carlow College for use by

13

students to perform autopsies in cases where autopsies were not permitted by 16 P.S. § 4237;

i)    from in and around June 2003 through in and around December 2005, defendant CYRIL H. WECHT caused Allegheny County cadavers to be provided to Carlow College pursuant to an agreement whereby in exchange for those cadavers and other consideration, he obtained the use of a laboratory at Carlow College at which he could engage in his private work;

j)    Deputy Coroners were specifically instructed to refer any calls concerning private autopsies to J.M., Wecht Pathology's autopsy technician;

k)    vehicles owned by and maintained at the expense of Allegheny County were used extensively to assist with Wecht Pathology's business activities;

l)    defendant CYRIL H. WECHT did not pay Allegheny County the proceeds earned through his private business, and did not reimburse Allegheny County for the value of the resources he used.

28.    It was further part of the scheme that when defendant CYRIL H. WECHT traveled for private business, he routinely sought and obtained reimbursement for the costs of his travel from his clients; he routinely asked his clients to make the expense reimbursement checks payable to him personally; he

14

routinely asked that the fee checks be made payable to his business; and he routinely cashed the expense reimbursement checks without depositing the proceeds in his Wecht Pathology account or reporting the reimbursement in the Wecht Pathology books and records.   In this manner, he retained the expense reimbursement proceeds for his use as "pocket money," and the expense reimbursement proceeds were concealed from Wecht Pathology's books and records, and thus were also concealed from Wecht Pathology's accountants.

29.   It was further part of the scheme that defendant CYRIL H. WECHT routinely submitted false expense reimbursement invoices to his clients.  He directed that fake travel agency bills and fake limousine receipts be created to support fraudulent and inflated expense invoices.  The travel agency bills were in the name of a defunct travel agency, and they were submitted as support for fraudulently inflated airfare amounts.  Defendant submitted the fake limousine receipts to his clients in cases where Deputy Coroners employed by Allegheny County actually provided his transportation in vehicles owned by Allegheny County.  The checks defendant CYRIL H. WECHT received as a result of these fake and fraudulent billings were cashed in the manner described in paragraph 28 above, and thereby concealed from Wecht Pathology's

15

books and records, and thus were also concealed from Wecht Pathology's accountants.

30. It was further part of the scheme that from 1996 through 2005, the defendant, CYRIL H. WECHT, used the position, authority, and resources of the Allegheny County Coroner's Office for the personal and political benefit of himself and his family:

a) Allegheny County Coroner's Office employees were instructed to perform numerous personal errands for defendant CYRIL H. WECHT while on county time, including dog-walking, picking up personal mail, purchasing sporting goods such as tennis balls and nostril swimming plugs, and hauling away rubbish;

b) Allegheny County Coroner's Office employees on county time were instructed to drive defendant CYRIL H. WECHT and members of his family to Pittsburgh International Airport for travel unrelated to Allegheny County Coroner's Office business, including family vacations;

c) Allegheny County Coroner's Office employees on county time were instructed to drive defendant, CYRIL H. WECHT, and members of his family to events and locations unrelated to Allegheny County Coroner's Office business, such as media appearances, theater shows, sporting events, political functions, and other destinations;

d)    Defendant CYRIL H. WECHT caused on-duty employees of the Allegheny County Coroner's Office to participate in campaign efforts for his 2000 campaign for the office of Chief Executive of Allegheny County;

e)    Defendant CYRIL H. WECHT caused on-duty employees of the Allegheny County Coroner's Office to participate in his son's efforts to win political offices;

f)    Defendant CYRIL H. WECHT used and caused to be used Allegheny County resources, including secretarial time, paper, computers, printers, and facsimile machines, to be used to organize political fund-raising activities, solicit financial support for his and his son's campaigns, and berate perceived political critics of him and his son;

g)    Defendant CYRIL H. WECHT used and caused to be used Allegheny County secretarial and stationary resources to prepare and mail letters berating opponents of his political endeavors, including a June 15, 2000, letter to Mr. K.H.S. of Pittsburgh, Pennsylvania, on Allegheny County Coroner's Office letterhead typed by K.M., an Allegheny County Coroner's Office employee.

31.    It was further part of the scheme that defendant CYRIL H. WECHT used county-owned vehicles to drive outside of

17

Allegheny County to perform pathology and consulting work in surrounding counties for his private financial gain.

32. It was further part of the scheme that defendant CYRIL H. WECHT billed surrounding counties for whom he did private work a mileage charge on trips where he actually used county-owned vehicles for the travel. Allegheny County paid for the gas and maintenance on the county-owned vehicles he used for these trips.

33. It was further part of the scheme that defendant CYRIL H. WECHT did not remit the said mileage reimbursements to Allegheny County, but rather retained the payments for his private financial gain.

34. It was further part of the scheme that defendant CYRIL H. WECHT made false public statements to conceal his use of the position, authority, and resources of the Allegheny County Coroner's Office for his own financial benefit, including the following false statements made on the television program "Night Talk" on or about February 17, 2005:

> Never brought in one single specimen; never requested one single test. I'm saying this now on T.V. with the Chief of Police here: not one urine specimen; not one piece of tissue; nothing from any of these cases. They're all handled privately at Carlow University -- my own autopsy technician, my own secretary doing the typing
>
> * * *
>
> Nothing comes to the lab.

18

\* \* \*

Do you understand that not one single thing is
done in the Allegheny County Coroner's Office
pertaining to any of my private work? ... What
more can I say?

## The Wire Communications

35.  On or about the dates set forth below, in the Western District of Pennsylvania and elsewhere, the defendant, CYRIL H. WECHT, for the purpose of executing and attempting to execute the scheme to defraud, did transmit and cause to be transmitted from the Allegheny County Coroner's Office, 542 4th Avenue, Pittsburgh, Pennsylvania, in interstate and foreign commerce, by means of certain writings, signs and signals described below as "material," each such use of the interstate wires being a separate count of this Indictment:

| Count | Date | Recipient | Material |
|-------|------|-----------|----------|
| 1 | February 12, 2002 | K.C., Annandale, New Jersey | Facsimile of invoice for expenses for a paid speaking engagement |
| 2 | April 29, 2002 | D.J.G., Esq., Frankfort, Kentucky | Facsimile of fee schedule for private services re B.P.D., deceased |
| 3 | June 3, 2002 | A.R.S., Esq., Akron, Ohio | Facsimile of invoices for private services re D.H., deceased |
| 4 | November 21, 2002 | J.B., Springfield, Missouri | Facsimile of executed contract for paid teaching engagement |
| 5 | May 22, 2003 | Chubb Insurance, New Jersey | Facsimile of invoice for private services re J.W. |
| 6 | June 26, 2003 | Office of the County Auditor, El Paso, Texas | Facsimile of W-9 Tax Form for use in connection with |

20

| | | | private services re C.C., deceased |
|---|---|---|---|
| 7 | September 3, 2003 | K.L.B., Esq., Cleveland, Ohio | Facsimile of invoice for private services re George T.,deceased |
| 8 | September 3, 2003 | F.E.H., Esq., Miami, Florida | Facsimile of invoice for private services re *G. v. Mt. Sinai Medical Center* |
| 9 | September 3, 2003 | D.W., Esq., Denver, Colorado | Facsimile of invoice for private services re V.L.L., deceased |
| 10 | September 23, 2003 | A.S., Esq., Canton, Ohio | Facsimile of invoice for private services re J.T., deceased |
| 11 | September 2003 | Mississippi Attorney General's Office, Public Integrity Division | Facsimile of invoice for private services re C.T.B., deceased |
| 12 | October 1, 2003 | R.M.S., Esq., Ithaca, New York | Facsimile of invoice for private services re M.R.W., deceased |
| 13 | October 24, 2003 | V.W., Dayton, Ohio | Facsimile of invoice for private services re K.S., deceased |
| 14 | October 24, 2003 | D.B.C, M.D., J.D., Omaha, Nebraska | Facsimile of invoice for private services re C.T. |
| 15 | October 24, 2003 | H.C.L., Ph.D., Branford, Connecticut | Facsimile of invoice and request for payment for private services re *State of Arizona v. T.S.* |
| 16 | January 15, 2004 | Public Defender for the District of Columbia, Washington, D.C. | Facsimile of invoice for private services re F.B. |

| 17 | January 22, 2004 | E.A., Esq., Lakeport, California | Facsimile of invoice for private services re C.A.D. |
|----|------------------|----------------------------------|------------------------------------------------------|
| 18 | May 19, 2004 | S.D.C, Esq., Los Angeles California | Facsimile of invoice for private services re C.-F.Y., deceased |
| 19 | June 4, 2004 | D.E.B.,Esq., Reserve, Louisiana | Facsimile of invoice for private services re W.M.A., deceased |
| 20 | June 10, 2004 | J.F.G., Esq., Akron, Ohio | Facsimile of fee schedule and curriculum vitae for private services re "court-appointed homicide case" |
| 21 | July 14, 2004 | T.M.E., Esq., Cincinnati, Ohio | Facsimile of invoice for private services re R.M., deceased |
| 22 | July 14, 2004 | J.G., Esq., Cincinnati, Ohio | Facsimile of invoice for private services re R.M., deceased |
| 23 | August 24, 2004 | Office of the Federal Public Defender, Nashville, Tennessee | Facsimile of invoice for private services re P.W. |
| 24 | February 7, 2005 | J.F.L., Bluefield, West Virginia | Facsimile of invoice for private services re K.J., deceased |

In violation of Title 18, United States Code, Sections 1343, 1346, and 2.

22

COUNTS TWENTY-FIVE THROUGH THIRTY-TWO
THEFT OF HONEST SERVICES - MAIL FRAUD

The Grand Jury further charges that:

36. Paragraphs one through twenty-three of this Indictment are re-alleged and incorporated fully herein by reference.

37. From in and around 1996, and continuing thereafter to in and around 2005, in the Western District of Pennsylvania, the defendant, CYRIL H. WECHT, devised and intended to devise a scheme to defraud, for obtaining money and property, and for depriving another of the intangible right of honest services, by means of breaching his fiduciary and ethical duties as Coroner of Allegheny County and making false and fraudulent pretenses and representations, well knowing at the time that he was breaching his fiduciary and ethical duties and that the pretenses and representations were false and fraudulent when made.

### Purpose of the Scheme

38. It was the purpose of the scheme, among other things, to (a) obtain money, property, services and other things of value; (b) violate the fiduciary and ethical duties of defendant CYRIL H. WECHT as Coroner of Allegheny County to Allegheny County and its citizens; and (c) deprive Allegheny County and its citizens of the intangible right to the honest services of defendant CYRIL

23

H. WECHT as Coroner of Allegheny County and other employees of the Allegheny County Coroner's Office.

### The Scheme

39.    Paragraphs twenty-seven through thirty-four of this Indictment are re-alleged and incorporated fully herein by reference as the description of the scheme to defraud.

### The Mailings

40.    On or about the dates set forth below, in the Western District of Pennsylvania, the defendant, CYRIL H. WECHT, for the purpose of executing and attempting to execute the scheme to defraud, did knowingly cause to be delivered by United States mail, according to the directions thereon, mail matter identified below, addressed to the addressees identified below, each such use of the United States mail being a separate count of this Indictment:

| Count | Date | Addressee | Mail Matter |
|-------|------|-----------|-------------|
| 25 | January 29, 2003 | M.C.G., Esq., Pittsburgh, Pennsylvania | Package of Microscopic Autopsy Tissue Slides re S.E.D., deceased |
| 26 | June, 2003 | S.O.R., Esq., Pittsburgh, Pennsylvania | Package of Microscopic Autopsy Tissue Slides re R.B., deceased |
| 27 | July, 2003 | S.B.E., Esq., Pittsburgh, Pennsylvania | Package of Microscopic Autopsy Tissue Slides re G.B., deceased |
|  |  |  |  |

| 28 | October, 2003 | D.J.R., Esq., Washington, Pennsylvania | Package of Microscopic Autopsy Tissue Slides in "black lung" case re E.J.H., deceased |
|----|---------------|----------------------------------------|---------------------------------------------------------------------------------------|
| 29 | May, 2004 | E.H.B., Esq., Pittsburgh, Pennsylvania | Package of Microscopic Autopsy Tissue Slides re R.R., deceased |
| 30 | June 10, 2004 | E.K., Esq., Pittsburgh, Pennsylvania | Package of Microscopic Autopsy Tissue Slides in "black lung" case re E.L., deceased |
| 31 | June, 2004 | L.B., MCS, Pittsburgh, Pennsylvania | Package of Microscopic Autopsy Tissue Slides re L.S., deceased |
| 32 | June 25, 2004 | L.J.P., Pittsburgh, Pennsylvania | Package of Microscopic Autopsy Tissue Slides in "black lung" case re T.J.B., deceased |

In violation of Title 18, United States Code, Section 1341, 1346, and 2.

26

COUNTS THIRTY-THREE THROUGH FORTY-TWO
WIRE FRAUD

The Grand Jury further charges that:

41.    Paragraphs one through twenty-three and twenty-seven through thirty-four of this Indictment are re-alleged and incorporated fully herein by reference.

## Purpose of the Scheme

42.    From on or about January 1, 1996, and continuing thereafter to on or about December 31, 2005, in the Western District of Pennsylvania and elsewhere, the defendant, CYRIL H. WECHT, devised and intended to devise a scheme to defraud and for obtaining money by means of false and fraudulent pretenses, representations and promises, well knowing at the time that the pretenses, representations and promises were false and fraudulent when made.

## The Scheme

43.    It was part of the scheme to defraud that defendant, CYRIL H. WECHT, caused fake and fraudulent expense reimbursement invoices to be prepared for his clients.

44.    It was a further part of the scheme to defraud that defendant CYRIL H. WECHT charged his clients for "limousine service" expenses to and from Pittsburgh International Airport when in truth and in fact defendant CYRIL H. Wecht had traveled to and from Pittsburgh International Airport in vehicles owned by

27

Allegheny County with the assistance of Deputy Coroners employed by the Allegheny County Coroner's Office.

45. It was a further part of the scheme to defraud that defendant CYRIL H. WECHT caused fake and fraudulent receipts to be created to support his "limousine service" expense charges when in truth and in fact defendant CYRIL H. WECHT had traveled to and from Pittsburgh International Airport in vehicles owned by Allegheny County with the assistance of Deputy Coroners employed by the Allegheny County Coroner's Office.

46. It was a further part of the scheme to defraud that defendant CYRIL H. WECHT charged some clients for airfare expenses significantly in excess of the amounts he actually paid for such airfares.

47. It was a further part of the scheme to defraud that defendant CYRIL H. WECHT caused fake and fraudulent travel agency bills to be created to support his charges to his clients for airfares significantly in excess of the amounts he actually paid for such airfares.

48. It was a further part of the scheme to defraud that defendant CYRIL H. WECHT caused the false expense reimbursement invoices, fake limousine bills, and fake travel agency bills to be transmitted from facsimile machines at the Allegheny County Coroner's Office to his clients in other states.

28

49. It was further a part of the scheme to defraud that defendant, CYRIL H. WECHT, directed his clients to make checks for his fee payments payable to his business, but asked his clients to pay the fraudulent expense reimbursements with a separate check payable to "Cyril H. Wecht M.D., J.D.".

50. It was further a part of the scheme to defraud that defendant, CYRIL H. WECHT, concealed his fraud from the books and records of Wecht Pathology and from Wecht Pathology's accountants by causing expense reimbursement checks to be cashed at a bank, rather than deposited into his corporate account.

51. It was further a part of the scheme to defraud that defendant, CYRIL H. WECHT, gave false testimony about his expenses under oath at depositions to conceal his fraud.

### The Wire Communications

52. On or about the dates set forth below, in the Western District of Pennsylvania and elsewhere, the defendant, CYRIL H. WECHT, for the purpose of executing and attempting to execute the scheme to defraud, did transmit and cause to be transmitted from the Allegheny County Coroner's Office, 542 4th Avenue, Pittsburgh, Pennsylvania, in interstate and foreign commerce, by means of certain writings, signs and signals described below as "material," each such use of the interstate wires being a separate count of this Indictment:

29

| Count | Date | Recipient | Material |
|-------|------|-----------|----------|
| 33 | February 12, 2002 | K.C., Esq., Annandale, New Jersey | Facsimile of False Expense Reimbursement Invoice, Fake Travel Agency Bill, and Fake Limousine Receipt |
| 34 | June 3, 2002 | A.R.S., Esq., Akron, Ohio | Facsimile of False Expense Reimbursement Invoice and Fake Travel Agency Bill |
| 35 | June 11, 2002 | E.A.B., Esq., Royal Oak, Michigan | Facsimile of False Expense Reimbursement Invoice |
| 36 | October 7, 2002 | E.E.H., Esq., Raleigh, North Carolina | Facsimile of Fake Limousine Receipt |
| 37 | August 21, 2003 | M.J.G., Esq., Los Angeles, California | Facsimile of False Expense Reimbursement Invoice |
| 38 | September 10, 2003 | M.S., Esq., Miami, Florida | Facsimile of False Expense Reimbursement Invoice |
| 39 | March 23, 2004 | J.H., Esq., Roseland, New Jersey | Facsimile of False Expense Reimbursement Invoice |
| 40 | April 20, 2004 | P.S.C., Santa Ana, California | Facsimile of False Expense Reimbursement Invoice |
| 41 | April 1, 2004 | J.E., Esq., Cherry Hill, New Jersey | Facsimile of False Expense Reimbursement |

| | | | Invoice |
|---|---|---|---|
| 42 | March 9, 2005 | D.E.B., Esq., Reserve, Louisiana | Facsimile of False Expense Reimbursement Invoice |

In violation of Title 18, United States Code, Sections 1343 and 2.

31

<u>COUNTS FORTY-THREE THROUGH SEVENTY-NINE</u>
<u>MAIL FRAUD</u>

The Grand Jury further charges that:

53.   Paragraphs one through twenty-three and twenty-seven through thirty-four of this Indictment are re-alleged and incorporated fully herein by reference.

### Purpose of the Scheme

54.   From on or about January 1, 1996, and continuing thereafter to on or about December 31, 2005, in the Western District of Pennsylvania and elsewhere, the defendant, CYRIL H. WECHT, devised and intended to devise a scheme to defraud and for obtaining money by means of false and fraudulent pretenses, representations and promises, well knowing at the time that the pretenses, representations and promises were false and fraudulent when made.

### The Scheme

55.   It was part of the scheme to defraud that defendant, CYRIL H. WECHT, caused fake and fraudulent mileage reimbursement invoices to be prepared and sent to counties in Western Pennsylvania, including Armstrong, Fayette, Greene, and Westmoreland Counties, in connection with his private autopsy and consulting services.

56.   It was further part of the scheme that defendant CYRIL H. WECHT billed surrounding counties a mileage charge on

32

trips where he actually used vehicles owned by Allegheny County for the travel. Allegheny County paid for the gas and maintenance on the county-owned vehicle he used for these trips. Defendant CYRIL H. WECHT did not reimburse Allegheny County for these mileage expenses.

57. It was a further part of the scheme to defraud that defendant CYRIL H. WECHT caused the false mileage reimbursement invoices to be mailed to Armstrong, Fayette, Greene, and Westmoreland Counties.

58. It was a further part of the scheme to defraud that defendant CYRIL H. WECHT requested that the counties mail to him separate checks in payment of the false mileage reimbursement invoices.

59. It was further part of the scheme to defraud that defendant CYRIL H. WECHT instructed K.M., an Allegheny County Coroner's Office employee, to type and send a 2003 letter to a police officer in Greensburg, Pennsylvania, who had issued a parking ticket to the county-owned vehicle driven by the defendant while he testified for personal profit.

## The Mailings

60.  On or about the dates set forth below, in the Western District of Pennsylvania, the defendant, CYRIL H. WECHT for the purpose of executing and attempting to execute the scheme to defraud, did knowingly cause to be delivered by United States mail, according to the directions thereon, mail matter identified below, addressed to the addressees identified below, each such use of the United States mail being a separate count of this Indictment:

| Count | Date | Addressee | Mail Matter |
|-------|------|-----------|-------------|
| 43 | January 23, 2001 | Westmoreland County District Attorney's Office, Greensburg, Pennsylvania | Invoice with false mileage reimbursement expense re P.L.R., deceased |
| 44 | February 8, 2001 | Westmoreland County District Attorney's Office, Greensburg, Pennsylvania | Invoice with additional false mileage reimbursement expense re P.L.R., deceased |
| 45 | February 8, 2001 | Westmoreland County District Attorney's Office, Greensburg, Pennsylvania | Invoice with false mileage reimbursement expense re K.A.T., deceased |
| 46 | March 12, 2001 | Armstrong County District Attorney's Office, Kittanning, Pennsylvania | Invoice with false mileage reimbursement expense re J.W.H., deceased |
| | | Armstrong County | Invoice with |

34

| 47 | May 10, 2001 | District Attorney's Office, Kittanning, Pennsylvania | false mileage reimbursement expense re J.L.D., deceased |
|----|--------------|----------------------------------------------------------|----------------------------------------------------------|
| 48 | June 7, 2001 | Fayette County District Attorney's Office, Uniontown, Pennsylvania | Invoice with false mileage reimbursement expense re G.L.D., deceased |
| 49 | June 11, 2001 | Westmoreland County District Attorney's Office, Greensburg, Pennsylvania | Invoice with false mileage reimbursement expense re L.M.S., deceased |
| 50 | July 11, 2001 | Fayette County District Attorney's Office, Uniontown, Pennsylvania | Invoice with false mileage reimbursement expense re M.E.K., deceased |
| 51 | July 13, 2001 | Fayette County District Attorney's Office, Uniontown, Pennsylvania | Invoice with false mileage reimbursement expense re E.J.P. and K.M.P., deceased |
| 52 | October 3, 2001 | Westmoreland County District Attorney's Office, Greensburg, Pennsylvania | Invoice with false mileage reimbursement expense re L.J.G., deceased |
| 53 | October 12, 2001 | Fayette County District Attorney's Office, Uniontown, Pennsylvania | Invoice with false mileage reimbursement expense re R.D.C., deceased |

| 54 | November 9, 2001 | Westmoreland County District Attorney's Office, Greensburg, Pennsylvania | Invoice with false mileage reimbursement expense re K.M.G., deceased |
|---|---|---|---|
| 55 | December 6, 2001 | Westmoreland County District Attorney's Office, Greensburg, Pennsylvania | Invoice with false mileage reimbursement expense re D.G.J., deceased |
| 56 | January 10, 2002 | Fayette County District Attorney's Office, Uniontown, Pennsylvania | Invoice with false mileage reimbursement expense re W.F.S., deceased |
| 57 | February 5, 2002 | Fayette County District Attorney's Office, Uniontown, Pennsylvania | Invoice with false mileage reimbursement expense re S.S., deceased |
| 58 | April 3, 2002 | Fayette County District Attorney's Office, Uniontown, Pennsylvania | Invoice with false mileage reimbursement expense re L.M.C., deceased |
| 59 | April 3, 2002 | Fayette County District Attorney's Office, Uniontown, Pennsylvania | Invoice with false mileage reimbursement expense re E.P. and K.P., deceased |
| 60 | May 8, 2002 | Fayette County District Attorney's Office, Uniontown, | Invoice with false mileage reimbursement expense re |

| | | Pennsylvania | G.L.T., deceased |
|---|---|---|---|
| 61 | May 22, 2002 | Westmoreland County District Attorney's Office, Greensburg, Pennsylvania | Invoice with false mileage reimbursement expense re K.J.N., deceased |
| 62 | July 18, 2002 | Westmoreland County Coroner's Office, Greensburg, Pennsylvania | Invoice with false mileage reimbursement expense re A.G.W., deceased |
| 63 | October 2, 2002 | Westmoreland County Coroner's Office, Greensburg, Pennsylvania | Invoice with false mileage reimbursement expense re C.R., deceased |
| 64 | October 31, 2002 | Westmoreland County District Attorney's Office, Greensburg, Pennsylvania | Invoice with false mileage reimbursement expense re T.M.G., deceased |
| 65 | November 7, 2002 | Fayette County District Attorney's Office, Uniontown, Pennsylvania | Invoice with false mileage reimbursement expense re Z.J., deceased |
| 66 | January 27, 2003 | Fayette County District Attorney's Office, Uniontown, Pennsylvania | Invoice with false mileage reimbursement expense re M.E., deceased |
| 67 | March 11, 2003 | Fayette County District Attorney's Office, Uniontown, | Invoice with false mileage reimbursement expense re C.D.S., deceased |

| | | Pennsylvania | |
|---|---|---|---|
| 68 | April 8, 2003 | Fayette County District Attorney's Office, Uniontown, Pennsylvania | Invoice with false mileage reimbursement expense re C.K., deceased |
| 69 | July 9, 2003 | Fayette County District Attorney's Office, Uniontown, Pennsylvania | Invoice with false mileage reimbursement expense re T.L.T., deceased |
| 70 | July 24, 2003 | Greene County District Attorney's Office, Waynesburg, Pennsylvania | Invoice with false mileage reimbursement expense re D.E.C., deceased |
| 71 | September 22, 2003 | Greene County District Attorney's Office, Waynesburg, Pennsylvania | Invoice with false mileage reimbursement expense re D.M.M., deceased |
| 72 | November 11, 2003 | Fayette County District Attorney's Office, Uniontown, Pennsylvania | Invoice with false mileage reimbursement expense re J.L., deceased |
| 73 | March 1, 2004 | Fayette County District Attorney's Office, Uniontown, Pennsylvania | Invoice with false mileage reimbursement expense re H.E.P., deceased |
| 74 | April 22, 2004 | Fayette County District Attorney's | Invoice with false mileage reimbursement |

38

| | | Office, Uniontown, Pennsylvania | expense re J.M.K., deceased |
|---|---|---|---|
| 75 | May 11, 2004 | Fayette County District Attorney's Office, Uniontown, Pennsylvania | Invoice with false mileage reimbursement expense re L.A.B. et al.., |
| 76 | October 4, 2004 | Fayette County Coroner's Office, Uniontown, Pennsylvania | Invoice with false mileage reimbursement expense re K.R.S., deceased |
| 77 | November 3, 2004 | Fayette County District Attorney's Office, Uniontown, Pennsylvania | Invoice with false mileage reimbursement expense re J.L. and D.M., deceased |
| 78 | November 4, 2004 | Armstrong County District Attorney's Office, Kittanning, Pennsylvania | Invoice with false mileage reimbursement expense re K.T., deceased |
| 79 | June 2, 2005 | Greene County District Attorney's Office, Waynesburg, Pennsylvania | Invoice with false mileage reimbursement expense re E.K.M., deceased |

In violation of Title 18, United States Code, Sections 1341 and 2.

39

COUNT EIGHTY

THEFT CONCERNING ORGANIZATION RECEIVING FEDERAL FUNDS

The grand jury further charges:

61.   Paragraphs one through twenty-three and twenty-seven through thirty-four of this Indictment are re-alleged and incorporated fully herein by reference.

62.   During the calendar year 2001, in the Western District of Pennsylvania and elsewhere, Defendant CYRIL H. WECHT, being an agent of Allegheny County, a local government organization that received benefits in excess of $10,000 during the calendar year 2001 through a variety of federal programs, did knowingly embezzle, steal, obtain by fraud and otherwise without authority convert to his own use property valued at $5,000 or more and owned by or under the care, custody, and control of Allegheny County, specifically the use of personnel, vehicles, facilities, resources, equipment, and space of the Allegheny County Coroner's Office used to conduct his private business activities.

In violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

40

COUNT EIGHTY-ONE

THEFT CONCERNING ORGANIZATION RECEIVING FEDERAL FUNDS

The grand jury further charges:

63. Paragraphs one through twenty-three and twenty-seven through thirty-four of this Indictment are re-alleged and incorporated fully herein by reference.

64. During the calendar year 2002, in the Western District of Pennsylvania and elsewhere, Defendant CYRIL H. WECHT, being an agent of Allegheny County, a local government organization that received benefits in excess of $10,000 during the calendar year 2002 through a variety of federal programs, did knowingly embezzle, steal, obtain by fraud and otherwise without authority convert to his own use property valued at $5,000 or more and owned by or under the care, custody, and control of Allegheny County, specifically the use of personnel, vehicles, facilities, resources, equipment, and space of the Allegheny County Coroner's Office used to conduct his private business activities.

In violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

41

COUNT EIGHTY-TWO

THEFT CONCERNING ORGANIZATION RECEIVING FEDERAL FUNDS

The grand jury further charges:

65.  Paragraphs one through twenty-three and twenty-seven through thirty-four of this Indictment are re-alleged and incorporated fully herein by reference.

66.  During the calendar year 2003, in the Western District of Pennsylvania and elsewhere, Defendant CYRIL H. WECHT, being an agent of Allegheny County, a local government organization that received benefits in excess of $10,000 during the calendar year 2003 through a variety of federal programs, did knowingly embezzle, steal, obtain by fraud and otherwise without authority convert to his own use property valued at $5,000 or more and owned by or under the care, custody, and control of Allegheny County, specifically the use of personnel, vehicles, facilities, resources, equipment, and space of the Allegheny County Coroner's Office used to conduct his private business activities.

In violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

42

COUNT EIGHTY-THREE
THEFT CONCERNING ORGANIZATION RECEIVING FEDERAL FUNDS

The grand jury further charges:

67.    Paragraphs one through twenty-three and twenty-seven through thirty-four of this Indictment are re-alleged and incorporated fully herein by reference.

68.    During the calendar year 2004, in the Western District of Pennsylvania and elsewhere, Defendant CYRIL H. WECHT, being an agent of Allegheny County, a local government organization that received benefits in excess of $10,000 during the calendar year 2004 through a variety of federal programs, did knowingly embezzle, steal, obtain by fraud and otherwise without authority convert to his own use property valued at $5,000 or more and owned by or under the care, custody, and control of Allegheny County, specifically the use of personnel, vehicles, facilities, resources, equipment, and space of the Allegheny County Coroner's Office used to conduct his private business activities.

In violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

COUNT EIGHTY-FOUR

THEFT CONCERNING ORGANIZATION RECEIVING FEDERAL FUNDS

The grand jury further charges:

69.  Paragraphs one through twenty-three and twenty-seven through thirty-four of this Indictment are re-alleged and incorporated fully herein by reference.

70.  During the calendar year 2005, in the Western District of Pennsylvania and elsewhere, Defendant CYRIL H. WECHT, being an agent of Allegheny County, a local government organization that received benefits in excess of $10,000 during the calendar year 2005 through a variety of federal programs, did knowingly embezzle, steal, obtain by fraud and otherwise without authority convert to his own use property valued at $5,000 or more and owned by or under the care, custody, and control of Allegheny County, specifically the use of personnel, vehicles, facilities, resources, equipment, and space of the Allegheny County Coroner's Office used to conduct his private business activities.

In violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

A True Bill,

_____

FOREPERSON

44

MARY BETH BUCHANAN
United States Attorney
PA ID No. 50254