# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

RECEIVED

JUL 2 0 2005

LEONARD GREEN, Clerk

NOS.  04-3724; 04-3725 (Consolidated)

## ESTATE OF ROGER OWENSBY JR.,

### Plaintiff-Appellee

### v.

## CITY OF CINCINNATI, et al.

### Defendants-Appellants

---

## PETITION FOR REHEARING *EN BANC* OF CITY OF CINCINNATI POLICE OFFICERS SELLERS, SPELLEN, HUNTER, JORG, AND CATON

---

Julia L. McNeil (0043535)
City Solicitor
Richard Ganulin (0025642C)
Assistant City Solicitor
Room 214, City Hall
801 Plum Street
Cincinnati, Ohio 45202
(513) 352-3329
(513) 352-1515 FAX
richard.ganulin@cincinnati-oh.gov

Counsel for Defendants-Appellants

James B. Helmer, Jr.
Paul B. Martins
Helmer, Martins, Rice & Popham
Fourth & Walnut Centre, Suite 1900
105 East Fourth Street
Cincinnati, Ohio 45202-4008
(513) 421-2400
(513) 421-7902 FAX

Mark T. Tillar
John J. Helbling
105 East Main Street
Suite 202
Mason, Ohio  45040
(513) 923-9740
(513) 923-9741 FAX

Counsel for Plaintiff-Appellee

Donald E. Hardin (0022095)
Hardin, Lefton, Lazarus & Marks
915 Cincinnati Club Building
30 Garfield Place
Cincinnati, Ohio 45202
(513) 721-7300
(513) 721-7008 FAX
donhardin@hllmlaw.com

Attorney for Defendants-Appellants Robert
Jorg, Patrick Caton, Victor Spellen and
Darren Sellers

Ravert J. Clark (0042027)
114 East Eighth Street
Cincinnati, Ohio 45202
(513) 587-2887
(513) 621-2525 FAX
notguilty14@aol.com

Attorney for Defendant-Appellant
David Hunter

TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................. i

TABLE OF AUTHORITIES .......................................................................... ii

I.     INTRODUCTION ............................................................................. 1

II.    THE PANEL ERRED BY ELIMINATING THE PLAINTIFF'S
       BURDEN OF PROVING THAT EACH CINCINNATI POLICE
       OFFICER WAS NOT ENTITLED TO HIS INEXTRICABLY
       INTERTWINED QUALIFIED IMMUNITY DEFENSE ............................. 3

III.   THE PANEL ERRED BY CONCLUDING THAT THE MERE
       POSSIBILITY OF ACTUAL DELIBERATION BY CINCINNATI
       POLICE OFFICERS WHILE OWENSBY WAS IN THE
       GOLF MANOR POLICE CRUISER JUSTIFIED DISREGARDING
       THE "MALICE AND INTENT TO HARM" SUBSTANTIVE DUE
       PROCESS STANDARD ....................................................................... 6

IV.    THE PANEL ERRED BY CONCLUDING THAT THE PLAINTIFF-
       APPELLEE DID NOT NEED TO PROVE PROXIMATE CAUSE
       AS AN ELEMENT OF ITS CLAIM FOR FAILURE TO PROVIDE
       MEDICAL CARE TO OWENSBY ....................................................... 10

V.     THE PANEL ERRED BY CONCLUDING THAT THE
       CINCINNATI POLICE OFFICERS DEPRIVED OWENSBY OF A
       CONSTITUTIONAL RIGHT TO IMMEDIATE MEDICAL CARE ......... 11

VI.    THE PANEL ERRED BY CONCLUDING THAT OWENSBY'S
       RIGHT TO MEDICAL CARE WAS CLEARLY ESTABLISHED
       IN THE PARTICULARIZED SENSE IN NOVEMBER 2000 ................... 13

VII.   CONCLUSION ................................................................................ 15

CERTIFICATE OF SERVICE .................................................................... 16

# TABLE OF AUTHORITIES

## CASES

*Anderson, et al. v. Liberty Lobby, et al.*, 477 U.S. 242 (1986) ................................. 5

*Blackmore v. Kalamazoo County, et al.*, 390 F.3d 890 (6th Cir. 2004) .............. 9, 10

*Brosseau v. Haugen*, 125 S.Ct. 596 (2004) .............................................................. 13

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) .......................................... 7, 8

*Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756 (2nd Cir. 2003) .................. 4

*Estate of Carter, et al. v. City of Detroit, et al.*, 408 F.3d 305 (6th Cir. 2005) ......... 9

*Garretson v. City of Madison Heights*, 407 F.3d 789 (2005) ............................... 4, 9

*Johnson v. Jones*, 515 U.S. 304 (1995) ................................................................... 3

*Miller v. Calhoun County, et al.*, 408 F.3d 803 (6th Cir. 2005) ............................... 9

*Prison Legal News v. Lehman*, 397 F.3d 692 (9th Cir. 2005) ................................... 4

*Terrell, et al. v. Larson, et al.*, 396 F.3d 975 (8th Cir. 2005) ................................... 7

## I.    **INTRODUCTION**

This proceeding involves one or more questions of exceptional importance to the police officers of the City of Cincinnati, and to the law enforcement officers of every other political subdivision. Each question identified below was erroneously decided by the panel. The panel applied an improper deferential evidentiary standard of review, applied an improper deferential substantive standard of review, significantly broadened the scope of substantive due process claims for failure to provide medical care, and significantly narrowed the availability of the qualified immunity defense to police officers who had only fleeting contact with the "bolting" individual (Roger D. Owensby, Jr.) taken into custody after a short struggle and held in another jurisdiction's vehicle for only minutes.

Even though the district court concluded that there were no genuine issues of material fact concerning the claim filed by the Plaintiff-Appellee ("the estate") that the City of Cincinnati police officers deprived Owensby of his right to medical care during the 5 ½ minutes Owensby was held in a Golf Manor police vehicle, and even though the district court denied the police officers their qualified immunity defense and granted the estate's motion for summary judgment, the panel described and applied the allegations and facts "in a light most favorable to the plaintiff," the party that filed the motion for summary judgment.

1

In fact, however, using what the district court characterized as "uncontestable documentary evidence of the timeframes involved . . . ." (R. 156, Order, p. 11, n. 6, J.A. 60), Police Officer Spellen  arrived on the scene <u>after</u> Owensby was already in a Golf Manor police vehicle guarded by Golf Manor police officers, he only glanced into the back of the dark vehicle and observed that Owensby was experiencing discomfort from the macing that occurred during the struggle to get him handcuffed, and Officer Spellen was out of his own vehicle for only 3 ½ minutes.

Officer Sellers left the scene after Owensby was in custody in order to retrieve his cruiser from adjacent property.  He was only on the scene for part of the 5 ½ minutes Owensby was in the Golf Manor cruiser.  Officer Hunter retrieved his equipment after Owensby was cuffed and placed in the Golf Manor cruiser. The district court concluded that there was "no evidence indicating that Jorg or Caton made any subjective assessment of any risk of serious harm to Owensby." R. 156, Order, p. 51.

The panel stated that it adopted the district court's "detailed and lengthy analysis of the evidence relating to each officer . . . ."  The district court concluded that Owensby's serious medical condition was "cessation of breathing and an arrested heart."  R. 156, Order, p. 46.   Police Officers Spellen, Sellers, Hunter, Jorg, and Caton, however, did not have knowledge that Owensby had the serious medical condition of cessation of breathing and arrested heart during the 5 ½

2

minutes Owensby was in the Golf Manor vehicle.[1]  The Defendants-Appellants do

not dispute that "cessation of breathing and an arrested heart" are a serious medical

condition.  There is no basis, however, to impute knowledge of that serious

medical condition to any of the Defendants-Appellants.  The only medical

conditions for Owensby possibly imputed to any of the police officers were

Owensby's discomfort from macing and his minor facial abrasions, neither

warranting immediate medical care according to the district court and the coroner.

## II.    THE PANEL ERRED BY ELIMINATING THE PLAINTIFF'S BURDEN OF PROVING THAT EACH CINCINNATI POLICE OFFICER WAS NOT ENTITLED TO HIS INEXTRICABLY INTERTWINED QUALIFIED IMMUNITY DEFENSE

The district court concluded that there were no genuine issues of material

fact and, as a matter of law, granted the estate's motion for summary judgment on

its failure to provide medical care claim and denied the Cincinnati police officers

their qualified immunity defense.[2]  The panel erred by eliminating the estate's

burden to prove that the officers were not entitled to qualified immunity from suit.

The panel did not evaluate whether there were genuine issues of material fact that

---

[1] The district court's evidentiary analysis included 18 lines for Officer Spellen (Order, pp. 46-48), 33 lines for Officer Sellers (*id.*, pp. 48-50), 11 lines for Officer Hunter (*id.*, p. 50), and 18 for Officers Jorg and Caton, combined (*id.*, pp. 50-51).
[2] The estate conceded that "the [district] court concluded that by their own accounts of events, several officers were liable . . . ."  Brief of Plaintiff-Appellee, pp. 3-4.  The Supreme Court held that officers are entitled to appeal where a district court denies the qualified immunity defense "on the ground that even under the defendant's version of the facts the defendant's conduct violated clearly established law . . . ." *Johnson v. Jones*, 515 U.S. 304, 312, 318 (1995).

might preclude the granting of summary judgment to the estate. Rather, the panel described the allegations "in a light most favorable" to the estate, the moving party, and summarily affirmed the denial of qualified immunity. The "in a light most favorable" standard applies to review of a denial of qualified immunity raised by a defendant in a motion to dismiss. That standard, however, is overly deferential to a plaintiff when reviewing a denial of qualified immunity considered at the summary judgment stage, particularly when the plaintiff is the party filing for summary judgment. The plaintiff has both the burden of proving its entitlement to summary judgment and the burden of disproving the defendants' entitlement to qualified immunity from suit. *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (2005).

The district court held that as to Officers Spellen, Sellers, and Hunter, there was no genuine issue of material fact and the court denied the officers' qualified immunity defense. When the panel applied the "in a light most favorable" standard, it bypassed its threshhold responsibility to determine whether there was a genuine issue of material fact. It is only when there is a genuine issue of material fact that the "in a light most favorable" standard applies. *Prison Legal News v. Lehman*, 397 F.3d 692, 698 (9th Cir. 2005); *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 761 (2nd Cir. 2003).

The district court's grant of summary judgment to the estate was inextricably intertwined with its denial of the police officers' qualified immunity defense. The

4

district court could not have granted summary judgment to the estate by applying the "in a light most favorable" standard in favor of the moving party, and the panel erred by applying that standard and denying the officers their qualified immunity defense. The panel should have provided a *de novo* review of the district court's ruling that the plaintiff satisfied its burden of proving that the Cincinnati police officers were not entitled to qualified immunity from suit.

Had the panel applied the proper standard of review to the denial of the officers' qualified immunity defense and the related grant of summary judgment to the estate, rather than the "in a light most favorable" standard, it would first have determined whether there were any genuine issues of material fact that precluded the district court's denial of the qualified immunity defense. When ruling on the estate's motion for summary judgment, and the related assertion of the qualified immunity defense by the officers, the district court, and the panel, had to "view the evidence presented through the prism of the substantive evidentiary burden." *Anderson, et al. v. Liberty Lobby, et al.*, 477 U.S. 242, 254 (1986). The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*, p. 255. The estate did not prove all the material facts essential for a grant of summary judgment against each officer on the failure to provide medical care claim and the related denial of each officer's qualified immunity defense. None of the officers had knowledge that Owensby had stopped breathing. The panel's undue deference to the estate unjustifiably leaves standing the district

court's erroneous conclusion that the plaintiff satisfied its burden of proving both that the officers deprived Owensby of a constitutional right and that they are not entitled to their qualified immunity defense.

**III.   THE PANEL ERRED BY CONCLUDING THAT THE MERE POSSIBILITY OF ACTUAL DELIBERATION BY CINCINNATI POLICE OFFICERS WHILE OWENSBY WAS IN THE GOLF MANOR POLICE CRUISER JUSTIFIED DISREGARDING THE "MALICE AND INTENT TO HARM" SUBSTANTIVE DUE PROCESS STANDARD**

The panel ruled that "the district court properly applied the traditional deliberate indifference standard." The panel recognized that "the level of culpability required to support section 1983 [substantive due process] liability depends upon the circumstances of each case" and that "[t]he determining factor is 'whether the circumstances allowed the state actors time to fully consider the potential consequences of their conduct.'" (emphasis added). Nevertheless, the panel disregarded that the underlying rationale for the traditional deliberate indifference standard was missing in the case at bar, and erroneously concluded that the mere possibility of actual deliberation sufficed to render inapplicable the more appropriate "malice and intent to harm" standard.

The rationale for the traditional deliberate indifference standard "rests upon the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations. When such extended opportunities to do better are teamed

6

with protracted failure even to care, indifference is truly shocking." *County of Sacramento v. Lewis*, 523 U.S. 833, 853 (1998) (emphasis added). The few minutes that any of the Defendants-Appellants were on the scene while Owensby was in the Golf Manor police cruiser do not, as a matter of law, constitute time for "unhurried judgments," "repeated reflection," and "extended opportunities," "uncomplicated by the pulls of competing obligations," or a "protracted failure" to care. The deliberate indifference standard is too lax, and is an improper match to the circumstances presented by the case at bar. The heightened substantive due process standard requiring proof of malice and intent to harm is the appropriate standard by which to judge the conduct of Police Officers Spellen, Sellers, Hunter, Jorg, and Caton, after Owensby was placed in the Golf Manor cruiser.

The panel suggested that the Cincinnati police officers analogized the case at bar to "vehicular chase cases." The officers further argued, just as the *en banc* United States Court of Appeals for the Eighth Circuit concluded, that even non-chase emergency responses justified application of the "malice and intent to harm" substantive due process standard. The *en banc* Eighth Circuit indicated that deputies responding in their vehicle to a domestic disturbance call did not have the luxury of having time to reflect and make unhurried judgments uncomplicated by competing obligations. *Terrell, et al. v. Larson, et al.*, 396 F.3d 975, 979 (8th Cir. 2005). The Eighth Circuit held that "every circuit to consider the issue has applied the [*County of Sacramento v.*] *Lewis* intent-to-harm standard to 'those myriad

7

situations involving law enforcement and government workers deployed in emergency situations.'" *Id.*, p. 979. Concluding that the defendant deputies were entitled to qualified immunity from suit even under the deliberate indifference standard of fault,[3] the Eighth Circuit added that "responding to this type of emergency within a police officer's assigned territory does not reflect the criminal recklessness that is a prerequisite to substantive due process liability under the deliberate indifference standard. Traffic accidents of this nature are tragic but do not shock the modern-day conscience." *Id.*, p. 981. The Court emphasized that "[n]ot all deliberately indifferent conduct is conscience shocking in the constitutional sense of the term . . . . [T]he conscience-shocking standard is intended to limit substantive due process liability . . . ." *Id.*, p. 981.

Under the specific circumstances confronting each of the individual Defendants-Appellants, the appropriate required level of culpability to "shock the conscience" is malice and intent to harm. The panel inappropriately broadened substantive due process liability by applying the traditional deliberate indifference standard to the very limited time and information available to each Cincinnati Defendant-Appellant at the time Owensby was held in the Golf Manor police cruiser.

---

[3] The *en banc* 8th Circuit characterized the deliberate indifference standard as "an intermediate level of culpability." 396 F.3d at 978.

8

By contrast to the circumstances in the case at bar, three recent medical care decisions issued by the Sixth Circuit further demonstrate that the traditional deliberate indifference standard is appropriate when a pretrial detainee is held in a facility, there is clear knowledge of a serious medical condition, and there is reasonable time to deliberate. *Estate of Carter, et al. v. City of Detroit, et al.*, 408 F.3d 305 (6th Cir. 2005); *Miller v. Calhoun County, et al.*, 408 F.3d 803 (6th Cir. 2005); and *Garretson v. City of Madison Heights, et al.*, 407 F.3d 789 (6th Cir. 2005). Also see *Blackmore v. Kalamazoo County, et al.*, 390 F.3d 890 (6th Cir. 2004), another case involving a 50 hour delay in providing medical care to a jail inmate who had complained repeatedly both orally and in writing to his jailors about his serious medical condition. Each case decided by this Court involved individuals held in facilities for significant periods of time who had clearly communicated the nature of their serious medical needs to their custodians.

Owensby was held in a Golf Manor vehicle for minutes, none of the Cincinnati Defendants-Appellants knew that Owensby had stopped breathing, and he was provided medical care immediately once it was known he had stopped breathing.    Time and information are the two variables that determine which substantive due process "shock the conscience" standard applies.  Owensby was held for 5 ½ minutes in the police cruiser of another jurisdiction.  The Cincinnati police officers did not have adequate information and adequate time to deliberate.

Under those circumstances, a Cincinnati police officer can be liable for failing to provide medical care only if the officer acted with malice and intent to harm.

## IV.   THE PANEL ERRED BY CONCLUDING THAT THE PLAINTIFF-APPELLEE DID NOT NEED TO PROVE PROXIMATE CAUSE AS AN ELEMENT OF ITS CLAIM FOR FAILURE TO PROVIDE MEDICAL CARE TO OWENSBY

The panel erroneously concluded that "the estate need not prove that the officers' acts or omissions were the proximate cause of Owensby's death in order to hold the officers liable under section 1983." The panel reasoned that "Owensby's need for medical care was obvious." Owensby's serious medical need determined by the district court was "cessation of breathing and an arrested heart." None of the Appellants-Defendants knew, or had reason to know, whether Owensby had stopped breathing and whether he had an arrested heart. Owensby had just "bolted" (in the words of the estate) from the arresting officers, and after a short struggle he was placed in a Golf Manor police cruiser. Several minutes later, as soon as it was known that Owensby had stopped breathing, medical care was provided immediately.

By eliminating proof of proximate cause as an element of the claim for failure to provide medical care, the panel unjustifiably overextended the scope the claim. The case cited by the panel, *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004), involved a 50 hour delay and an obvious serious medical need known to the custodians. The Court held that the issue was "the unnecessary

10

and wanton infliction of pain," and that the inmate had an "Eighth Amendment right to avoid the pain from the officers' deliberate indifference to his obvious need for medical care." The panel did not specifically identify that any of the Defendants-Appellants knew that Owensby had stopped breathing. The panel did not specifically find that Owensby suffered "unnecessary and wanton infliction of pain" as a result of his serious medical condition. The panel consequently erred by overbroadening the scope of a failure to provide medical care claim and not requiring "conscience shocking" conduct.

## V.    THE PANEL ERRED BY CONCLUDING THAT THE CINCINNATI POLICE OFFICERS DEPRIVED OWENSBY OF A CONSTITUTIONAL RIGHT TO IMMEDIATE MEDICAL CARE

Adopting the district court's analysis by reference, the panel summarily asserted that "each officer viewed Owensby in significant physical distress, yet made no attempt to summon or provide any medical care until several minutes later, when Sergeant Watt checked on Owensby and discovered that he was not breathing." The district court's analysis for all five Cincinnati Appellants-Defendants is in its Order, pp. 46-51. The district court completely ignored the coroner's testimony that Owensby's facial abrasions did not warrant immediate medical care.[4] The district court itself concluded that the failure to provide Owensby relief from macing did not constitute an unconstitutional failure to provide medical care. Order, p. 47, n. 27.

---

[4] Schultz Deposition, pp. 148-49, R. 103, J.A. 679-80.

11

Officer Spellen, who arrived on the scene for a few minutes after Owensby was already in the Golf Manor vehicle, simply knew that Owensby was experiencing discomfort from the macing that occurred; Officer Sellers knew Owensby had been maced and did not appear to be resisting, and he testified he saw Officer Caton strike Owensby, but he did not believe Owensby was injured;[5] Officer Hunter testified that when he observed Owensby being taken to the Golf Manor cruiser Owensby's feet were dragging, and he observed Officer Caton either strike Owensby or the back seat when Owensby was placed in the Golf Manor cruiser; the district court concluded that "there is no evidence indicating that [Officers] Jorg and Caton made any subjective assessment of any risk of serious harm to Owensby."[6]

The evidence did not establish that any one of the Defendants-Appellants knew that Owensby had stopped breathing and disregarded that serious medical condition. The panel unjustifiably broadened the nature of a substantive due process failure to provide medical care claim by failing to require knowledge of Owensby's serious medical condition and intentional disregard of that risk.

---

[5] Sellers Deposition, pp. 8-9, 56-57, R. 103, 104, J.A. 735-36; 741-42; 811.
[6] Order, p. 51.

12

## VI.   THE PANEL ERRED BY CONCLUDING THAT OWENSBY'S RIGHT TO MEDICAL CARE WAS CLEARLY ESTABLISHED IN THE PARTICULARIZED SENSE IN NOVEMBER 2000

The panel ignored the relevance of the fact that Owensby had just "bolted" and resisted arrest when considering whether the law of failure to provide medical care was clearly established in a particularized sense in November 2000.  By reference to the establishment of a right to medical care, in the general sense, the panel concluded that it could "find no principled basis on which to find Owensby's right to medical care any less clearly established than the right of other pretrial detainees."

For purposes of applying qualified immunity criteria, however, there is a material difference between an individual held in custody in a defendant's own facility for an extended period of time with clear knowledge of serious medical needs (see the 6th Circuit decisions discussed above), and an individual who had just resisted arrest and was placed for 5 ½ minutes in another jurisdiction's police cruiser.  Even assuming *arguendo* any of the Cincinnati police officers unconstitutionally deprived Owensby of his asserted right to immediate medical care, that right was not clearly established in the required particularized sense in November 2000.

The panel did not consider and apply *Brosseau v. Haugen*, 125 S.Ct. 596, 599 (2004), a case holding that a police officer had qualified immunity from suit since she did not have "fair notice" at the time, and under the specific

circumstances of the case, that shooting an individual with a deadly weapon was unlawful. The Supreme Court held that "[q]ualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Id.* The Court emphasized the need to ascertain particularity and relevance when determining if a right alleged to have been violated was "clearly established." Police officers' actions falling in the "hazy border" between the permitted and the proscribed are not "clearly established" and do not deny an officer her qualified immunity defense. *Id.*, p. 600.

Each Defendant-Appellant had very limited information about Owensby's condition (none knew he had stopped breathing while he was in the Golf Manor vehicle) and very limited time for deliberation (just minutes, while they handled competing obligations). It was not clearly established in a particularized sense in November 2000 that under those circumstances an officer acted unconstitutionally if he failed to provide immediate medical care. The Defendants-Appellants did not have "fair notice" that, under the circumstances, their conduct was unlawful. At worst, given the limited knowledge and time, their actions fell in the "hazy border" between the permitted and the proscribed in November 2000. The Cincinnati police officers are entitled to qualified immunity from suit and the panel erred by depriving the officers of that defense.

14

## VII.  CONCLUSION

The decision of the panel significantly overextends the substantive due process claim for failure to provide medical care and makes a plaintiff's burden of proof too easy to establish and a defendant's entitlement to qualified immunity from suit too burdensome to achieve.  The decision upsets the balance required in the law between the specific factual circumstances confronting police officers who just struggled to arrest a fleeing suspect, or who otherwise do not have knowledge of a plaintiff's serious medical condition and adequate time to deliberate, the appropriate standard of culpability, and the public policy benefit conferred by the qualified immunity from suit defense.  The Court should grant this petition for rehearing *en banc* and should reverse the decision of the district court.

Respectfully submitted,

JULIA L. McNEIL (0043535)
City Solicitor


RICHARD GANULIN (0025642C)
Assistant City Solicitor
Room 214, City Hall
801 Plum Street
Cincinnati, Ohio 45202
(513) 352-3329
(513) 352-1515 FAX
richard.ganulin@Cincinnati-oh.gov

*Donald E. Hardin* By RG

Donald E. Hardin (0022095)
Hardin, Lefton, Lazarus & Marks
915 Cincinnati Club Building
30 Garfield Place
Cincinnati, Ohio 45202
(513) 721-7300
(513) 721-7008 FAX
donhardin@hllmlaw.com


*Ravert J. Clark* By RG

Ravert J. Clark (0042027)
114 East Eighth Street
Cincinnati, Ohio 45202
(513) 587-2887
(513) 621-2525 FAX
notguilty14@aol.com


## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was sent via

First Class United States Mail, postage prepaid, to all parties of record this 20th

day of July, 2005.


*Richard Ganulin*
RICHARD GANULIN


OPREB 0705-RG

16

Westlaw.

2005 WL 1579700                                                                    Page 1

--- F.3d ---
**(Cite as: 2005 WL 1579700 (6th Cir.(Ohio)))**

**Briefs and Other Related Documents**

United States Court of Appeals,
Sixth Circuit.
Estate of Roger D. **OWENSBY**, Jr.,
Plaintiff-Appellee,
v.
CITY OF CINCINNATI; Tom Streicher; Robert
Jorg; Patrick Caton; Victor Spellen;
Darren Sellers; David Hunter,
Defendants-Appellants (04-3725);
Stephen TILLEY; Robert Heiland; Chris Campbell,
Defendants-Appellants (04-
3724).
**No. 04-3724, 04-3725.**

Argued: May 31, 2005.
Decided and Filed: July 7, 2005.

**Background:** Estate of detainee who died in course
of police encounter sued officers involved in
encounter, city, village, and city and village police
chiefs, asserting state-law and § 1983 claims. The
United States District Court for the Southern
District of Ohio, S. Arthur Spiegel, J., resolved
certain claims on summary judgment and denied
officers' qualified immunity defense. Appeals were
taken.

**Holdings:** The Court of Appeals, Martin, Circuit
Judge, held that:
(1) traditional deliberate indifference standard
applied to due process claim for denial of adequate
medical care;
(2) evidence permitted finding of due process
violation;
(3) officers were not entitled to qualified immunity
from § 1983 liability on claim that officers denied
detainee adequate medical care;
(4) exercise of pendent jurisdiction over issues of
city and city police chief's liability for failing to
train and of certain officers' liability for failing to

provide detainee with medical care was not
warranted;
(5) certification of issue of constitutionality of
Ohio's Sovereign Immunity Act was not warranted;
and
(6) order denying statutory immunity under Ohio's
Sovereign Immunity Act did not qualify as
reviewable collateral order.
Affirmed and remanded.

**[1] Civil Rights ☞1376(2)**

78k1376(2) Most Cited Cases
Under the doctrine of "qualified immunity,"
government officials performing discretionary
functions generally are shielded from liability for
civil damages insofar as their conduct does not
violate clearly established statutory or constitutional
rights of which a reasonable person would have
known.

**[2] Civil Rights ☞1376(1)**
78k1376(1) Most Cited Cases

**[2] Civil Rights ☞1376(2)**
78k1376(2) Most Cited Cases
Qualified immunity analysis entails two steps, under
which court first considers whether, taken in the
light most favorable to party asserting injury, facts
alleged show that officer's conduct violated
constitutional right; if facts alleged fail to establish
constitutional violation, inquiry ends and officer is
entitled to qualified immunity, but if facts alleged
establish constitutional violation, court must
determine whether particular right allegedly
violated was clearly established at the time violation
occurred.

**[3] Federal Courts ☞770**
170Bk770 Most Cited Cases
In interlocutory appeals challenging denial of
qualified immunity, review is confined to the
question of whether all of the conduct which district
court deemed sufficiently supported for purposes of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1579700                                                                                           Page 2

--- F.3d ---
**(Cite as: 2005 WL 1579700 (6th Cir.(Ohio)))**

summary judgment met standard of objective legal reasonableness.

**[4] Federal Courts** ⟜770
170Bk770 Most Cited Cases
Court of Appeals lacks jurisdiction, on interlocutory appeal from denial of qualified immunity, to review district court's determination that plaintiffs have presented sufficient evidence to prove underlying or basic facts alleged in support of their constitutional claim.

**[5] Constitutional Law** ⟜262
92k262 Most Cited Cases
Police officers had time to consider fully the potential consequences of their conduct during six minutes that detainee was denied medical care after being taken into police custody, given that officers had time to do such things as greet each other, prepare for their superiors' arrival, pick up dropped items and straighten their uniforms, and comment on apparent severity of detainee's injuries, and therefore traditional deliberate indifference standard of culpability applied to due process claim for denial of adequate medical care, rather than heightened standard requiring malice and intent to harm to establish § 1983 liability. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

**[5] Municipal Corporations** ⟜747(3)
268k747(3) Most Cited Cases
Police officers had time to consider fully the potential consequences of their conduct during six minutes that detainee was denied medical care after being taken into police custody, given that officers had time to do such things as greet each other, prepare for their superiors' arrival, pick up dropped items and straighten their uniforms, and comment on apparent severity of detainee's injuries, and therefore traditional deliberate indifference standard of culpability applied to due process claim for denial of adequate medical care, rather than heightened standard requiring malice and intent to harm to establish § 1983 liability. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

**[6] Civil Rights** ⟜1031
78k1031 Most Cited Cases
In general, the level of culpability required to

support § 1983 liability depends upon the circumstances of each case, with the determining factor being whether the circumstances allowed state actors time to fully consider the potential consequences of their conduct. 42 U.S.C.A. § 1983.

**[7] Constitutional Law** ⟜262
92k262 Most Cited Cases
The deliberate indifference standard of culpability normally applies in § 1983 cases in which pretrial detainee is alleged to have been denied adequate medical care in violation of due process. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

**[8] Civil Rights** ⟜1031
78k1031 Most Cited Cases

**[8] Civil Rights** ⟜1088(1)
78k1088(1) Most Cited Cases
Heightened standard of culpability requiring malice and intent to harm to establish § 1983 liability normally applies when unforeseen circumstances demand an officer's instant judgment, such as in a high speed vehicle chase. 42 U.S.C.A. § 1983.

**[9] Constitutional Law** ⟜262
92k262 Most Cited Cases
Evidence permitted finding that police officers knew of and disregarded substantial risk of harm to detainee's health and safety and thus denied detainee adequate medical care in violation of his due process rights under deliberate indifference standard, given that each officer viewed detainee in significant physical distress, but made no attempt to summon or provide medical care until several minutes later, when sergeant checked on detainee and discovered that he was not breathing. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. §1983.

**[9] Municipal Corporations** ⟜747(3)
268k747(3) Most Cited Cases
Evidence permitted finding that police officers knew of and disregarded substantial risk of harm to detainee's health and safety and thus denied detainee adequate medical care in violation of his due process rights under deliberate indifference standard, given that each officer viewed detainee in significant physical distress, but made no attempt to summon or provide medical care until several

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1579700                                                                                    Page 3

--- F.3d ---
**(Cite as: 2005 WL 1579700 (6th Cir.(Ohio)))**

minutes later, when sergeant checked on detainee and discovered that he was not breathing. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. §1983.

**[10] Constitutional Law** ☞262
92k262 Most Cited Cases
In the context of due process claim alleging denial of adequate medical care, "deliberate indifference" requires that defendants knew of and disregarded a substantial risk of serious harm to detainee's health and safety. U.S.C.A. Const.Amend. 14.

**[11] Constitutional Law** ☞262
92k262 Most Cited Cases
Village police officers had custody of detainee, and thus had due process duty to provide detainee with adequate medical care, even though police officers of nearby city had arrested detainee, given that village officers agreed to lock detainee in their police cruiser, over which they maintained exclusive control and possession. U.S.C.A. Const.Amend. 14.

**[11] Municipal Corporations** ☞747(3)
268k747(3) Most Cited Cases
Village police officers had custody of detainee, and thus had due process duty to provide detainee with adequate medical care, even though police officers of nearby city had arrested detainee, given that village officers agreed to lock detainee in their police cruiser, over which they maintained exclusive control and possession. U.S.C.A. Const.Amend. 14.

**[12] Civil Rights** ☞1358
78k1358 Most Cited Cases
Need to provide medical care to detainee, whose death was ruled a homicide resulting from police officers' restraint attempts, was obvious, and therefore detainee's estate did not have to prove that officers' acts or omissions were proximate cause of death to hold officers liable under § 1983 for denial of medical care in violation of detainee's due process rights. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

**[13] Civil Rights** ☞1376(6)
78k1376(6) Most Cited Cases
Detainee's due process right to adequate medical care was clearly established at the time he was restrained by police officers and in their custody, and therefore officers were not entitled to qualified immunity from § 1983 liability on claim that officers denied detainee adequate medical care, resulting in his death, regardless of whether detainee had attempted to flee or resisted being taken into custody. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

**[14] Federal Courts** ☞770
170Bk770 Most Cited Cases
Issues of city and city police chief's liability under § 1983 to deceased detainee's estate for failure to train police officers and of certain officers' due process liability for failing to provide detainee with medical care were not inextricably intertwined with issues respecting police officers' entitlement to qualified immunity in § 1983 action arising from detainee's death, and therefore Court of Appeals' exercise of pendent jurisdiction over such matters was not warranted on interlocutory appeal from denial of qualified immunity defense. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

**[15] Federal Courts** ☞392
170Bk392 Most Cited Cases
Question of whether Ohio's Sovereign Immunity Act was constitutional under state constitution would not be determinative of action in which estate of deceased detainee asserted § 1983 and state-law claims against police officers, city, and village, and therefore certification of question of Act's validity to Supreme Court of Ohio was not warranted on interlocutory appeal from denial of federal qualified immunity. 42 U.S.C.A. § 1983; R.C. § 2744.01 et seq.; Supreme Court Practice Rule XVIII § 1.

**[16] Federal Courts** ☞579
170Bk579 Most Cited Cases
Ohio's Sovereign Immunity Act provided immunity from liability, not from suit, and therefore order denying statutory immunity under Act did not qualify as "collateral order" reviewable by Court of Appeals on interlocutory appeal. R.C. § 2744.01 et seq.

**[16] States** ☞191.1
360k191.1 Most Cited Cases

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1579700

Page 4

--- F.3d ---
**(Cite as: 2005 WL 1579700 (6th Cir.(Ohio)))**

Ohio's Sovereign Immunity Act provided immunity from liability, not from suit, and therefore order denying statutory immunity under Act did not qualify as "collateral order" reviewable by Court of Appeals on interlocutory appeal. R.C. § 2744.01 et seq.

**[17] Federal Courts** ☞574
170Bk574 Most Cited Cases
When statutory immunity protects defendants from liability, as opposed to suit, denial of such immunity is not effectively unreviewable on appeal from a final judgment, and, accordingly, cannot be reviewed on appeal as a "collateral order."
                        West Codenotes
Validity Called into Doubt

R.C. §§ 2744.02, 2744.03

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati. No. 01-00769--S. Arthur Spiegel, District Judge.

Wilson G. Weisenfelder, Jr., Rendigs, Fry, Kiely & Dennis, Cincinnati, Ohio, Richard Ganulin, City Solicitor's Office for the City of Cincinnati, Cincinnati, Ohio, for Appellants.

Paul B. Martins, Helmer, Martins, Rice & Popham Co., Cincinnati, Ohio, for Appellee.

Wilson G. Weisenfelder, Jr., Rendigs, Fry, Kiely & Dennis, Cincinnati, Ohio, Richard Ganulin, City Solicitor's Office for the City of Cincinnati, Cincinnati, Ohio, Ravert J. Clark, Arenstein & Gallagher, Cincinnati, Ohio, for Appellants.

Paul B. Martins, James B. Helmer, Jr., Helmer, Martins, Rice & Popham Co., Cincinnati, Ohio, for Appellee.

Before: MARTIN and ROGERS, Circuit Judges; FORESTER, District Judge. [FN*]

OPINION

MARTIN, Circuit J.

*1 This case arises out of an encounter between

Cincinnati police officers and Roger D. **Owensby**, Jr. that ended tragically with **Owensby's** death. **Owensby's** estate filed this action pursuant to 42 U .S.C. § 1983, alleging various claims against the individual police officers involved in the incident, as well as several municipal defendants. The district court entered an order denying qualified immunity to all of the officers and resolving several claims on summary judgment. The officers filed this interlocutory appeal challenging the district court's denial of qualified immunity. For the following reasons, we AFFIRM the denial of qualified immunity.

I.
A. *Factual Background*
The following facts are described in a light most favorable to the plaintiff. On November 7, 2000, as twenty-nine-year-old Roger **Owensby** left a Sunoco gas station convenience store, he was stopped by three Cincinnati police officers-- Robert Jorg, Patrick Caton and David Hunter--who suspected him to be an individual who had fled from Officer Hunter in the same area in a drug-related incident on September 27, 2000. At least at the beginning of this encounter, **Owensby** fully cooperated with the officers, truthfully answering their questions and consenting to a thorough pat-down search that yielded no sign of any weapon or contraband. At some point, however, the encounter became contentious, and Officer Hunter accused **Owensby** of being the individual who had previously fled from him. **Owensby** then attempted to slip past the officers, but was immediately tackled by Jorg and Caton and landed face down in the parking lot. Jorg pinned **Owensby** in a prone position with his arms under his chest while Caton rested on **Owensby's** legs. Caton issued an "officer needs assistance" call, and the officers began struggling with **Owensby** in an attempt to handcuff him. During the course of this struggle, Caton struck **Owensby** in the lower back and right arm and used his baton to strike his legs; at the same time, Jorg placed **Owensby** in a "head wrap," employed a "mandibular angle pressure point pain compliance technique" and placed his knee on **Owensby's** left shoulder.

By way of background, the City of Cincinnati and the Village of Golf Manor are signatories to a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ---
**(Cite as: 2005 WL 1579700 (6th Cir.(Ohio)))**

"Hamilton County Local Government Mutual Aid Agreement for Law Enforcement," which provides for "reciprocal police services across jurisdictional lines." As a result, when Caton called for assistance, officers from both the City of Cincinnati and the Village of Golf Manor responded. Cincinnati police officer Darren Sellers, who had been in a nearby parking lot, was one of the first to arrive on the scene. He testified that upon his arrival, **Owensby** was not moving and that it was impossible to discern whether the difficulty the officers were experiencing in extracting **Owensby's** arms from underneath him was because **Owensby** was resisting or because of the combined weight of the officers and **Owensby.** Sellers eventually was able to handcuff **Owensby,** at which point he announced, "He's cuffed."

**\*2** Allegedly after **Owensby** was handcuffed, however, Caton demanded that Hunter spray mace at him. Hunter instructed Jorg to lift **Owensby's** head so that he could mace him directly in the face. Jorg pulled **Owensby's** head up, turned his own head away, and drove his knees into **Owensby's** back. Despite a police policy directing officers to spray chemical irritants "five to ten feet from an individual," Hunter proceeded to spray mace directly into **Owensby's** eyes and nose from a distance of six inches, and he did this twice. **Owensby** reacted only by grimacing; he did not cough or make a sound. Furthermore, despite **Owensby's** lack of resistance, Sellers and Hunter saw Caton repeatedly strike **Owensby** in the back, only ceasing after Hunter exclaimed, "What the hell is he doing!" At this point, **Owensby's** face was cut and bleeding, and Jorg and Caton had **Owensby's** blood on the sleeves of their shirts.

Meanwhile, two Golf Manor police officers, Robert Heiland and Chris Campbell, had arrived on the scene. Because the Golf Manor police cruiser was the nearest to the arrest scene, Jorg and Caton asked Heiland's permission to place **Owensby** in the back seat of that cruiser, and Heiland agreed. The Cincinnati officers picked up the prone **Owensby,** carried him to the Golf Manor cruiser and placed him--handcuffed and possibly unconscious--in the back seat. Caton went to the other side of the cruiser, dragged **Owensby** headfirst into the seat

and appeared to continue to beat **Owensby.** After the beating stopped, **Owensby** was left in the back seat of the cruiser with the doors locked.

Cincinnati police officer Brian Brazile soon arrived on the scene and peered into the Golf Manor cruiser with his flashlight. Noting that **Owensby** was bleeding and appeared unable to breathe, he said to Heiland and Campbell, who were standing near the back door of the cruiser, "This looks f[--]ed up. Can he breathe? It don't look like he can from the way he's laying." Nevertheless, Heiland, Campbell and Brazile failed to investigate **Owensby's** condition any further and did not attempt to provide him with any medical care.

Cincinnati police officer Victor Spellen also arrived on the scene, and his cruiser's video camera recorded all of the subsequent activity around the Golf Manor cruiser. At this point, at least eleven Cincinnati police officers and two Golf Manor officers were either on the scene or in the immediate vicinity-- three of whom were trained emergency medical technicians--yet no officer attempted to provide any medical care to **Owensby.** Instead, the uncontroverted testimony indicates that the officers greeted each other, secured items that might have been dropped, prepared for the arrival of their supervisors and made sure that their uniforms were intact. Only Spellen and Brazile looked at **Owensby,** and both commented that he appeared to be hurting a great deal.

Approximately six minutes after **Owensby** was placed in the Golf Manor cruiser, Cincinnati police sergeant Watts arrived and asked Heiland to roll down the window so that he could check on him. Watts promptly discovered that **Owensby** was not breathing. **Owensby** was removed from the cruiser and given CPR, and emergency medical technicians from a local fire rescue department were summoned. The first responding unit arrived four minutes later, but was unable to resuscitate **Owensby. Owensby** was pronounced dead at 8:47 p.m. at the University of Cincinnati hospital. The coroner ruled his death a "homicide" resulting from "police intervention: asphyxiation during restraint attempts."

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1579700

Page 6

--- F.3d ---
**(Cite as: 2005 WL 1579700 (6th Cir.(Ohio)))**

#### B. *Procedural Background*

**\*3** **Owensby's** estate filed this action pursuant to 42 U.S.C. § 1983, alleging various federal and state claims against the individual officers, the City of Cincinnati, the Village of Golf Manor, and the Cincinnati and Golf Manor police chiefs. Competing motions for summary judgment were filed. With respect to the estate's claims against the Cincinnati and Golf Manor police officers for failure to provide medical care to **Owensby,** the district court granted the estate's motion for summary judgment against Cincinnati police officers Spellen, Sellers and Hunter, as well as Golf Manor police officers Heiland and Campbell, but denied the motion as to Cincinnati police officers Jorg and Caton. Additionally, the district court granted the estate's motion for summary judgment against the City of Cincinnati, the Village of Golf Manor and their respective police chiefs for failure to train. The court did, however, grant summary judgment to all Golf Manor defendants on the estate's excessive force claim. Finally, the court held that no statutory immunity was available to any defendant with respect to the estate's state law claims because, in the court's view, Ohio's Sovereign Immunity Act violated the Ohio Constitution.

All of the individual police officers filed this interlocutory appeal challenging the district court's denial of qualified immunity. In addition, the City of Cincinnati requests that we exercise pendent jurisdiction over its appeal of the district court's award of summary judgment against it for failure to train, [FN1] and the Cincinnati defendants ask us to certify to the Ohio Supreme Court the question of the constitutionality of Ohio's Sovereign Immunity Act. [FN2]

#### II.

#### A. *Qualified Immunity*

[1][2] Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The

qualified immunity analysis entails two steps. First, the court considers whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the officer's conduct violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If the facts alleged fail to establish a constitutional violation, then the inquiry ends and the officer is entitled to qualified immunity. *Id.* If, however, the facts alleged are sufficient to establish a constitutional violation, then the Court must determine whether the particular right allegedly violated was clearly established at the time the violation occurred *Id.*

[3][4] In interlocutory appeals challenging a district court's denial of qualified immunity, this Court's review "is confined to the question of whether all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment met the *Harlow* standard of objective legal reasonableness." *Farm Labor Organizing Comm. v. Ohio State Highway Patrol,* 308 F.3d 523, 537 (6th Cir.2002) (citations and internal quotation marks omitted). Thus, "we lack jurisdiction on interlocutory appeal of a denial of qualified immunity to review the district court's determination that plaintiffs have presented sufficient evidence to prove the underlying or basic facts alleged in support of their constitutional claim." *Id.* at 536-37 (citation omitted).

*1. Do the Facts, Viewed in the Light Most Favorable to the Estate, Demonstrate a Constitutional Violation?*

**\*4** The district court held that no police officer was entitled to qualified immunity because the evidence, when viewed in the light most favorable to the estate, was sufficient to establish that each officer violated **Owensby's** Fourteenth Amendment right to adequate medical care while in police custody. The officers challenge the district court's holding on several grounds, none of which are persuasive.

*a. What Level of Culpability is Required?*

[5] The first issue that the officers raise concerns the level of culpability required to establish a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ---
**(Cite as: 2005 WL 1579700 (6th Cir.(Ohio)))**

violation of **Owensby's** constitutional right to medical care. The Cincinnati officers argue that the district court erred in applying the traditional deliberate indifference standard and urge us to adopt a heightened standard requiring proof of malice and intent to harm.

[6][7][8] In general, the level of culpability required to support section 1983 liability depends upon the circumstances of each case. The determining factor is "whether the circumstances allowed the state actors time to fully consider the potential consequences of their conduct." *Ewolski v. City of Brunswick,* 287 F.3d 492, 510 (6th Cir.2002) (citation and internal quotation marks omitted). The deliberate indifference standard normally applies in cases, like the present one, where a pretrial detainee is alleged to have been denied adequate medical care. *See, e.g., Blackmore v. Kalamazoo County,* 390 F.3d 890, 895 (6th Cir.2004) ("Whether a convicted prisoner or a pretrial detainee, deliberate indifference to one's need for medical attention suffices for a claim under 42 U.S.C. § 1983"); *Ewolski,* 287 F.3d at 510 ("in the context of pretrial detention, the fault requirement for a due process violation may be satisfied by showing that state officials were deliberately indifferent to the basic medical needs of detainees"); *Watkins v. City of Battle Creek,* 273 F.3d 682, 686 (6th Cir.2001) (holding that to sustain a cause of action under section 1983 for failure to provide adequate medical care to a pretrial detainee, the "plaintiff must establish that the defendants acted with deliberate indifference to serious medical needs"). In contrast, the heightened standard requiring malice and intent to harm normally applies "when unforseen circumstances demand an officer's instant judgment," such as in a "high speed vehicle chase." *Ewolski,* 287 F.3d at 511 (citation and internal quotation marks omitted).

The Cincinnati police officers argue that this case is more analogous to vehicular chase cases than traditional prisoner or pretrial detainee cases, essentially because only about six minutes passed between the time **Owensby** was taken into custody and the time medical care was provided. This argument assumes, however, that actual deliberation was not possible within those six minutes. That

assumption is erroneous. During the six minutes that **Owensby** was denied medical care after being taken into custody, the officers had time to do such things as greet each other, prepare for the arrival of their superiors, pick up dropped items and straighten their uniforms; some officers even had time to observe and discuss the apparent severity of **Owensby's** injuries. Under these circumstances, there is no question that the officers had "time to fully consider the potential consequences of their conduct." *Id.* at 510. Accordingly, the district court properly applied the traditional deliberate indifference standard.

*b. Is there Sufficient Evidence of Deliberate Indifference?*

**\*5** [9][10] The officers next argue that the evidence, even when viewed in the light most favorable to the estate, is insufficient to establish that they acted with the requisite deliberate indifference. "Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to [the pretrial detainee's] health and safety." *Watkins,* 273 F.3d at 686 (citation omitted). We have little difficulty finding a substantial risk of serious harm to **Owensby's** health and safety, as evidenced by his death, which the coroner ruled a homicide resulting from the officers' restraint attempts. The primary dispute concerns the second aspect of the deliberate indifference standard--whether the officers knew of this risk and disregarded it.

[11] We agree with the district court's conclusion that the evidence-- again, when viewed in the light most favorable to the estate--indicates that each officer did, in fact, know of and disregard the substantial risk of harm to **Owensby's** health and safety. In reaching this conclusion, the district court engaged in a detailed and lengthy analysis of the evidence relating to each officer, which we find persuasive and adopt in its entirety. Without duplicating that extensive analysis, we note in summary that each officer viewed **Owensby** in significant physical distress, yet made no attempt to summon or provide any medical care until several minutes later, when Sergeant Watt checked on **Owensby** and discovered that he was not breathing.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1579700

Page 8

--- F.3d ---
**(Cite as: 2005 WL 1579700 (6th Cir.(Ohio)))**

This evidence is sufficient to demonstrate that each officer's failure to provide medical care to **Owensby** constituted a violation of the Fourteenth Amendment. [FN3]

*c. Is Proximate Cause Required?*

[12] The Cincinnati officers also argue that the district court erred in holding that the estate need not prove that the officers' failure to provide medical care was the proximate cause of **Owensby's** death. We recently held in *Blackmore* that while medical proof may be necessary to assess whether the denial of medical care caused a serious medical injury in cases where the prisoner or pretrial detainee's "affliction is seemingly minor or non-obvious," no such evidence is required where the individual had a "serious need for medical care that was so obvious that even a layperson would easily recognize the necessity for a doctor's attention." 390 F.3d at 899.

As we explained in *Blackmore:*
> Where the seriousness of a prisoner's needs for medical care is obvious even to a lay person, the constitutional violation may arise. This violation is not premised upon the "detrimental effect" of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm. When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates the constitutional infirmity. In such cases, the effect of the delay goes to the extent of the injury, not the existence of a serious medical condition.
> *6 Id.

In light of the facts as discussed above, we agree with the district court's assessment that **Owensby's** need for medical care was obvious. Accordingly, the estate need not prove that the officers' acts or omissions were the proximate cause of **Owensby's** death in order to hold the officers liable under section 1983. *Id.*

*2. Was Owensby's Fourteenth Amendment Right to Adequate Medical Care Clearly Established?*

[13] Finally, the Cincinnati police officers argue that the "contours" of **Owensby's** right to medical care were not clearly established at the time of the incident in question. The Cincinnati officers believe that the fact that **Owensby** was, in their words, a "just-arrested fleeing and resisting suspect" distinguishes this case from the typical case involving the denial of medical care to a pretrial detainee. This argument is similar to the Cincinnati officers' unpersuasive argument that the heightened standard of culpability requiring proof of malice or intent to harm should apply in this case, and it fails for similar reasons. That **Owensby** may have fled or resisted before being taken into custody is irrelevant. There is no evidence that he was attempting to flee or resist during the time that he was in police custody and denied medical care; in fact, the evidence suggests that **Owensby** may have been unconscious when he was placed in the Golf Manor police cruiser and never regained consciousness. The Cincinnati officers do not dispute that, in general, the Fourteenth Amendment right of pretrial detainees to adequate medical care is, and has long been, clearly established. We find no principled basis on which to find **Owensby's** right to medical care any less clearly established than the right of other pretrial detainees.

*B. Additional Matters*
*1. Pendent Jurisdiction*

[14] The City of Cincinnati requests that we exercise pendent jurisdiction over its appeal of the district court's award of summary judgment in favor of the estate on its failure to train claims against the City and its police chief. Additionally, during oral argument, counsel for the Cincinnati defendants urged us to review the district court's award of summary judgment against Spellen, Sellers and Hunter on the estate's claims that they unconstitutionally failed to provide medical care to **Owensby**. We hold that the exercise of pendent jurisdiction over these matters is unwarranted because the issues presented are not "inextricably intertwined" with the qualified immunity issues that are properly before us in this interlocutory appeal. *See Tucker v. City of Richmond, Ky.,* 388 F.3d 216, 224 (6th Cir.2004) (explaining that our jurisdiction in interlocutory qualified immunity appeals is

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ---
**(Cite as: 2005 WL 1579700 (6th Cir.(Ohio)))**

limited to the specific issue of whether qualified immunity was properly denied, but that we may exercise pendent jurisdiction over matters presenting issues that are "inextricably intertwined" with the qualified immunity issues).

*2. Motion to Certify Question to the Supreme Court of Ohio*

**\*7** [15] The Cincinnati defendants filed with this Court a "motion to certify to the Supreme Court of Ohio the trial court's erroneous invalidation of Ohio Revised Code Chapter 2744." As noted, the district court held that no statutory immunity was available with respect to the state law claims because chapter 2744, which contains Ohio's Sovereign Immunity Act, violated the Ohio Constitution. We hold that certification is inappropriate at this stage because the question of the constitutionality of chapter 2744 would not be "determinative of the proceeding." Ohio Supreme Court Practice Rule XVIII § 1 (providing that the Supreme Court of Ohio may answer a question of law certified to it only where, among other requirements, the question "may be determinative of the proceeding").

*3. Jurisdiction to Review the Denial of Immunity Under Chapter 2744 as a "Collateral Order"*

[16][17] Finally, the defendants argue that this court has jurisdiction, based on the "collateral order" doctrine, to review the district court's order denying their request for statutory immunity on the estate's state law claims. An order denying statutory immunity pursuant to chapter 2744, however, does not qualify as a collateral order because the statute provides immunity only from liability, not from suit. *See Sinick v. County of Summit*, No. 02-3463, 2003 WL 22220529, at \*8 (6th Cir. Sept.24, 2003) (noting that chapter 2744 clearly pronounces that "the statute is providing immunity *from liability,* rather than from immunity from suit"); *Gratsch v. Hamilton County*, No. 00- 3398, 2001 WL 406440, at \*7 (6th Cir. April 3, 2001) (holding that the court lacked jurisdiction to review an order denying statutory immunity pursuant to chapter 2744 on interlocutory appeal because "the state statute authorizes immunity from liability for damages only, as opposed to complete immunity from suit.").

Where statutory immunity protects defendants from liability, as opposed to suit, denial of such immunity is not "effectively unreviewable on appeal from a final judgment" and, accordingly, cannot be reviewed on appeal as a collateral order. *See Summers v. Leis*, 368 F.3d 881, 888-89 (6th Cir.2004). We therefore have no jurisdiction over the district court's denial of immunity under chapter 2744.

III.

For these reasons, the district court's denial of qualified immunity is AFFIRMED and the case is REMANDED for further proceedings not inconsistent with this opinion.

> FN* The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

> FN1. During oral argument, counsel for the Cincinnati defendants also suggested that we review the district court's grant of summary judgment to the estate on its claims against Spellen, Sellers and Hunter for failure to provide medical care.

> FN2. The estate has filed a motion to dismiss the pending appeals for lack of jurisdiction. We will not issue a separate ruling on that motion, however, because the issues raised in the motion are adjudicated in this opinion.

> FN3. The Golf Manor police officers also argue that they owed **Owensby** no constitutional duty because **Owensby** was in the Cincinnati police officers' custody, not theirs. This argument is unpersuasive. Even though the Cincinnati officers arrested **Owensby**, the Golf Manor officers agreed to lock **Owensby** in their police cruiser, over which they maintained exclusive control and possession. Under these circumstances, the Golf Manor officers unquestionably had custody of **Owensby**--at least during the time that he was locked in their cruiser--thereby creating a constitutional duty to provide

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1579700

Page 10

--- F.3d ---
**(Cite as: 2005 WL 1579700 (6th Cir.(Ohio)))**

him with adequate medical care.

2005 WL 1579700 (6th Cir.(Ohio)), 2005
Fed.App. 0290P

**Briefs and Other Related Documents (Back to
top)**

• 04-3725 (Docket)
(May. 28, 2004)

• 04-3724 (Docket)
(May. 28, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.