No. _____

RECEIVED
FEB 2 2 2006
HELMER
MARTINS, RICE & POPHAM CO., L.P.A.

# In The
# Supreme Court of the United States

♦

CITY OF CINCINNATI POLICE OFFICERS ROBERT JORG,
PATRICK CATON, VICTOR SPELLEN, DARREN SELLERS,
AND DAVID HUNTER

*Applicants,*

v.

ESTATE OF ROGER OWENSBY, JR.,

*Respondent.*

♦

**Application Of City Of Cincinnati Police Officers
Jorg, Caton, Spellen, Sellers, And Hunter For Stay Of Trial
Pending Consideration Of Petition For Writ of Certiorari
To The United States Court of Appeals
For The Sixth Circuit**

♦

I.  INTRODUCTION

City of Cincinnati Police Officers Jorg, Caton, Spellen, Sellers, and Hunter ("Applicants") apply for a stay of the District Court's order scheduling trial to begin on April 3, 2006, prior to the Supreme Court's consideration of their petition for writ of certiorari.

The United States District Court Southern District of Ohio, Western Division, denied the officers their entitlement to qualified immunity from suit on claims that the officers unconstitutionally denied medical care to Mr. Roger Owensby, Jr. Mr. Owensby was the subject of an investigatory stop, attempted to flee, resisted being taken into custody for about one minute and twenty seconds, was placed in the police vehicle of the Village of Golf Manor (an adjacent jurisdiction responding to the call for assistance) for about five minutes, and was immediately provided medical care when a Cincinnati police sergeant looked in the Golf Manor vehicle and detected that Mr. Owensby was not breathing. Notwithstanding the provision of medical care, Mr. Owensby died. The District Court ruled that Officers Jorg and Caton were not entitled to qualified immunity and the District Court is requiring that the officers stand trial on both liability and damages issues. *Estate of Owensby v. City of Cincinnati, et al.*, 385 F. Supp.2d 626, 650, 657-58 (S.D. Ohio, Western Division 2004). The District Court denied qualified immunity to Officers Spellen, Sellers, and Hunter, granted summary judgment to Mr. Owensby's estate on the failure to provide medical care claim against those officers,[1] and is requiring that the officers stand trial on damages issues. *Id.*, pp. 648-650, 660.

The United States Court of Appeals for the Sixth Circuit affirmed the District Court's denial of qualified immunity to the officers. *Estate of Owensby v. City of Cincinnati, et al.*, 414

---

[1] Even though the District Court granted summary judgment in favor of the estate and against the officers, both the District Court and the Court of Appeals evaluated the officers' qualified immunity defense by considering the allegations against the officers in the light most favorable to the estate. The District Court even granted summary judgment notwithstanding its acknowledgement that "Owensby's condition and method of transport to the [Golf Manor] cruiser is in active dispute . . . ." 385 F.Supp.2d at 635, n.11.

1

F.3d 596, 601-04. The Court of Appeals denied the officers' petition for rehearing en banc (attached) and denied their motion to stay or recall the mandate pending the filing of a petition for writ of certiorari (attached). The petition for writ of certiorari is due March 7, 2006. The District Court scheduled this case for trial to begin on April 3, 2006, prior to the time the Supreme Court will consider the merits of the officers' petition.[2]

The District Court held, and the officers do not dispute, that Mr. Owensby's serious medical condition was cardiac arrest and cessation of breathing. 385 F.Supp.2d at 648. Notwithstanding the limited time and information available to each police officer, the District Court and the Court of Appeals did not apply the "malice and intent to harm" substantive due process standard but instead applied what the Court of Appeals characterized as the "traditional deliberate indifference standard." 414 F.3d at 602-03. The District Court, however, denied Officers Jorg and Caton their entitlement to qualified immunity from suit, even though the Court acknowledged that "there is no evidence indicating that Jorg or Caton made any subjective assessment of any risk of serious harm to Owensby." 385 F.Supp.2d at 650. The District Court found that Mr. Owensby was in the physical custody of the Village of Golf Manor

---

[2] Briefly, the procedural history of this case is as follows: The complaint was filed on November 6, 2001, by Mr. Owensby's estate against City of Cincinnati police officers, Village of Golf Manor police officers, private security guards employed by an adjacent housing authority, and the City of Cincinnati and the Village of Golf Manor. In addition to the failure to provide medical care claims that are the subject of this application, the estate claims that various officers unconstitutionally used excessive force incident to arresting Mr. Owensby and also makes state law claims. On May 20, 2004, the District Court granted the estate's motion for summary judgment on the failure to provide medical care claims against Cincinnati Police Officers Sellers, Spellen, and Hunter, two Village of Golf Manor officers, and the City of Cincinnati and the Village of Golf Manor. The police officers filed an interlocutory appeal to the United States Court of Appeals for the Sixth Circuit. On July 7, 2005, the Court of Appeals affirmed the District Court's order denying qualified immunity to the officers. On December 7, 2005, the Court of Appeals denied the officers' petition for rehearing en banc and on February 9, 2006, denied the motion to stay or recall the mandate.
Throughout the litigation, the estate has used exaggerated and misleading language to describe the police officers' response to Mr. Owensby's attempt to flee and the officers' struggle to arrest him. The officers and the City dispute all allegations of use of excessive force against Mr. Owensby. The excessive force claims were not the subject of the rulings below.

2

("...Owensby was clearly in the custody of the Golf Manor officers," 385 F.Supp.2d at 662), and that Officers Jorg and Caton did not make a subjective assessment of risk to Mr. Owensby, but still deprived the officers of their qualified immunity defense.

Even though Officer Spellen did not arrive at the scene until after Mr. Owensby had been arrested and placed in a Golf Manor vehicle, and even though it was dark outside and also dark inside the vehicle, the District Court denied Officer Spellen qualified immunity from suit. The District Court unreasonably inferred from the limited information available to Officer Spellen that he knew Mr. Owensby had a serious medical need. *Id.*, p. 648-49.

The District Court denied Officer Sellers qualified immunity simply because Officer Sellers had observed the struggle to arrest Owensby and had observed Owensby being placed into the Golf Manor vehicle. *Id.*, p. 649-50. The District Court made a similarly cryptic conclusion about Officer Hunter when it denied his qualified immunity defense in one paragraph. *Id.*, p. 650.

The District Court also erroneously eliminated the estate's need to establish the detrimental effect on Mr. Owensby of the officers' alleged delay in providing care. *Id.*, p. 652, n. 31. The District Court mistakenly reasoned: "Of course, even if it [the estate] were required to do so, Owensby's death would likely suffice as a 'sufficiently serious' medical need." *Id.* The Court of Appeals for the Sixth Circuit affirmed the elimination of proximate cause from the cause of action by holding that "no such evidence is required where the individual had a "serious need for medical care that was so obvious that even a layperson would easily recognize the necessity for a doctor's attention." 414 F.3d at 604.

II.   THE ISSUES ARE SUFFICIENTLY MERITORIOUS

There is a reasonable probability that four Justices will consider the issues raised in the officers' petition for writ of certiorari sufficiently meritorious to grant certiorari or to note probable jurisdiction. Claims that public officials have unconstitutionally deprived individuals of medical care are increasing and evolving. The importance of the question of the proper legal scope and nature of claims that public officials have unconstitutionally deprived individuals of medical care is obvious. On the one hand, individuals in the custody of the government have a substantial right. On the other hand, police officers and other public officials have a substantial right to be free from the time, expense, and burdens of unnecessary litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Johnson v. Jones*, 515 U.S. 304, 311-12 (1995); *Behrens v. Peltier*, 516 U.S. 299, 309 (1996); *Brosseau v. Haugen*, 125 S.Ct. 596, 599 (2004).

III.  THE DECISION BELOW WAS ERRONEOUS

There is also a fair prospect that a majority of the Court will conclude that the decisions below, depriving Police Officers Jorg, Caton, Spellen, Sellers, and Hunter, of their entitlement to qualified immunity from suit were erroneous. The "traditional deliberate indifference standard" should not have been applied because the applicants did not have adequate time or information to deliberate or to be indifferent in the constitutional sense. The Supreme Court ruled that the rationale for the traditional deliberate indifference standard "rests upon the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations. When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking." *County of Sacramento v. Lewis*, 523 U.S. 833, 853 (1998). The few minutes that any of the Cincinnati police officers were on the scene while Mr. Owensby was in the Golf Manor

police vehicle do not, as a matter of law, constitute time for "unhurried judgments," "repeated reflection," "extended opportunities," or "protracted failure." Furthermore, each officer had "competing obligations," including retrieving their vehicles and dropped equipment.

The traditional deliberate standard is an improper analytic match to the circumstances presented by the case at bar. The substantive due process standard requiring proof of malice and intent to harm is the appropriate constitutional standard by which to judge the conduct of Cincinnati Police Officers Jorg, Caton, Spellen, Sellers, and Hunter, after Mr. Owensby was placed in the Golf Manor vehicle. For example, the United States Court of Appeals for the Eighth Circuit recently ruled, *en banc*, that deputies responding in their vehicle to a domestic disturbance call did not have the luxury of having time to reflect and make unhurried judgments uncomplicated by competing obligations. *Terrell, et al. v. Larson, et al.*, 396 F.3d 975, 979 (8th Cir. 2005) (*en banc*). The Eighth Circuit held that "every circuit to consider the issue has applied the [*County of Sacramento*] *v. Lewis* intent to harm standard to 'those myriad situations involving law enforcement and government workers deployed in emergency situations." *Id.*, p. 979. The *en banc* Court emphasized that "responding to this type of emergency within a police officer's assigned territory does not reflect the criminal recklessness that is a prerequisite to substantive due process liability under the deliberate indifference standard. Traffic accidents of this nature are tragic but do not shock the modern-day conscience." *Id.*, p. 981. The Court further emphasized that "[n]ot all deliberately indifferent conduct is conscience shocking in the constitutional sense of the term . . . . [T]he conscience-shocking standard is intended to limit substantive due process liability." *Id.*

Time and information are the two variables that determine which substantive due process standard applies. The traditional deliberate indifference standard applies to failure to provide

5

medical care claims in circumstances when a detainee is held in a facility, there is clear knowledge of a serious medical condition, and there is reasonable time to deliberate. None of those circumstances existed for the Cincinnati police officers in this case. Mr. Owensby was held for several minutes at the scene in a Golf Manor police vehicle, and the Cincinnati officers did not have adequate information and adequate time to deliberate. Under those circumstances, a Cincinnati police officer can be liable for unconstitutionally failing to provide medical care only if the officer acted with malice and intent to harm.

Moreover, the Court of Appeals failed to even consider and apply the Supreme Court's decision in *Brosseau v. Haugen*, 125 S.Ct. 596, 599 (2004), a case holding that a police officer had qualified immunity from suit since she did not have "fair notice" at the time, and under the specific circumstances of the case, that shooting an individual with a deadly weapon was unlawful. The Supreme Court held that "[q]ualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Id.* The Court emphasized the need to ascertain particularity and relevance when determining if a right alleged to have been violated was "clearly established." Police officers' actions falling in the "hazy border" between the permitted and the proscribed are not "clearly established" and do not deny an officer her qualified immunity defense. *Id.*, p. 600.

The Supreme Court recently granted certiorari with respect to the Sixth Circuit Court of Appeals' denial of qualified immunity to a police officer on the arrestee's claim that the officer had used excessive force in tackling her. The Supreme Court required further consideration by

6

the Sixth Circuit in light of *Brosseau v. Haugen*. On remand, the Sixth Circuit granted the officer's qualified immunity defense.[3]

## IV.   IRREPARABLE HARM WILL RESULT FROM THE DENIAL OF A STAY

Without a stay, Cincinnati Police Officers Jorg, Caton, Sellers, Spellen, and Hunter will unnecessarily be forced to stand trial prior to the Supreme Court's consideration of their petition for writ of certiorari and will be deprived of their right to qualified immunity from suit. A favorable ruling from the Supreme Court will require overturning a verdict for the Respondents if one occurs in the meantime.

## V.    THE BALANCE OF EQUITIES JUSTIFY A STAY[4]

The Applicants seek a stay of the scheduled trial date to allow time for the Supreme Court to consider the petition for writ of certiorari asserting their qualified immunity defense. The complaint in the case at bar was filed more than four years ago. The burden to the estate of a short delay in trial is minimal in comparison to the deprivation of the officers' qualified immunity defense. The prejudice to the officers of the deprivation of their defense outweighs the prejudice to the estate of a short delay in trial.

## VI.   CONCLUSION

The Applicants are Cincinnati police officers who, in a matter of minutes, stopped, struggled with, and provided medical care to a resisting suspect who unfortunately died due to cardiac arrest and cessation of breathing. One of the officers was not even at the scene at the time of the struggle. The officers seek a stay of the scheduled trial date so that the Supreme

---

[3] *Lyons v. City of Xenia*, 417 F.3d 565 (6th Cir. 2005). Further, just this month, in a failure to provide medical care case, a different panel of the Sixth Circuit granted the qualified immunity defense of two public officials ibecause the officials only had "brief exposures" with the decedent and did not have "repeated opportunities" to know that proper care was not being provided. Clark-Murphy v. Foreback, et al., 2006 WL 265460 (6th Circuit February 6, 2006). The time and knowledge available to those two officials far exceeded the time and knowledge available to the Applicants.

[4] The third and fourth factors are "interrelated inquiries." *Rostker, et al. v. Goldberg, et al.*, 448 U.S. 1306, 1309 (1980).

The issues are meritorious, the decisions below were erroneous, the officers will be irreparably harmed without the stay, and the equities favor granting the stay.

Respectfully submitted,

*Richard Ganulin*
JULIA L. MCNEIL (0043535)
City Solicitor
City of Cincinnati

*Richard Ganulin*
RICHARD GANULIN (0025642C)
Assistant City Solicitor
Room 214, City Hall
801 Plum Street
Cincinnati, Ohio 45202
(513) 352-3329
(513) 352-1515 FAX
richard.ganulin@cincinnati-oh.gov

*Donald E. Hardin by RG*
DONALD E. HARDIN
Hardin, Lefton, Lazarus & Marks
915 Cincinnati Club Building
30 Garfield Place
Cincinnati, Ohio 45202
(513) 721-7300
(513) 721-7008 FAX
donhardin@hllmlaw.com

*Ravert J. Clark by RG*
RAVERT J. CLARK (0042027)
114 East Eighth Street
Cincinnati, Ohio 45202
(513)) 587-2887
(513) 621-2525 FAX
notguilty14@aol.com

*Attorneys for Applicants*

8

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was sent via First Class United States Mail, postage prepaid, to all parties of record this 21 day of February, 2006.

*Richard Ganulin*
RICHARD GANULIN (0025642C)

Owensby SCt Stay 0206-RG/skj

9

Case No. 04-9724 04-9725

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

FEB 0 9 2006

LEONARD GREEN, Clerk

ORDER

ESTATE OF ROGER D. OWENSBY, JR.

    Plaintiff - Appellee

v.

CITY OF CINCINNATI;

    Defendant

STEPHEN TILLEY; ROBERT HEILAND; CHRIS CAMPBELL

    Defendants - Appellants

BEFORE: MARTIN and ROGERS, Circuit Judges; and FORESTER*, District Judge

Upon consideration of appellant's motion to stay the mandate pending the filing of a petition for Writ of Certiorari,

It is **ORDERED** that the motion be and it hereby is, DENIED.

ENTERED BY ORDER OF THE COURT

Leonard Green, Clerk

---

*Honorable Karl S. Forester, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

Nos. 04-3724/3725

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

DEC 0 7 2005

LEONARD GREEN, Clerk

ESTATE OF ROGER D. OWENSBY, JR., )
)
Plaintiff-Appellee, )
)
v. ) ORDER
)
CITY OF CINCINNATI, )
)
Defendant. )
)
STEPHEN TILLEY, ET AL., )
)
Defendants-Appellants. )
)

**BEFORE:** MARTIN and ROGERS, Circuit Judges; and FORESTER,* District Judge.

The court having received a petition for rehearing en banc from Appellants David Hunter, Victor Spellen, Patrick Caton, Robert Jorg, Darren Sellers, Thomas Streicher, and the City of Cincinnati, and the petition having been circulated not only to the original panel members but also to all other active judges of this court, and no judge of this court having requested a vote on the suggestion for rehearing en banc, the petition for rehearing has been referred to the original panel.

---

*Hon Karl S. Forester, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

Nos. 04-3724/3725
- 2 -

The panel has further reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision of the cases. Accordingly, the petition is denied.

**ENTERED BY ORDER OF THE COURT**

Leonard Green, Clerk