Case 1:01-cv-00769-SAS    Document 226-8    Filed 02/24/2006    Page 1 of 3




## Supreme Court of the United States

**Remarks of The Chief Justice**
**Federal Judicial Center National Symposium**
**United States Court of Appeals Judges**
**October 21, 2002**

Thank you, Fern, for that kind introduction. It is a pleasure to be here to open the Federal Judicial Center's Symposium for United States Court of Appeals Judges. It has been seven years since the Center sponsored a similar event, and I am sure that it affords an opportunity for all of you to spend time together working through some of the common challenges you face as appellate judges.

I thought it might be interesting to you if I were to briefly sketch a history of appeals within the federal judicial system. We start out in 1790 with the first session of the Supreme Court of the United States. The United States consists of thirteen states spread out along the Atlantic coastline of North America. The Supreme Court is this nation's only appellate court, and understandably it gets off to a very slow start. John Jay, the first Chief Justice, was appointed by George Washington as special envoy to England in 1794 to negotiate what became the Jay Treaty. He was absent for a year, and there is no indication that he was missed in the work of the Supreme Court. That is probably because in its first ten years, that Court decided a total of 60 cases -- not 60 cases per year, but 6 cases per year.

The federal district courts and circuit courts were trial courts -- and they had only admiralty and diversity of citizenship jurisdiction in civil cases. Federal question jurisdiction was not granted to the federal trial courts until 1875. As a result, all of the well known constitutional cases of that era -- *Gibbons* v. *Ogden*, *The Charles River Bridge* case, *Cooley* v. *The Board of Wardens* came to the Supreme Court through the state court systems. The federal trial courts had only a limited criminal business, because there were very few federal criminal statutes. But there was no appeal at all in federal criminal cases until it was granted in capital cases in the 1880s and a few years later in non-capital cases.

During the 1880s, the Supreme Court fell further and further behind in its docket, although most of the cases it was deciding were diversity cases involving only state law. Finally, in 1891, Congress created the Circuit Courts of Appeals. This was an idea that had first been broached in the 1840s, but took nearly 50 years to bring to fruition. It illustrates the truth of Chief Justice Vanderbilt's observation that judicial reform is no sport for the short-winded.

The circuits that were established then have remained pretty much the same, with allowance for growth in population. The Tenth Circuit did not emerge until 1929, when it was split off from the Eighth Circuit. The Eleventh Circuit was part of the Fifth Circuit until 1980, when it was split off. A majority of the judges of that court finally agreed to the split after their first *en banc* hearing with a court of 25 judges.

In 1982, Congress created the Court of Appeals for the Federal Circuit, which handles patent cases and a variety of customs cases. The Court of Appeals of the District of Columbia Circuit was not integrated into the federal system at once, but in 1927 the Supreme Court recognized it as an Article III court.

The White Commission, chaired by the late Justice Byron White of our Court, recommended a few years ago that the Court of Appeals for the Ninth Circuit be split into regional divisions. But there has been substantial opposition in Congress to such a move.

In the early part of the twentieth century, Congress created the three-judge district court -- consisting of two district judges and one circuit judge -- to be convened when a federal or state statute was challenged on constitutional grounds. These courts proved to be a mixed blessing for all concerned. They did illustrate the dignity interests of the states in not having a single district judge declare one of their laws unconstitutional. But they also created a plethora of jurisdictional issues as to when such a court should be convened, and whether appeal from its decision should lie with the Court of Appeals or go to the Supreme Court. Happily, I think, most of the three-judge district court jurisdiction has now been repealed by Congress, and survives only in cases of voting rights and redistricting.

With the creation of the Courts of Appeals in 1891, the Supreme Court through a series of congressional enactments was given control over its own docket, so that appeal to it as a matter of right became rare. The major breakthrough was in the Certiorari Act of 1925, the impetus for which came from Chief Justice Taft. Asked by members of the House and Senate Judiciary Committees why any litigant shouldn't have a right to take his case to the highest court in the land, Taft replied that in every one of these cases there has been first a trial, and then an appeal. For a litigant to have a third bite at the apple, there should be some question of national importance involved, and not just the issue of who wins this lawsuit.

In the 1980s, there was much discussion of a national court of appeals -- a fourth layer in the federal appellate structure, then thought necessary because the Supreme Court was handling as many cases as it could, and it was felt that there were other cases deserving of similar consideration which could not be heard. This discussion has largely subsided because of our Court's considerably cutting down on our own docket, so that it can no longer be accurately said that we could not hear more cases than we now do. People inquire of me sometimes as to whether there was a conscious plan on the part of the members of our Court to cut down on the number of cases we hear, and my reply has been that if there was such a plan, I was not included in it. I think almost by "conscious parallelism", to use antitrust language, the Justices of our court have come to the conclusion that we should limit our docket to cases where there is a split between courts of appeals or state supreme courts on a question of federal law, where a federal or state statute is declared unconstitutional, or where the case involves a matter of obvious national importance.

While the structure of the system of federal appeals has been pretty much intact for nearly a century, there has been tremendous change by reason of population growth and litigation growth within the system. I offer you several very brief snapshots. Let us look at the Ninth Circuit seventy years ago -- in 1932. In that year, a total of 20 federal judges were stationed in the territory comprising the Ninth Circuit. Only four of them were judges of the Court of Appeals -- Curtis Wilbur of San Francisco, William Sawtelle of Tucson, Francis Garrecht of Spokane, and Frank Norcross of Carson City. There were 16 district judges -- two in Arizona, seven in California, three in Los Angeles, three in San Francisco, and one in Fresno, one in Idaho, one in Montana, one in Nevada, two in Oregon, and three in Washington. Compare

that with the situation today. Of course, lots of other things have changed in the course of those seventy years. In 1932, the Associate Justices of the Supreme Court earned $20,000 a year, and members of Congress on both sides of the Capitol received $10,000 a year. The President of the United States, Herbert Hoover of California, received a salary of $75,000 per year. I believe this was the year in which Babe Ruth had asked the Yankees to give him a salary of close to $100,000; the management had replied in a startled tone that this was more than President Hoover received. Babe Ruth's response was "Yeah, but I had a better year than he did."

Now let us look at 1952. In that year about 1,200 petitions for certiorari were filed with our Court, but only a little over half of them were from the courts of appeals. Twenty years later -- in 1972, there were 3,600 petitions for certiorari filed. Now more than 70% were from the courts of appeals. And in the term just past, we had 7,600 petitions for certiorari, we heard and decided 90 cases, and all but 7 of them were from the courts of appeals. Thus the courts of appeals, as opposed to the highest courts of the states, have become the source of almost all of the cases that our Court hears.

The dockets of the courts of appeals themselves have increased exponentially. In 1952, 3,200 cases were filed in the courts of appeals, and there were 65 authorized judgeships to handle those cases. In 1972, almost five times as many cases were filed for a total of about 15,000, while the number of judges only grew by about 50%. Today there are 179 judgeships for the courts of appeals, but the number of cases filed in the courts of appeals, has soared to more than 57,000. In other words, in the past half-century, the number of federal appellate judges has not quite tripled, but the number of cases they have to decide has increased 18-fold. I daresay that it is this litigation explosion as it effects appellate judges that you will be discussing during this symposium.

Let me close by saying that one of the most enjoyable side benefits of being Chief Justice for 16 years has been the opportunity to meet and get to know other judges in the federal system. I attend judicial conferences of my own circuits -- the Fourth, the District of Columbia and the Federal -- and before becoming Chief Justice was assigned first to the Seventh Circuit as Circuit Justice, and then to the Ninth Circuit. My work with the Judicial Conference and the Federal Judicial Center has also enabled me to get to know other judges in the federal system. All of this convinces me that our country's federal judicial system is an admirable one, manned by first-rate people.

Thank you

---

**Search Tip:** Use the binocular icons to search within PDF documents.



(To view PDF files)    Adobe Access PDF to HTML conversion

Last Updated: February 8, 2005
Page Name: http://www.supremecourtus.gov/publicinfo/speeches/sp_10-21-02.html

http://www.supremecourtus.gov/publicinfo/speeches/sp_10-21-02.html                    2/22/2006