IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **ESTATE OF ROGER OWENSBY, JR.,** | : | **CASE NO. 1:01CV769** |
| **Plaintiff,** | : | Judge Spiegel |
| v. | : | |
| | : | **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO RESCHEDULE TRIAL DATE** |
| **CITY OF CINCINNATI, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

**I.    INTRODUCTION**

Police Officers Robert Jorg, Patrick Caton, Darren Sellers, Victor Spellen, and David Hunter will file a petition for writ of certiorari in the United States Supreme Court on or before March 7, 2006. The draft petition is at the printer and will be mailed to the Supreme Court either today or tomorrow. Any supposition in the Plaintiff's Memorandum in Opposition that the officers are acting to delay this case and do not intend to file a petition for writ of certiorari is false. The officers have been deprived of their entitlement to qualified immunity from suit and have the right to seek review by the Supreme Court.

There have been two significant qualified immunity decisions from the Supreme Court since this Court's May 2004 decision denying all the officers their qualified immunity defense and granting the estate's motion for summary judgment against Officers Sellers, Spellen, and Hunter. Those decisions highlight that this Court and the Sixth Circuit did not properly consider, in the requisite particularized sense, the failure to provide medical care claims against the officers. There have been other relevant rulings from the Sixth Circuit. The rulings from the

Supreme Court and Sixth Circuit justify, if not require, a *sua sponte* reconsideration by this Court. The Cincinnati police officers have other meritorious arguments in their petition for writ of certiorari. On balance, it is fair and reasonable that this Court delay the trial schedule to provide sufficient time for the Supreme Court to decide whether to accept the officers' petition for writ of certiorari.

II.    **THE DEFENDANTS' PETITION FOR WRIT OF CERTIORARI IS MERITORIOUS**

    A.    **The United States Supreme Court Established that Neither this Court nor the Court of Appeals Properly Analyzed the Defendants' Qualified Immunity Defense**

The defendants' have a meritorious claim to qualified immunity from suit on the claims that they unconstitutionally delayed providing medical care to Mr. Roger Owensby, Jr. In May 2004, this Court did not have available the Supreme Court's qualified immunity decision in *Brosseau v. Haugen*, 543 U.S. 194 (2004). That decision established that the qualified immunity defense requires an appropriate level of deference to police officers and that courts have to analyze the officers' conduct and the relevant law in a particularized sense. Instead, citing the earlier *Hope v. Pelzer*, 536 U.S. 730 (2002), this Court erroneously held that "it must be noted that the possibility that these procedures interject some arguably novel facts distinguishing this case from the facts contained in the controlling precedent does not entitle the officers to qualified immunity." 385 F.Supp.2d 626, 657 (2004). *Brosseau v. Haugen* dictates a different result.

In *Brosseau v. Haugen*, the Supreme Court conferred qualified immunity on a police officer because she did not have "fair notice" at the time, and under the specific circumstances of the case, that shooting an individual with a deadly weapon was unlawful. The Supreme Court emphasized the need to ascertain particularity and relevance when determining if a right alleged to have been violated was "clearly established." Police officers' actions falling in the "hazy

2

border" between the permitted and the proscribed are not "clearly established" under the law and do not deny an officer his qualified immunity defense.

In a few lines (Memorandum in Opposition, p. 12), the plaintiff ineffectively and summarily seeks to neutralize the significance of the Supreme Court's qualified immunity ruling in *Brosseau v. Haugen*. The plaintiff simply asserts that the case did not "establish any new standard of review in determining qualified immunity." If that was true, the Supreme Court would not have accepted and decided the case. The Supreme Court granted the petition for writ of certiorari in *Brosseau v. Haugen* on the question challenging whether the particular right to be free from excessive force was clearly established. 543 U.S. at 195. The Supreme Court bluntly stated that "the Court of Appeals [for the Ninth Circuit] was wrong on the issue of qualified immunity." *Id.*, at 198.

The reason the Court of Appeals for the Ninth Circuit was wrong is that it had not inquired whether the law at the time of the incident was clearly established in light of the specific context of the case, rather than just as a broad general proposition. *Id*. Similarly, this Court and the Sixth Circuit analyzed the law of providing medical care as a broad general proposition, rather than in the specific context of an arrestee in the physical custody of a different jurisdiction and police officers with only limited time and information available to them. Concerning the general proposition that use of force conduct may be unlawful, the Supreme Court was emphatic: "Yet that is not enough." *Id*. Like this Court and the Sixth Circuit, the Ninth Circuit erred by relying on "general tests" and "a high level of generality." *Id*., p. 199. The Supreme Court held that no case law "squarely governs" what force was excessive and that the police officer's use of force was in the "hazy border" between excessive and acceptable. *Id*., p. 201.

There is no principled way to distinguish the police officer's affirmative actions reviewed by the Supreme Court in *Brosseau v. Haugen* and the Cincinnati police officers' alleged failure to act in the case at bar. There was no case law in November 2000 that squarely governed the conduct of the officers on the scene of an arrest with limited information and time to know that the arrestee in the physical custody of another jurisdiction had cardiac arrest and cessation of breathing. At worst, from their perspective, the officers' conduct was in the "hazy border" between constitutionally culpable and acceptable.

There is no mistaking that the Supreme Court takes seriously officers' entitlement to qualified immunity from suit. The Supreme Court granted the petition for writ of certiorari in an Ohio case, *Foubert v. Lyons*, 543 U.S. 1033 (2004), to require further consideration by the Sixth Circuit in light of *Brosseau v. Haugen*. The Sixth Circuit did reconsider its ruling, and granted qualified immunity to the police officers. *Lyons v. City of Xenia*, 417 F.3d 565 (6th Cir. 2005). This Court, of course, did not have the benefit of the Sixth Circuit's decision applying the rule of *Brosseau v. Haugen* to the law as it existed at the relevant time. If, as the plaintiff erroneously claims, *Brosseau v. Haugen* did not "establish any new standard of review in determining qualified immunity," why did the Supreme Court grant the petition for writ of certiorari in *Lyons v. City of Xenia* and why did the Sixth Circuit reconsider and reverse its earlier decision?[1]

Cincinnati Police Officers Jorg, Caton, Sellers, Spellen, and Hunter cannot, as a practical matter, provide in this reply memorandum the entire content of their petition for writ of certiorari due in the Supreme Court on March 7, 2006. The plaintiff presents to this Court the same various observations relied upon to previously deny the police officers their qualified immunity

---

[1] The Supreme Court recently granted the petition for writ of certiorari in *Ash, et al. v. Tyson Foods, Inc.*, 2006 WL 386343 (February 21, 2006), in part because federal courts "have articulated various other standards." Similarly, the federal circuits have differently articulated or applied standards of review to claims of failure to provide immediate medical care.

4

defense. None of those observations demonstrate that any of the officers knew that Mr. Owensby had suffered cardiac arrest and cessation of breathing. Nor did the plaintiff present any case law satisfying the legal standard articulated in *Brosseau v. Haugen* requiring that, in order for this Court to deprive the Cincinnati officers of their entitlement to qualified immunity from suit, the law had to have been clearly established in the particularized sense in November 2000 and reasonably known to the officers.

The plaintiff emphasizes the culpability of Officer Brazile (Memorandum in Opposition, p. 9) (Officer Brazile used a flashlight to inspect Mr. Owensby in the back seat of the Golf Manor vehicle and believed that Mr. Owensby had a serious medical condition), but the plaintiff did not sue Officer Brazile. Officers Jorg, Caton, Sellers, Spellen, and Hunter are not vicariously liable for Officer Brazile's conduct.

The plaintiff also emphasizes that Mr. Owensby was in the custody of Golf Manor (Memorandum in Opposition, p. 17, citing the Sixth Circuit ruling). The Sixth Circuit ruled that "the Golf Manor officers unquestionably had custody of Owensby - at least during the time that he was locked in their cruiser - thereby creating a constitutional duty to provide him with adequate medical care." 414 F.3d 596, 603, n. 3. Officers Jorg, Caton, Sellers, Spellen, and Hunter are also not vicariously liable for the conduct of the Golf Manor officers.

  **B.**  **Under Circumstances Characterized by Limited Time and Information, the Appropriate Substantive Due Process Standard is "Malice and Intent to Harm"**

Medical care claims typically arise in circumstances where a detainee was in the custody of a facility for an extended period of time and the custodian had clear knowledge of concrete facts supporting the conclusions that the detainee had a serious medical condition and the

5

custodian had a subjective awareness of a significant risk to the detainee if medical care was not promptly provided.

The circumstances in the case at bar were very different. Mr. Owensby, an arrestee, "bolted" (in the words of the estate's counsel before the Sixth Circuit), he was tackled to the ground by City of Cincinnati police officers, a struggle ensued for about one minute twenty seconds to secure him in handcuffs, and Mr. Owensby was held in the physical custody of a Golf Manor vehicle guarded by Golf Manor police officers for about 5 ½ minutes. Under those circumstances, the "traditional deliberate indifference" substantive due process standard should not have been applied by the courts below to the alleged conduct of the Cincinnati police officers. The Cincinnati police officers did not have adequate time or information to deliberate or to be indifferent in the constitutional sense. Nor did they act with malice or intent to harm the arrestee.

The Supreme Court authorized application of the traditional "deliberate indifference" standard to failure to provide medical care claims only in the typical circumstances presented by custody in a facility for an extended period of time. *Farmer v. Brennan*, 511 U.S. 825 (1994). The Court subsequently clarified that the rationale for the traditional deliberate indifference standard "rests upon the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations. When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking." *County of Sacramento v. Lewis*, 523 U.S. 833, 853 (1998). The few minutes that any of the Cincinnati police officers were on the scene while Mr. Owensby was in the Golf Manor police vehicle do not, as a matter of law, constitute time for "unhurried judgments," "repeated reflection," "extended opportunities," or

6

"protracted failure." Furthermore, the officers had "competing obligations" such as evaluating their own condition after the struggle and retrieving police vehicles or dropped equipment.

The traditional deliberate indifference standard is an improper match to the circumstances presented by the case at bar involving only minutes at the scene and an arrestee in the custody of another jurisdiction's police vehicle. The substantive due process standard requiring proof of malice and intent to harm is the appropriate constitutional standard by which to judge the conduct of Cincinnati Police Officers Jorg, Caton, Spellen, Sellers, and Hunter.[2]

For example, the *en banc* United States Court of Appeals for the Eighth Circuit recently ruled that deputies responding in their vehicle to a domestic disturbance call did not have the luxury of having time to reflect and make unhurried judgments uncomplicated by competing obligations. *Terrell, et al. v. Larson, et al.*, 396 F.3d 975, 979 (8th Cir. 2005). The Eighth Circuit held that "every circuit to consider the issue has applied the [*County of Sacramento*] v. *Lewis* intent to harm standard to 'those myriad situations involving law enforcement and government workers deployed in emergency situations." *Id.*, p. 979. The *en banc* Court emphasized that "responding to this type of emergency within a police officer's assigned territory does not reflect the criminal recklessness that is a prerequisite to substantive due process liability under the deliberate indifference standard. Traffic accidents of this nature are tragic but do not shock the modern-day conscience." *Id.*, p. 981. The Court further emphasized that "[n]ot all deliberately indifferent conduct is conscience shocking in the constitutional sense of the term . . . . [T]he conscience-shocking standard is intended to limit substantive due process liability." *Id.*

---

[2] Even applying the traditional deliberate indifference standard, the officers are entitled to qualified immunity from suit since they did not have a subjective awareness of Mr. Owensby's serious medical condition or the risk to him from failing to provide immediate medical care.

7

Time and information are the two variables that determine which substantive due process standard applies. The traditional deliberate indifference standard applies to failure to provide medical care claims in circumstances when a detainee is held in a facility, there is clear knowledge of a serious medical condition, and there is reasonable time to deliberate. None of those circumstances existed for the Cincinnati police officers in this case. Mr. Owensby was held in a Golf Manor police vehicle, and the Cincinnati officers did not have adequate information and adequate time to deliberate. Under those circumstances, a Cincinnati police officer can be liable for unconstitutionally failing to provide medical care only if the officer acted with malice and intent to harm. The several minutes at the scene of the arrest in the case at bar are more like the emergency described in *Terrell, et al. v. Larson, et al.*, than like situations involving unhurried and extended time that warrant application of the traditional deliberate indifference standard.

Panels of the United States Court of Appeals for the Sixth Circuit have themselves variously applied a standard for failure to provide immediate medical care. Contrary to the Sixth Circuit panel in the case at bar, a different panel of the Sixth Circuit just granted the qualified immunity defense to two public officials because the officials only had "brief exposures" with the decedent and did not have "repeated opportunities" to know that proper care was not being provided. *Clark-Murphy v. Foreback, et al.*, 2006 WL 265460 (6th Circuit 2006). The time and knowledge available to those two officials during their eight-hour shifts far exceeded the time and knowledge available to the Cincinnati police officers during their several minutes on the scene of Mr. Owensby's arrest. In comparison, other officials in *Clark-Murphy v. Foreback, et al.*, were denied their qualified immunity defense because they each worked multiple eight-hour

shifts over a number of days and had direct information about the prisoner's serious medical condition.

Other panels of the Sixth Circuit justifiably apply the traditional deliberate indifference standard when a pretrial detainee is held in a facility, there is clear knowledge of a serious medical condition, and there is reasonable time to deliberate. *Estate of Carter, et al. v. City of Detroit, et al.*, 408 F.3d 305 (6th Cir. 2005); *Miller v. Calhoun County, et al.*, 408 F.3d 803 (6th Cir. 2005); *Garretson v. City of Madison Heights, et al.*, 407 F.3d 789 (6th Cir. 2005); *Blackmore v. Kalamazoo County, et al.*, 390 F.3d 890 (6th Cir. 2004). In the case at bar, Mr. Owensby was not held in a facility, the Cincinnati police officers did not have knowledge of his serious medical condition of cardiac arrest and cessation of breathing, and there was insufficient time to deliberate.

   **C.**  **The Plaintiff Must Prove that the Defendants' Conduct Proximately Caused Mr. Owensby's Death**

This Court ruled that the estate did not have to prove that the alleged failure to provide medical care to Mr. Owensby proximately caused injury to him. The Sixth Circuit affirmed the absence of proximate cause evidence by holding that medical proof is not required where an individual has a "serious need for medical care that was so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.*, p. 604 (quoting its own earlier opinion in *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004)). The Sixth Circuit held that "the estate need not prove that the officers' acts or omissions were the proximate cause of Owensby's death in order to hold the officers liable under section 1983." 414 F.3d at 604.

The Cincinnati police officers deny that they unconstitutionally deprived Mr. Owensby of medical care. However, even assuming *arguendo* it was true that they unconstitutionally

9

deprived Mr. Owensby of medical care, it is not true that the deprivation caused Mr. Owensby's death. This Court itself conceded that there are genuine issues of material fact about the cause of Mr. Owensby's death.

The Supreme Court has not eliminated the requirement that a plaintiff prove that allegedly unconstitutional conduct proximately caused a death. The cause of death in this case is a jury question and the Supreme Court will reverse the lower courts' rulings erroneously removing that burden of proof from the plaintiff estate.

> **D.    When Evaluating and Granting the Estate's Motion for Summary Judgment, This Court and the Sixth Circuit Should Not Have Considered the Officers' Qualified Immunity Defense in the Light Most Favorable to the Estate**

This Court and the Sixth Circuit reviewed the estate's allegations in the light most favorable to the estate (the moving party). The courts failed to require that the estate demonstrate the absence of genuine issues of material fact and entitlement to judgment as a matter of law that the officers did not have qualified immunity from suit. The imbalance created by the procedural deference conferred on the estate, the party moving for summary judgment, rather than the officers, is an issue that warrants Supreme Court review and reversal. When reviewing the estate's motion for summary judgment, the officers' evidence should have been believed, and all justifiable inferences should have been drawn in their favor. They did not know that Mr. Owensby had cardiac arrest and had stopped breathing. The coroner admitted that facial abrasions did not warrant immediate medical care and, in any event, were unrelated to Mr. Owensby's death. This Court acknowledged that the use of mace force against Mr. Owensby did not give rise to an "excessive risk." Mr. Owensby was in the physical custody of Golf Manor police officers. The Cincinnati officers had very limited time and information available to them.

On the estate's motion for summary judgment, the evidence should not have been viewed in the light most favorable to the estate.

### III.   CONCLUSION

The Supreme Court specifically and purposefully rearticulated the law governing the qualified immunity defense after May 2004 when this Court initially denied Cincinnati Police Officers Robert Jorg, Patrick Caton, Victor Spellen, Darren Sellers, and David Hunter their qualified immunity defense and held that Officers Spellen, Sellers, and Hunter were liable for unconstitutionally failing to provide medical care to Mr. Owensby.  The Supreme Court established that the qualified immunity defense requires significant deference to police officers acting under novel circumstances.   Furthermore, under the circumstances presented in this case, it is also necessary to review the officers' conduct by applying the substantive due process "malice and intent to harm."  In any event, none of the defendant officers knew that Mr. Owensby had cardiac arrest and had stopped breathing.  Even applying the traditional deliberate indifference standard, the officers did not unconstitutionally deprive Mr. Owensby of medical care. The officers' petition for writ of certiorari is meritorious.  They have a right to seek review in the United States Supreme Court.  This Court should reschedule the trial in this case to allow the Supreme Court sufficient time to review the officers' petition.

Respectfully submitted,

JULIA L. MCNEIL (0043535)
City Solicitor

s/ Richard Ganulin
RICHARD GANULIN (0025642C)
Assistant City Solicitor
Room 214, City Hall
801 Plum Street
Cincinnati, Ohio 45202
Telephone: (513) 352-3329

Fax: (513) 352-1515
richard.ganulin@cincinnati-oh.gov


s/ Donald E. Hardin_____
DONALD E. HARDIN (0022095)
Hardin, Lefton, Lazarus & Marks
915 Cincinnati Club Building
30 Garfield Place
Cincinnati, Ohio 45202
(513) 721-7300
(513) 721-7008 FAX
donhardin@hllmlaw.com


s/ Ravert J. Clark_____
RAVERT J. CLARK (0042027)
114 East Eighth Street
Cincinnati, Ohio 45202
(513) 587-2887
(513) 621-2525 FAX
notguilty14@aol.com


## CERTIFICATE OF SERVICE

I hereby certify a true and accurate copy of the foregoing Defendants' Reply Memorandum in Support of Motion to Reschedule Trial Date was filed electronically this 2nd day of March, 2006. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Richard Ganulin_____
RICHARD GANULIN (0025642C)
Assistant City Solicitor

Owensby Reply Schedule 0306-RG(skj)