UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF | : | |
| ROGER D. OWENSBY JR., | : | |
| | : | |
| | : | Case No. 01-CV-769 |
| Plaintiff, | : | |
| | : | Senior Judge S. Arthur Spiegel |
| v. | : | |
| | : | |
| CITY OF CINCINNATI, et al., | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO TAKE A THIRD TRIAL DEPOSITION OF CYRIL WECHT, M.D. (Doc. 225)**

**I.      INTRODUCTION**

In yet another in a long line of motions designed to delay the trial of this action, Defendants now move this Court for leave to reopen for a third time the trial testimony of Dr. Cyril Wecht—a nationally renowned forensic pathologist and Coroner for Allegheny County, Pennsylvania. *The City of Cincinnati originally selected and hired Dr. Wecht.* In fact, the City was so pleased with Dr. Wecht's work that it gave it to the media, cited it in administrative disciplinary proceedings against the officers, and published it to the world on its website. Now, Cincinnati seeks to disavow its chosen expert because his opinions do not fit with its position in this litigation.

Defendants proffer two reasons for reopening Dr. Wecht's trial testimony. First, they wish to attack Dr. Wecht's "honesty, integrity, credibility and reputation" with the fact that he is

now under indictment.[1]   Second, Defendants' claim that they now have "learned of recent medical/forensic experimental studies [which they fail to disclose] that they believe conclusively disprove Dr. Wecht's opinion that Roger D. Owensby, Jr. died of mechanical or positional asphyxiation."[2]

Neither reason justifies reopening the trial testimony of Dr. Wecht for a third time.  It is basic hornbook law that an indictment is a legal nullity, inadmissible to attack a witness' credibility.  Thus, *as a matter of law*, the politically-motivated indictment of the Pittsburgh Coroner is inadmissible and cannot serve as the basis for reopening the trial testimony.

Likewise, *as a matter of law*, the Defendants are bound by the Hamilton County Coroner's finding that Roger Owensby died of mechanical asphyxiation.

These Defendants cross-examined Dr. Wecht extensively on two prior occasions on the medical subjects that they now claim they need to cover.  Therefore, there is no valid reason to reopen the trial testimony of Dr. Wecht for a third time to discuss "experimental studies."[3]

In truth, this is nothing but another attempt to delay the trial of this civil rights / wrongful death action.  Defendants know that an indicted witness will not sit for a deposition within the next month to be questioned about the allegations that comprise the indictment.  Instead,

_____

[1]Doc. 225, Motion, pp. 1-2.  Defendants neglect to inform the Court that Dr. Wecht had previously been indicted <u>before</u> the City hired him and Defendants never bothered to cross-examine him about that prior indictment at either of the two previous trial depositions.

[2]*Id.*

[3]In fact, the unidentified "experimental studies" are not admissible since expert testimony must be based upon "reliable principals and methods" which have been reliably applied to the "facts of the case."  Rule 702, Fed. R. Evid.  Experimental studies, by definition, are not based upon proven reliable principals and methods and have not been applied to the facts of the case.

Defendants hope that, if this Court allows the trial deposition to be reopened, the trial will have

to be delayed yet again until Dr. Wecht can discuss the matters surrounding the indictment,

which may be years in the future. Such a result would constitute a complete denial of justice for

the Owensby family who have been waiting for their day in court now for over five years.

## II.    FACTS

### A.    The City of Cincinnati Selected and Hired Dr. Wecht For A "Second Opinion" In This Complex Case.

Soon after Mr. Owensby's November 7, 2000 death, the Hamilton County Coroner

performed a thorough autopsy, tissue analysis, and toxicology blood analysis and determined that

Mr. Owensby's death was a "homicide (police intervention:  asphyxiation during restraint

attempts)."[4]  The cause of death was "mechanical asphyxia."[5]

In June 2002, the City of Cincinnati's Office of Municipal Investigations ("OMI") hired

Dr. Cyril Wecht, a nationally renowned forensic pathologist, to obtain a "second opinion"

concerning the death of Mr. Owensby.[6]

The City of Cincinnati provided Dr. Wecht with access to all of the pathology reports,

tissue samples, photographs of the autopsy performed by Deputy Hamilton County Coroner, Dr.

Schultz, as well as witness statements procured by OMI.  OMI investigators also met with Dr.

Wecht to ensure that he had all available information.  At that time, Dr. Wecht had been

previously the victim of a highly publicized political indictment (and was acquitted) for the same

alleged misconduct that comprises the present indictment.

---

[4] Exhibit 103, Coroner's Report.

[5] *Id.*

[6] Exhibit A, Gregory Korte, *Forensic Expert Hired to Review Owensby Case*, The Cincinnati Enquirer, June 29, 2002.

**B.    The City of Cincinnati Adopted Dr. Wecht's Findings and Opinions.**

In September, 2002, Dr. Wecht issued his report to the City of Cincinnati.  This "second opinion" verified that Mr. Owensby's homicide was, in fact, the result of mechanical asphyxiation at the hands of the police. While supportive of Dr. Schultz's findings, Dr. Wecht's report and opinions are not duplicative.  To the contrary, the report and testimony of Dr. Wecht expand upon the Coroner's findings by explaining how the mechanical asphyxiation occurred, the roles the various police officer defendants played in causing the asphyxiation, and in explaining the pain and suffering resulting from the asphyxiation.[7]

Within days of receiving Dr. Wecht's report, the City initiated formal administrative disciplinary proceedings against the police officers who killed Mr. Owensby.[8]  In those formal charges the City Manager and Chief of Police adopted the findings of the Hamilton County Coroner and Dr. Wecht that Roger Owensby died of mechanical asphyxiation at the hands of their police officers.[9]   An Administrative Hearing Officer conducted disciplinary proceedings, at which the affected employees were permitted to bring witnesses on their behalf, and were represented by counsel.[10]  The final result of the administrative hearings was that one defendant

---

[7]Exhibit 108, 9/10/02 Report of Cyril Wecht, M.D., J.D., to the City of Cincinnati.

[8] Exhibit 122, October 14, 2002 Memorandum from City Manager to Chief of Police titled "Roger Owensby, Jr.—Disciplinary Hearing Recommendations."

[9]Exhibit 27, Part II.  The entire scanned copy of Exhibit 27, Cincinnati Pre-Disciplinary Hearing Report, is attached to Doc. 108, Plaintiff's Reply in Support of Summary Judgment.

[10]Exhibit 122, Charges against Officer Caton.

officer (Patrick Caton) was terminated,[11] and others were disciplined.

In addition to posting Dr. Wecht's expert report on its internet web page and issuing it to the public in a press release,[12] the City of Cincinnati produced Dr. Wecht's report to the Plaintiff in discovery. Having disciplined the police officers based, in part, on the pathology opinions of the Hamilton County Coroner and Dr. Wecht,[13] the City of Cincinnati and its police officers now want to disavow the findings of Dr. Wecht to accommodate their new theory that Mr. Owensby died of a heart attack.

### C.    Dr. Wecht's First Trial Deposition: February 25, 2004.

Defendants' attempt to prevent Plaintiff from obtaining Dr. Wecht's trial testimony was denied by this Court.[14] Thereafter, on February 25, 2004, the parties traveled to Pittsburgh and took the video trial testimony of Dr. Wecht.

During that videotaped testimony, Dr. Wecht addressed Defendants' new contention that Mr. Owensby died of a "sudden cardiac attack." Specifically, Dr. Wecht testified, to a reasonable degree of medical certainty, that there was no evidence of significant cardiac disease

---

[11]Officer Caton was later reinstated by an arbitrator. However the cause of death was never challenged and the finding that Officer Caton failed to provide medical care to Mr. Owensby was sustained. *City of Cincinnati v. Queen City Lodge No. 69, F.O.P.*, 2005 Ohio 6225, ¶¶ 4 and 13, 2005 Ohio App. LEXIS 5601, *5 and 8 (1st App. Dist. Nov. 23, 2005), attached.

[12]Exhibit B, Gregory Korte, *Coroner's Review Verifies Owensby's Cause of Death*, The Cincinnati Enquirer, Sept. 13, 2002; Exhibit C, Craig Garretson, *Report Blames Ex-Officer for Death*, The Kentucky Post, Sept. 13, 2002; Exhibit D, Liz Foreman, *Outside Expert: Police Officer Killed Roger Owensby*, WCPO 9 News, Sept. 12, 2002.

[13]Exhibit E,Craig Garretson, *Internal Reports Fault Officers*, The Cincinnati Post, Oct. 15, 2002.

[14]Doc. 80, Order.

and that, absent the mechanical asphyxiation, Mr. Owensby would not have died as a result of any cardiac condition.[15]  Dr. Wecht was shown the affidavit of Defendants' proffered expert, Dr. Wetli, and questioned extensively about Defendants' new-found theory that Mr. Owensby died of "sudden cardiac death" as opposed to mechanical asphyxia as found by the Hamilton County Coroner.[16]

Counsel for the City of Cincinnati cross-examined Dr. Wecht on his qualifications, training and experience in the field of forensic pathology.[17]  Defense Counsel cross-examined Dr. Wecht on the compensation that he received for his time in connection with this matter.[18]  Dr. Wecht was cross-examined concerning both of the Defendants' newly-acquired defense experts on sudden cardiac death, Dr. Welti and Dr. Newman.[19]  And, contrary to Defendants' present assertion that they need to examine Dr. Wecht on "experimental studies,"[20] Dr. Wecht was already cross-examined by the Defendants concerning:

- whether he ever participated in any studies regarding asphyxiation;[21]

- whether he ever participated in any studies regarding sudden cardiac death;[22]

---

[15]Wecht 2/25/04 Depo., p. 55:12-19.

[16]*Id.* at 72:7 - 81:19; 125:2 -126:18; 133:2 - 135:1; 139:1 - 141:19.

[17]*Id.* at 83:15 - 92:21; 108:3 - 109:18.

[18]*Id.* at 28:23 - 29:5; 94:20 - 95:8; 97:23 - 99:7; 160:3-15.

[19]*Id.* at 105:1 - 107:7.

[20]Doc. 225, Memorandum, p. 3.

[21]Wecht 2/25/04 Depo., p. 107:8-19.

[22]*Id.* at 107:20 - 108:2.

6

- the medical literature concerning sudden cardiac death;[23]

- whether he was familiar with a 2004 New England Medical Journal article by a Dr. Merrin concerning deaths of athletes from blows to the chest;[24]

- whether he was aware of studies indicating that acute myocarditis could result in sudden cardiac death;[25]

- whether he was aware of medical literature indicating that old myocarditis, which causes fibrosis, could cause cardiac arrhythmia;[26]

- whether he had conducted or was aware of any studies indicating the amount of weight needed to be placed on a person's back before the person would be unable to breathe;[27]

- whether he conducted any studies as to the length of time it would take for an individual to become unconscious from mechanical asphyxiation;[28] and,

- whether he conducted any studies in to the amount of time it takes a person in full cardiac arrhythmia to become unconscious;[29]

Thus, Defendants' argument that they now need to cross-examine Dr. Wecht for a third time concerning "scientific/medical experimental studies and findings"[30] is unfounded.

---

[23]*Id.* at 124:5-18.

[24]*Id.* at 126:8-18.

[25]*Id.* at 133:2-7.

[26]*Id.* at 134:11 - 135:1.

[27]*Id.* at 141:24 - 142:14.

[28]*Id.* at 142:22 - 143:1.

[29]*Id.* at 143:2-6.

[30]Doc. 225, Memorandum, p. 3.

**D.      Dr. Wecht's Second Trial Deposition: November 15, 2004.**

A month before the scheduled June 14, 2004 trial of this case, Defendants sought to reopen Dr. Wecht's trial testimony, claiming that they needed to examine him concerning a double hearsay hand written note that they "discovered" after the first deposition.[31]  Plaintiff opposed the motion, arguing that this was simply an attempt to delay the trial, would impose an unfair burden on Plaintiff in having to travel to Pittsburgh within weeks of the trial, and pointing out that all of the subjects identified in the note were, in fact, covered at the original trial deposition.[32]  Upon consideration of all arguments, the Magistrate Judge denied Defendants' Motion.[33]

Thereafter, Defendants filed their interlocutory appeals of this Court's Order denying qualified immunity to the police officer defendants.[34]  Also, in conjunction with the interlocutory appeals, the Defendants moved this Court to vacate the scheduled trial and stay the proceedings pending the appeal.[35]  When the Sixth Circuit accepted the appeal, this Court had no choice but to grant Defendants' motion to vacate the trial.[36]  Having already vacated the trial, Defendants then  objected to the Magistrate Judge's Order.  Under these circumstances, the Court granted

---

[31]Doc. 152, Motion to take Supplemental Deposition of Dr. Wecht.

[32]Doc. 159, Plaintiff's Opposition to Supplemental Deposition of Dr. Wecht.

[33]Doc. 183, Order Denying Motion To Take Supplemental Deposition of Dr. Wecht.

[34]Doc. 171, Notice of Interlocutory Appeal; Doc. 186, Notice of Sixth Circuit Case Number Assigned to Interlocutory Appeal.

[35]Doc. 176, Motion to Vacate Schedule and Stay Proceedings.

[36]Doc. 184, Order.

Defendants leave to reopen Dr. Wecht's trial testimony while the appeal was pending.[37]  As a result, on November 15, 2004, a second trial deposition of Dr. Wecht was taken by these same Defendants at Dr. Wecht's Pittsburgh office.

**E.    Defendants Now Seek To Take Dr. Wecht's Trial Testimony A Third Time.**

Again, a month before trial, these same Defendants seek leave to reopen Dr. Wecht's trial testimony a third time.  Now, the articulated reason for this delay tactic is that Dr. Wecht is under indictment.

Defendants have no evidence of any misconduct by Dr. Wecht in this case.  They have no evidence that any of the allegations in the indictment are true.  They have nothing more than an indictment.

Of course, these Defendants know that Dr. Wecht, facing this indictment, will be unable to sit for a deposition within the next month.[38]  Therefore, if this Court were to grant this motion to take a third trial deposition of Dr. Wecht, Defendants would accomplish their main goal—the trial would be delayed once again.

**III.    ARGUMENT**

**A.    An Indictment Is Inadmissible And Is Not A Basis For Reopening Dr. Wecht's Trial Testimony.**

An indictment is nothing more than an arrest or a charge and cannot be used to impeach the credibility of a witness.  This has been the law for over a century.

Sixty years ago the Supreme Court succinctly explained that a witness may not be

_____

[37]Doc. 189, Order.

[38]Exhibit F, Paula Reed Ward, *Wecht Indicted By Grand Jury*, Pittsburgh Post-Gazette, Jan. 21, 2006 ("...defense lawyers put Dr. Wecht under a strict order not to speak publicly...").

impeached over the fact that he was arrested or charged with a crime.

> Arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty. Only a conviction, therefore, may be inquired about to undermine the trustworthiness of a witness.[39]

Fifty-five years ago, the Sixth Circuit echoed the Supreme Court as to this basic tenet by quoting a 1906 Eight Circuit decision.

> . . . nothing short of a conviction of a crime is admissible for the purpose of impeachment. A mere accusation or indictment will not be admitted, for the reason that innocent men are often arrested charged with a criminal offense.[40]

In 1975, the Federal Rules of Evidence became effective and codified Federal common law into Rule 609, Fed. R. Evid. The Sixth Circuit continues to reiterate this hornbook law that indictment for a crime is insufficient to render it admissible as impeachment if there is no conviction.[41]

In fact, this very circumstance was addressed by the Fifth Circuit 35 years ago. In *Jenkins v. General Motors Corp.*, 446 F.2d 377, 381 (5th Cir. 1971), a party was precluded from introducing, for purposes of impeachment, evidence that the other party's expert was under

---

[39]*Michelson v. United States*, 335, U.S. 469, 482 (1948).

[40]*Pearson v. United States*, 192 F.2d 681, 699 (1951), *quoting Glover v. United States*, 147 F. 426, 429-30 (8th Cir. 1906); *Westwater v. Lyons*, 193 F. 817 (3d Cir. 1912); *Pittman v. United States*, 42 F.2d 793 (8th Cir. 1930); *Simon v. United States*, 123 F.2d 80 (4th Cir. 1941).

[41] *American Environmental Enter., Inc. v. Health Environment Loss Prevention*, 1990 U.S. App. LEXIS 22027, *20 (6th Cir. Dec. 17, 1990) ("evidence of an indictment is not admissible at trial to impeach a witness. Fed. R. Evid. 609"), attached; *United States v. Chance*, 306 F.3d 356, 385 (6th Cir. 2002); *United States v. Edgecombe*, 107 Fed. Appx. 532, 538, 2004 U.S. App. LEXIS 17807, *15-16 (6th Cir. Aug. 17, 2004), attached.

indictment for perjury.  In so ruling the Fifth Circuit acknowledged, "the well settled rule in Federal courts has also been to require that a conviction be had in order to undermine the trustworthiness of a witness."[42]  Defendants provide no authority supporting their position that this Court should ignore the Supreme Court, the Fifth and Sixth Circuits, the Federal Rules of Evidence, and hornbook law.

Throughout their Motion, Defendants report as "facts" the mere unsubstantiated and inadmissible allegations of the indictment.  For example, on the first page of their Memorandum, Defendants report that from 1997 to 2004, Dr. Wecht "was devoting 100% of his time to his private consulting practice which grossed over $8.75 million in income."[43]  This is nothing but unsubstantiated allegations taken verbatim from the indictment.[44]  As discussed above, such inadmissible statements belong under the heading of "allegations," not "facts."

Further, Defendants repeatedly cite to Dr. Wecht's resignation as Medical Examiner of Allegheny County as an admission of wrongdoing.[45]  This too is inaccurate speculation.  The truth is that when Dr. Wecht recently accepted the position as Medical Examiner for Allegheny County in the midst of a political feud with the District Attorney, he agreed to resign immediately if indicted.  His resignation was written in advance and placed on file with the County Chief Executive.  True to his word, the day that the indictment was issued, Dr. Wecht submitted his resignation.[46]  Thus, the resignation is not an admission of guilt.

---

[42]*Jenkins*, 446 F.2d at 381.

[43]Doc. 225, Memorandum, p. 1.

[44]Doc. 225, Exhibit A, Indictment, ¶¶ 20 and 22.

[45]Doc. 225, Motion, p. 1, and Memorandum, p. 4.

[46]Exhibit F, Paula Reed Ward, *Wecht Indicted By Grand Jury*, Pittsburgh Post-Gazette, Jan. 21, 2006; Exhibit J, Dennis B. Roddy, *Wecht Legal Team Tries To Head Off Indictment*,

**B.**     **The Indictment Cannot Serve as a Basis For a *Daubert* Challenge.**

Defendants state that they were offered the opportunity but elected not to voir dire Dr.

Wecht as to his qualifications and fitness to express his opinions.[47]  This is inaccurate.  They did

question Dr. Wecht about his qualification, experience and compensation at his first trial

deposition.[48]

Now, they argue that they should be allowed to reopen Dr. Wecht's trial testimony again

for the expressed purpose of questioning Dr. Wecht "on the effect the indictment has or will have

on his then current positions, appointments, licenses and memberships."  As clearly established

by the Supreme Court, the Fifth and Sixth Circuits, and Evidence Rule 609, such questioning is

absolutely prohibited and cannot serve as the basis for reopening Dr. Wecht's trial testimony.

Defendants also argue that they should be allowed to voir dire Dr. Wecht with "evidence

directly related to Dr. Wecht's honesty, integrity, credibility and reputation."[49]  However, the

only "evidence" that Defendants have is the inadmissible indictment.  As established for the past

100 years, examination directed to credibility of a witness based upon an indictment is absolutely

prohibited.[50]

---

Pittsburgh Post-Gazette, Jan. 20, 2006.

[47]Doc. 225, Memorandum, p. 2

[48]Wecht 2/25/04 Depo., pp. 83:15 - 92:21; 97:23 - 99:7; 108:3 - 109:18.

[49]Doc. 225, Memorandum at 4.

[50]*Grove v. United States*, 147 F. 426, 429-30 (8th Cir. 1906); *Jenkins v. General Motors Corp.*, 446 F.2d at 381.

C.    **The Indictment Is Politically Motivated Retribution Against Dr. Wecht For His Forensic Findings Against Police Officers.**

Like the Hamilton County Coroner, Dr. Wecht's position as the Coroner for Allegheny County is a political position.  As such, Dr. Wecht has been involved in Pittsburgh politics since the 1960s.  In 1978, Dr. Wecht was elected chairman of the Allegheny County Democratic Party, defeating Allegheny Sheriff Gene Coon.[51]  In the 1960s and 1970s Dr. Wecht's work as the Coroner often pitted him in feuds against Sheriff Coon and the District Attorney.[52]  In what can only be described as a "political coincidence," on the day that Dr. Wecht announced his candidacy for county commissioner against Sheriff Coon, someone leaked to the press that Dr. Wecht maintained a separate bank account for out-of-county autopsies.[53]

In 1979, Dr. Wecht was indicted by the District Attorney for the same alleged misconduct that is at the heart of the present indictment—allegedly profiting from private work while on the county payroll.  In 1981, Dr. Wecht was acquitted of all charges.[54]  Presumably, Cincinnati knew this public information when it elected to hire Dr. Wecht in 2002.  Certainly, the Defendants knew this when they examined Dr. Wecht in February and again in November of 2004.

Now, 25 years later, the present indictment again arises after more political sparring

---

[51]Exhibit G, James O'Toole, *Wecht No Stranger To Controversy*, Pittsburgh Post-Gazette, Jan. 21, 2006.

[52]*Id.*

[53]Exhibit M, Bob Batz, Jr., *Cyril H. Wecht: Up-Close and Personal with the Candidates for Allegheny County Executive*, Pittsburgh Post-Gazette Magazine, October 24, 1999, at 5.

[54]*Id.*

between Dr. Wecht and the District Attorney as well as the United States Attorney.[55] This time, the political dispute concerns whether Dr. Wecht, as the Allegheny County Coroner, had the authority to conduct coroner inquests.[56] Many of Dr. Wecht's proposed inquests involved deaths of citizens at the hands of police.[57]

Such political pressure on the coroner to avoid findings critical of the police is not unusual. The Hamilton County Coroner, Carl Parrott, lost his job in the 2004 election, in large part, as a result of the campaign waged against him by the Fraternal Order of Police because of his determination that the police officer defendants in this case caused the asphyxiation death of Roger Owensby, Jr.[58]

---

[55]Exhibit F, Paula Reed Ward, *Wecht Indicted By Grand Jury*, Pittsburgh Post-Gazette, Jan. 21, 2006; Exhibit G, James O'Toole, *Wecht No Stranger To Controvery*, Pittsburgh Post-Gazette, Jan. 21, 2006; Exhibit H, Joe Smydo, *Feud Pits 2 Powerful Dems Against Each Other*, Pittsburgh Post-Gazette, Feb. 13, 2005; Exhibit I, Jim McKinnon, *Judge Blocks Wecht On 2 Open Inquests*, Pittsburgh Post-Gazette, July 15, 2005.

[56]Exhibit H, Joe Smydo, *Feud Pits 2 Powerful Dems Against Each Other*, Pittsburgh Post-Gazette, Feb. 13, 2005; Exhibit I, Jim McKinnon, *Judge Blocks Wecht On 2 Open Inquests*, Pittsburgh Post-Gazette, July 15, 2005; Exhibit J, Dennis B. Roddy, *Wecht Legal Team Tries To Head Off Indictment*, Pittsburgh Post-Gazette, Jan. 20, 2006.

[57]Exhibit H, Joe Smydo, *Feud Pits 2 Powerful Dems Against Each Other*, Pittsburgh Post-Gazette, Feb. 13, 2005; Exhibit I, Jim McKinnon, *Judge Blocks Wecht On 2 Open Inquests*, Pittsburgh Post-Gazette, July 15, 2005; Exhibit N, Michelle K. Massie, *Wecht: Charge Police in Mount Oliver Death*, Pittsburgh Post-Gazette, July 22, 2003 (death of Charles Dixon as a result of positional asphyxia from police restraint); Exhibit K, *Judge Rules for Zappala, Against Wecht*, Pittsburgh Post-Gazette, Sept. 14, 2005 (death of John Trojan who was shot three times, but police claim that Mr. Trojan committed suicide by shooting himself three times); Exhibit O, Bill Schackner, *Over 100 Marchers Criticize Police in Deaths of Black Men*, Pittsburgh Post-Gazette Sept. 7, 2003 (death of Bernard Rogers who was shot by a Housing Authority officer).

[58]Exhibit L, Cindi Andrews, *Owens Endorsed By FOP In County Coroner's Race*, The Cincinnati Enquirer, Oct. 1, 2004; Exhibit P, *Two Good Choices*, The Cincinnati Post, Oct. 25, 2004.

Thus, in addition to being inadmissible, the indictment of Dr. Wecht appears to be political retribution for attributing causes of death to actions by the police. This is no basis for reopening Dr. Wecht's trial testimony.

> **D.** **As a Matter of Law, Defendants Are Precluded from Challenging the Finding That Mr. Owensby Died at the Hands of the Cincinnati Police as a Result of Mechanical Asphyxiation.**

The Hamilton County Coroner ruled that Mr. Owensby's death was a "homicide (police intervention: asphyxiation during restraint attempts)."[59] The Coroner specifically found that the cause of death was "mechanical asphyxia."[60]

Under Ohio Rev. Code § 313.19, the coroner's finding is binding unless and until it is set aside by the court of common pleas:

> The cause of death and the manner and mode in which the death occurred, as delivered by the coroner and incorporated in the coroner's verdict and in the death certificate filed with the division of vital statistics, ***shall be the legally accepted manner and mode in which such death occurred, and the legally accepted cause of death***, unless the court of common pleas of the county in which the death occurred, after a hearing, directs the coroner to change his decision as to such cause and manner and mode of death.

The Ohio Supreme Court has held that this statute creates a rebuttable presumption as to the manner and mode of death *"and the legally accepted cause of death"*—which can be rebutted only in the appropriate common pleas court: "the coroner's factual determinations *shall be accepted* unless, following a hearing, the common pleas court directs the coroner to change such determination."[61] The proper means by which a party can challenge the coroner's finding is only

---

[59]Exhibit 103, Coroner's Report.

[60]*Id.*

[61] *Vargo v. Travelers Insurance Company*, 34 Ohio St. 3d 27, 29, 516 N.E.2d 226, 229 (1987) (emphasis supplied).

by a statutory proceeding initiated in the relevant common pleas court.[62]

The Ohio Supreme Court made this clear in a case involving the Hamilton County Coroner, holding that the statute "outlines a special statutory procedure allowing judicial review of a coroner's verdict" over which "[j]urisdiction and venue . . . *are exclusively vested in the common pleas court of the county in which the death occurred.*"[63]

The Sixth Circuit has also applied Ohio Rev. Code § 313.39 in precluding such an improper collateral attack upon the findings of the coroner. *Callihan v. Sudimack*[64] is a § 1983 action brought by heirs who alleged that the Trumbull County Coroner violated their constitutional rights when he incorrectly determined a cause of death due to overdose rather than strangulation.[65]  In affirming dismissal of the plaintiff's § 1983 claims, the Sixth Circuit relied upon Ohio Rev. Code § 313.19:

> Ohio law provides a procedure through which an individual may challenge a coroner's findings regarding the cause of death.  Under this provision, the court of common pleas of the county in which the death occurred may, after a hearing, direct the coroner to change his decision as to the cause, manner, or mode of death.[66]

---

[62]*Estate of Severt v. Wood, Coroner,* 107 Ohio App.3d 123, 126, 667 N.E.2d 1250, 1252 (Wood App. 1995) (citing cases).

[63]*Perez v. Cleveland, Coroner*, 78 Ohio St.3d 376, 377, 678 N.E.2d 537 (1997) (emphasis suppllied).

[64] 1997 U.S. App. LEXIS 17731 (6th Cir. July 10, 1997), attached.

[65] *Id.* at *3-4.

[66] *Id.* at *11-12 *citing* Ohio Rev. Code 313.19; *Estate of Severt v. Wood*, 107 Ohio App. 3d 123, 667 N.E.2d 1250 (Ohio App. 1995); *State ex rel. Blair v. Balraj*, 69 Ohio St. 3d 310, 631 N.E.2d 1044 (Ohio 1994) (noting that action for declaratory judgment is the proper way to challenge a coroner's findings pursuant to Ohio Rev. Code 313.19).

Two years later the Sixth Circuit again determined that Ohio Rev. Code § 313.19 applies in a § 1983 action. In *Emph v. Sudimack*, heirs sued for constitutional violations arising out of the classification of a death as accidental when, after exhumation, it was determined to be a murder.[67] In barring the plaintiff's § 1983 action as beyond the four-year statute of limitations, the Sixth Circuit again noted that "appellants could have successfully challenged the appellees' refusal to exhume and autopsy Morris' body in a declaratory judgment action under Ohio Rev. Code § 313.19 in the court of common pleas."[68]

Here, Defendants had over five years to bring the appropriate special statutory action in the Hamilton County Court of Common Pleas. They have not done so. Instead, the City embraced the coroner's findings in disciplining the police officers who killed Mr. Owensby, hired a renowned forensic pathologist who confirmed those finding, and distributed his report to the community, the press, and the entire Internet-using world.

Therefore, as a matter of law, these Defendants are precluded from asserting that Mr. Owensby died from "sudden cardiac death," a "heart attack" or any other means. Any attempt to now reopen Dr. Wecht's trial testimony to again question him on these topics is improper, because the cause of death is not a question open to factual or legal dispute.

### E.    The City of Cincinnati Is Estopped from Challenging the Finding That Mr. Owensby Died at the Hands of the Cincinnati Police as a Result of Mechanical Asphyxiation.

In the administrative disciplinary proceedings initiated by Defendants City of Cincinnati and its Police Chief against some of the police officers after receipt of Dr. Wecht's report, the

---

[67] 1999 U.S. App. LEXIS 12022, *2-4 (6th Cir. June 7, 1999), attached.

[68] *Id.* at *8.

City took the position that Roger Owensby's death was a "homicide (police intervention: asphyxiation during restraint attempts)" and that the cause of death was "mechanical asphyxiation."[69]  The City prevailed on these disciplinary claims against a number of the police officer defendants including Defendant Office Caton.[70]

This exact issue was found to constitute judicial estoppel in *Czajkowski v. City of Chicago*, 810 F. Supp. 1428 (N.D. Ill. 1993), where the court held that the City was judicially estopped in a § 1983 civil rights action from denying that a police officer scratched the plaintiff's chest with a key because it had taken the position in administrative disciplinary proceedings against the officer that he had committed the assault.  The court rejected a blizzard of supposed policy concerns the City raised against application of judicial estoppel:  "*The City prevailed on the scratched chest issue in the Police Board issue so the requirement of prevailing on the issue in the prior proceeding is satisfied.*"[71]  Plaintiff previously fully briefed the issue of judicial estoppel in prior memorandums and, thus, incorporates those discussions here to avoid duplication.[72]

As with *Czajkowski*, the City of Cincinnati took the position in the administrative

---

[69] Exhibit 27, Part II.pdf.  The entire scanned copy of Exhibit 27, Cincinnati Pre-Disciplinary Hearing Report, is attached to Doc. 108, Plaintiff's Reply.

[70]Officer Caton was eventually reinstated but the charges relating to his denial of medical care to Mr. Owensby were sustained.  *City of Cincinnati v. Queen City Lodge No. 69, F.O.P.*, 2005 Ohio 6225, ¶ 13, 2005 Ohio App. LEXIS 5601, *8 (1st App. Dist. Nov. 23, 2005), attached..

[71] *Czajkowski*, 810 F. Supp. at 1444 (emphasis supplied).

[72]*See* Doc. 108, Plaintiff's Reply Memorandum in Support of Summary Judgment, pp. 18-21; Doc. 131, Plaintiff's Surreply Memorandum, pp. 6-15.

disciplinary proceedings that the actions of Defendant Officer Caton led to the injury of Roger

Owensby which resulted in his mechanical asphyxiation death, as found by the Hamilton County

Coroner. Thus, the City is judicially estopped from now switching its position to challenge the

Coroner's findings and assert with Dr. Wecht that Mr. Owensby died of an unforseen heart

attack.

## IV.    CONCLUSION

A month before trial, over two years after the discovery cutoff, Defendants proffer two

reasons for revisiting Dr. Wecht's deposition testimony a third time. They want to impeach him

with an indictment and they want to cross-examine him on unspecified "experimental studies"

that allegedly would challenge the mechanical asphyxiation cause of death finding of the

Hamilton County Coroner and Dr. Wecht. Both proffered reasons are meritless.

For over a century, the unequivocal law has provided that a party may not impeach a

witness with an indictment. Thus, Defendant are precluded from such impeachment here.

It is equally clear that, pursuant to Ohio Rev. Code § 313.19, Defendants are precluded,

as a matter of law, from challenging the cause of death determination of mechanical

asphyxiation. Further, having adopted and succeeded in obtaining administrative sanctions based

upon this cause of death determination, the City of Cincinnati is judicially estopped from now

contending that Mr. Owensby died from some other cause.

The true motivation behind this Motion is to further delay this trial because Defendants

know that Dr. Wecht, facing indictment, could never sit for a deposition discussing the facts of

that indictment before the April 3 trial date. The Owensby family have waited for over five years

for their day in court. They have suffered numerous meritless delays of the trial at the hands of

19

these Defendants.  No further delay is justified.  Defendants' motion to again reopen Dr. Wecht's

trial testimony should be denied.

                                        Respectfully submitted,


                                        /s/Paul B. Martins
Mark T. Tillar (0029898)                James B. Helmer, Jr.  (0002878)
105 E. Main Street, Ste. 202            Paul B.  Martins (0007623)
Mason, Ohio  45040                      HELMER, MARTINS, RICE
Telephone: (513) 770-0264                     & POPHAM CO., LPA
                                        Fourth & Walnut Centre, Suite 1900
John J. Helbling (0046727)              105 East Fourth Street
105 E. Main Street, Ste. 202            Cincinnati, Ohio 45202-4008
Mason, Ohio 45040                       Telephone:    (513) 421-2400
Telephone: (513) 770-0322               Facsimile:    (513) 421-7902

                                        *Trial Attorneys for Plaintiff*

                                        20

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **Plaintiff's Memorandum in Opposition to Defendants' Motion to Take A Third Trial Deposition Of Cyril Wecht, M.D. (Doc. 225)**, was electronically filed on March 7, 2006. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Paul B. Martins