LEXSEE 1999 U.S. APP. LEXIS 12022

**LORA EMPH, et al., Plaintiffs-Appellants, v. JOSEPH SUDIMACK, M.D., et al., Defendants-Appellees.**

No. 97-4446

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

*1999 U.S. App. LEXIS 12022*

June 7, 1999, Filed

**NOTICE:** [*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 206 LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 206 BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**SUBSEQUENT HISTORY:**

Reported in Table Case Format at: *1999 U.S. App. LEXIS 27674.*

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO. 95-02827. Economus. 9-19-97.

**DISPOSITION:** AFFIRMED.

**COUNSEL:** For LAURA EMPH, DONALD M. MORRIS, LISA OHL, ANGELA K. STONE, Plaintiffs - Appellants: Alan S. Belkin, Cleveland, OH.

For JOSEPH SUDIMACK, M.D., Defendant - Appellee: Thomas M. Wilson, Comstock, Springer & Wilson, Youngstown, OH.

For RICHARD JAKAMAS, TRUMBULL COUNTY, OHIO, Defendants - Appellees: Charles L. Richards, Maureen E. Richards, Law Office of Charles L. Richards, Warren, OH.

**JUDGES:** Before: KEITH, CONTIE, and SUHRHEINRICH, Circuit Judges.

**OPINION:**

**PER CURIAM.** Plaintiffs-appellants Lora Emph, Lisa Ohl, Angela Stone, and Donald M. Morris ("appellants") filed an action in district court against Trumbull County Coroner Joseph Sudimack ("Dr. Sudimack") and Trumbull County Sheriff Richard Jakmas ("Sheriff Jakmas") following [*2] the death of their father, Donald D. Morris. Specifically, the appellants alleged that Dr. Sudimack and Sheriff Jakmas should have exhumed their father's body for an autopsy to determine the cause of death. The district court dismissed the appellants' action on summary judgment. We affirm.

I.

On January 2, 1978, the appellants' father, Donald D. Morris, was found dead in his mobile home located in Trumbull County, Ohio, following a fire. Inexplicably, no autopsy was done prior to the decedent's burial. Detective Daniel D'Annunzio of the Trumbull County Sheriff's Department investigated Morris' death. After consulting with two fire investigation experts, Detective D'Annunzio determined that the fire was caused by arson. Moreover, Detective D'Annunzio discovered one of Morris' ears near the fire. The ear looked as if it had been severed from Morris' body with a knife. n1 Because Detective D'Annunzio considered Morris' death "suspicious," he suggested that Morris' body be exhumed for an autopsy to determine the cause of death.

   n1 Detective D'Annunzio found the severed ear particularly noteworthy because Morris' widow, Judith DelGros, dabbled in occult practices. The detective also noted that DelGros was very anxious to settle her husband's estate following his death.

[*3]

Despite Detective D'Annunzio's findings, the

Trumbull County Prosecutor's Office refused to order an autopsy without a confession or an eyewitness to the crime, and Dr. Sudimack, the Trumbull County Coroner, refused to exhume the body without authorization from the Prosecutor's Office. Sheriff Jakmas similarly refused to order the exhumation and autopsy in light of the Prosecutor's resistance. In the absence of an autopsy, Dr. Sudimack concluded that Morris' death was accidental and Sheriff Jakmas ordered that the investigation be closed.

In 1993, Sheriff Jakmas' successor, Thomas Altiere, reopened the investigation when he received new information from an eyewitness, Eddie Bridge. Bridge told law enforcement officers that he saw DelGros kill Morris with a knife before setting fire to Morris' residence. Sheriff Altiere had Morris' body exhumed and the new Trumbull County Coroner, Dr. Theodore Soboslay, conducted the autopsy which revealed a severed rib consistent with a stab wound. Following the autopsy, the official cause of Morris' death was changed to homicide. In November 1993, a jury in the Trumbull County Court of Common Pleas convicted DelGros of murdering Donald D. Morris. [*4]

On December 28, 1995, Morris' children filed this action in district court against Dr. Sudimack, Sheriff Jakmas and Trumbull County. The complaint alleged two causes of action: intentional infliction of emotional distress; and violation of their civil rights under *42 U.S.C. § § 1983* and *1985*. On May 1, 1996, the district court dismissed the civil rights claim pursuant to *Federal Rule of Civil Procedure 16(c)* which governs claims considered at pretrial conferences. On September 18, 1997, the district court dismissed the remaining claim (intentional infliction of emotional distress) on summary judgment after deciding that the statute of limitations governing the claim had expired before the lawsuit was filed.

The appellants filed a timely notice of appeal on October 17, 1997.

II.

Standard of Review

We review the summary judgment dismissal of an action *de novo*. *Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir. 1988)*. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party [*5] is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*.

The Appellants' Intentional Infliction of Emotional Distress Claim

In their complaint, the appellants alleged that the appellees' refusal to exhume and autopsy their father's body caused them severe mental anguish and emotional pain. The district court dismissed the claim on summary judgment because the four-year statute of limitations governing this action had run. Specifically, the district court held that the appellants' cause of action accrued shortly after Morris' death when the appellees refused to perform the autopsy, not when Morris' body was exhumed and the autopsy was performed.

On appeal, the appellants assert that their cause of action accrued in 1993 when the appellees' successors ordered Morris' body exhumed and autopsied, not in 1979 when the appellees refused to exhume and autopsy the body:

> In finding this action time-barred, the trial court relied entirely on the fact that the Morris family's suspicions of impropriety bothered them immediately. The trial court's application of the statute of limitations was not liberal. The tort of intentional infliction of emotional harm involves two [*6] parts. One is the emotional distress itself. The Morris family may have suffered emotionally from the time their suspicions arose. The second element is the actual identification of the individuals who caused the upset. That identification could not occur until Donald Morris' body [was] exhumed. Were exhumation a simple process the trial court's logic would prevail. Since exhumation is far from the norm, a properly liberal application of the "discovery rule" validates the Morris family's contention that this cause of action accrued in 1993.

Appellants' Brief at 14-15. In response, the appellees asserts that the statute of limitations began running in 1979 when the appellees refused to exhume and autopsy Morris' body following his suspicious death.

"Statutes of limitation are vital to the welfare of society and are favored in the law." *Zion Nursing Home, Inc. v. Creasy, 6 Ohio St. 3d 221, 225, 452 N.E.2d 1272 (1983)* (citation omitted). "Statutory limitation periods are 'designed to promote justice by preventing surprises

through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'" [*7] *Bowen v. City of New York, 476 U.S. 467, 481 n.13, 90 L. Ed. 2d 462, 106 S. Ct. 2022 (1986)* (citation omitted). In Ohio, a four-year statute of limitations governs intentional infliction of emotional distress claims. *See Ohio Rev. Code § 2305.09(D)*. Accordingly, we must determine when the appellants' cause of action accrued.

In Ohio, "a cause of action for intentional infliction of emotional distress does not accrue until the tort is complete, that is, at the time the injury is incurred and the emotional impact is felt." *Biro v. Hartman Funeral Home, 107 Ohio App. 3d 508, 514, 669 N.E.2d 65 (Ohio App. 1995)*. Though the appellants in this action admit that they always suspected that DelGros murdered their father, they assert that they were not sure of his cause of death prior to his autopsy. Accordingly, the appellants argue that their cause of action did not accrue until their father's body was exhumed and autopsied in 1993. We disagree.

It seems clear that the appellants were aware, or should have been aware, of DelGros' criminal conduct shortly after their father's death. Indeed, the appellants acknowledge in their appellate brief that, shortly after their father's [*8] death, they knew the fire was purposefully set because: one of Morris' ears had been severed from his body; Morris's body was found in a suspicious position following the fire; and DelGros engaged in occult practices. Appellants' Brief at 6-7. Based on these facts and their suspicions, the appellants demanded that their father's body be exhumed and autopsied. Because the precipitating event in this action was the appellees' refusal to exhume and autopsy Morris' body in 1978, and because the appellants could have successfully challenged the appellees' refusal to exhume and autopsy Morris' body in a declaratory judgment action under *Ohio Rev. Code § 313.19* in the court of common pleas, the district court properly concluded that the appellants' intentional infliction of emotional distress claim accrued in 1978. *See Biro v. Hartman Funeral Home, 107 Ohio App. 3d at 514* (a cause of action for intentional infliction of emotional distress accrues "at the time the injury is incurred and the emotional impact is felt").

Because the appellants' cause of action filed in 1993 is barred by the four-year statute of limitations governing their intentional infliction of emotional distress [*9] claim, we **AFFIRM** the district court's decision.