IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF ROGER D. OWENSBY | : | CASE NO. C-1-01-769 |
| Plaintiff, | : | (Judge S. Arthur Spiegel) |
| vs. | : | |
| CITY OF CINCINNATI, et al. | : | JOINT REPLY MEMORANDUM OF DEFENDANTS IN RESPONSE TO MOTION TO REOPEN TRIAL |
| Defendants. | : | DEPOSITION OF CYRIL WECHT, M.D. |

**I.   INTRODUCTION**

There is an old and wise saying that goes something like this: "If you let me frame the issue, I will win the argument." That saying has particular relevance to the arguments Plaintiff has raised in opposition to Defendants' joint motion to re-open Dr. Wecht's deposition. Contrary to what Plaintiff has argued, Defendants' motion is *not* about using the *fact* of Dr. Wecht's indictment to impeach his credibility. Defendants move to re-open Dr. Wecht's deposition for legitimate reasons, but Plaintiff re-frames the real issue to distract the Court from the fact that Defendants' arguments are correct.

**II.   THE *CONSEQUENCES* OF DR. WECHT'S INDICTMENT, NOT THE INDICTMENT ITSELF, ARE RELEVANT TO THE ISSUE OF WHETHER DR. WECHT *AT THE TIME OF TRIAL* IS QUALIFIED TO RENDER HIS OPINIONS.**

Plaintiff incorrectly asserts that Defendants intend to introduce the *fact* of Dr. Wecht's indictment solely to attack his credibility. That assertion is inaccurate. *Daubert* and its progeny *require* this Court to conduct a hearing *at the time of trial* to determine whether Dr. Wecht is qualified to render his opinions. This determination cannot be made unless the Court has all of the relevant information with respect to Dr. Wecht's qualifications *as they exist now*, and that cannot

1

happen unless this Court knows to what extent the indictment has changed the qualifications Dr. Wecht testified to during his depositions. In other words, Defendants' argument is *not* that the *fact* of the indictment itself is relevant; they correctly argue that it is the *effect* of the indictment that is relevant.

Conspicuously absent from Plaintiff's memorandum is *any* discussion of Dr. Wecht's *current* qualifications. It is already certain that as a result of his indictment Dr. Wecht has resigned his position as Coroner of Allegheny County, Pennsylvania. It is unknown whether the indictment has caused Dr. Wecht to lose any of the other qualifications upon which Plaintiff relied during Dr. Wecht's deposition. The only way to obtain this information and for this Court to properly make its *Daubert* determination on Dr. Wecht's qualifications is to re-open his deposition.

### III.    PLAINTIFF HAS PLACED DR. WECHT'S REPUTATION SQUARELY IN ISSUE IN THIS CASE.

Much of the law upon which Plaintiff relies supports the proposition that is not proper to use an indictment against a witness for the sole purpose of attacking that witness's credibility. Defendants do not dispute that, under most circumstances, that is a correct statement of the law. However, that law is not relevant where, as here, a party has placed the witness's reputation directly in issue.

Dr. Wecht is an expert witness, and Plaintiff has made his reputation a significant part of the reason why a jury should accept his opinions over those of Defendants' experts. Indeed, Dr. Wecht's *curriculum vitae* and his deposition transcript are replete with references to information that is being used solely to establish and highlight his reputation as a forensic pathologist. Yet, Plaintiff asks that the Court prevent the jury from hearing what his reputation is now. Plaintiff cannot have it both ways. Since Plaintiff has made Dr. Wecht's reputation a large part of their argument why his opinions should be believed, Defendants have the right to introduce evidence to show the jury Dr.

2

Wecht's reputation at the time of trial.

**IV.    RECENT STUDIES ESTABLISH THAT DR. WECHT'S OPINIONS DO NOT HAVE A "RELIABLE BASIS."**

An important, if not the most important, issue in this case is whether Mr. Owensby died of mechanical asphyxia or sudden cardiac death. This issue is critical because, if Mr. Owensby died of sudden cardiac death, nothing the City police officers did or failed to do caused Mr. Owensby's death.

Defendants have learned of recent studies[1] that establish that, even if Mr. Owensby was completely deprived of oxygen for the entire physical altercation (which he was not), he could not have died of mechanical asphyxia. None of the parties in the case were aware of these recent studies when Dr. Wecht's depositions were taken. Further, neither Dr. Wecht nor Dr. Daniel Schultz, the Hamilton County Deputy Coroner who performed the autopsy on Mr. Owensby, were aware of these studies when their depositions were taken.

In order for this Court to properly make its *Daubert* determination on this critical issue it must determine if Dr. Wecht's opinions have a "reliable basis in the knowledge and experience of the [relevant] discipline." *Kuhmo Tire Co. v. Carmichael* (1998), 526 US 137, 119 S.Ct. 1167, 1176. That can only be done if Dr. Wecht is questioned about these recent studies to determine whether he recognizes them as the current "state of the art" on this subject and, if he does, whether their findings would change his opinion on the cause of Mr. Owensby's death. The only way this information can be obtained is from Dr. Wecht himself, and that can happen only if his deposition

---

[1] These are: (1) Cary NRM, Roberts CA, Cummin ARC, Adams L: The effect of simulated restraint in the prone position on cardiorespiratory function in the prone position after exercise. J. Of Physiology 2002; 525 P: 30-31; (2) Vilke GM, Michalewicz B, Kolkhorst FW, Neuman T, Chan TC: Does weight force during physical restraint cause respiratory compromise? Acad Emerg Med 2005; 12(5)(suppl): 16; and (3) Michalewicz B: Effect of Hogtie Restraining Process on Cardioventilatory Physiology Masters Thesis SDSU 2004.

is re-opened.

**V.     PLAINTIFF HAS PLACED THE ISSUE OF WHY THE CITY'S OFFICE OF MUNICIPAL INVESTIGATION ("OMI") RETAINED DR. WECHT DIRECTLY IN ISSUE IN THIS CASE, AND THE CITY HAS THE RIGHT TO EXPLAIN WHY HE WAS HIRED AND WHY HE WOULD NOT HAVE BEEN RETAINED IF OMI HAD KNOWN HE IS A "HIRED GUN."**

Plaintiff points out that the OMI retained Dr. Wecht in connection with Mr. Owensby's death. In fact, Plaintiff intends to use that fact to support his opinion and discredit the opinion of Defendants' experts. That is precisely one of the reasons why Defendants have the right to re-open Dr. Wecht's deposition - i.e. to explain why OMI retained him and OMI's lack of knowledge that Dr. Wecht is a "hired gun" who was willing for the right price to give the opinion *Dr. Wecht* concluded OMI wanted to hear. When OMI retained Dr. Wecht it thought it was retaining an honorable person who would provide it with a truly independent opinion. The recent disclosures (i.e. not the indictment, but the underlying facts that led to indictment) reveal that was not even close to the case.[2]

**VI.    RC 313.19 CREATES A "NON-BINDING REBUTTABLE PRESUMPTION" THAT THE CORONER'S FINDINGS WERE ACCURATE.**

Plaintiff has asserted that, "pursuant to Ohio Rev. Code §313.19, Defendants are precluded, as a matter of law, from challenging the cause of death determination [by the coroner] of mechanical asphyxiation." *See* p. 19 of Plaintiff's memorandum. Indeed, Plaintiff has repeated this argument so many times during this case that many in this case have begun to accept it as accurate. It is not. The Ohio Supreme Court has expressly held that "[t]he coroner's factual determinations concerning the matter, mode and cause of death, as expressed in the coroner's report and death certificate, create

---

[2]The irony of this situation is that Plaintiff has so adamantly taken the position that the City must live with OMI's mistake in retaining Dr. Wecht. Now Plaintiff is stuck with the same problem, and is doing everything possible to avoid having done to it what it is so willing to do to Defendants.

4

a non-binding rebuttable presumption concerning such facts in the absence of competent, credible evidence to the contrary." *Vargo v. Travelers Insurance Company*, 34 Ohio St.3d 27 (1987) (syllabus) (emphasis supplied.) The reason the Ohio Supreme Court limited the effect of a coroner's findings is that a coroner is an expert just like any other expert, and it is exclusively within the power of the jury to determine the accuracy of the coroner's findings. *Id.*, p. 30.

> . . . The statute does not compel the fact-finder to accept, as a matter of law, the coroner's factual findings concerning the manner, mode and cause of death.

*Id.*, syllabus 2.

Defendants do not dispute that Plaintiff is entitled to an instruction to the jury that there is a presumption that Dr. Schultz's findings are correct, but it is entitled to nothing more. However, all Defendants must do to defeat that presumption is introduce evidence that meets it, and the burden of establishing the manner, mode and cause of Mr. Owensby's death remains with Plaintiff. *Id.*; Evid. R. 301. *See In re The Yoder Co.* 758 F.2d 1116, 1120 (6th Cir. 1985). (Under Evid. R. 301 presumption "has no probative effect once rebutted.") Further, a ruling by this Court that Defendants do not have the right to challenge Dr. Schultz's finding will, in effect, deprive Defendants of their fundamental due process right to confront a key witness on what may be the most important issue in this case. ("Statutes creating permanent irrebutable presumptions have long been disfavored under the Due Process Clauses of the Fifth and Fourteenth Amendments." *Vlandis v. Kline*, 412 U.S. 441, 446 (1973). "This Court has held more than once that a statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the Fourteenth Amendment." *Heiner v. Donnar* 285 U.S. 312, 329 (1932).)

### VII. PLAINTIFF HAS INACCURATELY ASSERTED WITHOUT ANY SUPPORTING EVIDENCE THAT THE CITY IS JUDICIALLY ESTOPPED FROM DISPUTING THAT MR. OWENSBY DIED OF MECHANICAL ASPHYXIATION.

Plaintiff asserts that, "having adopted and succeeded in obtaining administrative sanctions based upon this cause of death [i.e. mechanical asphyxia], the City of Cincinnati is judicially estopped from now contending that Mr. Owensby died from some other cause." Memorandum, p. 19.  For good reason, Plaintiff introduces absolutely no evidence to support this argument.  First, no such evidence exists.  And second, the issue of how Mr. Owensby died was not raised by any party in the administrative hearing, and it certainly was not decided by the arbitrator.

Attached hereto is the affidavit of attorney Benjamin S. Albrecht, who represented the City in connection with the administrative matter to which Plaintiff refers.  According to Mr. Albrecht:

    1.    The issue in the administrative matter was "not whether Mr. Owensby died of mechanical asphyxia, sudden cardiac death or some other cause."  *Id.*, ¶ 7

    2.    At no time did the City take a position about the cause of Mr. Owensby's death.  *Id*, ¶'s 9, 10, 11.

    3.    The arbitrator did not decide how Mr. Owensby died.  *Id.*, ¶ 12.

In short, the City can hardly be judicially estopped from asserting that Mr. Owensby died from sudden cardiac death when in connection with the administrative proceeding it never took a position on the cause of Mr. Owensby's death, the cause of Mr. Owensby's death was not an issue in that proceeding, and the cause of Mr. Owensby's death was not decided by the arbitrator.

### VIII. DEFENDANTS' REQUEST THAT DR. WECHT'S DEPOSITION BE RE-OPENED IS NOT EVEN CLOSE TO BEING DILATORY.

Plaintiff's assertion that Defendants' request should be denied because it is dilatory is disingenuous.  Dr. Wecht was not indicted until late January, 2006, and it is an 84-count indictment.

Defendants carefully reviewed the indictment and law to determine whether the *effect* of the indictment and its underlying conduct had any significance to this case. Only after that analysis was completed did Defendants move to re-open Dr. Wecht's deposition, and the joint motion was filed within four weeks of when Defendants learned of the indictment. That is hardly dilatory conduct.

Dr. Wecht had not been indicted when the first two sessions of his depositions were held, and, as such, the effects of the indictment on his qualifications had not yet occurred. Moreover, Defendants and Dr. Wecht were not aware of the above-referenced studies when the depositions were taken. In sum, the fact that Defendants have been able to twice take Dr. Wecht's deposition is irrelevant because they could not have questioned Dr. Wecht on either subject during those sessions.

## IX. THIS COURT HAS EXPLICITLY HELD THAT THE CAUSE OF MR. OWENSBY'S DEATH IS STILL A DISPUTED ISSUE.

An important, if not the most important, question the jury will answer in this case is whether the acts or omissions of the City and/or certain of its police officers caused Mr. Owensby's death. It is Defendants' position that Mr. Owensby died of sudden cardiac death and not mechanical asphyxiation,[3] and this factual dispute is still an issue in this case. However, Plaintiff has repeatedly taken the position that it no longer has the burden of establishing that Mr. Owensby died of mechanical asphyxia and his death was caused by Defendants. In short, Plaintiff asserts in this wrongful death case that, even though the cause of Mr. Owensby's death is strongly and factually disputed and has never been established as fact, it is not required to prove that Defendants caused Mr. Owensby's death. Defendants respectfully disagree.

---

[3]This is a very significant dispute because, if Mr. Owensby died of sudden cardiac death, no amount of medical care could have revived him and Defendants' conduct did not cause his death.

In ruling on Plaintiff's motion for summary judgment on the medical care claims against the City and certain individual defendants, this Court recognized that "[t]he expert testimony surrounding the cause of Owensby's death has become the grounds of a substantial evidentiary fight between the Plaintiff and the City Defendants." *Owensby v. City of Cincinnati*, 2004 U.S. Dist. LEXIS, 30. Moreover, this Court explicitly held that, in order to determine whether the City and those individual defendants had violated Mr. Owensby's constitutional right to receive medical care, it was not necessary to determine how Mr. Owensby died.

> . . . As the Court finds infra that Owensby's cause of death has little or no effect on the determination of the Defendants' liability for failure to provide medical care, the Court will not explore these opinions further.

*Id.* In short, when this Court found that certain Defendants had violated Mr. Owensby's right to receive medical care, it did not relieve Plaintiff of the burden of proving what might be the most important issue in this case - i.e. whether the failure to provide medical care to or the alleged excessive force used on Mr. Owensby caused his death. Any other holding will result in liability being imposed on Defendants for causing Mr. Owensby's death even though there exists a material, factual dispute about the cause of his death and the jury has made no finding on that issue.

X.  **PLAINTIFF'S ASSERTION THAT DR. WECHT WILL BE UNABLE TO SIT FOR DEPOSITION IS BASED ON HEARSAY, AND, IN ANY EVENT, HAS NOTHING TO DO WITH WHETHER DEFENDANTS HAVE THE RIGHT TO RE-OPEN THE DEPOSITION.**

Plaintiff assert that "that Dr. Wecht, facing indictment, will be unable to sit for a deposition this month." Memorandum, p. 9. Plaintiff introduces absolutely no evidence that this is a true

statement.[4] Rather, the sole basis for this assertion is a newspaper article of the Pittsburgh Post-Gazette, which, of course, is hearsay. Moreover, Dr. Wecht's unwillingness to sit for a deposition, even if true, is irrelevant to the issue of whether Defendants have the right to re-open it. Dr. Wecht is Plaintiff's expert witness, and, because Defendants have the right to re-open the deposition, Plaintiff must make him available. Dr. Wecht's personal problems and unwillingness to sit for a deposition have absolutely nothing to do with Defendants right to re-open his deposition.

XI. **PLAINTIFF'S STATEMENTS ABOUT THE ALLEGED MOTIVATION FOR THE INDICTMENT OF DR. WECHT ARE PURE SPECULATION AND BASED ON HEARSAY.**

Without a scintilla of evidence to support its assertion, Plaintiff states that Dr. Wecht's indictment "is politically motivated retribution against Dr. Wecht for his forensic findings against police officers." *Id.*, p.13. In short, Plaintiff directly and explicitly impugns the integrity of the United States District Attorney who sought and obtained the indictment of Dr. Wecht, and it does so based exclusively on newspaper articles. Further, Plaintiff's speculation, which would be slanderous if not published in a paper filed in connection with litigation, is totally irrelevant to the real issues before this Court. It has been included in the memorandum - without any evidence - for the sole and inappropriate purpose of attempting to convince the Court to deny Defendants' request to re-open Dr. Wecht's deposition merely because Dr. Wecht apparently claims that he was indicted for political reasons.

Plaintiff does not limit its speculation to what has occurred in Allegheny County, Pennsylvania. Plaintiff also states that the Hamilton County Coroner, Dr. Carol Parrott, lost his

---

[4]This statement appears to be inaccurate. In addition to the fact that Plaintiff has introduced no evidence to support it, Dr. Wecht, while a guest on Larry King's national radio show, spoke about the indictment.

position ". . . in large part, as a result of the campaign waged against him by the Fraternal Order of Police because of his determination that the police officer defendants in this case caused the asphyxiation death of Roger Owensby, Jr." *Id.*, p. 14. Plaintiff makes this statement without introducing any evidence to support it, and, once again, refers this Court to two newspaper articles. (It also completely ignores the many other reasons why Dr. Parrott may have lost the election, including the circumstances that led to morgue photograph litigation, of which this Court is intimately familiar.) This discussion is so "out there" that it cannot even be characterized as a "red herring."

## XII. DR. WECHT'S CONDUCT, NOT THE INDICTMENT ITSELF, IS DIRECTLY RELEVANT TO THE ISSUES OF WHETHER DR. WECHT IS A "HIRED GUN."

Unbeknownst to any of the parties in this case, Dr. Wecht's conduct that supports the basis for the indictment shows that he is, in essence, a "hired gun" who will render the opinion *he* concludes the client wants to hear if the client is willing to pay the price. Over the past 8 years Dr. Wecht has charged those private clients almost $9 million, and in this case, after he had already charged OMI $5,000, Dr. Wecht charged Plaintiff $8,750. At the very least, Defendants have the right to introduce evidence to show the millions of dollars Dr. Wecht has received in compensation as a private expert when he was supposed to be working full time as a public coroner.

For the reasons stated above and in Defendants joint motion, Dr. Wecht's deposition should be re-opened.

Respectfully submitted,

CRABBE, BROWN & JAMES LLP

s/Larry H. James
Larry H. James (0021773)
500 South Front Street, Suite 1200
Columbus, Ohio 43215
(614) 229-4567 - telephone
(614) 229-4559 - facsimile
ljames@cbjlawyers.com
Lead Trial Attorney For Defendants City of Cincinnati And All Current And Former Employees Of City of Cincinnati In Their Official Capacities Only


s/Brian E. Hurley
Brian E. Hurley (0007827)
Robert J. Gehring (0019329)
30 Garfield Place, Suite 740
Cincinnati, Ohio 45202
(513) 784-1525 - telephone
(513) 784-1250 - facsimile
bhurley@cbjlawyers.com
rgehring@cbjlawyers.com
Co-Counsel For Defendants City of Cincinnati And All Current And Former Employees Of City of Cincinnati In Their Official Capacities


s/Donald E. Hardin
Donald E. Hardin (0022095)
Hardin, Lefton, Lazarus & Marks
915 Cincinnati Club Building
30 Garfield Place
Cincinnati, Ohio 45202
(513) 721-7300 - telephone
(513) 721-7008 - facsimile
donhardin@hllmlaw.com
Special Counsel for Defendants Robert Blaine Jorg, Patrick Caton, Darren Sellers, Jason Hodge, and Victor Spellen

CERTIFICATE OF SERVICE

    This will certify that a copy of the forgoing was served upon counsel of record by electronic mail this 10th day of March 2006.

                                  s/Brian E. Hurley
                                  Brian E. Hurley

276932